# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § § | |
| | § | Chapter 11 |
| KrisJenn Ranch, LLC, | § § | |
| *Debtor* | § § | Case No. 20-50805 |
| | § § | |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, | § § § § § § | |
| | § | Adversary No. 20-05027 |
| *Plaintiffs*, | § § | |
| v. | § § | |
| DMA Properties, Inc. and Longbranch Energy, LP, | § § § | |
| *Defendants*. | § § | |

## ANSWER TO ADVERSARY COMPLAINT

DMA Properties, Inc. (DMA) and Longbranch Energy, LP (Longbranch) file a joint answer as follows.

## SUMMARY

1. This paragraph summarizes other factual allegations set forth individually in subsequent paragraphs of Plaintiffs' adversary complaint. DMA and Longbranch address those factual allegations below. To the extent this paragraph sets forth any additional legal or factual allegations not contained elsewhere in Plaintiffs' complaint, denied.

## JURISDICTION AND VENUE

2. Admitted.

1

3. Admitted that this Court has jurisdiction over the claim(s) asserted in Plaintiffs' adversary complaint. All other allegations and legal conclusions set forth in this paragraph are denied.

4. Admitted that this proceeding is a core proceeding. All other allegations and legal conclusions set forth in this paragraph are denied.

5. Admitted that Plaintiffs' claims concern the property of KrisJenn Ranch, LLC–Series Pipeline ROW ("KrisJenn–Pipeline ROW"). The remainder of this paragraph is denied.

6. The cited case law speaks for itself. To the extent this paragraph sets forth any further legal conclusions or factual allegations, denied.

7. DMA and Longbranch lack knowledge or information sufficient to form a belief as to the allegations of this paragraph.

**PARTIES**

8. Admitted that KrisJenn Ranch, LLC ("KrisJenn") is a Texas limited liability company doing business in Texas. Admitted that KrisJenn has two series that are named in this action. Admitted that KrisJenn and its series filed this bankruptcy as a single Debtor. DMA and Longbranch lack knowledge or information sufficient to form a belief as to the remainder of the allegations in this paragraph.

9. Admitted that DMA is a South Carolina corporation. DMA may be served through its counsel of record in this action. The rest of the allegations in this paragraph are denied.

10. Admitted that Longbranch's principal place of business is 706 Southview Circle, Center, Texas 75935 and that Darin Borders is the President of Drain Borders, Inc., the general partner of Longbranch. Longbranch may be served through its counsel of record in this action. The rest of the allegations in this paragraph are denied.

## BACKGROUND

11. DMA and Longbranch lack sufficient knowledge or information sufficient to form a belief as to the allegations in this paragraph.

12. Admitted that KrisJenn owned 50% of Black Duck Properties, LLC ("Black Duck"). The rest of the allegations in this paragraph are denied.

13. Denied.

14. Admitted that on or about February 19, 2016, Longbranch entered an agreement securing a right to purchase the pipeline right-of-way. To the extent this paragraph sets forward any other factual allegations, denied.

15. Agreed that Longbranch assigned its right to purchase the pipeline right-of-way to Black Duck. The rest of the allegations in this paragraph are denied.

16. Admitted that Black Duck closed on the pipeline right-of-way on or about August 11, 2017. To the extent this paragraph sets forward any additional factual allegations, denied.

17. Admitted.

18. Admitted that Black Duck conveyed to DMA a net-profits interest in the pipeline right-of-way on the same terms extended to Longbranch. Admitted that this paragraph appears to accurately quote the language of a formal document dated February 7, 2018, which memorialized the terms of the assignment. To the extent this paragraph sets forward any other factual allegations, denied.

19. Admitted that Black Duck sold the pipeline right-of-way to TCRG East Texas Pipeline 1, LLC in 2018. Admitted that Black Duck sold the right-of-way for $2.5 million and a 16% carried interest in a future TCRG waterline. DMA and Longbranch lack knowledge or information sufficient to form a belief as to the "aggregate, projected profit." To the extent this paragraph sets forward any other factual allegations, denied.

20. Denied.

21. DMA and Longbranch lack knowledge or information sufficient to form a

belief as to the factual allegations in this paragraph.

22. Admitted that Longbranch and DMA sought to protect their interests in the pipeline right-of-way. The rest of the factual allegations in this paragraph are denied.

23. Admitted that KrisJenn–Pipeline ROW purchased the pipeline right-of-way from TCRG. DMA and Longbranch are currently assessing that purchase and the related financing and lack knowledge or information to form a belief as to the specific terms of the purchase and/or financing at this time.

24. Denied.

25. Admitted that there were three lawsuits pending in state court between the parties. The Guadalupe County Case and the Longbranch Case have been consolidated in Shelby County. DMA and Longbranch repeatedly sought to proceed with discovery and depositions in that case. Those efforts were obstructed by Plaintiffs. Plaintiffs previously sought summary judgment in the Guadalupe County action and asked the state court to construe the parties' agreements in Wright's favor as a matter of law—just as KrisJenn is asking the Court to do here. After transfer, the Shelby County Court denied Plaintiffs' motion for summary judgment.

26. Admitted that the three debtors filed for bankruptcy and now seek a declaratory judgment. The rest of the allegations in this paragraph are denied.

## DECLARATORY JUDGMENT

27. This paragraph does not require a response.

28. This paragraph does not require a response.

29. Admitted that Plaintiffs seek declaratory relief. DMA and Longbranch deny Plaintiffs' characterization of DMA's and Longbranch's interests in the pipeline right-of-way.

30. Denied as to Plaintiffs' characterization of the parties' agreements. To the extent this paragraph sets forward any other factual allegations, denied.

31. Denied as to Plaintiff's characterizations of Defendants' interpretation of the parties' agreements. To the extent this paragraph sets forward any other factual allegations, denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied

36. Admitted that Plaintiffs incurred costs and attorneys' fees in seeking declaratory judgment. Denied that those fees were reasonable or necessary.

## ATTORNEYS' FEES

37. Denied.

## AFFIRMATIVE DEFENSES

38. For each of these affirmative defenses, DMA and Longbranch expressly incorporate the factual allegations set forth in DMA's counterclaims and third-party claims pleading filed contemporaneously with this answer.

### A. Common-Law Fraud

39. Plaintiffs concealed—and failed to disclose—critical facts from DMA, Longbranch. and their principals, Daniel Moore and Darin Borders. Plaintiffs did not disclose their elaborate scheme, facilitated through their transactional lawyers, to:

- tell Moore and Borders that Wright had plenty of money, the financial capacity, and the intention to carry the cost of the right-of-way acquisition until the parties found a suitable partner to build a pipeline, not merely attempt to engage in a "flip" of the option to buy the right-of-way;

- create a deed of trust between Black Duck and the KrisJenn entities that imposed a multi-million-dollar lien on the right-of-way, without telling Moore or Border and without obtaining Moore's required approval;

- negotiate a secret deal with Terrill;

5

- force Moore out of Black Duck with no intent to honor Wright's assurances that DMA's 20% net-profits interests would run with the right-of-way;

- backdate the deed of trust between Black Duck and KrisJenn or, alternatively, not notarize and record it until after Wright had negotiated a deal with Terrill and had started to push Moore out of Black Duck;

- engage in an out-of-the-blue email exchange with Moore about his entitlements under a hypothetical transaction different from what Wright had secretly worked out with Terrill, attempting to get Moore to agree that he would be owed nothing under his scheme to "kill the 20%" that Borders and Moore owned;

- conceal facts about the deal with TCRG East Texas Pipeline Company 1;

- then attempt to "kill the 20% each of you own" by claiming KrisJenn foreclosed on the undisclosed and wrongful deed of trust from Black Duck—while at the same time representing in a June 2019 "Release of Lien" that the loan on the right-of-way had been paid and the lien released; and

- conceal facts about the deal with McLeod where Wright and KrisJenn Ranch, LLC covertly borrowed $5.9 million from McLeod Oil, LLC and extended McLeod an option to purchase the right-of-way for $6,000,000.

40. Those first listed representations made by Wright—about his financial capacity and intention to buy the right-of-way and carry its costs until the group found a suitable partner to build a pipeline—were false.

41. Wright did not have, and knew he did not have, adequate financial assets or the intention to carry the cost of the right-of-way acquisition until a suitable investment partner to build the pipeline was secured.

42. Wright's lack of resources and lack of intention (at the time the representations were made) are demonstrated by Wright's immediate insistence, as soon as Longbranch transferred the purchase option to Black Duck, on trying to flip the purchase option rather than close on the right-of-way and then market the deal as Moore, Borders, and Wright had discussed.

43. Wright's misrepresentations were material and were central Moore's decision to resign from Black Duck and accept, among other things, a 20% net-profits interest

6

in the right-of-way that attached and ran with the land via DMA.

44. Wright's misrepresentations were material and were central Longbranch's decision to assign the option to purchase the right-of-way to Black Duck and accept a 20% net-profits interest in the right-of-way that attached and ran with the land.

45. Moore, on behalf of DMA, and Borders, on behalf of Longbranch, relied on Wright's false representations to their detriment. DMA was fraudulently induced to accept a 20% net-profits interest in exchange for Moore's resignation from Black Duck and relinquishment of his 50% ownership interest. Longbranch was fraudulently induced to accept a 20% net-profits interest in exchange for assignment of the option to purchase the right-of-way. Wright and his entities had no intent to honor either promise made to DMA or Longbranch.

### B. Fraud by Nondisclosure

46. DMA incorporates by reference all of the previous paragraphs of the Affirmative Defenses section of this pleading.

47. Wright did not disclose to Moore the deed of trust between Black Duck and the KrisJenn Ranch entities.

48. The Black Duck company agreement required such disclosure to Moore, who was at the time a manager and 50% owner of Black Duck. And for the interested-party transaction between Black Duck and KrisJenn to be valid, Moore would have needed to approve it.

49. Wright also owed fiduciary duties to Moore and Black Duck that required him to disclose the deed of trust. These fiduciary obligations include the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair and honest dealing, and the duty of full disclosure.

50. Encumbering Black Duck's principal asset with millions of dollars of debt—and giving the lien to Wright's other companies—was material.

51. Wright knew Moore was ignorant of the facts, and Moore did not have equal opportunity to discover what Wright had done. Indeed, the suspicious delay between the date of the deed of trust and its actual execution and recording, which occurred after Wright had negotiated the sale of Black Duck's interests to Terrill and during Wright's push to remove Moore from Black Duck, shows that Wright was actively concealing the deed's existence from Moore.

52. Wright was deliberately silent on this issue despite the multiple company obligations and fiduciary duties requiring him to speak.

53. By failing to disclose the facts, Wright intended to induce Moore to resign from Black Duck and then use his control over Black Duck and KrisJenn to try to "kill" DMA's 20% net-profits interest.

54. Moore would not have resigned from Black Duck if he had known about Wright's undisclosed deed of trust and his plan to try to steal Moore's interests.

55. Moore has been injured by having to spend significant time and money uncovering Plaintiffs' deceit. Moore would not have resigned from Black Duck and accepted the 20% net-profits interest if he known about the undisclosed deed of trust or about Wright's scheme to try to "kill" his interests.

56. The facts in counterclaims and third-party claims pleading filed contemporaneously with this answer also show that Plaintiffs' entire plan to rob Moore of his interest in the right-of-way was premeditated or, at minimum, that Plaintiffs set up a self-dealing, fraudulent deed of trust so that they could attempt to "kill the 20% each of [Defendants] own." Either way, Plaintiffs had a duty to disclose such a scheme to both Defendants.

57. Moore and DMA would not have done business with Wright on this deal if they had known that he had no intention to honor his promises (1) that the 20% net-profits interests would run with the land and (2) that he would bind Black Duck's successors and assigns to that deal.

### C. Unclean Hands

58. DMA and Longbranch incorporate by reference all of the previous paragraphs of the Affirmative Defenses section of this pleading.

59. As explained above, Plaintiffs made numerous misrepresentations, engaged in wrongful insider dealing, and failed to disclose facts that they had duties to disclose.

60. DMA and Longbranch were injured by Plaintiffs' unlawful and inequitable conduct.

61. The Court should thus refuse to grant Plaintiffs equitable relief, including the declarations sought in this action, based on the affirmative defense of unclean hands.

### D. Equitable Estoppel

62. DMA and Longbranch incorporate by reference all of the previous paragraphs of the Affirmative Defenses section of this pleading.

63. Plaintiffs made multiple false representations—and concealed material facts—from DMA, Longbranch, and their principals.

64. Plaintiffs intended that their representations and concealments be acted on.

65. Plaintiffs knew or had means of knowing the real facts.

66. DMA and Longbranch neither knew nor had equal means of knowing the real facts.

67. DMA, Longbranch, and their principals substantially and reasonably relied on Plaintiffs' misrepresentations—and on concealments that Plaintiffs had duties to disclose—to Defendants' detriment.

### E. Quasi-Estoppel

68. DMA and Longbranch incorporate by reference all of the previous paragraphs of the Affirmative Defenses section of this pleading.

69. Plaintiffs accepted benefits under multiple transactions, including but not limited to the following:

- Wright and Black Duck obtained the option to purchase the right-of-way assigned to them and purchased the right-of-way;

- Wright and Black Duck, without required disclosure or consent, gave Wright's KrisJenn Ranch entities a deed of trust in Black Duck's right-of-way interests; and

- Wright and Black Duck accepted Moore's resignation and relinquishment of his 50% ownership interest in Black Duck without proper disclosure about the August 14, 2017 deed of trust.

70. Plaintiffs repeatedly assured DMA and Longbranch that their interests would attach and run with the land and be binding on successors.

71. Plaintiffs now assert that DMA and Longbranch only ever had an interest in Black Duck's net profits.

72. Plaintiffs' present position is inconsistent with their earlier position when they acquiesced to or accepted the benefit of the transaction.

73. Further, Plaintiffs also assert that KrisJenn foreclosed on Black Duck's interests in and profits from the right-of-way and that this wiped out DMA's net-profits interests. This foreclosure argument is inconsistent not only with the DMA Agreement but also with the release of lien Plaintiffs filed in June 2019 in Rusk County that "acknowledge[d] its payment and release[d] the property from the lien."

74. It would thus be unconscionable to allow Plaintiffs to maintain their present positions, which are to DMA and Longbranch's disadvantage.

F. **Ambiguity (Asserted in the Alternative)**

75. DMA and Longbranch incorporate by reference all of the previous paragraphs of the Affirmative Defenses section of this pleading.

76. DMA and Longbranch have asserted a reasonable interpretation—indeed, the only reasonable interpretation DMA and Longbranch's net-profits agreement. Based on the instrument's plain language, DMA's net-profits interests is a covenant that attaches and runs with the right-of-way and is binding on Black Duck's successors and assigns.

77. Plaintiffs ignore the language of the instrument, arguing instead that they confer only a personal obligation from Black Duck.

78. Thus, at worst for DMA and Longbranch, DMA and Longbranch's reasonable interpretation of the instrument—whether considered alone or in conjunction with parole evidence—supports the affirmative defense of ambiguity, which is asserted here in the alternative.

## PRAYER

DMA and Longbranch pray that the Court enter judgment in DMA and Longbranch's favor, dismiss Plaintiffs' claims with prejudice, and award DMA and Longbranch all other relief, both in law and equity, to which DMA and Longbranch are entitled.

Respectfully submitted,

/s/ Michael Black
Michael Black
State Bar No. 02384400
Burns & Black PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com

*Attorneys for DMA Properties, Inc. and Longbranch Energy, LP*

/s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com

*Attorneys for DMA Properties, Inc.*

/s/ Jeffery Duke
Jeffery Duke
State Bar No. 24056609
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, Texas 77494
281-394-9778
832-201-0649 fax
jduke@dbmmlaw.com

*Attorneys for Longbranch Energy, LP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 1st day of June 2020:

Mr. Ronald J. Smeberg
MULLER SMEBERG, PLLC
111 West Sunset Road
San Antonio, Texas 78209
ron@smeberg.com

*Counsel for KrisJenn Ranch, LLC,
KrisJenn Ranch, LLC–Series Uvalde Ranch,
and KrisJenn Ranch, LLC–Series Pipeline ROW*


Shane P. Tobin
OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, Texas 78701
shane.p.tobin@usdoj.gov

*United States Trustee*

                                                                     /s/ Michael Black
                                                                      Michael Black