**EXHIBITS**

Exhibit 1:  Purchase Agreement

Exhibit 2:  Longbranch Assignment

Exhibit 3:  Email Agreement

Exhibit 4: DMA Agreement

Exhibit 5: Harris SWD Agreement

Exhibit 6: Letter of Intent

Exhibit 7: TCRG LLC Agreement

Exhibit 8: TCRG Purchase Agreement

Exhibit 9: TCRG Deed

Exhibit 10: October 12, 2018 Letter

Exhibit 11: Assignment of Note

Exhibit 12: April 16, 2019 Email

Exhibit 13: Release of Lien

# Exhibit 1:
# Purchase Agreement

## Purchase & Sale Agreement

**THIS AGREEMENT**, is made and entered into this 19th day of February, 2016 by and between The Express Gas Pipeline, LP, a Texas Limited Partnership, acting by and through its sole general partner, The Express Pipeline Connection, LLC (hereinafter called "Seller") whose address is 6034 West Courtyard Drive, Suite 205, Austin, Texas 78730 and Longbranch Energy, L.P., a Texas Limited Partnership  (hereinafter called "Purchaser"), whose address is P.O. Box 716, Center, Texas 75935.

### WITNESSETH:

**WHEREAS**, Purchaser desires to purchase, and Seller desires to sell its ownership interest in certain pipe and related facilities (commonly known as the P-21 pipeline) shown on the plat attached hereto as Exhibit "A", and described on Exhibit "B" attached hereto, and the rights-of-way, easements, contracts, permits and leases described on Exhibit "C" attached hereto, (collectively herein referred to as the "Express Pipeline"); and

**WHEREAS**, prior to concluding the transaction contemplated herein by the final payment by Purchaser to Seller and the sale of the Express Pipeline to Purchaser as contemplated herein (the "Closing"), Purchaser desires to investigate the pipeline facilities and related contractual, regulatory and right-of-way interests the subject of this agreement.

**NOW, THEREFORE**, in consideration of the premises, Purchaser agrees to purchase, and Seller agrees to sell, the Express Pipeline subject to the following terms and conditions:

### Section 1.  Transfer of Properties.

Subject to the terms and conditions provided in this Agreement, Seller agrees to sell, transfer, assign, convey and deliver to Purchaser, and Purchaser agrees to pay for and acquire on the Closing Date, all of Seller' interest in the Express Pipeline consisting of approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances shown on Exhibit "A" and described on Exhibit "B", and all of Seller' interest in the rights-of-way, easements and permits described on Exhibit "C-1" (Shelby County, Texas easements); Exhibit "C-2" (Rusk County, Texas easements); Exhibit "C-3" (Nacogdoches County, Texas easements); Exhibit "C-4" (Angelina County, Texas easements); Exhibit "C-5" (exceptions as noted in 1992 TEPCO to Lancer Purchase Agreement in Nacogdoches County, Texas); and Exhibit "C-6" (Amendments, Releases and Rights of Ways and Easements since TEPCO to Lancer sale in Nacogdoches, Rusk and Shelby Counties, Texas), which are all collectively referred to as Exhibit "C"; by execution of the Assignment and Conveyance in the form attached hereto as Exhibit "D".  The 8" pipeline to be transferred and sold to Purchaser pursuant to this Agreement is not presently operational as a functioning pipeline and certain portions of the Express Pipeline may have been removed and/or are missing, for which removed and/or missing portions Seller shall assume no liability or responsibility.

## Section 2. Disclaimers.

THIS AGREEMENT IS MADE AND ACCEPTED BY SELLER AND PURCHASER UPON THE SPECIFIC CONDITION THAT THE EXPRESS PIPELINE IS CONVEYED "AS IS, WHERE IS," WITH ALL FAULTS, AND SELLER HEREBY EXPRESSLY DISCLAIMS AND NEGATES ALL REPRESENTATIONS AND WARRANTIES, EITHER EXPRESS, IMPLIED, OR STATUTORY, IN RESPECT OF THE EXPRESS PIPELINE AND ANY REPRESENTATION OR WARRANTY AS TO THE ENVIRONMENTAL CONDITION OR SAFETY CONDITION OF THE PIPELINE AND PROPERTY INTERESTS AND/OR COMPLIANCE OF THE PIPELINE AND PROPERTY INTEREST WITH ANY STATUTE, RULE, ORDER OR DIRECTIVE OF ANY TYPE; AND ALL IMPLIED, EXPRESS OR STATUTORY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, QUALITY, PERFORMANCE, CONDITION, CLASS, CERTIFICATE, MAINTENANCE, EXISTENCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER; PROVIDED, HOWEVER, THAT THIS DISCLAIMER DOES NOT DETRACT FROM THE WARRANTIES EXPRESSLY SET FORTH HEREIN. PURCHASER HEREBY NEGATES AND WAIVES ANY RIGHTS IT HAS UNDER STATUTE OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY PURCHASER FOR DAMAGES BECAUSE OF LATENT OR PATENT DEFECTS, WHETHER KNOWN OR UNKNOWN, IT BEING THE INTENTION OF PURCHASER AND SELLER THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION, EXISTENCE AND STATE OF REPAIR OR DISREPAIR. TO THE EXTENT APPLICABLE (AND WITHOUT ADMITTING SUCH APPLICABILITY), PURCHASER HEREBY WAIVES THE PROVISIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, CHAPTER 17, SUBCHAPTER E, SECTIONS 17.41 ET SEQ. (OTHER THAN SECTION 17.555, WHICH IS NOT WAIVED), TEX. BUS. & COM. CODE, AND ALL SIMILAR LAWS IN OTHER JURISDICTIONS. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN NEGOTIATED BY PURCHASER AND SELLER AFTER DUE CONSIDERATION AND ARE INTENDED TO BE CONSPICUOUS DISCLAIMERS AND COMPLETE EXCLUSIONS AND NEGATIONS OF ANY REPRESENTATIONS AND WARRANTIES OF SELLER, WHETHER IMPLIED OR STATUTORY, WITH RESPECT TO THE SUBJECT PROPERTY THAT MAY ARISE PURSUANT TO ANY LAW NOW OR HEREINAFTER IN EFFECT, OR OTHERWISE, EXCEPT AS EXPRESSLY SET FORTH HEREIN.

## Section 3. Consideration.

(a) Purchaser will transfer by wire in immediately available United States dollars on or before 2:00 pm CST on February 19, 2016 the amount of Twenty-Five Thousand Dollars ($25,000.00) as earnest money in immediately available U.S. funds, to Frost Bank, 100 West Houston, San Antonio, Texas 78205 ABA Routing Number 114000093, account number 583850757 styled *The Express Gas Pipeline, LP*, attention Wanda Woods (512) 473-4364. Also on or before 2:00 pm CST on

February 19, 2016, Purchaser shall tender this agreement, fully executed, to Seller. Said $25,000.00 earnest money payment **shall be non-refundable** and shall provide Purchaser with a sixty (60) day due diligence period prior to the date of Closing.

(b) If, at the expiration of the sixty (60) day period referenced in Section 3(a), above, Purchaser has not concluded its due diligence, Purchaser may wire an additional sum of Seventy-five Thousand Dollars ($75,000.00) to Frost Bank (as indicated above) to secure an additional sixty (60) day due diligence period prior to the date of Closing. Said $75,000.00 earnest money payment **shall be non-refundable**.

(c) If, at the expiration of the second sixty (60) day period referenced in Section 3(b), above, Purchaser has not concluded its due diligence, Purchaser may wire an additional sum of Five Hundred Thousand Dollars ($500,000.00) to Frost Bank (as indicated above) to secure an additional sixty (60) day due diligence period prior to the date of Closing. Said $500,000.00 earnest money payment **shall be non-refundable**.

(d) At the Closing, Purchaser will pay to Express the Purchase Price, same being the amount of Five Million Dollars ($5,000,000.00) less any earnest money payments set forth in Sections 3(a), (b) or (c), above, and contemporaneously shall receive fully executed and valid documents of title and take possession of the Express Pipeline pursuant to the provisions of Section 6 of this Agreement.

## Section 4. Warranties of Seller.

Seller hereby warrants as follows:

(a) Seller is a limited partnership validly existing and in good standing under the laws of the State of Texas and has all requisite power and authority to own and operate its properties and carry on its business as now conducted. Neither the execution and delivery by Seller of this Agreement, nor the consummation by Seller of the transactions contemplated hereby or thereby nor the performance by Seller under this Agreement will: (i) violate, conflict with or result in a breach of any provision of the certificate of formation or, if applicable, the partnership agreement of the Company; or, (ii) require any consent or approval of any counterparty to, or violate or result in any breach of a settlement agreement or stipulated dismissal of any litigation arising out of the Express Pipeline.

(b) The execution and delivery of this Agreement and the consummation of the transaction contemplated hereby have been approved and ratified by The Express Pipeline Connection, LLC as general partner of The Express Pipeline, LP.

(c) Subject to the disclosure in Exhibit "A" and Exhibit "C" attached hereto, Seller is the sole owner of the Express Pipeline and possesses, and at Closing will possess, the right to convey all title and interest to Purchaser hereunder. The rights-of-way and easements held by Seller relating to the construction, laying, maintenance, operation and removal of the Express Pipeline are fully assignable and will be fully assignable by the date of Closing. At closing, the Express Pipeline to be conveyed to Purchaser as set forth above will be free from any mortgage or lien, except liens for taxes not

yet due and payable, or matters that this conveyance hereunder is subject to as described in Paragraph (a)(1) of Section 6, below.

(d) That no action or proceeding involving Seller is pending or threatened (and Seller has not received any notice, whether written or oral): (i) which challenges the validity or enforceability of any of the easements and rights-of-way collectively listed in Exhibit "C"; or, (ii) which seeks to restrict the use by Seller of the Express Pipeline.

(e) There is no suit, action or legal, administrative, arbitrative or other proceeding pending or, to Seller's knowledge, threatened against Seller or affecting the Express Pipeline or affecting the transactions contemplated by this Agreement, the collateral documents contemplated by the Agreement or the transactions relating thereto. To the knowledge of Seller, no set of facts or circumstances exist or have existed that would constitute a basis for any such action, proceeding, investigation, suit or arbitration.

## Section 5. Warranties of Purchaser.

Purchaser hereby represents and warrants as follows:

(a) Purchaser is a limited partnership dully formed and validly existing and in good standing under the laws of the State of Texas and has all requisite power and authority to own and operate its properties and carry on is business as now conducted in all jurisdictions in which it operates.

(b) The execution and delivery of this Agreement and the consummation of the transaction contemplated hereby have been approved and ratified by Darin Borders, Inc., as general partner of Longbranch Energy, LP.

(c) The Board of Directors or other governing authority of Purchaser has authorized the undersigned official to execute and deliver this Purchase and Sale Agreement.

## Section 6. Terms of Transaction.

Subject to the conditions herein stated, Purchaser and Seller agree as follows

(a) On the Closing Date:

    1. Seller will execute and deliver, or cause to be executed and delivered, to Purchaser the Assignment and Conveyance necessary to transfer and assign to Purchaser all of Seller's right, title and interest in and to the Express Pipeline, together with the contracts described on Exhibits A, B and C attached hereto, and made a part hereof as though copied verbatim herein.

    2. A duly executed document whereby Seller shall transfer the T-4 Permit No. 08049 to Purchaser and any such other instruments, including any necessary Railroad Commission of Texas forms or documents, as are reasonably

necessary to effectuate the conveyance of the Express Pipeline and T-4 Permit 08049 to Purchaser.

3. Purchaser will transfer by wire to Frost Bank, 100 West Houston, San Antonio, Texas 78205 ABA Routing Number 114000093 account number 583850757 and styled *The Express Gas Pipeline, LP*, attention Claudia Drolet (512) 473-4749, the total Purchase Price, same being the amount of Five Million Dollars ($5,000,000.00) less any earnest money deposits referenced in Section 3, above, in immediately available United States Dollars together with amounts necessary to pay any applicable sales, use, transfer or realty tax levied on the transfer of the Express Pipeline, for which Purchaser shall be responsible and liable hereunder.

4. Purchaser and Seller will prorate, as of the Closing Date, any accrued but unpaid ad valorem taxes attributable to the Express Pipeline for calendar year 2016.

5. Seller will deliver to Purchaser all records in Seller's possession and/or under Seller's control relative to the Express Pipeline, except financial and operational records which Seller is required to retain; however, Seller will permit Purchaser to photocopy any such financial and/or operational records that it deems necessary and/or appropriate in connection with its ownership of the Express Pipeline.

(b) Subsequent to the Closing Date:

1. Instruments of Conveyance.  Seller will execute and deliver from time to time at the request of Purchaser all such further instruments of conveyance, assignments and further assurances and perform all such other acts as may be required to transfer and assign to Purchaser its title to the rights-of-way, easements, contracts, permits and leases hereby agreed and intended to be conveyed to Purchaser, provided that such can be done without cost to Seller.

2. Cooperation.  At all times following the date of this Agreement, the parties hereto will provide each other with such information as may reasonably be required to effectuate the purposes and intents of this Agreement.

3. Non-Disclosure Agreement.  By the execution of this Agreement, Purchaser hereby covenants and agrees not to disclose the terms and conditions of any revised easements or rights-of-way, which easements or rights-of-way are or may have been subject to confidentiality provisions in settlement agreements or other agreements obtained by Seller and certain landowners along the pipeline corridor.  Purchaser further covenants and agrees not to disclose to any third-party the terms of this Agreement unless and until the Closing of this transaction.

**Section 7. Closing Date.**

(a) The Closing shall be held in Marshall, Texas at the offices of the Palmer Law Firm, Inc. on April 18, 2016, or subject to any 60 day extensions as set forth in Section 3, above. The parties may also mutually agree to an earlier or later date as agreed to by the parties. The date of Closing is herein referred to as the "Closing Date".

(b) The purchase and sale of the Express Pipeline contemplated by this Agreement shall be and become effective as of 7:00 a.m., Central Time on the Closing Date.

**Section 8. Covenants of Seller.**

(a) Between the parties' execution of this agreement and the closing contemplated by this agreement, Seller will take no action to modify, alter or change the Express Pipeline from its condition existing on the date of the execution of this agreement.

(b) Seller agrees that it will pay the fees and expenses of its advisors, attorneys and accountants for services rendered to Seller in connection with the consummation of its transfer of the Express Pipeline hereunder. Seller shall have no obligation to reimburse or otherwise compensate Purchaser for costs and expenses incurred in examining, appraising or evaluating the Express Pipeline, for advisors, or for any other expenses incurred by Purchaser in the preparation and consummation of this Agreement or with Purchaser's acquisition of the Express Pipeline.

(c) Prior to the Closing Date, Purchaser and its representatives shall have the right to undertake such investigations of the Express Pipeline as is deemed necessary by Purchaser to confirm the accuracy and completeness of the warranties and covenants made by Seller herein, as well as the existence and location of the Express Pipeline, provided that such investigations will not unduly interfere with Seller's rights and obligations concerning the Express Pipeline. Promptly after execution of this Agreement, Seller shall provide Purchaser and its representatives full opportunity to examine and review, at Purchaser's sole cost and expense, all of the title records, documents, maps, engineering drawings and specifications, in the possession of Seller which are deemed relevant by Purchaser to the consummation of this transaction.

**Section 9. Covenants of Purchaser.**

(a) Purchaser agrees that it will pay the fees and expenses of its advisors, attorneys and accountants for services rendered to Purchaser in connection with the consummation of its acquisition of the Express Pipeline. Purchaser shall have no obligation to reimburse or otherwise compensate Seller for costs and expenses incurred for advisors or for any other expenses incurred by Seller in the preparation and consummation of this Agreement or with Seller's sale of the Express Pipeline.

(b) Purchaser assumes and agrees to indemnify and hold harmless Seller, their officers, directors, attorney's, agents and employees, from and against any and all claims,

demands, costs, losses, expenses and liabilities of any and every kind and character incident to or arising from the ownership or use of or damages to the Express Pipeline after the Closing Date.

(c) Notwithstanding the provisions of 9(b) of this Agreement, Purchaser agrees that it shall be responsible and liable for all damages to the property of any landowner involving the Express Pipeline resulting from or in any way attributable to, in whole or in part, Purchaser's actions or activities on the property of such landowner, including, but not limited to, damage to the property resulting from the removal of the 8" pipeline and Purchaser agrees to indemnify and hold harmless Seller, their officers, directors, attorney's, agents and employees from all such claims, demands and/or damages, including, but not limited to, any costs and/or attorney's fees incurred by Seller.

## Section 10. Right of Termination.

This Agreement and the transactions contemplated hereby may be terminated at any time prior to the Closing Date under the following conditions:

(a) By mutual written consent of the parties;

(b) By either Seller or Purchaser if the consummation of the transactions contemplated herein would violate any nonappealable final order, decree or judgment of any governmental entity having appropriate jurisdiction enjoining or awarding substantial damages in connection with the consummation or the transactions contemplated herein;

(c) By Purchaser if subsequent to Purchaser's inspection and evaluation provided for in Section 11, and its sole discretion, Purchaser desires to terminate this Agreement, which termination must be made in writing and must be made timely to be effective;

(d) Purchaser shall have until 2:00 pm on the final day of the due diligence period (or periods) described in Section 11 in order to timely deliver to Seller, in writing, either:

    (i) Purchaser's extension of any due diligence period as referenced in Section 3, above, and the timely tender of the appropriate earnest money deposit to secure the extension, which earnest money deposit must be made prior to 2:00 pm on the final day of any 60 day due diligence period; or

    (ii) Purchaser's timely termination of this Agreement, which termination must be in writing, whereupon neither Purchaser nor Seller shall have any further obligation under this agreement; or

    (iii) Purchaser's acceptance of the Express Pipeline and rights of way, confirming the Closing Date.

If the Purchaser elects to terminate this Agreement in any manner provided in Section 10, Seller shall retain any earnest money previously paid by Purchaser. If the Purchaser shall fail to consummate the purchase provided for herein for any other reason, in addition to retaining the earnest money paid upon the execution of this contract, and any additional earnest paid as set forth in Section 3, above, Seller may, at Seller's option, enforce the specific performance of this agreement.

## Section 11. Right of Access Prior to Closing (Due Diligence Period).

Seller hereby grants unto Purchaser the right for Purchaser and/or Purchaser's agents and representatives to make such examinations, surveys and inspections of the rights-of-way, easements, contracts, permits and leases described on Exhibit "C" attached hereto as Purchaser deems appropriate. Seller and Purchaser specifically covenant and agree that the results of Purchaser's inspection are confidential and should Purchaser elect not to purchase the Express Pipeline and rights of way, that all written test results, reports and conclusions (that are not covered by attorney-client privilege) shall be turned over and delivered to Seller. Purchaser's inspections shall continue up to and through the due diligence period (or periods) referenced in Section 3, above.

## Section 12. Miscellaneous.

(a) This Agreement shall be constructed under and in accordance with the laws of the State of Texas.

(b) All negotiations relating to this Agreement and the transactions contemplated hereby and thereby have been carried on without the intervention of any person acting on behalf of either party hereto in such manner as to give rise to any valid claim against a party hereto for any brokerage or finder's commission, fee or similar compensation.

(c) Any notices or other communications required or permitted hereunder shall be sufficiently given if sent by confirmed facsimile, or by registered mail or certified mail, postage prepaid, addressed as follows:

    To Seller:    The Express Gas Pipeline, LP
                    6034 West Courtyard Drive, Suite 205
                    Austin, TX 78730
                    Attention: Rod C. Roberts
                    Email:rod@lancerresources.com

    To Purchaser:  Longbranch Energy, LP
                    P.O. Box 716
                    Center, Texas 75935
                    Attention: Mr. Darin Borders
                    Email: drborders@yahoo.com

or such other address as shall be furnished in writing by either party, and any such notice or communication shall be deemed to have been given as of the date so mailed or the date the facsimile is received.

(d) By mutual consent of Seller and Purchaser, this Agreement or the terms and manner of effecting the transaction contemplated hereby, may be amended or modified in any respect by an instrument duly executed on behalf of Purchaser and Seller.

(e) This agreement shall be binding upon and shall inure to the benefit of the parties hereto, but is expressly made non-assignable save and except as set forth herein, below. Nothing in this Agreement is intended to prohibit or restrict Purchaser from assigning its ownership rights in the Express Pipeline following the Closing.

(f) The exhibits referenced in and attached to this Agreement constitute in their entirety an integral part of this Agreement, and are hereby incorporated in this Agreement by reference. The section and other headings contained in this Agreement are for reference only and shall not affect in any way the meaning or interpretation of this Agreement.

(g) The warranties of the parties set forth herein, and the covenants and obligations of the parties to be performed on and after the Closing Date, shall all survive the Closing Date by Twelve (12) months.

(h) This Agreement comprises the entire agreement of the parties and there are no oral or other written promises, representations or warranties.

(i) After Purchaser has tendered no less than the sum of $100,000.00 in earnest money payments as set forth in Section 3(a) and (b), above, Purchaser may assign this Agreement subject to providing Seller notice of said assignment. The assignment of this Agreement by Purchaser, however, shall not waive or release Purchaser from its contractual obligations to perform under this Agreement.

(j) This Agreement shall not be recorded in any county deed records; however, a memorandum of this Agreement may be recorded, which memorandum shall be mutually drafted by the parties.

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed by its duly authorized officer, and has caused its corporate seal to be hereunto affixed by its Secretary thereunto duly authorized, all as of the day and year first above-mentioned.

*The remainder of this page intentionally left blank.*

"SELLER"

**THE EXPRESS GAS PIPELINE, L.P., By THE
EXPRESS PIPELINE CONNECTION, L.L.C.,
General Partner**

_____

By: Rod C. Roberts, President of The Express
Pipeline Connection, L.L.C

"PURCHASER"

**LONGBRANCH ENERGY, L.P.
By DARIN BORDERS, INC.,
General Partner**

_____

By:  **Darin Borders**
Title: President, Darin Borders, Inc.

STATE OF TEXAS              §
                           §
COUNTY OF TRAVIS            §

This instrument was acknowledged before me on the ___ day of February, 2016, by Rod
C. Roberts, the President of The Express Pipeline Connection, L.L.C., a Texas limited liability
company, the General Partner of The Express Gas Pipeline, L.P. a Texas limited partnership, on
behalf of said companies.

_____

Notary Public in and for the State of Texas

"SELLER"

**THE EXPRESS GAS PIPELINE, L.P., By THE
EXPRESS PIPELINE CONNECTION, L.L.C.,
General Partner**

By: Rod C. Roberts, President of The Express
Pipeline Connection, L.L.C

"PURCHASER"

**LONGBRANCH ENERGY, L.P.
By DARIN BORDERS, INC.,
General Partner**

By: **Darin Borders**
Title: President, Darin Borders, Inc.

STATE OF TEXAS                    §
                                  §
COUNTY OF TRAVIS                  §

    This instrument was acknowledged before me on the 19 day of February, 2016, by Rod
C. Roberts, the President of The Express Pipeline Connection, L.L.C., a Texas limited liability
company, the General Partner of The Express Gas Pipeline, L.P. a Texas limited partnership, on
behalf of said companies.

RACHEL HOLLAND
Notary ID # 126464556
My Commission Expires
March 28, 2020

Notary Public in and for the State of Texas

Rachel Holland

STATE OF TEXAS                      §
                                    §
COUNTY OF _Shelby_                  §

    This instrument was acknowledged before me on the _19_ day of February, 2016, by Darin Borders, President of Darin Borders, Inc., on behalf of Longbranch Energy, L.P., a Texas Limited Partnership.



_____
Notary Public in and for the State of Texas

---

## EXHIBIT "A"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this ___ day of February, 2016, between The Express Gas
Pipeline, LP and Longbranch Energy, LP



**EXHIBIT "B"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

8" PIPELINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Micheli Survey, Angelina County, Texas, as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeasterly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massingill in the Goguett Survey, as described by easement recorded in Volume 63, page 160, of the Deed records of said County;

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas, to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties, Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas, at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by Mrs. M. L. Moore, as described by easement recorded in Volume 67, Page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas, at a point on the south or west line of property now or formerly owned by Gulf Refining Company, as described by easement recorded in Volume 381, Page 347, of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County, Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County, Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

**EXHIBIT "C-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP


<u>Shelby County, Texas</u>

| <u>Date</u> | <u>Grantor</u> | <u>Grantee</u> | <u>Book</u> | <u>Page</u> |
|---|---|---|---|---|
| 02/03/13 | Van J. Smith | Gulf Pipe Line Co. | 81 | 7 |
| 01/27/14 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 79 | 582 |
| 01/28/14 | D.D. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 609 |
| 01/28/14 | I.E. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 597 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | Bridie Carter, et vir. | Gulf Pipe Line Co. | 79 | 592 |
| 01/28/14 | Mrs. W.J. Cockrell | Gulf Pipe Line Co. | 79 | 593 |
| 01/28/14 | J.R. Joplin, et ux. | Gulf Pipe Line Co. | 79 | 574 |
| 01/28/14 | Ralph Jopling, et ux. | Gulf Pipe Line Co. | 81 | 19 |
| 01/28/14 | J.D. Majors, et ux. | Gulf Pipe Line Co. | 81 | 27 |
| 01/28/14 | J.W. Majors | Gulf Pipe Line Co. | 81 | 14 |
| 01/28/14 | A.W. Mathews, et ux. | Gulf Pipe Line Co. | 81 | 24 |
| 01/18/14 | W.R. Rains | Gulf Pipe Line Co. | 79 | 595 |
| 01/29/14 | Luke Motley | Gulf Pipe Line Co. | 81 | 8 |
| 01/29/14 | J.L. Norman | Gulf Pipe Line Co. | 81 | 18 |
| 01/29/14 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. | 79 | 596 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/29/14 | John Turner, et us. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/31/14 | J.H. Hughes | Gulf Pipe Line Co. | 79 | 562 |
| 01/31/14 | J.R. Lewis | Gulf Pipe Line Co. | 79 | 576 |
| 02/02/14 | Charles F. Flakes | Gulf Pipe Line Co. | 79 | 607 |
| 02/02/14 | W.E. Parker | Gulf Pipe Line Co. | 81 | 16 |
| 02/02/14 | W.W. Rider, et ux. | Gulf Pipe Line Co. | 81 | 21 |
| 02/02/14 | J.H. Wall | Gulf Pipe Line Co. | 79 | 605 |
| 02/02/14 | Ben B. White, et ux. | Gulf Pipe Line Co. | 79 | 573 |
| 02/02/14 | W.D. White, et ux. | Gulf Pipe Line Co. | 79 | 598 |
| 02/03/14 | Luis Hooper, et al. | Gulf Pipe Line Co. | 79 | 579 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | C. Riley, et ux. | Gulf Pipe Line Co. | 79 | 611 |
| 02/03/14 | Jno. A. White, et ux. | Gulf Pipe Line Co. | 79 | 571 |
| 02/04/14 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. | 79 | 578 |
| 02/04/14 | John Kyle, et ux. | Gulf Pipe Line Co. | 79 | 563 |
| 02/04/14 | J.R. Weir | Gulf Pipe Line Co. | 79 | 568 |
| 02/05/14 | C.C. Hayden | Gulf Pipe Line Co. | 79 | 576 |
| 02/06/14 | W.L. Foster, et ux. | Gulf Pipe Line Co. | 79 | 572 |
| 02/06/14 | C.M. Horton, et ux. | Gulf Pipe Line Co. | 79 | 565 |
| 02/06/14 | O.M. Ramsey, et al. | Gulf Pipe Line Co. | 79 | 599 |

**EXHIBIT "C-1" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/06/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
| 02/07/14 | F.M. Bridwell, et al. | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux. | Gulf Pipe Line Co. | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co. | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 6 |
| 02/10/14 | Henry Sears, et ux. | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co. | 79 | 553 |
| 02/11/14 | J.M. Whiteside | Gulf Pipe Line Co. | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 79 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux. | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co. | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux. | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll, Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co. | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux. | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zach Brinson | Gulf Pipe Line Co. | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux. | Gulf Pipe Line Co. | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J. R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.L. Gilbert, et ux. | Gulf Pipe Line Co. | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux. | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co. | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux. | Gulf Pipe Line Co. | 79 | 544 |
| 02/18/14 | R.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 584 |

**EXHIBIT "C-1" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this ____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. | 79 | 551 |
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A. Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux. | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W.F. Taley, et ux. | Gulf Pipe Line Co. | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux. | Gulf Pipe Line Co. | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 587 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I.W. Willimas | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux. | Gulf Pipe Line Co. | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Andrews, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 446 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

3

**EXHIBIT "C-1" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/10/24 | W.M. Byrn | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 459 |
| 07/10/24 | G.W Crenshaw, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 448 |
| 07/10/24 | J.H. Cruger, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 445 |
| 07/10/24 | Mrs. F.D. Haden | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 462 |
| 07/10/24 | C.O. Worsham, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 442 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F. H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 452 |
| 07/11/24 | John Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 450 |
| 07/11/24 | Phil Bussy Jr., et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 455 |
| 07/11/24 | J.G. Ellington | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 437 |
| 07/11/24 | F.O. Johnson | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 460 |
| 07/11/24 | I.N. Williams | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 449 |
| 07/14/24 | E.W. Cockrell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 481 |
| 07/14/24 | T.A. King | Gulf Pipe Line Co. | 124 | 478 |

**EXHIBIT "C-1" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/14/24 | Ima Odom Nutt, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.D Sholar | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 483 |
| 07/16/24 | W.R. Crawford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 496 |
| 07/21/24 | Mack Jones, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W.A Cooper | Gulf Pipe Line Co. | 124 | 520 |

**EXHIBIT "C-1" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 10/14/24 | Pierce Whiteside, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 123 | 632 |
| 04/30/25 | J.A. Deaton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 506 |
| 04/30/25 | Claude E. Fallin | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 52 |
| 04/30/25 | Alvin Gunter | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 503 |
| 04/30/25 | J.R. Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 55 |
| 04/30/25 | J.N. Majors | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 54 |
| 04/30/25 | C.C. McDonald | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 56 |
| 04/30/25 | Grover C. Peddy | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 500 |
| 04/30/25 | C. Riley, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 502 |
| 04/30/25 | F.B Taylor | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 504 |
| 04/30/25 | J.R. Weir, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 141 |
| 05/01/25 | Mrs. W. A. Bouland by J.L. Davis, Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 568 |
| 05/01/25 | Cicero Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 552 |
| 05/01/25 | J. N. King | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 62 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. | 127 | 187 |

**EXHIBIT "C-1" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Robert Porter | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 61 |
| 05/01/25 | Walter Scates, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 63 |
| 05/01/25 | A.H. Womack, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 556 |
| 05/02/25 | H. Bryant, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 562 |
| 05/02/25 | Harvey Crawford | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 364 |
| 05/02/25 | John Davis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 60 |
| 05/02/25 | J.R. Foster, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 600 |
| 05/02/25 | J.R. Lewis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 555 |
| 05/02/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux. | Gulf Pipe Line Co. | 126 | 559 |

**EXHIBIT "C-1" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 05/02/25 | Mrs. O.M. Ramsey | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 563 |
| 05/04/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 539 |
| 05/04/25 | Elbert B. Samford by E.B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E.B. Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A. Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 529 |
| 05/05/25 | W.J. Walker, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 533 |

8

**EXHIBIT "C-1" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B. Goff, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 189 |
| 05/27/25 | Mary White, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 216 |
| 07/31/25 | Robert Spivey | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola RushingA.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/31/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 503 |
| 09/23/25 | Mrs. M. Lochabay | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 05/04/48 | L.B. Dean | Gulf Refining Co. | 276 | 615 |

**EXHIBIT "C-1" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Shelby County, Texas</u>

|          |                                              | and Gulf Oil Corp.                    |     |     |
|----------|----------------------------------------------|---------------------------------------|-----|-----|
| 05/04/48 | C.H. Horton, et ux.                          | Gulf Refining Co. and Gulf Oil Corp.  | 276 | 616 |
| 05/04/48 | R.W. Todd                                    | Gulf Refining Co. and Gulf Oil Corp.  | 276 | 617 |
| 05/06/48 | J.R. Anderson                                | Gulf Refining Co. and Gulf Oil Corp.  | 277 | 329 |
| 11/09/51 | Earl Hanson, et al.                          | Gulf Refining Co                      | 306 | 192 |
| 06/10/52 | M.E. Bowlin, et ux.                          | Gulf Refining Co. and Gulf Oil Corp.  | 311 | 258 |
| 06/10/52 | H.Q. Hoard, et ux.                           | Gulf Refining Co. and Gulf Oil Corp.  | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept.                             | Texas Eastern Transmission Corp.      |     |     |
| 04/20/55 | Texas Hwy. Dept.                             | Texas Eastern Transmission Corp.      |     |     |
| 04/20/55 | Texas Hwy. Dept.                             | Texas Eastern Transmission Corp.      |     |     |
| 11/02/59 | Gulf Refining Co.                            | Texas Eastern Transmission Corp.      | 381 | 347 |
| 12/18/59 | Gulf, Colorado& Sante Fe R.R. Co. and Gulf Refining Co. | Texas Eastern Transmission Corp. |     |     |
| 09/29/71 | Texas Hwy. Dept.                             | Texas Eastern Transmission Corp.      |     |     |

**EXHIBIT "C-2"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Rusk County, Texas</u>

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/08/54 | Ruby L. Dumas, et vir. | Texas Eastern Transmission Corp. | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp. | | |
| 06/27/10 | J.A. Anderson, et ux. | Gulf Pipe Line Co. | 67 | 150 |
| 06/27/10 | M.J. Barton, et ux. | Gulf Pipe Line Co. | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux. | Gulf Pipe Line Co. | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux. | Gulf Pipe Line Co. | 67 | 144 |
| 06/27/10 | F.L. Hudgins, et ux. | Gulf Pipe Line Co. | 67 | 136 |
| 06/27/10 | J.R. Latimer, et ux. | Gulf Pipe Line Co. | 67 | 142 |
| 06/27/10 | S.M. Moore, et ux. | Gulf Pipe Line Co. | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al. | Gulf Pipe Line Co. | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co. | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co. | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co. | 67 | 182 |
| 11/16/10 | E.A. Blount | Gulf Pipe Line Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co. | 1677 | 111 |
| 05/01/14 | Mrs. M.L. Moore | Gulf Pipe Line Co. | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 629 |
| 07/03/24 | T.S. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 614 |
| | | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 618 |
| 07/03/24 | J.R. Latimer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co. & Gulf Oil Co. | 360 | 190 |

**EXHIBIT "C-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Nacogdoches County, Texas</u>

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J.W. Hartt, et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Melton, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux. | Gulf Pipeline Co. | 72 | 642 |
| 06/28/10 | Mrs. M.I. Strode | Gulf Pipeline Co. | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co. | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al. | Gulf Pipeline Co. | 75 | 73 |
| 06/29/10 | J.L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W. Boyd, et ux. | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Burns, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T.J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M. Richards, et ux. | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartt, et ux. | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co. | 72 | 634 |
| 07/04/19 | S.C. Parrott, et al. | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca, et ux. | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S. Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T. Supulvado, et ux. | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M. Peterson, et ux. | Gulf Pipeline Co. | 74 | 17 |
| 07/08/10 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al. | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co. | 72 | 633 |
| 07/18/10 | Elareo Cordova, et ux. | Gulf Pipeline Co. | 74 | 29 |
| 07/18/10 | J.H. Summers | Gulf Pipeline Co. | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co. | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A.M. Evans, et ux. | Gulf Pipeline Co. | 74 | 13 |
|  |  |  |  |  |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co. | 72 | 630 |
| As Amended By: |  |  |  |  |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co. | 72 | 629 |
| As Amended By: |  |  |  |  |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co. | 74 | 6 |
| 07/20/10 | Mrs. Antonia Manchaca, et al. | Gulf Pipeline Co. | 74 | 33 |
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 90 | 429 |
| 07/20/10 | Moses Tims, et ux. | Gulf Pipeline Co. | 74 | 27 |

**EXHIBIT "C-3" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/20/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 74 | 101 |
| 07/21/10 | Jessie Greer | Gulf Pipeline Co. | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co. | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al. | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux. | Gulf Pipeline Co. | 74 | 123 |
| 08/27/10 | Geo. S. McCarty, Ind. And as Gdn. | Gulf Pipeline Co. | 749 | 238 |
| 08/27/10 | Mrs. M. I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipeline Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipeline Co. | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipeline Co. | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipeline Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co. | 75 | 447 |
| 02/27/14 | S.C. Parrott, et al. | Gulf Pipeline Co. | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Strode | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co. | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co. | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipeline Co. | 82 | 426 |
| 03/04/14 | W. G. Aartt | Gulf Pipeline Co. | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 85 | 52 |
| 03/05/14 | Alex Fears, et ux. | Gulf Pipeline Co. | 85 | 62 |
| 03/05/14 | W.H. Hollis, et ux. | Gulf Pipeline Co. | 82 | 405 |
| 03/05/14 | Moses Tims, et ux. | Gulf Pipeline Co. | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux. | Gulf Pipeline Co. | 82 | 433 |

**EXHIBIT "C-3" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Nacogdoches County, Texas</u>

| | | | | |
|---|---|---|---|---|
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | Mrs. S.C. Parrott | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | G.W. Tillery, Jr. | Gulf Pipeline Co. | 85 | 58 |
| 04/09/14 | Don Ceasar BeBiazzeon | Gulf Pipeline Co. | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co. | 82 | 386 |
| 05/09/14 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 82 | 404 |
| 06/23/24 | C.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 601 |
| 06/23/24 | Mrs. M.I. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 600 |
| 06/30/24 | A.B. Crawford | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 621 |
| 06/30/24 | Mart Melton | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartt, Ind. and as Attorney in fact | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 619 |
| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 13 |

**EXHIBIT "C-3" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

<u>Nacogdoches County, Texas</u>

| | | | | |
|---|---|---|---|---|
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B. Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D.M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mullins, Ind. et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by: | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 81 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 130 |
| 04/28/25 | G.W. Tillery, Jr., | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 131 |
| 04/29/25 | Mrs. F.W. Halacher | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |

4

## EXHIBIT "C-3" CONTINUED

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this ____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 168 |
| 05/07/25 | L.L. Martin , et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 191 |
| 05/08/25 | Mrs. A.L. Ramsey, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 206 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 165 |
| 05/11/25 | J.M. Miller, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 171 |
| 05/11/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 193 |
| 05/12/25 | Mrs. W.V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
| 05/12/25 | L.B. Mast, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III, John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |

**EXHIBIT "C-3" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/12/25 | J.T. Smith, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/25 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T. McNess | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J.W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 227 |
| 05/15/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 216 |
| 05/15/25 | G. W Falkner, | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By: | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/25 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |
| 05/29/25 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
| 05/29/25 | Alex Fears, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 326 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 335 |

**EXHIBIT "C-3" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C. Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C.H. Muckelroy, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F. Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 371 |
| 08/21/25 | J.D. Skeeters | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W. Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co. & Gulf Production Co. | 117 | 241 |
| 05/09/28 | Mrs. A. L. Ramsey, Gdn., et al. | Gulf Pipe Line Co. | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co. & Gulf Production Co. | 122 | 234 |
| 09/10/29 | J.H. Franklin, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 126 | 52 |
| 11/27/34 | Rosa Prince, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 138 | 306 |
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 527 |
| 06/03/42 | Dock Sexton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos.E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 520 |
| 06/04/42 | W.F. Greer, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |

**EXHIBIT "C-3" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 06/04/42 | L. B. Mast  et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/28/42 | J. R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 160 | 323 |
| 05/24/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/08/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 12/18/64 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 01/17/69 | Texas Eastern Transmission | E.W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp. | 404 | 254 |
| 05/29/81 | Lenvel Standland, et al. | Texas Eastern Transmission Corp. | 465 | 124 |
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp. | 485 | 200 |

**EXHIBIT "C-4"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

### Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co. | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co. | 30 | 421 |
| 07/02/10 | M.A. Modissett, et. al. | Gulf Pipe Line Co. | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co. | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co. | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co. | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co. | 35 | 678 |
| 02/27/14 | M.A. Modissett, et. al. | Gulf Pipe Line Co. | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co. | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co. | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 158 |
| 04/29/25 | J.C. Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 175 |
| 06/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/29/50 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 236 | 584 |

**EXHIBIT "C-5"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

**EXCEPTIONS AS NOTED**
**IN 1992 TEPCO TO LANCER PURCHASE AGREEMENT**
**Nacogdoches County, Texas**

1. Tracts 20, 21, 26, 46 and 67 in Nacogdoches County, Texas involve easements
   that have been released prior to the date of the Purchase and Sale Agreement or
   from which the pipe has been removed prior to the date of this Agreement.

2. (A)  Amendatory Agreement ("Agreement"), dated 1/13/76, between Bethel
   Baptist Church, by Trustees ("Bethel"), and Texas Eastern Transmission
   Corporation ("Corporation"), recorded in Volume 404, Page 254, Deed Records,
   Nacogdoches County, Texas.  Said Agreement amends three easements recorded
   in Volume 74, Page 8, Volume 82, Page 410 and Volume 114, Page 369, whereby
   Corporation agrees to remove its existing pipeline from that portion of the
   property owned by Bethel and Bethel grants to Corporation an alternate right of
   way within a portion of land for future pipeline construction, subject to stated
   conditions.

   (B)  Amendatory Agreement ("Agreement"), dated 03/03/83, between East Texas
   Portable Building Co., Inc. ("Owner"), and Texas Eastern Transmission
   Corporation ("Corporation"), recorded in Volume 485, Page 200, Deed Records,
   Nacogdoches County, Texas.  Said Agreement amends easement recorded in
   Volume 114, Page 117, whereby Corporation agrees to re-route the pipeline and
   restrict easement to centerline as described therein, subject to certain rights
   reserved by Owner, as related to potential development of lands by Owner.

   (C)  Amendatory Agreement ("Agreement"), dated 02/21/83, between Glenn
   Layton ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"),
   recorded in Volume 485, Page 205, Deed Records, Nacogdoches County, Texas.
   Said Agreement amends easement recorded in Volume 114, Page 117, whereby
   Corporation agrees to re-route the pipeline and restrict easement to centerline as
   described therein, subject to certain rights reserved by Owner, as related to
   potential development of lands by Owner.

   (D)  Amendatory Agreement ("Agreement"), dated 02/16/83, between Big Red
   Enterprises, Inc. ("Owner"), and Texas Eastern Transmission Corporation
   ("Corporation"), recorded in Volume 485, Page 211, Deed Records, Nacogdoches
   County, Texas.  Said Agreement amends easement recorded in Volume 114, Page
   177, whereby Corporation agrees to re-route the pipeline and restrict easement to
   centerline as described therein, subject to certain rights reserved by Owner, as
   related to potential development of lands by Owner.

   (E)  Amendatory Agreement ("Agreement"), dated 05/29/81, between Lenvel
   Stanaland, et al. ("Owners"), and Texas Eastern Transmission Corporation

**EXHIBIT "C-6"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

**AMENDMENTS, RELEASES AND NEW RIGHTS OF WAYS AND
EASEMENTS SINCE TEPCO TO LANCER SALE**
Nacogdoches, Rusk and Shelby Counties

(1)  Amended and Restated Release, Abandonment and Relocation of Easement, dated 04/23/99, between Cendant Mobility Services Corporation, ("Cendant"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1331, Page 24, Deed Records, Nacogdoches County, Texas.  Said Agreement amends easements recorded in Volume 72, Pages 629-630, Volume 82, Page 394-395, Volume 114, Page 328, Volume 74, Page 58, Volume 72, Page 630, Volume 82, Page 395, and Volume 114, Pages 326-327, whereby Lancer agrees to release a portion of the easements and relocate the existing easement around the perimeter boundary of the 5.65 acre tract.

(2)  Amendment to Right of Way Agreement, effective July 1, 1999 by and between Lancer Resources Company and Nacogdoches Trade Days, LLC, recorded in Volume 1371, Page 169, whereby Lancer agrees to limit the right of way to a 20' permanent right of way and Lancer retained the right to utilize reasonable work space for the installation of a new pipeline or the replacement of the existing pipeline.

(3)  Release of Easement, dated 01/19/2001, between Acme Brick Company, ("Acme"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1560, Page 315, Deed Records, Nacogdoches County, Texas and Volume 2245, Page 656, Official Public Records, Rusk County, Texas.  Said Agreement amends easement recorded in Volume 112, Page 37, whereby Lancer agrees to release easement in exchange for new Pipeline Right of Way Easement described below.

(4)  Pipeline Right of Way Easement, dated 01/19/2001, between Lancer Resources Company, ("Lancer"), and Acme Brick Company, ("Acme"), recorded in Volume 1575, Page 80, Deed Records, Nacogdoches County, Texas and at Volume 2252, Page 355, Deed Records, Rusk County, Texas. Said agreement grants easement to Lancer as described in Agreement.

(5)  Release, Abandonment and Relocation of Easement, effective 05/01/2002, between A.T. Mast III, John C. Mast, Patricia Mast George, ("Mast"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1747, Page 97, Deed Records, Nacogdoches County, Texas.  Said agreement amends easements recorded in Volume 114, Pages 237-238 of the Deed Records of Nacogdoches County, Texas and relocated easement as described in Agreement.

**EXHIBIT "C-6" CONTINUED**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

(6) Ratification of Right of Way Agreement by and between Florence J. Bowlin, Linda K. Knight and Robert D. Templin and The Express Gas Pipeline, L.P. dated May 11, 2011 and filed of record at Document Number 2011003582 of the Shelby County Deed Records ("SCDR") and the Letter Agreement referenced therein. Said agreement amends an easement recorded in Volume 126, Page 539, et seq., of the SCDR as described in said Letter Agreement.

(7) Agreed Judgment in Cause No. 09CV30,712 styled *Donald Lewis Scrimsher and Chhavy Khorn v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 2011003023 of the SCDR and the Ratification of Right of Way Agreement by and between Donald Lewis Scrimsher and Chhavy Khourn and The Express Gas Pipeline, L.P. dated March 8, 2011 and filed of record at Document Number 2011003024 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto, amends easements recorded in Volume 131, Page 137, et seq., and Volume 126, Page 503, et seq., of the SCDR as described in said Agreement.

(8) Agreed Judgment in Cause No. 09CV30,448 styled *Steve Biel and wife Regina Biel v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 20100013501 of the SCDR and the Ratification of Right of Way Agreement by and between Steve Biel and Regina Biel and The Express Gas Pipeline, L.P. dated October 30, 2010 and filed of record at Document Number 20100013500 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto dated November 15, 2013, amends an easement recorded in Volume 127, Page 54, et seq., of the SCDR as described in said Agreement.

(9) Ratification of Right of Way Agreement by and between Steve Cockrell, Truitt Cockrell and Carolyn Cockrell Daw and The Express Gas Pipeline, L.P. dated May 27, 2015 and filed of record at Document Number 2015002621 of the SCDR and the Agreement referenced in said Ratification dated June 26, 2015. Said Agreement amends easements recorded in Volume 127, Page 142, et seq., and Volume 124, Page 479, et seq., of the SCDR as described in said Agreement.

(10) Ratification of Right of Way Agreement by and between Cecil McCune and Deborah J. McCune and The Express Gas Pipeline, L.P. dated May 27, 2015 and filed of record at Document Number 2015002620 of the SCDR and the Agreement referenced in said Ratification dated May 25, 2015. Said Agreement amends easements recorded in Volume 126, Page 528, et seq., and Volume 127, Page 138, et seq., of the SCDR as described in said Agreement.

**EXHIBIT "C-6" CONTINUED**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

    (11) Letter Agreement by and between Classic Hydrocarbons Operating, Inc. and
The Express Gas Pipeline, L.P. dated April 18, 2012 regarding the re-routing
of the 8" pipeline around the Widdon Gas Unit #2 pad site location and the
R&M Farms Unit #3 pad site location in Shelby County, Texas.

## EXHIBIT "D"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this _____ day of February, 2016, between The Express
Gas Pipeline, LP and Longbranch Energy, LP

## DEED, CONVEYANCE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS THAT:

I.

THE EXPRESS GAS PIPELINE, LP, a limited partnership organized and existing under the laws of the State of Texas, with its principal office at 6034 West Courtyard Drive, Suite 205, Austin, Texas 78730 (hereinafter sometimes called "Express"), acting by and through its sole general partner The Express Pipeline Connection, LLC and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has sold, transferred, assigned, and by these presents does bargain, sell, transfer assign, convey, and deliver unto Longbranch Energy, LP with its principal office at _____, Center, Texas 75935, all of the following described pipeline system and related facilities (the P-21 Pipeline), rights-of-way, easements and permits, leases, and other rights and properties described herein situated in the State of Texas, that Express acquired by Deed, Conveyance and Assignment from TE Products Pipeline Company, Limited Partnership (TEPCO) to Lancer Resources Company recorded at Volume 742, page 72 of the Real Property Records, Shelby County, Texas; at Volume 824, page 29 of the  Real Property Records of Nacogdoches, Texas; and at Volume 889, page 40 of the Official Public Records of Angelina County, Texas and by Correction Deed, Conveyance and Assignment from Lancer Resources, L.P., a Limited Partnership to The Express Gas Pipeline, LP, a Limited Partnership, recorded as document number 2009-00252651 of the Official Public Records of Angelina County, Texas; recorded as document number 133189 recorded in Volume 3001, page 80 of the Real Property Records of Nacogdoches County, Texas; at Volume 2911, page 596 of the Real Property Records of Rusk County, Texas; and as document number 2009000958 of the Real Property Records, Shelby County, Texas, (collectively herein referred to as the "Express Pipeline"); to-wit:

PIPELINE SYSTEM AND RELATED FACILITIES

All of the following described pipelines, taps and other facilities owned by Express Pipeline:

1. Approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances that is located generally as set forth in the immediately following paragraph 2 and is depicted on the line drawing attached as Exhibit A and by this reference made a part hereof.

2.    8" PIPELINE FROM LUFKIN TO TEXAS/LOUISANA STATE LINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Mitchell Survey, Angelina County, Texas, as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeasterly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massengill in the Goguett Survey, as described by the easement recorded in Volume 63, Page 160, of the Deed records of said County;

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas, to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et. Al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties, Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by Mrs. M. L. Moore, as described by easement recorded in Volume 67, page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas at a point on the south or west line of property now or formerly owned by Gulf Refining Company as

described by easement recorded in Volume 381, Page 347 of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now or formerly owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County, Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County, Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

RIGHTS-OF-WAY, EASEMENTS AND PERMITS

All rights-of –way, easements, permits, privileges, grants and consents of Express for the construction, laying, maintenance, operation and removal of pipeline facilities in the State of Texas as set forth on Exhibit B attached hereto and by this reference made a part hereof.

II.

TO HAVE AND TO HOLD all of the above-described premises, rights and properties, together with all and singular the rights, privileges, hereditaments and appurtenances belonging to or in any way appertaining to any or all of the premises, rights or properties hereinabove described and conveyed, unto Longbranch Energy, LP, its successors and assigns forever; and The Express Gas Pipeline, LP, does hereby bind itself and its successors to warrant specially and forever defend the same unto said Longbranch Energy, LP, its successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof, by, through or under The Express Gas Pipeline, LLC, but not otherwise.  This Deed, Conveyance and Assignment and all conveyances and transfers hereunder shall be subject to all liens, mortgages, taxes (except ad valorem taxes) restrictions, leases (both surface use; and oil, gas and mineral leases), easements, rights-of-way, licenses, exceptions, reservations, outstanding interests and other conditions of title or encumbrances of whatever nature, to the extent such matters are of record in Angelina, Nacogdoches, Rusk and Shelby Counties, in Texas and to all matters that are a current survey or visual inspection would reflect.

III.

The Express Pipeline is hereby sold, transferred, assigned, conveyed and delivered to Longbranch Energy, LP without recourse (even as to the return of the purchase price except as set forth in the purchase and sale agreement dated February ___, 2016 between The Express Gas Pipeline, LP and Longbranch Energy, LP), and without covenant or warranty of any kind, express, implied, or statutory except as otherwise provided in said Purchase Agreement.  WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEEDING SENTENCE AND IN ADDITION TO ANY DISCLAIMERS SET FORTH IN THE PURCHASE AND SALE AGREEMENT, THE EXPRESS GAS PIPELINE, LP HEREBY (i) EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OF ANY WARRANTY, EXPRESS, IMPLIED AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION, PURPOSE, DESIGN, QUALITY, PERFORMANCE, EXISTENCE, CLASS, CERTIFICATE, MAINTENANCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OR OF FITNESS FOR A PARTICULAR PURPOSE) OR (B) ANY INFRINGEMENT BY THE EXPRESS GAS PIPELINE, LP OR ANY OF ITS AFFILIATES ON ANY PATENT OR PROPERTY RIGHT OF ANY THIRD PARTY; AND (ii) NEGATES ANY RIGHTS OF LONGBRANCH ENERGY, LP UNDER STATUTES OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY LONGBRANCH ENERGY, LP FOR DAMAGES BECAUSE OF REDHIBITORY VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN, IT BEING THE INTENTION OF LONGBRANCH ENERGY, LP AND THE EXPRESS GAS PIPELINE, LP THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR OR DISREPAIR.

IV.

IN WITNESS WHEREOF, this Deed, Conveyance and Assignment is being executed in counterparts, all of which are identical, on the dates shown below, but effective as of 7:00 a.m. of the _____ day of _____, 2016.  Each of such counterparts shall for all purposes be deemed to be an original, provided all of such counterparts shall together constitute but one of the same instrument.

"EXPRESS"
**THE EXPRESS GAS PIPELINE, L.P.,**
**By THE EXPRESS PIPELINE**
**CONNECTION, L.L.C., General Partner**

_____
By:  Rod C. Roberts, President of  The
Express Pipeline Connection, L.L.C

"Longbranch"
**LONGBRANCH ENERGY, L.P.**
**By DARIN BORDERS, INC.,**
**General Partner**

_____
By:  **Darin Borders**
Title: President, Darin Borders, Inc.

STATE OF TEXAS                          §
                                                      §
COUNTY OF TRAVIS                   §

This instrument was acknowledged before me on the ___ day of _____, 2016, by Rod C. Roberts, the President of The Express Pipeline Connection, L.L.C., a Texas Limited Liability Company, the General Partner of The Express Gas Pipeline, L.P. a Texas Limited Partnership, on behalf of said companies.

_____
Notary Public in and for the State of Texas

STATE OF TEXAS       §
                                    §
COUNTY OF _____   §

      This instrument was acknowledged before me on the ___ day of February, 2016, by Darin Borders, President of Darin Borders, Inc., on behalf of Longbranch Energy, L.P., a Texas Limited Partnership.

_____
Notary Public in and for the State of Texas

# Exhibit 2:
# Longbranch Assignment

# AGREEMENT FOR ASSIGNMENT AND ASSUMPTION OF SPECIFIC CONTRACT

THIS ASSIGNMENT AND ASSUMPTION OF SPECIFIC CONTRACT ("*Assignment and Assumption Agreement*") is made and entered into this _____ day of June, 2016, by and between LONGBRANCH ENERGY, L.P., a Texas limited partnership ("*ASSIGNOR*") and BLACK DUCK PROPERTIES, LLC, a Texas limited liability company ("*ASSIGNEE*").

## Witnesseth:

WHEREAS, ASSIGNOR has agreed to assign to ASSIGNEE and ASSIGNEE has agreed to assume that certain Purchase & Sale Agreement dated February 19, 2016, by and between The Express Pipeline Connection, LLC, as Seller, and Longbranch Energy, L.P., as Buyer, and attached hereto as Exhibit "A" (the "Contract"); and

WHEREAS, ASSIGNOR is executing and delivering this Assignment and Assumption Agreement for the purpose of assigning and transferring to ASSIGNEE all rights, titles and interest in and obligations under and to the Contract; and

WHEREAS, ASSIGNEE is executing and delivering this Assignment and Assumption Agreement for the purpose of assuming all obligations of ASSIGNOR under the Contract.

NOW THEREFORE, in consideration of the mutual promises of the parties; in reliance on the representations, warranties, covenants, and conditions contained in this this Assignment and Assumption Agreement; and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties agree as follows:

1. Consideration: ASSIGNOR shall be paid twenty percent (20%) ("Net Profits Share") of the Net Profits from ASSIGNEE or its successors or assigns during the period of time beginning on the date of first written above (the "Period").

   a. Net Profits shall mean gross revenues actually received by ASSIGNEE, or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.

   b. ASSIGNEE'S obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and ASSIGNEE binds its successors and assigns to the payment of the Net Profits Share.

For the consideration, covenants and warranties listed herein, ASSIGNOR has ASSIGNED, TRANSFERRED, CONVEYED, DELIVERED and SET OVER unto ASSIGNEE, and, by these presents, ASSIGNOR hereby ASSIGNS, TRANSFERS, CONVEYS, DELIVERS and SETS OVER unto ASSIGNEE all its right, title and interest in and obligations under and to the Contract, and ASSIGNEE hereby assumes the obligations of ASSIGNOR under the Contract.

The parties agree to execute such other and additional legal instruments, consents,

100% Recycled fiber
80% Post-Consumer

ratifications and other matters as may be reasonably required in order to effectuate the intent of this Assignment and Assumption Agreement. The terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their duly authorized officers as of the close of business on the date first above written.

**ASSIGNOR:**

LONGBRANCH ENERGY, L.P.

By: _____
Darin Borders, President of   Darin
Borders, Inc., its General Partner

**ASSIGNEE:**

BLACK DUCK PROPERTIES, LLC

By: _____
Larry M. Wright, Manager

By: _____
Hagan Cole, Manager

By: _____
Frank D. Moore

# Exhibit 3:
# Email Agreement

## Re: Agreement Terms On Black Duck Properties / Finial Version

Larry Wright <larrymwright54@yahoo.com>
Sun 2/4/2018, 12:26 PM
To: Daniel Moore <palmetolandandfarms@hotmail.com>

I, Larry Wright hereby fully accept and approve to the terms and conditions of this email


Larry

On Feb 3, 2018, at 10:25 PM, Daniel Moore <palmettolandandfarms@hotmail.com> wrote:

> Larry, I prefer to keep it like it is below. Because Black Duck controls 40% according to
> your email you have no control of the 60% at this time, therefore Darins 20% and my
> 20% is accounted for and will remain protected. Plus, I am confident that we will all
> make enough money on the ROW to where 5% on way or the other will still allow a
> substantial profit once we get the deal done. Also, I feel like I may be able to actually
> find a way to get enough money together in the next couple weeks to buy your 50%, but
> the little extra at 60% to buy you out is a big difference to me at this point in time to
> possibly scratch together.
>
> PLEASE CONFIRM THE TERMS OF THE EMAIL AGREEMENT USING THE SAME WORDING
> AS MY APPROVAL. I DO NOT WANT ANY ISSUES GOING FOWARD ABOUT WHAT THE
> TERMS ARE AND WILL BE.
>
> Best,
> Daniel Moore
>
> ──────────────────────────────
>
> **From:** Larry Wright <larrymwright54@yahoo.com>
> **Sent:** Saturday, February 3, 2018 10:58 PM
> **To:** Daniel Moore
> **Subject:** Re: Agreement Terms On Black Duck Properties / Finial Version
>
> Daniel-You pick because you said you were not happy with 20% and in the long run that
> could make you way more money by taking the 25%.  I'm in full agreement either way
> you choose.
>
> Ty
> Larry
>
> On Feb 3, 2018, at 9:38 PM, Daniel Moore <palmettolandandfarms@hotmail.com>

wrote:

It makes me absolutely no difference. I just want to get this all cleaned up
and official.

Your call.

Thanks,
Daniel

---

**From:** Larry Wright <larrymwright54@yahoo.com>
**Sent:** Saturday, February 3, 2018 10:27 PM
**To:** Daniel Moore
**Subject:** Re: Agreement Terms On Black Duck Properties / Finial Version

Daniel-Life sometimes is a give and take. Would you rather have the 25% in
the Express pipeline and keep the Harris note the way it is. I'm fine with
that also.
Ty,
Larry

On Feb 3, 2018, at 9:24 PM, Daniel Moore
<palmettolandandfarms@hotmail.com> wrote:

> This email is for Larry Wright and Daniel Moore to
> agree to fully accept and approve, or deny the
> following changes:
>
> 1)Larry Wright and Daniel Moore have agreed to
> remove Daniel Moore from all aspects that involve
> BLACK DUCK PROPERTIES,LLC
>
> 2) Larry Wright herby guarantees that he has the
> authority and will be responsible to have all
> members and any other necessary parties ( if any )
> execute the proper forms to approve the complete
> removal of Daniel Moore from Black Duck
> Properties,LLC
>
> 3) On behalf of Black Duck Properties, Larry Wright
> has full authority and agrees to sign the proper

forms needed to legally transfer the following
items from Black Duck and to DMA Properties, INC
or any other Entity owned by Daniel Moore of
Daniels choice, and that the transfer along with any
and all other necessary documents will take place
on or before 5pm on February 23, 2018. Following
Items to be transferred:

- No less than 50% carried interest and 50%
  entitlement on all terms and conditions and
  monies owed on the Note to Black Duck
  Properties and Big Foot regarding the Harris
  SWD. Harris SWD is 100% FREE AND CLEAR
  OF ANY AND ALL DEBTS.
- Daniel and or assigns has until Feb.23, 2018
  to buy out of the remaining 50% of the Harris
  from Larry Wright for a sum of ( price is
  contingent on current due payment being
  made to DMA Properties on or before 2/8/18
  )  $124,193.00.
- No less than 20% Carried Interest in the P-21
  Express Pipeline. The document will be under
  the exact same terms and conditions as the
  "Agreement For Assignment and Assumption
  Of Specific Contract " that was and is still
  binding for LongBranch Energy ( Darin
  Borders ) and Black Duck Properties, other
  than only language in that agreement that is
  referring to the assignment of the actual
  contract, the carried interest amount will be
  20%  and the applicable terms will be to
  DMA Properties, LLC or its assigns of choice
  instead of LongBranch Energy. This will be
  drafted and fully executed by all necessary
  parties mentioned in this binding email
  agreement on or before 5pm on Feb. 23,
  2018.
- Black Duck Properties will assign all rights
  regarding the Madisonville SWD Permits over
  to DMA Properties and or assigns of DMAs
  choice free and clear of all encumbrances.
  DMA agrees to pay Black Duck 50% of any
  amounts of monies made ( if any ) on the
  Madisonville SWD for a period of two years
  from the starting date of Feb. 23, 2018.

All terms and conditions in this email will override
and cancel out any and all past agreements
(including: written, email or oral agreements ) and
will become the sole and superior governing source
between these parties from the time and date of
the email response from Larry Wright simply
stating that he "Fully accepts and approves"

The terms and conditions to this agreement will
expire at noon on 2/05/18 if not accepted by all
parties on this email before that time and date
arrives.

I, Daniel Moore herby fully accept and approve to
the terms and conditions of this email.

# Exhibit 4:
# DMA Agreement

### Nacogdoches County
### June Clifton
### Nacogdoches County Clerk
### Nacogdoches, Texas 75961



70 2018 00009233

---

**Instrument Number: 2018-9233**

As

**Recording**

**Recorded On: December 04, 2018**

**Parties: DMA PROPERTIES INC**

**Billable Pages: 3**

**To   BLACK DUCK PROPERTIES LLC**

**Number of Pages: 4**

**Comment: AGREEMENT AFFIDAVIT**

( Parties listed above are for Clerks reference only )

**\*\* THIS IS NOT A BILL \*\***

| | | |
|---|---|---|
| Recording | 34.00 | |
| Total Recording: | 34.00 | |

---

\*\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**
Document Number: 2018-9233
Receipt Number: 126635
Recorded Date/Time: December 04, 2018 09:50:00A
Book-Vol/Pg: BK-OPR VL-4850 PG-136
User / Station: J Allen - Cashier Station 01

**Record and Return To:**
JOHNS & COUNSEL
14101 US HWY 290
AUSTIN TX 78737

---



I hereby certify that this instrument was filed on the date
and time stamped here on and was duly recorded in the
Official Public Records in Nacogdoches County, Texas

JUNE CLIFTON
NACOGDOCHES COUNTY CLERK

## AGREEMENT AFFIDAVIT

I, Frank Daniel Moore, acting on behalf of DMA Properties, Inc. as its sole member and President did in February 2018 resign from Black Duck Properties, LLC in exchange for transferring interest in several business deals and such certain interest being assigned, transferred or created to and for DMA Properties, Inc. from Black Duck Properties, LLC in exchange for my resignation in Black Duck Properties, LLC being agreed to. DMA Properties, Inc. and Black Duck Properties, LLC fully executed an agreement regarding the "P-21 Express Pipeline" Right-of-Way that runs through Angelina, Nacogdoches, Shelby, and Rush counties in the state of Texas. The "AGREEMENT" was executed on February 7, 2018, a copy of which is attached as Exhibit "A" hereto.

_____
Frank Daniel Moore

Before me, the undersigned authority, on this day personally appeared Frank Daniel Moore, known to me to be the person whose name is subscribed to the foregoing instruments and acknowledged to me that Frank Daniel Moore executed the same as the act of DMA Properties, Inc. as its President and as signed in Exhibit "A" hereto and for the consideration therein expressed.

Given under my hand and seal of office this 27th day of November 2018.

_____
Notary Public, State of North Carolina

My commission expires: June 27, 2023

```
Francine K. Elliott
NOTARY PUBLIC
Jones County, NC
My Commission Expires June 27, 2023
```

FILED AS
PRESENTED

Rusk County

00193765 VOL: 361D PG: 614

Exhibit A

# AGREEMENT

THIS AGREEMENT is made and entered into this 7th day of February 2018 by and between DMA PROPERTIES, INC., a South Carolina corporation and BLACK DUCK PROPERTIES, LLC, a Texas limited liability company.

### Witnesseth:

NOW THEREFORE, in consideration of the mutual promises of the parties; in reliance on the representations, warranties, covenants, and conditions contained in this Agreement; and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties agree as follows:

1. Consideration: DMA Properties, Inc. shall be paid twenty percent (20%) (Net Profits Share") of the Net Profits from Black Duck Properties, LLC or its successors or assigns during the period of time beginning on the date of first written above (the "Period").

   a. Net Profits shall mean gross revenues actually received by Black Duck Properties, LLC., or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.

   b. Black Duck Properties, LLC.'s obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and Black Duck Properties, LLC. binds its successors and assigns to the payment of the Net Profits Share.

The parties agree to execute such other and additional legal instruments, consents, ratifications and other matters as may be reasonably required in order to effectuate the intent of this Agreement. The terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns.

Each party hereby warrants:

   a.) That it has full power and authority to enter into this Agreement.

   b.) That such entry and the performance of its obligations under these terms and conditions will not breach any other agreement to which it is a party or by which it is bound.

PAGE: 1 of 2         INITIAL: L.M.W. _____         INITIAL: F.D.M _____

c.) That it has taken all necessary actions and obtained all relevant consents approvals and/or authorizations to enable it to lawfully and effectively enter into and perform its obligations under this agreement.

d.) Each party agrees that upon this agreement being fully executed that this will become the ONLY valid agreement between the parties AND this agreement as mentioned in the binding "EMAIL AGREEMENT" ONLY IN REGARDS to the P-21 Express Pipeline that, both parties agree that this agreement satisfies the duties ( in the Email Agreement ) regarding ONLY the P-21 Express Pipeline and that all other prior agreements or duties of any kind that relate to the P-21 Express Pipeline are NULL AND VOID.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their authorized officers as of the close of business on the date first above written.

DMA PROPERTIES, INC.

By:

Frank Daniel Moore, Principal

BLACK DUCK PROPERTIES, LLC

By: _Larry M. Wright, Manager_

Larry M. Wright, Manager

PAGE: 2 of 2

STATE OF TEXAS                    COUNTY OF RUSK
I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Rusk County, Texas as stamped hereon by me.          OFFICIAL PUBLIC RECORDS

Dec 04,2018 11:19A

TRUDY MCGILL, COUNTY CLERK

RUSK COUNTY, TEXAS

FILED FOR RECORD

Dec 04,2018 11:19A

TRUDY MCGILL,
COUNTY CLERK
RUSK COUNTY, TEXAS

By:Alesha Richmond, DEPUTY

# Exhibit 5:
# Harris SWD Agreement

HARRIS SWD AGREEMENT

Larry M. Wright on behalf of himself and Black Duck Properties, LLC and Frank D. Moore on behalf of himself and DMA Properties, Inc. and all parties to this this specific agreement on behalf of the binding "Email Agreement" ( attached as Exhibit A ) dated Feb. 3, 2018 acknowledge that this "Harris SWD Agreement" is ONLY to address the obligations regarding the Harris SWD mentioned in the "Email Agreement" and all parties herby agree as follows:

DMA Properties, Inc. is entitled to receive 50% of all Gross Monies received by Black Duck Properties, LLC including its successors and assigns for the remainder of all payments due to Black Duck Properties, LLC from Big Foot per the terms and conditions of the Note payments as originally negotiated and accepted by and between Big Foot and Black Duck Properties, LLC. Furthermore, In the event and for any reasons whatsoever Big Foot including but not limited to any of its successors or assigns fails to make the payments, then it is understood that DMA Properties, Inc. is a 50% carried interest party and will be entitled to 50% of any and all scenarios or outcomes including the full terms and conditions regarding the FULL original agreement by and between Black Duck Properties, LLC and Big Foot including but not limited to the Note payment and its terms and conditions.

Note Payments due to DMA Properties, Inc:

DMA Properties, Inc. will be paid 50% of all Gross monies received on the "Note" payments starting on Feb,7 2018, and for the remainder of all payments received. Black Duck Properties, LLC and its successors and assigns will deposit any and all payments ( if a deposit is needed ) into there account within no more than three business days from receiving the payment, and will also mail the payment to DMA Properties, Inc. ( ADDRESS: 88 Wild Swan Lane, Minnesott Beach, N.C 28510 ) within three business days of the funds being available. In the event funds do not process within 10 days of being deposited, DMA Properties, Inc. is entitled to all relative information regarding why the funds are not available.


DMA Properties, INC.                          Black Duck Properties, LLC

_____ Date 3-2-18          _____ Date: 2-21-18

Frank D. Moore, Principle                    Larry M. Wright, President


Page 1 of 2

EXHIBIT A

EMAIL AGREEMENT DATED FEBUARY 3RD 2018 AND ACCEPTED BY LARRY M. WRIGHT ON
FEBUARY 4TH 2018.

INITIALS:

FDM _____     LMW _____

# Exhibit 6:
# Letter of Intent

February 9, 2018

Black Duck, LLC
Attn: Larry Wright

Dear Mr. Wright,

This letter is to memorialize our agreement regarding the sale of the assets of Black Duck, LLC ("Seller) to Synergy Global Mineral and Royalty Co. ("Buyer").

1.  **Purchase Price**

("Buyer") agrees to purchase all current assets of Black Duck, LLC for a purchase price of two million five hundred thousand dollars ($2,500,000.00) plus Seller will retain a sixteen percent (16%) carried interest in the completed Northern Water Project joint venture which will have an approximate value of $15,000,000.00..

2.  **Deposit**

Upon execution of this letter, Buyer will tender five hundred thousand dollars ($500,000.00) as a deposit. This deposit is fully refundable only if Seller is unable to deliver marketable title by the date of closing or within a reasonable period of time and is otherwise non-refundable. The remaining $2,000,000.00 of the Purchase Price shall be payable at closing.

3.  **Closing Date**

The closing shall occur upon the ability of the Seller to delivery marketable title for the East Texas right of way (also known as the Express Gas Pipeline), Buyer to deliver a mutually acceptable Joint Venture Agreement and by agreement of the parties.

If the foregoing terms and conditions are acceptable, please sign and return this letter to Buyer.

Sincerely,

_____

Chris Edwards


_____

John Terrill

_____
Edward Wallace

_____
Karl Richter

Agreed and accepted by:

_____
Larry Wright

# Exhibit 7:
# TCRG LLC Agreement

# COMPANY AGREEMENT

## OF

## TCRG EAST TEXAS PIPELINE 1, LLC

Dated as of March 13, 2018

THE SECURITIES REPRESENTED BY THIS INSTRUMENT OR DOCUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD OR OTHERWISE TRANSFERRED AT ANY TIME, EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGER OF THE COMPANY THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THE SUBMISSION TO THE MANAGER OF THE COMPANY OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE MANAGER TO THE EFFECT THAT ANY SUCH TRANSFER OR SALE WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED THEREUNDER.  IN ADDITION, THE INTERESTS ISSUED UNDER THIS AGREEMENT MAY BE SOLD OR TRANSFERRED ONLY IN COMPLIANCE WITH THE RESTRICTIONS ON TRANSFER SET FORTH HEREIN.

**COMPANY AGREEMENT**
**OF**
**TCRG EAST TEXAS PIPELINE 1, LLC**

**THIS COMPANY AGREEMENT** (this "Agreement") **OF TCRG East Texas Pipeline 1, LLC,** a Texas limited liability company (the "Company"), is made and entered into as of February 28, 2018 (the "Effective Date"), by and among Synergy Midstream, LLC, an Oklahoma limited liability company having its principal place of business at 12036 North May, Oklahoma City, OK 73120  ("Synergy" or the "Class A Member"), and One Industries Group, L.P., a Texas limited partnership having its principal place of business at 5201 Camp Bowie Blvd., Ste. 200, Fort Worth, Texas 76107 ("One Industries" or "Class B Member").

**RECITALS:**

**WHEREAS,** the parties hereto desire to form the Company for the purpose of acquiring certain assets of Black Duck Properties, LLC (the "Black Duck Assets") as set forth in Exhibit A, attached hereto and incorporated herein, pursuant to that certain Purchase and Sale Agreement dated _____(the "PSA");

**WHEREAS,** in order to effectuate the foregoing, the parties hereto desire to enter into this Agreement as set forth herein.

**AGREEMENT**

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein and other valuable consideration (the receipt and sufficiency of which hereby are acknowledged by each party hereto), the parties hereto, intending to be legally bound, do hereby agree as follows:

**ARTICLE I**
**DEFINITIONS**

Section 1.1.    Definitions.  The following terms, as used herein, shall have the following respective meanings:

"Act" shall mean the Texas Limited Liability Company Act (Tex. Bus. Org. Code, Title 3, Chapter 101, et seq.), as in effect on the Effective Date and as it may be amended hereafter from time to time.

"Adjusted Capital Account Balance" means, with respect to any Member for any period, the balance, if any, in such Member's Capital Account as of the end of such period, after giving effect to the following adjustments:

(a)    Credit to such Capital Account any amounts that such Member is obligated to restore or is deemed obligated to restore as described in the penultimate sentences of Regulation Section 1.704-2(g)(1) and 1.704-2(i)(5); and

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(b)  Debit to such Capital Account the items described in Regulation Sections 1.704- 1(b)(2)(ii)(d)(4), (5) and (6).

"<u>Affiliate</u>" means, (a) with respect to Synergy at any given time, (i) any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Synergy, (ii) any child, spouse, sibling, grandchild or any lineal descendant by birth or adoption of Synergy (collectively, the "<u>Permitted Synergy Family Members</u>"), or (iii) trusts or wholly owned limited partnership for the benefit of the Permitted Synergy Family Members, and (b) with respect to One Industries at any given time, (i) any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with One Industries, (ii) any child, spouse, sibling, grandchild or any lineal descendant by birth or adoption of One Industries (collectively, the "<u>Permitted One Industries Family Members</u>"), or (iii) trusts or wholly owned limited partnerships for the benefit of the Permitted One Industries Family Members.  For the purposes of this definition "<u>control</u>" when used with respect to any specified Person means the power to direct or cause the direction of the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities of fifty percent (50%) or more, by contract or otherwise, and the term "<u>controlled</u>" has the meaning correlative to the foregoing.

"<u>Agreement</u>" shall mean and refer to this Company Agreement of the Company and all Exhibits referred to herein and attached hereto, each of which is hereby made a part hereof, as amended and in effect from time to time.

"<u>Approval</u>" (and any variation thereof) of a Member means the prior written consent or approval of such Member, which may be granted or withheld in its sole discretion unless otherwise expressly provided to the contrary in this Agreement.  If any Member is an Entity, such Approval shall be valid only if given by a duly authorized officer, manager, partner, member or other agent of such Member.  Use of the term "reasonable" in connection with the term "Approval" or any variation thereof or with the term "satisfactory" means that such Approval shall not be withheld, conditioned or delayed unreasonably.  If the Approval of any Member to any action is required under this Agreement and such Member shall not have given notice of approval or disapproval of such action to the other Member within ten (10) Business Days after receipt of the notice requesting that such Approval be given, such Member shall, unless otherwise provided hereunder, be deemed to have provided its Approval.

"<u>Approval of the Members</u>" has the meaning set forth in <u>Section 9.</u> below.

"<u>Asset Value</u>" with respect to any Company Asset means:

(a)  The fair market value when contributed of any asset contributed to the Company by any Member;

(b)  The fair market value on the date of distribution of any asset distributed by the Company to any Member as consideration for a Membership Interest in the Company;

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(c)     The fair market value of all Property at the time of the happening of any of the following events:

(i)     the admission of a Member to, or the increase of a Membership Interest of an existing Member in the Company in exchange for a Capital Contribution or for the provision of services to or for the benefit of the Company; or

(ii)    the liquidation of the Company under Regulation Section 1.704-l(b)(2)(ii)(g); or

(d)     The Basis of the asset in all other circumstances.

"Bankruptcy" with respect to a Person means any one of the following:

(a)     Filing a voluntary petition in bankruptcy or for reorganization or for adoption of an arrangement under the Bankruptcy Law, as defined below;

(b)     Making a general assignment for the benefit of creditors;

(c)     The appointment by a court of a receiver for all or a portion of the property of the Person;

(d)     The entry of an order for relief in the case of an involuntary petition filed against the Person under the Bankruptcy Law, as defined below; or

(e)     The assumption of custody or sequestration by a court of competent jurisdiction of all or substantially all of the Person's property.

"Bankruptcy Law" as used herein means Title 11, U.S. Code, or any similar federal or state law for the relief of debtors.

"Basis" means, with respect to any asset of the Company, the adjusted basis of such asset for federal income tax purposes; provided, however, (a) if any asset is contributed to the Company, the initial Basis of such asset shall equal its fair market value on the date of contribution, and (b) if the Capital Accounts of the Members are adjusted pursuant to Regulation Section 1.704-l(b) to reflect the fair market value of any asset of the Company, the Basis of such asset shall be adjusted to equal its respective fair market value as of the time of such adjustment in accordance with such Regulation. The Basis of all Company Assets shall be adjusted thereafter by depreciation and amortization as provided in Regulation Section 1.704-l(b)(2)(iv)(g) and any other adjustment to the basis of such assets other than depreciation or amortization

"Black Duck Assets" has the meaning set forth in the Recitals above.

"Business" has the meaning set forth in Section 2.4.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

"Business Day" means any day excluding (i) Saturday, (ii) Sunday, (iii) any day which is a legal holiday under the laws of the State of Texas, and (iv) any day on which banking institutions located in such state are generally not open for the conduct of regular business.

"Call Amount" has the meaning set forth in Section 3.2(b) below.

"Capital Account" shall mean, with respect to any Member, the Capital Account maintained for such Member in accordance with the provisions of Section 4.1.

"Capital Contribution" or "Capital Contributions" shall mean the amount of cash and the net fair market value of any property contributed to (or deemed contributed to) the capital of the Company by the Members pursuant to this Agreement.  The term "Capital Contributions" with respect to a Member shall include (i) the contributions of such Member made (or deemed to be made) pursuant to Sections 3.1 and 3.2 and (ii) a Member's payments made to third party creditors of the Company after the Effective Date with respect to Company obligations unless and until reimbursed by the Company to the extent the same are reimbursable by the Company under this Agreement.

"Capital Receipts" shall mean (A) the sum of the proceeds received by the Company from the sale, exchange, or any other disposition of all or substantially all of the Black Duck Assets, reduced by (B) the sum of (i) all expenditures made by the Company in connection with such sale, exchange, or other disposition, plus (ii) loan repayments made from such proceeds that are required by the terms of any agreement to which the Company is subject or that are otherwise Approved by the Members, plus (iii) amounts  thereof retained as operating reserves under this Agreement as Approved by the Manager.

"Capital Transaction" as used herein shall mean the sale, exchange or other disposition of all or substantially all of the Company Assets

"Certificate" shall mean the certificate of formation required to be filed with the Texas Secretary of State in accordance with the Act, as amended from time to time.

"Class A Member" means the Member identified as the Class A Member on Exhibit B.

"Class B Member" means the Member identified as the Class B Member on Exhibit B.

"Closing Date" shall mean the date on which the fee interest in the Black Duck Assets is acquired by the Company.

"Code" shall mean the Internal Revenue Code of 1986, as amended and in effect from time to time (or any corresponding provision of succeeding law).

"Commencement Date" has the meaning set forth in Section 2.8 below.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

"Company" shall mean TCRG East Texas Pipeline 1, LLC, a Texas limited liability company, and its successors and assigns.

"Company Assets" shall mean all of the personal and real property owned by the Company during its existence.

"Company Minimum Gain" shall have the meaning ascribed to the term "partnership minimum gain" in Regulations Section 1.704-2(d)(1).

"Depreciation" for any Fiscal Year or other period means the cost recovery deduction with respect to an asset for such year or other period as determined for federal income tax purposes, provided that if the Asset Value of such asset differs from its Basis at the beginning of such year or other period, depreciation shall be determined as provided in Regulation Section 1.704-l(b)(2)(iv)(g)(3).

"Effective Date" shall mean the date that is set forth above in the heading to this Agreement.

"Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, joint-stock company, cooperative, association or other firm or any governmental or political subdivision or agency, department or instrumentality thereof.

"Environmental Laws" shall mean any federal, state, or local statute, code, ordinance, rule, regulation, permit, consent, approval, license, judgment, order, writ, judicial decision, common law rule, decree, agency interpretation, injunction or other authorization or requirement whenever promulgated, issued, or modified, including the requirement to register underground storage tanks, relating to:

(a) emissions, discharges, spills, releases, or threatened releases of pollutants, contaminants, hazardous substances, materials containing hazardous substances, or hazardous or toxic materials or wastes into ambient air, surface water, groundwater, watercourses, publicly or privately owned treatment works, drains, sewer systems, wetlands, septic systems, or onto land;

(b) the use, treatment, storage, disposal, handling, manufacturing, transportation, or shipment of hazardous substances, materials containing hazardous substances, or hazardous and/or toxic wastes, material, products, or by-products (or of equipment or apparatus containing hazardous substances) as defined in or regulated under any statutes and their implementing regulations including but not limited to: the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Chpt. 82, § 6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. Chpt.103, § 9601 et seq., and/or the Toxic Substance Control Act, 15 U.S.C. Chpt. 53, and/or 42 U.S.C. Chpt. 30, § 1261 et. seq., each as amended from time to time; or

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(c)      otherwise relating to the pollution or the protection of human health or the environment.

"Fiscal Year" means the taxable year of the Company for federal income tax purposes, which shall be a calendar year.

"Funding Percentages" shall mean the percentages set forth as such for each Member on Exhibit B attached hereto.

"Hazardous Materials" means any substance that is toxic, ignitable, reactive or corrosive and that is regulated by statute, regulation, order or judicial decision, by any local government, the State of Texas or the United States Government and includes any and all materials or substances that are defined as "hazardous waste," "extremely hazardous waste" or a "hazardous substance" pursuant to state, federal or local governmental law.  "Hazardous Materials" includes, but is not restricted to, asbestos-containing materials, polychlorobiphenyls and petroleum.

"Including" or "including" shall mean "including, without limitation."

"Income Tax Regulations" or "Regulations" shall mean the final or temporary regulations promulgated from time to time under the Code or, if no final or temporary regulations with respect to a tax issue then are in effect, proposed regulations then in effect.

"Initial Capital Contributions" has the meaning set forth in Section 3.1 below.

"Liquidator" as used herein shall have the meaning assigned to it in Section 18.1(b).

"Manager" whether, one or more, shall mean the manager of the Company as may be designated as such from time to time by the Class B Member pursuant to the terms of this Agreement, which shall initially be Texas Capitalization Resource Group, Inc. an individual resident of the State of Texas.

"Members" shall mean, collectively, Synergy, One Industries and any other Person admitted as a Member under this Agreement, for so long as such Person remains a Member pursuant to the terms of this Agreement, and a "Member" shall mean any one such Person.

"Membership Interests" shall mean the ownership interest of a Member in the Company (which shall be considered personal property for all purposes), consisting of (i) such Member's interest in Profits, Losses, allocations of other items of income, gain, deduction, and loss and distributions, (ii) such Member's right to vote or grant or withhold Approvals with respect to Company matters as provided herein or in the Act, and (iii) such Member's other rights and privileges as provided in this Agreement.

"Member Nonrecourse Debt" has the meaning set forth for the term "partner nonrecourse debt" in Regulations Section 1.704-2(b)(4).

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

"Member Nonrecourse Debt Minimum Gain" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(2).

"Member Nonrecourse Deductions" has the meaning set forth for the term "partner nonrecourse deductions" in Regulations Section 1.704-2(i).

"Net Cash Flow," with respect to any Fiscal Year, shall mean (A) the sum of all cash receipts of the Company during such year from all sources (including any funds released during such Fiscal Year from cash reserves previously established), minus (without duplication) (B) (i) Capital Receipts, (ii) Net Mortgage Proceeds, and (iii) Operating Costs for such year (including, but not limited to, such reserves established during the Fiscal Year as shall be approved by the Manager from time to time).

"Net Mortgage Proceeds" shall mean (A) the sum of (i) the proceeds of any loan made to the Company and the proceeds from refinancing any such loans, plus (ii) any amount released from cash escrow accounts established under any loan to the Company, reduced by (B) the sum of (i) any amounts required to fund the Company's capital expenditures, as shall be set forth in the Approved Development Budget or otherwise approved by the Manager, (ii) any and all expenses incurred by the Company in connection with such loan or refinancing, (iii) amounts used, as shall be approved by the Manager, to repay other indebtedness of the Company plus (iv) amounts thereof retained as reserves under this Agreement as shall be approved by the Manager.

"Notices" has the meaning set forth in Section 20.5 below.

"Operating Costs" shall mean the sum of (i) all cash expenditures of the Company made during the Fiscal Year for current costs and expenses including, but not limited to (A) payments of interest and principal or other monetary obligations due under any loan made to the Company; (B) accounting, legal and auditing fees; (C) taxes payable by the Company; (D) public or private utility charges; (E) sales, use, payroll taxes and withholding taxes related thereto; and (F) all other operating costs, expenses and capital expenditures actually paid with respect to the Company's business; plus (ii) such operating reserves established during the Fiscal Year as shall be approved by the Manager from time to time.

"Participating Members" has the meaning set forth in Section 3.2(b) below.

"Percentage Interests" shall mean the percentages set forth as such for each Member on Exhibit B attached hereto.

"Permitted Transfers" has the meaning set forth in Section 14.1.

"Person" shall mean any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person where the context so admits.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

"Profit" and "Loss" means, for federal income tax purposes, for each Fiscal Year or other period, an amount equal to the Company's taxable income or tax loss for the Fiscal Year or other period, determined in accordance with Section 703(a) of the Code (including all items of income, gain, loss or deduction required to be stated separately under Section 703(a)(1) of the Code), with the following adjustments:

(a)      any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profit or Loss will be added to taxable income or tax loss;

(b)      any expenditures of the Company described in Section 705(a)(2)(B) of the I.R.C. or treated as Section 705(a)(2)(B) expenditures under Regulation Section 1.704-l(b)(2)(iv)(i), and not otherwise taken into account in computing Profit or Loss, will be subtracted from taxable income or tax loss;

(c)      gain or loss resulting from any disposition of Company Assets with respect to which gain or loss is recognized for federal income tax purposes will be computed by reference to the Asset Value of the property, notwithstanding that the adjusted tax basis of the property differs from its Asset Value;

(d)      in lieu of depreciation, amortization and other cost recovery deductions taken into account in computing taxable income or tax loss, there will be taken into account depreciation, amortization, and other cost recovery deductions for the taxable year or other period as determined in accordance with Regulation Section 1.704-l(b)(2)(iv)(g);

(e)      any items specially allocated pursuant to Section 5.3 shall not be considered in determining Profit or Loss; and

(f)      any increase or decrease to capital accounts as a result of any adjustment to the book value of Company Assets pursuant to Regulation Section 1.7041(b)(2)(iv)(f) or (g) shall constitute an item of Profit or Loss as appropriate.

"Side Letter" has the meaning set forth in Section 20.18 below.

"Sound Accounting Principles" means those sound and appropriate accounting principles and practices which are consistently applied for all periods so as to properly reflect the financial condition, and the results of operations and the cash flows of the Company.

"Substituted Member" has the meaning set forth in Section 15.1 below.

"Tax Matters Member" shall have the meaning set forth in Section 12.6.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

## ARTICLE II
## FORMATION OF THE COMPANY

Section 2.1.    <u>Formation</u>.  The Members hereby form a limited liability company pursuant to the terms of this Agreement and the relevant provisions of the Act. The Manager identified in the Certificate has caused the Certificate to be filed in the Office of the Secretary of State of Texas in accordance with the requirements of the Act and has obtained approval to do business in the State in which the Black Duck Assets are located.  From time to time, the Manager shall cause to be filed, and the Members agree to execute such further certificates of formation, qualifications to do business, fictitious name certificates, or like filings in such jurisdictions as may be necessary or appropriate in connection with the conduct of the Company's business or to provide notification of the limitation of liability of the Members under applicable law.  The Certificate is hereby adopted and incorporated by reference in this Agreement. In the event of any inconsistency between the Certificate and this Agreement, the terms of the Certificate shall govern.

Section 2.2.    <u>Name of Company</u>.  The name of the Company shall be "TCRG East Texas Pipeline 1, LLC" or such other name as may be approved by the Manager from time to time.

Section 2.3.    <u>Permitted Business</u>.  The business of the Company shall be:

(a)    Only to engage in the Business described under <u>Section 2.4</u> of this Agreement; and

(b)    To exercise all other powers necessary and reasonably connected with the Company's Business (as limited hereinabove) which may legally be exercised by limited liability companies under the Act.

Section 2.4.    <u>Purposes of the Company</u>.    The purposes of the Company are to (collectively, the "<u>Business</u>"):

(a)    to acquire, construct, develop, maintain, own, operate, lease, hold and sell or otherwise dispose of the Black Duck Assets; and

(b)    to carry on and engage in any and all other general business activities incidental or reasonably related to the foregoing, including, without limitation, borrowing money from any source, whether secured or unsecured, contracting for necessary or desirable services of professionals and others, acquiring, developing and owning the Black Duck Assets, all of the foregoing to be subject to the more specific terms and conditions set forth below in this Agreement.

The Company shall not, except as permitted by this Agreement, engage in any other activity or business and no Member shall (in his or its capacity as such) have any authority to hold himself out as a general agent of the Company.

Section 2.5.    Place of Business.  The principal place of business of the Company shall be located at 5201 Camp Bowie Blvd., Suite 200, Fort Worth, Texas 76107 or such other place as the Manager may from time to time determine.

Section 2.6.    Registered Office and Registered Agent.  The Company's registered agent in Texas shall be Robert L. Patton, Jr.  and the Company's registered office in Texas shall be 5201 Camp Bowie Blvd, Ste. 200, Fort Worth, TX 76107.  Such registered agent registered office may be changed from time to time in accordance with the Act if approved by the Manager.

Section 2.7.    Members; Funding Percentages; Percentage Interests.

(a)    The respective Funding Percentages, Initial Capital Contributions, and the Percentage Interests in the Company of the Members are as set forth on Exhibit B hereto. All references in this Agreement to Exhibit B are references to such Exhibit B as amended from time to time pursuant to this Agreement.

(b)    Unless the context otherwise clearly indicates, the terms "interest" or "interests" in the Company shall include the interests of all Members in the Company.  A Member's "interest" in the Company shall mean and include its share of the capital of the Company, its share of the Profits and Losses, its share of the distributions of the Company, its Capital Account, and its other rights and obligations under this Agreement.

Section 2.8.    Term of Company.  The term of the Company shall commence on the date the Certificate is filed (such date, the "Commencement Date") and shall survive until terminated and its business and assets liquidated in accordance with the provisions of Article XVIII.

Section 2.9.    Definitions.  Capitalized terms that are used in this Agreement shall have the meanings ascribed to such terms in Article I or are defined on the page(s) of this Agreement.

## ARTICLE III
## CAPITAL CONTRIBUTIONS
## AND ADDITIONAL CONTRIBUTIONS

Section 3.1.    Initial Capital Contributions.  At or prior to the closing of the acquisition of the Black Duck Assets, the Members shall contribute to the Company the amounts identified as Initial Capital Contributions opposite each Member's name set forth on Exhibit B attached hereto (the "Initial Capital Contributions").

Section 3.2.    Additional Capital Contributions by Members.

(a)    No Member shall be required to make any additional Capital Contribution or loans to the Company except as may be agreed to otherwise in this Agreement.

No Restoration Obligation.  No Member will have any obligation to restore any negative balance in its Capital Account upon liquidation or dissolution of the Company.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Section 3.3.    Return of Capital.  Except as herein provided with respect to distributions during the term of the Company or upon its liquidation, no Member has the right to demand a return of such Members' Capital Contributions to the Company (or the balance of such Member's Capital Account). Further, no Member has the right (i) to demand and receive any distribution from the Company in any form other than cash or (ii) to bring an action of partition against the Company or its property.  Except as expressly provided herein, no Member shall be entitled to or shall receive interest on such Member's Capital Contributions to the Company or Capital Account.  No Member may withdraw any capital from the capital of the Company except as expressly provided herein or under the Act.  No Member shall have any priority over any other Member with respect of the return of any Capital Contribution, except as expressly provided herein.

Section 3.4.    No Third Party Beneficiaries.  **THE PROVISIONS OF THIS __ARTICLE III__ ARE NOT INTENDED TO BE FOR THE BENEFIT OF AND SHALL NOT CONFER ANY RIGHT ON ANY CREDITOR OR OTHER PERSON (OTHER THAN A MEMBER IN SUCH MEMBER'S CAPACITY AS A MEMBER) TO WHOM ANY DEBTS, LIABILITIES OR OBLIGATIONS ARE OWED BY THE COMPANY OR ANY OF THE MEMBERS.**

### ARTICLE IV
### CAPITAL ACCOUNTS/ALLOCATIONS

Section 4.1.    Capital Accounts.  A separate Capital Account will be maintained for each Member in accordance with Regulation Section 1.704-1(b)(2)(iv). Consistent therewith, the Capital Account of each Member will be determined and adjusted as follows:

(a)    Each Member's Capital Account will be credited with:

(i)    Any contributions of cash made by such Member to the capital of the Company plus the Basis of any property contributed by such Member to the capital of the Company (net of any liabilities to which such property is subject or which are assumed by the Company);

(ii)    The Member's distributive share of Profit and items thereof allocated to such Member and other items of income or gain specially allocated to the Member pursuant to Section 4.3; and

(iii)    Any other increases required by Regulation Section 1.704-1(b)(2)(iv).

(b)    Each Member's Capital Account will be debited with:

(i)    Any distributions of cash made from the Company to such Member plus the fair market value of any property distributed in kind to such Member (net of any liabilities to which such property is subject or which are assumed by such Member);

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(ii)    The Member's distributive share of Loss and items thereof allocated to such Member and other items of loss or deduction specially allocated to the Member pursuant to Section 4.3; and

(iii)    Any other decreases required by Regulation Section 1.704-1(b)(2)(iv).

The provisions of this Section 4.1 relating to the maintenance of Capital Accounts have been included in this Agreement to comply with Section 704(b) of the Code and the Regulations promulgated thereunder and will be interpreted and applied in a manner consistent with those provisions.

Section 4.2.    Allocation of Profits and Losses.

(a)    *Profits*. Subject to the allocation of Profits from a Capital Transaction under Section 4.2(c) below, and the special allocation provisions of Section 4.3 of this Agreement, the Profits of the Company for any Fiscal Year (or portion thereof) shall be allocated as follows:

(i)    First, to the Members in accordance with their Percentage Interests until the aggregate Profits allocated to the Members pursuant to this Section 4.2(a)(i) for the current Fiscal Year and all previous Fiscal Years is equal to the aggregate Losses allocated to the Members pursuant to Section 4.2(b)(ii) for all previous Fiscal Years;

(ii)    Second, to the Members until the aggregate Profits allocated to the Members pursuant to this Section 4.2(a)(ii) for the current Fiscal Year and all previous Fiscal Years is equal to the cumulative amount of cash distributed to the Members pursuant to Section 5.1 or Section 5.2 for the current Fiscal Year and all previous Fiscal Years; and

(iii)    Third, the balance, if any, to the Members in accordance with their Percentage Interests.

(b)    *Losses*. Subject to the allocation of Losses from a Capital Transaction under Section 4.2(c) below and the special allocation provisions of Section 4.3 of this Agreement, the Losses of the Company for any Fiscal Year (or portion thereof) shall be allocated as follows:

(i)    First, to the Members in accordance with their Percentage Interests until the aggregate Losses allocated pursuant to this Section 4.2(b)(i) for the current Fiscal Year and all previous Fiscal Years is equal to the aggregate Profits previously allocated to the Members pursuant to Section 4.2(a)(v) hereof; provided that Losses shall not be allocated pursuant to this Section 4.2(b)(i) to the extent such allocation would cause any Member to have or increase any deficit balance in its Adjusted Capital Account Balance at the end of such Fiscal Year; and

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(ii)     Thereafter, to the Members in proportion to, and to the extent of, the remaining positive Adjusted Capital Account Balances.

(c)     Allocation of Profits and Losses from Capital Transaction.  In the event of a Capital Transaction (including in the year in which the Company liquidates pursuant to Article XVIII and all subsequent years (and for any prior years with respect to which the due date without regard to extensions for the filing of the Company's federal income tax return has not passed as of the date of the liquidation)), all items of income, gain, loss and deduction of the Company shall be allocated among the Members in a manner reasonably determined by Manager to cause to the nearest extent possible the Capital Account of each Member to equal the amount to be distributed to such Member pursuant to Section 5.2.

Section 4.3.    Special Allocations.

(a)     Minimum Gain Chargeback. Notwithstanding any other provision of this Article IV, if there is a net decrease in Company Minimum Gain during any Fiscal Year, then each Member shall be allocated such amount of income and gain for such year (and subsequent years, if necessary) determined under and in the manner required by Regulation Sections 1.704-2(f) and (g) as is necessary to meet the requirements for a minimum gain chargeback as provided in that Regulation.

(b)     Member Nonrecourse Debt Minimum Gain Chargeback. Notwithstanding any other provision of this Article IV except Section 4.3(a), if there is a net decrease in Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt during any Fiscal Year, any Member who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt determined in accordance with Regulation Section 1.704-2(i)(5), shall be allocated such amount of income and gain for such year (and subsequent years, if necessary) determined under and in the manner required by Regulation Section 1.704-2(i)(4) as is necessary to meet the requirements for a chargeback of Member Nonrecourse Debt Minimum Gain as is provided in that Regulation.

(c)     Qualified Income Offset. If a Member unexpectedly receives any adjustment, allocation or distribution described in Regulation Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of Company income and gain shall be specifically allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, any negative Capital Account balance of such Member as quickly as possible, provided that an allocation pursuant to this Subsection shall be made only if and to the extent that such Member would have a negative Capital Account balance after all other allocations provided for in Section 4.2 and this Section 4.3 tentatively have been made as if this Subsection (c) were not in this Agreement.

(d)     Limitation on Losses. Notwithstanding anything else contained in this Agreement, Losses allocated to any Member pursuant to Section 4.2 of this Agreement shall not exceed the maximum amount of Losses that may be allocated without causing such Member to have a negative Adjusted Capital Account Balance at the end of the Fiscal Year for which the allocation is made.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(e)     Code Section 754 Adjustment. To the extent that an adjustment to the Basis of any asset pursuant to Code Section 734(b) or Code Section 743(b) is required to be taken into account in determining Capital Accounts as provided in Regulation Section 1.704-l(b)(2)(iv)(m), the adjustment shall be treated (if an increase) as an item of gain or (if a decrease) as an item of loss, and such gain or loss shall be allocated to the Members consistent with the allocation of the adjustment pursuant to such Regulation.

(f)     Membership Nonrecourse Deductions.   Membership Nonrecourse Deductions (as determined under Regulation Section 1.704-2(c)) for any Fiscal Year shall be allocated among the Members in proportion to their Percentage Interests.

(g)     Member Nonrecourse Deductions. Any Member Nonrecourse Deductions shall be allocated pursuant to Regulation Section 1.704-2(i) to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which it is attributable.

(h)     Purpose and Application. The purpose and the intent of the special allocations provided for in this Section 4.3, are to comply with the provisions of Regulation Sections 1.704-1(b) and 1.704-2, and such special allocations are to be made so as to accomplish that result.  However, to the extent possible, the Manager, in allocating items of income, gain, loss, or deduction among the Members, shall take into account the special allocations, in such a manner that the net amount of allocations to each Member shall be the same as such Member's distributive share of Profits and Losses would have been had the events requiring the special allocations not taken place. The Manager shall apply the provisions of this Section 4.3 in whatever order the Manager reasonably believes will minimize any economic distortion that otherwise might result from the application of the special allocations.

Section 4.4.     Code Section 704(c) Tax Allocations.   Solely for tax purposes, and in accordance with Code Section 704(c), income, gain, loss, and deductions with respect to property contributed to the Company by a Member shall be shared among the Members so as to take account of the variation between the basis of the property to the Company for federal income tax purposes and its fair market value at the time of its contribution.  If the value of any property of the Company reflected in the Members' Capital Accounts is adjusted pursuant to Regulation Section 1.704-1(b)(2)(iv), thereafter, allocations of depreciation, depletion, amortization, and gain or loss with respect to such property shall be determined so as to take into account the variation between the adjusted tax basis and the adjusted value of such property as reflected in the Members' Capital Accounts in the same manner as under Code Section 704(c).  The Manager shall make allocations pursuant to Code Section 704(c) pursuant to any reasonable method set forth in Regulation Section 1.704-3.

Section 4.5.     Curative Allocations Regarding Payments to Related Companies of Members.  To the extent that compensation paid to a Member or an Affiliate of one or more Members by the Company, ultimately is determined not to be a payment to a third party, a payment to a Member other than in its capacity as such under Code Section 707(a), or a guaranteed payment under Code Section 707(c), such Member or Members shall be specially allocated gross income

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

of the Company in an amount equal to the amount of such compensation, and such Member or Member's Capital Account shall be adjusted to reflect the payment of such compensation.  If the Company's gross income for a Fiscal Year is less than the amount of such compensation paid in such year, such Member or Members shall be specially allocated gross income of the Company in the succeeding year or years until the total amount so allocated equals the total amount of such compensation.

## ARTICLE V
## DISTRIBUTIONS

Section 5.1.    <u>Net Cash Flow from Operations</u>.  The Manager shall, at or prior to the end of each Fiscal Year, determine the amount of Net Cash Flow, if any, and cause the Company to distribute or otherwise apply Net Cash Flow no later than forty-five (45) days after the end of each Fiscal Year, in each case, subject to the terms of <u>Section 5.3,</u> to the Members, pari passu, in accordance with their Percentages Interests.

Section 5.2.    <u>Net Mortgage Proceeds and Capital Receipts</u>.  Subject to any requirements imposed on the Company by any lender to the Company, the Manager shall, as soon as reasonably practicable following the occurrence of any event giving rise to Net Mortgage Proceeds or Capital Receipts, determine the amount of Net Mortgage Proceeds and Capital Receipts, if any, and distribute or otherwise apply Net Mortgage Proceeds and Capital Receipts, within sixty (60) days after receipt thereof by the Company, in each case, subject to the terms of <u>Section 5.3,</u> to the Members, pari passu, in accordance with their Percentage Interests; provided however, that no distributions shall be made to the Class A Member unless and until such time as the Class B Member has received one hundred percent (100%) of the amount of any and all loan or loans to the Company or advances money on its behalf in accordance with Section 9.6, as debts due from the Company.

Section 5.3.    <u>Distributions in Liquidation</u>.  Subject to <u>Section 18.1(c)</u> below, distributions in connection with the liquidation and winding up of the Company shall be made in the following order of priority:

(a)    First, to the payment of the reasonable expenses incurred in dissolution and termination;

(b)    Second, to the payment of creditors of the Company (other than the repayment of any loans from the Members) except secured creditors whose obligations will be assumed or otherwise transferred on a liquidation of the Company property or assets, and thereafter to the repayment, pro rata, of all such loans from the Members, if any; and

(c)    Third, the balance, if any, shall be paid and/or distributed to the Members in accordance with their respective positive Capital Account balances.

Notwithstanding anything contained in this Agreement to the contrary, in connection with the winding up and liquidation of the Company, to the extent that the allocation of Profit and Loss would not result in each Member having a Capital Account balance equal to the amount it would otherwise receive pursuant to <u>Section 5.2</u> (the "Target Final Balances"), then the Members agree,

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

to the extent necessary, to allocate Company items of income, gain, loss, and deduction for the taxable year in which winding up occurs, as well as any prior tax years that are still open, to produce such Target Final Balances.

Section 5.4.    General Distribution Rules.  This Section 5.4 is subject to Section 5.5 of this Agreement. The timing and amount of all distributions shall be in accordance with Sections 5.1, 5.2, 5.3 and 18.1(c).  All distributions of cash shall be made to the Members shown on the records of the Company to have been Members on the date of the distribution.  All distributions, upon request by a Member, shall be made by wire transfer in immediately available funds to such Member's account specified in such request.  Distributions of Net Cash Flow, Net Mortgage Proceeds and Capital Receipts made to a Member with respect to any Fiscal Year shall be deemed to be advances on account of such Member's share of the distributable amounts thereof and shall be subject to the terms, including, but not limited to any restrictive covenants, of any indenture, mortgage, lease agreement, or instrument to which the Company is a party or by which the Company or the Black Duck Assets are or may be bound.  For purposes of this Agreement, the term "distributable" with respect to such distributions shall mean the amount of such distributions as finally determined for the Fiscal Year in respect of which they were made.  Any over-distribution thereof to any Member in respect of a Fiscal Year shall be repaid by such Member to the Company and distributed to the Member(s) which has received an under-distribution on the later to occur of (i) thirty (30) days after the end of such Fiscal Year, or (ii) thirty (30) days after the Company has given notice thereof to such Member, which notice shall be given as soon as is practicable after the end of such Fiscal Year.

Section 5.5.    Special Distribution Rules.  Notwithstanding anything to the contrary in this Agreement, other than for distributions made for the purpose of addressing Member's tax liabilities for the applicable Fiscal Year, no distributions shall be made to any Class A Member unless and until such time as one hundred percent (100%) of all debts due from the Company have been paid in connection with any and all loans to the Company or other advances of money on the Company's behalf made pursuant to Section 9.6 of this Agreement.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES

Section 6.1.    In General.  As of the date hereof, each of the Persons specified below hereby makes each of the representations and warranties applicable to such Person as set forth in this Article VI, and such warranties and representations shall survive the execution of this Agreement.  Notwithstanding anything in this Agreement to the contrary, each Person making such representation and warranty shall indemnify and hold harmless the Company and the other Members for any breach or violation thereof.

Section 6.2.    Representations and Warranties of the Members.  Each Member hereby represents and warrants to the Company and the other Members that:

(a)    If such Member is an Entity, it is duly organized or duly formed, validly existing, and in good standing under the laws of the jurisdiction of its incorporation or formation and has the corporate, partnership, or other power and authority to own its property

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

and carry on its business as owned and carried on at the date hereof and as contemplated hereby. Such Member is duly licensed or qualified to do business and in good standing in each of the jurisdictions in which the failure to be so licensed or qualified would have a material adverse effect on its financial condition or its ability to perform its obligations hereunder. Such Member has the individual, corporate, partnership or other Entity power and authority to execute and deliver this Agreement and to perform its obligations hereunder and, if such Member is a corporation, partnership or other Entity, the execution, delivery, and performance of this Agreement has been duly authorized by all necessary corporate or partnership action.

(b)     Neither the execution, delivery, and performance of this Agreement nor the consummation by such Member of the transactions contemplated hereby (i) will conflict with, violate, or result in a breach of any of the terms, conditions, or provisions of any law, regulation, order, writ, injunction, decree, determination, or award of any court, any governmental department, board, agency, or instrumentality, domestic or foreign, or any mediator, applicable to such Member or any of its Affiliates, (ii) will conflict with, violate, result in a breach of, or constitute a default under any of the terms, conditions, or provisions of the certificate of formation, bylaws, company agreement, or partnership agreement of such Member or any of its Affiliates, if such Member is a corporation, limited liability company or partnership, or of any material agreement or instrument to which such Member or any of its Affiliates is a party or by which such Member or any of its Affiliates is or may be bound or to which any of its material properties or assets is subject, (iii) will conflict with, violate, result in a breach of, constitute a default under (whether with notice or lapse of time or both), accelerate or permit the acceleration of the performance required by, give to others any material interests or rights, or require any consent, authorization, or approval under any indenture, mortgage, lease agreement, or instrument to which such Member or any of its Affiliates is a party or by which such Member or any of its Affiliates is or may be bound, or (iv) will result in the creation or imposition of any lien upon any of the material properties or assets of such Member or any of its Affiliates; or (v) will conflict with, violate or result in a breach of any contract, agreement, covenant or understanding to which such Member or any of its Affiliates is a party or is otherwise bound.

(c)     Any registration, declaration or filing with or consent, approval, license, permit or other authorization or order by, any governmental or regulatory authority, domestic or foreign, that is required in connection with the valid execution, delivery, acceptance, and performance by such Member under this Agreement or the consummation by such Member of any transaction contemplated hereby has been completed, made, or obtained on or before the Effective Date.

(d)     There are no actions, suits, proceedings, or investigations pending or, to the knowledge of such Member or any of its Affiliates, threatened against or affecting such Member or any of its Affiliates or any of their properties, assets, or businesses in any court or before or by any governmental department, board, agency, or instrumentality, domestic or foreign, or any mediator which could, if adversely determined (or, in the case of an investigation could lead to any action, suit, or proceeding, which if adversely determined could) reasonably be expected to materially impair such Member's ability to perform its

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

obligations under this Agreement or to have a material adverse effect on the consolidated financial condition of such Member; and such Member or any of its Affiliates has not received any currently effective notice of any default, and such Member or any of its Affiliates is not in default, under any applicable order, writ, injunction, decree, permit, determination, or award of any court, any governmental department, board, agency, or instrumentality, domestic or foreign, or any mediator which could reasonably be expected to materially impair such Member's ability to perform its obligations under this Agreement or to have a material adverse effect on the consolidated financial condition of such Member.

(e)     Such Member is acquiring its interest in the Company based upon its own investigation, and the exercise by such Member of its rights and the performance of its obligations under this Agreement will be based upon its own investigation, analysis, and expertise. Such Member's acquisition of its interest in the Company is being made for its own account for investment, and not with a view to the sale or distribution thereof.

(f)     No broker has been involved in the formation of the Company or the transactions provided for herein, including, but not limited to, the acquisition of the Black Duck Assets, and no commission, finders' fee or other compensation is due any broker or other agent.

(g)     Such Member is (i) sophisticated in real estate transactions, (ii) has been provided such financial and other material information concerning the Company and the Black Duck Assets that the Company intends to acquire as of the Closing Date as it has requested or may require in connection with its investment in the Company and this Agreement, (iii) is able, either directly or through its agents and representatives, to evaluate such information, and (iv) is able to bear the financial risk of loss presented by an investment in the Company (which includes the risk of loss of such Member's entire investment), particularly in light of the risks that would be disclosed by a careful examination of such information and this Agreement, and the fact that the performance of the Company and its assets is subject to unpredictable real estate values and governmental and other risks of subdivision and development.

## ARTICLE VII
## RIGHTS AND OBLIGATIONS OF MEMBERS AND MANAGER

Section 7.1.     <u>Limited Liability</u>.  No Member shall be personally liable for any debts, liabilities, or obligations of the Company; provided that each Member shall be responsible (i) for the making of any Capital Contribution required to be made to the Company by such Member pursuant to the terms hereof and (ii) for the amount of any distribution made to such Member that must be returned to the Company pursuant to the terms hereof or the Act.

Section 7.2.     <u>Liability of a Member to the Company</u>.  When a Member has received a distribution made by the Company in violation of this Agreement or the Act, the Member is liable to the Company for a period of three years after such a prohibited distribution for the amount of the distribution wrongfully received.

COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC

Section 7.3.    Exculpation.  No partner, shareholder, member or other holder of an equity interest in a Member or any manager, officer, director or employee of any of the foregoing, shall be personally liable for the performance of any such Member's obligations under this Agreement, but the foregoing shall not relieve any partner, shareholder, member, equity holder, manager, officer, director or employee of any Member of its obligations to such Member.

Section 7.4.    Survival of Obligations.  Dissolution of the Company for any cause shall not release any party from any liability which at the time of dissolution or termination has already accrued to any party, nor affect in any way the survival of the rights, duties, and obligations of any party provided for in Articles VII, XII, XIII and XV of this Agreement.

Section 7.5.    Other Activities.  Each of the Members and its Affiliates shall be free to engage in any other businesses or activities and to receive the income and benefits thereof (and no other party shall have any interest therein by reason of this Agreement), and no Member shall have any duty or obligation to present to the Company or any other Member any such other business opportunities that are outside the scope or the purposes of the Business.

Section 7.6    Liability of Manager.

(a)    Notwithstanding anything contained herein to the contrary, the Manager shall not be liable, responsible or accountable in damages or otherwise to the Company or any Member for any acts performed in good faith and within the scope of this Agreement except if such Manager is adjudicated liable by a court of competent jurisdiction to have engaged in gross negligence, willful misconduct or fraud or to have breached a fiduciary duty (to the extent such exists under the Act or any other applicable law). The Company (but not any Member) shall indemnify, defend and hold the Manager harmless from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses and court costs) arising out of any act or failure to act by the Manager to the fullest extent provided for in the Act, including a negligent act or failure to act, if such act or failure to act is in good faith, within the scope of this Agreement and is not attributable to gross negligence, willful misconduct, fraud or a breach of a fiduciary duty (to the extent such exists under the Act or any other applicable law and is not effectively waived by this Agreement).

(b)    To the fullest extent permitted by the Act, the Manager, in performing its duties and obligations as manager under this Agreement, shall be entitled to act or omit to act at the direction of Member or Members that designated such person to serve as the Manager, provided that such Person has acted in good faith and considering only such factors, including the separate interests of the designating Member(s), as such the Manager or Member(s) choose to consider, and any action of the Manager or failure to act, taken or omitted in good faith reliance on the foregoing provisions shall not, as between the Company and the other Members, on the one hand, and the Manager or Member(s) designating such the Manager, on the other hand, constitute a breach of any duty (including any fiduciary or other similar duty, to the extent such exists under the Act or any other applicable law) on the part of such the Manager or Member(s) to the Company or any other Manager or Member of the Company. To the fullest extent permitted by the Act and except for the terms of this Agreement, other than any such duties set forth in this Agreement as the

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Manager may have to Member or Members that designated such Manager to serve as the Manager, no Manager, shall have any duty, fiduciary or otherwise, to the Company or to any Member. To the fullest extent permitted by applicable law, any act or omission of the Manager, the effect of which may cause or result in loss or damage to the Company or the Members, if done in good faith to promote the best interests of the Company, shall not subject the Manager to any liability to the Members.

(c)     Members (in their own names and in the name and on behalf of the Company) hereby:

(i)     agree that (A) the terms of this Section 7.6, to the extent that they modify or limit a duty or other obligation, if any, that a Member or the Manager may have to the Company, or any other Member, pursuant to the Act or other applicable law, are reasonable in form, scope and content; and (B) if this Section 7.6  is in conflict with a duty, if any, that the Manager may have to the Company or another Member, pursuant to the Act or any other applicable laws, the terms of this Section 7.6 shall control to the fullest extent permitted by the Act and any other applicable laws;

(ii)     waive to the fullest extent permitted by the Act, any duty (fiduciary or otherwise) or other obligation, if any, that a Member, in its capacity as such, may have to the Company or another Member, pursuant to the Act or any other applicable law, to the extent necessary to give effect to the terms of this Section 7.6, including any contractual appraisal rights or claims of oppression or similar minority rights that may be permitted under the Act or other applicable law; and

(iii)     acknowledge, affirm and agree that they would not be willing to make any investment in the Company, nor would the Manager be willing to serve as the Manager, in the absence of this Section 7.6.

(d)     The Company may purchase and maintain insurance, to the extent and in amounts the Manager deems reasonable, on behalf of the Manager and other Persons as the Manager shall determine, against any liability that may be asserted against or expenses that may be incurred by that Person in connection with the activities of the Company, regardless of whether the Company would have the power to indemnify that Person against the liability under this Agreement. The Company shall have no obligation to fund indemnification of any Person to the extent the liability is covered by insurance.

## ARTICLE VIII
## INDEMNIFICATION

Section 8.1.     General.  In expansion of, and not in limitation of the terms of Section 7.6, the Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of the Black Duck Assets) shall indemnify, save harmless, and pay all judgments and claims against each Member and Manager or any officers, directors, or similarly situated management officials of such Member or Manager relating to any liability or damage incurred by reason of any act performed or

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

omitted to be performed by such Member, Manager, officer, director or management official in connection with the business of the Company, including attorneys' fees incurred by such Member, Manager, officer, director or management official in connection with the defense of any action based on any such act or omission, which attorneys' fees may be paid as incurred, including all such liabilities under federal and state securities laws (including the Securities Act of 1933, as amended) as permitted by law.

Section 8.2. <u>Environmental</u>. In expansion of, and not in limitation of the terms of <u>Section 7.6</u>, the Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of the Black Duck Assets) shall indemnify and hold harmless, to the maximum extent permitted by law, each Member and Manager from and against any and all liabilities, sums paid in settlement of claims, obligations, charges, actions (formal or informal), claims (including, without limitation, claims for personal injury under any theory or for real or personal property damage), liens, taxes, administrative proceedings, losses, damages (including, without limitation, punitive damages), penalties, fines, court costs, administrative service fees, response and remediation costs, stabilization costs, encapsulation costs, treatment, storage or disposal costs, groundwater monitoring or environmental study, sampling or monitoring costs, other causes of action, and any other costs and reasonable expenses (including, without limitation, reasonable attorneys', experts', and consultants' fees and disbursements and investigative laboratory, and data review fees) imposed upon or incurred by any Member or Manager (whether or not indemnified against by any other party) arising from and after the date of this Agreement directly or indirectly out of:

        (a)     the past, present, or future treatment, storage, disposal, generation, use, transport, movement, presence, release, threatened release, spill, installation, sale, emission, injection, leaching, dumping, escaping, or seeping of any Hazardous Materials, or material containing or alleged to contain Hazardous Materials at or from any past, present or future properties or Company Assets; and/or

        (b)     the violation or alleged violation by the Company or any third party of any Environmental Law with regard to the past, present, or future ownership, operation, use, or occupying of any property or asset of the Company.

In expansion of, and not in limitation of the terms of <u>Section 7.6</u>, in addition, the Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of the Black Duck Assets) shall indemnify and hold harmless, to the maximum extent permitted by law, each Member and Manager from and against any and all liabilities, sums paid in settlement of claims, obligations, charges, actions (formal or informal), claims (including, without limitation, claims for personal injury under any theory or for real or personal property damage), liens, taxes, administrative proceedings, losses, damages (including, without limitation, punitive damages), penalties, fines, court costs, administrative service fees, response and remediation costs, stabilization costs, encapsulation costs, treatment, storage or disposal costs, sampling or monitoring costs, other causes of action, and any other costs and reasonable expenses (including, without limitation, reasonable attorneys', experts', and consultants' fees and disbursements and investigative laboratory, and data review fees) imposed upon or incurred by any Member or Manager (whether or not indemnified against by any other party) arising from and after the date of this Agreement

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

directly or indirectly out of the introduction or presence of, or exposure of persons or property to, mold at or from any past, present or future properties or Company Assets.

Section 8.3.    Limitations.

(a)    Notwithstanding anything to the contrary in any of Sections 8.1 and 8.2 above, no Manager or Member shall be indemnified from any liability for fraud, bad faith, willful misconduct, or gross negligence.

(b)    Notwithstanding anything to the contrary in any of Sections 8.1 and 8.2 above, in the event that any provision in any of such Sections is determined to be invalid in whole or in part, such Sections shall be enforced to the maximum extent permitted by law.

## ARTICLE IX
## MANAGEMENT OF THE COMPANY

Section 9.1.    General.

(a)    To the fullest extent permitted by the Act, (i) the business and affairs of the Company shall be managed by or under the direction of the Manager, and (ii) the power to act for or to bind the Company shall be vested exclusively in the Manager.  Subject to obtaining any necessary approvals hereunder, each Manager shall have the power and authority to execute and deliver contracts, instruments, filings, notices, certificates, and other documents of whatsoever nature on behalf of the Company (including, without limitation, the Certificate and any amendment thereto and any other certificate required or permitted to be filed by or on behalf of the Company pursuant to the Act or like law of any other jurisdiction) without the necessity of joinder of any other Manager.  The number of Managers of the Company shall be one (1), who shall be appointed by the Class B Member.  The Manager need not be a Member or resident of the State of Texas.  In expansion of, and not in limitation of the terms of Section 7.6, the Manager will not be liable or accountable, in damages or otherwise, to the Company or to the Members for anything the Manager may do or refrain from doing within the scope and authorization of this Agreement, except in the case of a willful breach of a material provision of this Agreement or gross negligence or willful misconduct in connection with the business and affairs of the Company.  The Manager shall not be entitled to receive compensation for its services as Manager.

(b)    The initial Manager of the Company shall be Robert L. Patton, Jr.  Upon the resignation or withdrawal of Robert L. Patton, Jr.  as a Manager, the Class B Member shall promptly appoint a successor.

(c)    Notwithstanding any provisions hereof to the contrary, the Manager shall have the power and authority, on behalf of the Company, to (i) acquire the Black Duck Assets, (ii) execute, on behalf of and in the name of the Company, a property management agreement, including, without limitation, a property management agreement by and between the Company and an Affiliate of One Industries, the Class B Member, and/or the Manager (iii) execute, on behalf of and in the name of the Company, all documents reasonably required, in

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

the judgment of the Manager, to obtain any and all loans from such lender(s) as approved by the Manager, in the Manager's sole discretion, including all amendments, extensions, renewals, replacements, increases, refinancings, and modifications thereof; and (iv) execute, on behalf of and in the name of the Company, all documents reasonably required in the judgment of the Manager to construct, develop, maintain, own, operate, lease, and hold the Black Duck Assets.

(d)     Unless authorized to do so by this Agreement or by the Manager, no Member (in its capacity as such), agent, or employee of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose However, the Members may act by a duly authorized attorney-in-fact.

(e)     The Manager may, from time to time, designate one or more persons to be officers of the Company. No officer need be a resident of the State of Texas, a Member or an officer or employee of the Manager. Any such officers so designated shall have such authority and perform such duties as the Manager may, from time to time, delegate to them. The Manager may assign titles to particular officers. Unless the Manager decide otherwise, if the title is one commonly used for officers of a business corporation formed under the Act (or any successor statute), the assignment of such title shall constitute the delegation to such officer of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made to such officer by the Manager pursuant to this Section 9.1(e) and the other terms and provisions of this Agreement. Each officer shall hold office until his successor shall be duly designated and shall qualify or until his death or until he shall resign or shall have been removed in the manner provided in this Agreement. Any number of offices may be held by the same person. No officer shall be entitled to any salary or other compensation. Any officer may resign at any time. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager. The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation. Any officer may be removed as such, either with or without cause, by the Manager; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed. Designation of an officer shall not of itself create contract rights. Any vacancy occurring in any office of the Company may be filled by the Manager.

Section 9.2.     Affiliate Agreements.  Except as otherwise expressly provided herein, when any service or activity to be performed on behalf of the Company is performed by an Affiliate of a Member, the fees and any other payments thereunder shall not exceed prevailing market rates and the terms thereof must otherwise be competitive in the Fort Worth, Texas Metropolitan Statistical Area and be at least as favorable to the Company as are generally available in arm's length transactions between unrelated parties for similar properties and services.  If any transaction by a Member with respect to Company business with an Affiliate occurs, the affiliated Member shall promptly notify the Members of such transaction and the terms and conditions thereof.

Section 9.3.     Reserved.

Section 9.4.     Reserved.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Section 9.5.    Approvals by Members.  Notwithstanding anything else contained in here to the contrary, the term "Approved by" or "approved by" or "Consented to by" or "consented to by" or "Consent of" or "consent of" or "satisfactory to" means (a) with respect to an approval by the Class A Member, a decision or action which has been consented to in writing by the Class A Member, (b) with respect to an approval of the Class B Member, a decision or action which has been consented to in writing by the Class B Member, and (c) with respect to an approval of the Members, a decision or action which has been approved to in writing by both the Class A Member and the Class B Member.

Section 9.6    Loans. Notwithstanding anything else contained herein to the contrary: (i) the Members and any Affiliate of any Member may, but shall not be required to, loan money to the Company if necessary to achieve the purposes of the Company as set forth in Section 2.4, and the Company may accept such a loan from any Member or any Affiliate of any Member with the Approval of the Class B Member; (ii) if any Member shall make any loan or loans to the Company or advance money on its behalf in accordance with this Section 9.6, the amount of any such loan or advance shall not be treated as a Capital Contribution but shall be a debt due from the Company and documented as such; (iii) the amount of any such loan or advance by a lending Member or any Affiliate of any Member shall bear interest at a rate equal to or less than prevailing market rates in the market where the Black Duck Assets is located, but in no event in excess of the maximum rate permitted by law. No Member shall be obligated to make any loan to the Company. Notwithstanding anything else contained herein to the contrary, the Manager, without the consent of the Class A Member, shall be permitted to refinance any First Lien Loan or other loan or indebtedness by obtaining a loan from the Class B Member and/or any Affiliate of the Class B Member at any time, subject to Section 9.2. In connection therewith, the Class A Member agrees to  cooperate with the Manager and Class B Member, including, without limitation, upon request from the Class B Member and/or the Manager, to sign applications, affidavits and other documentation, including, without limitation, any written Member consents related to: (ww) any Approvals by Members; (xx) any refinancing and/or renewal or modification of any First Lien Loan or other loan or indebtedness, (yy) additional capitalization of the Company by the Class B Member and/or its Affiliates, and/or (zz) any loans from the Class B Member and/or its Affiliates to the Company in accordance with the terms of this Section 9.6, provided, such cooperation does not require any of the Class A Member or its Affiliates to agree to become personally liable on, or in respect of, or to guarantee, any indebtedness of the Company; provided further, however, the terms of this sentence shall not be construed to create any Approval rights of the Class A Member.

## ARTICLE X
## MEETINGS OF MEMBERS

Section 10.1.    Place of Meetings and Meetings by Telephone.  Meetings of Members shall be held at any place designated by the Manager.  In the absence of any such designation, meetings of Members shall be held at the principal place of business of the Company.  Any meeting of the Members may be held by conference telephone or similar communications equipment so long as all Members participating in the meeting can hear one another, and all Members participating by telephone or similar communications equipment shall be deemed to be present in person at the meeting.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Section 10.2.    Call of Meetings.  Meetings of the Members may be called at any time by any Member for the purpose of taking action upon any matter requiring the vote or authority of the Members as provided in this Agreement or upon any other matter as to which such vote or authority is deemed by the Members to be necessary or desirable. Meetings of the Members shall be called promptly by the Manager upon the written request of any Member.

Section 10.3.    Notice of Meetings of Members.  All notices of meetings of Members shall be sent or otherwise given in accordance with Section 20.5 not less than five (5) nor more than ninety (90) days before the date of the meeting.  The notice shall specify (i) the place, date, and hour of the meeting, and (ii) the general nature of the business to be transacted.

Section 10.4.    Manner of Giving Notice.  Notice of any meeting of Members shall be given personally or by telephone to each Member or sent by first class mail, by telegram or telecopy (or similar electronic means), or by a nationally recognized overnight courier, charges prepaid, addressed to the Member at the address of that Member appearing on the books of the Company or given by the Member to the Company for the purpose of notice.  Notice shall be deemed to have been given at the time when delivered either personally or by telephone, or at the time when deposited in the mail or with a nationally recognized overnight courier, or when sent by telegram or telecopy (or similar electronic means).

Section 10.5.    Adjourned Meeting, Notice.  Any meeting of Members, whether or not a quorum is present, may be adjourned from time to time by the vote of all Members represented at that meeting, either in person or by proxy.  When any meeting of Members is adjourned to another time or place, notice need not be given of the adjourned meeting, unless a new record date of the adjourned meeting is fixed or unless the adjournment is for more than sixty (60) days from the date set for the original meeting, in which case the Manager shall set a new record date and shall give notice in accordance with the provisions of Sections 10.3 and 10.4. At any adjourned meeting, the Company may transact any business that might have been transacted at the original meeting.

Section 10.6.    Quorum, Voting.  At any meeting of the Members, a duly authorized representative of both the Class A Member and the Class B Member must be present in order to have a quorum.  Except as otherwise required by this Agreement or applicable law, all matters shall be determined by a vote of the Members necessary to provide for Approval of the Class A Member and the Class B Member.

Section 10.7.    Waiver of Notice by Consent of Absent Members.  The conduct of a meeting of Members, however called and noticed and wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice if a quorum is present either in person or by proxy and if either before or after the meeting each person entitled to vote to provide for Approval of the Members who was not present in person or by proxy signs a written waiver of notice or a consent to a holding of the meeting or an approval of the minutes.  The waiver of notice or consent need not specify either the business to be transacted or the purpose of any meeting of Members.  Attendance by a person at a meeting shall also constitute a waiver of notice of that meeting, except when the person objects at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened and except that attendance at a meeting is not a waiver of any

right to object to the consideration of matters not included in the notice of the meeting if that objection is expressly made at the beginning of the meeting.

Section 10.8.    Member Action by Written Consent Without a Meeting.  Except as provided in this Agreement, any action that may be taken at any meeting of Members may be taken without a meeting and without prior notice if a consent in writing setting forth the action so taken is signed by the Members necessary to provide for Approval of the Members.  Any such written consent may be executed and given by telecopy or similar electronic means.  Such consents shall be filed with the Company and shall be maintained in the Company's records.

Section 10.9.    Record Date for Member Notice, Voting, and Giving Consents.

(a)    For purposes of determining the Members entitled to vote or act at any meeting or adjournment thereof, the Manager may fix in advance a record date which shall not be greater than ninety (90) days nor fewer than five (5) days before the date of any such meeting.  If the Manager do not so fix a record date, the record date for determining Members entitled to notice of or to vote at a meeting of Members shall be at the close of business on the Business Day immediately preceding the day on which notice is given, or if notice is waived, at the close of business on the Business Day next preceding the day on which the meeting is held.

(b)    The record date for determining Members entitled to give consent or approval to action in writing without a meeting, (i) when no prior action of the Manager has been taken, shall be the day on which the first written consent is given or (ii) when prior action of the Manager has been taken, shall be (x) such date as determined for that purpose by the Manager, which record date shall not precede the date upon which the resolution fixing it is adopted by the Manager and shall not be more than twenty (20) days after the date of such resolution or (y) if no record date is fixed by the Manager the record date shall be the close of business on the day on which the Manager adopts the resolution relating to that action.

(c)    Only Members of record on the record date as herein determined shall have any right to vote or to act at any meeting or give consent or approval to any action relating to such record date.

Section 10.10.    Proxies.  Every Member entitled to vote or act on any matter at a meeting of Members shall have the right to do so either in person or by proxy, provided that an instrument authorizing such a proxy to act is executed by the Member in writing and dated not more than eleven (11) months before the meeting, unless the instrument specifically provides for a longer period.  A proxy shall be deemed executed by a Member if the Member's name is placed on the proxy (whether by manual signature, typewriting, telegraphic transmission, or otherwise) by the Member or the Member's attorney-in-fact.  A valid proxy that does not state that it is irrevocable shall survive continue in full force and effect unless (i) revoked by the person executing it before the vote pursuant to that proxy by a writing delivered to the Company stating that the proxy is revoked, by a subsequent proxy executed by or attendance at the meeting and voting in person by the person executing that proxy or (ii) written notice of the death or incapacity of the maker of that proxy is received by the Company before the vote pursuant to that proxy is counted. A proxy purporting to be executed by

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

or on behalf of a Member shall be deemed valid unless challenged at or prior to its exercise and the burden of proving invalidity shall rest on the challenger.

## ARTICLE XI
## RECORDS AND INSPECTION

Section 11.1.    <u>Maintenance and Inspection of Membership Interest Register</u>.    The Company shall maintain at its principal place of business a record of its Members, giving the names and addresses of all Members and the Percentage Interest held by each Member.  Subject to such reasonable standards (including standards governing what information and documents are to be furnished and at whose expense) as may be established by the Manager from time to time, each Member has the right to obtain from the Company from time to time upon reasonable demand for any purpose reasonably related to the Member's interest as a Member of the Company a record of the Company's Members.

Section 11.2.    <u>Maintenance and Inspection of Limited Liability Company Agreement</u>.  The Company shall keep at its principal place of business the original or a copy of this Agreement as amended to date, which shall be open to inspection by the Members at all reasonable times during office hours.

Section 11.3.    <u>Maintenance and Inspection of Other Records</u>.  The accounting books and records, minutes of proceedings of the Members and the Company and any committees or delegates of the Company, and all other information pertaining to the Company that is required to be made available to the Members under the Act shall be kept at such place or places designated by the Manager or in the absence of such designation, at the principal place of business of the Company. The minutes shall be kept in written form and the accounting books and records and other information shall be kept either in written form or in any other form capable of being converted into written form.  The books of account and records of the Company shall be maintained, for tax purposes only, in accordance with Sound Accounting Principles during the term of the Company, wherein all transactions, matters, and things relating to the business and properties of the Company shall be currently entered.  Subject to such reasonable standards (including standards governing what information and documents are to be furnished and at whose expense) as may be established by the Manager from time to time, minutes, accounting books and records, and other information shall be open to inspection upon the written demand of any Member at any reasonable time during usual business hours for a purpose reasonably related to the Member's interests as a Member.  Any such inspection shall be made in person or by agent or attorney and shall include the right to copy and make extracts.

Section 11.4.    <u>Inspection by the Members</u>.  The Members shall have the right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the Company for a purpose reasonably related to his or her position as a Member.  This inspection by a Member may be made in person or by an agent or attorney and the right of inspection includes the right to copy and make extracts of documents.

## ARTICLE XII
## FINANCIAL REPORTS, TAX MATTERS, ETC.

Section 12.1.    <u>Financial Reports</u>.  The Manager shall cause to be prepared (i) as of the end of each Fiscal Year of the Company, (ii) as of the date of liquidation of the Company, and (iii) as of such additional dates as the Manager may determine appropriate financial statements showing the assets, liabilities, capital, profits, expenses, losses, and recovered and unrecovered capital expenditures of the Company and a statement showing all amounts credited and debited to each Member's Capital Account and of each Member's distributive share, for federal income tax purposes (which shall be determined in accordance with Sound Accounting Principles), of income, gains, deductions, losses, and credits (or items thereof) arising out of Company operations, as required by law, and a further statement reconciling any difference between the Member's respective Capital Accounts as shown in such financial statements and their Capital Accounts as determined in accordance with the provisions of this Agreement. A copy of each such report shall be delivered to each Member within ninety (90) days after each such applicable date.

Section 12.2.    <u>Monthly Reports</u>.  The Manager shall prepare on a monthly basis and furnish to the Members, with respect to the Company, a balance sheet and income statement.

Section 12.3.    <u>Company Funds</u>.  Pending application or distribution, the funds of the Company shall be deposited in such bank accounts, or invested in such interest-bearing or non-interest bearing investments, including, without limitation, federally insured checking and savings accounts, certificates of deposit, government issued or backed securities, or mutual funds investing primarily in such types of securities, as shall be designated by the Manager.  Such funds shall not be commingled with the funds of any other person.  Withdrawals therefrom shall be made upon such signatures as the Manager may designate.  Deposits of Company funds into any federally unsecured institution shall not be limited by the amount of available federal deposits insurance.

Section 12.4.    <u>Tax Returns</u>.  The Manager shall cause the Company to prepare all income tax and other tax returns of the Company.  The Manager shall file all such returns and furnish to each Member a copy of all such returns together with all schedules thereto and such other information which each Member may reasonably request in connection with such Member's own tax affairs.

Section 12.5.    <u>Tax Elections</u>.  At the request of either the transferor or transferee in connection with a transfer of a Membership Interest in the Company Approved by the Members, the Manager shall cause the Company to make the election provided for in Code Section 754 and maintain a record of the adjustments to the tax basis of Property resulting from that election. Any such transferee shall pay all costs incurred by the Company in connection with such election and the maintenance of such records.

Section 12.6.    <u>Tax Matters Member</u>.  The Manager shall designate, from time to time, the Member that shall act as the Tax Matters Member on behalf of the Company.

(a)    The Tax Matters Member shall, within ten (10) Business Days of receipt thereof, forward to each Member a photocopy of any material correspondence relating to the

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Company received from the Internal Revenue Service outside of the ordinary course of the Company's business.  The Tax Matters Member shall, within ten (10) Business Days thereof, advise each Member in writing of the substance of any material conversation held with any representative of the Internal Revenue Service outside of the ordinary course of the Company's business.

(b)     Any costs incurred by the Tax Matters Member for retaining accountants and/or lawyers on behalf of the Company in connection with any Internal Revenue Service audit of the Company shall be expenses of the Company.  Any accountants and/or lawyers retained by the Company in connection with any Internal Revenue Service audit of the Company shall be selected by the Tax Matters Member and the fees therefor shall be expenses of the Company.

## ARTICLE XIII
## NONDISCLOSURE OF INFORMATION

Section 13.1.     Confidentiality.  All disclosures of trade secrets, know-how, financial information, or other confidential information made by the Company to any Member or made by any Member under or in connection with this Agreement, shall be received and maintained in confidence by the recipient during the term hereof and for three (3) years after termination of the Company and each Member shall treat all such trade secrets, know-how, financial information or other confidential information as confidential except:

(a)     as to the persons directly responsible for the performance of the obligations of this Agreement and for the effective operation of the Company;

(b)     as to the professional advisers of the Members and the Company;

(c)     as to such disclosures to customers, actual or prospective financial institutions, lenders to or other actual or prospective equity investors in the Black Duck Assets and other persons, as are necessary for the effective carrying on of business by the Company;

(d)     as to such information as is required by law to be disclosed by the Members or the Company; and

(e)     as to such information as is or may fall within the public domain otherwise than in violation of the provisions of this Section 13.1.

Section 13.2.     Duty of Care.  Each Member will take such steps as lie within its power to assure that all officers and employees of the Company, to whom confidential information is disclosed, take all proper precautions to prevent the unauthorized disclosure and use of the confidential information referenced in Section 13.1.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

## ARTICLE XIV
## TRANSFERABILITY

Section 14.1.    Restrictions on Transferability.  Except for a Permitted Transfer (defined below), no transfer of (i) all or any part of a Member's Membership Interest in the Company (including the transfer of any rights to receive or share in profits, losses, income or the return of contributions) or (ii) all or any part of the equity interest in an Entity which is a Member shall be effective unless and until approved as provided in the following sentence and written notice (including the name and address of the proposed purchaser, transferee, or assignee and the date of such transfer) has been provided to the Company and the non-transferring Members.  Unless a Permitted Transfer, if all of the non-transferring Members necessary to provide for Approval of the Members do not consent in writing to the proposed sale or assignment of a transferring Member's Membership Interest, which consent may be withheld in their sole discretion, such Membership Interest (or any rights therein or associated therewith) may not be transferred and any such purported transfer shall be null and void.  The following transfers of a Member's Membership Interest in the Company or of the equity interests in an Entity which is a Member shall be permitted at any time or from time to time (the "Permitted Transfers"):  (ww) a transfer of any or all of the Membership Interests to and/or by the Class A Member and/or an Affiliate of the Class A Member; (xx) a transfer of all or any part of the equity interests in the Class A Member and/or an Affiliate of the Class A Member; (yy) a transfer of any or all of the Membership Interests to and/or by the Class B Member and/or an Affiliate of the Class B Member; or (zz) a transfer of all or any part of the equity interests in the Class B Member and/or an Affiliate of the Class B Member.

Notwithstanding anything herein to the contrary, no transfer of a Member's Membership Interest shall be permitted to occur if such transfer would cause the Company to terminate under Code Section 708(b)(1)(B) in the opinion of the Manager.

Section 14.2.    Restrictions on Resignation.  Notwithstanding anything to the contrary contained herein or under the Act, except in connection with a Permitted Transfer, no Member shall have the right to resign or withdraw from the Company without the written consent of the Manager. In the event a Member attempts to resign or withdraw in violation of the foregoing provision, (i) the Company shall not be obligated to pay any amounts to the Member, nor to distribute any of the Black Duck Assets to the Member or any interest therein, (ii) the Member shall be deemed to have forfeited any rights to legal or beneficial ownership of its Membership Interest, and (iii) the Company may recover from the resigning or withdrawing Member damages for breach of this Agreement.

## ARTICLE XV
## SUBSTITUTED MEMBERS

Section 15.1.    Substituted Members.  Any transferee acquiring the Membership Interest of a Member pursuant to a Permitted Transfer (provided that such transferee is an Affiliate (as described in clause (a) or clause (b)(i) of the definition of Affiliate) of either One Industries or Synergy) or as otherwise permitted under Article XIV shall be admitted as a substituted Member (a "Substituted Member") with respect to the Membership Interest transferred concurrently with the effectiveness of the transfer (provided that such transferee, unless already a Member, shall, as a condition to such

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

admission, execute a counterpart of this Agreement, agreeing thereby to be bound by all of the terms and conditions hereof), and upon the satisfaction of such condition to admission as a Substituted Member specified herein, such Substituted Member shall be entitled to all of the rights and benefits under this Agreement of the transferor of such Membership Interest.  Any other transferee shall be admitted as a substituted Member on such terms and conditions as may be Approved by the Members. No purported transfer of any Membership Interest, or any portion thereof or interest therein, in violation of the terms of this Agreement (including any transfer occurring by operation of law) shall vest the purported transferee with any rights, powers, or privileges hereunder, and no such purported transferee shall be deemed for any purposes as a Member hereunder or have any right to vote or consent with respect to Company matters, to inspect Company records, to maintain derivative proceedings, to maintain any action for an accounting or to exercise any other rights of a Member hereunder or under the Act.

## ARTICLE XVI
## COVENANT AGAINST PARTITION/RESIGNATION

Section 16.1.     Waiver of Partition.  No Member shall, either directly or indirectly, take any action to require partition, file a bill for Company accounting or appraisement of the Company or of any of its assets or properties or cause the sale of any Company Property, and notwithstanding any provisions of applicable law to the contrary, each Member (and each of his legal representatives, successors, or assigns) hereby irrevocably waives any and all rights it may have to maintain any action for partition or to compel any sale with respect to his Membership Interest, or with respect to any assets or properties of the Company, except as expressly provided in this Agreement.

Section 16.2.     Covenant Not to Resign or Dissolve.  Notwithstanding any provision of the Act to the contrary, to the fullest extent permitted by the Act, each Member hereby covenants and agrees that the Members have entered into this Agreement based on their mutual expectation that all Members will continue as Members and carry out the duties and obligations undertaken by them hereunder and that, except as otherwise expressly required or permitted hereby, each Member hereby covenants and agrees not to (a) take any action to file a certificate of dissolution or its equivalent with respect to itself, (b) take any action that would cause a voluntary Bankruptcy of such Member, (c) withdraw or attempt to withdraw from the Company, (d) exercise any power under the Act to dissolve the Company, (e) transfer all or any portion of its Membership Interest in the Company, (f) petition for judicial dissolution of the Company, or (g) demand a return of such Member's contributions or profits (or a bond or other security for the return of such contributions or profits) without the unanimous consent of the Manager.

## ARTICLE XVII
## ADDITIONAL MEMBERS

Section 17.1.     Additional Members.  Subject to the Manager first providing the Members the opportunity to participate in any additional capital calls in accordance with the terms of Section 3.2(b), (i) additional Members may be admitted to the Company only with the Approval of the Members; and (ii) the Capital Contribution and the Percentage Interest of any additional Member shall be determined in accordance with the terms of such Approval.  Any additional Member shall

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

execute a counterpart of this Agreement, agreeing thereby to be bound by all of the terms and provisions hereof; provided that prior to or concurrently with the admission of an additional Member, the Members shall adopt such amendments to this Agreement as they deem appropriate to cause the provisions hereof that contemplate only two Members to be appropriately modified to operate in the context of three or more Members.

## ARTICLE XVIII
## TERMINATION AND LIQUIDATION OF THE COMPANY

Section 18.1.     Termination.

(a)      The Company shall be terminated upon the earliest to occur of the following:

(i)      the occurrence of any event that causes a termination of the Company under the Act, unless the business of the Company is continued by the consent of all remaining Members within ninety (90) days following the occurrence of any such event;

(ii)      all or substantially all of the Company's assets and properties have been sold, taken in condemnation, or otherwise disposed and reduced to cash; or

(iii)      a termination of the Company is Approved by the Members.

(b)      Upon termination of the Company, the Manager or, if the Bankruptcy, withdrawal or dissolution of the Manager has caused the dissolution of the Company, such other person as is Approved by the Class B Member (such person being herein referred to as the "Liquidator") shall proceed to wind up the business and affairs of the Company in accordance with the terms hereof and the requirements of the Act.  A reasonable amount of time shall be allowed for the period of winding up in light of prevailing market conditions and so as to avoid undue loss in connection with any sale of Company Assets.  This Agreement shall remain in full force and effect during the period of winding up.

(c)      In connection with the winding up of the Company, before the later to occur of the end of the Fiscal Year of the Company or the ninetieth day after the liquidation of the Company within the meaning of Regulation Section 1.704-1 (b)(2)(ii)(g), the Company Assets shall be distributed in accordance with Section 5.3 above; provided, however, with the Approval of the Members, a pro rata portion of the distributions that would otherwise be made to the Members under (iii) above may be distributed to a trust established for the benefit of the Members for the purposes of liquidating Company Assets, collecting amounts owed to the Company, and paying any contingent or unforeseen liabilities or obligations of the Company arising out of or in connection with the Company.  The assets of any trust established under this Section 18.1 will be distributed to the Members from time to time by the trustee of the trust upon Approval of the Members in the same proportions as the amount distributed to the trust by the Company would otherwise have been distributed to the Members under this Agreement.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

(d)     If distributions are insufficient to return to any Member the full amount of such Member's Capital Contributions, such Member shall have no recourse against any other Member.  No Member shall have any obligation to restore, or otherwise pay to the Company, any other Member, or any third party, the amount of any deficit balance in such Member's Capital Account upon dissolution and liquidation.  Following the completion of the winding up of the affairs of the Company and the distribution of its assets, the Company shall be deemed terminated and the Liquidator shall file a certificate of cancellation in the Office of the Secretary of State of the State of Texas as required by the Act.

Section 18.2.     Deemed Liquidation.  If no event resulting in termination of the Company has occurred, but the Company is deemed terminated for federal income tax purposes within the meaning of Code §708(b)(1)(B), the Company shall not be wound up and dissolved but its assets and liabilities shall be deemed to have been contributed to a new Company for federal income tax purposes and shall operate and be governed by the terms of this Agreement.

## ARTICLE XIX
## RESERVED

## ARTICLE XX
## MISCELLANEOUS

Section 20.1.     Amendment.     Except as expressly provided in this Agreement, this Agreement may be modified or amended only upon the written agreement of both the Class A Member and the Class B Member.

Section 20.2.     Checks, Drafts, Evidence of Indebtedness.     All checks, drafts, or other orders for the payment of money, notes, or other evidence of indebtedness issued in the name of or payable to the Company shall be signed or endorsed in such manner and by such person or persons as shall be designated from time to time in accordance with the resolution of the Manager.

Section 20.3.     Contracts and Instruments, How Executed.     The Manager, except as otherwise provided in this Agreement, may authorize any Manager(s) or agent(s) to enter into any contract or execute any instrument in the name of and on behalf of the Company and this authority may be general or confined to specific instances; and unless so authorized or ratified by the Manager (or otherwise specified in this Agreement), no agent shall have any power or authority to bind the Company by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

Section 20.4.     Representation of Shares of Other Entities Held by the Company.     The Manager, or any other person authorized by the Manager, is authorized to vote or represent on behalf of the Company any and all shares of any corporation, partnership, trust, or other entity, foreign or domestic, standing in the name of the Company. The authority granted herein may be exercised in person or by a proxy duly executed by such designated person.

Section 20.5.     Notices.     All notices, demands, requests, consents, approvals, and other communications (collectively "Notices"), required or permitted to be given hereunder, shall be in

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

writing and sent by (i) hand delivery, (ii) electronic transmission (whether by email, facsimile or similar device), (iii) registered or certified mail, postage prepaid, return receipt requested; or (iv) special delivery service (e.g., Federal Express, DHL, UPS, etc.); addressed to the Person to be so notified as follows:

If to Class A Member:

Synergy Midstream, LLC
John M. Terrill, Manager
12036 North May
Oklahoma City, OK 731290
Telephone: 405-254-3900
Cell- 405-706-3831
Email : john@synergyadvisorsgroup.com

If to the Class B Member:

One Industries Group, L.P.
By its General Partner, One Industry, Inc.
5201 Camp Bowie Blvd, Ste. 200
Fort Worth, TX 76107
Telephone: 817-626-9898
Telecopier: 817624-1374
Email: Patton@tcrg.com

With a copy to:

Craig M. Crockett
THE CROCKETT FIRM
5201 Camp Bowie Blvd. Suite 200
Fort Worth, Texas 76107
Telephone: 817-810-0400
Telecopier: 817-719-9450
E-Mail: craig@crockettfirm.com

Each Notice sent in accordance with the requirements of this section shall be deemed effectively given upon actual receipt.  Each Person designated herein to receive any Notice or a copy thereof may change the address at which, or the Person to whom, Notice or a copy thereof is to be delivered, by Notice given in accordance with the requirements of this section.  Any Notice to any additional Member not specifically listed by name and address herein, or to any assignee, shall be given, in a similar manner, to such Person at the address thereof on the books and records of the Company.

Section 20.6.    Governing Law.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas.

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

Section 20.7.    Headings.  The Article and Section headings of this Agreement are for convenience only, do not form a part of this Agreement, and shall not in any way affect the interpretation hereof.

Section 20.8.    Extension Not a Waiver.  No delay or omission in the exercise of any power, remedy or right herein provided or otherwise available to a Member or the Company shall impair or affect the right of such Member or the Company thereafter to exercise the same. Any extension of time or other indulgence granted to a Member hereunder shall not otherwise alter or affect any power, remedy or right of any other Member or of the Company, or the obligations of the Member to whom such extension or indulgence is granted.

Section 20.9.    Creditors Not Benefited.  Nothing contained in this Agreement is intended or shall be deemed to benefit any creditor of the Company or any creditor of any Member, and no creditor of the Company shall be entitled to require the Company or the Members to solicit or accept any Capital Contribution or other contribution for the Company or to enforce any right which the Company or any Member may have against any Member under this Agreement.

Section 20.10.    Publicity.  No Member shall issue any press release or otherwise publicize or disclose the terms of this Agreement or the terms of the Members' acquisition of the Membership Interests in the Company, without the consent of the other Members, except as such disclosure may be made in the course of normal reporting practices by a Member to its partners, shareholders, consultants or members or as otherwise required by law. Nothing herein shall prohibit or limit a Member's or its Affiliates' ability to market the Black Duck Assets for sale or lease.

Section 20.11.    Construction.  No oral explanation of or oral information relating to this Agreement offered by any party hereto shall alter the meaning or interpretation of this Agreement.

Section 20.12.    Further Action.  Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

Section 20.13.    Variation of Pronouns.  All pronouns and any variations thereof shall be deemed to refer to masculine, feminine, or neuter, singular or plural, as the identity of the person or persons may require.

Section 20.14.    Successors and Assigns.  Subject to the restrictions on transfer set forth in Article XIV, this Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 20.15.    Reserved.

Section 20.16.    Ambiguities.  All of the parties to this Agreement have participated in the negotiation and drafting hereof.  Accordingly, it is understood and agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. In the event that any language of this Agreement is found to be ambiguous, each party shall have an opportunity,

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

in any legal proceeding, to present evidence as to the actual intent of the parties with respect to any such ambiguous language.

Section 20.17.  <u>Entire Agreement</u>.  The terms and conditions contained herein (including all Exhibits hereto) constitute the entire agreement between the Members concerning the subject matter hereof, and shall supersede all previous communications, either oral or written, between the parties hereto, and no agreement or understanding varying or extending this Agreement shall be binding upon either Member unless in writing, signed by a duly authorized officer or representative of each Member.

Section 20.18.  <u>Side Letters</u>. Notwithstanding anything herein contained to the contrary, it is hereby acknowledged and agreed that the Manager and/or the Class B Member on their own behalf or on behalf of the Company without the approval of any Member or any other Person, may enter into an agreement (each, a "<u>Side Letter</u>") with one or more other Members that has the effect of establishing a right under, or altering or supplementing the terms of, this Agreement with regard to such Member(s)' Membership Interest(s) and attendant rights and obligations under this Agreement, provided that such Side Letter does not affect or diminish the rights, interest or obligations of any Member other than the Member(s) party to such Side Letter. The parties hereto agree that any terms contained in a Side Letter with a Member will govern the relationship of such Member with the Company notwithstanding the provisions of this Agreement; provided, however, that nothing in such a Side Letter shall be construed to affect or diminish the rights, interest or obligations of the other Members.

Section 20.19.  <u>Counterparts</u>. This Agreement may be executed in a number of identical counterparts that, when taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature. Further, this Agreement may be executed by the parties hereto by facsimile or by portable document format ("PDF") signature, such that execution of this Agreement by facsimile or PDF signature shall be deemed effective for all purposes as though this Agreement was executed as a "blue ink" original.

Section 20.20.  <u>Attorney Representations</u>. The parties each acknowledge that Craig M. Crockett has prepared this Agreement on behalf of and in the course of such attorneys' representation of Texas Capitalization Resource Group, Inc. and that the parties have had the opportunity to seek the advice of independent counsel as to this Agreement and the tax consequences of this Agreement.

[signatures appear on following page]

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

IN WITNESS WHEREOF, this Agreement is executed effective for all purposes as of the Effective Date.

**CLASS A MEMBER:**

Synergy Midstream, LLC, an Oklahoma limited liability company

By its Manger

By: _____ 3/22/18
    John Terrill

**CLASS B MEMBER:**

One Industries Group, L.P. , a Texas limited partnership

By its General Partner, One Industry, Inc.

By: _____
    Robert L. Patton, Jr. President

# EXHIBIT A

As used herein, the term 'Black Duck Assets' means the assets of Black Duck Properties, LLC ("Black Duck" or "Seller") being sold to the Company pursuant to that certain Purchase and Sale Agreement dated _____ between the Company and Black Duck and includes the following:

(a) All of Seller's right, title and interest in and to (i) the estates and rights arising under those certain Right of Way Agreements (the "ROW Agreements") as identified on Exhibit "A" forming fifty-three (53) right of way tracts of land through approximately sixty-five (64) contiguous miles of rights of way in, on, through and under Angelina, Nacogdoches and Rusk and Shelby counties in the State of Texas together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, and appurtenances to the extent appertaining, if any, and any Permits, Personal Property, and Intangible Property free and clear of all liens, claims, easements, rights-of-way, reservations, restrictions, encroachments, tenancies and any other type of encumbrance (collectively, the "Encumbrances").

(b) All of Seller's right, title and interest in and to  the estates and mineral rights created by those certain oil and gas leases and mineral estates (the 'Leases'), described in Exhibit 'B', and (ii) all oil, gas, water disposal and other wells located on the Leases or on lands pooled therewith (the 'Wells'), including, but not limited to, the Wells in, on, through and under Angelina, Nacogdoches and Rusk counties in the State of Texas, together with all of Seller's interest in the rights and appurtenances incident thereto together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, and appurtenances to the extent appertaining solely to the Land, if any, and any Permits, Personal Property, and Intangible Property free and clear of all Encumbrances.

(c) All of Seller's right, title and interest in and to that certain tract of land and minerals located in in, on, through and under Angelina, Nacogdoches and Rusk counties in the State of Texas, as (the "Land"), together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, and appurtenances to the extent appertaining solely to the Land, if any, and any Permits, Personal Property, and Intangible Property free and clear of all Encumbrances.

(d)   All of Seller's rights in, to and under any and all oil or gas product purchase and sale contracts, gas processing or transportation agreements, leases, permits, rights-of-way, easements, licenses, and options which appear of record or in the real property records or which have been otherwise disclosed to Purchaser;

(e) All of Seller's interest in fixtures, personal property, facilities and equipment, used or held for use or charged to the Leases, the Wells or the ROW Agreements for the production, treatment, transportation, sale or disposal of oil, gas, and other minerals or water produced; and

All books, files, data and records in Seller's possession relating to the Leases or Wells, or the maintenance or operation thereof, that Seller is not otherwise precluded from transferring to a third party by proscription of contract (the 'Records').

**COMPANY AGREEMENT OF TCRG EAST TEXAS PIPELINE 1, LLC**

**EXHIBIT B**

FUNDING PERCENTAGES, INITIAL CAPITAL CONTRIBUTIONS, AND

PERCENTAGE INTERESTS

| **Name of Members** | **Funding Percentages** | **Initial Capital Contributions** | **Percentage Interests** |
|---|---|---|---|
| Class A Member: | | | |
| Synergy | 25.00% | $250.00 | 25.00% |
| Class B Member: | | | |
| One Industries | 75.00% | $750.00 | 75.00% |
| **TOTALS** | **100.00%** | **$1,000.00** | **100.00%** |

# Exhibit 8:
# TCRG Purchase Agreement

# PURCHASE AND SALE AGREEMENT

## BETWEEN

## BLACK DUCK PROPERTIES, LLC

### AS SELLER

## AND

## TCRG EAST TEXAS PIPELINE 1, LLC

### AS PURCHASER

### DATED AS OF MARCH 22, 2018

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement ("Agreement") is made and entered into to be effective this 22nd day of March 2018 (the "Effective Date") by and between TCRG East Texas Pipeline 1, LLC, a Texas limited liability company ("Purchaser") and Black Duck Properties, LLC, a Texas limited liability company ("Seller"), collectively the Parties.

WHEREAS, Seller owns various easements, right of ways, either of record or beneficially and Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller same with all of the rights of Seller hereinafter described, in the manner and upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises hereinafter set forth and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## GENERAL TERMS AND CONDITIONS OF PURCHASE AND SALE

1.1     PURCHASE AND SALE.  Subject to the terms and conditions set forth in this Contract, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase and accept from Seller, for the Purchase Price (defined in Section 2 hereof), the Assets (as defined in Section 1.2).

1.2     ASSETS. As used herein, the term 'Assets' means the following:

(a)     ROWs.  All of Seller's right, title and interest in and to (i) the states and rights arising under any and all of Seller's Right of Way Agreements (the "ROW Agreements") as identified on Exhibit "A" forming fifty-three (53) right of way tracts of land through sixty-five (65) (+- five (5) miles) contiguous miles of rights of way as identified on Exhibit "A-1" (the "ROWs") comprised of easements that are valid and in full force and effect to permit the construction of a substitute pipeline for the transportation of water across any portion of the ROWs together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, permits for the production, treatment, transportation, sale or disposal of oil, gas, and other minerals or water produced and appurtenances to the extent appertaining, if any, and any Permits, Personal Property, and Intangible Property free and clear of all liens, claims, easements, rights-of-way, reservations, restrictions, encroachments, tenancies and any other type of encumbrance (collectively, the "Encumbrances").

(b)     All of Seller's interest in fixtures, personal property, facilities and equipment, used or held for use or charged to ROW Agreements and the ROWs and/or the ROWs; and

(c)     All books, files, data and records in Seller's possession relating to the ROWs, or the maintenance or operation thereof, that Seller is not otherwise precluded from transferring to a third party by proscription of contract (the 'Records').

(d)     Limited Assumption of Liabilities. Purchaser assumes all liabilities and obligations under the ROW Agreements respecting the ROWs (the "Specifically Assumed Liabilities"). Purchaser shall not assume or be bound by any obligations or liabilities of the Seller other than the Specifically Assumed Liabilities. Seller shall remain liable for all of Seller's liabilities and obligations other than the Specifically Assumed Liabilities

1.3     EFFECTIVE TIME. Possession and ownership of the Assets shall be transferred from Seller to Purchaser at the Closing (the 'Effective Time').  Seller shall be entitled to any production revenues or other amounts realized from and accruing to the Assets prior to the Effective Time and shall be liable for the payment of all expenses attributable to the Assets prior to the Effective Time except expenses attributable to obligations assumed by Purchaser in Section 9.3.  Purchaser shall be entitled to any production revenues or other amounts realized from and accruing to the Assets and arising subsequent to the Effective Time and shall be liable for the payment of all expenses attributable to the Assets subsequent to the Effective Time and attributable to pre-Effective Time obligations assumed by Purchaser in Section 9.3.

## ARTICLE II
## PURCHASE AND SALE

2.1  PURCHASE PRICE. The cash purchase price for the Assets shall be Two Million Five Hundred Thousand US Dollars ($2,500,000.00) (the 'Purchase Price').  In addition, Seller shall receive via a Limited Assignment of Interest in Water Pipeline a Sixteen Percent (16%) carried interest in the Northern Water Project as defined in said Limited Assignment. A true and correct copy of said Limited Assignment of Interest in Water Pipeline is attached hereto as Exhibit 'B' and is incorporated herein as if fully copied and set forth at length.

2.2    ADJUSTMENTS TO PURCHASE PRICE. The Purchase Price for the Assets shall be adjusted as follows and the resulting amount shall be referred to herein as the 'Adjusted Purchase Price':

(a)     Reduced by the $500,000.00 non-refundable deposit acknowledged to have been previously received by Seller prior to the Effective Date; and

(b)     Pro-ration of property taxes.

2.3        ALLOCATION OF PURCHASE PRICE.

(a)     At closing, Purchaser shall pay Seller the Purchase Price for the purchased Assets allocated under Internal Revenue Code Section 1060 as follows and as set forth in IRS Form 8594, attached hereto as attached hereto as Exhibit 'D' and incorporated herein as though fully set forth at length:

PURCHASE AND SALE AGREEMENT.                    Page 3

| Class I:   | Cash and cash equivalents                     | $0             |
|------------|-----------------------------------------------|----------------|
| Class II:  | Actively traded personal property             | $0             |
| Class III: | Accounts Receivables credit card receivables  | $0             |
|            |                                               |                |
| Class IV:  | Inventory                                     | $0             |
| Class V:   | All assets not in I – IV, VI and VII          | $2,500,000.00  |
| Class VI:  | Sec. 197 intangibles                          | $0             |
| Class VII: | Goodwill and going concern                    | $0             |

**Total: Purchase Price:**                                          **$2,500,000.00**

(b)     Seller and the Purchaser each represent to the other that they will file Internal Revenue Service Form 8594, "Asset Acquisition Statement Under Section 1060", with their Federal income tax returns for the respective tax years for which the transactions contemplated hereby must be reported. The Seller and the Purchaser each further represent to the other that on such Form, they will report the information regarding the Purchase Price and the allocation thereof as are set forth in this Agreement.

(c)     Seller and Purchaser shall, execute at Closing IRS Form 8594, attached hereto as Exhibit 'D', allocating the assets being purchased pursuant to this Agreement for all purposes (including Tax and financial accounting purposes) in the manner determined by Purchaser in its sole and exclusive discretion, provided, however, that the portion of the Purchase Price allocated to fixed assets shall not be greater than the fair market value of the fixed assets as of the Closing Date.

(d)     Purchaser and Seller shall file all Tax Returns (including amended returns and claims for a refund) and information reports in a manner consistent with such IRS Form 8594 allocation. In doing so, Seller is obligated to recognize or give effect to Purchaser's allocations of the Purchase Price to the respective Assets as set forth in Exhibit 'D.'

## ARTICLE III
## TITLE MATTERS

3.1   SELLER'S TITLE.

(a)     CASUALTY LOSS. As used herein, the term 'Casualty Loss' shall mean, with respect to all or any portion of any of the Assets, any destruction by fire, blowout, storm or other casualty prior to Closing. Seller shall promptly notify Purchaser of any Casualty Loss of which Seller becomes aware. Purchaser shall assume any Casualty Loss which occurs during the Adjustment Period as to any Asset operated by Purchaser and Seller shall transfer to Purchaser all rights to insurance proceeds, claims, awards and other payments arising out of such Casualty Loss. If any Casualty Loss occurs during the Adjustment Period to any of the Assets not operated by Purchaser and such Casualty Loss may be repaired prior to Closing and, when repaired, the value of such Asset shall not be materially diminished, then Seller may repair such Casualty Loss prior to Closing and

PURCHASE AND SALE AGREEMENT.            Page 4

shall immediately notify Purchaser of such election. If Seller elects to repair such Casualty Loss in respect of an Asset not operated by Purchaser and such repair is not completed prior to Closing or the repair completed by Seller does not cause the value of such Asset to be substantially the same as such value prior to the Casualty Loss, or Seller does not elect to repair the Casualty Loss, then Purchaser may elect to (i) cause Seller to retain the Asset affected by the Casualty Loss, and to treat the Casualty Loss as a Defective Interest, in which case Seller shall retain all insurance proceeds relating to the Casualty Loss or (ii) require Seller to (1) transfer to Purchaser such Asset notwithstanding such Casualty Loss, (2) transfer to Purchaser all rights to unpaid insurance proceeds, claims, awards and other payments arising out of such Casualty Loss, and (3) pay to Purchaser all sums paid to Seller as insurance proceeds, awards or other payment arising out of such Casualty Loss.

**ARTICLE IV**
**PRE-CLOSING, AND CLOSING ACTIONS**

4.1    TIME AND PLACE OF CLOSING.

(a)    The parties hereto shall use their best efforts to consummate the purchase and sale transaction as contemplated by this Agreement (the 'Closing') at a location mutually agreeable to the Seller and Purchaser on or before April 1, 2018 or as soon thereafter that the conditions to Closing set forth in this Agreement are satisfied, but in no event shall Closing occur after May 1, 2018 unless otherwise agreed to in writing by Purchaser and Seller.

(b)    The date on which the Closing occurs is herein referred to as the 'Closing Date'. The Conveyance shall be effective as of the Closing Date.

4.2    ACCESS TO RECORDS. Between the date of this Agreement and the Closing Date, Seller shall, subject to Section 4.6 hereof, give Purchaser and its representatives access to, and the right to copy, at Purchaser's expense, the Records in Seller's possession directly relating to the Assets, but only to the extent that Seller may do so without violating any confidentiality or contractual obligation to a third party and to the extent that Seller has authority to grant such access. Such access by Purchaser shall be limited to Seller's normal business hours, by appointment only, and shall be without disruption of Seller's normal and usual operations.

4.3    GOVERNMENT REVIEWS. Seller and Purchaser shall in a timely manner (a) make all required filings, if any, with and prepare applications to and conduct negotiations with, each governmental agency as to which such filings, applications or negotiations are necessary or appropriate in the consummation of the transactions contemplated hereby, and (b) provide such information as each may reasonably request to make such filings, prepare such applications and conduct such negotiations. Each party shall cooperate with and use all reasonable efforts to assist the other with respect to such filings, applications and negotiations.

4.4    PRE-CLOSING ACTION. Seller and Purchaser shall use all reasonable efforts to cause all of the conditions precedent to the consummation of the transactions contemplated by this Agreement applicable to each of them to be met as promptly as possible and to take all such other actions as may be reasonably necessary to effectuate the consummation of the transactions contemplated by this Agreement.

4.5    PUBLIC ANNOUNCEMENTS. Each party hereto shall consult with the other party hereto prior to any public announcement by such party regarding the existence of this Agreement, the contents hereof or the transactions contemplated hereby.

4.6    INDEMNITY REGARDING ACCESS. Purchaser agrees to indemnify, defend and hold harmless Seller, its directors, officers, employees, agents and representatives from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, court costs, expenses of litigation and reasonable attorneys' fees) in connection with personal injuries, including death or property damage arising out of or relating to the access of Purchaser, its officers, employees, and representatives to the Assets and to the records and other related information as permitted under this Agreement.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF SELLER

5.1    EXISTENCE. Seller is a limited liability company duly formed, validly existing and in good standing under the laws of the State of Texas and is duly registered to do business as a domestic limited liability company in the State of Texas where the Assets are located.

5.2    POWER. Seller has the power to enter into and perform this Agreement and the transactions contemplated by this Agreement. Subject to preferential purchase rights and restrictions on assignment of the type generally found in the oil and gas industry, and to rights to consent by, required notices to, and filings with or other actions by governmental entities where the same are customarily obtained subsequent to the assignment of oil and gas interests, the execution, delivery and performance of this Agreement by Seller, and the transactions contemplated by this Agreement, will not violate (a) any provision of the certificate or agreement of formation of Seller, (b) any material agreement or instrument to which Seller is a party or by which Seller or any of the Assets are bound, (c) any judgment, order, ruling, or decree applicable to Seller as a party in interest, or (d) any law, rule or regulation applicable to Seller relating to the Assets other than a violation which would not have a material adverse effect on Seller or the Assets.

5.3    AUTHORIZATION AND ENFORCEABILITY. The execution, delivery and performance of this Agreement, and the transaction contemplated hereby, have been duly and validly authorized by all necessary action on the part of Seller and that Seller is a Texas limited liability company and that each individual executing or attesting this Agreement on behalf of such limited liability company covenants, warrants and represents that he is duly authorized to execute or attest and deliver this Agreement on behalf of such limited liability company in accordance with the company or operating agreement of Seller, as the case may be, or an amendment thereto, now in effect. This Agreement constitutes the valid and binding obligation of Seller, enforceable in accordance with its terms except as such enforceability be limited by applicable bankruptcy or other similar laws affecting the rights and remedies of creditors generally as well as to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5.4    LIABILITY FOR BROKERS' FEES. Purchaser shall not directly or indirectly incur any liability or expense, as a result of undertakings or agreements of Seller, for brokerage fees, finder's

PURCHASE AND SALE AGREEMENT.                    Page 6

fees, agent's commissions or other similar forms of compensation in connection with this Agreement or any agreement or transaction contemplated hereby. Seller agrees to indemnify and hold Purchaser harmless from all liability arising from any claim for brokerage fees, finder's fees, agent's commissions or other similar forms of compensation in connection with this Agreement or any agreement or transaction contemplated hereby, including without limitation, the cost of reasonable counsel fees in connection therewith.

5.5     CLAIMS AND LITIGATION. To the actual knowledge of Seller, there are no claims, actions, suits or proceedings pending or threatened against Seller which, if determined adversely to Seller, would have a material adverse affect on the Assets or which would materially and adversely affect Seller's ability to perform its obligations under this Agreement.

5.6     TAXES AND ASSESSMENTS. To the actual knowledge of Seller, all material ad valorem, production, severance, excise, and similar taxes and assessments based upon or measured by the ownership of or the production of hydrocarbons from the Assets which have become due and payable have been properly paid or are being challenged in good faith by Seller, all applicable tax returns have been filed, and Seller knows of no claim by any applicable taxing authority against Seller in connection with the payment of such taxes.

5.7     CONSENTS AND PREFERENTIAL RIGHTS.  All required notices in respect of consents to assignment and preferential rights to purchase relating to the Assets set forth on Schedule 3.5 shall be prepared by Purchaser for execution by Seller on forms customarily used in the industry and shall be furnished to Purchaser at Closing. Seller shall use its best efforts to cause such consents and preferential rights to purchase to be obtained and delivered on or before Closing. Purchaser shall cooperate with the Seller in seeking to obtain such consents and preferential rights. Should a third party fail to exercise its preferential right to purchase as to any portion of the Assets prior to Closing, such portion of the Assets shall be conveyed to Purchaser subject to such right and Purchaser agrees to perform the obligations of Seller with respect to such preferential rights.

5.8     ENVIRONMENTAL LAWS. To the actual knowledge of Seller and as to that portion of the Assets not operated by Purchaser, (i) such Assets are in compliance in all material respects with all Environmental Laws (as hereinafter defined) and all orders or requirements of any court or federal, state, or local governmental authority, and possess and are in compliance with all required permits, licenses, or similar authorizations, (ii) such Assets and related operations are not subject to any existing or threatened suit, investigation, or proceeding related to any obligation under any Environmental Law, and (iii) there is no liability (contingent or otherwise) in connection with the release or threatened release into the environment of any Hazardous Substance (as defined below) as a result of or in connection with such Assets or the operations related thereto. As used in this Agreement, the term 'Environmental Laws' shall mean any and all laws, regulations, ordinances and judicial interpretations pertaining the prevention, abatement or elimination of pollution or to the protection of public health or the environment that are in effect in all jurisdictions in which any of the Assets or related operations are located or conducted, including, without limitation, the federal Comprehensive Environmental Response, Compensation and Liability Act ('CERCLA'), the Resource Conservation and Recovery Act, the Clean Water Act, the Safe Drinking Water Act, the Toxic Substance Control Act, the Hazardous Materials Act and the Clean Air Act and the term 'Hazardous Substance' shall have the meaning described under Section 101 of CERCLA at 42 U.S.C. Section

PURCHASE AND SALE AGREEMENT.                Page 7

9601(14), except that it shall also include petroleum, natural gas, natural gas liquids, nitrous oxide, carbon monoxide and sulphur oxide.

5.9    INTENTIONALLY LEFT BLANK.

5.10   INTENTIONALLY LEFT BLANK.

5.11   ASSETS; TITLE TO ASSETS.  Seller owns good and marketable title, free and clear of all liens or encumbrances, to all of the Assets, including the ROWs and ROW AGREEMENTS. Seller is selling, conveying and transferring the ROWs and ROW Agreements described on the Deed, Conveyance and Assignment to Purchaser attached hereto and as Exhibit 'C' and incorporated herein as if fully copied and set forth at length on an "AS IS, WHERE IS" basis.

5.12   INTENTIONALLY LEFT BLANK.

5.13   FURTHER ASSURANCES.  From the date of execution of this Agreement, without the prior written consent of Purchaser, Seller will not: (i) enter into any new agreements or commitments with respect to the Assets; (ii) incur any liabilities other than in the ordinary course for normal operating expenses  associated with individual Wells; (iii) abandon, or consent to abandonment of, any producing or shut-in Well or any injection well located on the premises associated with the Assets, nor release or abandon all or any portion of the Leases; (iv) modify or terminate any of the agreements relating to the Assets or waive any right thereunder; (v) encumber, sell or otherwise dispose of any of the Assets; and (vi) purchase any additional interests.

5.14   MATERIAL AGREEMENTS.  All agreements with respect to which Seller is a party and Purchaser is not a party and that are material to the ownership or value of the Assets and, as to such agreements, (i) all are in full force and effect; (ii) all payments due thereunder have been made by Seller; (iii) Seller is not in breach or default thereunder; (iv) no other party is in breach or default with respect to its obligations thereunder; and (v) neither Seller nor any other party to any such contract has given or threatened to give notice of any action to terminate, cancel, rescind or procure a judicial reformation of any such contract.

5.15   INTENTIONALLY LEFT BLANK.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller the following:

6.1    EXISTENCE. Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business as a foreign corporation in the state(s) where the Assets are located, except where the failure to so qualify would not have a material adverse effect on Purchaser or its properties.

6.2    POWER. Purchaser has the corporate power to enter into and perform this Agreement and the transactions contemplated by this Agreement. Subject to preferential purchase rights and

restrictions on assignment of the type generally found in the oil and gas industry, and to rights to consent by, required notices to, and filings with or other actions by governmental entities where the same are customarily obtained subsequent to the assignment of oil and gas interests, the execution, delivery and performance of this Agreement by Purchaser, and the transactions contemplated by this Agreement, will not violate (a) any provision of the certificate of incorporation or bylaws of Purchaser, (b) any material agreement or instrument to which Purchaser is a party or by which Purchaser or any of the Assets are bound, (c) any judgment, order, ruling, or decree applicable to Purchaser as a party in interest, or (d) any law, rule or regulation applicable to Purchaser relating to the Assets other than a violation which would not have a material adverse effect on Purchaser.

6.3   AUTHORIZATION AND ENFORCEABILITY. The execution, delivery and performance of this Agreement, and the transaction contemplated hereby, have been duly and validly authorized by all necessary action on the part of Purchaser.  This Agreement constitutes the valid and binding obligation of Purchaser, enforceable in accordance with its terms except as such enforceability may be limited by applicable bankruptcy or other similar laws affecting the rights and remedies of creditors generally as well as to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

6.5   CLAIMS AND LITIGATION. To the actual knowledge of Purchaser, there are no claims, actions, suits, or proceedings pending or threatened against Purchaser which, if determined adversely to Purchaser, would materially and adversely affect Purchaser's ability to perform its obligations under this Agreement.

6.6   PURCHASER'S DETERMINATION OF TITLE. Purchaser has independently determined that the ROW Agreements are valid, existing legal instruments in full force and effect and that the ROWs form fifty-three (53) right of way tracts of land through sixty-five (65) (+- five (5) miles) contiguous miles of rights of way as identified on Exhibit "A-1" (the "ROWs").

**ARTICLE VII**
**CONDITIONS TO CLOSING**

7.1   CONDITIONS OF SELLER TO CLOSING. The obligations of Seller to consummate the transaction contemplated by this Agreement are subject, at the option of Seller, to the satisfaction on or prior to Closing of each of the following conditions:

(a)   REPRESENTATIONS.  The representations and warranties of Purchaser set forth in this Agreement herein shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date as though made on and as of the Closing Date.

(b)   PERFORMANCE.  Purchaser shall have performed all obligations, covenants and agreements hereunder and shall have complied with all covenants and conditions applicable to it contained in this Agreement prior to or on the Closing Date.

(c)     PENDING MATTERS.  No suit, action or other proceeding by a third party or a governmental authority shall be pending or threatened which seeks to restrain, enjoin or otherwise prohibit, the consummation of the transactions contemplated by this Agreement.

7.2     CONDITIONS OF PURCHASER TO CLOSING. The obligations of Purchaser to consummate the transaction contemplated by this Agreement are subject, at the option of Purchaser, to the satisfaction on or prior to Closing of each of the following conditions:

(a)  INTENTIONALLY LEFT BLANK

(b)     REPRESENTATIONS.  The representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date as though made on and as of the Closing Date.

(c)     PERFORMANCE.  Seller shall have performed all obligations, covenants and agreements hereunder and shall have complied with all covenants and conditions applicable to it contained in this Agreement prior to or on the Closing Date and shall have executed and delivered the Conveyance on the Closing Date.

(d)     PENDING MATTERS.  No suit, action or other proceeding by a third party or governmental authority shall be pending or threatened to restrain, enjoin or otherwise prohibit, the consummation of the transactions contemplated by this Agreement.

7.3     OBLIGATIONS OF SELLER AT CLOSING. At the Closing, upon the terms and subject to the conditions of this Agreement, Seller shall execute and deliver or cause to be executed and delivered to Purchaser, among other things, the following:

(a)     Conveyances of title to the Assets via a Deed, Conveyance and Assignment from Seller to Purchaser in substantial form as Exhibit 'C' attached hereto and incorporated herein as if fully copied and set forth at length, in sufficient original counterparts to allow recording; and

(b)     Certificate by an authorized member of Seller dated as of Closing, certifying on behalf of Seller that the conditions set forth in Sections 7.1 (b) and 7.1 (c) have been fulfilled;

7.4     OBLIGATIONS OF PURCHASER AT CLOSING. At the Closing, upon the terms and subject to the conditions of this Agreement, Purchaser shall execute and deliver or cause to be executed and delivered to Seller, among other things, the following:

(a)     Conveyances of title to the Assets via a Deed, Conveyance and Assignment from Seller to Purchaser in substantial form as Exhibit 'C' attached hereto and incorporated herein as if fully copied and set forth at length, in sufficient original counterparts to allow recording;

(b)     A wire transfer of the Adjusted Purchase Price, as required hereunder; and

(c)     Delivery of the fully executed Limited Assignment of Interest in Water Pipeline in the form attached hereto as Exhibit 'B;' and

PURCHASE AND SALE AGREEMENT.                    Page 10

(d)    Certificate by an authorized attorney-in-fact or corporate officer of Purchaser dated as of Closing, certifying on behalf of Purchaser that the conditions set forth in Sections 7.1 (a) and 7.1 (b) have been fulfilled.

## ARTICLE VIII
## TERMINATION AND AMENDMENT

8.1    TERMINATION. This Agreement may be terminated at any time prior to the Closing Date: (a) by the mutual prior written consent of Seller and Purchaser, (b) INTENTIONALLY LEFT BLANK  (c) at the option of the non-breaching party if the other party is in material default of its obligations under this Agreement, or (d) by Seller or Buyer, if Closing has not occurred by May 1, 2018   Any party shall exercise a right of termination provided above by written notice to the other party.

8.2    EFFECT OF TERMINATION. If this Agreement is terminated pursuant to Section 8.1(a), or (d), this Agreement shall become void and of no further force or effect (except for the provisions of Section 4.6 which shall continue in full force and effect).

## ARTICLE IX
## POST-CLOSING OBLIGATIONS

9.1    INTENTIONALLY LEFT BLANK.

9.2    INTENTIONALLY LEFT BLANK.

9.3    ASSUMPTION AND INDEMNITY. If the Closing occurs,

(a)    Purchaser assumes all obligations that are attributable to the Assets from and after the Effective Time including, but not limited to, any obligation to cash balance or to allow third parties to make-up gas according to the terms and conditions of the applicable gas balancing or other contracts or governing law, rule or regulation, all obligations to properly plug and abandon all wells now or thereafter located on the Leases and restore the surface of the Leases in accordance with applicable lease or other agreements and governmental (including environmental) laws, orders, and regulations (regardless of whether any such obligation to plug, abandon and restore is attributable to periods of time prior to or after the Effective Time) and the obligation to pay ad valorem and similar production taxes with respect to the Assets as set forth in Sections 10.4 and 2.2(b);

(b)    Purchaser agrees to indemnify, defend and hold harmless Seller, its affiliates, officers, directors, agents and representatives from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, court costs, expenses of litigation and reasonable attorneys' fees) that are attributable to the Assets after the Effective Time (including, without limitation, (i) the obligation to cash balance or to allow third parties to make-up gas according to the terms and conditions of the applicable gas balancing or other contracts or governing law, rule or regulation, (ii) the obligation to properly plug and abandon all wells now or hereafter located on the

PURCHASE AND SALE AGREEMENT.          Page 11

Leases, (iii) the obligation to restore the surface of the Leases in accordance with applicable lease or other agreements and governmental laws, orders and regulations, and (iv) damage to property, or injury to or death of persons attributable to the Assets and occurring after the Effective Time). Notwithstanding the foregoing, Purchasers' indemnification obligations exclude liabilities in respect of Environmental Laws as to the Assets and to conditions that existed prior to the Effective Time;

(c)     Seller agrees to indemnify, defend and hold harmless Purchaser, its affiliates, officers, directors, agents and representatives from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, court costs, expenses of litigation and reasonable attorneys' fees) that are attributable to the Assets before the Effective Time (other than (i) the obligation to cash balance or to allow third parties to make-up gas according to the terms and conditions of the applicable gas balancing or other contracts or governing law, rule or regulation, (ii) the obligation to properly plug and abandon wells now or hereafter located on the Leases, (iii) the obligation to restore the surface of the Leases in accordance with applicable lease or other agreements and governmental laws, orders and regulations, and (iv) damage to property, or injury to or death of persons attributable to the Assets and occurring prior to the Effective Time).  Notwithstanding the foregoing, Seller's indemnification obligations include liabilities in respect of Environmental Laws as to the Assets and to conditions that existed prior to the Effective Time; and

(d)     The indemnity, defense and hold harmless obligations set forth above shall not apply to (i) any amount that was taken into account as an adjustment to the Purchase Price pursuant to the provisions of this Agreement, (ii) any liability of one party to the other party under the provisions of this Agreement, (iii) any liability Purchaser would ordinarily have vis-a-vis Seller under the terms of applicable operating agreements, and (iv) either party's costs and expenses with respect to the negotiation and consummation of this Agreement and the purchase and sale of the Assets.

9.4     RECORDING.  As soon as practicable after Closing, Purchaser shall record the conveyances in the appropriate counties.

9.5     FURTHER ASSURANCES. After Closing, Seller and Purchaser agree to take such further actions and to execute, acknowledge and deliver all such further documents that are necessary or useful in carrying out the purposes of this Agreement or of any document delivered pursuant to this Agreement.

## ARTICLE X
## MISCELLANEOUS

10.1     COUNTERPARTS. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original instrument, but all such counterparts together shall constitute but one agreement.

10.2     NOTICE. All notices which are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in writing and delivered personally, by overnight courier, by telecopy or by registered or certified mail, postage prepaid, as follows:

If to Seller:

PURCHASE AND SALE AGREEMENT.                    Page 12

Black Duck Properties, LLC
Attn. Larry M. Wright
410 Spyglass Road
McQueney, Texas 78123

With a copy to:

Granstaff, Gaedke & Edgmon, P.C.
5535 Fredericksburg Road, Suite 110
San Antonio, Texas 78229
Attn: David P. Strolle, Jr.
Telephone: 210-348-6600 Ext. 203
Telecopier: 210-366-0892
Email: dstrolle@caglaw.net

If to Purchaser:

TCRG East Texas Pipeline 1, LLC,
Attn: Robert L. Patton, Jr.
5201 Camp Bowie Blvd., Suite 200
Fort Worth, Texas 76107
Telephone: 817-626-9898
Telecopier: 817-624-1374

All notices shall be deemed to have been duly given at the time of receipt by the party to which such notice is addressed.

10.3    SALES TAX, RECORDING FEES AND SIMILAR COSTS. Purchaser shall bear any tax, recording fees and similar costs incurred and imposed upon, or with respect to, the property transfers contemplated hereby.

10.4    AD VALOREM TAXES. All unpaid ad valorem and similar taxes that are payable with respect to the Assets for all periods ending on or prior to the Effective Time shall be as estimated by the parties and shall be an adjustment to the Purchase Price. In the case of tax periods that included but did not end on the Effective Time, taxes shall be prorated to the Effective Time and be an adjustment to the Purchase Price. Purchaser shall pay all such taxes payable for all such periods which are adjusted or prorated.

10.5    EXPENSES. All expenses incurred by Seller in connection with or related to the authorization, preparation or execution of this Agreement, the Conveyance and the Exhibits and Schedules hereto and thereto, and all other matters related to the Closing, including without limitation, all fees and expenses of counsel, accountants and financial advisers employed by Seller, shall be borne solely and entirely by Seller; and all such expenses incurred by Purchaser shall be borne solely and entirely by Purchaser.

10.6    GOVERNING LAW. This Agreement and the legal relations between the parties shall be governed by and construed in accordance with the laws of the State of Texas without regard to principles of conflicts of laws otherwise applicable to such determinations. In the event any dispute arises with respect to this Agreement, the parties hereby consent to jurisdiction and litigation of such disputes in the State of Texas.

10.7    CAPTIONS. The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement.

10.8    WAIVERS. Any failure by any party or parties to comply with any of its or their obligations, agreements or conditions herein contained may be waived in writing, but not in any other manner, by the party or parties to whom such compliance is owed. No waiver of, or consent to a change in, any of the provisions of this Agreement shall be deemed or shall constitute a waiver of, or consent to a change in, other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

10.9    ASSIGNMENT. No party shall assign all or any part of this Agreement, nor shall any party assign or delegate any of its rights or duties hereunder, without the prior written consent of the other party and any assignment made without such consent shall be void except as otherwise provided in this Section.

10.10    ENTIRE AGREEMENT. This Agreement and the documents to be executed hereunder and the Exhibits and Schedules attached hereto constitute the entire agreement between the parties pertaining to the subject matter hereof, and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties pertaining to the subject matter hereof.

10.11    SURVIVAL. The representations and warranties of Seller and Purchaser set forth in Articles V and VI of this Agreement shall survive the Closing and shall only be applicable for one hundred eighty (180) days thereafter.

10.12    AMENDMENT.

    (a)    At any time prior to the Closing Date this Agreement may be amended or modified in any respect by the parties by an agreement in writing executed in the same manner as this Agreement.

    (b)    No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the party to be bound thereby.

10.13    EXHIBITS AND SCHEDULES. All Exhibits and Schedules attached to or referred to in this Agreement are incorporated into and made a part of this Agreement.

IN WITNESS WHEREOF, this Agreement has been signed by each of the parties hereto, all as of the date above written.

**SELLER:**

Black Duck Properties, LLC, a Texas limited liability company

By: _____
Larry Wright,
Its Sole Manager

**PURCHASER:**

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

By: _____
Robert L. Patton, Jr.,
Its Sole Manager

[The Remainder of this Page Intentionally Left Blank]

## ACKNOWLEDGEMENT

STATE OF TEXAS           )
                         ) ss.
COUNTY OF _Bexar_        )

    Be it known, that on this _22_ day of _March_, 2018, before me, the undersigned authority, personally came and appeared Larry Wright to me personally known and known by me to be the person whose genuine signature is Purchase and Sale Agreement, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

    In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

BRYAN PAUL MYERS
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP 4/18/2020
NOTARY ID 13062353-8

Notary Public in and for the State of Texas
My Commission Expires: _4/18/2020_
(Seal)

## ACKNOWLEDGEMENT

STATE OF TEXAS           )
                         ) ss.
COUNTY OF _Tarrant_      )

    Be it known, that on this _22nd_ day of _March_, 2018, before me, the undersigned authority, personally came and appeared Robert L. Patton, Jr. to me personally known and known by me to be the person whose genuine signature is Purchase and Sale Agreement, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

    In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

CHERYL L COUCH
NOTARY PUBLIC
ID# 125016597
State of Texas
Comm. Exp. 04-28-2022

Notary Public in and for the State of Texas
My Commission Expires: _04/28/22_
(Seal)

[The Remainder of this Page Intentionally Left Blank]

PURCHASE AND SALE AGREEMENT.        Page 16

**EXHIBIT 'A'**
**TO PURCHASE AND SALE AGREEMENT**
**BETWEEN BLACK DUCK PROPERTIES, LLC**
**AND TCRG EAST TEXAS PIPELINE 1, LLC**

List of Right of Way Agreements ("ROW Agreements")

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 02/03/13 | Van J. Smith | Gulf Pipe Line Co. | 81 | 7 |
| 01/27/14 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 79 | 582 |
| 01/28/14 | D.D. Bazer, et ux | Gulf Pipe Line Co. | 79 | 609 |
| 01/28/14 | I.E. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 597 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | Bridie Carter, et vir. | Gulf Pipe Line Co | 79 | 592 |
| 01/28/14 | Mrs. W.J. Cockrell | Gulf Pipe Line Co | 79 | 593 |
| 01/28/14 | J.R. Joplin. et ux. | Gulf Pipe Line Co. | 79 | 574 |
| 01/28/14 | Ralph Jopling. et ux. | Gulf Pipe Line Co. | 81 | 19 |
| 01/28/14 | J.D. Majors, et ux. | Gulf Pipe Line Co. | 81 | 27 |
| 01/28/14 | J.W. Majors | Gulf Pipe Line Co. | 81 | 14 |
| 01/28/14 | A.W. Mathews, et ux | Gulf Pipe Line Co. | 81 | 24 |
| 01/18/14 | W.R. Rains | Gulf Pipe Line Co. | 79 | 595 |
| 01/29/14 | Luke Motley | Gulf Pipe Line Co. | 81 | 8 |
| 01/29/14 | J.L. Norman | Gulf Pipe Line Co. | 81 | 18 |
| 01/29/14 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. | 79 | 596 |
| 01/29/14 | John Turner, et'ux. | Gulf Pipe Line Co. | 81 | 25 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/29/14 | John Turner, et us | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/31/14 | J.H. Hughes | Gulf Pipe Line Co. | 79 | 562 |
| 01/31/14 | J.R. Lewis | Gulf Pipe Line Co. | 79 | 576 |
| 02/02/14 | Charles F. Flakes | Gulf Pipe Line Co | 79 | 607 |
| 02/02/14 | W.E. Parker | Gulf Pipe Line Co. | 81 | 16 |
| 02/02/14 | W.W. Rider, et ux. | Gulf Pipe Line Co. | 81 | 21 |
| 02/02/14 | J.H. Wall | Gulf Pipe Line Co. | 79 | 605 |
| 02/02/14 | Ben B. White  et ux | Gulf Pipe Line Co. | 79 | 573 |
| 02/02/14 | W.D. White, et ux | Gulf Pipe Line Co. | 79 | 598 |
| 02/03/14 | Luis Hooper, et al. | Gulf Pipe Line Co | 79 | 579 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | C. Riley. et ux. | Gulf Pipe Line Co. | 79 | 611 |
| 02/03/14 | Jno. A. White, et ux. | Gulf Pipe Line Co. | 79 | 571 |
| 02/04/14 | M.M. Bowlin. et ux. | Gulf Pipe Line Co | 79 | 578 |
| 02/04/14 | John Kyle, et ux. | Gulf Pipe Line Co. | 79 | 563 |
| 02/04/14 | J.R. Weir | Gulf Pipe Line Co | 79 | 568 |
| 02/05/14 | C.C. Hayden | Gulf Pipe Line Co. | 79 | 576 |
| 02/06/14 | W.L. Foster, et ux. | Gulf Pipe Line Co. | 79 | 572 |
| 02/06/14 | C.M. Horton, et ux. | Gulf Pipe Line Co. | 79 | 565 |
| 02/06/14 | O.M. Ramsey. et al | Gulf Pipe Line Co. | 79 | 599 |

## Shelby County, Texas

| 02/06/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
|---|---|---|---|---|
| 02/07/14 | F.M. Bridwell, et al. | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux | Gulf Pipe Line Co. | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co. | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 8 |
| 02/10/14 | Henry Sears, et ux | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co. | 79 | 553 |
| 02/11/14 | J.M. Whiteside | Gulf Pipe Line Co. | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux | Gulf Pipe Line Co. | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 78 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux. | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr, et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr, et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co. | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux. | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co. | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux. | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zach Brinson | Gulf Pipe Line Co | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux. | Gulf Pipe Line Co | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co | 79 | 612 |
| 02/17/14 | J.R. Foster, et ux | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.I. Gilbert, et ux. | Gulf Pipe Line Co. | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux. | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux | Gulf Pipe Line Co | 79 | 544 |
| 02/18/14 | R.A. Whiddon, et ux. | Gulf Pipe Line Co | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux | Gulf Pipe Line Co. | 79 | 584 |

PURCHASE AND SALE AGREEMENT.                Page 19

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co | 79 | 551 |
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W F. Taley, et ux. | Gulf Pipe Line Co | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux | Gulf Pipe Line Co. | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 587 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I.W. Willimas | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux | Gulf Pipe Line Co | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co and Gulf Production Co | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co and Gulf Production Co | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Androws, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 446 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co and Gulf Production Co | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co, and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

PURCHASE AND SALE AGREEMENT.        Page 20

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/10/24 | W.M. Byrn | Gulf Pipe Line Co and Gulf Production Co | 124 | 459 |
| 07/10/24 | G.W Crenshaw. et ux | Gulf Pipe Line Co and Gulf Production Co | 124 | 448 |
| 07/10/24 | J H. Cruger, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 445 |
| 07/10/24 | Mrs. F D Haden | Gulf Pipe Line Co and Gulf Production Co. | 124 | 462 |
| 07/10/24 | C O. Worsham. et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 442 |
| 07/11/24 | F.H. Bailey. et ux | Gulf Pipe Line Co and Gulf Production Co | 124 | 453 |
| 07/11/24 | F. H. Bailey. et ux | Gulf Pipe Line Co and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F H. Bailey. et ux | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co and Gulf Production Co | 124 | 452 |
| 07/11/24 | John Bussey, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 450 |
| 07/11/24 | Phil Bussy Jr., et ux | Gulf Pipe Line Co. and Gulf Production Co | 124 | 455 |
| 07/11/24 | J G. Ellington | Gulf Pipe Line Co. and Gulf Production Co | 124 | 437 |
| 07/11/24 | F.O. Johnson | Gulf Pipe Line Co and Gulf Production Co. | 124 | 460 |
| 07/11/24 | I.N. Williams | Gulf Pipe Line Co and Gulf Production Co. | 124 | 449 |
| 07/14/24 | E W. Cockrell, et ux | Gulf Pipe Line Co. and Gulf Production Co | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est | Gulf Pipe Line Co and Gulf Production Co | 124 | 481 |
| 07/14/24 | T A. King | Gulf Pipe Line Co. | 124 | 478 |

Shelby County, Texas

| | | and Gulf Production Co. | | |
|---|---|---|---|---|
| 07/14/24 | Ima Odom Nutt, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co and Gulf Production Co | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.D Sholar | Gulf Pipe Line Co and Gulf Production Co | 124 | 483 |
| 07/16/24 | W.R. Crawford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al. | Gulf Pipe Line Co. and Gulf Production Co | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 498 |
| 07/21/24 | Mack Jones. et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co and Gulf Production Co | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux | Gulf Pipe Line Co and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W A Cooper | Gulf Pipe Line Co | 124 | 520 |

PURCHASE AND SALE AGREEMENT.        Page 22

Shelby County, Texas

| | | and Gulf Production Co. | | |
|---|---|---|---|---|
| | | Gulf Pipe Line Co and Gulf Production Co | | |
| 10/14/24 | Pierce Whiteside, et al. | | 123 | 632 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 04/30/25 | J.A. Deaton, et ux | | 126 | 506 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | Claude E. Fallir | | 127 | 52 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | Alvin Gunter | | 126 | 503 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | J.R. Jopling, et ux. | | 127 | 55 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 04/30/25 | J.N. Majors | | 127 | 54 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 04/30/25 | C.C. McDonald | | 127 | 56 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | Grover C. Peddy | | 126 | 500 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 04/30/25 | C. Riley, et ux. | | 126 | 502 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | F.B Taylor | | 126 | 504 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 04/30/25 | J.R. Weir, et ux | | 127 | 141 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 05/01/25 | Mrs. W. A. Bou and by J.L. Davis, Attorney-In-Fact | | 126 | 568 |
| | | Gulf Pipe Line Co and Gulf Production Co. | | |
| 05/01/25 | Cicero Jopling, et ux | | 126 | 552 |
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 05/01/25 | J. N. King | | 127 | 62 |
| | | Gulf Pipe Line Co. and Gulf Production Co | | |
| 05/01/25 | J.O. McCarver | | 127 | 167 |
| | | Gulf Pipe Line Co and Gulf Production Co | | |
| 05/01/25 | J.O. McCarver | | 127 | 167 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co | 127 | 167 |

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co | | |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co and Gulf Production Co | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Robert Porter | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 61 |
| 05/01/25 | Walter Scates, et ux. | Gulf Pipe Line Co and Gulf Production Co | 127 | 63 |
| 05/01/25 | A.H. Womack, et ux | Gulf Pipe Line Co and Gulf Production Co | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux | Gulf Pipe Line Co and Gulf Production Co. | 126 | 556 |
| 05/02/25 | H. Bryant, et al | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 562 |
| 05/02/25 | Harvey Crawford | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 364 |
| 05/02/25 | John Davis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 60 |
| 05/02/25 | J.R. Foster, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 120 | 600 |
| 05/02/25 | J.R. Lewis | Gulf Pipe Line Co. and Gulf Production Co | 126 | 555 |
| 05/02/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux. | Gulf Pipe Line Co | 126 | 559 |

PURCHASE AND SALE AGREEMENT.              Page 24

Shelby County, Texas

| | | and Gulf Production Co. | | |
|---|---|---|---|---|
| 05/02/25 | Mrs. O.M. Ramsey | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 583 |
| 05/04/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co and Gulf Production Co | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co and Gulf Production Co | 126 | 539 |
| 05/04/25 | Elbert B. Samford by E B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E B. Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A Samford, et ux | Gulf Pipe Line Co and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux | Gulf Pipe Line Co. and Gulf Production Co | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co | 126 | 529 |
| 05/05/25 | W.J. Walker, et al | Gulf Pipe Line Co. and Gulf Production Co | 126 | 533 |

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheat, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et v.r. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B. Goff, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 189 |
| 05/27/25 | Mary White, et al | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 216 |
| 07/31/25 | Robert Spivey , | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A.O. Whiddon, Agent & Attorney-In-Fact | Gulf Pipe Line Co, and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola Rushing A.O. Whiddon, Agent & Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/31/25 | C.H. Horton, et ux | Gulf Pipe Line Co and Gulf Production Co | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux | Gulf Pipe Line Co. and Gulf Production Co | 127 | 503 |
| 09/23/25 | Mrs. M. Lochabay | Gulf Pipe Line Co and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co and Gulf Production Co | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept | Texas Eastern Transmission Corp | | |
| 05/04/48 | L.B. Dean | Gulf Refining Co | 276 | 615 |

## Rusk County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/08/54 | Ruby L. Dumas, et vir. | Texas Eastern Transmission Corp | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp | | |
| 06/27/10 | J.A. Anderson. et ux. | Gulf Pipe Line Co | 67 | 150 |
| 06/27/10 | M.J. Barton. et ux. | Gulf Pipe Line Co | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux | Gulf Pipe Line Co. | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux. | Gulf Pipe Line Co | 67 | 144 |
| 06/27/10 | F L. Hudgins, et ux. | Gulf Pipe Line Co | 67 | 135 |
| 06/27/10 | J.R. Latimer, et ux | Gulf Pipe Line Co | 67 | 142 |
| 06/27/10 | S.M. Moore, et ux. | Gulf Pipe Line Co | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al | Gulf Pipe Line Co | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co | 67 | 182 |
| 11/18/10 | E.A. Blount | Gulf Pipe Line Co | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co | 1677 | 111 |
| 05/01/14 | Mrs. M.L. Moore | Gulf Pipe Line Co | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co & Gulf Production Co | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co & Gulf Production Co | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co & Gulf Production Co | 123 | 629 |
| 07/03/24 | T.S. Barton, et ux. | Gulf Pipe Line Co & Gulf Production Co | 123 | 614 |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co & Gulf Production Co | 123 | 618 |
| 07/03/24 | J.R. Latimer et ux | Gulf Pipe Line Co & Gulf Production Co | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al | Gulf Pipe Line Co & Gulf Production Co | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux | Gulf Pipe Line Co & Gulf Production Co | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co. & Gulf Oil Co. | 360 | 190 |

\

### Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Oil Corp. | | |
| 05/04/48 | C.H. Horton, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 276 | 616 |
| 05/04/48 | R.W. Todd | Gulf Refining Co. and Gulf Oil Corp. | 276 | 617 |
| 05/06/48 | J.R. Anderson | Gulf Refining Co. and Gulf Oil Corp. | 277 | 329 |
| 11/09/51 | Earl Hanson, et al. | Gulf Refining Co | 306 | 192 |
| 06/10/52 | M.E. Bowlin, et ux. | Gulf Refining Co and Gulf Oil Corp | 311 | 255 |
| 08/10/52 | H.O. Hoard, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 11/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 381 | 347 |
| 12/18/59 | Gulf, Colorado& Sante Fe R.R. Co. and Gulf Refining Co. | Texas Eastern Transmission Corp | | |
| 09/29/71 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |

Nacogdoches County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J.W. Hartt et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Melton, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay , | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux | Gulf Pipeline Co | 72 | 642 |
| 06/28/10 | Mrs. M I. Strode | Gulf Pipeline Co. | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S.W. Hunt, et ux | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co. | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al | Gulf Pipeline Co | 75 | 73 |
| 06/29/10 | J.L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W Boyd, et ux | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Burns, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M. Richards, et ux | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartt, et ux | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co. | 72 | 634 |
| 07/04/19 | S.C. Parrott, et al | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca, et ux | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T Supulvado, et ux | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M Peterson, et ux | Gulf Pipeline Co | 74 | 17 |
| 07/08/10 | Tom Hinjosa, et ux | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al. | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co. | 72 | 633 |
| 07/18/10 | Elarco Cordova, et ux. | Gulf Pipeline Co. | 74 | 29 |
| 07/18/10 | J.H. Summers | Gulf Pipeline Co. | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co. | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A.M. Evans, et ux. | Gulf Pipeline Co. | 74 | 13 |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co | 72 | 630 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co | 72 | 629 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co | 74 | 6 |

## Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/20/10 | Mrs. Antonia Manchaca, et al | Gulf Pipeline Co. | 74 | 33 |
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 90 | 429 |
| 07/20/10 | Moses Tims, et al. | Gulf Pipeline Co | 74 | 27 |
| 07/20/10 | Eli Westfall, et al | Gulf Pipeline Co | 74 | 101 |
| 07/21/10 | Jessie Greer | Gulf Pipeline Co | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al | Gulf Pipeline Co | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux | Gulf Pipeline Co | 74 | 123 |
| 08/27/10 | Geo. S. McCarty, Ind. And as Gdn. | Gulf Pipeline Co. | 740 | 238 |
| 08/27/10 | Mrs. M. I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipeline Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipeline Co | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipeline Co. | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipeline Co | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co | 75 | 447 |
| 02/27/14 | S.C. Parrott, et al. | Gulf Pipeline Co | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt. et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Strode | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson, et al | Gulf Pipeline Co | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipeline Co | 82 | 426 |
| 03/04/14 | W.G. Aartt | Gulf Pipeline Co | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux | Gulf Pipeline Co | 85 | 52 |
| 03/05/14 | Alex Fears, et ux. | Gulf Pipeline Co | 85 | 62 |

Nacogdoches County, Texas

| 03/05/14 | W.H. Hollis, et ux | Gulf Pipeline Co. | 82 | 405 |
|---|---|---|---|---|
| 03/05/14 | Moses Tims, et ux | Gulf Pipeline Co. | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux | Gulf Pipeline Co. | 82 | 433 |
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | Mrs. S.C. Parrott | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | G.W. Tillory, Jr. | Gulf Pipeline Co. | 85 | 58 |
| 04/09/14 | Don Coasar DeBlazzeon | Gulf Pipeline Co. | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co. | 82 | 366 |
| 05/09/14 | Tom Hinjosa, et ux | Gulf Pipeline Co. | 82 | 404 |
| 05/23/24 | C.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 601 |
| 05/23/24 | Mrs. M.I. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 600 |
| 06/30/24 | A.B. Crawford | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 621 |
| 06/30/24 | Mart Melton | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartt, Ind and as Attorney in fact | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 619 |

Nacogdoches County, Texas

| Date | Name | Company | | |
|---|---|---|---|---|
| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 13 |
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B. Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mullins, Ind et al | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 81 |
| 04/28/25 | G A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 130 |

PURCHASE AND SALE AGREEMENT.        Page 32

## Nacogdoches County, Texas

| 04/28/25 | G.W. Tillery, Jr., | Gulf Pipe Line Co. & Gulf Production Co | 114 | 131 |
|---|---|---|---|---|
| 04/29/25 | Mrs. F.W. Halacher | Gulf Pipe Line Co. & Gulf Production Co | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co & Gulf Production Co. | 114 | 188 |
| 05/07/25 | L.L. Martin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co | 114 | 191 |
| 05/08/25 | Mrs. A.L. Ramsey, et al | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 208 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 185 |
| 05/11/25 | J.M. Miller, et al | Gulf Pipe Line Co. & Gulf Production Co | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co | 114 | 171 |
| 05/11/25 | R. Partin, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co & Gulf Production Co | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co & Gulf Production Co. | 114 | 193 |

Nacogdoches County, Texas

| 05/12/25 | Mrs. W V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
|---|---|---|---|---|
| 05/12/25 | L B Mast, et al | Gulf Pipe Line Co. & Gulf Production Co | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III, John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |
| 05/12/25 | J T Smith, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/26 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T. McNess | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J.W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 227 |
| 05/15/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 216 |
| 05/15/25 | G. W Falkner, | Gulf Pipe Line Co. & Gulf Production Co | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By: | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/26 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |

Nacogdoches County, Texas

| 05/29/25 | Olke Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
|---|---|---|---|---|
| 05/29/25 | Alex Fears, et ux | Gulf Pipe Line Co. & Gulf Production Co | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 326 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 335 |
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 328 |
| As Amended By; | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C. Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C.H. Muckelroy, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F. Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co | 114 | 371 |
| 08/21/25 | J.D. Skeeters | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W. Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co. & Gulf Production Co. | 117 | 241 |
| 05/09/28 | Mrs. A.L. Ramsey, Gdn., et al. | Gulf Pipe Line Co | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co. & Gulf Production Co | 122 | 234 |
| 09/10/29 | J.H. Franklin, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 126 | 52 |

Nacogdoches County, Texas

| 11/27/34 | Rosa Prince, et al | Gulf Pipe Line Co. & Gulf Production Co | 138 | 306 |
|---|---|---|---|---|
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 157 | 527 |
| 06/03/42 | Dock Saxton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 520 |
| 06/04/42 | W.F. Greer, et al | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |
| 06/04/42 | L. B. Mast, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept | Gulf Refining Co | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co | | |
| 10/28/42 | J. R. Gray, et al | Gulf Pipe Line Co. & Gulf Production Co | 160 | 323 |
| 05/24/49 | State Hwy. Dept | Gulf Refining Co | | |
| 10/08/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp | | N/R |
| 12/18/64 | Texas Hwy. Dept | Texas Eastern Transmission Corp | | |
| 01/17/69 | Texas Eastern Transmission | E W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp | 404 | 254 |

## Nacogdoches County, Texas

| 05/29/81 | Lenvel Standland, et al. | Texas Eastern Transmission Corp | 465 | 124 |
|---|---|---|---|---|
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp | 485 | 200 |

## Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|---|---|---|---|---|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co | 30 | 421 |
| 07/02/10 | M.A. Modissett, et al. | Gulf Pipe Line Co. | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co. | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co | 35 | 678 |
| 02/27/14 | M.A. Modissett, et al. | Gulf Pipe Line Co | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co | 63 | 158 |
| 04/29/25 | J.C. Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 63 | 175 |
| 08/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/29/50 | Texas Hwy. Dept | Gulf Refining Co | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 236 | 584 |

PURCHASE AND SALE AGREEMENT.        Page 37

## EXHIBIT 'A-1'
## TO PURCHASE AND SALE AGREEMENT
## BETWEEN BLACK DUCK PROPERTIES, LLC
## AND TCRG EAST TEXAS PIPELINE 1, LLC



## TO PURCHASE AND SALE AGREEMENT
## BETWEEN BLACK DUCK PROPERTIES, LLC
## AND ONE INDUSTRIES EAST TEXAS PIPELINE 1, LLC

*Limited Assignment of Net Revenue Interest in Water Pipeline*
## LIMITED ASSIGNMENT OF INTEREST IN WATER PIPELINE

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF _____** | § | |

**ASSIGNOR**      TCRG East Texas Pipeline 1, LLC
a Texas limited liability company
By its General Partner, One Industry, Inc.
5201 Camp Bowie Blvd, Ste. 200
Fort Worth, TX 76107

**ASSIGNEE**      Black Duck Properties, LLC
Attn. Larry M. Wright
410 Spyglass Road
McQueeney, Texas 78123

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company ("Assignor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), the receipt and sufficiency of which is acknowledged by the Assignor, and subject to the terms and provisions herein after set forth has BARGAINED, SOLD, ASSIGNED, and CONVEYED and by these presents does BARGAIN, SELL, ASSIGN, and CONVEY to Black Duck Properties, LLC ("Assignee"), whose address is 410 Spyglass Road, McQueeney, Texas, 78123, an undivided sixteen percent (16%) Interest in and to: (1) the Northern Water Project free of the costs of acquiring the rights of way; constructing a water pipeline there-under; and equipping same for the gathering, treating, transporting, delivering and disposing of water, and free of all monthly operating costs required for the treating, transporting, delivering and disposing of water; and (2) 16% of 8/8 of the Net Revenue received and realized by the Northern Water Project for gathering, treating, transporting, delivering and disposing of water for third parties through the Northern Water Project. The Northern Water Project is defined as the pipeline to be constructed along the Express Gas pipeline right-of-ways as depicted on the plat attached hereto as "Exhibit A" as an addendum and incorporated herein as if fully copied and set forth herein at length, (the "ROWs"). This Limited Assignment of Interest in Water Pipeline is intended to convey an interest in produced water, clean water and skim oil. In no event shall this instrument be construed or otherwise interpreted to assign any interest in oil other than skim oil, gas and other minerals that may be transferred through any pipeline or ROW that is the subject of this instrument.

The phrases "Net Revenue" or "Net Revenue Interest" as used herein is hereby defined as the gross income received by Northern Water Project for gathering, treating, transporting, delivering and disposing of water; less and except all costs and expenses attributable to gathering, treating, transporting, delivering and disposing of water; and less all Federal and State taxes and other monthly operating costs. Net Revenues shall be calculated separately each month for water operations and the sixteen percent (16%) Net Revenue shall be payable monthly to Assignee. Assignee shall never be required to pay any of the costs set forth herein. In the event Assignor shall sell, convey, transfer and/or assign all or any part of its interest in the Northern Water Project, such sale, conveyance, transfer and/or assignment shall remain subject to this instrument, and any such interest so sold, conveyed, transferred and/or assigned is and shall remain burdened by the terms and provisions hereof.

TO HAVE AND TO HOLD Assignee's right to a sixteen percent (16%) interest in the Northern Water project and a sixteen percent (16%) of 8/8 of the Net Revenue there from, together with all and singular the rights and appurtenances belonging in any way to Assignee's right to a sixteen percent (16%) interest in the Northern Water Project and a sixteen percent (16%) of 8/8 of the Net Revenue there from, subject to the terms and provisions stated above, to Assignee, its successors, and assigns forever, and Assignor binds itself, and its personal representatives, successors and assigns to warrant and forever defend all and singular Assignee's sixteen-percent (16%) interest in the Northern Water project and a sixteen percent (16%) of 8/8 of the Net Revenue there from to Assignee and its successors, and assigns against every person and/or entity lawfully claiming or to claim all or any part of Assignee's right to sixteen-percent (16%) interest in the Northern Water project and a sixteen percent (16%) of 8/8 of the Net Revenue there from by, through and/or under Assignor but not otherwise, subject to the provisions stated above.

EFFECTIVE March _____ 2018.

**ASSIGNOR:**

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

BY: _Robert L. Patton Jr._

    Robert L. Patton, Jr, Its Manager

**ASSIGNEE:**

Black Duck Properties, LLC, a Texas Limited Liability Company

BY_____

    Larry M. Wright, Member/Manager

PURCHASE AND SALE AGREEMENT.        Page 40

STATE OF TEXAS       }
COUNTY OF TARRANT    }

     BEFORE ME, on this day personally appeared Robert L Patton, Jr., known to me to be the person whose name is subscribed to the foregoing instrument as Manager of and on behalf of TCRG East Texas Pipeline 1, LLC, a Texas limited liability company, and acknowledged to me that he executed the same for purposes and considerations and in the capacity as therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this March _22_, 2018.

CHERYL L COUCH
NOTARY PUBLIC
ID# 125016697
State of Texas
Comm. Exp. 04-28-2022

Notary Public in and for the State of Texas
Commission Expires: 04/28/22

STATE OF TEXAS       }
COUNTY OF _____ }

     BEFORE ME, on this day personally appeared Larry M. Wright known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for purposes and considerations and in the capacity as therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this March _____ 2018.

Notary Public in and for the State of Texas
Commission Expires: _____

"EXHIBIT A"



EXHIBIT 'C'
TO PURCHASE AND SALE AGREEMENT
BETWEEN BLACK DUCK PROPERTIES, LLC
AND TCRG EAST TEXAS PIPELINE 1, LLC

[INSERT LEGAL DESCRIPTION OF THE LAND]

**DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE**

BLACK DUCK PROPERTIES, LLC, a Texas limited liability company, doing business at 410 Spyglass Road, McQueney, Texas 78123, ('Assignor'), for the payment of Ten and no/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged and subject to the terms and conditions hereof, hereby grants, sells, assigns, and conveys to TCRG East Texas Pipeline 1, LLC, a Texas limited liability company ('Assignee'), 5201 Camp Bowie Blvd., Suite 200, Fort Worth, Texas 76107 all of Assignor's right, title and interest (including, without limitation, overriding royalties and royalties) in and to the following described pipeline system and related facilities (the P-21 Pipeline), rights of way, easements and permits, leases and other rights and properties described herein situated in the State of Texas that Black Duck Properties acquired by Deed, Convey and Assignment from The Express Pipeline Connection, LLC recorded at Vogue 3522, Page 466 of the Real Property Records of Nacogdoches, Texas in the Real Property Records of Shelby County, Texas, that The Express Pipeline Connection, LLC acquired by Deed, Conveyance and Assignment from TE Products Pipeline Company, LP,(TEPCO) to Lancers Resources Company recorded at Volume 742, page 72 of the Real Property Records of Shelby County, Texas at Volume 824, page 29 of the Real Property Records of Nacogdoches County, Texas; and at Volume 889, Page 40 of the Official Public Records of Angelina County, Texas and by Correction Deed, Conveyance and Assignment from Lancer Resources , LP, to The Express Gas Pipeline , LP, recorded as Document Number 2009-00252651 of the Official Public Records of Angelina County, Texas; recorded as Document Number 133189 in Volume 3001, Page 80 of the Real Property Records of Nacogdoches County, Texas; at Volume 2911, Page 596 of the Real Property Records of Rusk County, Texas, and as Document Number 20090000958 the Real Property Records of Shelby County, Texas; (collectedly referred to herein as the "Express Pipeline"). as identified on Exhibit "A" forming fifty-three (53) right of way tracts of land through sixty-five (65) (+- five (5) miles) contiguous miles of rights of way as identified on Exhibit "A-1" (the "ROWs") comprised of easements that are valid and in full force and effect to permit the construction of a substitute pipeline for the transportation of water  across any portion of the ROWs together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, and appurtenances to the extent appertaining, if any.

I.
RIGHTS-OF-WAY, EASEMENTS AND PERMITS

All rights-of-way, easements, permits, privileges, grants and consents of Express for the construction, laying, maintenance, operation and removal of pipeline facilities in the State of Texas as set forth on Exhibits "A" and "A-1" attached hereto and by this reference made a part hereof.

## II.

TO HAVE AND TO HOLD all of the above-described premises, rights and properties, together with all and singular the rights, privileges, hereditaments and appurtenances belonging to or in any way appertaining to any or all of the premises, rights or properties hereinabove described and conveyed, unto TCRG East Texas Pipeline, LLC, its successors and assigns forever; and Black Duck Properties, LLC does hereby bind itself and its successors to warrant specially and forever defend the same unto said TCRG East Texas Pipeline, LLC, its successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof, by, through or under the Black Duck Properties, LLC, but not otherwise. This Deed, Conveyance and Assignment and all conveyances and transfers hereunder shall be subject to all liens, mortgages, taxes (except ad valorem taxes) restrictions, leases (both surface use; and oil, gas and mineral leases), easements, rights-of-way, licenses, exceptions, reservations, outstanding interest and other conditions of title or encumbrances of whatever nature, to the extent such matters are pf record in Angelina, Nacogdoches, Rusk and Shelby Counties, in Texas and to all matters that are a current survey or visual inspection would reflect.

## III.

Black Duck Properties, LLC is hereby sold, transferred, assigned, conveyed and delivered to TCRG East Texas Pipeline, LLC without recourse (even as to the return of the purchase price), and without covenant or warranty of any kind, express, implied, or statutory except as otherwise provided in said Purchase Agreement. WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEEDING SENTENCE AND IN ADDITION TO ANY DISCLAIMERS SET FORTH IN THE PURCHASE AND SALE AGREEMENT, THE EXPRESS GAS PIPELINE, LP HEREBY (i) EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OF ANY WARRANTY, EXPRESS, IMPLIED AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION, PURPOSE, DESIGN, QUALITY, PERFORMANCE, EXISTENCE, CLASS, CERTIFICATE, MAINTENANCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OR OF FITNESS FOR A PARTICULAR PURPOSE) OR (B) ANY INFRINGEMENT BY THE EXPRESS GAS PIPELINE, LP OR ANY OF ITS AFFILIATES ON ANY PATENT OR PROPERTY RIGHT OF ANY THIRD PARTY; AND (ii) NEGATES ANY RIGHTS OF BLACK DUCK PROPERTIES, LLC UNDER STATUTES OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY TCRG EAST TEXAS PIPELINE, LLC FOR DAMAGES BECAUSE OF REDHIBITORY VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN, IT BEING THE INTENTION OF TCRG EAST TEXAS PIPELINE, LLC AND Black Duck Properties, LLC THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR OR DISREPAIR.

[The Remainder of this Page Intentionally Left Blank]

IV.

IN WITNESS WHEREOF, this Deed, Conveyance and Assignment is being executed in counterparts, all of which are identical, on the dates shown below, but effective as of 7:00 a.m of the ___day of _____, 2018. Each of such counterparts shall for all purposes be deemed to be an original, provided all of such counterparts shall together constitute but one of the same instrument.

EXECUTED to be effective for all purposes as of the Effective Time.

**ASSIGNOR:**

   Black Duck Properties, LLC, a Texas limited liability company

   By:_____
    Larry Wright,
     Its Sole Manager

**ASSIGNEE:**

   TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

   By:_____
    Robert L. Patton, Jr.,
     Its Sole Manager

[The Remainder of this Page Intentionally Left Blank]

## ACKNOWLEDGEMENT

STATE OF TEXAS    )
                         ) ss.
COUNTY OF _____ )

Be it known, that on this _____ day of _____, 2018, before me, the undersigned authority, personally came and appeared Larry Wright to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

                    Notary Public in and for the State of Texas
                    My Commission Expires: _____
                    (Seal)

## ACKNOWLEDGEMENT

STATE OF TEXAS    )
                         ) ss.
COUNTY OF _____ )

Be it known, that on this _____ day of _____, 2018, before me, the undersigned authority, personally came and appeared Robert L. Patton, Jr. to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

                    Notary Public in and for the State of Texas
                    My Commission Expires: _____
                    (Seal)

[The Remainder of this Page Intentionally Left Blank]

PLEASE RETURN RECORDED INSTRUMENT TO:

TCRG East Texas Pipeline 1, LLC,
Attn: General Counsel
5201 Camp Bowie Blvd., Suite 200
Fort Worth, Texas 76107
Telephone: 817-626-9898
Telecopier: 817-624-1374

## EXHIBIT 'A'
## TO DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE

### Shelby County, Texas

| Date | Name | Grantee | | |
|------|------|---------|---|---|
| 02/05/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
| 02/07/14 | F.M. Bridwell, et al | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux | Gulf Pipe Line Co. | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co. | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 6 |
| 02/10/14 | Henry Sears, et ux | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co | 79 | 553 |
| 02/11/14 | J M. Whiteside | Gulf Pipe Line Co | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux. | Gulf Pipe Line Co | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 79 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zoch Brinson | Gulf Pipe Line Co | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux | Gulf Pipe Line Co | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux | Gulf Pipe Line Co | 79 | 612 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.L. Gilbert, et ux. | Gulf Pipe Line Co | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux. | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux | Gulf Pipe Line Co | 79 | 544 |
| 02/18/14 | R.A. Whiddon, et ux | Gulf Pipe Line Co | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux | Gulf Pipe Line Co | 79 | 584 |

### Shelby County, Texas

| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co | 79 | 551 |
|---|---|---|---|---|
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A. Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W.F. Taley, et ux. | Gulf Pipe Line Co | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux | Gulf Pipe Line Co | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 587 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I.W. Willimas | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux | Gulf Pipe Line Co | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co and Gulf Production Co | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Andrews, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 446 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co and Gulf Production Co | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux | Gulf Pipe Line Co. and Gulf Production Co | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

Shelby County, Texas

|          |                                           |                                                    |     |     |
|----------|-------------------------------------------|----------------------------------------------------|-----|-----|
|          |                                           | and Gulf Production Co.                            |     |     |
| 07/10/24 | W.M. Byrn                                 | Gulf Pipe Line Co and Gulf Production Co           | 124 | 459 |
| 07/10/24 | G.W Crenshaw, et ux                       | Gulf Pipe Line Co and Gulf Production Co           | 124 | 448 |
| 07/10/24 | J H. Cruger, et ux                        | Gulf Pipe Line Co. and Gulf Production Co.         | 124 | 445 |
| 07/10/24 | Mrs. F D. Haden                           | Gulf Pipe Line Co and Gulf Production Co           | 124 | 462 |
| 07/10/24 | C.O. Worsham, et ux.                      | Gulf Pipe Line Co and Gulf Production Co.          | 124 | 442 |
| 07/11/24 | F H. Bailey, et ux                        | Gulf Pipe Line Co and Gulf Production Co           | 124 | 453 |
| 07/11/24 | F. H. Bailey, et ux                       | Gulf Pipe Line Co and Gulf Production Co           | 124 | 453 |
| 07/11/24 | F H Bailey, et ux                         | Gulf Pipe Line Co and Gulf Production Co.          | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux.                     | Gulf Pipe Line Co and Gulf Production Co           | 124 | 452 |
| 07/11/24 | John Bussey, et ux                        | Gulf Pipe Line Co. and Gulf Production Co.         | 124 | 450 |
| 07/11/24 | Phil Bussy Jr., et ux                     | Gulf Pipe Line Co and Gulf Production Co           | 124 | 455 |
| 07/11/24 | J G. Ellington                            | Gulf Pipe Line Co. and Gulf Production Co          | 124 | 437 |
| 07/11/24 | F.O Johnson                               | Gulf Pipe Line Co and Gulf Production Co.          | 124 | 460 |
| 07/11/24 | I.N. Williams                             | Gulf Pipe Line Co and Gulf Production Co.          | 124 | 449 |
| 07/14/24 | E W. Cockrell, et ux                      | Gulf Pipe Line Co and Gulf Production Co           | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est  | Gulf Pipe Line Co and Gulf Production Co           | 124 | 481 |
| 07/14/24 | T A King                                  | Gulf Pipe Line Co.                                 | 124 | 478 |

Shelby County, Texas

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | and Gulf Production Co. |  |  |
| 07/14/24 | Ima Odom Nutt, et al | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.D Sholar | Gulf Pipe Line Co and Gulf Production Co. | 124 | 483 |
| 07/16/24 | W.R. Crawford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 496 |
| 07/21/24 | Mack Jones, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co and Gulf Production Co | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux | Gulf Pipe Line Co and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W.A Cooper | Gulf Pipe Line Co | 124 | 520 |

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 10/14/24 | Pierce Whiteside, et al. | Gulf Pipe Line Co and Gulf Production Co. | 123 | 632 |
| 04/30/25 | J.A. Deaton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 506 |
| 04/30/25 | Claude E. Fallir | Gulf Pipe Line Co. and Gulf Production Co | 127 | 52 |
| 04/30/25 | Alvin Gunter | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 503 |
| 04/30/25 | J.R. Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 55 |
| 04/30/25 | J.N. Majors | Gulf Pipe Line Co. and Gulf Production Co | 127 | 54 |
| 04/30/25 | C.C. McDona'd | Gulf Pipe Line Co and Gulf Production Co | 127 | 56 |
| 04/30/25 | Grover C. Peddy | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 500 |
| 04/30/25 | C. Riley, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 126 | 502 |
| 04/30/25 | F.B Taylor | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 504 |
| 04/30/25 | J.R. Weir, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 141 |
| 05/01/25 | Mrs. W. A. Bou and by J.L. Davis, Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co | 126 | 568 |
| 05/01/25 | Cicero Jopling, et ux | Gulf Pipe Line Co and Gulf Production Co. | 126 | 552 |
| 05/01/25 | J. N. King | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 62 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co and Gulf Production Co | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co and Gulf Production Co | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. | 127 | 187 |

Shelby County, Texas

| Date | Name | Grantee | | |
|------|------|---------|---|---|
| | | and Gulf Production Co | | |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co and Gulf Production Co | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co and Gulf Production Co | 126 | 569 |
| 05/01/25 | Robert Porter | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 61 |
| 05/01/25 | Walter Scates, et ux. | Gulf Pipe Line Co and Gulf Production Co | 127 | 63 |
| 05/01/25 | A.H. Womack, et ux | Gulf Pipe Line Co and Gulf Production Co | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux | Gulf Pipe Line Co and Gulf Production Co. | 126 | 556 |
| 05/02/25 | H. Bryant, et al. | Gulf Pipo Line Co. and Gulf Production Co. | 126 | 562 |
| 05/02/25 | Harvey Crawford | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 364 |
| 05/02/25 | John Davis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 60 |
| 05/02/25 | J R Foster, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster | Gulf Pipo Line Co. and Gulf Production Co. | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux. | Gulf Pipe Line Co and Gulf Production Co | 126 | 600 |
| 05/02/25 | J.R. Lewis | Gulf Pipe Line Co. and Gulf Production Co | 126 | 555 |
| 05/02/25 | Luke Motley | Gulf Pipo Lino Co. and Gulf Production Co | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux. | Gulf Pipo Line Co | 126 | 559 |

## Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 05/02/25 | Mrs. O M. Ramsey | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 563 |
| 05/04/25 | C.H. Horton, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co and Gulf Production Co | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 126 | 539 |
| 05/04/25 | Elbert B  Samford by E B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E B. Samford,  Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A. Samford, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux | Gulf Pipe Line Co, and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co | 126 | 529 |
| 05/05/25 | W.J. Walker, et al | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 533 |

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheat. et ux | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux | Gulf Pipe Line Co and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling. et ux | Gulf Pipe Line Co and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B. Golf. et ux. | Gulf Pipe Line Co. and Gulf Production Co | 127 | 189 |
| 05/27/25 | Mary White. et al. | Gulf Pipe Line Co and Gulf Production Co | 127 | 216 |
| 07/31/25 | Robert Spivey , | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister. et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola RushingA.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/31/25 | C.H. Horton. et ux | Gulf Pipe Line Co and Gulf Production Co | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux | Gulf Pipe Line Co and Gulf Production Co | 127 | 503 |
| 09/23/25 | Mrs M Lochabay | Gulf Pipe Line Co and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co and Gulf Production Co | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas    Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept | Texas    Eastern Transmission Corp | | |
| 05/04/48 | L.B. Dean | Gulf   Refining   Co | 276 | 615 |

Rusk County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/08/54 | Ruby L. Dumas, et vir. | Texas Eastern Transmission Corp | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp | | |
| 06/27/10 | J.A. Anderson, et ux | Gulf Pipe Line Co | 67 | 150 |
| 06/27/10 | M.J. Barton, et ux | Gulf Pipe Line Co | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux | Gulf Pipe Line Co | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux | Gulf Pipe Line Co | 67 | 144 |
| 06/27/10 | F.L. Hudgins, et ux | Gulf Pipe Line Co | 67 | 136 |
| 06/27/10 | J.R. Latimer, et ux | Gulf Pipe Line Co. | 67 | 142 |
| 06/27/10 | S.M. Moore, et ux. | Gulf Pipe Line Co | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al | Gulf Pipe Line Co. | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co | 67 | 182 |
| 11/16/10 | E.A. Blount | Gulf Pipe Line Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co. | 1677 | 111 |
| 05/01/14 | Mrs. M.L. Moore | Gulf Pipe Line Co. | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co. & Gulf Production Co | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 629 |
| 07/03/24 | T.S. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 614 |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 618 |
| 07/03/24 | J.R. Latimer, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co. & Gulf Oil Co. | 350 | 190 |

\

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Oil Corp. | | |
| 05/04/48 | C.H. Horton, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 276 | 616 |
| 05/04/48 | R.W. Todd | Gulf Refining Co. and Gulf Oil Corp. | 276 | 617 |
| 05/06/48 | J.R. Anderson | Gulf Refining Co. and Gulf Oil Corp. | 277 | 329 |
| 11/09/51 | Earl Hanson, et al. | Gulf Refining Co | 306 | 192 |
| 06/10/52 | M E. Bowlin, et ux. | Gulf Refining Co and Gulf Oil Corp | 311 | 258 |
| 08/10/52 | H.Q. Hoard, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 11/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 381 | 347 |
| 12/18/59 | Gulf, Colorado & Sante Fe R.R. Co. and Gulf Refining Co | Texas Eastern Transmission Corp | | |
| 09/29/71 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |

## Nacogdoches County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J W. Hartt, et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Melton, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay , | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux. | Gulf Pipeline Co | 72 | 642 |
| 06/28/10 | Mrs. M I. Strode | Gulf Pipeline Co | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S.W. Hunt, et ux | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co. | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al. | Gulf Pipeline Co | 75 | 73 |
| 06/29/10 | J L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W. Boyd, et ux | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Burns, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M Richards, et ux | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartt, et ux | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co. | 72 | 634 |
| 07/04/19 | S C. Parrott, et al | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca, et ux | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T. Supulvado, et ux | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M. Peterson, et ux | Gulf Pipeline Co. | 74 | 17 |
| 07/08/10 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co. | 72 | 633 |
| 07/18/10 | Elareo Cordova, et ux. | Gulf Pipeline Co. | 74 | 29 |
| 07/18/10 | J.H Summers | Gulf Pipeline Co. | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A.M. Evans, et ux | Gulf Pipeline Co. | 74 | 13 |
| | | | | |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co | 72 | 630 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co. | 72 | 629 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co. | 74 | 6 |

Nacogdoches County, Texas

| 07/20/10 | Mrs. Antonia Manchaca et al. | Gulf Pipeline Co. | 74 | 33 |
|---|---|---|---|---|
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 90 | 429 |
| 07/20/10 | Moses Tims, et ux. | Gulf Pipeline Co | 74 | 27 |
| 07/20/10 | Eli Westfall, et al | Gulf Pipeline Co | 74 | 101 |
| 07/21/10 | Jessie Grier | Gulf Pipeline Co | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co. | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al. | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al | Gulf Pipeline Co. | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux | Gulf Pipeline Co | 74 | 123 |
| 08/27/10 | Geo. S. McCarty, Ind. And as Gdn. | Gulf Pipeline Co. | 749 | 238 |
| 08/27/10 | Mrs. M.I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipe ine Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipe ine Co | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipe ine Co | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipe ine Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co | 75 | 447 |
| 02/27/14 | S.C. Parroll, et al. | Gulf Pipeline Co | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt. et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Stroce | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson, et al | Gulf Pipel ne Co | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipel ne Co | 82 | 426 |
| 03/04/14 | W.G. Aartl | Gulf Pipeline Co. | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux | Gulf Pipel ne Co | 85 | 52 |
| 03/05/14 | Alex Fearn, et ux | Gulf Pipeline Co. | 85 | 62 |

Nacogdoches County, Texas

| 03/05/14 | W.H Hollis, et ux | Gulf Pipeline Co. | 82 | 405 |
|---|---|---|---|---|
| 03/05/14 | Moses Tinis, et ux | Gulf Pipeline Co | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux | Gulf Pipeline Co | 82 | 433 |
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By. | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By. | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | Mrs. S.C. Parrott | Gulf Pipeline Co | 85 | 58 |
| 04/08/14 | G.W. Tillary, Jr. | Gulf Pipeline Co | 85 | 58 |
| 04/09/14 | Don Coasbr BeBrazzeon | Gulf Pipeline Co | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co | 82 | 386 |
| 05/09/14 | Tom Hinjosa, et ux | Gulf Pipeline Co. | 82 | 404 |
| 08/23/24 | C.W. Strode | Gulf Pipe Line Co & Gulf Production Co. | 110 | 601 |
| 06/23/24 | Mrs. M.L Strode | Gulf Pipe Line Co & Gulf Production Co | 110 | 600 |
| 06/30/24 | A.B. Crawford | Gulf Pipe Line Co & Gulf Production Co | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux | Gulf Pipe Line Co & Gulf Production Co | 110 | 621 |
| 06/30/24 | Mart Melton | Gulf Pipe Line Co & Gulf Production Co | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir | Gulf Pipe Line Co & Gulf Production Co | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux | Gulf Pipe Line Co & Gulf Production Co | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartl, Ind. and as Attorney in fact | Gulf Pipe Line Co. & Gulf Production Co | 110 | 619 |

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 13 |
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mulins, Ind et al | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 81 |
| 04/28/25 | G A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co & Gulf Production Co | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 130 |

PURCHASE AND SALE AGREEMENT.            Page 61

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 04/28/25 | G.W. Tillery, Jr., | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 131 |
| 04/29/25 | Mrs F.W Halecher | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co & Gulf Production Co. | 114 | 188 |
| 05/07/25 | L.L. Martin , et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co | 114 | 191 |
| 05/08/25 | Mrs. A.L. Ramsey, et al | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 206 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 165 |
| 05/11/25 | J.M. Miller, et al | Gulf Pipe Line Co. & Gulf Production Co | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 171 |
| 05/11/25 | R. Partin, et ux | Gulf Pipe Line Co & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co. & Gulf Production Co | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co & Gulf Production Co. | 114 | 193 |

Nacogdoches County, Texas

| 05/12/25 | Mrs. W V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
|---|---|---|---|---|
| 05/12/25 | L B Mast, et al | Gulf Pipe Line Co. & Gulf Production Co | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |
| 05/12/25 | J T Smith, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/25 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T McNess | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J.W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 114 | 227 |
| 05/15/25 | Itasca P Blount | Gulf Pipe Line Co. & Gulf Production Co | 114 | 216 |
| 05/15/25 | G. W Falkner. | Gulf Pipe Line Co. & Gulf Production Co | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By. | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/25 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |

## Nacogdoches County, Texas

| Date | Name | Company | | |
|------|------|---------|---|---|
| 05/29/25 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
| 05/29/25 | Alex Fears, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 335 |
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C. Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C.H. Muckelroy, et ux | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F. Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co | 114 | 371 |
| 08/21/25 | J.D. Skeelers | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W. Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co. & Gulf Production Co | 117 | 241 |
| 05/09/28 | Mrs. A.L. Ramsey, Gdn., et al. | Gulf Pipe Line Co | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co. & Gulf Production Co | 122 | 234 |
| 09/10/29 | J.H. Franklin, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 126 | 52 |

## Nacogdoches County, Texas

| Date | Grantor | Grantee | Vol | Page |
|---|---|---|---|---|
| 11/27/34 | Rosa Prince, et al | Gulf Pipe Line Co. & Gulf Production Co | 138 | 306 |
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 157 | 527 |
| 06/03/42 | Dock Sexton, et al | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux | Gulf Pipe Line Co. & Gulf Production Co | 157 | 520 |
| 06/04/42 | W.F. Greer, et al | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |
| 06/04/42 | L. B. Mast, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co | | |
| 10/28/42 | J. R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co | 160 | 323 |
| 05/24/49 | State Hwy. Dept. | Gulf Refining Co | | |
| 10/08/49 | State Hwy Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co | Texas Eastern Transmission Corp. | | N/R |
| 12/18/64 | Texas Hwy Dept | Texas Eastern Transmission Corp | | |
| 01/17/69 | Texas Eastern Transmission | E W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp | 404 | 254 |

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/81 | Lenvel Standland, et al. | Texas Eastern Transmission Corp | 465 | 124 |
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp | 485 | 200 |

### Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|---|---|---|---|---|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co | 30 | 421 |
| 07/02/10 | M.A. Modissett, et. al. | Gulf Pipe Line Co | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co | 35 | 678 |
| 02/27/14 | M.A. Modissett, et. al | Gulf Pipe Line Co | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 158 |
| 04/29/25 | J.C. Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 175 |
| 08/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/28/50 | Texas Hwy. Dept. | Gulf Refining Co | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 238 | 584 |

## EXHIBIT 'A-1'
## TO DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE



1.  Approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances that is located generally as set forth in the immediately following paragraph 2 and is depicted on the line drawing attached as Exhibit "A" and by this reference made a part hereof.

2.  8" PIPELINE FROM LUFKIN TO TEXAS/LOUISANA STATE LINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Mitchell Survey, Angelina County, Texas, as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeasterly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massengill in the Goguett Survey, as described by the easement recorded in Volume 63, Page 160, of the Deed records of said County;

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas, to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et. Al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties, Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by

PURCHA

Mrs. M. L. Moore, as described by easement recorded in Volume 67, page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas at a point on the south or west line of property now or formerly owned by Gulf Refining Company as described by easement recorded in Volume 381, Page 347 of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now or formerly owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

RIGHTS OF WAY, EASEMENTS AND PERMITS

**EXHIBIT 'D'**
**TO PURCHASE AND SALE AGREEMENT**
**BETWEEN BLACK DUCK PROPERTIES, LLC**
**AND TCRG EAST TEXAS PIPELINE 1, LLC**

Form **8594**
(Rev. December 2012)
Department of the Treasury
Internal Revenue Service

## Asset Acquisition Statement
### Under Section 1060

▶ Attach to your income tax return.
▶ Information about Form 8594 and its separate instructions is at *www.irs.gov/form8594*

OMB No. 1545-1021

Attachment
Sequence No. **169**

| Name as shown on return | Identifying number as shown on return |
|---|---|
| TCRG East Texas Pipeline 1, LLC | 81-5359729 |

Check the box that identifies you:
☐ Purchaser    ☐ Seller

### Part I    General Information

**1** Name of other party to the transaction

Black Duck Properties, LLC

Other party's identifying number

Address (number, street, and room or suite no.)

410 Spyglass Road

City or town, state, and ZIP code

McQueney, Texas 78123

| 2  Date of sale | 3  Total sales price (consideration) |
|---|---|
| | $2,500,000.00 |

### Part II    Original Statement of Assets Transferred

| 4    Assets | Aggregate fair market value (actual amount for Class I) | Allocation of sales price |
|---|---|---|
| Class I | $ $0 | $ $0 |
| Class II | $ $0 | $ $0 |
| Class III | $ $0 | $ $0 |
| Class IV | $ $0 | $ $0 |
| Class V | $ $2,500,000.00 | $ $2,500,000.00 |
| Class VI and VII | $ $0 | $ $0 |
| Total | $ $2,500,000.00 | $ $2,500,000.00 |

**5** Did the purchaser and seller provide for an allocation of the sales price in the sales contract or in another written document signed by both parties? . . . . . . . . . . . . . . . . . . . .    ☑ Yes    ☐ No

If "Yes," are the aggregate fair market values (FMV) listed for each of asset Classes I, II, III, IV, V, VI, and VII the amounts agreed upon in your sales contract or in a separate written document? . . . . . . . .    ☑ Yes    ☐ No

**6** In the purchase of the group of assets (or stock), did the purchaser also purchase a license or a covenant not to compete, or enter into a lease agreement, employment contract, management contract, or similar arrangement with the seller (or managers, directors, owners, or employees of the seller)? . . . . . .    ☐ Yes    ☑ No

If "Yes," attach a statement that specifies (a) the type of agreement and (b) the maximum amount of consideration (not including interest) paid or to be paid under the agreement. See instructions.

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 63768Z    Form **8594** (Rev. 12-2012)

PURCHASE AND SALE AGREEMENT.        Page 71

Form 8594 (Rev. 12-2012)                                                                                     Page **2**

**Part III**  **Supplemental Statement**—Complete only if amending an original statement or previously filed supplemental statement because of an increase or decrease in consideration. See Instructions.

7  Tax year and tax return form number with which the original Form 8594 and any supplemental statements were filed.

| 8  Assets | Allocation of sales price as previously reported | Increase or (decrease) | Redetermined allocation of sales price |
|---|---|---|---|
| Class I | $ $0 | $ $0 | $ $0 |
| Class II | $ $0 | $ $0 | $ $0 |
| Class III | $ $0 | $ $0 | $ $0 |
| Class IV | $ $0 | $ $0 | $ $0 |
| Class V | $ $0 | $ $0 | $ $2,500,000.00 |
| Class VI and VII | $ $0 | $ $0 | $ $0 |
| Total | $ $2,500,000.00 | | $ $2,500,000.00 |

9  Reason(s) for increase or decrease. Attach additional sheets if more space is needed.

_____

_____

_____

_____

_____

_____

_____

Supplemental Response to Question 6: If "Yes," attach a statement that specifies

(a) the type of agreement:  Purchase and Sale Agreement of Assets dated _____, 2018:

(b) the maximum amount of consideration (not including interest) paid: $2,500,000.00

_____

_____

_____

_____

_____

_____

_____

Form 8594 (Rev. 12-2012)

PURCHASE AND SALE AGREEMENT.                   Page 72

# Exhibit 9:
# TCRG Deed



**Nacogdoches County**
**June Clifton**
**Nacogdoches County Clerk**
**Nacogdoches, Texas 75961**

70 2018 00004273

---

**Instrument Number: 2018-4273**

As

Recorded On: **June 04, 2018**          **Recording**

Parties: **BLACK DUCK PROPERTIES LLC**          **Billable Pages: 39**

To   **TCRG EAST TEXAS PIPELINE 1 LLC**          **Number of Pages: 40**

Comment: **DEED CONVEYANCE ASSIGNMNT**

( Parties listed above are for Clerks reference only )

---

** THIS IS NOT A BILL **

Recording                          178.00

    **Total Recording:**          **178.00**

---

************ **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**          **Record and Return To:**
  Document Number: 2018-4273          ALBERT CARRILLO LLC
  Receipt Number: 123824          620 KING ST
  Recorded Date/Time: June 04, 2018 04:24:04P          NACOGDOCHES TX 75961
  Book-Vol/Pg: BK-OPR VL-4762 PG-81
  User / Station: S Barrueta - Cashier Station 01

---

I hereby certify that this instrument was filed on the date
and time stamped here on and was duly recorded in the
Official Public Records in Nacogdoches County, Texas

*June Clifton*          JUNE CLIFTON
NACOGDOCHES COUNTY CLERK



## DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE

BLACK DUCK PROPERTIES, LLC, a Texas limited liability company, doing business at 410 Spyglass Road, McQueney, Texas 78123 ('Assignor') for the payment of Ten and no/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged and subject to the terms and conditions hereof, hereby grants, sells, assigns, and conveys to TCRG East Texas Pipeline 1, LLC, a Texas limited liability company ('Assignee'), 5201 Camp Bowie Blvd., Suite 200, Fort Worth, Texas 76107 all of Assignor's right, title and interest in and to the following described pipeline system and related facilities ('the P-21 Pipeline'), rights of way, easements and permits, leases and other rights and properties described herein situated in the State of Texas that Black Duck Properties, LLC acquired by:

(i) Deed, Conveyance and Assignment dated August 14, 2017 from The Express Pipeline, LLC to Black Duck Properties, LLC and being recorded under Instrument No. 2017-00355856 in the Real Property Records of Angelina County, Texas; previously acquired by The Express Pipeline LLC by Deed, Conveyance and Assignment from TE Products Pipeline Company, LP, (TEPCO) to Lancer Resources Company recorded at Volume 889, Page 40 of the Official Public Records of Angelina County, Texas, and by Correction Deed, Conveyance and Assignment from Lancer Resources, LP, to The Express Gas Pipeline, LP, recorded as Document Number 2009-00252651 of the Official Public Records of Angelina County, Texas;

(ii) Deed, Conveyance and Assignment dated August 14, 2017 from The Express Pipeline, LLC to Black Duck Properties, LLC and being recorded at Volume 4631, Page 232 of the Real Property Records of Nacogdoches, Texas, previously acquired by The Express Pipeline LLC from TE Products Pipeline Company, LP, (TEPCO) to Lancer Resources Company recorded at Volume 824, page 29 of the Real Property Records of Nacogdoches County, Texas and by Correction Deed, Conveyance and Assignment from Lancer Resources, LP, to The Express Gas Pipeline, LP, recorded as recorded as Document Number 133189 in Volume 3001, Page 80 of the Real Property Records of Nacogdoches County, Texas;

(iii) Deed, Conveyance and Assignment dated August 14, 2017 from The Express Pipeline, LLC to Black Duck Properties, LLC and being recorded in Instrument No. 2017002756 of the Real Property Records of Shelby County, Texas, previously acquired by The Express Pipeline, LLC by Deed, Conveyance and Assignment from TE Products Pipeline Company, LP,(TEPCO) to Lancer Resources Company recorded at Volume 742, page 72 of the Real Property Records of Shelby County, Texas and that The Express Pipeline Connection, LLC acquired by Deed, Conveyance and Assignment from TE Products Pipeline Company, LP,(TEPCO) to Lancer Resources Company recorded as Document Number 20090000958 the Real Property Records of Shelby County, Texas and recorded at Volume 742, page 72 of the Real Property Records of Shelby County, Texas; and

DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.

(iv)    Deed, Conveyance and Assignment dated August 14, 2017 from The Express Pipeline, LLC to Black Duck Properties, LLC and being recorded in Volume 3522, Page 466 of the Official Records of Shelby County, Texas, previously acquired by Correction Deed, Conveyance and Assignment from Lancer Resources, LP, to The Express Gas Pipeline, LP, recorded as Document Number 2009-00252651 in the Official Public Records of Angelina County, Texas at Volume 2911, Page 596 of the Real Property Records of Rusk County, Texas.

(collectively referred to herein as the "Express Pipeline") as identified on Exhibit "A" forming fifty-three (53) right of way tracts of land through sixty-five (65) (+- five (5) miles) contiguous miles of rights of way as identified on Exhibit "A-1" (the "ROWs") comprised of easements to permit the construction of a substitute pipeline for the transportation of water across any portion of the ROWs together with all improvements and fixtures thereon, if any, and all easements, rights-of-way, licenses, interests, rights, and appurtenances to the extent appertaining, if any.

II.

All of the following described pipelines, taps and other facilities owned by Black Duck Properties, LLC in the State of Texas as set forth on Exhibits "A" and "A-1" attached hereto and by this reference made a part hereof.:

1.    Approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances that is located generally as set forth in the immediately following paragraph 2 and is depicted on the line drawing attached as Exhibit "A" and by this reference made a part hereof.

2.    8" PIPELINE FROM LUFKIN TO TEXAS/LOUISANA STATE LINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Mitchell Survey, Angelina County, Texas. as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeasterly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massengill in the Goguett Survey, as described by the easement recorded in Volume 63, Page 160, of the Deed records of said County:

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas. to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et. Al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties. Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by

DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.

Mrs. M. L. Moore, as described by easement recorded in Volume 67, page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas at a point on the south or west line of property now or formerly owned by Gulf Refining Company as described by easement recorded in Volume 381, Page 347 of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now or formerly owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County, Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County, Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

RIGHTS OF WAY, EASEMENTS AND PERMITS

## III.
## RIGHTS-OF-WAY, EASEMENTS AND PERMITS

All rights-of-way, easements, permits, privileges, grants and consents of Black Duck Properties, LLC for the construction, laying, maintenance, operation and removal of pipeline facilities in the State of Texas as set forth on Exhibits "A" and "A-1" attached hereto and by this reference made a part hereof.

IV.

**DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.**

TO HAVE AND TO HOLD all of the above-described premises, rights and properties, together with all and singular the rights, privileges, hereditaments and appurtenances belonging to or in any way appertaining to any or all of the premises, rights or properties hereinabove described and conveyed, unto TCRG East Texas Pipeline 1, LLC, its successors and assigns forever; and Black Duck Properties, LLC does hereby bind itself and its successors to warrant specially and forever defend the same unto said TCRG East Texas Pipeline 1, LLC, its successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof, by, through or under the Black Duck Properties, LLC, but not otherwise. This Deed, Conveyance and Assignment and all conveyances and transfers hereunder shall be subject to all liens, mortgages, taxes (except ad valorem taxes) restrictions, leases (both surface use; and oil, gas and mineral leases), easements, rights-of-way, licenses, exceptions, reservations, outstanding interest and other conditions of title or encumbrances of whatever nature, to the extent such matters are pf record in Angelina, Nacogdoches, Rusk and Shelby Counties, in Texas and to all matters that are a current survey or visual inspection would reflect.

V.

Black Duck Properties, LLC is hereby sold, transferred, assigned, conveyed and delivered to TCRG East Texas Pipeline 1, LLC without recourse (even as to the return of the purchase price), and without covenant or warranty of any kind, express, implied, or statutory except as otherwise provided in said Purchase Agreement. WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEEDING SENTENCE AND IN ADDITION TO ANY DISCLAIMERS SET FORTH IN THE PURCHASE AND SALE AGREEMENT, BLACK DUCK PROPERTIES, LLC HEREBY (i) EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OF ANY WARRANTY, EXPRESS, IMPLIED AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION, PURPOSE, DESIGN, QUALITY, PERFORMANCE, EXISTENCE, CLASS, CERTIFICATE, MAINTENANCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OR OF FITNESS FOR A PARTICULAR PURPOSE) OR (B) ANY INFRINGEMENT BY BLACK DUCK PROPERTIES, LLC OR ANY OF ITS AFFILIATES ON ANY PATENT OR PROPERTY RIGHT OF ANY THIRD PARTY; AND (ii) NEGATES ANY RIGHTS OF TCRG EAST TEXAS PIPELINE 1, LLC UNDER STATUTES OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY TCRG EAST TEXAS PIPELINE 1, LLC FOR DAMAGES BECAUSE OF REDHIBITORY VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN, IT BEING THE INTENTION OF TCRG EAST TEXAS PIPELINE 1, LLC AND BLACK DUCK PROPERTIES, LLC THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR OR DISREPAIR.

DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.

## VI.

IN WITNESS WHEREOF, this Deed, Conveyance and Assignment is being executed in counterparts, all of which are identical, on the dates shown below, but effective as of 7:00 a.m. of the 3 day of _April_ 2018. Each of such counterparts shall for all purposes be deemed to be an original, provided all of such counterparts shall together constitute but one of the same instrument.

EXECUTED to be effective for all purposes as of the Effective Time.

**ASSIGNOR:**

Black Duck Properties, LLC, a Texas limited liability company

By: _Larry Wright_

Larry Wright, Its Sole Manager

**ASSIGNEE:**

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

By: _Robert Patton Jr._

Robert L. Patton, Jr., Its Sole Manager

[The Remainder of this Page Intentionally Left Blank]

DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.

Page 6

## ACKNOWLEDGEMENTS

STATE OF TEXAS     )
                            ) ss.
COUNTY OF _Bexar_  )

Be it known, that on this __3__ day of ___April___, 2018, before me, the undersigned authority, personally came and appeared Larry Wright to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this April __3__ 2018.



**TRACY L. GEORGE**
Notary Public-State of Texas
Notary ID #12896431-6
Commission Exp. APRIL 20, 2020

Notary Public in and for the State of Texas
Commission Expires: ___4·20·20___
(Seal)

STATE OF TEXAS     )
                            ) ss.
COUNTY OF _Tarrant_

Be it known, that on this __3__ day of _April_, 2018, before me, the undersigned authority, personally came and appeared Robert L. Patton, Jr. to me personally known and known by me to be the person whose genuine signature is affixed to the foregoing document, who signed said document before me and who acknowledged, in my presence, that he signed the above foregoing document as his own free act and deed and for the uses and purposes therein set forth and apparent.

In witness whereof, the said appeared has signed these presents and I have hereunto affixed my hand and seal on the day and date first above written.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this April __3__ 2018.

CHERYL L COUCH
NOTARY PUBLIC
ID# 125016597
State of Texas
Comm. Exp. 04-28-2022

Notary Public in and for the State of Texas

**DEED, CONVEYANCE, ASSIGNMENT AND BILL OF SALE.**

**Page 7**

PLEASE RETURN RECORDED INSTRUMENT TO:

TCRG East Texas Pipeline 1, LLC,
Attn: General Counsel
5201 Camp Bowie Blvd., Suite 200
Fort Worth, Texas 76107
Telephone: 817-626-9898
Telecopier: 817-624-1374

.

# Exhibit 10:
# October 12, 2018 Letter



**GRANSTAFF**
**GAEDKE &**
**EDGMON, P.C.**
ATTORNEYS AT LAW

Charles A. Granstaff *
Gina B. Gaedke *
J. Mark Edgmon
Carl J. Harris
Roy A. Jeffries *
David P. Strolle, Jr.
Bryan P. Myers
Erica N. Gay
* Board Certified Estate Planning & Probate Law
   Texas Board of Legal Specialization

Main Office:
5535 Fredericksburg Road, Suite 110
San Antonio, TX 78229
(210) 348-6600
Fax (210) 366-0892

October 12, 2018

Bigfoot Energy Services, LLC
312 West Sabine Street
Carthage, Texas 75633
Attn: Robert A. Sherman, Manager

CMRRR 7014 1820 0000 1955 4025
and regular mail

Re: Notice of Assignment of Promissory Note in the original face amount of Four Hundred
   Fifty Thousand dollars ($450,000.00) plus Security Agreement both dated March 20,
   2017 between Bigfoot Energy Services, LLC as Borrower/Debtor and Black Duck
   Properties, LLC as Lender/secured party.

Dear Sirs:

Please be advised that this firm and the undersigned represent KrisJenn Ranch, LLC and
KrisJenn Ranch, LLC, a Texas Limited Liability Company- Series Uvalde Ranch ("our
Clients"), in connection with the above-referenced matter.

The purpose of this correspondence is to provide you with formal written notice that an
assignment that was executed by Black Duck Properties, LLC on or about October 8, 2018
assigning one hundred percent (100%) of Black Duck Properties, LLC's interest in both the
Promissory Note and the Security Agreement to our Clients. A true and correct copy of this
Assignment is enclosed for your review and records.

In accordance with the enclosed Assignment, effective immediately please direct all
remaining payments as follows:

KrisJenn Ranch, LLC, 410 Spyglass, McQueeney, Texas 78123, Attn: Larry Wright.

Please make sure that all future payments are made payable and timely delivered to KrisJenn
Ranch, LLC and reference the March 20, 2017 Promissory Note in order to ensure that you
receive proper credit.

Thank you in advance for your anticipated prompt attention to this important matter. Should you have any remaining questions, or need any additional information concerning this matter, please do not hesitate to contact me directly.

Sincerely,

David P. Strolle, Jr.
Email dstrolle@caglaw.net
Telephone extension 203

DPS/tg
Cc: Client
Enclosure



## ASSIGNMENT

WHEREAS, Black Duck Properties, LLC, a Texas Limited Liability Company ("Borrower") previously borrowed, pursuant to a written Real Estate Lien Note, Four Million One Hundred Thousand dollars ($4,100,000.00) from Lender, KrisJenn Ranch, LLC, a Texas Limited Liability Company and KrisJenn Ranch, LLC a Texas Limited Liability Company-Series Uvalde Ranch ("the Note").

The Note is dated August 14th, 2017 and by the terms of the Note, was due and payable in full on or before August 14th, 2018. Borrower has not paid the Note according to its terms and Lender has foreclosed on the Note and the collateral which includes Borrowers interest in the Express Gas Pipeline.

FOR AND IN CONSIDERATION of partial payment of the balance due and owing on the Note dated August 14, 2017 and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Black Duck Properties, LLC ("Assignor") hereby transfers, assigns and delivers to Krisjenn Ranch, LLC and Krisjenn Ranch, LLC, a Texas Limited Liability Company-Series Uvalde Ranch ("Assignee") one hundred percent (100%) of Assignor's interest in that one certain Promissory Note dated March 20, 2017 wherein Bigfoot Energy Services LLC is the Borrower and Black Duck Properties, LLC is the Lender in the original principal amount of Four Hundred Fifty Thousand dollars ($450,000.00) payable quarterly with interest at six percent (6%) ("The Note") plus the Security Agreement dated March 20,2017 between Bigfoot Energy Services LLC and Assignor securing payment of the Note ("Security Agreement") together with any and all other rights, titles, interests, and equity of Assignor in and to the Note and Security Agreement to have and to hold unto said Assignee and their heirs, successors and assigns forever.

ASSIGNOR:

BLACK DUCK PROPERTIES, LLC,
a Texas Limited Liability Company.

Date: _October 12_, 2018           _Larry M. Wright_
                                    LARRY M. WRIGHT, Sole Member/Manager

ACCEPTED BY ASSIGNEE:

KrisJenn Ranch, LLC, a Texas Limited Liability Company
and KrisJenn Ranch, LLC a Texas Limited Liability Company-Series Uvalde Ranch

_Larry M. Wright_
LARRY M. WRIGHT, Member/Manager

# Exhibit 11:
# Assignment of Note



## ASSIGNMENT

WHEREAS, Black Duck Properties, LLC, a Texas Limited Liability Company ("Borrower") previously borrowed, pursuant to a written Real Estate Lien Note, Four Million One Hundred Thousand dollars ($4,100,000.00) from Lender, KrisJenn Ranch, LLC, a Texas Limited Liability Company and KrisJenn Ranch, LLC a Texas Limited Liability Company-Series Uvalde Ranch ("the Note").

The Note is dated August 14th, 2017 and by the terms of the Note, was due and payable in full on or before August 14th, 2018. Borrower has not paid the Note according to its terms and Lender has foreclosed on the Note and the collateral which includes Borrowers interest in the Express Gas Pipeline.

FOR AND IN CONSIDERATION of partial payment of the balance due and owing on the Note dated August 14, 2017 and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Black Duck Properties, LLC ("Assignor") hereby transfers, assigns and delivers to KrisJenn Ranch, LLC and KrisJenn Ranch, LLC, a Texas Limited Liability Company-Series Uvalde Ranch ("Assignee") one hundred percent (100%) of Assignor's interest in that one certain Promissory Note dated March 20, 2017 wherein Bigfoot Energy Services LLC is the Borrower and Black Duck Properties, LLC is the Lender in the original principal amount of Four Hundred Fifty Thousand dollars ($450,000.00) payable quarterly with interest at six percent (6%) ("The Note") plus the Security Agreement dated March 20,2017 between Bigfoot Energy Services LLC and Assignor securing payment of the Note ("Security Agreement") together with any and all other rights, titles, interests, and equity of Assignor in and to the Note and Security Agreement to have and to hold unto said Assignee and their heirs, successors and assigns forever.

ASSIGNOR:

BLACK DUCK PROPERTIES, LLC,
a Texas Limited Liability Company.

Date: _October 12_, 2018

_Larry M. Wright_
LARRY M. WRIGHT, Sole Member/Manager

ACCEPTED BY ASSIGNEE:

KrisJenn Ranch, LLC, a Texas Limited Liability Company
and KrisJenn Ranch, LLC a Texas Limited Liability Company-Series Uvalde Ranch

_Larry M. Wright_
LARRY M. WRIGHT, Member/Manager

EXHIBIT D

Unofficial Copy

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bigfoot Energy Services, LLC
Attn: Robert A. Sherman
312 West Sabine Street
Carthage, Texas 75633

9590 9401 0036 5168 5043 95

2. Article Number (Transfer from service label)

7014 1820 0000 1955 4025

Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
AMARANAI

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**Postal Service**

**CERTIFIED MAIL® RECEIPT**

Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Postage   $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Postmark
Here

Bigfoot Energy Services, LLC
Attn: Robert A. Sherman
312 West Sabine Street
Carthage, Texas 75633

3800, July 2014    See Reverse for Instructions

# EXHIBIT D

Unofficial Copy

# Exhibit 12:
# April 16, 2019 Email

**From:** Larry Wright <larrymwright54@yahoo.com>
**Sent:** Tuesday, April 16, 2019 4:15:35 PM
**To:** Daniel Moore; Darin Borders
**Cc:** Dstrolle@caglaw.net
**Subject:** False allegations and claims answered with facts

Daniel-I'm at a loss what your are trying to do and destroy.  I'm afraid the only thing you are going to to do is destroy Darin's chance to make any money on this deal.   Of course that would destroy your chance too and We are prepared to protect my good reputation!!!!





FW: Status of Wire (2)

**Daniel Moore**  From: palmettolandandfarms@  09/16/16 at 5:21 PM

**Daniel Moore** <palmettolandandfarms@hotmail.com> 09/16/16 at 5:26 PM

To  Chase Palmer, Darin Borders
CC  Rod Roberts, hscohle@yahoo.com,
    larrymwright54@yahoo.com

Chase,

Please copy Mr Larry Wright, and Hagan Cohle (copied on this email) on
any and all future emails. They are the controlling parties of this deal from
the buyers side.

Regards,
Daniel Moore

From: cpalmerppf@gmail.com
Date: Fri, 16 Sep 2016 13:38:45 -0500
Subject: Status of Wire
To: palmettolandandfarms@hotmail.com; darinborders@gmail.com
CC: rod@lancerresources.com

Gentlemen,
I am currently in meetings, but would request a status update on the wire
transfer. I have not received any notification that the amendment extension
has funded. Please advise. Thanks.





As you can see on 7/17/17, you gave full authority to close any way I could, no questions asked.  You can put all the spin on this you want, but the facts speak for themselves.

     There are several reasons for why you did this.  First you made an end run on me and BlackDuck with Faryx and Joe Michael on May 28th, 2017.   Chase Palmer confirmed the agreement and you confirmed on May 28th at 1:39 pm.  You immediately put BlackDuck into a default situation without ever running it by us till way later. Chase Palmer had to provide these documents to me on 7/14/17 at 11:12am.  I have no proof Darrin that you were part of this mutiny??  Then on 7/14/17 at 3:32 pm you had your little blowup with Rod Roberts and Chase.    I had to come in to salvage any way I could to close and save the over $1,000,000 in non refundable earnest money that I had wired to Rod Roberts from KrisJenn Ranch LLC(not one penny every came from BlackDuck)!!!!!!   In the last dealings you never got my approval or ever thought about my earnest money that was on deposit, that You maliciously put at risk!!!! And again you can spin it any way you want.

The last thing you did when you gave up on closing was offered me $1.5 million not to close.  You assured me Joe Michael of Faryx would have me the money. Again, I'm not sure you were part of this or not Darrin?   Two days before I closed, you and Joe had completely giving up on me ever closing!!!!

In effect, when I did close, It was only after BlackDuck defaulted on its earnest money Contract.   Joe Michael and Daniel Moore went silent for two days.    Y'all were in shock and Non-believe when you found out I closed.  I'm SURE that spoiled your's and Joes plans!  Well guest what?   The facts will prove that BlackDuck defaulted and yall's 20% each went into the trash can.   Rod made a new deal with me on such a short time line that it would be impossible to get a Bank loan.  I scrambled and made an outrageously  high 17% interest rate loan thru KrisJenn.   KrisJenn Ranch bought the Express!!!!

I have held all of this bottled up for quite a while.  I'm not sure you knew any of this Darrin. I pray you weren't involved or there wouldn't be any need for this email.     I agree I didn't make the Best deal the World ever saw when I sold, but I still after everything that has happened ....... tried to keep y'all in the picture with Honor.    But as both of you have agreed many times in emails that I have Kept: Is that I had full authority.    My belief is that I can arbitrarily end yall's 20% right

now.   I would prefer to get KrisJenn even, then all of us make some money.  Daniel if you keep bothering my buyers, I will have no option, but to end the 20% and file Malicious charges against you and all of your forfeited Companies in the Sate of Texas.  I pray Darrin, you were not a part of any of the above and you did everything you said you would for the benefit of the water project.

If I don't get some type of answer, Daniel that you have backed off with yourself and your attorney Harassing my buyers by April 23rd.   Then I will proceed to kill the 20% each of you own.  I will just give the buyers yall's 4%  (Darrin did you hire an attorney yet and put Crockett(Buyers attorney)on Notice) If not I can have KrisJenn assign your percentage now.  I can do your's also Daniel.    Yall's choice -live with the deal and make more money than you ever dreamed of/or kill the deal.    And on a last note, I'm not ever interested in arguing agin with you Daniel or the way you spin everything.   I can continue from this point forward if you want on a strictly business relationship.  Darrin,I think we are in that Business relationship.  Thank you and waiting to hear back.

God Bless,
Larry Wright
KrisJenn Ranch LLC

# Exhibit 13:
# Release of Lien

 **ORIGINAL**

## RELEASE OF LIEN

Date:  June 28, 2019

Note:

| | |
|---|---|
| Date: | August 14th, 2017 |
| Original amount: | $4,100,000.00 |
| Maker: | Black Duck Properties, LLC |
| Payee: | Krisjenn Ranch, LLC and Krisjenn Ranch, LLC- Series Uvalde Ranch |
| Maturity date: | August 14th, 2018 |

Note:

| | |
|---|---|
| Date: | August 14th, 2017 |
| Original amount: | $1,175,000.00 |
| Maker: | Black Duck Properties, LLC |
| Payee: | Larry M. Wright, Individually |
| Maturity date: | August 14th, 2018 |

Holder of Notes and Lien:  Krisjenn Ranch, LLC and Krisjenn Ranch, LLC- Series Uvalde and Larry M. Wright, individually

Lien Holder's Mailing Address:  410 Spyglass Road, McQueeney, Texas 78123

Notes and Lien Are Described in the Following Documents:

Deed of Trust-Security Agreement- Assignment of Rents-Collateral Assignment of Leases-Construction Mortgage- Financing Statement-Fixture Filing ("Deed of Trust) recorded at Volume 3550 Page 534 of the real property records of Rusk County, Texas.

Property (including any improvements):

See Exhibit A

Holder of Notes and Lien acknowledges its payment and releases the property from the lien and from all liens held by Holder of the note and lien without regard to how they were created or evidenced.

Holder of notes and lien expressly releases all present and future rights to establish or enforce the lien as security for payment of any future or other advances.

When the context requires, singular nouns and pronouns include the plural.

KRISJENN RANCH, LLC., A TEXAS LIMITED LIABILITY COMPANY

By: _____
Larry M. Wright, Manager

KRISJENN RANCH, LLC.-SERIES UVALDE RANCH

By: _____
Larry M. Wright, Manager

By: _____
Larry M. Wright, Individually

00200269 VOL= 3648 PG: 371

THE STATE OF TEXAS  §
§
COUNTY OF BEXAR  §

This instrument was acknowledged before me on _____June  24_____, 2019,  by
Larry Wright, manager of Krisjenn Ranch, LLC.



_____
Notary Public for the State of Texas


THE STATE OF TEXAS  §
§
COUNTY OF BEXAR  §

This instrument was acknowledged before me on _____June  24_____, 2019,  by
Larry Wright, manager of Krisjenn Ranch, LLC-Series Uvalde Ranch.



_____
Notary Public for the State of Texas


THE STATE OF TEXAS  §
§
COUNTY OF BEXAR  §

This instrument was acknowledged before me on _____June  24_____, 2019,  by
Larry Wright.

_____
Notary Public for the State of Texas

00200269 VOL: 3648 PG: 372

AFTER RECORDING RETURN TO:

**GRANSTAFF, GAEDKE & EDGMON, P.C.**
David P. Strolle Jr.
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Tel:      (210) 348-6600
Fax:      (210) 366-0892

P:\WP2\Clients T-Z\Wright, Larry & Gwynne\2013 Uvalde County RE transaction\Release of Lien.doc

00200269  VOL: 3648  PG:  373

EXHIBIT "A" FOLLOWS



33 PGS
CO

2017002756



00200269 VOL: 3648 PG: 374

---

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY (THIS) INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER

## DEED, CONVEYANCE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS THAT:

I.

THE EXPRESS GAS PIPELINE, LP, a limited partnership organized and existing under the laws of the State of Texas, with its principal office at 6034 West Courtyard Drive, Suite 205, Austin, Texas 78730 (hereinafter sometimes called "Express"), acting by and through its sole general partner The Express Pipeline Connection, LLC and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has sold, transferred, assigned, and by these presents does bargain, sell, transfer assign, convey, and deliver unto BLACK DUCK PROPERTIES, LLC with its principal office at 410 Spyglass Road, McQueeney, Texas 78123, all of the following described pipeline system and related facilities (the P-21 Pipeline), rights-of-way, easements and permits, leases, and other rights and properties described herein situated in the State of Texas, that Express acquired by Deed, Conveyance and Assignment from TE Products Pipeline Company, Limited Partnership (TEPCO) to Lancer Resources Company recorded at Volume 742, page 72 of the Real Property Records, Shelby County, Texas; at Volume 824, page 29 of the Real Property Records of Nacogdoches, Texas; and at Volume 889, page 40 of the Official Public Records of Angelina County, Texas and by Correction Deed, Conveyance and Assignment from Lancer Resources, L.P., a Limited Partnership to The Express Gas Pipeline, LP, a Limited Partnership, recorded as document number 2009-00252651 of the Official Public Records of Angelina County, Texas; recorded as document number 133189 recorded in Volume 3001, page 80 of the Real Property Records of Nacogdoches County, Texas; at Volume 2911, page 596 of the Real Property Records of Rusk County, Texas; and as document number 2009000958 of the Real Property Records, Shelby County, Texas, (collectively herein referred to as the "Express Pipeline"); to-wit:

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

### PIPELINE SYSTEM AND RELATED FACILITIES

All of the following described pipelines, taps and other facilities owned by Express Pipeline:

1. Approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances that is located generally as set forth in the immediately following paragraph 2 and is depicted on the line drawing attached as Exhibit "A" and by this reference made a part hereof.

2. 8" PIPELINE FROM LUFKIN TO TEXAS/LOUISANA STATE LINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Mitchell Survey, Angelina County, Texas, as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeastetly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massengill in the Goguett Survey, as described by the easement recorded in Volume 63, Page 160, of the Deed records of said County;

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas, to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et. Al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties, Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk
Deputy

Mrs. M. L. Moore, as described by easement recorded in Volume 67, page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas at a point on the south or west line of property now or formerly owned by Gulf Refining Company as described by easement recorded in Volume 381, Page 347 of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now or formerly owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County, Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County, Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

### RIGHTS-OF-WAY, EASEMENTS AND PERMITS

All rights-of-way, easements, permits, privileges, grants and consents of Express for the construction, laying, maintenance, operation and removal of pipeline facilities in the State of Texas as set forth on Exhibits "B-1" through "B-6" attached hereto and by this reference made a part hereof.

II.

TO HAVE AND TO HOLD all of the above-described premises, rights and properties, together with all and singular the rights, privileges, hereditaments and appurtenances belonging to or in any way appertaining to any or all of the premises, rights or properties hereinabove described and conveyed, unto Black Duck Properties, LLC, its successors and assigns forever; and The Express Gas Pipeline, LP, does hereby bind itself and its successors to warrant specially and forever defend the same unto said Black Duck Properties, LLC, its successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof, by, through or under The Express Gas Pipeline, LP, but not otherwise. This Deed, Conveyance and Assignment and all conveyances and transfers hereunder shall be subject to all liens, mortgages, taxes

3



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk                Deputy

(except ad valorem taxes) restrictions, leases (both surface use; and oil, gas and mineral leases), easements, rights-of-way, licenses, exceptions, reservations, outstanding interests and other conditions of title or encumbrances of whatever nature, to the extent such matters are of record in Angelina, Nacogdoches, Rusk and Shelby Counties, in Texas and to all matters that are a current survey or visual inspection would reflect.

### III.

The Express Pipeline is hereby sold, transferred, assigned, conveyed and delivered to Black Duck Properties, LLC without recourse (even as to the return of the purchase price), and without covenant or warranty of any kind, express, implied, or statutory except as otherwise provided in said Purchase Agreement. WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEEDING SENTENCE AND IN ADDITION TO ANY DISCLAIMERS SET FORTH IN THE PURCHASE AND SALE AGREEMENT, THE EXPRESS GAS PIPELINE, LP HEREBY (i) EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OF ANY WARRANTY, EXPRESS, IMPLIED AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION, PURPOSE, DESIGN, QUALITY, PERFORMANCE, EXISTENCE, CLASS, CERTIFICATE, MAINTENANCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OR OF FITNESS FOR A PARTICULAR PURPOSE) OR (B) ANY INFRINGEMENT BY THE EXPRESS GAS PIPELINE, LP OR ANY OF ITS AFFILIATES ON ANY PATENT OR PROPERTY RIGHT OF ANY THIRD PARTY; AND (ii) NEGATES ANY RIGHTS OF BLACK DUCK PROPERTIES, LLC UNDER STATUTES OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY BLACK DUCK PROPERTIES, LLC FOR DAMAGES BECAUSE OF REDHIBITORY VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN. IT BEING THE INTENTION OF BLACK DUCK PROPERTIES, LLC AND THE EXPRESS GAS PIPELINE, LP THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR OR DISREPAIR.

### IV.

IN WITNESS WHEREOF, this Deed, Conveyance and Assignment is being executed in counterparts, all of which are identical, on the dates shown below, but effective as of 7:00 a.m. of the 14th day of August, 2017. Each of such counterparts shall for all purposes be deemed to be an original, provided all of such counterparts shall together constitute but one of the same instrument.

4

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

"EXPRESS"

THE EXPRESS GAS PIPELINE, L.P.,
By THE EXPRESS PIPELINE
CONNECTION, L.L.C., General Partner

By: Rod C. Roberts, President of The
Express Pipeline Connection, L.L.C

STATE OF TEXAS              §
                           §
COUNTY OF _Travis_          §

    This instrument was acknowledged before me on the _14th_ day of _August_ , 2017, by Rod C. Roberts, the President of The Express Pipeline Connection, L.L.C., a Texas Limited Liability Company, the General Partner of The Express Gas Pipeline, L.P. a Texas Limited Partnership, on behalf of said companies.

Notary Public in and for the State of Texas

*Anna Bodine*



ANNA BODINE
Notary Public, State of Texas
My Commission Expires
April 18, 2019

5

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

00200026Y VOL: 3648 PG: 379

BLACK DUCK PROPERTIES, L.L.C.

By:    Larry M. Wright
Title:  Manager


STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §


This instrument was acknowledged before me on the 11th day of
August              , 2017, by Larry M. Wright, Manager of Black Duck
Properties, L.L.C., a Texas limited liability company, on behalf of said limited liability
company.

JOHN MARK EDGMON
Notary Public State of Texas
My Comm. Exp. 12/2/2020
Notary ID 1070702-3

Notary Public in and for the State of Texas

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017.  Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "A"

Attached hereto and made a part of that certain
Deed, Conveyance and Assignment dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

Deputy

EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 02/03/13 | Van J. Smith | Gulf Pipe Line Co. | 81 | 7 |
| 01/27/14 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 79 | 582 |
| 01/28/14 | D.D. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 609 |
| 01/28/14 | I.E. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 597 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | Bridie Carter, et vir. | Gulf Pipe Line Co. | 79 | 592 |
| 01/28/14 | Mrs. W.J. Cockrell | Gulf Pipe Line Co. | 79 | 593 |
| 01/28/14 | J.R. Joplin, et ux. | Gulf Pipe Line Co. | 79 | 574 |
| 01/28/14 | Ralph Jopling, et ux. | Gulf Pipe Line Co. | 81 | 19 |
| 01/28/14 | J.D. Majors, et ux. | Gulf Pipe Line Co. | 81 | 27 |
| 01/28/14 | J.W. Majors | Gulf Pipe Line Co. | 81 | 14 |
| 01/28/14 | A.W. Mathews, et ux. | Gulf Pipe Line Co. | 81 | 24 |
| 01/18/14 | W.R. Rains | Gulf Pipe Line Co. | 79 | 595 |
| 01/29/14 | Luke Motley | Gulf Pipe Line Co. | 81 | 8 |
| 01/29/14 | J.L. Norman | Gulf Pipe Line Co. | 81 | 18 |
| 01/29/14 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. | 79 | 596 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/29/14 | John Turner, et us. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/31/14 | J.H. Hughes | Gulf Pipe Line Co. | 79 | 562 |
| 01/31/14 | J.R. Lewis | Gulf Pipe Line Co. | 79 | 576 |
| 02/02/14 | Charles F. Flakes | Gulf Pipe Line Co. | 79 | 607 |
| 02/02/14 | W.E. Parker | Gulf Pipe Line Co. | 81 | 16 |
| 02/02/14 | W.W. Rider, et ux. | Gulf Pipe Line Co. | 81 | 21 |
| 02/02/14 | J.H. Wall | Gulf Pipe Line Co. | 79 | 605 |
| 02/02/14 | Ben B. White, et ux. | Gulf Pipe Line Co. | 79 | 573 |
| 02/02/14 | W.D. White, et ux. | Gulf Pipe Line Co. | 79 | 598 |
| 02/03/14 | Luis Hooper, et al. | Gulf Pipe Line Co. | 79 | 579 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | C. Riley, et ux. | Gulf Pipe Line Co. | 79 | 611 |
| 02/03/14 | Jno. A. White, et ux. | Gulf Pipe Line Co. | 79 | 571 |
| 02/04/14 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. | 79 | 578 |
| 02/04/14 | John Kyle, et ux. | Gulf Pipe Line Co. | 79 | 563 |
| 02/04/14 | J.R. Weir | Gulf Pipe Line Co. | 79 | 568 |
| 02/05/14 | C.C. Hayden | Gulf Pipe Line Co. | 79 | 576 |
| 02/06/14 | W.L. Foster, et ux. | Gulf Pipe Line Co. | 79 | 572 |
| 02/06/14 | C.M. Horton, et ux. | Gulf Pipe Line Co. | 79 | 565 |
| 02/06/14 | O.M. Ramsey, et al. | Gulf Pipe Line Co. | 79 | 599 |

1

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

EXHIBIT "B-1"

Attached hereto and made a part of that certain

Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express

Gas Pipeline, LP and Black Duck Properties, LLC

## Shelby County, Texas

| 02/06/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
|---|---|---|---|---|
| 02/07/14 | F.M. Bridwell, et al. | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux. | Gulf Pipe Line Co | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 6 |
| 02/10/14 | Henry Sears, et ux. | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co. | 79 | 553 |
| 02/11/14 | J.M. Whiteside | Gulf Pipe Line Co. | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 79 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux. | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co. | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux. | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll, Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co. | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux. | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zach Brinson | Gulf Pipe Line Co. | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux. | Gulf Pipe Line Co. | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J. R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.L. Gilbert, et ux. | Gulf Pipe Line Co. | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux. | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co. | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux. | Gulf Pipe Line Co. | 79 | 544 |
| 02/18/14 | R.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 584 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. | 79 | 551 |
|---|---|---|---|---|
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A. Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux. | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W.F. Taley, et ux. | Gulf Pipe Line Co. | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux. | Gulf Pipe Line Co. | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 587 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I.W. Willimas | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux. | Gulf Pipe Line Co. | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Andrews, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 448 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk                    Deputy

384 :: PG :: 3648 :: VOL :: 00200269

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/10/24 | W.M. Byrn | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 459 |
| 07/10/24 | G.W Crenshaw, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 448 |
| 07/10/24 | J.H. Cruger, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 445 |
| 07/10/24 | Mrs. F.D. Haden | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 462 |
| 07/10/24 | C.O. Worsham, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 442 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F. H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 452 |
| 07/11/24 | John Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 450 |
| 07/11/24 | Phil Bussy Jr., et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 455 |
| 07/11/24 | J.G. Ellington | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 437 |
| 07/11/24 | F.O. Johnson | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 460 |
| 07/11/24 | I.N. Williams | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 449 |
| 07/14/24 | E.W. Cockrell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 481 |
| 07/14/24 | T.A. King | Gulf Pipe Line Co. | 124 | 478 |

4

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, Tx. as evidenced by Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00200269 VOL: 3648 PG: 385

### EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

#### Shelby County, Texas

| | | and Gulf Production Co. | | |
|---|---|---|---|---|
| | | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 07/14/24 | Ima Odom Nutt. et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman. et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.D Sholar | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 483 |
| 07/16/24 | W.R. Crawford. et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 496 |
| 07/21/24 | Mack Jones, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W.A Cooper | Gulf Pipe Line Co. | 124 | 520 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

Machelle Latham
Deputy

EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 10/14/24 | Pierce Whiteside, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 123 | 632 |
| 04/30/25 | J.A. Deaton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 506 |
| 04/30/25 | Claude E. Fallin | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 52 |
| 04/30/25 | Alvin Gunter | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 503 |
| 04/30/25 | J.R. Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 55 |
| 04/30/25 | J.N. Majors | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 54 |
| 04/30/25 | C.C. McDonald | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 56 |
| 04/30/25 | Grover C. Peddy | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 500 |
| 04/30/25 | C. Riley, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 502 |
| 04/30/25 | F.B Taylor | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 504 |
| 04/30/25 | J.R. Weir, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 141 |
| 05/01/25 | Mrs. W. A. Bou and by J.L. Davis, Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 568 |
| 05/01/25 | Cicero Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 552 |
| 05/01/25 | J. N. King | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 62 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. | 127 | 187 |

6

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017, Jennifer L. Fountain, County Clerk
(Deputy)

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | and Gulf Production Co. |  |  |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Robert Porter | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 61 |
| 05/01/25 | Walter Scates, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 63 |
| 05/01/25 | A.H. Womack, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 556 |
| 05/02/25 | H. Bryant, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 562 |
| 05/02/25 | Harvey Crawford | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 364 |
| 05/02/25 | John Davis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 60 |
| 05/02/25 | J.R. Foster, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 600 |
| 05/02/25 | J.R. Lewis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 555 |
| 05/02/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux. | Gulf Pipe Line Co. | 126 | 559 |

00200269 VOL = 3643 PG 387

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | and Gulf Production Co. |  |  |
| 05/02/25 | Mrs. O.M. Ramsey | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 563 |
| 05/04/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 539 |
| 05/04/25 | Elbert B. Samford by E.B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E.B. Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A. Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 529 |
| 05/05/25 | W.J. Walker, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 533 |

8

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

Deputy

**EXHIBIT "B-1"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheal, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheal, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B. Goff, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 189 |
| 05/27/25 | Mary White, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 216 |
| 07/31/25 | Robert Spivey | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola RushingA.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co | | |
| 08/31/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 503 |
| 09/23/25 | Mrs. M. Lochabay | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 05/04/48 | L.B. Dean | Gulf Refining Co. | 276 | 615 |

9

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00200269 VOL: 3648 PG: 390

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | and Gulf Oil Corp. | | |
|---|---|---|---|---|
| 05/04/48 | C.H. Horton, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 276 | 616 |
| 05/04/48 | R.W. Todd | Gulf Refining Co. and Gulf Oil Corp. | 276 | 617 |
| 05/06/48 | J.R. Anderson | Gulf Refining Co. and Gulf Oil Corp. | 277 | 329 |
| 11/09/51 | Earl Hanson, et al. | Gulf Refining Co | 306 | 192 |
| 06/10/52 | M.E. Bowlin, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 258 |
| 06/10/52 | H.Q. Hoard, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 11/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 381 | 347 |
| 12/18/59 | Gulf, Colorado& Sante Fe R.R. Co. and Gulf Refining Co. | Texas Eastern Transmission Corp. | | |
| 09/29/71 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |

10

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk



Deputy

## EXHIBIT "B-2"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Rusk County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/08/54 | Ruby L. Dumas, et vir. | Texas Eastern Transmission Corp. | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp. | | |
| 06/27/10 | J.A. Anderson, et ux. | Gulf Pipe Line Co. | 67 | 150 |
| 06/27/10 | M.J. Barton, et ux. | Gulf Pipe Line Co. | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux. | Gulf Pipe Line Co. | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux. | Gulf Pipe Line Co. | 67 | 144 |
| 06/27/10 | F.L. Hudgins, et ux. | Gulf Pipe Line Co. | 67 | 136 |
| 06/27/10 | J.R. Latimer, et ux. | Gulf Pipe Line Co. | 67 | 142 |
| 06/27/10 | S.M. Moore, et ux. | Gulf Pipe Line Co. | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al. | Gulf Pipe Line Co. | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co. | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co. | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co. | 67 | 182 |
| 11/16/10 | E.A. Blount | Gulf Pipe Line Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co. | 1677 | 111 |
| 05/01/14 | Mrs. M.L. Moore | Gulf Pipe Line Co. | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 629 |
| 07/03/24 | T.S. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 614 |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 618 |
| 07/03/24 | J.R. Latimer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co. & Gulf Oil Co. | 360 | 190 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017, Jennifer L. Fountain, County Clerk _____ Deputy

00200269  VOL: 3648  PG: 392

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Nacogdoches County, Texas</u>

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J.W. Hartt, et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Melton, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux. | Gulf Pipeline Co. | 72 | 642 |
| 06/28/10 | Mrs. M.I. Strode | Gulf Pipeline Co. | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co. | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al. | Gulf Pipeline Co. | 75 | 73 |
| 06/29/10 | J.L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W. Boyd, et ux. | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Burns, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T.J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M. Richards, et ux. | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartl, et ux. | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co. | 72 | 634 |
| 07/04/19 | S.C. Parrott, et al. | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca, et ux. | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S. Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T. Supulvado, et ux. | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M. Peterson, et ux. | Gulf Pipeline Co. | 74 | 17 |
| 07/08/10 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al. | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co. | 72 | 633 |
| 07/18/10 | Elareo Cordova, et ux. | Gulf Pipeline Co. | 74 | 29 |
| 07/18/10 | J.H. Summers | Gulf Pipeline Co. | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co. | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A.M. Evans, et ux. | Gulf Pipeline Co. | 74 | 13 |
| | | | | |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co. | 72 | 630 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co. | 72 | 629 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co. | 74 | 6 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS  August 15, 2017  Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/20/10 | Mrs. Antonia Manchaca, et al. | Gulf Pipeline Co. | 74 | 33 |
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 90 | 429 |
| 07/20/10 | Moses Tims, et ux. | Gulf Pipeline Co. | 74 | 27 |
| 07/20/10 | Eli Westfall, el al. | Gulf Pipeline Co. | 74 | 101 |
| 07/21/10 | Jessie Greer | Gulf Pipeline Co. | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co. | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al. | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux. | Gulf Pipeline Co. | 74 | 123 |
| 08/27/10 | Geo. S. McCarty, Ind. And as Gdn. | Gulf Pipeline Co. | 749 | 238 |
| 08/27/10 | Mrs. M. I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipeline Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipeline Co. | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipeline Co. | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipeline Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co. | 75 | 447 |
| 02/27/14 | S.C. Parrott, et al. | Gulf Pipeline Co. | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Strode | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co. | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co. | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipeline Co. | 82 | 426 |
| 03/04/14 | W. G. Aarlt | Gulf Pipeline Co. | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 85 | 52 |
| 03/05/14 | Alex Fears, et ux. | Gulf Pipeline Co. | 85 | 62 |

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Nacogdoches County, Texas</u>

| | | | | |
|---|---|---|---|---|
| 03/05/14 | W.H. Hollis, et ux. | Gulf Pipeline Co. | 82 | 405 |
| 03/05/14 | Moses Tinis, et ux. | Gulf Pipeline Co. | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux. | Gulf Pipeline Co. | 82 | 433 |
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | Mrs. S.C. Parrott | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | G.W. Tillery, Jr. | Gulf Pipeline Co. | 85 | 58 |
| 04/09/14 | Don Ceasar BeBiazzeon | Gulf Pipeline Co. | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co. | 82 | 386 |
| 05/09/14 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 82 | 404 |
| 06/23/24 | C.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 601 |
| 06/23/24 | Mrs. M.I. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 600 |
| 06/30/24 | A.B. Crawford | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 621 |
| 06/30/24 | Mart Melton | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartl, Ind. and as Attorney in fact | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 619 |

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS  August 15, 2017.  Jennifer L. Fountain, County Clerk

Deputy

00200000269 VOL: 3648 PG: 395

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 13 |
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B. Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D.M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mullins, Ind. et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by: | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 81 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 130 |

4

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00178026 VOL: 3522 PG: 488

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain

Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express

Gas Pipeline, LP and Black Duck Properties, LLC

00200269 VOL = 3648 PG = 396

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 04/28/25 | G.W. Tillery, Jr., | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 131 |
| 04/29/25 | Mrs. F.W. Halacher | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 168 |
| 05/07/25 | L.L. Martin , et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 191 |
| 05/08/25 | Mrs. A.L. Ramsey, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 206 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 165 |
| 05/11/25 | J.M. Miller, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 171 |
| 05/11/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 193 |

5

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| 05/12/25 | Mrs. W.V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
|---|---|---|---|---|
| 05/12/25 | L.B. Mast, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III; John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |
| 05/12/25 | J.T. Smith, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/25 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T. McNess | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J.W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 227 |
| 05/15/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 216 |
| 05/15/25 | G. W Falkner, | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By: | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/25 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |

00200269 VOL: 3648 PG: 397

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00200269 VOL: 3648 PG: 398

### EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/25 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
| 05/29/25 | Alex Fears, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 326 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 335 |
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White, | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C. Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C.H. Muckelroy, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F. Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 371 |
| 08/21/25 | J.D. Skeeters | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W. Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co. & Gulf Production Co. | 117 | 241 |
| 05/09/28 | Mrs. A. L. Ramsey, Gdn., et al. | Gulf Pipe Line Co. | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co. & Gulf Production Co. | 122 | 234 |
| 09/10/29 | J.H. Franklin, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 126 | 52 |

7



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00200269 VOL: 3648 PG: 399

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 11/27/34 | Rosa Prince, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 138 | 306 |
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 527 |
| 06/03/42 | Dock Sexton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos.E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 520 |
| 06/04/42 | W.F. Greer, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |
| 06/04/42 | L. B. Mast ,et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/28/42 | J. R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 160 | 323 |
| 05/24/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/08/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 12/18/64 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 01/17/69 | Texas Eastern Transmission | E.W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp. | 404 | 254 |

8

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

00200269  VOL: 3648  PG: 400

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/81 | Lenvel Standland, et al. | Texas Eastern Transmission Corp. | 465 | 124 |
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp. | 485 | 200 |

9

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017.  Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-4"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co. | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co. | 30 | 421 |
| 07/02/10 | M.A. Modissett. et. al. | Gulf Pipe Line Co. | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co. | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co. | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co. | 35 | 678 |
| 02/27/14 | M.A. Modissett, et. al. | Gulf Pipe Line Co | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co. | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co. | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 158 |
| 04/29/25 | J.C. Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 175 |
| 06/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/29/50 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 236 | 584 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

00200269 VOL: 3648 PG: 402

## EXHIBIT "B-5"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### EXCEPTIONS AS NOTED
IN 1992 TEPCO TO LANCER PURCHASE AGREEMENT
Nacogdoches County, Texas

1.  Tracts 20, 21, 26, 46 and 67 in Nacogdoches County, Texas involve easements
    that have been released prior to the date of the Purchase and Sale Agreement or
    from which the pipe has been removed prior to the date of this Agreement.

2.  (A) Amendatory Agreement ("Agreement"), dated 1/13/76, between Bethel
    Baptist Church, by Trustees ("Bethel"), and Texas Eastern Transmission
    Corporation ("Corporation"), recorded in Volume 404, Page 254, Deed Records,
    Nacogdoches County, Texas. Said Agreement amends three easements recorded
    in Volume 74, Page 8, Volume 82, Page 410 and Volume 114, Page 369, whereby
    Corporation agrees to remove its existing pipeline from that portion of the
    property owned by Bethel and Bethel grants to Corporation an alternate right of
    way within a portion of land for future pipeline construction, subject to stated
    conditions.

    (B) Amendatory Agreement ("Agreement"), dated 03/03/83, between East Texas
    Portable Building Co., Inc. ("Owner"), and Texas Eastern Transmission
    Corporation ("Corporation"), recorded in Volume 485, Page 200, Deed Records,
    Nacogdoches County, Texas. Said Agreement amends easement recorded in
    Volume 114, Page 117, whereby Corporation agrees to re-route the pipeline and
    restrict easement to centerline as described therein, subject to certain rights
    reserved by Owner, as related to potential development of lands by Owner.

    (C) Amendatory Agreement ("Agreement"), dated 02/21/83, between Glenn
    Layton ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"),
    recorded in Volume 485, Page 205, Deed Records, Nacogdoches County, Texas.
    Said Agreement amends easement recorded in Volume 114, Page 117, whereby
    Corporation agrees to re-route the pipeline and restrict easement to centerline as
    described therein, subject to certain rights reserved by Owner, as related to
    potential development of lands by Owner.

    (D) Amendatory Agreement ("Agreement"), dated 02/16/83, between Big Red
    Enterprises, Inc. ("Owner"), and Texas Eastern Transmission Corporation
    ("Corporation"), recorded in Volume 485, Page 211, Deed Records, Nacogdoches
    County, Texas. Said Agreement amends easement recorded in Volume 114, Page
    177, whereby Corporation agrees to re-route the pipeline and restrict easement to
    centerline as described therein, subject to certain rights reserved by Owner, as
    related to potential development of lands by Owner.

    (E) Amendatory Agreement ("Agreement"), dated 05/29/81, between Lenvel
    Stanaland, et al. ("Owners"), and Texas Eastern Transmission Corporation

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.
WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

**EXHIBIT "B-5"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

("Corporation"), recorded in Volume 465, Page 124, Deed Records, Nacogdoches
County, Texas. Said Agreement amends easement recorded in Volume 114, Page
174, whereby Corporation agrees to (i) cut and seal pipeline, (ii) Owners may
then remove pipe and will own pipe, (iii) after removal of pipe Owners will be
free to mine the sand and (iv) the easement of Corporation is restricted to
centerline as described therein.

(F) Amendatory Agreement ("Agreement"), dated 12/12/73, between Moore
Business Forms, Inc. ("Moore"), and Texas Eastern Transmission Corporation
("Corporation"), recorded in Volume 387, Page 349, Deed Records, Nacogdoches
County, Texas. Said Agreement amends easement recorded in Volume 114, Page
149 and Volume 114, Page 239, whereby Corporation agrees to confine the right
of way to centerline described therein and to abandon its existing 8" pipeline as it
lies on the property owned by Moore.

(G) Partial Release, dated 1/17/69, from Texas Eastern Transmission Corporation
("Corporation") to E.W. Roark ("Owner"), recorded in Volume 353, Page 741,
Deed Records, Nacogdoches County, Texas. Said Partial Release releases that
portion of lands covered by Easements recorded in Volume 114 , Page 166 and
Volume 114, Page 168 which lies south of Texas State Highway 7 and describes
the centerline of new right of way,

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017, Jennifer L. Fountain, County Clerk

**EXHIBIT "B-6"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

## AMENDMENTS, RELEASES AND NEW RIGHTS OF WAYS AND EASEMENTS SINCE TEPCO TO LANCER SALE
Nacogdoches, Rusk and Shelby Counties

(1) Amended and Restated Release, Abandonment and Relocation of Easement, dated 04/23/99, between Cendant Mobility Services Corporation, ("Cendant"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1331, Page 24, Deed Records, Nacogdoches County, Texas. Said Agreement amends easements recorded in Volume 72, Pages 629-630, Volume 82, Page 394-395, Volume 114, Page 328, Volume 74, Page 58, Volume 72, Page 630, Volume 82, Page 395, and Volume 114, Pages 326-327, whereby Lancer agrees to release a portion of the easements and relocate the existing easement around the perimeter boundary of the 5.65 acre tract.

(2) Amendment to Right of Way Agreement, effective July 1, 1999 by and between Lancer Resources Company and Nacogdoches Trade Days, LLC, recorded in Volume 1371, Page 169, whereby Lancer agrees to limit the right of way to a 20' permanent right of way and Lancer retained the right to utilize reasonable work space for the installation of a new pipeline or the replacement of the existing pipeline.

(3) Release of Easement, dated 01/19/2001, between Acme Brick Company, ("Acme"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1560, Page 315, Deed Records, Nacogdoches County, Texas and Volume 2245, Page 656, Official Public Records, Rusk County, Texas. Said Agreement amends easement recorded in Volume 112, Page 37, whereby Lancer agrees to release easement in exchange for new Pipeline Right of Way Easement described below.

(4) Pipeline Right of Way Easement, dated 01/19/2001, between Lancer Resources Company, ("Lancer"), and Acme Brick Company, ("Acme"), recorded in Volume 1575, Page 80, Deed Records, Nacogdoches County, Texas and at Volume 2252, Page 355, Deed Records, Rusk County, Texas. Said agreement grants easement to Lancer as described in Agreement.

(5) Release, Abandonment and Relocation of Easement, effective 05/01/2002, between A.T. Mast III, John C. Mast, Patricia Mast George, ("Mast"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1747, Page 97, Deed Records, Nacogdoches County, Texas. Said agreement amends easements recorded in Volume 114, Pages 237-238 of the Deed Records of Nacogdoches County, Texas and relocated easement as described in Agreement.

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

_____
Deputy

EXHIBIT "B-6"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(6) Ratification of Right of Way Agreement by and between Florence J. Bowlin,
Linda K. Knight and Robert D. Templin and The Express Gas Pipeline, L.P.
dated May 11, 2011 and filed of record at Document Number 2011003582 of
the Shelby County Deed Records ("SCDR") and the Letter Agreement
referenced therein. Said agreement amends an easement recorded in Volume
126, Page 539, et seq., of the SCDR as described in said Letter Agreement.

(7) Agreed Judgment in Cause No. 09CV30,712 styled *Donald Lewis Scrimsher
and Chhavy Khorn v. The Express Gas Pipeline, L.P.* in the District Court of
Shelby County Texas and filed at Document Number 2011003023 of the
SCDR and the Ratification of Right of Way Agreement by and between
Donald Lewis Scrimsher and Chhavy Khourn and The Express Gas Pipeline,
L.P. dated March 8, 2011 and filed of record at Document Number
2011003024 of the SCDR and the Agreement referenced in said Ratification.
Said Agreement, and the subsequent Addendum thereto, amends easements
recorded in Volume 131, Page 137, et seq., and Volume 126, Page 503, et
seq., of the SCDR as described in said Agreement.

(8) Agreed Judgment in Cause No. 09CV30,448 styled *Steve Biel and wife
Regina Biel v. The Express Gas Pipeline, L.P.* in the District Court of Shelby
County Texas and filed at Document Number 20100013501 of the SCDR and
the Ratification of Right of Way Agreement by and between Steve Biel and
Regina Biel and The Express Gas Pipeline, L.P. dated October 30, 2010 and
filed of record at Document Number 20100013500 of the SCDR and the
Agreement referenced in said Ratification. Said Agreement, and the
subsequent Addendum thereto dated November 15, 2013, amends an
easement recorded in Volume 127, Page 54, et seq., of the SCDR as described
in said Agreement.

(9) Ratification of Right of Way Agreement by and between Steve Cockrell,
Truitt Cockrell and Carolyn Cockrell Daw and The Express Gas Pipeline, L.P.
dated May 27, 2015 and filed of record at Document Number 2015002621 of
the SCDR and the Agreement referenced in said Ratification dated June 26,
2015. Said Agreement amends easements recorded in Volume 127, Page 142,
et seq., and Volume 124, Page 479, et seq., of the SCDR as described in said
Agreement.

(10) Ratification of Right of Way Agreement by and between Cecil McCune and
Deborah J. McCune and The Express Gas Pipeline, L.P. dated May 27, 2015
and filed of record at Document Number 2015002620 of the SCDR and the
Agreement referenced in said Ratification dated May 25, 2015. Said
Agreement amends easements recorded in Volume 126, Page 528, et seq., and
Volume 127, Page 138, et seq., of the SCDR as described in said Agreement.

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, es evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk
Deputy

00200269 VOL: 3648 PG: 405

00178026  VOL: 3522  PG: 498

**EXHIBIT "B-6"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(11) Letter Agreement by and between Classic Hydrocarbons Operating, Inc. and
The Express Gas Pipeline, L.P. dated April 18, 2012 regarding the re-routing
of the 8" pipeline around the Widdon Gas Unit #2 pad site location and the
R&M Farms Unit #3 pad site location in Shelby County, Texas.

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

Jennifer L. Fountain, County Clerk
Shelby County, Texas
August 15, 2017  09:49:41 AM
FEE: $154.00 MLATHAN
CO                    2017002756



STATE OF TEXAS
COUNTY OF SHELBY COUNTY

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017.  Jennifer L. Fountain, County Clerk

Deputy

00178026 VOL: 3522 PG: 499

00200269 VOL: 3648 PG: 407

STATE OF TEXAS        COUNTY OF RUSK    FILED FOR RECORD
I hereby certify that this instrument was filed on
the date and time stamped hereon by me and    Aug 15,2017 01:46P
was duly recorded in the volume and page of the
named records of Rusk County, Texas as stamped    TRUDY MCGILL,
hereon by me.       OFFICIAL PUBLIC RECORDS    COUNTY CLERK
                                          RUSK COUNTY, TEXAS

Aug 15,2017 01:46P

TRUDY MCGILL, COUNTY CLERK

RUSK COUNTY, TEXAS                       By:Susan Wills, DEPUTY


STATE OF TEXAS           COUNTY OF RUSK    FILED FOR RECORD
I hereby certify that this instrument was filed on
the date and time stamped hereon by me and    Jul 03,2019 01:24P
was duly recorded in the volume and page of the
named records of Rusk County, Texas as stamped    TRUDY MCGILL,
hereon by me.       OFFICIAL PUBLIC RECORDS    COUNTY CLERK
                                          RUSK COUNTY, TEXAS

Jul 03,2019 01:24P

TRUDY MCGILL, COUNTY CLERK

RUSK COUNTY, TEXAS                      By:Kathleen Andrews, DEPUTY