# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § § | CHAPTER 11 |
| KrisJenn Ranch, LLC, | § § | |
| *Debtor* | § § § | CASE NO. 20-50805 |
| | | |
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, | § § § § § § § | |
| *Plaintiffs*, | § § | ADVERSARY NO. 20-05027 |
| v. | § § | |
| DMA Properties, Inc. and Longbranch Energy, LP, | § § § | |
| *Defendants*. | § | |
| | | |
| DMA Properties, Inc., | § § | |
| *Cross-Plaintiff/Third-Party Plaintiff* | § § | |
| v. | § § § | |
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, Black Duck Properties, LLC, Larry Wright, and John Terrill, | § § § § § § | ADVERSARY NO. 20-05027 |
| *Cross-Defendants/Third-Party Defendants* | § § § § | |

1

# FRANK DANIEL MOORE'S UNOPPOSED MOTION TO INTERVENE

Frank Daniel Moore moves to intervene in this adversary proceeding. Moore's entity, DMA Properties, Inc. ("DMA") is already a party to these proceedings and has asserted claims against Debtor KrisJenn Ranch, LLC, as well as KrisJenn's related series and its manager, Larry Wright. Because Moore's claims are inextricably intertwined with the claims already asserted by DMA, this Court should grant Moore's motion to intervene.

## BACKGROUND

Although Moore sets forth the factual posture of this case at length in his attached pleading, Moore briefly recounts the basics here.

### I. Moore and Wright cofounded Black Duck in 2016.

Frank Daniel Moore and Larry Wright founded Black Duck Properties, LLC in 2016. Wright's entity—KrisJenn Ranch, LLC—owned 50% of Black Duck, while Moore owned the other 50% through his own entity, SCMED Oilfield Consulting.[1] The stated purpose of the new entity was "[t]o purchase property and options" related to saltwater disposal (SWD) wells "as well as other properties in the state of Texas."

Shortly after the formation of Black Duck, Wright learned that Moore and Darin Borders—one of Moore's contacts in the oil-and-gas industry—had secured by contract the right to purchase a pipeline right-of-way in East Texas. Under the Purchase Agreement, Border's entity (Longbranch Energy, LP) received the right to purchase the right-of-way for $5 million.

### II. Black Duck acquired the right to purchase the right-of-way.

When Wright learned about the right-of-way deal, he begged to be a part of it, claiming it was on his "bucket list" to do a pipeline. Wright immediately volunteered to

---

[1] SCMED has assigned all causes of action related to Black Duck to Moore. *See* Ex. 1 (Assignments of Claims).

2

supply all funds to purchase the right-of-way, representing that he had the cash on hand to fully fund the acquisition and maintenance of the right-of-way until a developer could be secured. Borders and Moore consented to Wright's role as the right-of-way funder through Black Duck. Wright reimbursed Moore and Borders for the $25,000 the two men had already paid, and Borders, on behalf of Longbranch, orally agreed to assign the Purchase Agreement to Black Duck. Wright and Moore, on behalf of Black Duck, orally agreed to give Longbranch a 20% net-profits share that would attach and run with the right-of-way.

After Black Duck received the right to purchase the right-of-way, Wright repeatedly pushed to find a buyer—even though Black Duck had not yet closed on the purchase. In his talks with potential buyers, Wright falsely represented that the right-of-way had already closed. Wright also misrepresented Border's and Moore's interests in the right-of-way, claiming Borders "stayed on as a 15% partner" and that Moore only "own[ed] 35%" of Black Duck's "85% of Contract" to purchase the right-of-way. Ultimately, Black Duck was unable to find a buyer for its interest in the right-of-way without first closing on it.

### III. Black Duck closed on the right-of-way, and Wright now claims that Black Duck took out a loan from KrisJenn—without any authorization from Moore.

Black Duck finally closed on the right-of-way in August 2017. At all times prior to the closing, Wright had represented he was a wealthy man and that he could fund the purchase of the right-of-way using his own funds. But Moore learned much later that Wright borrowed $4.1 million through KrisJenn Ranch to close the purchase of the right-of-way. Wright also represented that his capital contribution was to be his consideration for his interest in the right-of-way. Yet Wright now claims that his capital contribution was a loan to Black Duck.

Wright and KrisJenn Ranch's alleged loans to Black Duck were neither disclosed nor authorized by Moore, who was a manager of Black Duck and whose entity owned 50% of Black Duck. Black Duck's company agreement required transactions to be approved by disinterested management and, absent a special resolution (which did not exist here), also required the agreement of all managers to encumber Black Duck's assets. Such approval was

never granted. Additionally, although the "loan documents" purport to evidence a loan transaction consummated on August 14, 2017, those documents—involving an undisclosed wrap-around deed of trust using the right-of-way as collateral—were not executed or notarized until January 18, 2018.[2]

### IV. Wright pushes Moore to resign while secretly negotiating with a potential buyer.

In January 2018, Wright grew increasingly hostile to Moore and pressured Moore to resign from Black Duck. Wright swore at Moore and told him the right-of-way deal had failed. He also complained that Moore hadn't secured a buyer, even though Moore had no such obligation. Eventually, after several hostile conversations, Moore agreed to resign from Black Duck—and relinquish his 50% interest in all of Black Duck's assets, including the right-of-way—in exchange for a carried interest in the right-of-way and 50% of all note payments.

As it turns out, Wright had been secretly working for months on a right-of-way deal that had not been disclosed to Moore. Just days after Moore resigned, the putative buyer, John Terrill, signed a letter of intent to purchase the right-of-way from Black Duck for $2.5 million, with Black Duck retaining a 16% carried interest in a future waterline. On April 3, Wright executed a deed transferring the right-of-way from Black Duck to TCRG.

On April 4, Moore and Borders learned for the first time that the right-of-way was being sold. When the men confronted Wright, Wright promised that Terrill knew about Borders's and Moore's proposed interests. Wright also promised to send copies of the deal documents to Borders and Moore.

Wright never shared the deal documents with Borders or Moore, and eventually Moore reached out to Terrill. During the call, Terrill told Moore that Wright had not disclosed Borders's or Moore's interests in the right-of-way; that Terrill did not intend to

---

[2] Additionally, the trustee on the deed of trust—David Strolle—is a lawyer at the firm that drafted Black Duck's company agreement. Strolle also appears to have prepared the loan documents—yet never disclosed those loan documents to Moore or to Moore's entity, which was a 50% partner in Black Duck.

honor those interests; and that Terrill had been working on the right-of-way-deal for a long time.

V. **Wright has repeatedly lied about his actions and disregarded his agreements with Moore.**

It took several months and review of countless emails to discover the extent of Wright's and Terrill's lies. If Moore had known or suspected that Wright had crafted a scheme to sell the right of way and claim Moore only had an interest in Black Duck's profits (instead of a running net-profits interest that attached to the right-of-way), he would not have agreed to resign from Black Duck. Nor would Moore have given up his right to 50% of Black Duck's profits in exchange for 20% of its profits from the sale of the right-of-way (which was, by far, Black Duck's most valuable asset).

Eventually, TCRG demanded that Wright rescind the sale of the right-of-way in light of Wright's misrepresentations. Wright and his entities now claim that KrisJenn Ranch "foreclosed" on the alleged loans Black Duck owed. But contradicting that assertion, KrisJenn Ranch and Wright claimed in July 2019 that the loan secured by a lien on the right-of-way was paid; they filed a release of lien in Rusk County that "acknowledge[d] its payment and release[d] the property from the lien."

Wright has lied to Moore and DMA and disregarded his agreements with and promises to Moore (and Moore's entities) time and again. Wright told Moore, his partner, that he would provide capital to fund Black Duck's investments, but later represented his capital contribution was an unauthorized "loan" to Black Duck. He transferred to Moore's entity, DMA, a 20% net-profits interest in the right-of-way and a 50% interest in Bigfoot note in exchange for Moore's departure from Black Duck, but then denied that DMA had any such interest. And he conspired with his entities and with Terrill and TCRG to sell the right-of-way behind Moore's back and in disregard of DMA's interest in the right-of-way. Most recently, Wright and KrisJenn Ranch covertly borrowed $5.9 million from McLeod Oil, LLC and extended McLeod an option to purchase the right-of-way for $6,000,000.

5

Moore now intervenes to protect his rights and to hold Wright accountable for his fraud and attempts to escape his promises.

### Argument

Federal Rule of Civil Procedure 24 governs intervention in an adversary proceeding. *See* Fed. R. Bankr. P. 7024. Under Rule 24, intervention is mandatory when the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). By contrast, permissive intervention is appropriate when the party seeking to intervene "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

Moore has a mandatory right to intervene in this adversary proceeding because he claims an interest relating to the transactions at issue, and disposing of this adversary proceeding without Moore risks impairing or impeding his ability to protect his interests. DMA asserted claims against Wright, KrisJenn Ranch and its series, and Terrill in connection with Wright's efforts to sell the right-of-way to Terrill in disregard of DMA's net-profits interest. Moore now seeks to assert his own claims—including claims for fraud and breach of fiduciary duty—against those parties for the same conduct. Moore also intends to seek a determination of nondischargeability in connection with those claims, because Wright used KrisJenn Ranch to effectuate his fraud while violating fiduciary duties owed to Moore and Black Duck. *See* 11 U.S.C. §523(a)(2)(A).

DMA cannot adequately represent Moore's interest with respect to those claims. For example, DMA cannot adequately represent Moore's interest with respect to Moore's nondischargeability claims. Those claims can only be asserted by Moore and must be resolved through the course of this bankruptcy. DMA will also be unable to represent or protect Moore's interests as a practical matter in the event that KrisJenn Ranch, LLC

becomes insolvent. Given the inability of existing parties to adequately represent Moore's interests, Moore must be allowed to intervene.

In the alternative, permissive intervention is appropriate because Moore's claims share common questions of law and fact with the claims and counterclaims already asserted by KrisJenn Ranch and DMA. *See* Fed. R. Civ. P. 24(b)(2). All claims in this adversary proceeding arise from Wright's misrepresentations and fraudulent dealings and concern the parties' respective interests in the same pipeline right-of-way. Rather than delaying or prejudicing the adjudication of the original parties' rights, Moore's intervention will facilitate final resolution of these claims and ensure that the parties have clarity regarding their respective rights and obligations at the conclusion of the bankruptcy.

## Conclusion

Moore's claims are inextricably intertwined with the claims and counterclaims already asserted in this action. Moore respectfully moves the Court to allow Moore to intervene in this action so that Moore can protect his interests with respect to those claims.

Respectfully submitted,

/s/ Michael Black
Michael Black
State Bar No. 02384400
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com

*Attorneys for Frank Daniel Moore, Longbranch Energy, LP and DMA Properties, Inc.*

/s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com

*Attorneys for Frank Daniel Moore and DMA Properties, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 5, 2020, I contacted counsel for Plaintiffs and asked whether Plaintiffs opposed this motion. Plaintiffs stated they were not opposed.

/s/ Timothy Cleveland
Timothy Cleveland

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 5th day of June 2020:

Mr. Ronald J. Smeberg
MULLER SMEBERG, PLLC
111 West Sunset Road
San Antonio, Texas 78209
ron@smeberg.com

*Counsel for KrisJenn Ranch, LLC,
KrisJenn Ranch, LLC–Series Uvalde Ranch,
and KrisJenn Ranch, LLC–Series Pipeline ROW*

Shane P. Tobin
OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, Texas 78701
shane.p.tobin@usdoj.gov

*United States Trustee*

Jeffery Duke
State Bar No. 24056609
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, Texas 77494
jduke@dbmmlaw.com

*Counsel for Longbranch Energy, LP*

/s/ Michael Black
Michael Black
