# Exhibit 17:
# Loan Documents

**\*\*\*\* Electronically Filed Document \*\*\*\***

# Nacogdoches County, Tx

## County Clerk

**Document Number: 2018-364**
**Recorded As      : ELECTRONIC RECORDING**

**Recorded On:**            **January 19, 2018**
**Recorded At:**            **08:44:27 am**
**Number of Pages:**    **63**
**Book-VI/Pg:**            **Bk-OPR  VI-4696  Pg-171**
**Recording Fee:**        **$274.00**

**Parties:**

**Direct- NA**
**Indirect- NA**

**Receipt Number:**        **121685**
**Processed By:**          **Jennifer Allen**

---

**\*\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\***

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



I hereby certify that this instrument was filed on the date and time stamped hereon
and was duly recorded in the Real Property Records in Nacogdoches County, Texas

Nacogdoches County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST – SECURITY AGREEMENT – ASSIGNMENT OF RENTS – COLLATERAL ASSIGNMENT OF LEASES – CONSTRUCTION MORTGAGE – FINANCING STATEMENT – FIXTURE FILING ("Deed of Trust")

## [The Express Gas Pipeline System and related facilities located in the State of Texas]

THE STATE OF TEXAS

COUNTIES OF ANGELINA, NACOGDOCHES, RUSK and SHELBY

Date:          August 14, 2017

**Borrower:**     **BLACK DUCK PROPERTIES, LLC,** a Texas Limited Liability Company

Borrower's Address:      410 Spyglass Road
                         McQueeney, Texas 78123

**Trustee:**     David P. Strolle, Jr.

Trustee's Address:       Granstaff, Gaedke & Edgmon, PC
                         5535 Fredericksburg Rd., Suite 110
                         San Antonio, Texas 78229

**Lender:**     **KRISJENN RANCH, L.L.C.,** a Texas Limited Liability Company, and **KRISJENN RANCH, L.L.C.,** a Texas Limited Liability Company –Series Uvalde Ranch and Larry M. Wright, individually.

Lender's Address:      410 Spyglass Road
                       McQueeney, Texas 78123

**Security:**

The Express Gas Pipeline system and related facilities, rights-of-way, easements and permits, leases and other rights and properties situated in the State of Texas as described in the Deed, Conveyance and Assignment from THE EXPRESS GAS PIPELINE, LP to BLACK DUCK PROPERTIES, LLC recorded as document number 2017002756 recorded in volume 3522 pages 466-498, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated by reference herein as if fully copied and set forth at length.

Promissory Notes secured by this instrument:

Date:                        of even date herewith

Maker:                       Borrower

| Payee: | Lender: **KRISJENN RANCH, L.L.C.,** a Texas Limited Liability Company, and **KRISJENN RANCH, L.L.C.,** a Texas Limited Liability Company –Series Uvalde Ranch |
|---|---|
| Original Principal Amount: | $4,100,000.00 |
| Final Scheduled Payment Date: | August 14, 2018 |

| Date: | of even date herewith |
|---|---|
| Maker: | Borrower |
| Payee: | Lender: Larry M. Wright, individually. |
| Original Principal Amount: | $1,175,000.00 |
| Final Scheduled Payment Date: | August 14, 2018 |

Borrower, , and any other person (if any) executing or joining this instrument holding an interest in the Property, for the purpose of securing the Indebtedness hereinafter described, and in consideration of the sum of TEN DOLLARS ($10.00) and for the further consideration of the uses, purposes and trusts hereinafter set forth, has granted, sold and conveyed, and by these presents does grant, sell and convey unto Trustee and Trustee's substitutes or successors as trustee hereunder all of the following described Property.

The Property shall include: [1] the foregoing described Security, [2] all fixtures and improvements now or hereafter existing or placed on the Security, [3] all rights, privileges, interests and common elements pertaining to the Security or improvements thereon, [4] all permits pertaining to the use of the Security, [5] the rights of Borrower with respect to any vacated alleys and streets abutting the Security and to any unvacated, abutting alleys or streets, [6] all easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights, now existing or hereafter arising pertaining to the Security, [7] any strips or gores between or among the Security and abutting or adjacent properties, [8] all water and water rights, air rights, timber, crops, mineral interests and mineral rights, under, on or pertaining to the Security, [9] all other appurtenances and incidents of ownership pertaining to such above-described Security and related real property interests (the Security and sub-sections [2] through [9], immediately preceding, collectively, the "*Real Property*") and [10] all other property and interests described in 0, below (the "*Collateral*").

This conveyance is made subject to the exceptions listed on the Schedule of Permitted Exceptions attached hereto and incorporated herein (the "*Permitted Exceptions*").

TO HAVE AND TO HOLD the Property unto the said named Trustee, and his substitutes and successors as Trustee hereunder, and his assigns forever. Borrower, and any other person (if any) executing or joining this instrument holding an interest in the Property, does hereby bind himself, and his heirs, executors, administrators, representatives, successors and assigns to warrant and forever defend the Property unto the Trustee, and his substitutes or successors as Trustee hereunder, and his assigns forever, against the claim or claims of all persons claiming or to claim the same or any part thereof.

CERTAIN DEFINITIONS:

Loan Documents: The Note, the loan agreement (if any) and all other documents, instruments or agreements executed by Borrower for the benefit of Lender or pertaining to the Note, whether to secure, govern or better evidence the Note or obligations under the Note or such other documents, instruments of

agreements (including any loan agreement), together with any renewals or modifications thereof may be referred to as the *Loan Documents.*

Default Rate: The rate of interest applicable to matured, unpaid amounts under the Note, but in no event in excess of the is the maximum rate permitted by applicable federal or state law, may be referred to as the *Default Rate*.

The following terms and conditions apply to and are part of this Deed of Trust and constitute covenants and agreements of Borrower:

## Article 1
### Indebtedness

This conveyance is made in trust, however, to secure payment of all of the following obligations (collectively hereinafter, the "*Indebtedness*"):

1.1     The Note. The above-described promissory note, all principal, interest and other lawful charges thereon, and all (if any) renewals, extensions and modifications thereof (hereinafter collectively called, the "*Note*").

1.2     Other Debt under the Loan Documents. All other obligations of Borrower to Trustee or the Lender arising hereunder or under any other Loan Document.

1.3     Costs and Expenses. All sums advanced and costs and expenses incurred by Lender, including all reasonable legal, accounting, engineering, management, consulting or like fees, made and incurred in connection with the Borrower's obligations or Lender's or Trustee's right under this Deed of Trust, or in connection with the acquisition, perfection, realization, maintenance, or preservation of the security created under this Deed of Trust, whether such advances, costs, or expenses shall have been made and incurred at the request of Borrower or Lender, and all of Lender's out of pocket costs in making the loan evidenced by the Note, including fees and expenses of Lender's counsel and landmen, and all title and closing costs.

1.4     Renewals. Any and all renewals, extensions, increases, rearrangements and/or substitutions of all or any part of the Loan Agreement, the Note, or any other Loan Document, and all or any part of the indebtedness, obligations, debts, loans, advances, covenants, agreements, and liabilities described or to which reference is made in the foregoing provisions of this 0.

## Article 2
### Interest Rate Swap

N/A.

## Article 3
### Warranties, Representations and Covenants

Borrower warrants, represents, covenants and agrees as follows:

3.1    Pay and Perform. Borrower shall make all payments on the Indebtedness when due and shall punctually and properly perform all of Borrower's covenants, obligations and liabilities under the Loan Documents.

3.2    Good Title. Borrower has good and indefeasible title to the Real Property, and good title to the Collateral, free and clear of any liens, charges, encumbrances security interests, and adverse claims whatsoever, except (a) Permitted Exceptions, which are permitted only to the extent  the same are valid and subsisting and affect the Property; (b) the liens and security interests evidenced by this Deed of Trust; (c) statutory liens for ad valorem taxes and standby fees on the Property which are not yet delinquent; and (d) other liens and security interests (if any) in favor of Lender.

3.3    Permitted Exceptions. Borrower will punctually pay, perform, observe and keep all covenants, obligations and conditions in or pursuant to any Permitted Exception and will not modify or permit modification of any Permitted Exception without the prior written consent of Lender.

3.4    Due Authority and Enforceability. Each Loan Document executed by Borrower has been duly authorized, executed and delivered by Borrower, and the obligations thereunder and the performance thereof by Borrower in accordance with their terms are and will continue to be within Borrower's power and authority (without the necessity of joinder or consent of any other person), are not and will not be in contravention of any legal requirement to which Borrower or the Property is subject, and do not and will not result in the creation of any encumbrance against any assets or properties of Borrower, or any other person liable, directly or indirectly, for any of the Indebtedness, except as expressly contemplated by the Loan Documents.

3.5    Borrower's Status. If Borrower is a corporation, limited liability company, partnership, or other legal entity, Borrower is and will continue to be (a) duly organized, validly existing and in good standing under the laws of its state of organization, (b) authorized to do business in, and in good standing in, each state in which the  Property is located, and (c) possessed of all requisite power and authority to carry on its business and to own and operate the  Property.

3.6    Suits. There is no suit, action, claim, investigation, inquiry, proceeding or demand pending (or, to Borrower's knowledge, threatened) which affects the Property (including any which challenges or otherwise pertains to Borrower's title to the Property) or the validity, enforceability or priority of any of the Loan Documents. There is no judicial or administrative action, suit or proceeding pending (or, to Borrower's knowledge, threatened) against Borrower, or against any other person liable directly or indirectly for the Indebtedness, except as has been disclosed in writing to Lender in connection with the loan evidenced by the Note.

3.7    Validity. This Deed of Trust and the other Loan Documents to which Borrower is a party, constitute legal, valid and binding obligations of Borrower enforceable in accordance with their terms, except as the enforceability thereof may be limited by debtor relief laws and except as the availability of certain remedies may be limited by general principles of equity. Borrower will not cause or permit any change to be made in Borrower's name, identity, structure, or jurisdiction of organization, unless Borrower shall have notified Lender of such change prior to the effective date of such change, and shall have first taken all action required by Lender for the purpose of further perfecting or protecting the lien and security interest of Lender in the Property. Borrower shall preserve and keep in full force and effect Borrower's existence, rights, franchises, and trade names.

3.8    Taxes. Borrower shall protect the title and possession of the Property and pay before delinquency all taxes and assessments now existing or hereafter levied or assessed upon the Property, or the interest therein created by this Deed of Trust. Borrower shall deliver to Lender such evidence of the payment of all such taxes and assessments within 10 days following the date of payment thereof.

3.9    Prior Liens. Borrower shall preserve and maintain the lien hereby created as a first and prior lien on the Property, subject only to any other liens held by or for the benefit of Lender (unless the lien hereby created is herein specifically designated to be subordinate to one or more prior liens, in which

4

case, the lien hereby created shall, at all times, be prior and superior to all other liens save and except such specifically designated liens and the stated principal amounts and interest thereby secured, only).

3.10    Good Repair. Borrower shall keep the improvements and fixtures on the Property in good repair and condition, and shall not permit or commit any waste thereof; and shall keep said improvements occupied as necessary so as not to impair the insurance carried thereon.

3.11    Operation of Property. Borrower will operate the Property in a good and workmanlike manner and in accordance with all legal requirements and will pay all fees or charges of any kind in connection therewith. Borrower will keep the Property occupied so as not to impair the insurance carried thereon. Borrower will not use or occupy or conduct any activity on, or allow the use or occupancy of or the conduct of any activity on, the Property in any manner which violates any legal requirement or which constitutes a public or private nuisance or which makes void, voidable or cancelable, or increases the premium of any insurance then in force with respect thereto.

3.12    Compliance with Laws. The Property and the use, operation and maintenance thereof and all activities thereon do and shall at all times comply in all material respects with all applicable legal requirements. The Property is not, and shall not be, dependent on any other property or premises or any interest therein other than the Property to fulfill any legal requirement. Borrower shall not, by act or omission, permit any building or other improvement not subject to the lien of this Deed of Trust to rely on the Property or any interest therein to fulfill any requirement of any legal requirement. No part of the Property constitutes a nonconforming use under any zoning law or similar law or ordinance, unless grandfathered or operating under a variance. Borrower has obtained and shall preserve in force all requisite zoning, utility, building, health and operating permits from the governmental authorities having jurisdiction over the Property. If Borrower receives a notice or claim from any person that any portion of the Property, or any use, activity, operation or maintenance thereof or thereon, is not in compliance with any legal requirement, Borrower will promptly furnish a copy of such notice or claim to Lender. Borrower has received no notice and has no knowledge of any such noncompliance.

3.13    Zoning. Borrower will not initiate or permit any zoning reclassification of the Property or seek any variance under existing zoning ordinances applicable to the Property or use or permit the use of the Property in such a manner that would result in such use becoming a nonconforming use under applicable zoning ordinances or other legal requirement.

3.14    Restrictive Covenants; Platting. Except for existing Permitted Exceptions, Borrower will not impose any easement, restrictive covenant or encumbrance upon the Property, execute or file any subdivision plat or condominium declaration or cooperative or time sharing regime affecting the Property or consent to the annexation of the Property to any municipality, without the prior written consent of Lender. Borrower will not do or suffer to be done any act whereby the value of any part of the Property may be lessened. Borrower will preserve, protect, renew, extend and retain all material rights and privileges granted for or applicable to the Property.

3.15    No Drilling. Without the prior written consent of Lender, there shall be no drilling or exploration for or extraction, removal or production of any mineral, hydrocarbon, gas, natural element, compound or substance (including sand and gravel) from the surface or subsurface of the Land regardless of the depth thereof or the method of mining or extraction thereof.

3.16    Reports on the Property. From time to time at Lender's request, Borrower shall cause to be conducted or prepared any reasonably required written report, summary, opinion, inspection, review, survey, audit or other professional service relating to the Property or such other property securing the Indebtedness or any operations in connection with it (all as designated in Lender's request), including any accounting, auctioneering, architectural, consulting, engineering, design, legal, management, pest control, surveying, title abstracting or other technical, managerial or professional service relating to such property or its operations. Any such report, summary, opinion, inspection, review, survey, audit or other professional service shall be at Borrower's sole cost and expense and Borrower shall promptly pay or reimburse Lender for such cost and expense if such report, summary, opinion, inspection, review, survey,

audit or other professional service occurs during the existence of an Event of Default or is otherwise required to be performed by Lender by an applicable governmental authority or can be required by Lender, at Borrower's expense, pursuant to the provisions of any Loan Document; otherwise, Lender shall be responsible for such cost and expense. Borrower will permit Lender and Lender's agents, independent contractors, representatives, employees and officers at all reasonable times to go upon, examine, inspect and remain on the Property for any lawful purpose and will furnish to Lender on request all pertinent information in regard to the development, operation, use and status of the Property. Any amount to be paid under this paragraph by Borrower to Lender shall be a demand obligation owing by Borrower to Lender and shall bear interest from the date of expenditure at the rate for past due amounts under the Note.

3.17    Inspection; Records. Borrower will keep accurate books and records of the Property, and will permit all such books and records to be inspected and copied, and the Property to be inspected and photographed, by Lender and Lender's representatives from time to time and at such times as Lender may reasonably request; Lender shall endeavor to provide reasonable notice to Borrower and Borrower's tenants, but following any Event of Default, no such notice shall be required. Borrower will furnish to Lender at Borrower's expense all evidence which Lender may from time to time reasonably request as to compliance with all provisions of the Loan Documents. Any inspection or audit of the Property or the books and records of Borrower, or the procuring of documents and financial and other information, by or on behalf of Lender shall be for Lender's protection only, and shall not constitute any assumption of responsibility to Borrower or anyone else with regard to the condition, construction, maintenance or operation of the Property nor Lender's approval of any certification given to Lender nor relieve Borrower of any of Borrower's obligations.

3.18    Payment of Debts. Borrower will cause all debts and liabilities of any character (including all debts and liabilities for labor, material and equipment and all debts and charges for utilities servicing the Property) incurred in the construction, maintenance, operation and development of the Property to be promptly paid (unless challenged in good faith with an escrow or other bond suitable to the Lender having been posted in advance of any delinquency in payment and the commencement of any such challenge).

3.19    Insurance.

(a) Borrower shall obtain and maintain at Borrower's sole expense, if and as required by Lender: [1]  all-risk insurance with respect to all insurable Property against loss or damage by fire, lightning, windstorm, explosion, hail, tornado and such hazards as are presently included in so-called "all-risk" coverage and against such other insurable hazards as Lender may require, in an amount not less than 100% of the full replacement cost, including the cost of debris removal, without deduction for depreciation and sufficient to prevent Borrower and Lender from becoming a coinsurer, such insurance to be in Builder's Risk (non-reporting) form during and with respect to any construction on the Real Property; [2] if and to the extent any portion of the Real Property is in a special flood hazard area, a flood insurance policy in an amount equal to the lesser of the aggregate principal face amount of the Note or the maximum amount available; [3] comprehensive general public liability insurance on an "occurrence" basis for the benefit of Borrower and Lender as named insureds; [4] statutory workers' compensation insurance with respect to any work on or about the Real Property; and [5] such other insurance on the Property as may from time to time be required by Lender (including business interruption insurance, boiler and machinery insurance, earthquake insurance, and war risk insurance) and against other insurable hazards or casualties which at the time are commonly insured against in the case of premises similarly situated, due regard being given to the height, type, construction, location, use and occupancy of buildings and improvements.

(b) All insurance policies shall be issued and maintained by insurers, in amounts, with deductibles, and in form satisfactory to Lender, and shall require not less than thirty (30) days' prior written notice to Lender of any cancellation or change of coverage. All insurance policies maintained, or caused to be maintained, by Borrower with respect to the Property, except for public liability insurance, shall provide that each such policy shall be primary without right of

contribution from any other insurance that may be carried by Borrower or Lender and that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured. If any insurer which has issued a policy of title, hazard, liability or other insurance required pursuant to this Deed of Trust or any other Loan Document becomes insolvent or the subject of any bankruptcy, receivership or similar proceeding or if in Lender's opinion the financial responsibility of such insurer is or becomes inadequate, Borrower shall, in each instance promptly upon the request of Lender and at Borrower's expense, obtain and deliver to Lender a like policy (or, if and to the extent permitted by Lender, a certificate of insurance) issued by another insurer, which insurer and policy meet the requirements of this Deed of Trust or such other Loan Document, as the case may be. Borrower shall at all times comply with the requirements of the insurance policies required hereunder and of the issuers of such policies and of any board of fire underwriters or similar body as applicable to or affecting the Property.

(c) Without limiting the discretion of Lender with respect to required endorsements to insurance policies, all such policies for loss of or damage to the Property shall contain a standard mortgagee clause (without contribution) naming Lender as mortgagee with loss proceeds payable to Lender notwithstanding (i) any act, failure to act or negligence of or violation of any warranty, declaration or condition contained in any such policy by any named insured; (ii) the occupation or use of the Property for purposes more hazardous than permitted by the terms of any such policy; (iii) any foreclosure or other action by Lender under the Loan Documents; or (iv) any change in title to or ownership of the Property or any portion thereof, such proceeds to be held for application as provided in the Loan Documents.

(d) The originals of each initial insurance policy (or to the extent permitted by Lender, a copy of the original policy and a satisfactory certificate of insurance) shall be delivered to Lender at the time of execution of this Deed of Trust, with premiums fully paid, and each renewal or substitute policy (or certificate) shall be delivered to Lender, with premiums fully paid, at least ten (10) days before the termination of the policy it renews or replaces. Borrower shall pay all premiums on policies required hereunder as they become due and payable and promptly deliver to Lender evidence satisfactory to Lender of the timely payment thereof.

(e) If any loss occurs at any time when Borrower has failed to perform Borrower's covenants and agreements in this paragraph, Lender shall nevertheless be entitled to the benefit of all insurance covering the loss and held by or for Borrower, to the same extent as if it had been made payable to Lender. Upon any foreclosure hereof or transfer of title to the Property in extinguishment of the whole or any part of the Indebtedness, all of Borrower's right, title and interest in and to the insurance policies referred to in this paragraph (including unearned premiums) and all proceeds payable thereunder shall thereupon vest in the Lender, or at Lender's written election, the purchaser at foreclosure or other such transferee, to the extent permissible under such policies.

3.20    Notice under Section 307.052, Texas Finance Code. TEXAS FINANCE CODE SECTION 307.052. COLLATERAL PROTECTION INSURANCE NOTICE: A. BORROWER IS REQUIRED TO [1] KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT LENDER HEREIN SPECIFIES; [2] PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND [3] NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; B. BORROWER MUST, IF REQUIRED BY LENDER , DELIVER TO LENDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND C. IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN SECTIONS A OR B OF THIS PARAGRAPH, LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT THE BORROWER=S EXPENSE.

3.21    Settlement and Proceeds of Insurance. Lender shall have the right (but not the obligation) to make proof of loss for, settle and adjust any claim under, and receive the proceeds of, all insurance for loss of or damage to the Property, and the expenses incurred by Lender in the adjustment and collection

of insurance proceeds shall be a part of the Indebtedness and shall be due and payable to Lender on demand. Lender shall not be, under any circumstances, liable or responsible for failure to collect or exercise diligence in the collection of any of such proceeds or for the obtaining, maintaining or adequacy of any insurance or for failure to see to the proper application of any amount paid over to Borrower. Any such proceeds received by Lender shall, after deduction therefrom of all expenses actually incurred by Lender, including attorneys' fees, at Lender's option be (1) released to Borrower, or (2) applied (upon compliance with such terms and conditions as may be required by Lender) to repair or restoration, either partly or entirely, of the Property so damaged, or (3) applied to the payment of the Indebtedness in such order and manner as Lender, in Lender's sole discretion, may elect, whether or not due. In any event, the unpaid portion of the Indebtedness shall remain in full force and effect and the payment thereof shall not be excused. Provided however, any payments for loss under any loan or mortgagee policy of title insurance shall be applied by Lender to the Indebtedness in such order and manner as Lender may elect, unless the Lender, in its sole discretion elects to allow Borrower the use of any portion thereof.

3.22    Taxes on Indebtedness or Loan Documents. Borrower will promptly pay all income, franchise and other taxes owing by Borrower and any stamp taxes or other taxes (unless such payment by Borrower is prohibited by law) which may be required to be paid with respect to the Note, this Deed of Trust or any other Loan Document. In the event of the enactment after this date of any law of any governmental authority applicable to Lender, the Note, the Property or this Deed of Trust deducting from the value of property for the purpose of taxation any lien thereon, or imposing upon Lender the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Borrower, or changing in any way the laws relating to the taxation of deeds of trust or mortgages or security agreements or debts secured by deeds of trust or mortgages or security agreements or the interest of the mortgagee or secured party in the property covered thereby, or the manner of collection of such taxes, so as to affect this Deed of Trust or the Indebtedness or Lender, then, and in any such event, Borrower, upon demand by Lender, shall pay such taxes, assessments, charges or liens, or reimburse Lender therefor; provided, however, that if in the opinion of counsel for Lender (a) it might be unlawful to require Borrower to make such payment or (b) the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then and in such event, Lender may elect, by notice in writing given to Borrower, to declare all of the Indebtedness to be and become due and payable sixty (60) days from the giving of such notice.

3.23    Statement of Assurance. Borrower shall at any time and from time to time furnish within seven (7) days of request by Lender a written statement in such form as may be required by Lender stating (a) that the Note, this Deed of Trust and the other Loan Documents are valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms; (b) the unpaid principal balance of the Note; (c) the date to which interest on the Note is paid; (d) that the Note, this Deed of Trust and the other Loan Documents have not been released, subordinated or modified; and (e) that there are no offsets or defenses against the enforcement of the Note, this Deed of Trust or any other Loan Document. If any of the foregoing statements are untrue, Borrower shall, alternatively, specify the reasons therefor.

3.24    Further Assurance. Borrower will, promptly on request of Lender, (a) correct any defect, error or omission which may be discovered in the contents, execution or acknowledgment of this Deed of Trust or any other Loan Document; (b) execute, acknowledge, deliver, procure and record and/or file such further documents (including further deeds of trust, security agreements, financing statements, continuation statements, and assignments of rents or leases) and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Deed of Trust and the other Loan Documents, to more fully identify and subject to the liens hereof any property intended to be covered hereby (including any renewals, additions, substitutions, replacements, or appurtenances to the Property) or as deemed advisable by Lender to protect the liens hereunder against the rights or interests of third persons; and (c) provide such certificates, documents, reports, information, affidavits and other instruments and do such further acts as may be necessary, desirable or proper in the determination of Lender to enable Lender to comply with the requirements or requests of any agency having jurisdiction over Lender or any examiners of such agencies with respect to the Indebtedness, Borrower or the Property. Borrower shall pay all costs connected with any of the foregoing, which shall be a demand

8

obligation owing by Borrower (which Borrower hereby promises to pay) to Lender pursuant to this Deed of Trust, and shall bear interest at the Default Rate on the unpaid amount thereof from the date of demand until paid.

3.25    Indemnity.

(a.)    **Borrower will indemnify and hold harmless Lender and Trustee from and against, and reimburse them on demand for, any and all Indemnified Matters (defined below). For purposes of this Section, the terms "Lender" and "Trustee" shall include the directors, officers, partners, employees and agents of Trustee and Lender, respectively, and any persons owned or controlled by, owning or controlling, or under common control or affiliated with Lender or Trustee, respectively.** WITHOUT LIMITATION, THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO MATTERS WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF, OR ARE CLAIMED TO BE CAUSED BY OR ARISE OUT OF, THE NEGLIGENCE OR STRICT LIABILITY OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PERSON. HOWEVER, SUCH INDEMNITIES SHALL NOT APPLY TO A PARTICULAR INDEMNIFIED PERSON TO THE EXTENT THAT THE SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THAT INDEMNIFIED PERSON. Any amount to be paid under this Section by Borrower to Lender and/or Trustee shall be a demand obligation owing by Borrower (which Borrower hereby promises to pay) to Lender and/or Trustee pursuant to this Deed of Trust. Nothing in this paragraph, elsewhere in this Deed of Trust or in any other Loan Document shall limit or impair any rights or remedies of Lender and/or Trustee (including any rights of contribution or indemnification) against Borrower or any other Person under any other provision of this Deed of Trust, any other Loan Document, any other agreement or any applicable legal requirement.

(b.)    As used in this Section, the term "*Indemnified Matters*" means any and all claims, demands, liabilities (including strict liability), losses, damages (including consequential damages), causes of action, judgments, penalties, costs and expenses (including reasonable fees and expenses of attorneys and other professional consultants and experts, and of the investigation and defense of any claim, whether or not such claim is ultimately withdrawn or defeated, and the settlement of any claim or judgment including all value paid or given in settlement) of every kind, known or unknown, foreseeable or unforeseeable, which may be imposed upon, asserted against or incurred or paid by Lender and/or Trustee at any time and from time to time, whenever imposed, asserted or incurred, because of, resulting from, in connection with, or arising out of any transaction, act, omission, event or circumstance in any way connected with the Property or with this Deed of Trust or any other Loan Document, including (i) any bodily injury or death or property damage occurring in or upon or in the vicinity of the Property through any cause whatsoever at any time on or before the Release Date (as hereinafter defined), (ii) any act performed or omitted to be performed hereunder or under any other Loan Document, (iii) any breach by Borrower of any representation, warranty, covenant, agreement or condition contained in this Deed of Trust or in any other Loan Document, (iv) any Event of Default as defined herein, (v) any claim under or with respect to any Lease which arises or accrues prior to the Release Date, and (vi) any Environmental Matter (defined below).

(c.)    As used herein, the term "*Environmental Matter*" means: (i) the presence of any Hazardous Materials (as defined below) on, in, under, above or about the Property, or the migration or release or threatened migration or release of any Hazardous Materials on, to, from or through the Property, on or at any time before the Release Date; or (ii) any act, omission, event or circumstance existing or occurring in connection with the handling, treatment, containment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials which is at any time on or before the Release Date present on, in, under, above or about the Property; or (iii) any violation on or before the Release Date, of any Governmental Requirement (as defined below) in effect on or before the Release Date, regardless of whether any act, omission, event or circumstance giving rise to the violation constituted a violation at the time of

the occurrence or inception of such act, omission, event or circumstance; or (iv) any environmental claim, or the filing or imposition of any environmental lien against the Property, because of, resulting from, in connection with, or arising out of any of the matters referred to in clauses (i) through (iii) preceding; and regardless of whether any of the matters referred to in the foregoing clauses (i) through (iv) was caused by Borrower or Borrower's tenant or any subtenant, or a prior owner of the Property or its tenant or any subtenant, or any third party. Without limitation of the definition of Indemnified Matters herein, Borrower's indemnification obligations regarding any Environmental Matter shall include injury or damage to any person, property or natural resource occurring upon or off of the Property (including the cost of demolition and rebuilding of any improvements on real property), the preparation of any feasibility studies or reports and the performance of any cleanup, remediation, removal, response, abatement, containment, closure, restoration, monitoring or similar work required by any Governmental Requirement or necessary to have the full use and benefit of the Property as contemplated by the Loan Documents (including any of the same in connection with any foreclosure or transfer in lieu thereof), and all liability to pay or indemnify any person for costs in connection with any of the foregoing. The term "*Release Date*" as used in this Section means the earlier of the following two dates: [1] the date on which the Indebtedness secured hereby has been paid and performed in full and this Deed of Trust has been released, or [2] the date on which the lien of this Deed of Trust is fully and finally foreclosed or a conveyance by deed in lieu of such foreclosure is fully and finally effective, and possession of the Property has been given to the purchaser or grantee free of occupancy and claims to occupancy by Borrower and Borrower's heirs, devisees, representatives, successors and assigns; *provided*, that if such payment, performance, release, foreclosure or conveyance is challenged, in bankruptcy proceedings or otherwise, the Release Date shall be deemed not to have occurred until such challenge is rejected, dismissed or withdrawn with prejudice. The indemnities in this Section shall not terminate upon the Release Date or upon the release, foreclosure or other termination of this Deed of Trust but will survive the Release Date, foreclosure of this Deed of Trust or conveyance in lieu of foreclosure, the repayment of the Indebtedness, the discharge and release of this Deed of Trust and the other Loan Documents, any bankruptcy or other debtor relief proceeding, and any other event whatsoever.

3.26 <u>Title Insurance</u>. Borrower shall, upon execution hereof and at Borrower's cost, cause to be delivered to Lender a mortgagee's policy of title insurance in the form promulgated for use in Texas, insuring the lien hereof in the priority herein indicated with no exceptions to title other than the Permitted Exceptions and any standard pre-printed exceptions reasonably acceptable to Lender, provided that unless waived by the Lender, the "survey" and tax deletions will be made. Such policy shall be in an amount equal to the original principal amount of the Indebtedness described in 0, above (plus accrued interest, if applicable), and issued by an underwriter or underwriters reasonably acceptable to Lender.

3.27 <u>Lender May Act</u>. In the event Borrower shall fail to keep the improvements and fixtures on the Property in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the priority of the lien of this Deed of Trust on the Property, or to keep the improvements and fixtures insured, as aforesaid, or to deliver the policies of insurance or the renewals thereof to Lender, as aforesaid, or to otherwise carry out Borrower's covenants and agreements under this Deed of Trust, then Lender may, at Lender's option, but without being required to do so, make such repairs, pay such taxes and assessments, purchase any tax title thereon, remove any prior liens, prosecute or defend any suits in relation to the preservation of the Property or the priority of the lien of this Deed of Trust, or insure and keep insured the improvements and fixtures thereon in an amount not to exceed that above stipulated, or otherwise take such actions as the Borrower was obligated hereunder but failed to take; any sums that may be so paid out by Lender, including the costs, expenses and attorney's fees paid by Lender in connection with such actions, shall bear interest from the dates of such payments at the Default Rate and shall be paid by Borrower to Lender upon demand, at the Lender's main business office (or elsewhere as Lender may designate) and shall be deemed a part of the Indebtedness and recoverable as such in all respects.

3.28    Lender May Go Upon the Real Property or Inspect the Collateral. Lender may, at such time or times as Lender may desire, acting through one or more agents, go upon the Real Property or otherwise inspect the Collateral, for the purpose of testing, inspecting, appraising or repairing the Property or determining Borrower's compliance with this Deed of Trust; provided however, in no event shall Lender be required to so act, nor shall Lender have any duty whatsoever to report any deficiencies, defects, or other matters learned by Lender to Borrower or any other person, such rights herein in this section granted being for the purposes of assisting Lender in preserving and protecting Lender's collateral for the Indebtedness; provided further, in no event shall such rights herein in this section granted be exercised in any manner to commit a breach of peace or other unlawful act, and such grant is so limited, but Borrower to the maximum lawful extent hereby authorizes Lender's entry onto and into the Real Property or otherwise inspect the Collateral for the above-described limited purposes.

3.29    No Other Liens. Borrower shall not suffer or permit any other lien, assignment or security interest to exist against the Property except (i) liens, assignments and security interests in favor of Lender, (ii) liens arising by operation of law securing debts not yet due and payable, and (iii) any Permitted Exceptions.

## Article 4
## Default

4.1    Foreclosure. Upon or following any Event of Default (hereinafter defined), Lender may elect to declare all or any part of the entire unpaid principal portion of the Indebtedness hereby secured, all earned and unpaid interest accrued thereon and all other earned and unpaid obligations hereby secured immediately due and payable. Upon default in the payment of said Indebtedness (or any part thereof) as and when due or so declared due, it shall thereupon, or at any time thereafter, be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to enforce this trust. Trustee shall advertise the sale of the Property, then subject to the lien hereof, for at least twenty-one (21) days preceding the date of sale by posting written or printed notice thereof at the courthouse door of the county where the Land is situated and by filing a copy of said notice with the county clerk of said county, which notice may be posted and filed by the Trustee acting, or by any person acting for him; and, the Lender or Trustee shall at least twenty-one (21) days preceding the date of sale, serve written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness secured by this Deed of Trust according to the records of Lender, by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by the records of Lender, in a post office or official depository under the care and custody of the United States Postal Service; such notices shall include such information as is required by applicable law and such other information as Trustee or Lender may elect to include. Trustee shall then sell the Property, then subject to the lien hereof, at public auction in accordance with such notice at the county courthouse of said county where the Land is situated (provided where the Land is in more than one county, the notice to be posted and filed as herein provided shall be posted at the courthouse door of each of such counties where the Land is situated, and shall be filed with county clerk of each such county and said Property may be sold at the county courthouse of any one of such counties, and the notices so posted and filed shall designate the county where the Property will be sold), on the first Tuesday in any month between the hours of ten o'clock A.M. and four o'clock P.M., to the highest bidder for cash, selling all of the Property as an entity or in such parcels as the Trustee acting may elect, and make due conveyance to the purchaser or purchasers, with general warranty binding Borrower, Borrower's heirs, successors and assigns forever. The sale shall take place at the area of the county courthouse designated in the manner required by Section 51.002(a), Texas Property Code, as amended, or any then applicable successor statute thereto; the sale shall begin at the time stated in the notice of sale or not later than three hours after that time, or at such other time as is required by applicable law. Out of the money arising from such sale, the Trustee acting shall pay first, all the expenses of advertising the sale and making the conveyance, including a commission of five per cent (5%) to himself, which commission Borrower stipulates is reasonable and which commission shall be due and owing in addition to the attorney's fees provided for in the Indebtedness, and then to Lender the full amount of principal, interest, attorney's fees

and other charges due and unpaid on said Indebtedness, rendering the balance of the sales price, if any, to Borrower, Borrower's heirs or assigns, or to whomsoever shall be legally entitled thereto. The recitals in the conveyance to the purchaser or purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed, and such sale and conveyance shall be conclusive against Borrower and Borrower's heirs, successors and assigns.

4.2     Compliance with Section 51.002, Texas Property Code. Notwithstanding any other provision of this Deed of Trust, if Lender and Trustee comply with the requirements of Section 51.002, Texas Property Code, or any successor provisions of Texas statutes, no further compliance or act by Lender and Trustee under this 0 (or its sections) shall be required.

4.3     Suit For Collection. In the event a foreclosure hereunder should be commenced by the Trustee, Lender may at any time before the sale of said Property direct the Trustee to abandon the sale, and may then institute suit for the collection of all Indebtedness then due (or any part thereof) and/or for the foreclosure of this Deed of Trust lien. If Lender should institute a suit for the collection of all or any part of Indebtedness and/or for a foreclosure of this Deed of Trust lien, Lender may at any time before the entry of a final judgment in said suit dismiss the same or amend it so as to no longer seek judicial foreclosure, and require the Trustee to sell the Property in accordance with the provisions of this Deed of Trust. Lender may, at any time, whether or not non-judicial foreclosure hereunder has commenced or is proceeding or has been concluded, commence or pursue a suit on the Indebtedness then due or any deficiency without seeking judicial foreclosure of the lien hereby created.

4.4     Lender's Right to Purchase and Credit Bid. Lender shall have the right to purchase at any sale of the Property (or any part thereof), being the highest bidder, and to have the amount for which such Property (or any part thereof) is sold credited on the Indebtedness then owing.

4.5     References to Trustee. References to the Trustee include any duly appointed substitute trustee(s) hereunder, and may be one or more persons if so designed by this Deed of Trust or any subsequent appointment by Lender; in such event, either or any of such Trustees may act in accordance with this instrument without the joinder of the other designated Trustee.

4.6     Lender Authorized to Appoint Substitute Trustees. Lender, in any event and at any time (whether or not an Event of Default has occurred or the foreclosure process has been commenced), is hereby authorized to appoint one or more substitute trustees, or successor trustees, to act instead of the Trustee named herein (or subsequently appointed) without other formality than the designation in writing of such substitute or successor trustees. The authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Indebtedness hereby secured has been paid in full, or until said Property is sold hereunder, and each substitute and successor trustee shall succeed to all of the rights and powers of the original Trustee named herein. Any requirement that such appointment be recorded in any real property records is, to the extent not prohibited by applicable law, hereby waived by Borrower. Lender may appoint several named successor or substitute trustees, and if the Lender so acts, any one of them may act without regard to the order in which they were listed and without joinder of any other so-named successor or substitute trustees.

4.7     Borrower to Deliver Possession Upon Sale. In the event any sale is made of the Property, or any portion thereof, under the terms of this Deed of Trust, Borrower and Borrower's heirs, successors, and assigns shall forthwith upon the making of such sale surrender and deliver possession of the Property so sold to the purchaser at such sale. If Borrower or Borrower's heirs, successors, or assigns remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower, Borrower shall become a tenant at sufferance of Lender or the purchaser of the Property, as the case may be, and shall, at the option of Lender or said purchaser, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender or said purchaser. In the event of Borrower's failure to surrender possession of said Property upon demand, the Lender or said purchaser, or their heirs, successors or assigns, shall be entitled to institute and maintain an action for forcible detainer of said

Property in the justice of the peace court in the justice precinct in which such Property, or any part thereof, is situated. **This clause shall survive any termination of this Deed of Trust by foreclosure or otherwise and any rents owed Lender or expenses incurred by Lender under this section, including attorneys' fees, whether before or after foreclosure, shall be added to the Indebtedness as an expense payable by Borrower (or Maker of the Note) under the Note or Loan Agreement. This is in addition to, and not in limitation of any other remedies available to Lender by law, under this document, or under the other documents, instruments or agreements evidencing, governing or securing the Indebtedness.**

4.8    Sale of Less Than All of Property. At Lender's request, Trustee shall advertise or sell less than all of the Property, by sales in tracts or parcels, or by sales of personal property under provisions of the Uniform Commercial Code, or in any other lawful manner. In such cases, this Deed of Trust and the power of sale herein contained and the security interests or assignments herein created, as applicable, shall continue in full force as to the unsold Property, for one or more additional sales, until this Deed of Trust is released.

4.9    Enforceability of Vendor's Lien. Should the Indebtedness, or any part thereof, be secured by a vendor's lien or other lien, then said vendor's lien or other lien may be enforced separately, in accordance with applicable law, upon the occurrence of any Event of Default, at Lender's option without waiver of any other rights of enforcement.

4.10    Indemnification. Except as prohibited by law: **Borrower hereby indemnifies and holds, Trustee and Lender harmless from and against any cost, expense, claim, or liability whatsoever, incurred or to be incurred by Trustee acting or purporting to act as Trustee hereunder, save and except for Trustee's negligence or willful misconduct;. Borrower agrees and covenants that, without necessary limitation, Trustee may be an officer, director, agent or attorney of, or principal in Lender.**

4.11    The Trustee may set reasonable conditions for conducting the public sale pursuant to Section 51.0075, Texas Property Code.

Without limitation of the foregoing:

(a.)    In the event that, at any sale, a bidder whose bid is the highest shall request an opportunity to obtain cash, the Trustee may recess such sale or delay final acceptance of such bid, for a reasonable time to allow said bidder to obtain cash and Trustee shall announce such recess and the time at which the sale shall resume; at such appointed time, the Trustee may conclude the sale without the necessity to reopen bidding if the bidder requesting the recess shall then present such cash bid price to the Trustee, otherwise the Trustee may, at Trustee's election, either reopen the bidding (and exclude the defaulting bidder) or without reopening bidding accept the second highest bid for cash previously made, or Trustee may take such other action as is legally required or permitted.

(b.)    The requirement that a bid shall be payable in cash shall be deemed satisfied if payment is made in the legal tender of the United States of America or by such other commonly recognized cash equivalent, including (without necessary limitation) cashier's checks and official checks, as Trustee, in Trustee's reasonable discretion, may deem acceptable.

(c.)    In the event that the Trustee is required by law to take any other or different action, the Trustee may so act.

(d.)    The Borrower agrees that the Trustee and Lender may delay notice, posting and/or sale and modify terms of sale (to the extent not prohibited by law) as may be necessary to comply with any (if any) requirement of applicable law or covenants affecting the Property.

(e.) The Trustee may provide additional reasonable conditions with respect to any sales hereunder by inclusion in any notices of sale, or by declaration at the time of a public sale, or otherwise as the Trustee may elect (to the extent not prohibited by law).

4.12 Limitation of Trustee Duties. The duties of the Trustee under this Deed of Trust are limited to exercising the power of sale in accordance with this Deed of Trust and applicable law.

4.13 Deficiency. IN THE EVENT OF A FORECLOSURE SALE, BORROWER AGREES AS FOLLOWS: NOTWITHSTANDING THE PROVISIONS OF SECTIONS 51.003, 51.004 AND 51.005 OF THE TEXAS PROPERTY CODE (AS THE SAME MAY BE AMENDED FROM TIME TO TIME), AND TO THE EXTENT NOT PROHIBITED BY LAW, AND TO THE EXTENT ANY OF THE WAIVERS IN THE LOAN DOCUMENTS BY BORROWER OR ANY OTHER OBLIGOR OF THE PROVISIONS OF SECTIONS 51.003, 51.004 AND 51.005 OF THE TEXAS PROPERTY CODE ARE NOT ENFORCEABLE, THE FOLLOWING SHALL BE THE BASIS FOR THE FINDER OF FACTS DETERMINATION OF THE FAIR MARKET VALUE OF THE REAL PROPERTY AS OF THE DATE OF THE FORECLOSURE SALE IN PROCEEDINGS GOVERNED BY SECTIONS 51.003, 51.004 AND 51.005 OF THE TEXAS PROPERTY CODE (AS AMENDED FROM TIME TO TIME):

(a.) THE REAL PROPERTY SHALL BE VALUED IN AN "AS IS" CONDITION AS OF THE DATE OF THE FORECLOSURE SALE, WITHOUT ANY ASSUMPTION OR EXPECTATION THAT THE REAL PROPERTY WILL BE REPAIRED OR IMPROVED IN ANY MANNER BEFORE A RESALE OF THE REAL PROPERTY AFTER FORECLOSURE;

(b.) THE VALUATION SHALL BE BASED UPON AN ASSUMPTION THAT THE FORECLOSURE PURCHASER DESIRES A PROMPT RESALE OF THE REAL PROPERTY FOR CASH (BUT NO LATER THAN TWELVE MONTHS) FOLLOWING THE FORECLOSURE SALE;

(c.) ALL REASONABLE CLOSING COSTS CUSTOMARILY BORNE BY THE SELLER IN A COMMERCIAL REAL ESTATE TRANSACTION SHOULD BE DEDUCTED FROM THE GROSS FAIR MARKET VALUE OF THE REAL PROPERTY, INCLUDING BROKERAGE COMMISSIONS, TITLE INSURANCE, A SURVEY OF THE REAL PROPERTY, TAX PRORATIONS, ATTORNEY'S FEES AND MARKETING COSTS;

(d.) THE GROSS FAIR MARKET VALUE OF THE REAL PROPERTY SHALL BE FURTHER DISCOUNTED TO ACCOUNT FOR ANY ESTIMATED HOLDING COSTS ASSOCIATED WITH MAINTAINING THE REAL PROPERTY PENDING SALE, INCLUDING UTILITIES EXPENSES, PROPERTY MANAGEMENT FEES, TAXES AND ASSESSMENTS (TO THE EXTENT NOT ACCOUNTED FOR IN (c) ABOVE) AND OTHER EXPENSES RELATED TO THE OWNERSHIP, OPERATION, OR MAINTENANCE OF THE PROPERTY NET OF EXPECTED REVENUES DURING THE PROJECTED HOLDING PERIOD BASED ON THEN CURRENT LEASES TO THE EXTENT THERE IS NO REASONABLE BASIS FOR DISCONTINUANCE OR REDUCTION OF REVENUES THEREUNDER; AND

(e.) ANY EXPERT OPINION TESTIMONY GIVEN OR CONSIDERED IN CONNECTION WITH A DETERMINATION OF THE FAIR MARKET VALUE OF THE REAL PROPERTY MUST BE GIVEN BY PERSONS HAVING AT LEAST FIVE YEARS EXPERIENCE IN APPRAISING PROPERTY SIMILAR TO THE REAL PROPERTY AND WHO HAVE CONDUCTED AND PREPARED A COMPLETE WRITTEN APPRAISAL OF THE REAL PROPERTY TAKING INTO CONSIDERATION THE FACTORS SET FORTH ABOVE.

**Article 5**
**Releases and Extensions; Special Applications; Waivers; Environmental**

14

5.1  Superior Lien. The lien hereby created shall take precedence over and be a prior lien to any other lien of any character whether vendor's, materialmen's or mechanic's lien hereafter created on the Property. In the event the proceeds of the Indebtedness secured hereby are used to pay off and satisfy any liens heretofore existing on said Property or any part thereof, then Lender is, and shall be, subrogated to all of the rights, powers, equities, liens and remedies of the holders of the indebtedness so paid.

5.2  Payment Extension. Any extension, or extensions, may be made of the time of payment of all, or any part, of the Indebtedness secured hereby, and that any part of the Property may be released from this lien without altering or affecting the priority of the lien created by this Deed of Trust, nor shall any such actions advance the lien priority of, or create a priority over this lien of, any junior encumbrancer, mortgagee or purchaser, or any person acquiring an interest in the Property hereby conveyed, or any part thereof. It is the intention of the parties hereto to preserve this lien on the Property superior to any other liens (except as herein otherwise specifically provided) that now exist or may hereafter exist, or that may be fixed, given or imposed by law notwithstanding any such extension of the time of payment, or the release of a portion of said Property from this lien. In the event that for any reason the reduction of or repayment of any part of the Indebtedness has the effect of, or Lender has a good faith belief that such would have the effect of, adversely affecting the validity of the lien of this instrument, then Lender at Lender's option may elect to curtail or cease any further advances or undertakings to be secured hereby. Borrower will not allow any mechanic's liens to be filed against the Property.

5.3  In the event any portion of the Indebtedness hereinabove described cannot be lawfully secured by this Deed of Trust lien on said Property, it is agreed that the first payments made on said Indebtedness shall be deemed applied to the discharge of that portion of said Indebtedness.

5.4  Except as provided in the Note and in 0, below, unless (and then to the extent not) prohibited by applicable law, the Borrower, and each surety, endorser, guarantor and other person liable or to become liable for payment of any of the Indebtedness:

(a.)  waives: opportunity to cure breach or default; grace; all notices, demands and presentments for payment; all notices of dishonor, non-payment, acceleration of maturity or intention to accelerate maturity; protest; dishonor; all other notices whatsoever; and diligence in taking any action to collect amounts secured hereunder or in the handling of any collateral securing the Indebtedness at any time; and,

(b.)  consents and agrees (without notice of any of the following): to any substitution, subordination, exchange or release of any security for the Indebtedness or the release of any party primarily or secondarily liable on the Indebtedness; that the Lender shall not be required first to institute suit or exhaust Lender's remedies against the Borrower or others liable or to become liable on the Indebtedness or to enforce Borrower's rights against them or any security therefor; and, to any extension, renewal, rearrangement, or postponement of the time or manner of payment of the Indebtedness and to any other indulgence with respect hereto or thereto. Borrower waives any right of redemption; and

(c.)  waives any right or remedy pursuant to Chapter 43 of the Civil Practice and Remedies Code of the State of Texas pertaining to the rights and remedies of sureties.

Notwithstanding any other provision in this instrument, or in any other document, instrument or agreement given to evidence or secure any of the Indebtedness, notice required under Section 51.002(d), Texas Property Code, is not waived to the extent, but only to the extent, applicable hereto, unless otherwise permitted by applicable law.

5.5  The Indebtedness (or any part thereof) may be secured by other guaranties, sureties, collateral, assignments, contracts, or agreements than as evidenced herein. Acceptance or taking hereof or thereof, release or partial release, discharge, modification, extension, or subordination hereof or thereof or impairment hereof or thereof, shall in no manner reduce, release, affect or impair remaining

security, and Lender may pursue and recover upon Lender's rights or remedies hereunder or thereunder in such order as Lender may elect in Lender's sole discretion. Marshalling of assets is waived.

5.6    Borrower shall execute and deliver to Lender, or obtain and deliver to Lender, at Borrower's sole cost and expense, such other documents, instruments, agreements and things as Lender may reasonably request of Borrower to preserve, protect, enforce, maintain and defend the liens hereby created or the rights in Lender hereby conferred.

5.7    Environmental.

(a.)    Definitions. For the purposes of this Deed of Trust, Borrower and Lender agree that, unless the context otherwise specified or requires, the following terms shall have the meaning herein specified:

*"Hazardous Materials"* shall mean (a) any "hazardous waste" or "regulated substance" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901, *et seq.*), and regulations promulgated thereunder, both as amended from time to time; (b) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601, *et seq.*) and regulations promulgated thereunder, both as amended from time to time; (c) any "toxic substance" as defined by the Toxic Substances Control Act (15 U.S.C. § 2601, *et seq.*), and regulations promulgated thereunder, both as amended from time to time; (d) any "waste" as defined by the Texas Water Quality Control Act (Tex. Water Code §§ 26.01-225), and regulations promulgated thereunder, both as amended from time to time; (e) any "solid waste" as defined by the Texas Solid Waste Disposal Act (Tex. Health & Safety Code § 361.001, *et seq.*), and regulations promulgated thereunder, both as amended from time to time; (f) any "air contaminant " as defined by the Texas Clean Air Act (Tex. Health & Safety Code § 382.001, *et seq.*), and regulations promulgated thereunder, both as amended from time to time; (g) any "hazardous substance" as defined by the Texas Hazardous Substances Spill Prevention and Control Act (Tex. Water Code §§ 26.261-268), and regulations promulgated thereunder, both as amended from time to time; (h) any "toxic chemical" as defined by the Texas Toxic Chemical Release Reporting Act (Tex. Health & Safety Code § 370.001, *et seq.*), and regulations promulgated thereunder, both as amended from time to time; (i) any "regulated asbestos-containing material" as defined in the National Emission Standard for Asbestos (40 C.F.R. § 61.140, *et seq.*); (j) polychlorinated biphenyls as defined in 40 C.F.R. Part 761; (k) underground storage tanks, whether active, inactive, empty, filled or partially filled with any substance, (l) any substance the presence of which on the Property is prohibited by any Governmental Requirements; and (m) any other substance which by any Governmental Requirements requires special handling or notification of any federal, state or local Governmental Authority in its collection, storage, transportation, treatment, processing, management or disposal.

*"Hazardous Materials Contamination"* shall mean the contamination (whether presently existing or hereafter occurring) of the Improvements, facilities, soil, surface water, groundwater, air or other elements on or of the Property by Hazardous Materials, or the contamination of the buildings, facilities, soil, surface water, groundwater, air or other elements on or of any other property as a result of Hazardous Materials at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

*"Governmental Requirements"* shall mean any and all of the following that may now or hereafter be applicable to Borrower or the Property: (i) judicial decisions, statutes, rulings, rules, regulations, permits, certificates or ordinances of any and all governmental or quasi governmental entities of any nature whatsoever, whether federal, state, county, district, city or otherwise, and whether now or hereafter in existence (*"Governmental Authority"*); (ii) restrictions of record; and (iii) any other governmental directive or requirement of any nature.

(b.)    Borrower's Warranties. Borrower hereby represents and warrants that:

(i)      No Hazardous Materials are now located on the Property except for such Hazardous Materials as are incidental to Borrower's and Borrower's tenants' normal course of business, occupancy, maintenance and repairs and which are handled in compliance with all applicable Governmental Requirements relating to Hazardous Materials, and neither Borrower nor, to Borrower's knowledge, any other Person has ever caused or permitted any Hazardous Materials to be placed, held, located or disposed of on, under or at the Property or any part thereof;

(ii)      No part of the Property is being used or, to the knowledge of Borrower, has been used at any previous time for the disposal, storage, treatment, processing or other handling of Hazardous Materials, nor is any part of the Property affected by any Hazardous Materials Contamination;

(iii)      To the best of Borrower's knowledge and belief, no property adjoining the Property is being used, or has ever been used at any previous time for the disposal, storage, treatment, processing or other handling of Hazardous Materials nor is any other property adjoining the Property affected by Hazardous Materials Contamination;

(iv)      No investigation, administrative order, consent order and agreement, litigation or settlement with respect to Hazardous Materials or Hazardous Materials Contamination is in existence or, to Borrower's knowledge, proposed, threatened, or anticipated with respect to the Property. The Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list; and

(v)      Borrower has undertaken all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice in an effort to minimize liability associated with Hazardous Materials or Hazardous Materials Contamination.

(c.)      Borrower's Covenants. Borrower agrees to (a) give notice to Lender immediately upon Borrower's acquiring knowledge of the presence of any Hazardous Materials on the Property (other than such Hazardous Materials as are incidental to Borrower's and Borrower's tenants' normal course of business, occupancy, maintenance and repairs and which are handled in compliance with all applicable Governmental Requirements relating to Hazardous Materials) or of any Hazardous Materials Contamination with a full description thereof; (b) promptly comply with any Governmental Requirements requiring the removal, treatment, mitigation or disposal of such Hazardous Materials or Hazardous Materials Contamination and provide Lender with satisfactory evidence of such compliance; and (c) provide Lender, within thirty (30) days after demand by Lender, with a bond, letter of credit or similar financial assurance evidencing to Lender's satisfaction that the necessary funds are available to pay the cost of removing, treating, mitigating and disposing of such Hazardous Materials or Hazardous Materials Contamination and discharging any assessments which may be established on the Property as a result thereof.

(d)      Site Assessments. Lender (by Lender's officers, employees and agents) at any time and from time to time, with reasonable cause either prior to or after the occurrence of an Event of Default, may contract for the services of persons (the "Site Reviewers") to perform environmental site assessments ("Site Assessments") on the Property for the purpose of determining whether there exists on the Property any environmental condition which could reasonably be expected to result in any liability, cost or expense to the owner, occupier or operator of such Property arising under any state, federal or local law, rule or regulation relating to Hazardous Materials. The Site Assessments may be performed at any time or times, upon reasonable cause and with reasonable notice, and under reasonable conditions established by Borrower which do not impede the performance of the Site Assessments. The Site Reviewers are hereby authorized to enter upon the Property for such purposes. The Site Reviewers are further authorized to perform both above and below the ground testing for environmental damage or the

17

presence of Hazardous Materials on the Property and such other tests on the Property as may be reasonably necessary to conduct the Site Assessments in the opinion of the Site Reviewers. Borrower will supply to the Site Reviewers such historical and operational information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. On request, Lender shall make the results of such Site Assessments fully available to Borrower, which (prior to an Event of Default) may at Borrower's election participate under reasonable procedures in the direction of such Site Assessments and the description of tasks of the Site Reviewers. The cost of performing such Site Assessments shall be paid by Borrower upon demand of Lender and any such obligations shall be Indebtedness secured by this Deed of Trust. Lender's right to require such Site Assessment shall be for the sole purpose of protecting Lender's security for the repayment of the Indebtedness and shall not under any circumstances be construed as granting the right to participate or constitute participation by Lender in the management of the Property or the business conducted thereon. Lender shall provide Borrower true and correct copies of the reports of all Site Assessments of the Property performed by or for Lender promptly after such reports are delivered along with reliance letters in favor of Borrower with respect to all Site Assessments for which Lender expects Borrower to pay the cost.

(e)     Lender's Right to Remove Hazardous Materials. Lender shall have the right but not the obligation if Lender has reason to believe that the environmental condition of the Property may have changed, prior or subsequent to an Event of Default, without in any way limiting Lender's other rights and remedies under this Deed of Trust, to enter onto the Property or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Materials or Hazardous Materials Contamination on the Property following receipt of any notice from any Person asserting the existence of any Hazardous Materials or Hazardous Materials Contamination pertaining to the Property or any part thereof which, if true, could result in an order, suit, imposition of a Lien on the Property, or other action and/or which, in Lender's sole opinion, could jeopardize Lender's security under this Deed of Trust. All costs and expenses paid or incurred by Lender in the exercise of any such rights shall be Indebtedness secured by this Deed of Trust and shall be payable by Borrower upon demand. Lender's right to require such removal of Hazardous Materials shall be for the sole purpose of protecting Lender's security for the repayment of the Indebtedness and shall not under any circumstances be construed as granting the right to participate or constitute participation in the management of the Property or the business conducted thereon.

(f)     Survival. The provisions of Section shall survive the release, foreclosure or other enforcement of this Deed of Trust.

## Article 6
## Assignment of Rents

6.1     Present Assignment. For the consideration expressed in this Deed of Trust, the receipt and sufficiency of which is hereby acknowledged and confessed, Borrower hereby presently and unconditionally GRANS, BARGAINS, CONVEYS, ASSIGNS, TRANSFERS, and SETS OVER, unto Lender, a security interest in all of Borrower's right, title and interest in the Rents, whether now owned by Borrower or hereafter acquired and whether now existing of hereafter coming into existence, as security for the payment and performance of the indebtedness, and to provide a source of future payment of the indebtedness, it being the intention of Borrower and Lender that is conveyance be unconditional and presently and immediately effective. This Deed of Trust constitutes a security instrument under the Rents Act, below defined.

6.2     Definitions. For the purposes of this Article and this Deed of Trust generally, the following definitions shall have the meanings assigned.

     (a.)    **"Rents Act"** means Chapter 64 of the Texas Property Code, as amended from time to time, relating to assignment of rents to holders of certain security interest in real property, as the same may be amended from time to time.

     (b.)    **"Rents"** means all "Rents" as such term is defined in Section 64.001 of the Rents Act and all proceeds thereof, revenues, income, proceeds, profits, security and other types of deposits (after Borrower acquires title thereto), and other benefits paid or payable by parties to the Leases, other than Borrower, for using, leasing, licensing, possessing, operating from, residing in, selling, or otherwise enjoying all of any portion of the Property.

     (c.)    **"Leases"** means all present and future ground leases, space leases, subleases, master leases, licenses, concessions or other agreements or arrangements, whether written or oral, and all agreements for the use or occupancy of any portion of the Property, together with any and all extensions or renewals of said leases and agreements and any and all future leases or agreements upon or covering the use or occupancy of all or a part of the Property and all security and other deposits or payments made in connection therewith.

     6.3    Collection of Rents. Subject to the terms and provisions of this Article, Borrower may exercise and enjoy all incidents of the status of a lessor with respect to the Rents, including the right to collect, demand, sue for, attach, levy, recover, and receive the Rents, and to give proper receipts releases, and acquaintances therefor. Borrower shall receive all Rents, and to give proper receipts, releases, and acquaintances therefor. Borrower shall receive all Rents and will apply the Rents so collected first to the payment of the Indebtedness, next to the performance of the other obligation sunder the Loan Documents, and next to the payment of operating expenses. Thereafter, Borrower may use the balance of the Rents collected in any manner consistent with the Loan Documents. Neither this assignment nor the receipt of Rents by Lender (except to the extent, if any, that Lender actually receives and applies such Rents to the Indebtedness at Lender's election) shall effect a *pro tanto* payment of the Indebtedness. Lender shall not be deemed to have received Rents or to have applied Rents to the Indebtedness until the money is actually received by Lender at Lender's principal office set forth first above, or at such other place as Lender shall designate in writing. Lender shall not be required to apply Rents to the Indebtedness after foreclosure or any other transfer in lieu of foreclosure of all or any part of the Real Property to Lender or any third party.

     6.4    Upon Foreclosure. In the event of foreclosure of the lien of this Deed of Trust judicially or sale or otherwise, Lender shall be deemed to transfer and assign (without warranty or recourse, other than by or on behalf of Borrower) all of the Lender's rights under this Assignment without additional consideration to the purchaser at any such sale or to any other person entitled to the Property by virtue of foreclosure of the lien of this Deed of Trust; In the event of sale of less than all of the Property, Rents pertaining to the portion of the Property sold shall be deemed so transferred and assigned and the balance retained until sale of the remaining Property. There shall be no duty or liability to account to Borrower for any Rents accruing after the foreclosure of the lien of this Deed of Trust, nor prior to such foreclosure except as specifically herein in this Article 6 provided.

## Article 7
### Condemnation

     Lender shall be entitled to receive any and all sums which have or may become payable to Borrower for the condemnation of the Property, or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which have or may be awarded or become payable to Borrower for damages caused by public works or construction on or near the said Property. All such sums are hereby assigned to Lender, who may, after deducting therefrom all expenses actually incurred by Lender, including attorney's fees, release same to Borrower or apply the same to the reduction of the Indebtedness hereby secured (whether to matured or unmatured principal or to earned and unpaid interest or other earned and unpaid charges) as and in such manner as Lender may elect, with the balance, if any, after satisfaction of the Indebtedness, paid to Borrower, Borrower's heirs, or assigns or

whomsoever may be legally entitled thereto. Lender shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such sums. Without limitation of any other right of Lender, if the transaction subject of the Indebtedness described in 0 above is or includes a revolving or advancing credit, then Lender may as a condition to any further draws or advances on such credit require that any proceeds received under this paragraph or as a result of other casualty to the Property be pledged (in form and substance satisfactory to Lender) to Lender as additional and/or replacement collateral for the Indebtedness and not applied immediately to the repayment of principal Indebtedness if such principal may be drawn. *If no Event of Default has occurred and is continuing, and no event or condition, that but for notice or opportunity to cure would be an Event of Default, Lender will make available such proceeds to rebuild the Property under such conditions as Lender may reasonably impose.*

## Article 8
### Number; Successors and Assigns; Headings

If this Deed of Trust is executed by more than one person, the singular reference to Borrower (including pronouns) shall mean each and/or all and/or any of the persons who are Borrower. The obligations of Borrower hereunder (whenever more than one person is bound by the obligations and duties of Borrower) shall be joint and several. References to Borrower, if more than one, mean each and/or all of Borrower. All of the covenants and agreements herein undertaken to be performed by and the rights conferred upon the Borrower named herein shall be binding upon and inure to the benefit of not only said person but also said person's respective heirs, executors, administrators, grantees, successors and assigns. Paragraph or section or article headings used in this instrument are for convenience only and do not limit or restrict the contents of such paragraphs or sections or articles; references to a paragraph or section or article include all sections, paragraphs, sub-paragraphs or sub-sections, unless otherwise stated. Use of the terms herein, hereof or the like include this entire instrument and not merely the paragraph or section or article in which such term is used, unless otherwise specified. References herein to any gender shall include each other gender, unless otherwise specified; references to the singular shall include the plural and vice versa, unless otherwise specified. References to the Lender mean the herein named Lender and Lender's successors and assigns and any future owner and transferee or holder of the debt instruments described or referred to in Article 1. References to the Trustee include the herein named Trustee and any successor or substitute trustee appointed hereunder. The term "lien" includes security interests and assignments. The terms "including" or "include" shall be interpreted as if followed by the words "without limitation."

## Article 9
### Security Agreement

9.1    Perfection of Deed of Trust Lien.  By this instrument Borrower has fixed, created, and perfected a Deed of Trust lien upon and against the Property, inclusive of all goods which are or are to become fixtures thereon. By this instrument, Borrower hereby creates and grants to Lender, pursuant to the Uniform Commercial Code of Texas (U.C.C.), a security interest in and to the Property all of which, including replacements, substitutions, and additions thereto, and all proceeds thereof, shall be deemed to be and remain a part of the Property covered by this Deed of Trust.

9.2    Execution of Financing Statements.  Borrower shall execute and deliver to Lender all financing statements that may be required by Lender to establish and maintain the validity and priority of Lender's security interest, and Borrower shall bear all costs thereof, including all record searches reasonably required by Lender. Lender may file or record a financing statement reflecting its security interest in any or all of the Property recited in this Deed of Trust in any and/or all appropriate filing locations. If Lender should dispose of any of the Property under the U.C.C., ten (10) days written notice by Lender to Borrower shall be deemed to be reasonable notice; provided however, Lender may dispose

of all or any such Property in accordance with the real property foreclosure procedures of this Deed of Trust in lieu of proceeding under the U.C.C., or Lender may proceed under the U.C.C. as to any Property subject thereto in lieu of proceeding under the real property foreclosure provisions of this Deed of Trust.

9.3     Notice of Change of Name or Address. Borrower shall give advance notice in writing to Lender of any proposed change in Borrower's name, address, identity, general partners, or structure and shall execute and deliver to Lender, prior to or concurrently with the occurrence of any such change, all additional financing statements that Lender may require to establish and maintain the validity and priority of Lender's security interest with respect to any of the Property described or referred to herein.

9.4     Fixtures. Some of the items of the Property described herein are goods that are or are to become fixtures related to the Land or improvements thereon, and it is intended that, as to those goods, this Deed of Trust shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of the county in which the Land is situated.

9.5     Information Concerning Security Interest. Information concerning the security interest created by this instrument may be obtained from Lender, as secured party, at Lender's address as set forth above.

9.6     Property. The term Property as used in this Deed of Trust also includes the following, now owned or hereafter acquired by Borrower or in which Borrower now has or hereafter may acquire an interest:

(a.)     any and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used, in connection with the Real Property, including but not limited to: those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air, fire prevention and extinguishing apparatus, security and access control apparatus; plumbing and plumbing fixtures; refrigerating, cooking, and laundry equipment; floor coverings and interior and exterior window treatments; furniture and cabinets; interior and exterior paintings; and plant and lawn maintenance equipment;

(b.)     any and all plans and specifications for development of or construction of improvements upon the Real Property;

(c.)     any and all contracts and subcontracts relating to the Real Property;

(d.)     any and all rents, leases, licenses, use agreements, accounts, contract rights, instruments, documents, and general intangibles arising from or by virtue of any transactions related to the Real Property, including, without limitation, all leases, licenses, and rental or use agreements, and all receipts and income therefrom to the extent subject to the U.C.C.;

(e.)     all equivalent dwelling units ("EDUs") of sewer, water or wastewater capacity attributable to the Property and all of Borrower's right, title and interest in and to any existing or future Utility Services Agreement providing for water and/or sanitary sewer service, such EDUs and any water commitment of the applicable water or wastewater provider, together with all related impact fee credits, development benefits and rights, and other entitlements attributable to the Real Property and described above;

(f.)     any and all permits, franchises, certificates, and all other rights and privileges obtained in connection with the Real Property, including rights, allocations, taps, and connections; capital improvement contracts; utility construction agreements with municipal or other public utilities; regional detention rights; rights to refunds and reimbursements from any municipal utility district or other governmental (or quasi-governmental) authority; rights under any traffic phasing agreements or similar contracts; rights under preliminary plans, plats, and other development approvals; rights to receive or install water, wastewater, electricity, gas, telephone

telecommunications (including cable television, internet, ISDN & DSL lines, etc.), drainage, or other utilities or services; rights to build, construct, or install streets, driveways, or other access to the Real Property; rights under any declaration of covenants, conditions, and restrictions, including rights as declarant; and all other development rights, powers, privileges, options, or other benefits associated with, that pertain to, are attributable to, are appurtenant to, apply to, or which otherwise benefit the Real Property;

(g.)  any and all proceeds arising from or by virtue of the sale or other disposition of any of the Real Property;

(h.)  any and all proceeds payable or to be payable under each policy of insurance relating to the Real Property;

(i.)  any and all proceeds arising from the taking of all or a part of the Real Property or any public or quasi-public use under any law, or by any right of eminent domain, or by a private or other purchase in lieu thereof;

(j.)  all other interest of every kind and character which Borrower now has or at any time hereafter acquires in and to the Real Property; and

(k.)  all substitutions, additions, replacements of the Real Property and all proceeds (of whatever type) from any disposition of any of the Real Property;

## Article 10
## Conformity with Applicable Laws

10.1  Maximum Interest Rate. Notwithstanding anything herein or in any other documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness contained, all contracts and other agreements between Lender and Borrower (or any other obligor on the Indebtedness), now existing or hereafter arising, oral or written, including all such documents, instruments and agreements, are hereby expressly limited so that in no event or contingency whatsoever, shall the amount paid or to be paid to Lender, or contracted for, received, charged or collected by Lender which amounts are or constitute interest, ever exceed the highest rate allowed by the laws of the State of Texas (or applicable federal law, whichever shall provide for or permit the higher rate) on the Indebtedness hereby secured (or if different rates apply to different portions thereof, then each such portion shall be so restricted according to its respective applicable rate or rates) or on any money obligation hereunder and in no event shall Borrower (or any other obligor on the Indebtedness) be obligated to pay interest thereon in excess of such rate. The parties hereto stipulate that in the event any applicable law limiting the amount of interest or other charges permitted to be collected is interpreted so that any charge provided for in this Deed of Trust or in any other such documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness whether considered separately or together with other charges that are considered a part of this Deed of Trust or any other such documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness or any charge provided in any other part of the Indebtedness secured hereby, would violate such law by reason of the acceleration of any part of the Indebtedness secured hereby, or deduction to or the non-funding of principal, or demand, performance of covenants, restrictions on use of funds, escrow of funds, or compensating balance agreements, or for any other reason, such charge is ipso facto reduced to the extent necessary to eliminate such violation. In the event of acceleration of (or demand for) all or any part of the Indebtedness, such acceleration (or demand) shall not be deemed or interpreted to include unearned interest or unearned charges or principal that is not outstanding or otherwise owing, and any contrary interpretation is hereby waived and negated. In the event that a late charge is imposed on all or any part of the Indebtedness, then such late charge, to the extent deemed interest under applicable law, shall be limited and treated in accordance with this paragraph. The amounts of interest, if any, previously paid to Lender in excess of the amounts permitted by applicable law shall be applied by Lender to reduce the principal of the Indebtedness or, at Lender's

option, refunded to Borrower, Borrower's heirs or assigns, or to the obligors of the Indebtedness if other than Borrower. To the extent not prohibited by applicable law, determination of the legal maximum amount of interest shall at all times be made by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the applicable Indebtedness (including, unless prohibited by law, any extension or renewal periods thereof), all interest and late charges at any time contracted for, charged or received in connection with the Indebtedness so that the actual rate of interest is uniform throughout the term thereof. Any reference herein to a stated rate of interest (e.g. 18% per annum) shall be in all cases deemed to mean such rate or the highest lawful rate (whichever is the lesser).

10.2    If the enactment or expiration of applicable laws, rules or regulations has the effect of rendering any provision of this Deed of Trust or the documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness or any part thereof unenforceable or illegal according to their terms, this Deed of Trust or said documents, instruments or agreements, shall be deemed to be modified and amended to the minimum extent necessary to cure any such unenforceability or illegality. In addition, if any subsequently enacted law, rule or regulation applicable to this Deed of Trust or the documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness or any part thereof shall permit the charging of an interest rate higher than formerly permitted, then unless prohibited by law, said higher interest rate shall immediately be incorporated herein and therein by reference for all purposes of determining the maximum legal rate applicable hereto or thereto.

10.3    In the event that other charges or fees are imposed on or with respect to the Indebtedness or any part thereof that constitute interest under applicable law with regard to any transaction hereby secured, the contracted-for rate of interest with respect to such portion of the Indebtedness shall be deemed to be a rate that is the lesser of the specified rate in the applicable agreement adjusted by said charges or fees, or the maximum rate, if any, applicable to such transaction (any such charges having also been elsewhere in this paragraph reduced as necessary so as not to exceed such maximum rate, if any) for the purpose of calculating a contracted-for rate of interest as, if and to the extent required by applicable law.

10.4    Borrower agrees that the usury limit or ceiling applicable to the Indebtedness, or any part thereof, shall be at all times the highest allowed by applicable law; to the extent the documents, instruments or agreements evidencing, collateral to, or securing the Indebtedness, or any part thereof, contractually provide for a lesser rate or amount or maximum rate, such provisions shall be solely for the purpose of calculating and determining the Indebtedness from time to time owing, and shall not be deemed to establish a lower maximum rate for violation of which Lender would be subject to penalties for usury. Borrower agrees that should Lender charge, contract for or receive interest at a rate or amount that is greater than the agreed upon rate or amount, but less, after giving effect to this 0 and after applicable laws, than the highest lawful maximum rate or amount, Borrower's recourse (which shall to the maximum lawful extent, be Borrower's sole recourse) shall be to recover such difference from the then current transferee or holder of the Indebtedness.

## Article 11
## Event of Default

An "Event of Default" shall mean any of the following:

(a.)    any failure to pay in full, when and as due, any part of the Indebtedness beyond any (if any) applicable cure period provided in the Note;

(b.)    Event of Default established under 0, below, or any default under any Master Agreement or Hedge Agreement secured hereby;

(c.)    the bankruptcy or insolvency of, the filing of any voluntary petition in bankruptcy by, or the filing of any involuntary petition in bankruptcy against (as debtor), or the death of, Borrower (or any of them if more than one) or any primary obligor or guarantor of any part of the

Indebtedness, or the application for appointment of a receiver for any property of any such persons, or if Borrower (or any of them) or any primary obligor or guarantor of the Indebtedness is a corporation or partnership, then its dissolution or termination or any voluntary or involuntary application therefor;

(d.) the breach or violation of any term or covenant of any guaranty of any part of the Indebtedness and such breach of violation remains uncured for fifteen (15) days following Lender's giving of written notice to Borrower:

(e.) the occurrence of any default or acceleration or foreclosure under any document, instrument or agreement evidencing, collateral to, or secured by any prior or subordinate lien on the Property or any part thereof beyond any applicable cure period, or Borrower's default under any other debt owed by Borrower to Lender, beyond any applicable cure period; or

(f.) any material and/or adverse change in the condition, financial or otherwise, of the Borrower or any guarantor of any portion of the Indebtedness and such breach of violation remains uncured for fifteen (15) days following Lender's giving of written notice to Borrower:

(g.) except as provided above, any breach of, default under, or falsity of any warranty, representation, agreement, or covenant hereunder, or under any other instrument, agreement or document evidencing, collateral to or securing or guaranteeing any part of the Indebtedness or any falsity in any financial information provided by or on behalf of Borrower or any other obligor (on any part of the Indebtedness) to Lender; and such breach of violation remains uncured for fifteen (15) days following Lender's giving of written notice to Borrower:

Any reference in any other document, instrument or agreement to any breach or default or event of default hereunder shall be deemed to mean any one or more of the foregoing Events of Default. Notice to be given under this 0 shall be deemed given when mailed by certified mail, return receipt requested to the Borrower at Borrower's address set forth on the first page of this instrument, or when delivered by personal delivery to Borrower, effective upon mailing if mailed or upon receipt by Borrower if delivered.

## Article 12
### Defeasance

Should Borrower do and perform all of Borrower's obligations herein contained, and should prompt payment of the Indebtedness be made as the same shall become due and payable, and should Lender have no further obligations (howsoever conditioned) to make further advances or incur further undertakings to be secured hereby, then (but only then) this conveyance shall become null and void and of no further force and effect, and shall be released at the expense of Borrower by the Lender. An affidavit, certificate, letter, or statement of any officer, agent, or attorney of Lender indicating that any part of the Indebtedness remains unpaid or that Borrower's obligations remain unperformed or that Lender is obligated to advances or undertakings to be secured hereby shall be conclusive evidence of the continuing validity and effectiveness of this instrument and any person may, and is authorized to, rely thereon.

## Article 13
### Special Provisions

13.1 Due On Sale. It shall be an Event of Default under this Deed of Trust if all or any part of the Property (other than obsolete or worn personal property replaced by substitutes of equal or greater

value and function than the replaced items when new and if subject to the lien hereof in the same priority as the item replaced) shall be leased, sold, transferred or otherwise disposed of, or if title thereto shall become vested in any party other than Borrower whether by operation of law or otherwise unless prior written notice is provided to Lender and provision is made to pay Lender in full at the closing of any such transaction. Lender may, in Lender's sole discretion, waive this Event of Default, but Lender shall have no obligation to do so, and any waiver may be conditioned upon (to the maximum lawful extent) such one or more of the following which Lender may require: the grantee's or transferee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender in Lender's sole judgment, and grantee or transferee executing, prior to such sale or transfer, a written assumption agreement containing such terms as Lender may require, a principal paydown on the Indebtedness, an increase in the rate of interest payable under the Indebtedness, a transfer fee, any other expenses incurred by Lender (including attorneys' fees) and any other modification of the documents, instruments or agreements evidencing, collateral to or securing the Indebtedness as Lender may require.

13.2     Purpose. Borrower expressly represents that this Deed of Trust and the Note hereby secured are given for the following purpose, to-wit:

The Note hereby secured represents funds advanced or to be advanced by Lender to Borrower at Borrower's special instance and request. Borrower and Lender specifically agree that Chapter 346 of the Texas Finance Code, and other consumer credit provisions of such Code, shall not apply to the Note or any such advances; the Note does not permit the re-advancing of repaid principal and is not intended as a revolving credit.

13.3     Not Homestead. Borrower expressly represents that the Property forms no part of any property owned, used or claimed by Borrower (or any of them, if more than one) as exempted from forced sale under the Constitution or laws of the State of Texas, and Borrower renounces all and every claim thereto under Constitution or any such law or laws. Borrower stipulates that this is a material representation made by Borrower and that but for such representation Lender would not have accepted the Note and agreed to the loan or extension of credit evidenced hereby.

13.4     Business Purpose. Borrower warrants and covenants that the Note is given for Borrower's business and investment purposes and not for personal, family or household use, or agricultural use.

13.5     Land Use. Borrower covenants to comply timely and fully with all applicable statutes, regulations, laws and ordinances pertaining to the development, platting, subdivision, regulation, pre-sale or sale of the Property and/or any lots created therefrom, including, without limitation, the Interstate Land Sales Full Disclosure Act as such Act may be applicable to Borrower's proposed development; provided however, nothing in the foregoing clause shall be interpreted to waive any provisions of this instrument, including, without limitation, any "due-on-sale" provision. Borrower acknowledges that Lender is not a co-developer of, or co-venturer in, the Property with Borrower nor is Lender an affiliate of Borrower; the relationship of Borrower and Lender is strictly that of debtor and creditor.

13.6     Authority. Borrower and the person(s) executing this instrument for Borrower warrant to Lender that Borrower has, and has exercised, all power and authority, and taken all actions, necessary to execute and deliver this instrument and all other instruments, documents, and agreements purportedly executed by Borrower in connection with the Indebtedness, and that this instrument and all such other documents, instruments and agreements are valid and binding agreements enforceable against Borrower in accordance with their respective terms, and that the person(s) executing this instrument and all such other documents, instruments and agreements on behalf of Borrower has full power and authority to so act.

13.7     Costs and Expenses. Borrower shall pay Lender, on demand (on which date the same shall be due and payable), all costs and expenses incurred at any time by Lender in negotiating, defending, perfecting, enforcing, or effecting compliance with this Deed of Trust, the Note, or the other Loan Documents, or incurred at any time by Lender in connection with any title policy and endorsement

premiums and fees, inspection fees, recordation fees, appraisal fees, test appraisal (including appraisals required by applicable agencies or examiners with authority over Lender) or reappraisal fees, taxes, fees and expenses of Lender's counsel, insurance premiums, filing and recording fees, taxes, brokerage fees and commissions, abstract fees, title search or examination fees, uniform commercial code search fees, escrow fees, reasonable attorneys' fees, architect fees, construction consultant fees, environmental inspection fees, survey fees, and all other out-of-pocket costs and expenses of every character incurred by Borrower and/or Lender and/or Trustee related in any way to the Note or other Loan documents, all except as prohibited by law. If Lender shall expend any money chargeable to Borrower or subject to reimbursement by Borrower under the terms of the Loan Documents, Borrower shall repay the same to Lender immediately at the place where the Note is payable, together with interest thereon at the Default Rate from and after the date of each such expenditure by Lender until paid by Borrower.

13.8    Contracts for Sale. Borrower covenants not to enter into any option agreement, easement, right of way, restriction agreement, or right of first refusal, , with respect to the Property or any part thereof, without the prior written consent of Lender which shall not be unreasonably withheld and may not be withheld in the event that provision is made to pay Lender in full at the closing of any such sale. (subject however to the prohibition on prepayment in the Promissory Note).

13.9    Change in Borrower. If Borrower is not (or any of Borrower, if more than one, is not) a natural person, then Borrower further covenants not to permit or suffer the sale, transfer or other disposition of any equity, voting, ownership or other interest in Borrower (or any of them or any component entity at any level) without the prior written consent of Lender.

EXECUTED as of the date first above set forth.

BLACK DUCK PROPERTIES, LLC,
a Texas Limited Liability Company

By: _Jany M. Wright_
Larry M. Wright, Manager

(ACKNOWLEDGMENT)

STATE OF TEXAS            §
                          §
COUNTY OF BEXAR           §

_January 13, 18_
This instrument was acknowledged before me on ~~August 14, 2017,~~ by Larry M. Wright, Manager of BLACK DUCK PROPERTIES, LLC, a Texas Limited Liability Company, on behalf of said limited liability company.

_Shuey L George_
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Granstaff Gaedke & Edgmon, PC
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229

TRACY L. GEORGE
Notary Public-State of Texas
Notary ID #12896431-6
Commission Exp. APRIL 20, 2020

26

## SCHEDULE OF PERMITTED EXCEPTIONS

1.   None.

EXHIBIT "A" FOLLOWS



33 PGS   2017002756
CO



NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL
PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE
FOLLOWING INFORMATION FROM ANY (THIS) INSTRUMENT THAT
TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR
RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER
OR YOUR DRIVER'S LICENSE NUMBER

## DEED, CONVEYANCE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS THAT:

I.

THE EXPRESS GAS PIPELINE, LP, a limited partnership organized and
existing under the laws of the State of Texas, with its principal office at 6034 West
Courtyard Drive, Suite 205, Austin, Texas 78730 (hereinafter sometimes called
"Express"), acting by and through its sole general partner The Express Pipeline
Connection, LLC and in consideration of the sum of Ten and No/100 Dollars ($10.00)
cash and other good and valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, has sold, transferred, assigned, and by these presents does bargain,
sell, transfer assign, convey, and deliver unto BLACK DUCK PROPERTIES, LLC with
its principal office at 410 Spyglass Road, McQueeney, Texas 78123, all of the following
described pipeline system and related facilities (the P-21 Pipeline), rights-of-way,
easements and permits, leases, and other rights and properties described herein situated in
the State of Texas, that Express acquired by Deed, Conveyance and Assignment from TE
Products Pipeline Company, Limited Partnership (TEPCO) to Lancer Resources
Company recorded at Volume 742, page 72 of the Real Property Records, Shelby County,
Texas; at Volume 824, page 29 of the Real Property Records of Nacogdoches, Texas;
and at Volume 889, page 40 of the Official Public Records of Angelina County, Texas
and by Correction Deed, Conveyance and Assignment from Lancer Resources, L.P., a
Limited Partnership to The Express Gas Pipeline, LP, a Limited Partnership, recorded as
document number 2009-00252651 of the Official Public Records of Angelina County,
Texas; recorded as document number 133189 recorded in Volume 3001, page 80 of the
Real Property Records of Nacogdoches County, Texas; at Volume 2911, page 596 of the
Real Property Records of Rusk County, Texas; and as document number 2009000958 of
the Real Property Records, Shelby County, Texas, (collectively herein referred to as the
"Express Pipeline"); to-wit:

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017.  Jennifer L. Fountain, County Clerk

Deputy

## PIPELINE SYSTEM AND RELATED FACILITIES

All of the following described pipelines, taps and other facilities owned by Express Pipeline:

1. Approximately 64.97 miles (more or less) of 8" nominal outside diameter pipeline and appurtenances that is located generally as set forth in the immediately following paragraph 2 and is depicted on the line drawing attached as Exhibit "A" and by this reference made a part hereof.

2. 8" PIPELINE FROM LUFKIN TO TEXAS/LOUISANA STATE LINE

COMMENCING at a point within Gulf Refining Company's Lufkin Station Site in the Vincinti Mitchell Survey, Angelina County, Texas, as described by easement, recorded in Volume 236, Page 584, of the Deed Records of said County and State;

THENCE running generally in a northeasterly direction in Angelina County, Texas, a distance of approximately 2.39 miles to a point on the West Bank of the Angelina River on property now or formerly owned by Mrs. W. E. Massengill in the Goguett Survey, as described by the easement recorded in Volume 63, Page 160, of the Deed records of said County;

THENCE crossing the Angelina River in an easterly direction, leaving Angelina County, Texas and entering Nacogdoches County, Texas, to a point on the East Bank of said Angelina River on property now or formerly owned by Mrs. S. C. Parrott, et. Al., as described by easement recorded in Volume 74, Page 107, of the Deed Records of said Nacogdoches County;

THENCE running generally in a northeasterly direction across Nacogdoches County, Texas, a distance of approximately 30 miles to a point on the County line between Nacogdoches and Rusk Counties, Texas and on the north line of property now or formerly owned by J. Kelly as described by easement recorded in Volume 74, Page 38, of the Deed Records of Nacogdoches County, Texas;

THENCE entering Rusk County, Texas at a point on the south line of property now or formerly owned by Spencer Eliot Brick Company, as described by easement recorded in Volume 67, Page 183, of the Deed Records of Rusk County, Texas;

THENCE running generally in a northeasterly direction across Rusk County, Texas, a distance of approximately 6.46 miles to a point on the West Bank of the Attoyac River on property now or formerly owned by

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk/ _____ Deputy

Mrs. M. L. Moore, as described by easement recorded in Volume 67, page 130, of the Deed Records of Rusk County, Texas;

THENCE crossing the Attoyac River, leaving Rusk County, Texas and entering Shelby County, Texas, to a point on the East Bank of said Attoyac River.

THENCE entering Shelby County, Texas at a point on the south or west line of property now or formerly owned by Gulf Refining Company as described by easement recorded in Volume 381, Page 347 of the Deed Records of Shelby County, Texas;

THENCE continuing in an easterly direction to property now or formerly owned by Texas Eastern Transmission Corporation as described in Deed recorded in Volume 381, Page 344 of the Deed Records of Shelby County, Texas;

COMMENCING at a point on the south or west line of property now or formerly owned by J. M. Whiteside, as described by easement recorded in Volume 79, Page 543, of the Deed Records of Shelby County, Texas;

THENCE running generally in an easterly direction across Shelby County, Texas, a distance of approximately 28 miles to a point on the West Bank of the Sabine River on property now or formerly owned by J. T. Caldwell as described by easement recorded in Volume 131, Page 497, of the Deed Records of Shelby County, Texas.

## RIGHTS-OF-WAY, EASEMENTS AND PERMITS

All rights-of-way, easements, permits, privileges, grants and consents of Express for the construction, laying, maintenance, operation and removal of pipeline facilities in the State of Texas as set forth on Exhibits "B-1" through "B-6" attached hereto and by this reference made a part hereof.

II.

TO HAVE AND TO HOLD all of the above-described premises, rights and properties, together with all and singular the rights, privileges, hereditaments and appurtenances belonging to or in any way appertaining to any or all of the premises, rights or properties hereinabove described and conveyed, unto Black Duck Properties, LLC, its successors and assigns forever; and The Express Gas Pipeline, LP, does hereby bind itself and its successors to warrant specially and forever defend the same unto said Black Duck Properties, LLC, its successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof, by, through or under The Express Gas Pipeline, LP, but not otherwise. This Deed, Conveyance and Assignment and all conveyances and transfers hereunder shall be subject to all liens, mortgages, taxes

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

COURT OF SHELBY

(except ad valorem taxes) restrictions, leases (both surface use; and oil, gas and mineral leases), easements, rights-of-way, licenses, exceptions, reservations, outstanding interests and other conditions of title or encumbrances of whatever nature, to the extent such matters are of record in Angelina, Nacogdoches, Rusk and Shelby Counties, in Texas and to all matters that are a current survey or visual inspection would reflect.

III.

The Express Pipeline is hereby sold, transferred, assigned, conveyed and delivered to Black Duck Properties, LLC without recourse (even as to the return of the purchase price), and without covenant or warranty of any kind, express, implied, or statutory except as otherwise provided in said Purchase Agreement. WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEEDING SENTENCE AND IN ADDITION TO ANY DISCLAIMERS SET FORTH IN THE PURCHASE AND SALE AGREEMENT, THE EXPRESS GAS PIPELINE, LP HEREBY (i) EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OF ANY WARRANTY, EXPRESS, IMPLIED AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION, PURPOSE, DESIGN, QUALITY, PERFORMANCE, EXISTENCE, CLASS, CERTIFICATE, MAINTENANCE, SPECIFICATION, ABSENCE OF LATENT DEFECTS, OR ANY OTHER MATTER WHATSOEVER OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OR OF FITNESS FOR A PARTICULAR PURPOSE) OR (B) ANY INFRINGEMENT BY THE EXPRESS GAS PIPELINE, LP OR ANY OF ITS AFFILIATES ON ANY PATENT OR PROPERTY RIGHT OF ANY THIRD PARTY; AND (ii) NEGATES ANY RIGHTS OF BLACK DUCK PROPERTIES, LLC UNDER STATUTES OR AT COMMON LAW TO CLAIM DIMINUTION OF CONSIDERATION AND ANY CLAIMS BY BLACK DUCK PROPERTIES, LLC FOR DAMAGES BECAUSE OF REDHIBITORY VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN, IT BEING THE INTENTION OF BLACK DUCK PROPERTIES, LLC AND THE EXPRESS GAS PIPELINE, LP THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR OR DISREPAIR.

IV.

IN WITNESS WHEREOF, this Deed, Conveyance and Assignment is being executed in counterparts, all of which are identical, on the dates shown below, but effective as of 7:00 a.m. of the 14th day of August, 2017. Each of such counterparts shall for all purposes be deemed to be an original, provided all of such counterparts shall together constitute but one of the same instrument.

4

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

*t*

"EXPRESS"
THE EXPRESS GAS PIPELINE, L.P.
By THE EXPRESS PIPELINE
CONNECTION, L.L.C., General Partner

By: Rod C. Roberts, President of The
Express Pipeline Connection, L.L.C

STATE OF TEXAS     §

    §

COUNTY OF Travis     §

   This instrument was acknowledged before me on the 14th day of August, 2017, by Rod C. Roberts, the President of The Express Pipeline Connection, L.L.C., a Texas Limited Liability Company, the General Partner of The Express Gas Pipeline, L.P. a Texas Limited Partnership, on behalf of said companies.

Notary Public in and for the State of Texas

Anna Bodine

ANNA BODINE
Notary Public, State of Texas
My Commission Expires
April 18, 2019

5

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk



BLACK DUCK PROPERTIES, L.L.C.

By: Larry M. Wright
Title: Manager

STATE OF TEXAS        §
                      §
COUNTY OF BEXAR       §

This instrument was acknowledged before me on the 11th day of
August_____, 2017, by Larry M. Wright, Manager of Black Duck
Properties, L.L.C., a Texas limited liability company, on behalf of said limited liability
company.

> JOHN MARK EDGMON
> Notary Public State of Texas
> My Comm. Exp. 12/2/2020
> Notary ID 1070702-3

Notary Public in and for the State of Texas

6

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

**EXHIBIT "A"**

Attached hereto and made a part of that certain
Deed, Conveyance and Assignment dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L Fountain, County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 02/03/13 | Van J. Smith | Gulf Pipe Line Co. | 81 | 7 |
| 01/27/14 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 79 | 582 |
| 01/28/14 | D.D. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 609 |
| 01/28/14 | I.E. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 597 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | Bridie Carter, et vir. | Gulf Pipe Line Co. | 79 | 592 |
| 01/28/14 | Mrs. W.J. Cockrell | Gulf Pipe Line Co. | 79 | 593 |
| 01/28/14 | J.R. Joplin, et ux. | Gulf Pipe Line Co. | 79 | 574 |
| 01/28/14 | Ralph Jopling, et ux. | Gulf Pipe Line Co. | 81 | 19 |
| 01/28/14 | J.D. Majors, et ux. | Gulf Pipe Line Co. | 81 | 27 |
| 01/28/14 | J.W. Majors | Gulf Pipe Line Co. | 81 | 14 |
| 01/28/14 | A.W. Mathews, et ux. | Gulf Pipe Line Co. | 81 | 24 |
| 01/18/14 | W.R. Rains | Gulf Pipe Line Co. | 79 | 595 |
| 01/29/14 | Luke Motley | Gulf Pipe Line Co. | 81 | 8 |
| 01/29/14 | J.L. Norman | Gulf Pipe Line Co. | 81 | 18 |
| 01/29/14 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. | 79 | 596 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/29/14 | John Turner, et us. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/31/14 | J.H. Hughes | Gulf Pipe Line Co. | 79 | 562 |
| 01/31/14 | J.R. Lewis | Gulf Pipe Line Co. | 79 | 576 |
| 02/02/14 | Charles F. Flakes | Gulf Pipe Line Co. | 79 | 607 |
| 02/02/14 | W.E. Parker | Gulf Pipe Line Co. | 81 | 16 |
| 02/02/14 | W.W. Rider, et ux. | Gulf Pipe Line Co. | 81 | 21 |
| 02/02/14 | J.H. Wall | Gulf Pipe Line Co. | 79 | 605 |
| 02/02/14 | Ben B. White, et ux. | Gulf Pipe Line Co. | 79 | 573 |
| 02/02/14 | W.D. White, et ux. | Gulf Pipe Line Co. | 79 | 598 |
| 02/03/14 | Luis Hooper, et al. | Gulf Pipe Line Co. | 79 | 579 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | C. Riley, et ux. | Gulf Pipe Line Co. | 79 | 611 |
| 02/03/14 | Jno. A. White, et ux. | Gulf Pipe Line Co. | 79 | 571 |
| 02/04/14 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. | 79 | 578 |
| 02/04/14 | John Kyle, et ux. | Gulf Pipe Line Co. | 79 | 563 |
| 02/04/14 | J.R. Weir | Gulf Pipe Line Co. | 79 | 568 |
| 02/05/14 | C.C. Hayden | Gulf Pipe Line Co. | 79 | 576 |
| 02/06/14 | W.L. Foster, et ux. | Gulf Pipe Line Co. | 79 | 572 |
| 02/06/14 | C.M. Horton, et ux. | Gulf Pipe Line Co. | 79 | 565 |
| 02/06/14 | O.M. Ramsey, et al. | Gulf Pipe Line Co. | 79 | 599 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-1"
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/06/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
| 02/07/14 | F.M Bridwell, et al. | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux. | Gulf Pipe Line Co. | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co. | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 6 |
| 02/10/14 | Henry Sears, et ux. | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co. | 79 | 553 |
| 02/11/14 | J.M. Whiteside | Gulf Pipe Line Co. | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 79 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux. | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co. | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux. | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll, Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co. | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux. | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zach Brinson | Gulf Pipe Line Co. | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux. | Gulf Pipe Line Co. | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.L. Gilbert, et ux. | Gulf Pipe Line Co. | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co. | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux. | Gulf Pipe Line Co. | 79 | 544 |
| 02/18/14 | R.A. Whddon, et ux. | Gulf Pipe Line Co. | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 584 |

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. | 79 | 551 |
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A. Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux. | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W.F. Taley, et ux. | Gulf Pipe Line Co. | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux. | Gulf Pipe Line Co. | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 588 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I W Williams | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux. | Gulf Pipe Line Co. | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Andrews, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 446 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co. and Gulf Production Co | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L Fountain, County Clerk

Rachelle Latham
Deputy

### EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

|  |  | and Gulf Production Co. |  |  |
|---|---|---|---|---|
| 07/10/24 | W.M. Byrn | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 459 |
| 07/10/24 | G.W Crenshaw. et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 448 |
| 07/10/24 | J.H. Cruger, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 445 |
| 07/10/24 | Mrs. F.D. Haden | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 462 |
| 07/10/24 | C.O. Worsham. et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 442 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F. H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux | Gulf Pipe Line Co and Gulf Production Co. | 124 | 452 |
| 07/11/24 | John Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 450 |
| 07/11/24 | Phil Bussy Jr.. et ux. | Gulf Pipe Line Co. and Gulf Production Co | 124 | 455 |
| 07/11/24 | J.G. Ellington | Gulf Pipe Line Co. and Gulf Production Co | 124 | 437 |
| 07/11/24 | F.O. Johnson | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 460 |
| 07/11/24 | I.N. Williams | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 449 |
| 07/14/24 | E.W. Cockrell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est. | Gulf Pipe Line Co and Gulf Production Co. | 124 | 481 |
| 07/14/24 | T.A. King | Gulf Pipe Line Co. | 124 | 478 |

4

I do her by certify this to be a true copy of the attached document filed and recorded in Shelby County, Texas as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk _____ Deputy

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | and Gulf Production Co. | | |
|---|---|---|---|---|
| 07/14/24 | Ima Odom Nutt, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.O Sholar | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 483 |
| 07/16/24 | W.R. Crawford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 496 |
| 07/21/24 | Mack Jones, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W.A Cooper | Gulf Pipe Line Co. | 124 | 520 |

5



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | and Gulf Production Co. |  |  |
| 10/14/24 | Pierce Whiteside, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 123 | 832 |
| 04/30/25 | J.A. Deaton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 506 |
| 04/30/25 | Claude E. Fallin | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 52 |
| 04/30/25 | Alvin Gunter | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 503 |
| 04/30/25 | J.R. Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 55 |
| 04/30/25 | J.N. Majors | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 54 |
| 04/30/25 | C.C. McDonald | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 56 |
| 04/30/25 | Grover C. Peddy | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 500 |
| 04/30/25 | C. Riley, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 502 |
| 04/30/25 | F.B Taylor | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 504 |
| 04/30/25 | J.R. Weir, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 141 |
| 05/01/25 | Mrs. W. A. Bou and by J.L. Davis, Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 568 |
| 05/01/25 | Cicero Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 552 |
| 05/01/25 | J. N. King | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 62 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. | 127 | 187 |

6

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

|          |                                   | and Gulf Production Co.                         |     |     |
|----------|-----------------------------------|-------------------------------------------------|-----|-----|
|          |                                   | Gulf Pipe Line Co. and Gulf Production Co.      |     |     |
| 05/01/25 | Luke Motley                       | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 569 |
| 05/01/25 | Luke Motley                       | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 569 |
| 05/01/25 | Luke Motley                       | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 569 |
| 05/01/25 | Robert Porter                     | Gulf Pipe Line Co. and Gulf Production Co.      | 127 | 61  |
| 05/01/25 | Walter Scates, et ux.             | Gulf Pipe Line Co. and Gulf Production Co.      | 127 | 63  |
| 05/01/25 | A.H. Womack, et ux.               | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux.               | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 556 |
| 05/02/25 | H. Bryant, et al.                 | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 562 |
| 05/02/25 | Harvey Crawford                   | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 364 |
| 05/02/25 | John Davis                        | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn.  | Gulf Pipe Line Co. and Gulf Production Co.      | 127 | 60  |
| 05/02/25 | J.R. Foster, et ux.               | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster                  | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux.               | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 600 |
| 05/02/25 | J.R. Lewis                        | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 555 |
| 05/02/25 | Luke Motley                       | Gulf Pipe Line Co. and Gulf Production Co.      | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux.                 | Gulf Pipe Line Co.                              | 126 | 559 |

7



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

|  |  | and Gulf Production Co. |  |  |
|---|---|---|---|---|
|  |  | Gulf Pipe Line Co. and Gulf Production Co. |  |  |
| 05/02/25 | Mrs. O.M. Ramsey | Co. | 126 | 563 |
| 05/04/25 | C.H. Horton, et.ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 539· |
| 05/04/25 | Elbert B. Samford by E.B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E.B. Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A. Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 529 |
| 05/05/25 | W.J. Walker, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 533 |

8

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L Fountain County Clerk

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B Goff, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 189 |
| 05/27/25 | Mary White, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 216 |
| 07/31/25 | Robert Spivey | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola RushingA.O. Whiddon, Agent & Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/31/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 503 |
| 09/23/25 | Mrs. M. Lochabay | Gulf Pipe Line Co and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 05/04/48 | L.B. Dean | Gulf Refining Co. | 276 | 615 |

9

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-1"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Shelby County, Texas

|          |                                           | and Gulf Oil Corp.                           |     |     |
|----------|-------------------------------------------|----------------------------------------------|-----|-----|
|          |                                           | Gulf Refining Co. and Gulf Oil Corp.         |     |     |
| 05/04/48 | C.H. Horton, et ux.                       | Gulf Refining Co. and Gulf Oil Corp.         | 276 | 616 |
| 05/04/48 | R.W. Todd                                 | Gulf Refining Co. and Gulf Oil Corp.         | 276 | 617 |
| 05/06/48 | J.R. Anderson                             | Gulf Refining Co. and Gulf Oil Corp.         | 277 | 329 |
| 11/09/51 | Earl Hanson, et al.                       | Gulf Refining Co                             | 306 | 192 |
| 06/10/52 | M.E. Bowlin, et ux.                       | Gulf Refining Co. and Gulf Oil Corp.         | 311 | 258 |
| 06/10/52 | H.Q. Hoard, et ux.                        | Gulf Refining Co. and Gulf Oil Corp.         | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept.                          | Texas Eastern Transmission Corp.             |     |     |
| 04/20/55 | Texas Hwy. Dept.                          | Texas Eastern Transmission Corp.             |     |     |
| 04/20/55 | Texas Hwy. Dept.                          | Texas Eastern Transmission Corp.             |     |     |
| 11/02/59 | Gulf Refining Co.                         | Texas Eastern Transmission Corp.             | 381 | 347 |
| 12/18/59 | Gulf, Colorado& Sante Fe R.R. Co and Gulf Refining Co. | Texas Eastern Transmission Corp.  |     |     |
| 09/29/71 | Texas Hwy. Dept.                          | Texas Eastern Transmission Corp.             |     |     |

10

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-2"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Rusk County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/08/54 | Ruby L. Dumas, et vir | Texas Eastern Transmission Corp. | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp. | | |
| 06/27/10 | J.A. Anderson, et ux. | Gulf Pipe Line Co. | 67 | 150 |
| 06/27/10 | M.J. Barton, et ux. | Gulf Pipe Line Co. | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux. | Gulf Pipe Line Co. | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux. | Gulf Pipe Line Co. | 67 | 144 |
| 06/27/10 | F L. Hudgins, et ux. | Gulf Pipe Line Co. | 67 | 136 |
| 06/27/10 | J.R. Latimer, et ux. | Gulf Pipe Line Co. | 67 | 142 |
| 06/27/10 | S M. Moore, et ux. | Gulf Pipe Line Co. | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al. | Gulf Pipe Line Co. | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co. | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co. | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co. | 67 | 182 |
| 11/16/10 | E.A. Blount | Gulf Pipe Line Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co. | 1677 | 111 |
| 05/01/14 | Mrs M.L. Moore | Gulf Pipe Line Co. | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 629 |
| 07/03/24 | T.S. Barton. et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 614 |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co & Gulf Production Co | 123 | 618 |
| 07/03/24 | J.R. Latimer, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co & Gulf Oil Co | 360 | 190 |



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017  Jennifer L. Fountain, County Clerk

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J.W. Hartt et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Mellon, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay , | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux. | Gulf Pipeline Co. | 72 | 642 |
| 06/28/10 | Mrs. M.I. Strode | Gulf Pipeline Co. | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S W. Hunt, et ux. | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al. | Gulf Pipeline Co. | 75 | 73 |
| 06/29/10 | J.L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W. Boyd, et ux. | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Burns, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T.J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M. Richards, et ux. | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartt, et ux. | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co | 72 | 634 |
| 07/04/19 | S.C. Parrott, et al. | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca. et ux. | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T. Supulvado, et ux. | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M. Peterson, et ux. | Gulf Pipeline Co. | 74 | 17 |
| 07/08/10 | Tom Hinjcsa, et ux. | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al. | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co | 72 | 633 |
| 07/18/10 | Elareo Cordova, et ux. | Gulf Pipeline Co | 74 | 29 |
| 07/18/10 | J.H. Summers | Gulf Pipeline Co | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co. | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A M. Evans, et ux. | Gulf Pipeline Co. | 74 | 13 |
| | | | | |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co. | 72 | 630 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co. | 72 | 629 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co. | 74 | 6 |

1

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14ᵗʰ day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/20/10 | Mrs. Antonia Manchaca, et al. | Gulf Pipeline Co. | 74 | 33 |
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co | 90 | 429 |
| 07/20/10 | Moses Tims, et ux. | Gulf Pipeline Co. | 74 | 27 |
| 07/20/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 74 | 101 |
| 07/21/10 | Jessie Greer | Gulf Pipeline Co. | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al. | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al | Gulf Pipeline Co. | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux. | Gulf Pipeline Co. | 74 | 123 |
| 08/27/10 | Geo. S. McCarty. Ind. And as Gdn. | Gulf Pipeline Co. | 749 | 238 |
| 08/27/10 | Mrs. M. I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipeline Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipeline Co. | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipeline Co. | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipeline Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co. | 75 | 447 |
| 02/27/14 | S C. Parrott, et al. | Gulf Pipeline Co. | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Strode | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co. | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co. | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson. et al. | Gulf Pipeline Co. | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipeline Co. | 82 | 426 |
| 03/04/14 | W. G. Aartt | Gulf Pipeline Co. | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 85 | 52 |
| 03/05/14 | Alex Fears, et ux. | Gulf Pipeline Co. | 85 | 62 |

2



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk    Machelle Latham
                                                                                                Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| 03/05/14 | W.H. Hollis, et ux. | Gulf Pipeline Co. | 82 | 405 |
|---|---|---|---|---|
| 03/05/14 | Moses Tims, et ux. | Gulf Pipeline Co. | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux. | Gulf Pipeline Co. | 82 | 433 |
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 56 |
| 04/06/14 | Mrs. S.C. Parrott | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | G.W. Tillery, Jr. | Gulf Pipeline Co. | 85 | 58 |
| 04/09/14 | Don Ceasar BeBiazzeon | Gulf Pipeline Co. | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co. | 82 | 386 |
| 05/09/14 | Tom Hinjosa, et ux | Gulf Pipeline Co. | 82 | 404 |
| 06/23/24 | C.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 601 |
| 06/23/24 | Mrs. M.I. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 600 |
| 06/30/24 | A.B Crawford | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 110 | 621 |
| 06/30/24 | Marl Melton | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartl, Ind. and as Attorney in fact | Gulf Pipe Line Co & Gulf Production Co. | 110 | 619 |

3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
|---|---|---|---|---|
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co & Gulf Production Co. | 112 | 13 |
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B. Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D.M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mullins, Ind. et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al. | Gulf Pipe Line Co. & Gulf Production Co | 112 | 81 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co | 114 | 130 |

4



I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L Fountain, County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 04/28/25 | G.W. Tilery, Jr., | Gulf Pipe Line Co & Gulf Production Co. | 114 | 131 |
| 04/29/25 | Mrs. F.W. Halacher | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 168 |
| 05/07/25 | L.L. Martin , et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 191 |
| 05/08/25 | Mrs A.L. Ramsey, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 206 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 165 |
| 05/11/25 | J.M. Miller, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 171 |
| 05/11/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co & Gulf Production Co. | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 193 |

5

I do here by certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| 05/12/25 | Mrs. W.V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
|---|---|---|---|---|
| 05/12/25 | L.B. Mast, et al. | Gulf Pipe Line Co & Gulf Production Co. | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III  John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |
| 05/12/25 | J.T. Smith, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/25 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T. McNess | Gulf Pipe Line Co & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, at al | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 227 |
| 05/15/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 216 |
| 05/15/25 | G. W Falkner, | Gulf Pipe Line Co. & Gulf Production Co | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor  et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By: | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/25 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |

6

I do her by certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS  August 15, 2017.  Jennifer L. Fountain, County Clerk

_Machelle Latham_
Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/25 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
| 05/29/25 | Alex Fears. et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 326 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co & Gulf Production Co. | 114 | 335 |
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co & Gulf Production Co. | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C H. Muckelroy. et ux. | Gulf Pipe Line Co & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 371 |
| 08/21/25 | J.D. Skeeters | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co & Gulf Production Co. | 117 | 241 |
| 05/09/28 | Mrs. A. L. Ramsey, Gdn., et al. | Gulf Pipe Line Co | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co & Gulf Production Co. | 122 | 234 |
| 09/10/29 | J.H. Franklin. et al. | Gulf Pipe Line Co & Gulf Production Co. | 126 | 52 |

7

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain. County Clerk

Deputy

## EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gus Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 11/27/34 | Rosa Prince, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 138 | 306 |
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 527 |
| 06/03/42 | Dock Sexton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos.E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 520 |
| 06/04/42 | W.F. Greer, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |
| 06/04/42 | L. B. Masl et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/28/42 | J. R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 160 | 323 |
| 05/24/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/08/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp | | N/R |
| 12/18/64 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 01/17/69 | Texas Eastern Transmission | E.W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp. | 404 | 254 |

8

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

### EXHIBIT "B-3"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

#### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/81 | Lenvel Standland, et al | Texas Eastern Transmission Corp. | 465 | 124 |
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp. | 485 | 200 |

9

I do her eby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

## EXHIBIT "B-4"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co. | 30 | 421 |
| 07/02/10 | M.A. Modissett et. al. | Gulf Pipe Line Co | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co. | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co | 35 | 678 |
| 02/27/14 | M.A. Modissett. et. al. | Gulf Pipe Line Co | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co. | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co. | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 158 |
| 04/29/25 | J.C Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 175 |
| 06/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/29/50 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 236 | 584 |

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

**EXHIBIT "B-5"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### EXCEPTIONS AS NOTED
### IN 1992 TEPCO TO LANCER PURCHASE AGREEMENT
### Nacogdoches County, Texas

1. Tracts 20, 21, 26, 46 and 67 in Nacogdoches County, Texas involve easements
   that have been released prior to the date of the Purchase and Sale Agreement or
   from which the pipe has been removed prior to the date of this Agreement.

2. (A) Amendatory Agreement ("Agreement"), dated 1/13/76, between Bethel
   Baptist Church, by Trustees ("Bethel"), and Texas Eastern Transmission
   Corporation ("Corporation"), recorded in Volume 404, Page 254, Deed Records,
   Nacogdoches County, Texas. Said Agreement amends three easements recorded
   in Volume 74, Page 8, Volume 82, Page 410 and Volume 114, Page 369, whereby
   Corporation agrees to remove its existing pipeline from that portion of the
   property owned by Bethel and Bethel grants to Corporation an alternate right of
   way within a portion of land for future pipeline construction, subject to stated
   conditions.

   (B) Amendatory Agreement ("Agreement"), dated 03/03/83, between East Texas
   Portable Building Co., Inc. ("Owner"), and Texas Eastern Transmission
   Corporation ("Corporation"), recorded in Volume 485, Page 200, Deed Records,
   Nacogdoches County, Texas. Said Agreement amends easement recorded in
   Volume 114, Page 117, whereby Corporation agrees to re-route the pipeline and
   restrict easement to centerline as described therein, subject to certain rights
   reserved by Owner, as related to potential development of lands by Owner.

   (C) Amendatory Agreement ("Agreement"), dated 02/21/83, between Glenn
   Layton ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"),
   recorded in Volume 485, Page 205, Deed Records, Nacogdoches County, Texas.
   Said Agreement amends easement recorded in Volume 114, Page 117, whereby
   Corporation agrees to re-route the pipeline and restrict easement to centerline as
   described therein, subject to certain rights reserved by Owner, as related to
   potential development of lands by Owner.

   (D) Amendatory Agreement ("Agreement"), dated 02/16/83, between Big Red
   Enterprises, Inc. ("Owner"), and Texas Eastern Transmission Corporation
   ("Corporation"), recorded in Volume 485, Page 211, Deed Records, Nacogdoches
   County, Texas. Said Agreement amends easement recorded in Volume 114, Page
   177, whereby Corporation agrees to re-route the pipeline and restrict easement to
   centerline as described therein, subject to certain rights reserved by Owner, as
   related to potential development of lands by Owner.

   (E) Amendatory Agreement ("Agreement"), dated 05/29/81, between Lenvel
   Stanaland, et al. ("Owners"), and Texas Eastern Transmission Corporation

I

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-5"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

("Corporation"), recorded in Volume 465, Page 124, Deed Records, Nacogdoches
County, Texas. Said Agreement amends easement recorded in Volume 114, Page
174, whereby Corporation agrees to (i) cut and seal pipeline, (ii) Owners may
then remove pipe and will own pipe, (iii) after removal of pipe Owners will be
free to mine the sand and (iv) the easement of Corporation is restricted to
centerline as described therein.

(F) Amendatory Agreement ("Agreement"), dated 12/12/73, between Moore
Business Forms, Inc. ("Moore"), and Texas Eastern Transmission Corporation
("Corporation"), recorded in Volume 387, Page 349, Deed Records, Nacogdoches
County, Texas. Said Agreement amends easement recorded in Volume 114, Page
149 and Volume 114, Page 239, whereby Corporation agrees to confine the right
of way to centerline described therein and to abandon its existing 8" pipeline as it
lies on the property owned by Moore.

(G) Partial Release, dated 1/17/69, from Texas Eastern Transmission Corporation
("Corporation") to E.W. Roark ("Owner"), recorded in Volume 353, Page 741,
Deed Records, Nacogdoches County, Texas. Said Partial Release releases that
portion of lands covered by Easements recorded in Volume 114, Page 166 and
Volume 114, Page 168 which lies south of Texas State Highway 7 and describes
the centerline of new right of way,

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain County Clerk

Deputy

**EXHIBIT "B-6"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

## AMENDMENTS, RELEASES AND NEW RIGHTS OF WAYS AND EASEMENTS SINCE TEPCO TO LANCER SALE
Nacogdoches, Rusk and Shelby Counties

(1) Amended and Restated Release, Abandonment and Relocation of Easement, dated 04/23/99, between Cendant Mobility Services Corporation, ("Cendant"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1331, Page 24, Deed Records, Nacogdoches County, Texas. Said Agreement amends easements recorded in Volume 72, Pages 629-630, Volume 82, Page 394-395, Volume 114, Page 328, Volume 74, Page 58, Volume 72, Page 630, Volume 82, Page 395, and Volume 114, Pages 326-327, whereby Lancer agrees to release a portion of the easements and relocate the existing easement around the perimeter boundary of the 5.65 acre tract.

(2) Amendment to Right of Way Agreement, effective July 1, 1999 by and between Lancer Resources Company and Nacogdoches Trade Days, LLC, recorded in Volume 1371, Page 169, whereby Lancer agrees to limit the right of way to a 20' permanent right of way and Lancer retained the right to utilize reasonable work space for the installation of a new pipeline or the replacement of the existing pipeline.

(3) Release of Easement, dated 01/19/2001, between Acme Brick Company, ("Acme"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1560, Page 315, Deed Records, Nacogdoches County, Texas and Volume 2245, Page 656, Official Public Records, Rusk County, Texas. Said Agreement amends easement recorded in Volume 112, Page 37, whereby Lancer agrees to release easement in exchange for new Pipeline Right of Way Easement described below.

(4) Pipeline Right of Way Easement, dated 01/19/2001, between Lancer Resources Company, ("Lancer"), and Acme Brick Company, ("Acme"), recorded in Volume 1575, Page 80, Deed Records, Nacogdoches County, Texas and at Volume 2252, Page 355, Deed Records, Rusk County, Texas. Said agreement grants easement to Lancer as described in Agreement.

(5) Release, Abandonment and Relocation of Easement, effective 05/01/2002, between A.T. Mast III, John C. Mast, Patricia Mast George, ("Mast"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1747, Page 97, Deed Records, Nacogdoches County, Texas. Said agreement amends easements recorded in Volume 114, Pages 237-238 of the Deed Records of Nacogdoches County, Texas and relocated easement as described in Agreement.

1

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, Texas evidenced is
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-6"

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(6) Ratification of Right of Way Agreement by and between Florence J. Bowlin, Linda K. Knight and Robert D. Templin and The Express Gas Pipeline, L.P. dated May 11, 2011 and filed of record at Document Number 2011003582 of the Shelby County Deed Records ("SCDR") and the Letter Agreement referenced therein. Said agreement amends an easement recorded in Volume 126, Page 539! et seq., of the SCDR as described in said Letter Agreement.

(7) Agreed Judgment in Cause No. 09CV30,712 styled *Donald Lewis Scrimsher and Chhavy Khorn v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 2011003023 of the SCDR and the Ratification of Right of Way Agreement by and between Donald Lewis Scrimsher and Chhavy Khourn and The Express Gas Pipeline. L.P. dated March 8, 2011 and filed of record at Document Number 2011003024 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto, amends easements recorded in Volume 131, Page 137, et seq., and Volume 126, Page 503, et seq., of the SCDR as described in said Agreement.

(8) Agreed Judgment in Cause No. 09CV30,448 styled *Steve Biel and wife Regina Biel v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 20100013501 of the SCDR and the Ratification of Right of Way Agreement by and between Steve Biel and Regina Biel and The Express Gas Pipeline, L.P. dated October 30, 2010 and filed of record at Document Number 20100013500 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto dated November 15, 2013, amends an easement recorded in Volume 127, Page 54, et seq., of the SCDR as described in said Agreement.

(9) Ratification of Right of Way Agreement by and between Steve Cockrell, Truitt Cockrell and Carolyn Cockrell Daw and The Express Gas Pipeline, L.P. dated May 27. 2015 and filed of record at Document Number 2015002621 of the SCDR and the Agreement referenced in said Ratification dated June 26, 2015. Said Agreement amends easements recorded in Volume 127, Page 142, et seq., and Volume 124, Page 479, et seq., of the SCDR as described in said Agreement.

(10)Ratification of Right of Way Agreement by and between Cecil McCune and Deborah J. McCune and The Express Gas Pipeline,'L.P. dated May 27, 2015 and filed of record at Document Number 2015002620 of the SCDR and the Agreement referenced in said Ratification dated May 25, 2015. Said Agreement amends easements recorded in Volume 126, Page 528, et seq., and Volume 127, Page 138, et seq., of the SCDR as described in said Agreement.

2

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

## EXHIBIT "B-6"
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(11)Letter Agreement by and between Classic Hydrocarbons Operating, Inc. and
The Express Gas Pipeline, L.P. dated April 18, 2012 regarding the re-routing
of the 8" pipeline around the Widdon Gas Unit #2 pad site location and the
R&M Farms Unit #3 pad site location in Shelby County, Texas.

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

Jennifer L. Fountain, County Clerk
Shelby County, Texas
August 15, 2017 09:49:41 AM

FEE: $154.00 MLATHAM   2017002756
CO



3

I do hereby certify this to be a true copy of the attached document filed and recorded in Shelby County, TX, as evidenced in
Instrument 2017002756.

WITNESS MY HAND AND OFFICIAL SEAL, THIS August 15, 2017. Jennifer L. Fountain, County Clerk

Deputy

STATE OF TEXAS                        COUNTY OF RUSK     FILED FOR RECORD
I hereby certify that this instrument was filed on
the date and time stamped hereon  by me and           Aug 15,2017 01:48P
was duly recorded  in the volume  and page of the
named  records  of  Rusk County, Texas  as stamped    TRUDY MCGILL,
hereon by me.            OFFICIAL PUBLIC RECORDS        COUNTY CLERK
                                                       RUSK COUNTY, TEXAS

                  Aug 15,2017 01:48P

TRUDY MCGILL, COUNTY CLERK
                                                      By:Susan Wills, DEPUTY
RUSK COUNTY, TEXAS