# Exhibit 33:
# Option Agreement

## OPTION AGREEMENT

This Option Agreement (this "Agreement") is by and between (i) KrisJenn Ranch, L.L.C.-Series Pipeline ROW, a series of KrisJenn Ranch, L.L.C., a Texas limited liability company ("Optionor"), and the other entities and individuals comprising the "Optionor Group" (defined below), and (ii) McLeod Oil, LLC, a Texas limited liability company ("Optionee"; and Optionor and Optionee, each individually, a "Party", and collectively, the "Parties"), and is dated as of the 20th day of December, 2019 (the "Effective Date").

WHEREAS, reference is made to that certain Deed, Conveyance, Assignment and Bill of Sale dated effective April 3, 2018 (the "Black Duck Conveyance"), by and between Black Duck Properties, LLC ("Black Duck"), as assignor, and TCRG East Texas Pipeline 1, LLC ("TCRG"), as assignee, wherein Black Duck conveyed to TCRG all of its right, title and interest in and to a pipeline system and related facilities situated in Angelina, Nacogdoches, Shelby, and Rusk Counties, Texas, including without limitation all associated rights-of-way, easements, permits, leases, and other rights and properties appurtenant thereto (all property conveyed therein, collectively, the "Conveyed ROW System"); and

WHEREAS, as partial consideration for the Black Duck Conveyance, Black Duck received from TCRG a Limited Assignment of Interest in Water Pipeline dated April 3, 2018; and, thereafter, on or about October 8, 2018, this Limited Assignment of Interest in Water Pipeline was conveyed by Black Duck to KrisJenn Ranch, L.L.C. and KrisJenn Ranch, L.L.C.-Series Uvalde Ranch in partial payment of a Secured Promissory Note due and owing from Black Duck to KrisJenn Ranch, L.L.C. and KrisJenn Ranch, L.L.C. – Series Uvalde Ranch; and

WHEREAS, Black Duck subsequently dissolved and terminated its existence with the Texas Secretary of State, and as a result, to the extent Black Duck still owned any rights or interests appurtenant to the Property, such rights or interests vested in the members of Black Duck at the time of such termination, being no one other than one or more of the parties comprising the "Wright Parties" (defined below); and

WHEREAS, pursuant to that certain Compromise Settlement Agreement, by and between TCRG East Texas Pipeline 1, LLC, and Optionor, *et al* (the "CSA"; and the litigation described in such PSA, collectively, the "Litigation"), by that certain Deed, Conveyance, Assignment and Bill of Sale of even date herewith, TCRG, as assignor, conveyed to Optionor, as assignee, all of its right, title and interest in and to the Conveyed ROW System, a true and correct copy of such instrument being attached hereto as Exhibit "A" and made a part by reference (the "TCRG Reconveyance"); and

WHEREAS, pursuant to that certain Loan Agreement dated February 8, 2019, by and between KrisJenn Ranch, L.L.C. and Larry M. Wright, as borrower, and Optionee, as lender, as modified by (i) that certain Loan Modification Agreement dated November 13, 2019, by and

between KrisJenn Ranch, L.L.C. and Larry M. Wright, as borrower, and Optionee, as lender, and (ii) that certain Second Loan Modification Agreement of even date herewith, by and between Optionor, KrisJenn Ranch, L.L.C. and Larry M. Wright (collectively, the "Wright Parties"; and the Wright Parties being sometimes also referred to herein as the "Optionor Group"), as borrower, and Optionee, as lender (as so modified, the "Loan Agreement"), Optionee has loaned a total of Five Million Nine Hundred Thousand and No/100 Dollars ($5,900,000.00; the "Principal Loan Amount") to the Wright Parties; and

**WHEREAS**, in consideration of the "Option Fee" (set forth below), Optionor Group has agreed that Optionee shall have the option, but not the obligation, to purchase from Optionor Group *fee simple title* to all such pipeline system and related facilities described in the Black Duck Conveyance and TCRG Reconveyance, including without limitation all associated rights-of-way, easements, permits, leases, and other rights and real and personal property appurtenant thereto (fee simple title to all of the preceding, collectively, the "Property"), under the terms and conditions set forth in this Agreement;

**NOW, THEREFORE**, in consideration of the foregoing, and of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which being acknowledged by all of the Parties hereto, Optionor Group and Optionee hereby agree as follows:

1. **Grant of Option.** In consideration of One Hundred and No/100 Dollars ($100.00) to be paid by Optionee to Optionor (the "Option Fee") within ten (10) days following the Effective Date, Optionor Group grants, conveys, assigns, and delivers to Optionee, and Optionee accepts delivery of, an exclusive option (the "Option") for Optionee to acquire the Property from Optionor Group. In the event Optionee does not exercise the Option in accordance with the terms hereof prior to expiration of the "Option Period" (as defined in Section 5, below), the Option shall immediately and automatically expire by its terms.

2. **Purchase Price.** In the event Optionee timely exercises the Option in accordance with the terms hereof during the Option Period, the "Purchase Price" (herein so called) for the Property shall be Six Million and No/100 Dollars ($6,000,000.00), payable at the "Closing" (as defined in Section 8, below) via forgiveness of the outstanding Principal Loan Amount and any accrued, unpaid interest up to the full amount of the Purchase Price; provided, however, that to the extent the aggregate of the Principal Loan Amount and any accrued, unpaid interest (i) exceeds the Purchase Price, Optionor shall pay the excess to Optionee in cash at the Closing, or (ii) is less than the Purchase Price, Optionee shall pay such difference to Optionor in cash at the Closing. These payment terms are not intended to modify the terms of the Loan Agreement.

3. **Property Information.** Within thirty (30) days following the Effective Date of this Agreement, Optionor Group shall deliver or cause to be delivered to Optionee copies of all of the

following to the extent they are within the custody of Optionor Group, or any of same, or subject to any of their control (collectively, the "Property Information"): any and all documents, instruments, and information relating to the condition, operation, status, or approvals of, and/or title to, the Property, including without limitation all liability, fire and casualty, and other insurance policies covering or insuring against risks relating to the Property, aerial photos, surveys, engineering plans, platting and zoning applications, environmental reports and other documents describing or relating to the environmental condition of the Property, topographical maps, flood plain information, building restrictions, permits, instruments relating to (or comprising) title to any or all of the Property (including without limitation original source conveyances into Black Duck or its immediate predecessors in interest), copies of all operative pleadings, orders, and judgments (if any) filed and entered in the Litigation, and all other documents specifically described and requested by Optionee. Whenever Property Information is delivered by Optionor Group to Optionee, each of the entities and individuals comprising Optionor Group will be deemed to represent that (i) to its actual knowledge and belief, the copies constitute true and correct reproductions of the documents, materials, or data of which they purport to be copies, and (ii) it has no actual knowledge of any information or data contained in the Property Information which is either materially untrue or materially inaccurate except as specifically disclosed to Optionee in writing.

4. **Grant of License and Temporary Easement.** For the same consideration, Optionor, to the fullest extent it has the authority to do so as owner of the Property, grants, conveys, assigns, and delivers to Optionee, and Optionee accepts delivery of, a license to enter upon and use, and an easement over, across, under, and through, the land on which the Property is situated, for the purposes of Optionee exercising its inspection rights set forth in Section 5, below. This license and temporary easement (collectively, the "License") shall expire at 11:59 p.m., local time, on the earlier to occur of (i) the fortieth (40th) day following expiration of the Option Period or any earlier termination of the Option, and (ii) the "Closing Date" (as defined in Section 8, below). The License is irrevocable until its expiration as provided herein, and Optionor stipulates and agrees that the loan provided for in the Loan Agreement constitutes sufficient consideration for its grant of the License to Optionee.

5. **Option Period.** Optionee shall have from the Effective Date until 11:59 p.m., local time, on February 8, 2021 (such period, the "Option Period") to exercise the Option. During the Option Period, to the fullest extent Optionor has the authority to allow as owner of the Property, Optionee may inspect the Property and conduct feasibility studies regarding Optionee's intended use of the Property. Optionee's feasibility studies may include, without limitation, the following (collectively, the "Feasibility Studies"): (i) examination of the Property Information and examination of title to the Property, (ii) environmental and nondestructive engineering tests and investigations, (iii) nondestructive physical inspections of any pipelines and related infrastructure, and (iv) any other examinations, inspections, tests, and surveys deemed

reasonably necessary by Optionee. To the fullest extent Optionor has the authority to allow as owner of the Property, Optionee and Optionee's agents, employees, consultants, and contractors shall have the right of reasonable entry onto the land on which the Property is situated to inspect the Property, during normal business hours, for purposes of conducting these Feasibility Studies. All Feasibility Studies performed hereunder shall be at Optionee's expense.

6. **Stand Down.** During the pendency of this Agreement, Optionor Group (i) shall cease all marketing efforts, (ii) shall not enter into any contracts with third parties covering the Property or any part thereof (regardless of whether such contracts are contingent upon or subject to the rights created by this Agreement), and (iii) shall neither entertain, solicit, nor accept back-up offers from third parties to purchase the Property or any part thereof.

7. **Representations and Covenants.**

   A. **Optionor's Representations.** Subject to the Litigation, each of the entities and individuals comprising Optionor Group hereby represents to Optionee the following, which representations are true and correct on the Effective Date of this Agreement, and which representations will be deemed to have been re-made at the Closing as still being true and correct:

   (1) Optionor Group own(s) the Property free and clear of all liens, claims, and encumbrances (other than any of same related to the Loan Agreement or this Agreement);

   (2) to the actual knowledge of Optionor Group, any remaining assets of Black Duck as of the time of its dissolution and termination, specifically including any rights or interests Black Duck may have owned in the Property (if any), are now owned by no one other than one or more of the constituent parties comprising the Optionor Group;

   (3) the execution and delivery of this Agreement, the consummation of the transaction herein contemplated, and the compliance with the terms of this Agreement will not conflict with, or with or without notice or the passage of time, or both, result in a breach of, any of the terms or provisions of, or constitute a default under, any lease, indenture, mortgage, loan agreement, or other instrument to which any of the entities and/or individuals comprising Optionor Group is a party or by which any of them or the Property is bound, or to the actual knowledge and belief of Optionor Group, any applicable law, rule, regulation, ordinance or code or any judgment, order, or decree of any court having jurisdiction over Optionor Group or the Property at the time of the execution of this Agreement;

   (4) each of the entities and individuals comprising Optionor Group has the full right, power and authority to enter into this Agreement, to consummate or cause to be

consummated the transaction contemplated hereby, and to carry out their respective obligations hereunder; and

(5) neither this Agreement nor the rights created hereby constitute (a) consideration for executing the Second Loan Modification Agreement, or (b) interest on the Principal Loan Amount.

B. **Optionor's General Covenants.** Optionor Group hereby covenants and agrees with Optionee that from the Effective Date of this Agreement until this Agreement is fully performed by Optionor Group and Optionee or any earlier termination of this Agreement, Optionor Group shall:

(1) advise Optionee promptly of any material developments in the Litigation, and of any other litigation, arbitration, or administrative hearing before any governmental agency concerning or affecting all or any portion of the Property when and if Optionor (or any other party comprising the Optionor Group) acquires actual knowledge of same;

(2) neither take, nor omit to take, any action that would have the effect of making untrue any of the representations, or violating any of the covenants, warranties, or agreements of Optionor Group, contained in this Agreement;

(3) not create, execute, or permit to exist any liens, encumbrances, or charges on, or covering all or any portion of, the Property; and

(4) advise Optionee promptly upon obtaining knowledge of any (i) material damage or destruction of all or any portion of the Property by wind, water, fire or other casualty, or (ii) threatened or filed condemnation proceedings against all or any portion of the Property, or the land on which the Property is situated.

C. **Survival.** The representations of Optionor Group in Section 5.A, above, shall survive the Closing for a period of two (2) years and then shall be deemed merged into the "Deed" (defined below) delivered to Optionee at Closing.

D. **Actual Knowledge.** Whenever a representation or disclosure set forth above or elsewhere in this Agreement is qualified to the knowledge or best actual knowledge and belief of a Party, or when this Agreement provides that a Party must take some action when it acquires actual knowledge of an event, the knowledge or best actual knowledge and belief of such Party shall mean actual and conscious knowledge, without inquiry or duty to inquire, and shall not mean or include imputed knowledge, constructive knowledge, or information that is contained in public records.

8. **Option Exercise and Closing.**

   A. **Option Exercise.** The Option shall be deemed exercised upon Optionee's substantial compliance with the procedure set forth in this Section 8.A. To exercise the Option, Optionee shall deliver notice of such exercise to Optionor Group on or before expiration of the Option Period, and such notice shall be made and delivered in accordance with Section 9, below. Delivery of notice in substantial compliance herewith shall effectively exercise the Option, and Optionor and Optionee then shall proceed to consummate the purchase and sale of the Property (such consummation. the "Closing"); and furthermore, upon exercise of the Option, the then-existing maturity date set forth in the Loan Agreement shall automatically be extended for an additional forty (40) days. The Closing shall be held on the date which is the fifteenth (15th) day following Optionee's notice to Optionor Group that Optionee has exercised the Option. That date shall be the "Closing Date" for all purposes herein. The Closing shall take place at the office of Optionee at its address stated below; provided, however, that either Party may execute documents outside of the office of Optionee for delivery to the office of Optionee by a representative of the Party for use in closing this transaction. Optionee shall have the right to extend the Closing Date two (2) times, each for up to ten (10) days, by notice to Optionor Group delivered on or before the then-existing Closing Date.

   B. **Optionor's Closing Deliveries.** At the Closing, Optionor Group shall deliver to Optionee: (i) a deed, conveyance, assignment, and bill of sale (the "Deed"). in a recordable form reasonably satisfactory to Optionee, signed by each of the Wright Parties, conveying the Property to Optionee; (ii) evidence of the authority and capacity of each of the entities and individuals comprising Optionor Group to close this transaction; and (iii) all other documents consistent herewith as may be reasonably required by Optionee (including without limitation wiring instructions or other information necessary to make payment). Although Optionor believes it owns the entirety of the Property free and clear of any claims or encumbrances by any third parties other than the Litigation, for the avoidance of doubt, the Deed will be signed by each of the Wright Parties. If Optionor owes additional accrued, unpaid interest under the Loan Agreement pursuant to Section 2, above, Optionor shall deliver such funds to Optionee at Closing. The Deed shall contain a special warranty of title as to all claims (other than the Litigation) arising by, through, or under Optionor Group since the effective date of the TCRG Reconveyance.

   C. **Optionee's Closing Deliveries.** At the Closing, Optionee shall deliver: (i) the Purchase Price, payable as set forth in Section 2, above, (ii) to the extent any portion of said Purchase Price is being paid through forgiveness of the outstanding Loan Amount, instruments evidencing such forgiveness (including without limitation releases in recordable form of all liens and security interests created pursuant to the Loan Agreement). in forms reasonably satisfactory to Optionor and Optionee; (iii) evidence of Optionee's authority and capacity to close this transaction; and (iv) all other documents consistent herewith as may be reasonably required by

Optionor. If Optionee owes additional cash pursuant to Section 2, above, Optionee shall deliver such funds to Optionor at Closing.

9. **Notices.** Whenever under the terms of this Agreement notice is required or provided to be given by any party hereto, such notice shall be in writing and enclosed in a sealed wrapper. The sealed wrapper enclosing the notice must be addressed to the person(s) or entity to whom the notice is to be given, and such sealed wrapper must either be (a) delivered to and receipted for by a messenger or courier service, with instructions for delivery of such sealed wrapper on the same day or the next business day or (b) deposited with the domestic mail service of the United States Postal Service at a post office or official depository under the care and custody of the United States Postal Service with sufficient postage prepaid, sent by United States registered mail or certified mail, return receipt requested. The mailed notice shall be deemed delivered, furnished, and received on the date of mailing. Any notice sent via messenger or courier service shall be deemed to have been delivered, furnished, and received on the date of the first attempted delivery thereof, as shown on any return receipt or any such messenger or courier service's records. Copies of any notices shall also be transmitted via email if possible, but failure to do so shall not invalidate an otherwise properly delivered notice. The addresses to which any such notices are to be sent are as follows:

| | |
|---|---|
| If to Optionor Group, to: | c/o KrisJenn Ranch, L.L.C.- Series Pipeline ROW<br>Attn: Larry M. Wright<br>410 Spyglass Road<br>McQueeney, Texas 78123<br>Email: larrymwright54@gmail.com |
| with a copy to: | David P. Strolle, Jr.<br>Granstaff, Gaedke & Egmon, P.C.<br>5535 Fredericksburg Road, Suite 110<br>San Antonio, Texas 78229<br>Phone: 210-348-6600 Ext. 203<br>Email: dstrolle@caglaw.net |
| If to Optionee, to: | McLeod Oil, LLC<br>Attn: John W. McLeod, Jr.<br>700 North Wildwood<br>Irving, Texas 75061<br>Email: jmcleod@lonestarbox.com |

    with a copy to:    William D. Kuhlmann, Jr.
Albert, Neely & Kuhlmann, L.L.P.
1600 Oil & Gas Building
309 West Seventh Street
Fort Worth, Texas 76102
Phone: 817-877-0055
Email: wdkuhlmann@anklaw.com

The parties hereto shall have the right from time to time to change their respective addresses, and each shall have the right to specify as its address and/or telecopy number any other address within the continental United States by at least five (5) days' notice to the other party as herein provided.

10. **Default.**

    A. **Optionee's Remedies.** If any party comprising Optionor Group fails to perform any obligation or comply with any term of this Agreement, and such failure continues for ten (10) days following notice of the failure from Optionee, Optionor Group shall be in default. In the event of Optionor Group's default under this Agreement, Optionee shall have any remedy, whether at law or in equity, to which it may be entitled.

    B. **Optionor Group's Remedies.** If Optionee fails to perform any obligation or comply with any term of this Agreement, and such failure continues for ten (10) days following notice of the failure from Optionor Group, Optionee shall be in default. In the event of Optionee's default under this Agreement, Optionor Group's sole and exclusive remedy, whether at law or in equity, shall be either: (i) to waive such default and proceed to Closing, if Optionee exercises the Option (and Optionor's election to close shall be deemed a waiver of such default, such waiver to survive the Closing), or (ii) to terminate this Agreement, in which event the Option shall terminate and the Parties shall have no further obligations hereunder, except those that expressly survive termination of this Agreement; provided, however, that the Loan Agreement and all instruments executed pursuant thereto shall remain in full force and effect according to their respective terms.

11. **General Provisions.**

    A. **Recitals.** The recitals and introductory paragraph to this Agreement are incorporated into, and made a part of, this Agreement by reference.

    B. **Severability.** If any term of this Agreement is held invalid or unenforceable for any reason, the remainder of the provisions shall continue in full force and effect, and the Parties shall substitute a valid provision with the same intent and economic effect.

    C. **Enforcement.** In the event any action is brought to enforce the terms of this

Agreement, the prevailing party in such an action shall receive from the losing party an award of the prevailing party's reasonable attorneys' fees, costs, and expenses, including but not limited to, reasonable attorneys' fees, costs and expenses incurred prior to filing suit and incurred on appeal.

D.   **Acknowledgement.** The Parties hereby each acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities in connection with this Agreement, that they have read and know and understand completely the contents thereof and have voluntarily entered into this Agreement.

E.   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the Option and merges all prior and contemporaneous communications; and for the avoidance of doubt, the Loan Agreement and all instruments executed pursuant thereto are not merged into this Agreement, are separate from this Agreement, and are in full force and effect. It shall not be modified except by a written agreement dated subsequent to the date of this Agreement and signed by each of the Parties.

F.   **Expenses, Costs, and Attorneys' Fees.** Except as specifically provided for herein, each of the Parties shall bear its respective expenses, costs, and attorneys' fees incurred in connection with the negotiation and execution of this Agreement and in completing its responsibilities under this Agreement.

G.   **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but which collectively will constitute one and the same instrument. A signed copy transmitted electronically will be acceptable as an original.

H.   **Construction.** This Agreement has been negotiated by the Parties and their respective counsel and shall be interpreted fairly in accordance with its terms and without any strict construction in favor of or against either Party. The existence or absence of any terms or conditions of this Agreement shall not be used in the construction or interpretation of any other agreement between the Parties.

I.   **Voluntary Execution.** This Agreement is executed voluntarily and without duress or undue influence on the Parties or their officers, employees, agents or attorneys, and no Party is relying on any inducements, promises or representations made by any other Party or any of its officers, employees, agents or attorneys other than as set forth herein. Each of the Parties acknowledges that they have been represented by counsel in the negotiation and preparation of this Agreement, and that they are aware of the contents of this Agreement and its legal effect.

J.   **Assignment.** Optionee may assign its rights under this Agreement without the consent of Optionor. In the instrument effecting such assignment, the assignee shall assume the assignor's obligations hereunder; and upon the assignee's execution of such instrument, the

assignor shall be deemed fully released of all obligations hereunder, even those that have accrued prior to the date of the assignment. Optionor Group may not assign its rights under this Agreement without the express written consent of Optionee, and any assignment of this Agreement by Optionor Group without Optionee's express written consent shall constitute a default by Optionor Group under this Agreement.

   K. **Binding Effect.** This Agreement shall inure to the benefit of and bind the Parties hereto and their respective heirs, devisees, administrators, successors, and assigns (but as to assigns, only to the extent assignment is permitted hereunder).

   L. **Governing Law.** This Agreement shall be construed under and governed by the laws of the State of Texas, without regard to conflict-of-law rules or principles that might result in the application of laws from a different state, and unless otherwise provided herein, all obligations of the Parties created under this Agreement are to be performed in the county where the Property is located.

   M. **Further Assurances.** Following the Closing, Optionor Group will do, execute, acknowledge, and deliver all and every further acts, deeds, conveyances, assignments, notices of assignments, transfers, instruments, letters, and assurances as Optionee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Optionee of the Property contemplated hereby to be deeded, granted, bargained, sold, conveyed, assigned, warranted and transferred, or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of this Agreement. This obligation shall survive the Closing.

12. **Confidentiality.** Following the Effective Date, Optionor Group shall, except as required by law, keep confidential the material terms of this Agreement, including, without limitation, the amount of the Purchase Price, the Feasibility Studies performed by Optionee pursuant to Section 5, above, and the Closing Date (all of the preceding, collectively, the "Confidential Information"). Optionor Group may only disclose the Confidential Information to its key employees, attorneys, analysts, and accountants (any of said parties, a "Representative") so long as either such Representative is under a confidentiality agreement comparable to this Section 12, or agrees in writing to be bound under the terms of this Section 12 in the same manner that Optionor Group is bound. To the extent that any Confidential Information may include material subject to attorney/client privilege, work product privilege, or any other applicable privilege concerning pending or threatened legal proceedings or government investigations, the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under any of such privileges. Optionee shall be entitled to equitable relief by way of injunction or otherwise, in addition to any other rights and remedies otherwise available, if Optionor Group or any of its Representatives breach or threaten to breach any of the provisions of this Section 12.

13. **Memorandum.** Contemporaneously herewith, Optionor Group and Optionee have executed in recordable form a memorandum (the "Option Memorandum") in the form attached as Exhibit "B" (without its respective exhibit) and made a part by reference, to be filed for record with the County Clerks of Angelina, Nacogdoches, Shelby, and Rusk Counties, Texas, to place the public on constructive notice of this Agreement and Optionee's rights hereunder. Should Optionee terminate this Agreement or should the Option expire of its own terms, Optionee shall, within ten (10) days of Optionor Group's written request (the "Release Request"), file an instrument, executed and sworn to by Optionee, with the County Clerks of Angelina, Nacogdoches, Shelby, and Rusk Counties, Texas, releasing the Option Memorandum. Should Optionee fail to timely file such instrument, Optionor Group shall have the right to file for record an affidavit stating that this Agreement has terminated (the "Release Affidavit"); and upon the filing of such Release Affidavit, the Option Memorandum shall be deemed released. Optionor Group covenants to not file for record the Release Affidavit except as allowed herein; and if Optionor Group violates this covenant, Optionee may pursue a claim for its actual, direct damages caused by the violation, excluding any punitive, consequential, special, or speculative damages.

[Signature Pages Follow]

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**OPTIONOR GROUP**

KrisJenn Ranch, L.L.C.- Series Pipeline ROW,
a series of KrisJenn Ranch, L.L.C.,
a Texas limited liability company

By: *Larry M. Wright*
Larry M. Wright, Manager

KrisJenn Ranch, L.L.C.,
a Texas limited liability company

By: *Larry M. Wright*
Larry M. Wright, Manager

*Larry M. Wright*
Larry M. Wright, Individually

[Additional Signature Follows on the Next Page]

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**<u>OPTIONEE</u>**

McLeod Oil, LLC,
a Texas limited liability company

By:_____
   John W. McLeod, Jr., Manager