## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § | |
| | § | Chapter 11 |
| KrisJenn Ranch, LLC, | § | |
| | § | |
| *Debtor* | § | Case No. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, | § § § § § | |
| | § | Adversary No. 20-05027 |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| DMA Properties, Inc. and Longbranch Energy, LP, | § § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| DMA Properties, Inc. and Frank Daniel Moore, | § § | |
| | § | |
| *Cross-Plaintiffs/Third-Party Plaintiffs,* | § | |
| | § | |
| v. | § | Adversary No. 20-05027 |
| | § | |
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, Black Duck Properties, LLC, Larry Wright, and John Terrill, | § § § § § § | |
| | § | |
| *Cross-Defendants/Third-Party Defendants.* | § | |

**DMA Properties, Inc.'s Reply In Support of Motion for Partial Summary Judgment on DMA's Ownership Interest in the Bigfoot Note Payments**

The interpretation of the contract transferring 50% ownership of the Bigfoot note payments to DMA is a discrete issue that must be decided as a matter of law. The plain, unambiguous language of the agreements confirms DMA's property right to 50% of the gross note payments—and expressly states that DMA's right to the note payments is not encumbered by any alleged debts.

KrisJenn's response does not deal with the actual language of the agreements. Instead, without citing the agreements themselves and citing almost no legal authority at all,[1] KrisJenn theorizes that DMA merely has a contract with Black Duck and that KrisJenn does not have to recognize or honor that contract. But both the plain language of the agreement itself and binding Texas law refute KrisJenn's argument.

Further, having warranted that DMA took its 50% interest in the Bigfoot note payments free and clear from any and all debts, Wright and KrisJenn are estopped from now arguing KrisJenn has an interest in DMA's property based on any debts.

Because the agreements are subject to only one reasonable interpretation, DMA asks the Court to rule as a matter of law that DMA is the owner of 50% of the Bigfoot promissory-note payments.

## Analysis

### I. The plain language of the Email Agreement and Harris SWD Agreement transferred to DMA 50% ownership of the Bigfoot note payments.

The construction of the contract—the Harris SWD Agreement and the incorporated Email Agreement—is a question of law. *See Glassell Non-Operated Interests, Ltd. v. EnerQuest Oil & Gas, L.L.C.*, 927 F.3d 303, 306 (5th Cir. 2019) (applying Texas law). "The court must find the parties' intent as expressed in the agreement" by "giv[ing] terms their plain, ordinary and generally accepted meaning unless the

---

[1] The only exception being the citations in the legal standard and citations on the need for consideration. Resp. [#89] at 4.

instrument itself shows them to have been used in a technical or different sense." *Id.* (quotation omitted).

Here, the two agreements are subject to only one reasonable interpretation: DMA owns 50% of the Bigfoot note payments.

### A. The plain language demonstrates the parties intended to DMA to be the third-party beneficiary.

Moore and Wright (on behalf of himself and Black Duck) intended to transfer 50% ownership of the Bigfoot note payments to DMA. *See Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) ("In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." (quotation omitted)).

Moore expressly resigned from his role as manager of Black Duck and relinquished his ownership interest (through SCMED) in Black Duck in exchange for a 50% ownership of the Bigfoot note payments through DMA (among other things). Ex. 1 (Moore Decl.) ¶9. The terms of Moore's departure from Black Duck were confirmed in the Email Agreement and the Harris SWD Agreement. Ex. 4 (Email Agreement); Ex. 5 (Harris SWD Agreement). The plain language of those documents states that "Larry Wright and Daniel Moore have agreed to remove Daniel Moore from all aspects that involve BLACK DUCK PROPERTIES, LLC" for "transfer [of] the following items from Black Duck and to DMA Properties, INC or any other [e]ntity owned by Daniel Moore [or] of Daniel[']s choice . . . ." Ex. 4 (Email Agreement) at 3; *see also City of Hous. v. Williams*, 353 S.W.3d 128, 145-46 (Tex. 2011) (finding contract created third-party beneficiary where it expressly granted benefits to specific third parties).

Wright and Moore specifically agreed that the "[f]ollowing [i]tems to be transferred" included:

> No less than 50% carried interest and 50% entitlement on all terms and conditions and monies owed on the Note to Black Duck Properties and Big

Foot regarding the Harris SWD. Harris SWD [note] is 100% FREE AND CLEAR OF ANY AND ALL DEBTS.

*Id.* Likewise, the Harris SWD Agreement states that "DMA Properties, Inc. is entitled to receive 50% of all Gross Monies . . . for the remainder of all payments due[.]" Ex. 5 (Harris SWD Agreement) at 1.

The intent to confer a benefit on DMA—a 50% ownership stake in the Bigfoot note—is "clearly and fully spelled out" in the Email Agreement and Harris SWD Agreement. *Easter v. Prof'l Performance Dev. Grp., Inc.*, No. 5:16-CV-222-DAE, 2016 WL 4033269, at *4 (W.D. Tex. July 27, 2016) (applying Texas law and finding defendant was a third-party beneficiary where contract "extended a clear benefit" to a category of third parties).

KrisJenn does not dispute that DMA was the intended third-party beneficiary. Resp. [#89] at 4. Nor does Wright testify that another arrangement was intended. Resp. [#89] Ex. A (Wright Aff.). Instead, KrisJenn merely complains that DMA did not specifically call itself a "third-party beneficiary" in its summary-judgment motion. Resp. [#89] at 4.

That "magic words" argument flatly fails under Texas law. DMA's motion for summary judgment—and the underlying agreements at issue—make it abundantly plain that DMA is a third-party beneficiary under the agreements: Black Duck transferred to DMA a right to 50% of all payments on the Bigfoot note in exchange for Moore's complete departure from Black Duck. *See* Mot. [#41] at 3, 5-6, 11-13; Ex. 1 (Moore Decl.) ¶9. The provisions of the contract speak for themselves, showing that DMA was expressly granted "50% carried interest and 50% entitlement" in the Bigfoot note payments and was therefore a third-party beneficiary of the contract. Ex. 4 (Email Agreement) at 3. That is all that is needed under Texas law, which does not require that the agreements identify DMA using the phrase "'third-party beneficiary' or any similar magic words." *Williams*,

353 S.W.3d at 145. Instead, the Court need only consider the parties' intent as reflected in the agreements' language to know that DMA was a beneficiary of the contracts. *Id.*

### B. DMA owns 50% of the Bigfoot note payments.

Phrase after phrase of the Email Agreement and Harris SWD Agreement confirms Wright and Moore meant to transfer ownership of half of Bigfoot's note payments to DMA:

- Black Duck intended to "legally transfer" the 50% interest to DMA;

- DMA was to receive "50% carried interest and 50% entitlement on all terms and conditions and monies owned on the [Bigfoot note;]"

- Moore had the option to "buy out of the remaining 50%" of the Bigfoot note;

- DMA "is entitled to 50% of all Gross Monies" from the Bigfoot note;

- DMA's right to 50% of the note payments persists even if payment is made to Black Duck's "successors and assigns[;]"

- DMA is a "50% carried interest party[;]" and

- DMA is "entitled to 50% of any and all scenarios and outcomes" if Bigfoot fails to make the note payments.

Ex. 4 (Email Agreement); Ex. 5 (Harris SWD Agreement). And Wright represented that DMA's ownership interest would be unencumbered—"fully accept[ing] and approv[ing]" the statement that the Bigfoot note was "100% FREE AND CLEAR OF ANY AND ALL DEBTS." Ex. 4 (Email Agreement).

The plain, unambiguous language of the contract shows DMA has a property right to 50% of all Bigfoot note payments, a right undiminished by any alleged Black Duck debts. *See First Bank v. Brumitt*, 519 S.W.3d 95, 105 (Tex. 2017) ("When a contract's language is unambiguous, courts must construe the contract as a matter of law." (quotation omitted)).

Without citing a single case—or even the language of the Email Agreement or Harris SWD Agreement—KrisJenn asserts that DMA has only a contract with Black Duck that KrisJenn can disregard. Resp. [#89] at 4-6.

KrisJenn's argument contradicts the plain text of the Email Agreement and the Harris SWD Agreement. *See* Ex. 4 (Email Agreement); Ex. 5 (Harris SWD Agreement). And it does more than that: it also contradicts cases applying the "general principle" that "[a]n assignment of payments to be made *in futuro*, usually in the form of accounts receivable, is held to pass legal title in the proceeds to the assignee." *Fed. Deposit Ins. Corp. v. Mademoiselle of Cal.*, 379 F.2d 660, 665 (9th Cir. 1967) (emphasis in original); *see also Asset Restructuring Fund, L.P. v. Liberty Nat. Bank & Resolution Tr. Corp.*, 886 S.W.2d 548, 552 (Tex. App.—Austin 1994, writ denied) (concluding sale of right to percentage of loan payment granted third party ownership in loan and underlying collateral); *Brown v. Lee*, 371 S.W.2d 694, 696 (Tex. 1963) (reiterating that the right to receive proceeds payable in the future is property). Black Duck's assignment to DMA of a right to future payments therefore passed title to DMA for 50% of the note proceeds.

And where, as here, the assignor continues to collect the payments, "[t]he assignor becomes collection agent for the assignee so that upon the insolvency of the assignor, the proceeds of the accounts in the hands of the receiver are the property of the assignee." *Mademoiselle*, 379 F.2d at 665. Black Duck's obligation to collect the note payments and subsequent insolvency thus does not extinguish DMA's property right. Nor could Black Duck assign to KrisJenn what it did not own. *See Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 285 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("An assignment is a manifestation by the *owner of a right* of his intention to transfer such right to the assignee." (emphasis added)).[2]

---

[2] KrisJenn claims it is a "successor-in-interest" to "Black Duck's ownership or control of certain property." Resp. [#89] at 5. Regardless of whether KrisJenn is a successor-in-interest or successor to Black Duck, the Harris SWD Agreement expressly grants DMA the right to 50% of the Bigfoot note payments made to Black Duck's "successors and

## II.     Quasi-estoppel bars Wright and KrisJenn from asserting any right to DMA's portion of the note payments.

Wright and KrisJenn are estopped from claiming they can take DMA's property based on Black Duck's alleged debts to KrisJenn.[3] In confirming the terms of Moore's withdrawal from Black Duck, Wright specifically agreed that the Bigfoot note was "100% FREE and CLEAR OF ANY AND ALL DEBTS." Ex. 4 (Email Agreement) at 3. Wright, "on behalf of himself and Black Duck Properties, LLC[,]" also agreed that DMA was entitled to "50% of all Gross Monies" received from "Big Foot per the terms and conditions of the Note[,]" not 50% of Black Duck's net income. Ex. 5 (Harris SWD Agreement) at 1.

In exchange for these terms, Wright and KrisJenn accepted full control and ownership of Black Duck. KrisJenn cannot now claim it is entitled to 100% of the Bigfoot note payments based on an undisclosed debt—or any other alleged debt—Black Duck supposedly incurred. *See, e.g., Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken."); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied) (finding quasi-estoppel applied because it would be unconscionable to permit parties to accept the benefits of a transaction and then take an inconsistent position to avoid corresponding obligations or effects).

KrisJenn does not deny that quasi-estoppel applies here. Resp. [#89] at 7-9. Instead, KrisJenn merely tries to muddy the waters with unsupported allegations that Moore was a bad actor, citing only one email where Moore expressed frustration on an

---

assigns." Ex. 5 (Harris SWD Agreement). Further, Black Duck purported to "assign" what it owned to KrisJenn. Ex. 8 (October 12, 2018 Letter); Ex. 9 (Assignment of Note).
[3] The Court need not decide whether the alleged debts to KrisJenn are actually valid here to find DMA owns the 50% of the note without any encumbrances.

20-05027-rbk  Doc#93  Filed 10/12/20  Entered 10/12/20 09:06:41  Main Document  Pg 8 of 10


issue wholly separate from the Bigfoot note—the signing of agreements to extend closing on a right-of-way.

KrisJenn's mere finger-pointing concerning the right-of-way—a different project—cannot deny DMA the equitable relief to which it is entitled for the note payments. *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 597 (Tex. App.—Austin 2015, no pet.) (stating that the party claiming unclean hands bears the burden of showing it "has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine"); *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied) (concluding the doctrine of unclean hands does not apply when the alleged bad conduct occurred in a different transaction).

Having warranted that the note payments were free and clear of any and all debts and that DMA is entitled to gross monies, Wright and KrisJenn are estopped from claiming they can take DMA's portion of the Bigfoot note payments to satisfy any alleged debts.

## CONCLUSION AND PRAYER

For these reasons, DMA is entitled to judgment as a matter of law that it owns 50% of the Bigfoot note payments.

Respectfully submitted,

/s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com
akrist@clevelandterrazas.com

/s/ Natalie F. Wilson
Natalie F. Wilson
State Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER
4825 50th Street, Suite A
Lubbock, Texas 79414
806-793-1906
806-792-2135 fax
aseger@thesegerfirm.com

*Attorneys for Frank Daniel Moore and DMA*
*Properties, Inc.*

9

CERTIFICATE OF SERVICE

     I hereby certify that on October 12, 2020 a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via email as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by U.S. Mail, first class, postage prepaid, at the address noted below:

| | |
|---|---|
| Ronald J. Smeberg<br>Charles John Muller, IV<br>MULLER SMEBERG, PLLC<br>111 W. Sunset<br>San Antonio, TX 78209<br>ron@smeberg.com<br>john@muller-smeberg.com<br><br>*Counsel for Plaintiffs KrisJenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, KrisJenn Ranch, LLC, Series Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>DUKE BANISTER MILLER & MILLER<br>22310 Grand Corner Drive, Suite 110<br>Katy, TX 77494<br>jduke@dbmmlaw.com<br><br>*Counsel for Defendant Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Third-Party Defendant Black Duck Properties, LLC* | Shane P. Tobin<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, Texas 78701<br>shane.p.tobin@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | John Terrill<br>12712 Arrowhead Lane<br>Oklahoma City, OK 73120<br><br>*Third Party-Defendant, pro se* |
| Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* | |

/s/ Christopher S. Johns
Christopher S. Johns