IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re:<br>**KRISJENN RANCH, LLC,**<br>*Debtor* | § § § § | Chapter 11<br><br>Case No. 20-50805 |
| **KRISJENN RANCH, LLC and KRISJENN RANCH, LLC-SERIES UVALDE RANCH, and KRISJENN RANCH, LLC-SERIES PIPELINE ROW as successors in interest to BLACKDUCK PROPERTIES, LLC,**<br>*Plaintiffs*<br><br>v.<br><br>**DMA PROPERTIES, INC., and LONGBRANCH ENERGY, LP,**<br>*Defendants* | § § § § § § § § § § § § § § | Adversary No. 20-05027 |
| **DMA PROPERTIES, INC,**<br>*Cross-Plaintiff/Third Party Plaintiff*<br><br>v.<br><br>**KRISJENN RANCH, LLC, KRISJENN RANCH, LLC-SERIES UVALDE RANCH, and KRISJENN RANCH, LLC-SERIES PIPELINE ROW, BLACK DUCK PROPERTIES, LLC, LARRY WRIGHT, and JOHN TERRILL,**<br>*Cross-Defendants/Third-Party Defendants* | § § § § § § § § § § § § § § | Adversary No. 20-05027 |

**KRISJENN RANCH, LLC, KRISJENN RANCH, LLC-SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC-SERIES PIPELINE ROW, AS SUCCESSORS IN INTEREST TO <u>BLACK DUCK PROPERTIES, LLC'S SECOND AMENDED ADVERSARY COMPLAINT</u>**

COME NOW KrisJenn Ranch, LLC ("KrisJenn"), KrisJenn Ranch, LLC-Series Uvalde Ranch, and Krisjenn Ranch, LLC-Series Pipeline Row as successors in interest to Black Duck Properties, LLC (collectively the "Debtors") by and through their undersigned attorney, and file this Second Amended

*Debtors' Second Amended Complaint* 1

Adversary Complaint, brought pursuant to Bankruptcy Rule 7001, and would show the Court as follows:

## I.
## SUMMARY

1. Debtors own a pipeline and right of way that is the subject of this dispute (respectively, the "Pipeline" and "ROW"). Pipeline, ROW, and KrisJenn Ranch are each encumbered by a $6 million loan. The Debtor is currently unable to sell the Pipeline and ROW because the Defendants are improperly claiming a perpetual interest in these properties. More specifically, Defendants claim they should receive a share of profits from the operations and sale of the Pipeline and ROW for all time, regardless of whom is buying, selling, or using these properties. This interpretation is so broad that no person will purchase the Pipeline. Failure to monetize the Pipeline has caused Debtor to default on the $6 million secured obligation necessitating its chapter 11 bankruptcy filing.

2. Black Duck Properties, LLC ("Black Duck") was an entity owned by KrisJenn and SCMED Oilfield Consulting, LLC ("SCMED"). SCMED and DMA are wholly owned by Frank Daniel Moore.

3. Black Duck held title to the Pipeline and ROW before the disputes in this case arose. Black Duck sold the Pipeline to TCRG East Texas Pipeline 1, LLC ("TCRG") for $2.5 million and a 16% gross interest in the revenues generated by the Pipeline. After the deal was consummated, Defendants contacted TCRG and informed them that Defendants had a 20% perpetual interest in the Pipeline and ROW that "ran with the land." They stated that TCRG would continue to owe each Defendant 20% net profits from the Pipeline and ROW in addition to the 16% gross revenues owed to KrisJenn. These efforts effectively scuttled the deal with TCRG.

4. Before Defendants interference with the TCRG deal, all of Black Duck's assets were transferred to KrisJenn because Black Duck could not honor its debts to KrisJenn. Black Duck subsequently wound-up its operations pursuant to the Texas Business Organizations Code.

5. After TCRG sought to undue the purchase of the Pipeline due to Defendants interference. KrisJenn repurchased the Pipeline from TCRG using one of its series, KrisJenn Ranch, LLC-Series Pipeline ROW. KrisJenn had to take a loan from Mcleod Oil ("Mcleod") in order to make this repurchase.

6. This case seeks to interpret Debtors' and Defendants' rights in the subject contracts so that Debtor can sell the Pipeline and ROW, and pay the secured lender.

## II.
## JURISDICTION AND VENUE

7. Debtors filed a Chapter 11 Bankruptcy Petition in this Court on April 27, 2020—Case No. 20-5080.

8. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding is a core proceeding under 157(b)(2)(k) of Title 28. Jurisdiction is also conferred as this proceeding is related to the above-captioned Chapter 11 case under Title 11 and concerns property of the Debtor in that case. Therefore, the Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Sections 157(b)(2)(k) and 157(c) of Title 28 of the United States Code.

9. This proceeding is a core proceeding because it involves resolving third-party interests that encumber Debtors' property pursuant to 157(b)(2)(k) of Title 28.

10. This proceeding is also a non-core proceeding that is related to the chapter 11 case because it concerns the property of the Debtor and those concerns must be resolved for the Debtor to effect its plan of reorganization.

11. Bankruptcy courts have jurisdiction over matters that are "related to" the bankruptcy. *In re Denney*, 171 F.3d 1016, 1022 (5th Cir. 1999). A matter is "related to" a case under title 11 if the adversary proceeding's outcome may both: (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d 1016, 1022 (5th

Cir. 1999). An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).

12. Resolution of the issues alleged in the Summary of this Adversary Complaint are critical to Debtor's ability to reorganize, making jurisdiction over this action clearly appropriate pursuant to Section 157(c).

### III.
### PARTIES

13. KrisJenn Ranch, LLC is a Texas limited liability company who has appeared in this case and may be served through its counsel of record.

14. KrisJenn Ranch, LLC – Series Uvalde Ranch is a Texas limited liability company who has appeared in this case and may be served through its counsel of record.

15. KrisJenn Ranch, LLC – Series Pipeline ROW is a Texas limited liability company who has appeared in this case and may be served through its counsel of record.

16. Larry Wright is an individual who has appeared in this case and may be served through its counsel of record.

17. DMA Properties, Inc. ("DMA") is a South Carolina corporation who has appeared in this case and may be served through its counsel of record.

18. Longbranch Energy, LP ("Longbranch") is a Louisiana limited partnership who has appeared in this case and may be served through its counsel of record.

19. Frank Daniel Moore is an individual who has appeared in this case and may be served through its counsel of record.

## IV.
## BACKGROUND

20. KrisJenn Ranch, LLC ("KrisJenn") purchased the KrisJenn Ranch (the "Ranch") in 2013 for $3,952,000 and then invested an additional $840,000 in the Ranch. At such time, the Ranch was encumbered by a $5.9 million loan from Mcleod.

21. Black Duck was formed to purchase the Pipeline and ROW for $5 million plus closing costs. KrisJenn owned a 50% interest in Black Duck, and DMA owned the other 50% interest in Black Duck.

22. In 2017, KrisJenn loaned $4.1 million to Black Duck, and Larry Wright loaned Black Duck an additional $1.2 million. The $4.1 million that KrisJenn Ranch, LLC loaned to Black Duck was obtained through a loan between KrisJenn Ranch, LLC and Asilo Investments, Ltd. ("Asilo").

23. Longbranch entered into a contract to purchase the Pipeline and ROW on February 19, 2016 (the "Longbranch Contract").

24. In June of 2016, the Longbranch Contract was assigned to Black Duck from Longbranch primarily via an Agreement for Assignment and Assumption of Specific Contract (the "Longbranch Assignment").

25. On August 11, 2017, the Pipeline and ROW was purchased by Black Duck.

26. The Longbranch Assignment states:

1. Consideration: [LONGBRANCH] shall be paid twenty percent (20%) ("Net Profits Share") of the Net Profits from [BLACK DUCK] or its successors or assigns during the period of time beginning on the date . . . above.

    a. Net profits shall mean gross revenues actually received by [BLACK DUCK], or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.
    b. [BLACK DUCK'S] obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and [BLACK DUCK] binds its successors and assigns to the payment of the Net Profits Share.

*Debtors' Second Amended Complaint* 5

27. On February 7, 2018, SCMED, an entity wholly owned by Frank Daniel Moore, sold its 50% interest in Black Duck back to the company in exchange for a deal similar to the Longbranch Assignment. This agreement was between DMA, also wholly owned by Moore, and Black Duck (the "DMA Assignment") and stated as follows:

1. Consideration: DMA Properties, Inc. shall be paid twenty percent (20%) ("Net Profits Share") of the Net Profits from Black Duck Properties, LLC or its successors or assigns during the period of time beginning on the date . . . above.

   a. Net profits shall mean gross revenues actually received by Black Duck Properties, LLC., or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.

   b. Black Duck Properties, LLC.'s obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and Black Duck Properties, LLC. binds its successors and assigns to the payment of the Net Profits Share.

Collectively the Longbranch Assignment and the DMA Assignment are referred to as the "Assignment Agreements."

28. In 2018, Black Duck sold the Pipeline and ROW to TCRG for $2.5 million, and—as part of the deal—Black Duck retained 16% of the gross profits from the Pipeline and ROW. The aggregate, projected profit to Black Duck and other interested parties was estimated to be $48,000 per day.

29. The initial $2.5 million received from the TCRG sale was allocated to pay the debts encumbering the Pipeline and ROW. No profits were anticipated on the sale to TCRG until the $48,000 daily payments had satisfied the outstanding principal balance and interest owed on the loan made from KrisJenn to Black Duck used to purchase the Pipeline and ROW.

30. Later in 2018, KrisJenn became a successor-in-interest to Black Duck. Black Duck was unable to pay its debts to KrisJenn Ranch, LLC. Therefore, KrisJenn foreclosed on its note with Black

Duck. Shortly thereafter, Black Duck ceased being a going concern and was eventually wound-up, with KrisJenn being the successor-in-interest to all of Black Duck's remaining assets.

31. In 2019, shortly after the TCRG purchase, Longbranch and DMA threatened TCRG with litigation. Contrary to all prior communications with the Debtor, Defendants DMA and Longbranch, by and through their agents Moore and Borders, claimed they were entitled to receive a share of *any* income generated by the Pipeline and ROW in perpetuity, regardless of who owns the Pipeline and ROW or how many subsequent sales of the Pipeline and ROW take place. DMA and Longbranch knew these representations were false and made these representations to TCRG because they did not like the terms of the proposed deal.

32. To avoid litigation with TCRG, KrisJenn agreed to repurchase the Pipeline and ROW. KrisJenn repurchased the Pipeline and ROW through one of its series—KrisJenn Ranch, LLC-Series Pipeline Row ("Series Pipeline")—by obtaining an additional $2.5 million in financing from Mcleod. This increased the total amount of the loan from Mcleod to $5.9 million and all of the Debtors were added as borrowers to the Mcleod note.

33. KrisJenn is presently unable to sell the Pipeline and ROW because Defendants claim to have perpetual interests in them. Consequently, no purchasers are willing to purchase or operate the Pipeline or ROW for fear that DMA and Longbranch will file lawsuits asserting the same claims they alleged in the TCRG matter. The basis of the Defendants' claims are a latent or patent ambiguity in the Assignment Agreements.

## V.
## DECLARATORY JUDGMENT

34. Debtors incorporate by reference the factual allegations contained in the preceding paragraphs.

35. Pursuant to 28 U.S.C. § 2201, Debtors request that this Court construe and interpret the Longbranch Assignment, the DMA Assignment, and the Company Agreement of Black Duck, LLC to

ascertain and declare the respective rights, obligations, and liabilities of the Debtor, Longbranch, and DMA, as follows:

### A. That the Assignment Agreements Do Not "Run With the Land."

36. Debtors seek a judicial declaration that the Assignment Agreements contain personal covenants, and not real covenants that "run with the land."

37. Debtors seek a judicial declaration that Longbranch and DMA have no contractual or property rights in the Pipeline and ROW except for those borne from the net profits received by Black Duck from its operation and sale of the Pipeline and ROW.

### B. That KrisJenn is not a successor or assign to Black Duck.

38. Debtors ask this Court to declare that KrisJenn is not a successor to Black Duck, nor is it an assign to any ownership interest in Black Duck. KrisJenn is merely a successor-in-interest to certain property that was previously owned by Black Duck.

### C. That certain funds paid by KrisJenn to Black Duck were loans and not capital contributions.

39. Debtors ask this Court to declare that certain funds paid by KrisJenn to Black Duck were loans by KrisJenn and not capital contributions.

40. Plaintiffs are entitled to recover their reasonable and necessary attorney's fees and court costs pursuant to Section 37.009 of the Texas Uniform Declaratory Judgments Act.

## VI.
## TORTIOUS INTERFERENCE WITH A CONTRACT

41. Debtors incorporate by reference the factual allegations contained in the preceding paragraphs.

42. KrisJenn had a valid contract with TCRG for the sale of the Pipeline and ROW.

43. Defendants DMA, Moore, and Longbranch knew or had reason to know of KrisJenn's contract with TCRG and KrisJenn's interest in the contract.

44. Defendants DMA, Moore, and Longbranch willfully and intentionally interfered with KrisJenn's contract with TCRG when they harassed TCRG claiming to have a perpetual 20% interest in TCRG's ownership of the Pipeline and ROW that ran with the land.

45. Defendants' interference proximately cause injury to KrisJenn, which resulted in the following actual damage or loss:

   a. The loss of the TCRG deal, which would have resulted in KrisJenn earning profits of approximately $48,000 a day for as long as the Pipeline and ROW were in use, subject to DMA and Longbranch's respective 20% interest in these daily payments;

   b. Interest and fees paid for loans to purchase and repurchase the Pipeline and ROW.

46. Debtors are entitled to recover their pre- and post-judgment interest and court costs.

47. Debtors injury resulted from Defendants' malice or actual fraud, which entitles Debtors to exemplary damages under Section 41.003(a) of the Texas Civil Practice & Remedies Code.

## VII.
## BREACH OF CONTRACT

48. Debtors incorporate by reference the factual allegations contained in the preceding paragraphs.

49. In the event that a judicial declaration is made that KrisJenn made additional capital contributions, rather than a loan to Black Duck KrisJenn asserts the following:

50. The Company Agreement is a valid and enforceable contract with SCMED and Moore. Debtors are a proper party to sue for breach of this contract. Debtors have performed their obligations under the Company Agreement.

51. SCMED and Moore breached their contractual obligations under Article IV of the Company Agreement and caused injury to Debtors.

52. Debtors damages include actual and consequential damages as well as pre- and post-judgment interest as allowed by law.

53. Debtors are entitled to recover reasonable and necessary attorney's fees and costs of court pursuant to the terms of the Company Agreement and under Texas Civil Practice and Remedies Code section 38.001.

WHEREFORE PREMISES CONSIDERED Debtors asks for declaratory relief, their actual, consequential, and exemplary damages, recovery of reasonable and necessary attorney's fees, pre- and post-judgment interest, court costs, and such other and further relief to which they may be justly entitled.

Dated: October 14, 2020

          Respectfully submitted,

          MULLER SMEBERG, PLLC

By:   /s/ *John Muller*
      C. John Muller IV
      State Bar No. 24070306
      john@muller-smeberg.com
      Ronald J. Smeberg
      State Bar No. 24033967
      ron@smeberg.com
      Ezekiel J. Perez
      State Bar No. 24096782
      zeke@muller-smeberg.com
      MULLER SMEBERG, PLLC
      111 W. Sunset Rd.
      San Antonio, TX 78209
      Telephone: 210-664-5000
      Facsimile: 210-598-7357

          ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 15th day of October 2020:

| | |
|---|---|
| Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, Texas 78209<br>210-829-2022<br>210-829-2021 fax<br>mblack@burnsandblack.com<br>Attorneys for Longbranch Energy, LP<br>and DMA Properties, Inc. | Natalie Wilson<br>LANGLEY & BANACK, INC.<br>745 East Mulberry Avenue \| Suite 700<br>San Antonio, TX 78212<br>210-736-6600<br>lwilson@langleybanack.com<br>Attorneys for DMA Properties, Inc. |
| Christopher S. Johns<br>Christen Mason Hebert<br>JOHNS & COUNSEL PLLC<br>14101 Highway 290 West, Suite 400A<br>Austin, Texas 78737<br>512-399-3150<br>512-572-8005 fax<br>cjohns@johnsandcounsel.com<br>chebert@johnsandcounsel.com | Jeffery Duke<br>DUKE BANISTER MILLER & MILLER<br>22310 Grand Corner Drive, Suite 110<br>Katy, Texas 77494<br>jduke@dbmmlaw.com<br>Counsel for Longbranch Energy, LP |
| Timothy Cleveland<br>CLEVELAND \| TERRAZAS PLLC<br>4611 Bee Cave Road, Suite 306B<br>Austin, Texas 78746<br>512-689-8698<br>tcleveland@clevelandterrazas.com<br>Attorneys for DMA Properties, Inc. | William Germany<br>BAYNE, SNELL, & KRAUSE<br>1250 NE Loop 410, Ste. 725<br>San Antonio, Texas 78209<br>T- (210) 824-3278<br>F- (210) 824-3937<br>wgermany@bskaw.net<br>Attorney for Larry Wright |
| | OFFICE OF THE UNITED STATES TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, Texas 78701<br>shane.p.tobin@usdoj.gov<br>United States Trustee |

                                                           /s/ John Muller
                                                         C. John Muller