IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re:<br>**KRISJENN RANCH, LLC,**<br>    *Debtor* | § § § § | Chapter 11<br><br>Case No. 20-50805 |
| **KRISJENN RANCH, LLC and KRISJENN RANCH, LLC-SERIES UVALDE RANCH, and KRISJENN RANCH, LLC-SERIES PIPELINE ROW as successors in interest to BLACKDUCK PROPERTIES, LLC,**<br>    *Plaintiffs*<br><br>v.<br><br>**DMA PROPERTIES, INC., and LONGBRANCH ENERGY, LP,**<br>    *Defendants* | § § § § § § § § § § § § § § | Adversary No. 20-05027 |
| **DMA PROPERTIES, INC.,**<br>    *Cross-Plaintiff/Third Party Plaintiff*<br><br>v.<br><br>**KRISJENN RANCH, LLC, KRISJENN RANCH, LLC-SERIES UVALDE RANCH, and KRISJENN RANCH, LLC-SERIES PIPELINE ROW, BLACK DUCK PROPERTIES, LLC, LARRY WRIGHT, and JOHN TERRILL,**<br>    *Cross-Defendants/Third-Party Defendants* | § § § § § § § § § § § § § § | Adversary No. 20-05027 |

**DEBTORS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
<u>**ON FRANK DANIEL MOORE'S CLAIMS**</u>

TO THE HONORABLE CHIEF BANKRUPCY JUDGE RONALD B. KING:

*Debtors' Motion for Partial Summary*      1
*Judgment On Moore's Claims*

COME NOW Debtors, Plaintiffs, and Counter-Defendants KrisJenn Ranch, LLC ("KrisJenn"), KrisJenn Ranch, LLC-Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row ("Series Pipeline ROW") (collectively the "Debtors"), and file this Motion for Partial Summary Judgment, and would respectfully show as follows:

## SUMMARY OF THE ARGUMENTS

Frank Daniel Moore asserts Debtors somehow committed fraud when DMA Properties, Inc. ("DMA") and Black Duck Properties, LLC ("Black Duck") entered into the Pipeline Agreement. Under the economic loss rule, Moore is precluded from asserting his fraud claims in a cause of action that sounds in contract alone. Therefore, Moore's fraud in the alternative claim fails as a matter of law.

In addition, Moore argues that Debtors committed fraud by failing to disclose that Black Duck took a loan from KrisJenn in order to purchase the Pipeline. Even if the non-disclosure could be construed as a fraud—which it cannot—Moore could not have believed that Black Duck did not need to borrow money in order to purchase the Pipeline because Black Duck only raised $1,000 in capital contributions and had no other liquid assets. Further, Larry Wright disclosed the KrisJenn loan to Moore in an email. As such, Moore cannot claim he could have justifiably relied on any assertion or assumption Black Duck did not need to borrow money to purchase the Pipeline. Therefore, Moore's fraud in the alternative claim fails as a matter of law.

Moore also claims that the Debtors "perpetrated a fraud" on Moore by effecting a "sham foreclosure" on Black Duck's assets to obtain the Pipeline. However, Moore's claim is without merit because the Pipeline was acquired by an outright purchase of the Pipeline from TCRG East Texas Pipeline 1, LLC ("TCRG") after Moore and DMA scuttled the deal between Black Duck and TCRG. Moore is unable to prove his claim for fraud regarding the "sham foreclosure" on the

Pipeline because no such foreclosure ever occurred on the Pipeline. Therefore, judgment on this issue should be rendered in favor of the Debtors as a matter of law.

Every breach of contract requires the defendant to be in privity of contract with the plaintiff. Here, Debtors were never in privity of contract with Moore. The Pipeline Agreement was between Black Duck and DMA. Neither Moore nor Debtors were ever a party to the contract Moore claims Debtors breached. Because Debtors did not have contractual privity with Moore on the Pipeline Agreement, Moore's breach of contract claim fails as a matter of law.

Moore cannot provide evidence supporting its claim of tortious interference with the Pipeline Agreement. Debtors simply purchased the Pipeline from TCRG after DMA and Moore scuttled that deal. Moore is unable to show how this action tortiously interfered with the contract between Black Duck and DMA, or how he was harmed by this alleged interference. Alternatively, Series Pipeline ROW exercised its own legal rights when it purchased the Pipeline from TCRG. As such, Series Pipeline ROW is not liable for any alleged tortious interference of the Pipeline Agreement under the affirmative defense of justification.

## BACKGROUND

In February 2016, Darrin Borders, through his entity Longbranch Energy, LP ("Longbranch"), secured the right to purchase the Pipeline and its Right of Way (respectively, the "Pipeline" and "ROW"). Longbranch did not have the monetary resources to close this transaction and, therefore, sold and assigned the right to purchase the Pipeline and ROW to Black Duck. *See* Ex. C. Black Duck was owned by SCMED Oilfield Consulting, LLC ("SCMED") and KrisJenn Ranch, LLC ("KrisJenn"). *See* Ex. B. During its formation, Black Duck raised $1,000 in initial capital. *Id.* at ¶ 4.01. Black Duck's Operating Agreement states that no further capital contributions could be compelled, and that all subsequent funding to the company would be a loan

from the members.  *See* Ex. B, ¶ 4.02.  As such, all members of Black Duck knew that its operations would be funded by and through loans from its inception.  *See* Ex. A.

KrisJenn provided approximately $5 million in loans to Black Duck in order to fund the purchase of the Pipeline and ROW.  *See* Ex. A.  Of this amount, KrisJenn secured $4.1 million from another lender on a short term loan.  *See* Ex. A.  KrisJenn contributed these funds because SCMED, by and through Moore, falsely and fraudulently claimed that it could promptly secure a buyer for the Pipeline and ROW.  *See* Ex. A.

SCMED was unable to locate a buyer for the Pipeline and ROW, and thereafter failed to actively participate in Black Duck.  *See* Ex. A.  SCMED subsequently surrendered its ownership in Black Duck in return for a promise that Black Duck would pay 20% of its profits from the funds received by Black Duck in relation to the maintenance, sale, use, and operation of the Pipeline to DMA (the "Pipeline Agreement").  *See* Ex. D.  At all relevant times, and continuing to the present date, Black Duck has honored the Pipeline Agreement.  It did, in fact, find a purchaser for the Pipeline—TCRG.  It did, in fact, include DMA's net profits interest in the transaction.  In particular, Black Duck agreed that 20% of the estimated daily profits from the TCRG deal would be paid to DMA.  *See* Ex. A.  The daily payments were estimated to be $48,000 and, as a result, DMA was estimated to receive $10,000 a day after Black Duck's acquisition costs had been satisfied.  *See* Ex. A.

DMA and Moore was not satisfied with this result.  They contacted TCRG directly and demanded to receive 20% of TCRG's net profits, rather than 20% of the net profits received by Black Duck.  This position was not supported by any law and, moreover, was directly contrary to the clear language of the Pipeline Agreement.  DMA has a 20% net profits interest in Black Duck's profits from the sale, maintenance, operation, or use of the Pipeline—not a subsequent purchaser's

profits. *See* Ex. D. Nevertheless, DMA and Moore repeatedly threatened TCRG with litigation and convinced its principals that Wright had lied about DMA's interest under the Pipeline Agreement. *See* Ex. A. These representations were categorically false, and all parties to the transaction were well aware that they would receive the net profits interest that were promised by Black Duck. *See* Ex. A.

Moore now claim that the Debtors—who were not a party to the agreement between Black Duck and DMA—have breached a contract and committed various torts against Moore in this transaction. Debtors file this motion for partial summary judgment to narrow the issues for trial and dismiss those claims that have no legal or factual basis.

## LEGAL STANDARD

"A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing FED. R. CIV. P. 56(c)). "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Ragas*, 136 F.3d at 458 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986)). "When ruling on a motion for summary judgment, 'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Ragas*, 136 F.3d at 458.

## ARGUMENT

I. **MOORE'S FRAUD IN THE ALTERNATIVE CLAIM IS BARRED BY THE ECONOMIC LOSS RULE AND LACK OF JUSTIFIABLE RELIANCE**

Nearly all of Moore's assertions of fraud are directed at Wright or Black Duck, rather than Debtors. To the extent the Court construes Moore's assertions against Debtors, Debtors argue that Moore's fraud claims are barred by the economic loss rule.

### A. *Economic Loss Rule*

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). "Although the principles of contract and tort causes of action are well settled, often it is difficult to determine the type of action that is brought." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617 (Tex. 1986). The Court "must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Id.* at 617–18.

"The contractual relationship of the parties may create duties under both contract and tort law." *Id.* at 618. "The acts of a party may breach duties in tort or contract alone or simultaneously in both." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Reed*, 711 S.W.2d at 618). "The nature of the injury most often determines which duty or duties are breached." *Sharyland Water Supply Co. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) (quoting *DeLanney*, 809 S.W.2d at 495). "When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Id.*

Moore claims that Black Duck and Wright falsely represented the Pipeline Agreement would be binding on subsequent owners of the right of way. Essentially, Moore complains about the loss of its contractual expectancy under the Pipeline Agreement. This is the quintessential application of the economic loss rule. Moore argues DMA is entitled to 20% of the net profits generated from the Pipeline, rather than the profits earned by Black Duck from the Pipeline. Moore continues to argue that this 20% interest is binding on subsequent purchasers, and those subsequent purchasers will be liable to DMA for 20% of their net profits in perpetuity. Moore's fraud contentions are also the basis for Moore's breach of contract claim. Because the economic loss

rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy, Moore is barred—as a matter of law—from asserting a tort claim that sounds in contract alone.

### B. Justifiable Reliance

"The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

As an element of fraud, Moore has to prove that he *justifiably* relied on Wright's purported non-disclosure of the KrisJenn loan. Here, Moore knew Black Duck had to borrow money in order to purchase assets because Black Duck only raised $1,000 in capital contributions. *See* Ex. B, ¶ 4.01. Moreover, Wright informed Moore of the loan and clearly stated in the August 3, 2017 Email that Black Duck would be burdened with approximately $5 million in debt to purchase the Pipeline. *See* Ex. E. Therefore, Moore cannot have justifiably relied on any alleged representation that Black Duck did not need to borrow money in order to purchase the Pipeline.

### C. Moore's Sham Foreclosure Argument Lacks Merit

Finally, Moore claims that Wright used the Debtors to perpetrate a fraud through a sham foreclosure. Moore's assertions are baseless because Debtors never foreclosed on the Pipeline. Series Pipeline ROW purchased the Pipeline outright from TCRG after Moore and DMA scuttled that deal. *See* Ex. A. Black Duck was no longer a going concern when TCRG asked Wright to

buy back the Pipeline. Therefore, in order to preserve the business relationship and prevent any potential lawsuits, Wright repurchased the Pipeline using his entity Series Pipeline ROW. *See* Ex. A. Contrary to Moore's assertion, the Pipeline was not an asset seized under foreclosure.

## II. MOORE'S BREACH OF CONTRACT CLAIM REGARDING THE PIPELINE FAILS BECAUSE THERE IS NO PRIVITY OF CONTRACT BETWEEN MOORE AND THE DEBTORS

"Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; and (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "Under the general law of contracts, a party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract." *Ostrovits & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.); *see also Shawn Ibrahim, Inc. v. Houston-Galveston Area Local Dev. Corp.*, 582 S.W.3d 753, 767–68 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("To maintain a breach of contract action, a plaintiff must show privity of contract . . . ."). "Privity exists if the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned his or her cause of action to the plaintiff." *Ostrovits & Gwinn, LLC*, 393 S.W.3d at 387; *see also First-Citizens Bank & Tr. Co. v. Greater Austin Telecomm.*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.) ("For purposes of standing, privity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff."); *Assoc. Int'l Ins. Co. v. Scottsdale Ins. Co.*, 862 F.3d 508, 510 (5th Cir. 2017) (analyzing privity of contract as a necessary component to maintain a breach of contract action under Texas law).

Here, Moore does not have privity of contract with Debtors. DMA entered into a contract with Black Duck, not Debtors. *See* Ex. D. Moreover, neither Moore nor SCMED are parties to this contract. *See* Ex. D. In this case, privity can only exist if Debtors were a party to an enforceable contract with Moore, or if Moore was assigned a contractual right from someone who had an enforceable contract with the Debtors. In this case, neither scenario has occurred. Debtors were never a party to the contract Moore is seeking to enforce in this case. Therefore, Moore does not have standing to bring suit against Debtors because he lacks the required privity of contract with Debtors as a matter of law.

### III. MOORE'S TORTIOUS INTERFERENCE CLAIM FAILS BECAUSE IT CANNOT SATISFY ALL OF THE REQUIRED ELEMENTS.

The Texas Supreme Court has "identified the elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Financial Review Serv., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A judgment, as a matter of law, for the Defendant of a tortious interference claim could be proper if (1) the Plaintiff fails to present evidence about one of the elements of the tort, (2) the Defendant conclusively negates one of the elements, or (3) the Defendant conclusively establishes its justification defense. *Id.*[1]

Here, Moore complains of alleged interference with the Pipeline Agreement. However, Moore is neither a party nor a beneficiary to that agreement. Moore's claim for tortious interference fails because Moore is not a party or beneficiary to an existing contract that is subject

---

[1] Although the *Prudential* court reviewed that case under a directed verdict standard, the test for legal sufficiency should be the same for summary judgments and directed verdicts. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000) ("The standard for judgment as a matter of law under Rule 50 [(Directed Verdict)] mirrors the standard for summary judgment under Rule 56.").

*Debtors' Motion for Partial Summary* 9
*Judgment On Moore's Claims*

to interference. It is axiomatic that a party does not have standing to sue for tortious interference of a contract that is not his own.

Moreover, Moore is unable to bring a claim for tortious interference when he has provided no evidence the Debtors committed a willful and intentional act or interference with the February 3, 2018 Email Agreement or the Pipeline Agreement. Debtors simply purchased the Pipeline through Series Pipeline ROW to avoid any potential issues with TCRG due to Moore's interference with the TCRG deal. *See* Ex. A.

Moore can provide no evidence of Debtors willful and intentional interference with DMA's contract with Black Duck. DMA and Black Duck, or their assignees of the claim, are the only parties who have standing to sue for tortious interference with the Pipeline Agreement. Moore cannot be an assignee of DMA's claim because DMA is pursuing that same claim in this adversary proceedings. Moore and DMA should be estopped from trying to get two bites of the same apple. Further, DMA's only recourse for damages, if any, regarding the loss of the Pipeline is through Black Duck, not the Debtors, because Debtors simply purchased the Pipeline from TCRG after DMA threatened to sue TCRG. *See* Ex. A.

Moore's tortious interference claim also fails because Moore cannot show that Debtors' actions proximately caused injury to Moore, or that Moore suffered any actual damages. DMA had a right to recover 20% of the net profits received by Black Duck in relation to the Pipeline, not Moore or SCMED. *See* Ex. D. Black Duck never received net profits from the Pipeline because of DMA's tortious interference with the TCRG deal. *See* Ex. A. It was DMA and Moore's conduct that caused DMA's own injury, if any, regarding the Pipeline. Moore now blindly asserts that Debtors somehow tortiously interfered with the Pipeline Agreement between Black Duck and DMA, and Moore or SCMED were somehow injured by this alleged interference. Moore's

assertions are not supported by any facts. Therefore, the Court should rule Moore's tortious interference claim fails as a matter of law because Moore is unable to present evidence supporting the elements of the tort.

"Justification is an affirmative defense to tortious interference with [a] contract . . . ." *Prudential Ins. Co. of Am.*, 29 S.W.3d at 80. "[A]s an affirmative defense, a defendant may negate liability on the ground that its conduct was privileged or justified." *Id.* at 77–78. "The justification defense can be based on the exercise of either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Id.* at 80. "[I]f a trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, the defendant has conclusively established the justification defense, and the motive is irrelevant." *Id.* "Alternatively, if the defendant cannot prove justification as a matter of law, it can still establish the defense if the trial court determines that the defendant interfered while exercising a colorable right, and the jury finds that, although mistaken, the defendant exercised that colorable right in good faith." *Id.*

Even if Moore could factually support all the elements for its claim of tortious interference—which it cannot—it would not matter because Debtors had an absolute right to purchase the Pipeline from TCRG after DMA and Moore scuttled that deal. Debtors are free to purchase any asset they desire in furtherance of their business.

Here, Black Duck sold the Pipeline to TCRG in exchange for $2.5 million and a 16% gross interest in the funds generated by the Pipeline. *See* Ex. A. Black Duck would have been obligated to pay DMA 20% of whatever net profits were generated from the Pipeline after the KrisJenn loan was paid off. Black Duck affirmatively made plans to pay DMA 20% of its net profits on the sale to TCRG; however, DMA was not satisfied and demanded to receive 20% of TCRG's net profits.

*See* Ex. A. DMA and Moore subsequently threatened a lawsuit against TCRG claiming to have a 20% interest in the Pipeline that "ran with the land." *See* Ex. A. Because Black Duck was defunct and without funding at this time, Series Pipeline ROW purchased the Pipeline from TCRG to avoid litigation.

Series Pipeline ROW simply purchased the Pipeline from TCRG after Moore and DMA scuttled the deal between Black Duck and TCRG. *See* Ex. A. Series Pipeline ROW had a legal right to purchase the Pipeline from TCRG and such purchase did not interfere with Black Duck and DMA's contract. Because Debtors had a legal right to purchase the Pipeline, any purported interference with the DMA/Black Duck contract as a result of this purchase is justified as a matter of law. Alternatively, Series Pipeline ROW's purchase of the Pipeline from TCRG was at least a colorable right exercised in good faith, and sufficient to establish the defense of justification.

WHEREFORE PREMISES CONSIDERED Debtors pray that this Court issue an order granting Debtors' Motion for Partial Summary Judgment on Moore's Breach of Contract, Tortious Interference, and Fraud in the Alternative Claims, and for such further relief as the Court may deem them justly entitled.

Dated: October 26, 2020.

Respectfully submitted,

MULLER SMEBERG, PLLC

By:   /s/ *John Muller*
     C. John Muller IV
     State Bar No. 24070306
     john@muller-smeberg.com
     Ronald J. Smeberg
     State Bar No. 24033967
     ron@smeberg.com
     Ezekiel J. Perez
     State Bar No. 24096782
     zeke@muller-smeberg.com
     MULLER SMEBERG, PLLC
     111 W. Sunset Rd.
     San Antonio, TX 78209
     Telephone: 210-664-5000
     Facsimile: 210-598-7357
     ATTORNEYS FOR DEBTORS

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 26th day of October 2020:

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com
Attorneys for Longbranch Energy, LP
and DMA Properties, Inc.

Christopher S. Johns
Christen Mason Hebert
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

Timothy Cleveland
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com
Attorneys for DMA Properties, Inc.

Natalie Wilson
LANGLEY & BANACK, INC.
745 East Mulberry Avenue | Suite 700
San Antonio, TX 78212
210-736-6600
lwilson@langleybanack.com
Attorneys for DMA Properties, Inc.

Jeffery Duke
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, Texas 77494
jduke@dbmmlaw.com
Counsel for Longbranch Energy, LP

William Germany
BAYNE, SNELL, & KRAUSE
1250 NE Loop 410, Ste. 725
San Antonio, Texas 78209
T- (210) 824-3278
F- (210) 824-3937
wgermany@bskaw.net
Attorney for Larry Wright

OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, Texas 78701
shane.p.tobin@usdoj.gov
United States Trustee

      /s/ *John Muller*
      C. John Muller IV