# Exhibit 35:
# Compromise Settlement Agreement

## COMPROMISE SETTLEMENT AGREEMENT

This Compromise Settlement Agreement ("Agreement") is made and entered into to be effective this 11th day of November, 2019 ("Effective Date") by and between TCRG East Texas Pipeline 1, LLC, a Texas limited liability company ("TCRG") on the one hand and, on the other hand, Larry Wright, KrisJenn Ranch, LLC, a Texas series limited liability company, KrisJenn Ranch, LLC-Series Uvalde Ranch, a Texas series limited liability company, and KrisJenn Ranch, LLC-Series Pipeline ROW, a newly formed Texas limited liability company series ("KJ Ranch-Pipeline ROW") (unless otherwise indicated herein, collectively "KJ Ranch Parties").

WHEREAS, on March 22, 2018, Black Duck Properties, LLC ("Black Duck") and TCRG entered into that certain Purchase and Sale Agreement whereby Black Duck sold to TCRG the real property and improvements consisting of (a) fifty-three (53) right of way tracts of land through sixty-five (65) (+/- five (5) miles) contiguous miles of rights of way; and (b) all of its interest in the fixtures, personal property, facilities and equipment, used or held for use or charged to the Rights-of-Way (the "Property"), which is attached hereto as Exhibit A and incorporated herein as though fully set forth at length ("TCRG Agreement").

WHEREAS, on or about April 3, 2018, Black Duck and TCRG executed the Deed, Conveyance, Assignment and Bill of Sale whereby Black Duck conveyed the Property to TCRG for the anticipated construction of a substitute pipeline for the transportation of water across the Property as more fully described therein (the "Deed").

WHEREAS, under the terms of the TCRG Agreement and pursuant to the Limited Assignment of Interest in Water Pipeline (the "Limited Assignment"), Black Duck received $2.5 million in cash and a sixteen percent (16%) carried interest in the "Northern Water Project," a water transport pipe contemplated to be built on, in, or under the Property by TCRG.

WHEREAS, after certain loans owed by Black Duck and used by Black Duck to acquire the Property were satisfied by transferring Black Duck's interest in the TCRG Agreement to KrisJenn Ranch, LLC and KrisJenn Ranch, LLC-Series Uvalde Ranch (together, "KJ Ranch"), Black Duck was wound up and terminated its existence with the State of Texas on December 18, 2018 such that KJ Ranch is the successor to Black Duck as related to the TCRG Agreement and the Limited Assignment.

WHEREAS, after the TCRG Agreement and the sale of the Property to TCRG, DMA Properties, Inc. and Frank Daniel Moore (together, "Moore"), and Longbranch Energy, L.P., Darin Borders, Inc., and Darin Borders (collectively, "Borders") made demand on TCRG claiming that each of Moore and Borders retained and owned twenty percent (20%) of all profits generated by use of the Property in perpetuity by any party, including TCRG, pursuant to two documents that have commonly been referred to as the "Longbranch Assignment" and the "DMA Agreement" each of which was executed with Black Duck.

**COMPROMISE SETTLEMENT AGREEMENT.** Page 1

WHEREAS, on June 26, 2019, Wright filed a lawsuit styled *Larry M. Wright et al. v. Frank Daniel Moore*, et. al., Cause No. 19-1489-CV-C, 25th Judicial District, Guadalupe County, Texas seeking, in part, to declare the rights of the parties arising from the Longbranch Assignment and the DMA Agreement (the "Guadalupe County Suit").

WHEREAS, on June 26, 2019, Borders filed a lawsuit styled *Longbranch Energy, L.P. v. TCRG East Texas Pipeline 1, LLC, et al.*, Cause No. 19CV34877, 123rd/273rd Judicial District Court, Shelby County, Texas seeking, in part, to declare Longbranch's rights in the Property ("Shelby County Suit").

WHEREAS, as a consequence of Moore's and Borders' claims to any profits generated by use of the Property in perpetuity as well as the Guadalupe County Suit and the Shelby County Suit, TCRG refused to incur any additional costs to develop the Northern Water Project, accused Black Duck and its Manager, Larry M. Wright of misrepresenting the Property and failing to disclose Moore's and Borders' alleged interests in the Property, and made demand against and threatened to sue Black Duck, KJ Ranch, and Wright (the "TCRG Demand").

**NOW THEREFORE**, for and in consideration of the mutual promises, agreements, mutual covenants, stipulations, obligations and conditions contained herein, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties to this Agreement agree as follows:

1. **DEFINITIONS**.

    (a) "**Claim**" and "**Claims**" means all claims, rights, title, interest, demands, damages, debts, losses, lost income/revenue, injuries, liabilities, offsets, setoffs, fees, costs, expenses, actions or causes of action, private rights of actions, regulatory complaints and violations, proceedings, torts, cross-claims, third-party claims, counterclaims, and any and all such potential claims, including without limitation, any claim or allegation regarding the Property, the TCRG Agreement, the Deed, the Limited Assignment, and the Northern Water Project, whether asserted or unasserted by and amongst TCRG, Wright, and KJ Ranch. "Claim" and "Claims" shall include, but is not limited to the Claims asserted in or that could have been raised in the TCRG Demand, the Guadalupe County Suit, and the Shelby County Suit, whether now known or hereafter discovered, of any nature whatsoever, known and unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, whether contractual, extra-contractual, in tort or otherwise, under federal, state, regulations, failure to comply with regulations, or common law or any other law or at equity, or otherwise relating to the Property, the TCRG Agreement, the Deed, the Limited Assignment, and the Northern Water Project, by and among TCRG, Wright, and KJ Ranch. As used in this Agreement, the Parties expressly acknowledge and agree that "Claim" and "Claims" shall **not** include or encompass the rights or obligations of Moore, DMA Properties, Longbranch, or Borders which are beyond the control of the Parties hereto.

(b) "**Party**" and "**Parties**" means TCRG, Wright, KJ Ranch, and KJ Ranch-Pipeline ROW and shall also include any entity in which TCRG, Wright, KJ Ranch or KJ Ranch-Pipeline ROW is a member, partner, limited partner or has any interest, directly or indirectly and any entity in which TCRG, Wright, KJ Ranch or KJ Ranch-Pipeline ROW has the power to control, directly or indirectly, the management of such entity whether acting, individually or in combination with others individuals, persons, or entities, whether it be through position(s) as executor, director, officer, member, manager, owners, shareholders, principal, trustee, beneficiary, holder of power of attorney or other authority to act, partner, limited partner, general partner, joint venturer, or otherwise.

(c) "**Settlement Amount**" means Two Million Five Hundred Thousand US Dollars and No Cents ($2,500,000.00).

(d) "**Funding Date**" means December 20, 2019.

(e) "**Earnest Money**" means the non-refundable amount of Two Hundred Thousand US Dollars and No Cents ($200,000.00).

2. **WARRANTIES & REPRESENTATIONS.**

(a) **Signatories Authority.** Each person signing this Agreement represents and warrants that he/she has full power, legal right, capacity, and authority to accept, sign, execute, and deliver this Agreement for the person or entity(ies) whom the signatory represents.

(b) **Authority to Settle**. Each person and entity executing this Agreement represents that it has full power, legal right, capacity, and authority to execute and deliver this Agreement, to perform its obligations hereunder, and to consummate the transactions contemplated hereby. Each person and entity executing this Agreement further warrants that this Agreement has been duly executed and delivered by it and constitutes a legal, valid, and binding obligation and is enforceable against it in accordance with its terms.

(c) **Sole Owner of Released Claims**. Each person and entity executing this Agreement releasing a Claim or Claims in this Agreement represents and warrants that it is the sole owner of the Claim or Claims that it is compromising, settling, and releasing herein and that it has not transferred, assigned, pledged, sold or encumbered in any way any Claim or Claims released herein.

3. **Consideration.**

(a) **Settlement Amount and Conveyance of Property.** On or before the Funding Date, the KJ Ranch Parties shall deliver the Settlement Amount (<u>with credit applied for the Earnest Money</u>), to TCRG in good funds for immediate credit to TCRG, either by wire transfer or by a certified or cashier's check payable to the order of TCRG in consideration for which TCRG shall, subject to the terms and conditions set forth in this Agreement, upon written confirmation of receipt

the Settlement Amount, convey to KJ Ranch-Pipeline ROW and KJ Ranch-Pipeline ROW agrees to accept from TCRG for the Settlement Amount (defined above), the Property in the form of the TCRG-KJ Ranch-Pipeline ROW Deed attached hereto as Exhibit B and incorporated herein as though fully set forth at length. It is expressly agreed by the KJ Ranch Parties that there have been no representations, understandings, stipulations, agreements or promises by TCRG pertaining to the Property and the TCRG-KJ Ranch-Pipeline ROW Deed which are not incorporated in writing herein. TCRG'S DUTIES AND WARRANTIES ARE LIMITED TO THOSE SET FORTH IN THIS AGREEMENT AND THE TCRG-KJ RANCH-PIPELINE ROW DEED, AND SHALL NOT INCLUDE ANY WARRANTIES OF TITLE, ANY IMPLIED DUTIES OR ANY IMPLIED WARRANTIES, ALL OF WHICH ARE HEREBY DISCLAIMED BY TCRG AND WAIVED BY WRIGHT, KJ RANCH, AND KJ RANCH-PIPELINE ROW. TCRG EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY REGARDING THE PROPERTY. THE PROPERTY BEING CONVEYED IS IN ITS AS-IS, WHERE-IS CONDITION. Notwithstanding the foregoing, TCRG represents wand warrants to the KJ Ranch Parties that since TCRG obtained title from Black Duck by the TCRG Agreement and the Deed, TCRG has not transferred any interest in or title to the Property to any third parties.

(b)     **Assignment of Claims.** Contemporaneously with TCRG's receipt of the Settlement Amount (with credit applied for the Earnest Money), to TCRG in good funds for immediate credit to TCRG, either by wire transfer or by a certified or cashier's check payable to the order of TCRG in consideration for which TCRG shall, subject to the terms and conditions set forth in this Agreement, TCRG shall deliver to the KJ Ranch Parties the Assignment of Claims in the form of Exhibit C, attached hereto.

(c)     **Mutual Releases.** Contingent upon each of the Parties' respective timely and full performance of the preceding obligations, the Parties fully and irrevocably release, acquit, forgive, and discharge each other from any and all Claims in the TCRG Demand, the Guadalupe County Suit, and the Shelby County Suit or that could have been asserted in the TRCRG Demand, the Guadalupe County Suit, and the Shelby County Suit and any and all other Claims related to the Property, including but not limited to any continuing duty or obligation arising out of the TCRG Agreement, the Deed, the Limited Assignment, and the Northern Water Project. This release shall be construed as broadly as possible and as absolute, unconditional, and irrevocable, including the release, acquittal, forgiveness, and discharge of all known and unknown Claim and Claims, injuries, whether asserted or unasserted, now known or hereafter discovered, matured and unmatured, of any nature whatsoever, known and unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, whether contractual, extra-contractual, in tort or otherwise, under federal, state, or common law or any other law or at equity, or otherwise. The foregoing releases shall be for and include all Claims from the beginning of time until the date of Agreement. Nothing in the releases contained in this Agreement shall be deemed or construed as a release of any obligation created by this Agreement.

(d) **Indemnification**. Contingent upon each of the Parties' respective timely and full the performance of the preceding obligations, the KJ Ranch Parties shall indemnify, defend and hold harmless TCRG and TCRG's agents and their respective officers, directors, beneficiaries, shareholders, partners, employees, agents and contractors "Indemnified Parties") from and against any and all loss, damage, claim, demand, liability or expense (including reasonable attorneys' fees) arising from claims by third parties, including but not limited to Borders and Moore, based on any acts or omissions of the KJ Ranch Parties in connection with the Claims, the Property, the TCRG Agreement, the Deed, the Limited Assignment, and the Northern Water Project, the Guadalupe County Suit, and the Shelby County Suit. The KJ Ranch Parties shall have the right and obligation to assume the defense of any claim covered by this indemnity on behalf of both itself and the Indemnified Parties, and the Indemnified Parties may not settle such claim without the consent of the KJ Ranch Parties provided (i) the KJ Ranch Parties acknowledge to the Indemnified Parties in writing that it is responsible for such claim under the terms of this paragraph and (ii) the lawyers selected by the KJ Ranch Parties to handle such defense are reasonably satisfactory to the Indemnified Parties and such representation does not result in a conflict of interest for such lawyers. The Indemnified Parties may participate in the defense of such claim at their own expense unless the KJ Ranch Parties are not representing the Indemnified Parties in which case the reasonable expense of the Indemnified Parties in defending against such claim will be paid by the KJ Ranch Parties. The provisions of this paragraph will survive the expiration or sooner termination of this Agreement.

4. **Default and Remedies.**

(a) The KJ Ranch Parties, jointly and severally, will be in default under this Agreement if the KJ Ranch Parties fail or refuse to pay the Settlement Amount (with credit applied for the Earnest Money), to TCRG in good funds for immediate credit to TCRG, either by wire transfer or by a certified or cashier's check payable to the order of TCRG on or before the Funding Date. In such event, TCRG, as its sole and exclusive remedy, shall be entitled to terminate this Agreement by giving electronic written notice to the KJ Ranch Parties through their attorneys, whereupon TCRG shall retain the Earnest Money as liquidated damages free of any claims by KJ Ranch Parties. The foregoing to which TCRG may be entitled is the parties' reasonable forecast of just compensation for the harm that KJ Ranch Parties' breach would cause to TCRG, which is otherwise impossible or very difficult to estimate accurately. If TCRG terminates this Agreement as set forth in this Section 4(a), neither TCRG nor the KJ Ranch Parties, jointly and severally, thereafter shall have any further rights or obligations under this Agreement except those that the performance of which survives termination. Notwithstanding anything to the contrary, in no event or circumstance shall either TCRG or the KJ Ranch Parties, jointly and severally, be liable for any speculative, consequential or punitive damages.

(b) TCRG will be in default under this Agreement if it fails or refuses to convey the Property to KJ Ranch-Pipeline ROW pursuant to Section 3(a) in the formof

Exhibit B, attached hereto, or fails to deliver to the KJ Ranch Parties the Assignment of Claims in the form of Exhibit C, attached hereto. In such event, the KJ Ranch Parties may: (i) terminate this Agreement by giving electronic written notice to TCRG through its attorney on or after the date following the Funding Date, whereupon TCRG shall immediately return the Earnest Money; and (ii) seek to enforce this Agreement against TCRG by specific performance. If the KJ Ranch Parties terminate this Agreement as set forth in this Section 4(b)(i), neither TCRG nor the KJ Ranch Parties, jointly and severally, thereafter shall have any further rights or obligations under this Agreement except those that the performance of which survives termination. Notwithstanding anything to the contrary, in no event or circumstance shall either TCRG or the KJ Ranch Parties, jointly and severally, be liable for any speculative, consequential or punitive damages.

5. **Exclusivity**. From the date that TCRG receives the Earnest Money until the Funding Date, TCRG shall not enter into any agreements with any third party(ies) regarding the sale or conveyance of the Property or any portion of or right in the Property.

6. **Confidentiality**. No Party shall disclose the existence of this Agreement or any of its terms to any person without the written consent of the other Party, other than to those professional advisors and any lenders and investors who have agreed in writing to preserve the confidentiality of such information as required hereby. The Parties' obligation to keep such information confidential shall not apply to the extent necessary or required under any applicable law or in connection with any judicial process regarding any legal action, suit, or proceeding arising out of or relating to this Agreement.

7. **Notices**. To the extent that this Agreement requires or contemplates the Parties giving notice to one another, the Parties agree that the notice shall be as follows. The Parties agree that any notice(s) shall be accomplished by sending the requisite notice(s) *via* facsimile and email to the following:

If to TCRG:

TCRG East Texas Pipeline 1, LLC,
Attn: Craig M. Crockett
5201 Camp Bowie Blvd., Suite 200
Fort Worth, Texas 76107
Telephone: 817-626-9898
Telecopier: 817-624-1374
Email: craig@tcrg.com

If to the KJ Ranch Parties:

Derick J. Rodgers
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza

**COMPROMISE SETTLEMENT AGREEMENT.** Page 6

        755 E Mulberry Ave, Suite # 500
        San Antonio, TX 78212
        Telephone: (210) 822-6666
        Telecopier: (210) 822-1151
        Email: drodgers@lawdcm.com

All notices shall be deemed to have been duly given at the time of receipt by the party to which such notice is addressed.

8.    **Self-Reliance.**  Each Party acknowledges and agrees that it has been advised by legal counsel of its choice and has read and understands the effect of the promises and releases contained in this Agreement and executes this Agreement of its own free will and accord for the purposes and considerations set forth herein after full consultation with its legal counsel of choice. Each Party represents and warrants that it has not been influenced to enter into this Agreement in reliance upon any statements, representations, oral or written, or by another Party or by any other person or entity, which statement or representation is not otherwise contained within the four (4) corners of this Agreement and Exhibit B and Exhibit C attached hereto. Each Party further represents and warrants that it is relying solely and completely upon its own understanding and due diligence in deciding to enter into this Agreement and Exhibit B and Exhibit C attached hereto and that any subsequent understanding of the facts or discovery of information shall not constitute fraud and shall not provide a basis, regardless of the theory, for avoidance of this Agreement.

9.    **Entire Agreement. No Other Relationships/Obligations.**  The Parties hereby agree and stipulate that, other than this Agreement and Exhibit B and Exhibit C attached hereto, there are no other agreements, relationships, duties, or obligations between the Defendant Parties, on one side, and the Plaintiff Parties on the other side. This Agreement and Exhibit B and Exhibit C attached hereto contain the entire understandings of the Parties and supersedes and cancels all previous negotiations, agreements, commitments, and understandings in connection with the subject matter of this Agreement and Exhibit B and Exhibit C attached hereto, whether oral or written. The Parties further acknowledge and warrant that there are no oral agreements between them related to the subject matter of this Agreement and Exhibit B and Exhibit C attached hereto.

10.    **Counterparts.** Pursuant to the requirements of the Uniform Electronic Transactions Act in Chapter 322 of the Texas Business and Commerce Code and the Federal Electronic Signatures in Global and National Commerce Act (beginning at 15 U.S.C. Section 7001), the Parties have agreed that the transactions under this Agreement may be conducted by electronic means. Pursuant to these statutes, this Agreement may not be denied legal effect or enforceability solely because it is in electronic form or because it contains an electronic signature. This Agreement may be executed in duplicate counterparts and with electronic or facsimile signatures with the same effect as if the signatures were on the same document. Each multiple original of this document shall be deemed an original, but all multiple copies together shall constitute one and the same instrument.

---

11. **Amendments.** This Agreement may not be released, discharged, abandoned, varied, supplemented, supplanted, amended, or modified in any manner except by a written instrument duly executed by each Party or a duly appointed representative thereof. The Parties expressly agree that an oral amendment shall not be effective and is void and that no Party may rely on any alleged oral amendment hereto.

12. **Severability.** Should any part, term, or provision of this Agreement be declared or be determined to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and any part, term or provision, if finally declared or determined to be illegal or invalid, shall be deemed not to be a part of this Agreement, as the case may be, and there shall be added automatically as part of this Agreement, as the case may be, a provision as similar in its terms to such illegal or invalid part, term or provision as may be possible and be legal, valid and enforceable.

13. **Disputes.** This Agreement has been the subject of negotiations and discussions between the Parties. Consequently, the Parties agree that any rule of construing ambiguities against the drafter shall have no force and effect.

14. **Headings and Terms within Agreement.** The headings contained in this Agreement are for convenience only and are not intended to vary or supplement the terms of the paragraph which follows the heading. The headings are not to be given any weight if an issue arises regarding the interpretation of this Agreement, as the case may be.

15. **Other Costs.** Except as may be expressly provided for herein, the Parties shall be responsible for their own costs, including attorney's fees, related to and arising out of any aspect of the Claims, the TCRG Demand, the Guadalupe County Suit, the Shelby County Suit, their dealings, and this Agreement.

16. **Binding Agreement.** It is understood that the terms of this Agreement, are contractual and not merely recitals and shall be binding upon and inure to the benefit of each Party and their respective related persons. The Parties further agree that the recitals are an integral part of this Agreement.

17. **No Waiver.** Any failure or delay on the part of any Party to exercise any remedy, right, or to require performance or nonperformance of any of the terms, covenants, conditions, or provisions of this Agreement shall not constitute a waiver of such. Further, the waiver, if any, by any Party of a breach, requirement of performance, or non-performance of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent or future breach, requirement of performance, or non-performance by any other Party including any previously "waived" provision.

18. **Governing Law and Venue**. The laws of the State of Texas shall control this Agreement. The Parties agree that any litigation between the parties shall be proper in either Tarrant County or Bexar County, Texas.

19. **No Admission of Wrongdoing.** The Parties, by entering into this Agreement, and carrying out the obligations hereunder do not admit any wrongdoing, in fact, each

of the Parties specifically deny any and all claims, allegations, and assertions of wrongdoing. The Parties enter into this Agreement and their respective performances hereunder are solely to buy their respective peace.

**IN WITNESS WHEREOF,** the Parties have duly executed this Agreement, to be effective as of the Effective Date.

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

By: Texas Capitalization Resource Group, Inc.,
a Texas corporation, Its Manager,

By: _____
Robert L. Patton, Jr.,
Its President

KrisJenn Ranch, LLC, a Texas series limited liability company

By: _____
Larry Wright, Its Manager

KrisJenn Ranch, LLC-Series Uvalde Ranch, a Texas series limited liability company

By: _____
Larry Wright, Its Manager

KrisJenn Ranch, LLC-Series Pipeline ROW, a Texas series limited liability company

By: _____
Larry Wright, Its Manager

Larry Wright, Individually

By: _____
Larry Wright

of the Parties specifically deny any and all claims, allegations, and assertions of wrongdoing. The Parties enter into this Agreement and their respective performances hereunder are solely to buy their respective peace.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement, to be effective as of the Effective Date.

TCRG East Texas Pipeline 1, LLC, a Texas limited liability company

By: Texas Capitalization Resource Group, Inc.,
a Texas corporation, Its Manager,

By: _____
Robert L. Patton, Jr.,
Its President

KrisJenn Ranch, LLC, a Texas series limited liability company

By: *Larry Wright* _____
Larry Wright, Its Manager

KrisJenn Ranch, LLC-Series Uvalde Ranch, a Texas series limited liability company

By: *Larry Wright* _____
Larry Wright, Its Manager

KrisJenn Ranch, LLC-Series Pipeline ROW, a Texas series limited liability company

By: *Larry Wright* _____
Larry Wright, Its Manager

Larry Wright, Individually

By: *Larry Wright* _____
Larry Wright