## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **KRISJENN RANCH, LLC,** | § | |
| *Debtor* | § | **Case No. 20-50805** |
| | § | |

---

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC and** | § | |
| **KRISJENN RANCH, LLC-SERIES** | § | |
| **UVALDE RANCH, and KRISJENN** | § | |
| **RANCH, LLC-SERIES PIPELINE** | § | |
| **ROW as successors in interest to** | § | |
| **BLACKDUCK PROPERTIES, LLC,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DMA PROPERTIES, INC., and** | § | |
| **LONGBRANCH ENERGY, LP,** | § | **Adversary No. 20-05027** |
| *Defendants* | § | |

---

| | | |
|---|---|---|
| | § | |
| **DMA PROPERTIES, INC.,** | § | |
| *Cross-Plaintiff/Third Party Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KRISJENN RANCH, LLC,** | § | |
| **KRISJENN RANCH, LLC-SERIES** | § | |
| **UVALDE RANCH, and KRISJENN** | § | |
| **RANCH, LLC-SERIES PIPELINE ROW,** | § | **Adversary No. 20-05027** |
| **BLACK DUCK PROPERTIES, LLC,** | § | |
| **LARRY WRIGHT, and JOHN TERRILL,** | § | |
| *Cross-Defendants/Third-Party* | § | |
| *Defendants* | § | |

### DEBTORS' REPLY TO FRANK DANIEL MOORE'S RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE CHIEF BANKRUPCY JUDGE RONALD B. KING:

COME NOW Debtors, Plaintiffs, and Counter-Defendants KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row (collectively the "Debtors"), and file this Response to Frank Daniel Moore's Response in Opposition to Debtors' Motion for Partial Summary Judgment, and would respectfully show as follows:

## **LEGAL STANDARD**

"A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Ragas*, 136 F.3d at 458 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986)). "When ruling on a motion for summary judgment, 'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Ragas*, 136 F.3d at 458.

"[I]n the face of the defendant's properly supported motion for summary judgment, the plaintiff c[an] not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).[1]

---

[1] Moore had the burden to raise an issue of material fact supporting his positions. Throughout Moore's response, he either fails to support his contentions with probative evidence or simply states that "Moore has put on evidence" at some previous point in time. However, it was Moore's burden to present evidence *in his response*. The Court

## ARGUMENT

I.   **FRAUD**

    **A.   *KrisJenn is not liable for fraud and Wright never used the Debtors to perpetrate a fraud.***

Moore asserts in his response that Debtors committed acts of fraud against Moore. However, Moore's allegation again seems to be only against Wright and Wright's "use" of the KrisJenn entities to perpetrate a fraud. Should the Court find Moore's fraud claims implicate the Debtors, Debtors respond without conceding this position.

Specifically, Moore alleges that Wright used the Debtors to secretly indebt Black Duck without authorization from Moore. However, several emails to and from Moore show that he knew and operated under the assumption that Black Duck had taken a loan from Debtors in order to purchase the Pipeline. *See* Ex. A (disclosing the need for Black Duck to take out a $5 million loan in order to fund the purchase of the Pipeline); Ex. B (Moore explaining net profits would not be obtained until after the Debtors were reimbursed for the initial $5 million loan plus interest).

Next, Moore alleges the Debtors orchestrated a fraudulent foreclosure on Black Duck's assets to obtain the Pipeline. This is just simply not true. While Debtors did foreclose on whatever assets Black Duck had at the time, Debtors obtained the Pipeline because they were forced to purchase it back from TCRG after Moore, DMA, and Longbranch threatened to sue TCRG and compromised that business relationship. The foreclosure had no effect on Debtors acquisition of the Pipeline.

Finally, Moore argues that Wright purchased the Pipeline from TCRG through KrisJenn Ranch, LLC-Series Pipeline Row "in an attempt to erase Moore's 20% net-profits interest."

---

should grant summary judgment on every cause of action Moore failed to meet his burden because he did not support his allegations with evidence.

Dkt 175 (Moore's Response to PMSJ). Again, this is untrue. The Pipeline was sold to TCRG and Wright had every intention to pay DMA and Longbranch 20% each of the net profits, i.e. profits after the initial purchase price had been reimbursed. However, before any net profits were realized, Moore, DMA, and Longbranch scuttled the deal with TCRG, and TCRG demanded that Wright purchase the Pipeline to preserve that business relationship. Black Duck was no longer a going concern at this point, so Wright used another entity he owned to purchase the Pipeline from TCRG. There was nothing fraudulent about these transactions, and the transition of the Pipeline from TCRG to Series Pipeline ROW was due to Moore, DMA, and Longbranch's conduct—not the conduct of Wright or the Debtors.

In this portion of his response, Moore fails to cite any law supporting his claims of fraud. He fails to connect the dots or explain how any of these legal and reasonable actions amount to fraud. Therefore, the Court should grant summary judgment on Moore's fraud claims against Debtors because Moore's pleadings and summary judgment response fail to present any probative evidence or legal argument implicating Debtors in his fraud claims.

### B. The Economic Loss Rule can bar fraud claims.

While "the Texas Supreme Court declined to extend the economic loss rule to fraudulent inducement claims . . . [,]" whether fraud claims relating to the performance of a contract "[are] barred by the economic loss rule is more difficult to determine, as some courts have applied the rule to fraud claims while others have not." *Bates Energy Oil & Gas v. Complete Oilfield Serv.*, 361 F.Supp.3d 633, 655 (W.D. Tex. 2019).

"A contractual relationship 'may create duties under both contract and tort law,' and '[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both.'" *Rougeux v. Int'l Bank of Commerce*, No. A-13-CV-1015 LY, 2014 WL 12872429, at *5 (W.D. Tex. April 14, 2014) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)) (alterations in

original). "In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss." *Rougeux*, 2014 WL 12872429, at *5 (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.* Thus, "[t]he economic loss rule . . . 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)) (holding "the various misrepresentations Payne alleges caused her injury are directly related to . . . and arise solely from her contractual relationship with Wells Fargo" and is therefore "barred by the economic loss rule"). Even fraud claims based on misrepresentations and omissions are barred by the economic loss rule when the harm consists only of the economic loss of a contractual expectancy. *Galentine v. Tideport Distrib., Inc.*, 715 F. App'x 394, 395 (5th Cir. 2018) (holding "the district court correctly ruled that the economic loss rule bars the fraud claim").

Here, all of Moore's fraud claims arise solely from his contractual relationship with Black Duck and Wright. Moore's only potential loss is his contractual expectancy under the DMA Agreement. Moore asserts that Wright made various misrepresentations regarding his performance to purchase and sale the Pipeline, and abide by Moore's interpretation of the DMA Agreement. Because the economic loss rule precludes recovery in tort for losses resulting from the alleged failure to perform under a contract, the Court should grant summary judgment on Moore's fraud claims against the Debtors.

### C. Moore's fraud claims are not independent of the contract.

Moore claims that his fraud claims are independent of his contract claim, but they simply are not. A brief reading of Moore's breach of contract claim and fraud in the alternative claim

shows that these two claims are based on the same duties, encompass the same alleged non-performance, and seek identical damages.  *Compare* Dkt. 173 ¶ 107 (Breach of Contract Claim) ("By these contracts, Wright, on behalf of himself and Black Duck, agreed that Moore would receive, among other things, "[n]o less than 20% Carried Interest in the P-21 Express Pipeline . . . under the same terms and conditions as the [Longbranch Assignment]" through his entity DMA.") (alterations in original), *with* Dkt. 173 ¶ 160 (Fraud Claim) ("Black Duck and Wright represented to Moore and DMA that DMA would receive, among other things, a 20% net-profits interest in the P-21/Express right-of-way that attached and ran with the right-of-way . . . .").  Both Moore's breach of contract and fraud claims are premised on the loss of his expectancy under the DMA Agreement.  Moore attempts to obfuscate the economic loss rule by claiming his fraud damages are distinct from contract damages because he is seeking disgorgement and the imposition of a constructive trust.  However, these remedies are not damages independent of the contractual expectancy.

### D.  *Moore could not have justifiably relied on Wright's misrepresentations and omissions.*

"To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3)  the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result."  *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018) (internal quotations omitted).  "Justifiable reliance usually presents a question of fact."  *Id.*  "But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified."  *Id.*; *see also AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no

pet.) (holding reliance on a representation made in a business or commercial transaction can be unjustified as a matter of law).

"In determining whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship and the contract." *Orca Assets G.P., L.L.C.*, 546 S.W.3d at 654 (quotations and alterations omitted). "In an arm's-length transaction, the defrauded party must exercise ordinary care for the protection of his own interest." *Id.* (quotations and alterations omitted). "A failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Id.* (quotations and alterations omitted). "And when a party fails to exercise such diligence, it is charged with knowledge of all facts that would been discovered by a reasonably prudent person similarly situated." *Id.* (quotations omitted). "To this end, that party cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations." *Id.* (quotations omitted).

Here, Moore could not have reasonably thought that Wright or the Debtors were going to simply hand over $5 million, take all of the risk in purchasing the Pipeline, and give the Pipeline to Black Duck without some sort of security. This would be tantamount to simply giving Moore 50% of a $5 million asset in exchange for nothing. The only reasonable view of the facts is that Black Duck borrowed the funds to purchase the Pipeline from KrisJenn. Then, when Black Duck sold the Pipeline, it would repay the loan to KrisJenn and disburse the profits among Black Duck's members and any person that may hold a net profits interest in those profits obtained by Black Duck. In fact, Moore admits this was his understanding of the facts in an email he sent to Wright on February 7, 2018. *See* Ex. B (calculating Moore's interest in profits generated by the Pipeline *after* KrisJenn was reimbursed for the loan Black Duck took from KrisJenn to purchase the

Pipeline). Moore was required to exercise ordinary care for the protection of his own interests. Even if Wright did represent that he could fund the purchase of the Pipeline outright—which he did not—Moore could not have blindly relied on this assertion when prudent wisdom would dictate that Wright would not simply fund the whole purchase without any sort of protection of his investment. Further, Moore was aware of the loan and recognized its existence in several emails. *See* Ex. A; Ex. B. Moore cannot now claim he relied on representations he knew not to be true. The Court should grant summary judgment on Moore's fraud claims against the Debtors because Moore has failed to present sufficient evidence regarding the element of justifiable reliance.

### E.  *Debtors never conducted a sham foreclosure on the Pipeline.*

Moore cites no law supporting his position that Debtors conducted a sham foreclosure on the Pipeline. The only evidence Moore cites to support his position is the Assignment of the Bigfoot Note Payment (the "Assignment"). The Assignment simply assigns the payments under the Bigfoot Note which has already been adjudicated by this Court. The Assignment has a recital regarding Black Duck's failure to pay the KrisJenn loan, and KrisJenn's action to foreclose on whatever assets Black Duck had at the time.[2] The Assignment does not actually foreclose on the Pipeline because the Pipeline was acquired through Series Pipeline Row's outright purchase of the Pipeline from TCRG after Moore, DMA, and Longbranch scuttled that deal.

## II.    MOORE DOES NOT HAVE STANDING TO BRING A BREACH OF CONTRACT CLAIM

### A.  *Moore is not the proper party to bring suit.*

Moore claims to have standing to sue on the February 4, 2018 Email Agreement and the DMA Agreement. Moore, in his individual capacity was not a party to either agreement. Moore

---

[2] The only mention of the Pipeline in the Assignment states: "Borrower has not paid the Note according to its terms and Lender has foreclosed on the Note and the collateral which includes Borrowers interest in the Express Gas Pipeline." *See* Moore's Ex. 37. Then, the Assignment goes on to assign only the right to receive payments for the Bigfoot Note.

claims that his resignation as manager of Black Duck was his consideration as a party to the Email Agreement. However, Black Duck did not receive anything of value in exchange for Moore's resignation. Moore's resignation was simply a byproduct incorporated into the business divorce of SCMED from Black Duck. Moore cannot now claim he signed the February 4 email in his individual capacity to simply try to keep his breach of contract claim alive.

Moore also claims to have standing because he has been assigned all legal rights SCMED may have against Debtors. However, DMA, in its complaint, claims to be the third-party beneficiary of the Pipeline Agreement and is pursuing that claim in its own name. The Houston Court of Appeals has held that the "promisee of a promise made for the benefit of a beneficiary, *i.e.*, a third-party beneficiary contract . . ." may not recover on a breach of contract claim "where damages have been suffered only by the beneficiary of a third party beneficiary contract." *Delaney v. Davis*, 81 S.W.3d 445, 449–50 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Moore—as assignee of SCMED—was the promisee in the alleged third-party beneficiary contract and cannot pursue this claim if DMA, the beneficiary, is the only party that has suffered damages. Moreover, it would be inequitable to allow both Moore and DMA to sue Debtors for the exact same claim on the exact same contract when there were not independent damages incurred by each party.

### B. Debtors are not the proper parties to be sued.

Moore claims that he has a right to receive the net profits interest in the Pipeline. Moore's contention is without merit. If the DMA Agreement is a personal covenant, Moore must show privity of contract to enforce it. If the DMA Agreement is a real covenant, he must show privity of estate to enforce it. The Debtors cannot be sued by Moore because Moore does not have privity of contract or privity of estate with the Debtors.

Moore also claims, for the first time, that he is entitled to sue the Debtors because they *may* be liable for Black Duck's obligations under the fraud exception in section 21.223(b) of the Texas

Business Organizations Code. As mentioned in the fraud section, *supra*, Moore cannot show that Debtors committed any fraudulent acts against Moore. As such, Moore's position is without merit and the Court should grant summary judgment on Moore's breach of contract claims.

## III. MOORE FAILS TO SUPPORT HIS TORTIOUS INTERFERENCE CLAIM WITH EVIDENCE

### A. *Moore is not the proper party to sue for tortious interference.*

As explained in the breach of contract section, *supra*, Moore was not a party to the DMA Agreement and, therefore, does not have standing to sue for tortious interference of the DMA Agreement.

### B. *Moore fails to meet his burden on tortious interference.*

Moore fails to explain how the various actions Debtors took regarding the sale of the Pipeline amount to tortious interference with the DMA contract. Moore does not cite any law linking the facts to the elements of the cause of action and fails to analyze the facts that are presented under the applicable law for tortious interference. Moore has wholly failed to meet his burden under the summary judgment standard in his response.

### C. *Moore does not cite any law or evidence supporting the causation element of his tortious interference claim.*

Debtors claimed Moore was unable to show that the Debtors purported tortious interference caused damages to Moore, individually. In response Moore, cites no law and cites no evidence at all supporting the causation element of his tortious interference claim. The Court should grant summary judgment on Moore's tortious interference claim because Moore failed to produce any evidence—much less probative evidence—creating a material issue of fact on the causation element.

### D. *Moore's tortious interference claim fails because Debtors were justified in their actions when they operated under the mutual understanding of the DMA Agreement.*

As mentioned above, the Debtors did not interfere with the DMA Agreement through misrepresentation or fraud.  Black Duck simply sold the Pipeline to TCRG and planned on paying DMA and Longbranch 20% of the net profits after the KrisJenn loan was repaid.  Then, when Moore, DMA, and Longbranch scuttled the deal with TCRG, Series Pipeline Row bought the Pipeline from TCRG.  It is unclear how Moore can claim tortious interference under these facts.  Even if Moore was able to state a proper claim for tortious interference, the Debtors' actions were proper under the circumstances.  Because the Debtors were enforcing their legal rights and complying with their interpretation of the contract, they were justified in any purported interference with the DMA Agreement.

WHEREFORE PREMISES CONSIDERED Debtors pray that this Court issue an order granting Debtors' Motion for Partial Summary Judgment on Frank Daniel Moore's Claims, and for such further relief as the Court may deem them justly entitled.

Dated: December 4, 2020.

Respectfully submitted,

MULLER SMEBERG, PLLC

By:    /s/ *John Muller*                   
C. John Muller IV
State Bar No. 24070306
john@muller-smeberg.com
Ronald J. Smeberg
State Bar No. 24033967
ron@smeberg.com
Ezekiel J. Perez
State Bar No. 24096782
zeke@muller-smeberg.com
MULLER SMEBERG, PLLC
111 W. Sunset Rd.
San Antonio, TX 78209
Telephone: 210-664-5000
Facsimile: 210-598-7357

ATTORNEYS FOR DEBTORS

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 4th day of December 2020:

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com
Attorneys for Longbranch Energy, LP
and DMA Properties, Inc.

Christopher S. Johns
Christen Mason Hebert
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

Timothy Cleveland
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com
Attorneys for DMA Properties, Inc.

Natalie Wilson
LANGLEY & BANACK, INC.
745 East Mulberry Avenue | Suite 700
San Antonio, TX 78212
210-736-6600
lwilson@langleybanack.com
Attorneys for DMA Properties, Inc.

Jeffery Duke
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, Texas 77494
jduke@dbmmlaw.com
Counsel for Longbranch Energy, LP

William Germany
BAYNE, SNELL, & KRAUSE
1250 NE Loop 410, Ste. 725
San Antonio, Texas 78209
T- (210) 824-3278
F- (210) 824-3937
wgermany@bskaw.net
Attorney for Larry Wright

OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, Texas 78701
shane.p.tobin@usdoj.gov
United States Trustee

      /s/ *John Muller*
      C. John Muller IV