# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § § | Chapter 11 |
| KrisJenn Ranch, LLC, | § § | |
| *Debtor* | § § § | Case No. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, | § § § § § § | |
| | § | Adversary No. 20-05027 |
| *Plaintiffs*, | § § | |
| v. | § § | |
| DMA Properties, Inc. and Longbranch Energy, LP, | § § § | |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| DMA Properties, Inc. and Frank Daniel Moore, | § § § | |
| *Cross-Plaintiffs/Third-Party Plaintiffs*, | § § | |
| v. | § § | Adversary No. 20-05027 |
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, Black Duck Properties, LLC, Larry Wright, and John Terrill, | § § § § § § | |
| *Cross-Defendants/Third-Party Defendants*. | § § | |

1

## FRANK DANIEL MOORE'S SECOND AMENDED RESPONSES AND OBJECTIONS TO KRISJENN'S FIRST INTERROGATORIES

Frank Daniel Moore hereby serves his responses and objections to KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW First Interrogatories.

Respectfully,

/s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandterrazas.com
akrist@clevelandterrazas.com

*Attorneys for Frank Daniel Moore and DMA Properties, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2020 a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Ronald J. Smeberg<br>Charles John Muller, IV<br>MULLER SMEBERG, PLLC<br>111 W. Sunset<br>San Antonio, TX 78209<br>ron@smeberg.com<br>john@muller-smeberg.com<br><br>*Counsel for KrisJenn Ranch, LLC, KrisJenn Ranch, LLC, Series Uvalde Ranch, KrisJenn Ranch, LLC, Series Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>DUKE BANISTER MILLER & MILLER<br>22310 Grand Corner Drive, Suite 110<br>Katy, TX 77494<br>jduke@dbmmlaw.com<br><br>*Counsel for Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | Shane P. Tobin<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, Texas 78701<br>shane.p.tobin@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | John Terrill<br>12712 Arrowhead Lane<br>Oklahoma City, OK 73120<br><br>*Third Party-Defendant, pro se* |
| Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* | |

    /s/ Christopher S. Johns
    Christopher S. Johns

3

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all documents that amend, supplement, or otherwise modify the Company Agreement of Black Duck Properties, LLC.

> **ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the documents in question are part of Black Duck's books and records (which are in the possession of Defendants) and because it is improper for Defendants to foist the burden of identifying responsive documents on Moore when the burden of identifying the documents would be the same for both parties. Subject to these objections, Moore answers that he is not aware of any such documents at this time.

**INTERROGATORY NO. 2:** Identify all capital that SCMED contributed to Black Duck, by providing:

a. A brief description of the capital contribution;
b. The date of the contribution; and
c. The value of each contribution.

> **ANSWER:** Moore answers that SCMED contributed $500 in initial capital to Black Duck. Around the time of Black Duck's formation, Moore stated that he would write a check for the $500 capital contribution. Wright then responded that he would make the $500 capital contribution to Black Duck on behalf of SCMED because Moore had recently paid $1,500 to James Browning for due diligence work performed on behalf of both Moore and Wright around the time of Black Duck's formation. Moore had paid the entire amount owed to Browning, including Wright's portion of the expense.

**INTERROGATORY NO. 3:** Identify all capital that Wright contributed to Black Duck, by providing:

a. A brief description of the capital contribution;
b. The date of the contribution; and
c. The value of each contribution.

> **ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the answer to this question would be discerned through reference to Black Duck's books and records, and those records are in the possession of Defendants. Relatedly, it is improper for Defendants to foist the burden of identifying these amounts on Moore when the burden of identifying these amounts would be substantially the same for both parties. Subject to these objections, Moore answers that with respect to the right-of-way, Wright's capital contributions consisted of the amounts paid to acquire the Purchase Agreement as well as the funds used to close on the right-of-way in August 2017. With respect to the Harris SWD, Wright's capital contribution consisted of the funds used to acquire the well.

Black Duck's Company Agreement also indicates that Wright was required to make an initial capital contribution of $500; however, Moore cannot confirm whether this contribution was made.

**INTERROGATORY NO. 4:** Identify the date on which SCMED ceased to be an owner of Black Duck, if any.

**ANSWER:** SCMED ceased to be an owner of Black Duck upon execution of documents memorializing Wright's and Moore's agreement, as described in the February 4, 2018 email between Wright and Moore, to grant DMA certain real property interests in exchange for Moore's resignation and SCMED's release of its 50% ownership stake.

**INTERROGATORY NO. 5:** Identify all potential buyers for the ROW that SCMED or Wright identified, by providing:

a. The full legal name of the potential buyers;
b. The approximate date on which each potential buyer was identified; and
c. Stating whether SCMED or Wright was responsible for first identifying each potential buyer.

**ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the answer to this question would be discerned through reference to Black Duck's books and records, and those records are in the possession of Defendants. Relatedly, it is improper for Defendants to foist the burden of identifying these amounts on Moore when the burden of identifying these amounts would be substantially the same for both parties. Subject to these objections, Moore answers that the potential buyers identified for the right-of-way included:

- Oilfield Water Logistics. Moore identified this entity as a potential buyer around March 2016.
- Solaris Water Midstream. Moore identified this entity as a potential buyer in 2016, resulting in an offer letter in October 2016.
- TailWater Capital. Moore identified this entity as a potential buyer at some point in 2016 or early 2017.
- Align Water Midstream. Moore identified this entity as a potential buyer at some point in 2016 or early 2017.
- Gibson Energy. Moore identified this entity as a potential buyer at some point in 2016 or early 2017.
- Ryan Jones. Moore identified Jones as a person with a potential investor at some point in 2016 or early 2017. Moore is not certain of the legal name of the potential investing entity.
- Faryx Renewable Energy. Moore identified Faryx as a potential buyer around May 2017.

5

- <u>Purestream</u>. Wright identified Purestream and introduced Moore to one of its agents, Adam Giles, around November 2016.
- <u>Pendergrass Group</u>. Moore identified the Pendergrass Group as a potential investor or source of investors. Moore is not sure of the particular date of identification but has known of the Pendergrass Group since at least 2012.
- <u>HBC Investments</u>. Moore identified this entity as a potential buyer at some point in 2016 or early 2017.
- <u>Streamline Innovations</u>. Moore identified this entity as a potential buyer at some point in 2016 or early 2017.
- <u>ROZ Resources</u>. Moore identified this entity as a potential buyer around April 2017.
- <u>MVP/Pinnacle/Finley Resources</u>. Wright identified these entities as a potential buyer. Moore is not certain what date Wright identified these entities but believes it was sometime in early 2017.

**INTERROGATORY NO. 6:** Identify all potential investors and/or deal terms that Wright "repeatedly objected to" and "prevented a deal from being reached", as alleged in paragraph 46 of the Counterclaim, by providing:

a. A brief description of the deal terms; or
b. The full legal name of the potential investors.

**ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the answer to this question would be discerned through reference to Black Duck's books and records, and those records are in the possession of Defendants. Relatedly, it is improper for Defendants to foist the burden of identifying these amounts on Moore when the burden of identifying these amounts would be substantially the same for both parties. Subject to these objections, Moore answers that Wright objected to the terms of a potential deal with Solaris around October 2016. A letter of interest outlining proposed terms was produced as MOORE015223–27. Wright further objected to the terms of the potential deals with the potential buyers listed above in response to Interrogatory No. 5, as well as others, because the potential buyers indicated that Black Duck would have to close on the right-of-way before they would proceed with a deal.

**INTERROGATORY NO. 7:** Identify all facts supporting your contention that "Terrill and Wright had secretly been working on this deal since December 2017—well before Moore had resigned from Black Duck", as alleged in paragraph 57 of the Counterclaim.

**ANSWER**: Moore objects that this interrogatory is overbroad and unduly burdensome because it purports to require Moore to marshal "all" facts in advance of trial. Subject to the foregoing objections, in *Edwards v. Synergy Midstream, LLC et. al*—which is case number CJ-2018-3477 in the district court of Oklahoma County in Oklahoma—John Terrill swore via affidavit that he informed Plaintiff Edwards of an opportunity to purchase right-

6

of-way rights in East Texas in December 2017. Emails and correspondence disclosed in the Oklahoma suit confirm that Terrill was negotiating the terms of purchasing the Express Pipeline from Black Duck Properties, LLC with Larry Wright.

**INTERROGATORY NO. 8:** Identify all documents or oral representations that supplement, amend, or otherwise modify the DMA Agreement.

> **ANSWER:** Moore is unaware of any documents or oral representations that supplement, amend, or otherwise modify the DMA Agreement. However, the DMA Agreement does incorporate the February 4, 2018 email between Wright and Moore, which in turn incorporates other agreements.

**INTERROGATORY NO. 9:** Identify the actual damages you incurred as a result of Debtors' alleged breach of the DMA Agreement, by providing:

a. The amount of such actual damages, in dollars and cents; and
b. The method of calculating such actual damages.

> **ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of Moore's interest in Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to the foregoing objection, Moore's damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of the 20% net profits interest that attaches and runs with the right-of-way.

**INTERROGATORY NO. 10:** Identify all documents or oral representations that supplement, amend, or otherwise modify the Harris SWD Agreement.

> **ANSWER:** Moore is not aware of any documents or oral representations that supplement, amend, or otherwise modify the Harris SWD Agreement at this time. However, the Harris SWD Agreement does incorporate by reference the February 4, 2018 email between Wright and Moore.

**INTERROGATORY NO. 11:** Identify the actual damages you incurred as a result of Debtors' alleged breach of the Harris SWD Agreement, by providing:

a. The amount of such actual damages, in dollars and cents; and
b. The method of calculating such actual damages.

> **ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of assets previously owned by Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to the foregoing objection, Moore's

damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of 50% of the Bigfoot note payments.

**INTERROGATORY NO. 12:** Identify the facts supporting your contention that Black Duck owes you a fiduciary duty, as alleged in paragraph 105 of the Counterclaim.

**ANSWER:** Moore has asserted third-party claims and has not asserted counterclaims. Wright owed fiduciary duties to Moore and SCMED in connection with Wright's status as a manager of Black Duck. Additionally, Paragraph 105 and the related claim clearly specify that the claim is brought against Wright, not against Black Duck.

**INTERROGATORY NO. 13:** Identify the "property and proceeds received by Wright and/or his entities in connection with the right-of-way" for which you seek to impose a constructive trust, as alleged in paragraph 110 of the Counterclaim.

**ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the answer to this question would be discerned through reference to Black Duck and/or KrisJenn's books and records, and those records are in the possession of Defendants. Relatedly, it is improper for Defendants to foist the burden of identifying these amounts on Moore when the burden of identifying these amounts would be substantially the same for both parties. Subject to these objections, Moore answers that he seeks to impose a constructive trust on the right-of-way, as well as or in addition to any proceeds obtained by Wright through the sale or monetization of the right-of-way. Moore also seeks to impose a constructive trust on the Bigfoot note payments received by Wright.

**INTERROGATORY NO. 14:** Identify the actual damages you incurred as a result of the allegations made in "Claim 2: Breach of Fiduciary Duty" of the Counterclaim, by providing:

a. The amount of such actual damages, in dollars and cents; and
b. The method of calculating such damages.

**ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of Moore's interest in Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to this objection, Moore's damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of the 20% net profits interest that attaches and runs with the right-of-way plus the value of 50% of the Bigfoot note payments.

**INTERROGATORY NO. 15:** Identify the actual damages you incurred as a result of the allegations made in "Claim 2: Breach of Fiduciary Duty" of the Counterclaim, by providing:

a. The amount of such actual damages, in dollars and cents; and
b. The method of calculating such damages.

> **ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of Moore's interest in Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to this objection, Moore's damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of the 20% net profits interest that attaches and runs with the right-of-way plus the value of 50% of the Bigfoot note payments.

**INTERROGATORY NO. 15:** Identify all acts or omissions by Debtors which support your contention that they "willfully and intentionally interfered" with the February 3 Email Agreement, Harris SWD Agreement, February 4 Email Agreement, and/or DMA Agreement, by providing:

a. A brief description of the acts or omissions;
b. The full legal name of the parties who committed these acts or omissions; and
c. The approximate date of the acts or omissions.

> **ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because it purports to require Moore to marshal "all" facts in advance of trial. Subject to this objections, Moore answers that Defendants willfully and intentionally interfered with these agreements by (a) failing to disclose Moore and DMA's interest to TCRG and other potential purchasers; (b) mischaracterizing Moore and DMA's interest to TCRG and other potential purchasers; (c) fraudulently attempting to execute a sham foreclosure on the right-of-way and DMA's interest in the Bigfoot note payments despite knowledge that Moore never authorized any loan from KrisJenn; and (d) otherwise scheming to erase and ignore DMA's interest in the right-of-way and Bigfoot note payments.

**INTERROGATORY NO. 16:** Identify the actual damages you incurred as a result of the allegations made in "Claim 4: Tortious Interference with Contract" of the Counterclaim, by providing:

a. The amount of such damages, in dollars and cents; and
b. The method of calculating such damages.

> **ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of Moore's interest in Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to this objection, Moore's damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of the 20% net profits interest that attaches and runs with the right-of-way plus the value of 50% of the Bigfoot note payments.

**INTERROGATORY NO. 17:** Identify all representations made by Black Duck that support your contention that Black Duck committed fraud, as alleged in "Claim 6: Fraud" of the Counterclaim, by providing:

a. The full legal name of the person who made the false representation;
b. If made orally, the date and language used in making the false representation; and
c. If made in writing, the identity of the document containing the false representation.

>   **ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because it purports to require Moore to marshal "all" facts in advance of trial. Subject to these objections, Wright fraudulently represented that DMA would receive a 20% net-profits interest that attached and ran with the right-of-way as well as 50% of the Bigfoot note payments. At the time he made these representations, Wright knew they were false and that he had no intention of honoring these promises and representations. Wright also failed to disclose the potential deal with TCRG and has committed multiple omissions and nondisclosures of material facts in connection with these interests.

**INTERROGATORY NO. 18:** Identify the actual damages you incurred as a result of the allegations made in "Claim 6: Fraud" of the Counterclaim, by providing:

a. The amount of such actual damages, in dollars and cents; and
b. The method of calculating such damages.

>   **ANSWER:** Moore objects that this interrogatory prematurely calls for expert testimony regarding damages related to valuation of the right-of-way and/or the value of Moore's interest in Black Duck. Moore will provide all appropriate expert disclosures in a timely fashion as required by the federal rules. Subject to this objection, Moore's damages consist of the value of the 50% interest in Black Duck and its assets and/or the value of the 20% net profits interest that attaches and runs with the right-of-way plus the value of 50% of the Bigfoot note payments.

**INTERROGATORY NO. 19:** Identify all funds that were paid by Bigfoot Energy Services, LLC that you contend should have been transferred to you, in whole or in part, by providing:

a. The approximate date that Bigfoot Energy made the payment;
b. The total amount of the payment; and
c. The portion of each payment you contend is owed to You.

>   **ANSWER:** Moore objects that this interrogatory is overbroad and unduly burdensome because the answer to this question would be discerned through reference to Black Duck's books and records and to the books and records of Defendants. All of those records are in the possession of Defendants. Subject to this objection, Moore (through DMA) is entitled to 50% of the Bigfoot note payments. As of approximately August 14, 2020, the portion of payments owed to DMA amounted to $127,377.20.