# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: § § § § § § § § KrisJenn Ranch, LLC, *Debtor* | | Chapter 11 Case No. 20-50805 |
| KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, *Plaintiffs*, v. DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy, LP, *Defendants*. | § § § § § § § § § § § § § § § | Adversary No. 20-05027 |
| DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy, LP, *Counterplaintiffs*, v. KrisJenn Ranch, LLC, KrisJenn Ranch, LLC–Series Uvalde Ranch, and KrisJenn Ranch, LLC–Series Pipeline ROW, Black Duck Properties, LLC, Larry Wright, *Counterdefendants*. | § § § § § § § § § § § § § § § | Adversary No. 20-05027 |

## DMA AND LONGBRANCH'S MOTION FOR STAY PENDING APPEAL

DMA Properties (DMA) and Longbranch Energy (Longbranch) seek a stay pending appeal of the Final Judgment [Adv. Dkt. No. 237] pursuant to Federal Rule of Bankruptcy Procedure 8007.

### JURISDICTION

The Court entered its final judgment on March 24, 2021. DMA and Longbranch timely filed notices of appeal on April 7, 2021 in conjunction with filing this motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core matter pursuant 28 U.S.C. § 157(b)(2)(B) & (O), and the Court has authority to enter a final order. To the extent that this is not a core matter, DMA and Longbranch consent to entry of a final order pursuant to 28 U.S.C. § 157(c).

Further, venue is proper in this district pursuant to 28 U.S.C. §§ 1408 & 1409, and the statutory basis for relief requested herein is Bankruptcy Rule 8007.

### BACKGROUND

Following a bench trial, the Court entered an opinion constituting findings of fact and conclusions of law under Federal Rule of Bankruptcy 7052 [Adv. Dkt. No. 236] and a separate final judgment [Adv. Dkt. No. 237]. In the final judgment, the Court rendered declaratory judgment in favor of Plaintiffs KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Ulvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC, (collectively, KrisJenn), that "the net-profits interests in the Assignment Agreements owned by Longbranch Energy, LP and DMA Properties, Inc. are personal covenants." Adv. Dkt. No. 237.

Although this Court is familiar with the facts underlying the parties' dispute, a brief summary of the relevant facts is necessary for this motion. The dispute centers on a deal involving a pipeline right-of-way (ROW) in East Texas. Larry Wright (the principal of KrisJenn) was brought into the deal by Daniel Moore and Darin Borders—the two men who had found

2

the right-of-way opportunity and secured the right to purchase it. Moore and Borders agreed to let Wright participate in the deal if he put up the money to buy the ROW.

As part of that deal, Borders (through his entity Longbranch) assigned the right to purchase the ROW to Black Duck, the company that Moore and Wright owned 50/50. In exchange, Borders received the Longbranch Assignment—a written assignment of "twenty percent (20%) ('Net Profits Share') of the Net Profits from [Black Duck] or its successors or assigns" from "the operation use, maintenance or sale (including partial sales or conveyances of the pipe and related facilities commonly known as the P-21 or Express pipeline . . . ." of the net profits from the right-of-way. That written assignment states that Black Duck's "obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and [Black Duck] binds its successors and assigns to the payment of the Net Profits Share."

After Black Duck closed on the ROW, Wright grew hostile towards Moore and pushed for his resignation from Black Duck. Moore agreed give up his 50% interest in Black Duck (and all its assets, including the ROW) in exchange for the same deal Borders had received—a 20% net-profits interest for his entity, DMA, that "shall attach and run" with the right-of-way and bind Black Duck's "successors and assigns." The agreement conveying DMA's net-profits interest has been referred to as the DMA Agreement throughout this litigation, and the Longbranch Assignment and the DMA Agreement, collectively, are the Assignment Agreements.

Two lawsuits were filed in Texas state court seeking to interpret the Assignment Agreements. In one of those suits, Wright and KrisJenn moved for summary judgment, seeking an interpretation of the Assignment Agreements as a matter of law, raising all the issues that Wright and KrisJenn raised here (and which this Court ultimately accepted). The Texas state court denied Wright and KrisJenn's motion. After losing the summary-judgment motion, Wright caused KrisJenn to file Chapter 11 and initiated this adversary proceeding.

3

**ARGUMENT AND AUTHORITIES**

Bankruptcy Rule 8007 provides that a party must move first in the bankruptcy court for a stay of a judgment, order, or decree of the bankruptcy court pending appeal. FED. R. BANKR. P. 8007(a)(1)(A). The motion may be made either before or after the notice of appeal is filed. FED. R. BANKR. P. 8007(a)(2).

In deciding whether to grant a stay pending appeal, courts in this circuit are guided by four factors: (1) the movant's likelihood of success on the merits; (2) the likelihood of irreparable injury to the movant if the stay is not granted; (3) whether the stay will substantially harm the other parties; and (4) whether a stay would serve the public interest. *Culwell v. Texas Equipment Co., Inc. (In re Texas Equip. Co., Inc.)*, 283 B.R. 222 (Bankr. N.D. Tex. 2002); *see also In re Burkett*, 279 B.R. 816 (Bankr. W.D. Tex. 2002).

If the movant does not demonstrate that success on appeal is probable or likely, the movant can still establish that a stay is warranted by (1) presenting a substantial case on the merits when a serious legal question is involved and (2) demonstrating that the balance of equities tilts heavily in its favor. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001); *In re Mounce*, No. ADV 04-5182-LMC, 2008 WL 2714423, at *2 (Bankr. W.D. Tex. July 10, 2008). In other words, the movant's burden on the first factor is reduced from "probable" to "merely possible" if the movant shows that the remaining three factors—collectively referred to as the "balance of the equities"—weigh heavily in its favor. *Mounce*, 2008 WL 2714423, at *2. That means the movant is entitled to a stay where it shows that "it will suffer irreparable harm in the absence of a stay pending appeal, and that any harm to other parties will be minimal in comparison to the harm to be suffered by the movant." *Id.*

Here, all four factors favor granting a stay of the final judgment's declaration that the net-profits interests in the Assignment Agreements are personal covenants pending appeal. And, even if the Court concludes that DMA and Longbranch's success on appeal is merely possible, the balance of the equities weighs heavily in favor of granting the stay.

I.  **DMA and Longbranch have a likelihood of success on the merits.**

In deciding "the primary issue in this case," the Court reviewed the requirements for a covenant to run with the land: (1) the obligation must touch and concern land; (2) the obligation must relate to a thing in existence or specifically bind the parties and their assigns; (3) the obligation is intended by the original parties to run with the land; (4) the successor to the burden has notice of the obligation; and (5) [t]here must also be privity of estate between the parties when the covenant was made. Adv. Dkt. No. 236 at 11-12. The Court expressly found that there was no dispute over the second element—that the Assignment Agreements relate to a thing in existence and the agreements contain express language that purported to bind the parties and their assigns. *Id.* at 12. And, although the Court found that "[l]imited time was spent on whether the successor to the burden had notice" (*id.*), the Court concluded that "[t]here is no question that KrisJenn, the current owner of the ROW, had actual notice of the net-profits interests." *Id.* at 20. The Court only found the first, third and fifth elements unsatisfied.

The Court's decisions on the missing elements rested on purely legal determinations— determinations that a reviewing court will consider *de novo*—and on which DMA and Longbranch are substantially likely to prevail.

   A.  **DMA and Longbranch have a substantial likelihood of success that they will prevail on the interpretation of the Assignment Agreements—and thus on the first and third elements.**

Because a court reviewing this case on appeal is substantially likely to either (1) endorse DMA and Longbranch's interpretation of the Assignment Agreements or (2) find the Assignment Agreements are ambiguous and extrinsic evidence should have been examined, DMA and Longbranch have a substantial likelihood of success on the merits.

The Court's decision that the first and third elements were lacking was a purely legal determination that a reviewing court will consider *de novo*. *See In re ASARCO, L.L.C.*, 702 F.3d 250, 257 (5th Cir. 2012) (stating that the Fifth Circuit and district court review a bankruptcy court's rulings under the same standards, which is *de novo* for legal conclusions). The Court's

5

findings on these elements turn on this Court's interpretation of the Assignment Agreements. *See* Adv. Dkt. No. 236 at 13-15, 18. Construing the text of the agreements, this Court ruled the Assignment Agreements only granted DMA and Longbranch an interest in the net profits of Black Duck as a matter of law. *Id.* at 13-15. From that conclusion, the Court found that the "requisite intent" to run with the land was "lacking" for the third element. *Id.* at 14-15. Similarly, the Court concluded that the first element—the touch and concern land requirement—could not be satisfied where the agreements merely granted an interest in Black Duck's net profits. *Id.* at 18.

A reviewing court is substantially likely to reach a different legal conclusion on the interpretation of the Assignment Agreements and therefore reach different conclusions on the first and third elements for a real covenant. Even this Court confessed that "[i]t is difficult, however, to reconcile" the interpretation that the Assignment Agreements only create a personal covenant "with the express language that the obligation 'shall attach and run' with the ROW." *Id.* at 14; *see also Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (reiterating that courts must "give effect to *all the provisions* of the contract so that none will be rendered meaningless" (emphasis in original)).

DMA and Longbranch have offered a contrary interpretation of the Assignment Agreements that are supported by the language of the agreements and Texas contract law.[1] The plain language of the Assignment Agreements shows that the agreements granted DMA and Longbranch net-profits interests in the ROW that attach and run with the land. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (reiterating that the goal of contract interpretation is "to ascertain the parties' true intent as expressed by the plain language they used"). Per the terms of the Assignment Agreements, DMA has a right to "twenty percent

---

[1] DMA and Longbranch's arguments on this issue are briefly summarized below but are more fully set forth in DMA' motion for partial summary judgment on the interpretation of the DMA Agreement (Adv. Dkt. No. 28) and DMA and Longbranch's proposed findings of fact and conclusions of law (Adv. Dkt. No. 205)—which are attached as Exhibit A and B to this motion.

(20%)" of the "Net Profits" of Black Duck Properties, LLC., "its successors or assigns" from the "use, maintenance, or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline," a right that "attach[es] and run[s] with the P-21 or Express pipeline." The terms "P-21" and "Express pipeline" mean the pipeline and the ROW that Longbranch had the option to purchase and that Black Duck ultimately purchased.

Phrase after phrase confirms that the Assignment Agreements granted DMA and Longbranch interests in ROW that run with the land—an obligation that Black Duck's successors and assigns were bound to honor:

- DMA and Longbranch's interests "shall attach and run with" both the pipeline and ROW.

- Black Duck "binds its successors and assigns" to recognize and honor DMA and Longbranch's interests.

- DMA and Longbranch have the right to receive a share of net profits "from *the operation, use, maintenance* or sale (including partial sales or conveyances)" of the pipeline and ROW.

- The obligation to pay net profits encompasses not only "gross revenues actually received" by Black Duck but also "gross revenues actually received by . . . its successors or assigns."

- The agreements state that their "terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns."

DMA and Longbranch's interests under the Assignment Agreements were not merely interests in Black Duck's profits.

At the very least, a reviewing court could conclude that DMA and Longbranch's interpretation of the Assignment Agreements is reasonable. When a contract "is susceptible to more than one reasonable interpretation[,]" the contract is ambiguous. *Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). And an ambiguous contract opens the

7

door to considering extrinsic evidence—such as parol evidence and witness credibility—to determine the meaning of an agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Here, the Court kept that door firmly closed, finding the Assignment Agreements "are unambiguous and not subject to more than one reasonable construction." Adv. Dkt. No. 236 at 14. Because a reviewing court—"consider[ing] *the entire writing* in an effort to harmonize and giv[ing] effect to *all the provisions* of the contract so that none will be rendered meaningless"— is substantially likely to either agree with DMA and Longbranch's interpretation of the Assignment Agreements or find the Assignment Agreements ambiguous and extrinsic evidence should have been examined, DMA and Longbranch have a substantial likelihood of success on the merits. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

### B. DMA and Longbranch have a substantial likelihood of demonstrating that the fifth element was satisfied.

A reviewing court is also substantially likely to find that the fifth element for a real covenant, privity of estate, was satisfied.

The Court's finding on privity is caveated with the recognition that the missing component—horizontal privity—is "potentially inapplicable." Adv. Dkt. No. 236 at 19. On appeal, this Court's decision to apply horizontal privity will be reviewed *de novo*. *See ASARCO*, 702 F.3d at 257. A reviewing court is likely to determine that horizontal privity is no longer a requirement under Texas law or that horizontal privity is established here.[2]

The principle of horizontal privity has been "explicitly rejected" by the Restatement of the Law of Property, and only a minority of cases require horizontal privity. *See In re Energytec, Inc.*, 739 F.3d 215, 222 (5th Cir. 2013). The Texas Supreme Court has not directly addressed whether horizontal privity is still required. Yet, in its most recent case on the requirements for real covenants, the Texas Supreme Court found a covenant to run with land based on vertical

---

[2] Again, DMA and Longbranch's arguments on this issue are briefly summarized in this motion but are more fully set out in the documents attached as Exhibit A and B.

8

privity even through horizontal privity was not established. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (finding privity was satisfied even though the covenant was created in a declaration and not as part of any transfer of interest). Subsequent Texas cases have likewise recognized covenants can run with the land even when they are created without any conveyance. *See, e.g.*, *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 574 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (covenants in declaration); *Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*, 04-09-00256-CV, 2010 WL 2679997, at *9 (Tex. App.—San Antonio July 7, 2010, no pet.) (covenants in declaration); *see also* Jason S. Brookner, Philip B. Jordan, Lydia R. Webb, Ethan M. Wood, *This Land Is Your Land, This Land Is My Land: Farmout Agreements in Bankruptcy*, 13 TEX. J. OIL GAS & ENERGY L. 23, 43 (2018) (opining that horizontal privity is not a requirement under Texas law for a covenant to run with land because "the Texas Supreme Court has never addressed horizontal privity and has found covenants that fail the horizontal privity test to be covenants running with the land").

When, like here, "the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element" for a stay to be issued. *Texas Equip. Co.*, 283 B.R. at 227 (Bankr. N.D. Tex. 2002) (citation omitted).

And, even if a reviewing court finds that horizontal privity remains a requirement, the court is likely to conclude that horizontal privity was satisfied. Horizontal privity "is the relationship between the parties to the covenant." *Energytec*, 739 F.3d at 222 (quoting 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY §60.04[3][c][iv] (2010)). For there to be horizontal privity, there must be "simultaneous existing interests or mutual privity between the original parties as either landlord and tenant or grantor and grantee." *Id.* (quotation omitted).

In this case, horizontal privity existed when both Longbranch and DMA received their interests. First, Longbranch's option to purchase the ROW was a property interest. In assigning Black Duck the option to purchase the ROW, Longbranch reserved a net-profit interest in that ROW. Second, Moore (through his entity) conveyed his 50% ownership interest in Black Duck

9

and its assets—which included the ROW—to KrisJenn in exchange for the 20% net-profits interest for DMA.

## II. Alternatively, DMA and Longbranch present a substantial case on the merits where a serious legal question is involved.

Even if this Court concludes that DMA and Longbranch have not proven success on appeal is probable or likely, a stay is warranted in this case. DMA and Longbranch have made a substantial case on the merits that involves a serious legal question. The two serious legal questions are (1) whether the Assignment Agreements only granted DMA and Longbranch interests in Black Duck's profits, not the ROW, as a matter of law and (2) whether horizontal privity is a requirement for a real covenant. As demonstrated above, DMA and Longbranch present a substantial case on both questions.

While this Court may continue to stand by its post-trial decision, it is worth noting that at least one other court—a Texas state court applying Texas law—previously analyzed the Assignment Agreements and found that KrisJenn was not entitled to judgment as a matter of law. Before Wright caused KrisJenn to file for protection under Chapter 11 and initiated this adversary proceeding, Wright and KrisJenn moved for summary judgment in Texas state court. In their motion, Wright and KrisJenn asked the Court to "declare as a matter of law" that the Assignment Agreements only entitled Longbranch and DMA "to a contractual right to twenty percent (20%)" of the profits of Black Duck and its successors and assigns. The state court denied Wright and KrisJenn's motion—therefore finding that Wright and KrisJenn were not entitled to judgment as a matter of law on the interpretation of the Assignment Agreements. Given that this Court and the state court reached different conclusions, it is at least "possible" that DMA and Longbranch will succeed on appeal. *Mounce*, 2008 WL 2714423, at *2.

## III. The balance of the equities weighs heavily in favor of granting the stay.

The three remaining stay factors—the balance of equities—all tilt heavily in favor of granting a stay.

### A. DMA and Longbranch will suffer irreparable injury if the stay is not granted.

While DMA and Longbranch seek review of the final judgment's declaration that the Assignment Agreements are personal covenants, KrisJenn will likely sell the ROW as part of its anticipated Chapter 11 reorganization plan. Once the ROW is sold to a third-party, it will be virtually impossible for DMA and Longbranch to assert any right to net-profits interests in the ROW—even if they are successful on appeal. The doctrine of equitable mootness would likely end the appeal.

### B. The stay will not substantially harm Plaintiffs.

By contrast, Plaintiffs will not be harmed by a stay of the final judgment. There is no harm in delaying the sale of the ROW until the appeal is resolved. KrisJenn has incurred minimal costs on the ROW since filing for bankruptcy protection.

### C. The stay will serve the public interest.

A stay would promote the public interest because preventing the sale of ROW until the appeal is resolved would avoid a wrongful transfer of the ROW. Public policy favors ensuring that transfers of real property, like the ROW, are legitimate. Further, staying the final judgment would prevent a sale of the ROW from mooting the appeal—allowing full consideration of issues like whether horizontal privity is a requirement for a real covenant. The public has a strong interest in clarifying the privity requirement for a real covenant to avoid future disputes. The final factor is therefore sufficiently satisfied to authorize a stay. *See Texas Equip.*, 283 B.R. at 228-29 (finding the fourth factor satisfied where the movants would likely lose the opportunity to obtain appellate review of the decision if not stayed).

## CONCLUSION

For these reasons, DMA and Longbranch respectfully request that this Court grant this motion, stay the final judgment's declaration that the Assignment Agreements are personal covenants pending resolution of the appeal, and grant DMA and Longbranch such other further relief as the Court may deem proper.

Respectfully submitted,

/s/ *Christopher S. Johns*
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

/s/ *Timothy Cleveland*
Timothy Cleveland
State Bar No. 24055318
Austin Krist
State Bar No. 24106170
CLEVELAND | TERRAZAS PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
(512) 689-8698
tcleveland@clevelandterrazas.com
akrist@clevelandterrazas.com

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER
4825 50th Street, Suite A
Lubbock, Texas 79414
806-793-1906
806-792-2135 fax
aseger@thesegerfirm.com

*Attorneys for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

Natalie F. Wilson
State Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

*Attorneys for DMA Properties and Frank Daniel Moore*


Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, TX 78209
mblack@burnsandblack.com

Jeffery Duke
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, TX 77494
jduke@dbmmlaw.com

*Attorneys for Longbranch Energy*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 7, 2021 a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Ronald J. Smeberg<br>Charles John Muller, IV<br>111 W. Sunset<br>San Antonio, TX 78209<br>ron@smeberg.com<br>john.muller@cjma.law<br><br>*Counsel for KrisJenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, KrisJenn Ranch, LLC, Series Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>DUKE BANISTER MILLER & MILLER<br>22310 Grand Corner Drive, Suite 110<br>Katy, TX 77494<br>jduke@dbmmlaw.com<br><br>*Counsel for Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | Shane P. Tobin<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, Texas 78701<br>shane.p.tobin@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | John Terrill<br>12712 Arrowhead Lane<br>Oklahoma City, OK 73120<br><br>*Third Party-Defendant, pro se* |
| Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* | |

                                                    */s/ Christopher S. Johns*
                                                    Christopher S. Johns