**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** § | **Chapter 11** |
| **KRISJENN RANCH, LLC** § | |
| *Debtor* § | **Case No. 20-50805** |
| § | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC and** § | |
| **KRISJENN RANCH, LLC-SERIES** § | |
| **UVALDE RANCH, and KRISJENN** § | |
| **RANCH, LLC-SERIES PIPELINE** § | |
| **ROW as successors in interest to** § | |
| **BLACKDUCK PROPERTIES, LLC,** § | |
| *Plaintiffs* § | |
| § | |
| **v.** § | |
| § | |
| **DMA PROPERTIES, INC., and** § | |
| **LONGBRANCH ENERGY, LP,** § | **Adversary No. 20-05027** |
| *Defendants* § | |

| | | |
|---|---|---|
| **DMA PROPERTIES, INC** § | |
| *Cross-Plaintiff/Third Party Plaintiff* § | |
| § | |
| **v.** § | |
| § | |
| **KRISJENN RANCH, LLC,** § | |
| **KRISJENN RANCH, LLC-SERIES** § | |
| **UVALDE RANCH, and KRISJENN** § | |
| **RANCH, LLC-SERIES PIPELINE ROW,** § | **Adversary No. 20-05027** |
| **BLACK DUCK PROPERTIES, LLC,** § | |
| **LARRY WRIGHT, and JOHN TERRILL** § | |
| *Cross-Defendants/Third-Party* § | |
| *Defendants* § | |

**KRISJENN RANCH, LLC, KRISJENN RANCH, LLC-SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC-SERIES PIPELINE ROW, AS SUCCESSORS IN INTEREST TO BLACK DUCK PROPERTIES, LLC, AND LARRY WRIGHT'S**
<u>**POST-HEARING BRIEF ON REMEDIES**</u>

-1-

TO THE HONORABLE CHIEF BANKRUPTCY JUDGE RONALD B. KING:

COME NOW Debtors KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row, as successors-in-interest to Black Duck Properties, LLC (collectively the "Debtors"), and Larry Wright ("Wright"), following this Court's hearing of the parties' arguments on January 30, 2024, and file this Post-Hearing Brief on Remedies and in support thereof would respectfully show the Court as follows:

# I.
# BACKGROUND

1. On March 24, 2021, with respect to DMA Properties, Inc. and Longbranch Energy, LP's ("Defendants") counterclaims, this Court found that Wright breached an informal fiduciary duty owed to DMA principal Frank Daniel Moore, but, as to all other claims asserted by Defendants, the Court stated:

> [T]he Court finds that there is insufficient evidence in the record to prove DMA's, Longbranch's, and Moore's remaining third-party claims and counterclaims related to the ROW, including knowing participation in breach of fiduciary duty, tortious interference with contract, fraud, fraud in the alternative, conspiracy, unjust enrichment, conversion, and promissory estoppel. Evidence in the record and the testimony of the parties show that Wright, Moore, and Borders were engaged in a vigorous effort to make the ROW a success. They often misunderstood each other and engaged in puffery and other common tools of negotiation in business deals. Forceful negotiation, puffery, and exaggeration, however, do not amount to a tort. These claims will be denied.

Bankruptcy Court Opinion [#236] at 22, 25.

2. On March 14, 2023, the District Court remanded to this Court to "consider the damage model presented to it in the first instance . . . and other gains-based remedies pursued at trial and the knowing participation claims against Wright's various entities." Case 5:21-cv-00358-JKP [#40] at 38.

## II.
## OBJECTIONS

3. Debtors object to this Court's finding that Wright breached his informal fiduciary duty to Moore because the Black Duck loan was not properly authorized. Bankruptcy Court Opinion [#236] at 27. First, Defendants only pleaded that Wright breached his formal fiduciary duty to DMA. Counterclaims and Third-Party Claims [#6] 107-110. Second, there is no evidence in the record that Wright and Moore had a personal relationship of trust and confidence, which is required for an informal fiduciary relationship. *See Bazan v. Munoz*, 444 S.W.3d 110, 118 (Tex. App.—San Antonio 2014, no pet.). Therefore, the Court had no basis to make a finding on a claim that was not properly before it and for which there was no evidence in the record.

4. Debtors also object that there is no evidence in the record or findings of fact to support any claim for damages or untoward gains. Defendants made no capital contributions, loans, or payments, and have no lost profits. The parties held the same interest in the ROW prior to this lawsuit being filed and after it was adjudicated. Accordingly, there is no basis for this Court to find DMA and Longbranch suffered damages or are entitled to any equitable remedies from Debtors' untoward gains.

## III.
## ARGUMENT AND AUTHORITY

### A. Damages

5. There is no evidence of damages in the record. The ROW was owned by Rod Roberts before it was sold to Black Duck. 01/15/2021 Trial Transcript [#229] at 47:12-14. Defendants secured the contractual right to purchase the ROW from Roberts for $25,000 and then induced Wright to fund the acquisition of the ROW by and through Black Duck. *Id.* at 174:23-175:23. Wright agreed and immediately reimbursed the $25,000 based on Defendants'

representations that the ROW could be quickly flipped before closing, which was consistent with the parties' prior course of business. 01/11/2021 Trial Transcript [#225] at 66:12-69:24. Defendants, however, never found an able buyer and repeatedly induced Wright to purchase extensions to closing that ultimately cost almost $1.2 million. *Id.* at 69:6-71:17. Defendants again failed to identify a prospective purchaser within the extension periods, and, as a result, Wright was ultimately forced to close on the ROW by paying $4,100,000. *Id.* at 145:1-20. The majority of Wright's wealth was held in non-liquid real estate assets at the time of this unexpected closing. *Id.* at 145:12-147:13. It was therefore necessary to secure a bridge loan to secure the ROW until the Defendants found a prospective purchaser. *Id*. at 145:1-147:13. As the Court recognized in its Opinion, Defendants were "likely aware that the purchase of the ROW would be accomplished through borrowed funds, rather than through Wright's own cash injected into Black Duck as a capital contribution". Bankruptcy Court Opinion [#236] at 27.

6. Thereafter, Defendants refused to secure a purchaser unless they were provided with lucrative side-deals to the exclusion of Wright. 01/11/2021 Trial Transcript [#225] at 118:14-120:2; 126:12-128:8; and 158:14-159:13. As such, Wright was forced to hold the ROW for a protracted time that ultimately caused him to lose his ranch and the $10 million in equity he held in it. However, as demonstrated clearly at trial, Defendants never paid any of the expenses relating to the ROW after their initial investment was reimbursed. *Id.* at 155:6-156:11. Defendants made no contribution to Black Duck and provided none of the acquisition funds. *Id.* at 101:14-102:3; and 145:1-147:13. They never paid any interest or other costs on the funds borrowed to purchase the ROW. *Id.* at 148:20-24. They have never paid property taxes or maintenance costs for the ROW. *Id.* at 119:11-13. They have never paid due diligence or research costs. *Id.* at 70:14-71:17. They did not even pay legal expenses for this case; their capable

-4-

counsel has always worked on contingent fees. 2/11/2021 Trial Transcript [#258] at 10:11-14. Under these circumstances, it was simply impossible for Defendants to present any evidence to the Court to support any of their counterclaims. That dynamic has not changed on remand.

7. In its briefing, DMA attempts to argue that its damages are based on Moore's "countless hours developing the ROW opportunity and securing the right to purchase it." DMA and Longbranch's Briefing on Remedies [#321] at 4. The lack of evidence in support of this argument ironically confirms these hours truly were countless. Moore never testified as to the number of hours he claims to have worked, nor did he testify as to the value of such services. Moreover, the evidence showed Moore walked off the job and moved to South Carolina shortly after Black Duck closed on the ROW. 01/11/2021 Trial Transcript [#225] 137:12-138:14. Further, Moore was not a vendor who provided services to Black Duck. Moore's interest in the ROW has always been based on an equity or profits interest that was dependent on the ROW being monetized. These established facts belie Moore's baseless argument he was somehow working for non-contingent wages. He should be estopped from arguing to the contrary.

B. **"Gains-Based Remedies"**

8. There is no evidence of untoward gain by KrisJenn in the record. The evidence in this case clearly shows that Wright and his entities gained nothing from their efforts to adjudicate the legal status of the ROW. Prior to this lawsuit being filed, KrisJenn owned the ROW subject to Longbranch's and DMA's profits-only interests. After this lawsuit was adjudicated, the parties held the same interest. Nothing was gained by KrisJenn's alleged conduct nor was anything lost by Defendants. If the ROW truly runs with the land, then there is nothing Wright or his entities could ever do to affect Defendants' interests.

9. Moreover, there is no logical nexus between the tortious conduct found by the

Court and Defendants' interests in the ROW. The Court found that Wright breached an informal fiduciary duty owed to SCMED Oilfield Consulting, LLC ("SCMED") and Moore by causing Black Duck to execute a secured loan with KrisJenn. Bankruptcy Court Opinion [#236] at 25.[1] Specifically, the Court found "the Black Duck Loan was not properly authorized" and "Wright entered into an ultra vires and conflicted loan transaction with Moore's required consent." *Id*. at 27. The lien securing the loan was later used to foreclose upon proceeds of the Bigfoot Note. *Id.* at 9. Defendants were therefore awarded a full measure of damages for all they were owed under the Bigfoot Note in the amount of $175,143.60, plus $100,000.00 in attorney's fees, which were immediately recovered from funds held in the Panola County court registry. *Id.* at 28.

10. KrisJenn never foreclosed on the ROW, and it remained in Black Duck's possession until it was sold to TCRG. Pl. Ex. 61. Straining to find fault in anything Wright did to protect himself, Defendants strenuously argued that Wright was obliged to allow Moore's participation in the sale of the ROW. At such time, however, Moore had ceased all efforts to sell the ROW, moved to South Carolina, and voluntarily transformed his active membership interest in Black Duck to a silent "profits only" interest. 1/11/2021 Trial Transcript [#225] at 138: 9-12 and 1/12/2021 [#226] Trial Transcript at 70: 21-24. As a result, the Court found no wrongful conduct regarding Black Duck's sale of the ROW and limited its holding for breach of fiduciary duty to Wright's conduct relating to the Bigfoot Note. Bankruptcy Court Opinion [#236] at 27. As such, there is no factual basis to award any "gains-based" equitable remedies.

11. Defendants further seek the imposition of a constructive trust. The Court may place a constructive trust on proceeds, funds, or property obtained as a result of a breach of

---

[1] SCMED was not a party to this suit and had forfeited its right to bring claims and defend against legal claims in Texas on January 29, 2016. Pl. Ex. 102. SCMED assigned its claim, which it did not have the capacity to bring after January 29, 2016, to DMA, giving DMA claims SCMED could not legally raise in Texas until SCMED cured its tax forfeiture, which it never did. Pl.'s Ex. 60.

fiduciary duty. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87-88 (Tex. 2015). However, this Court did not find Debtors obtained any proceeds, funds, or property due to a breach of fiduciary duty, so a constructive trust cannot be imposed.

### C. Unclean Hands

12. Defendants' efforts in this case are truly vindictive. In sum, Defendants induced Wright to invest in the ROW by making a series of false and exaggerated statements. Thereafter, they caused Wright to incur substantial economic loss while they engaged in self-dealing. They now seek to have the ROW "returned" to them so they can attempt to sell it for themselves. Defendants, however, have a vested interest in the ROW and have had the opportunity to sell the ROW for over 6 years. They have proven to be utterly incapable of doing so. Defendants are clearly incapable and unwilling to pay the extensive costs associated with holding the ROW. Defendants want control of the ROW for one reason only; they wish to continue their vindictive efforts. This is the epitome of unclean hands.

13. Moreover, Defendants' argument that the ROW should be "returned" to them is based on an obviously false assertion. Defendants never owned the ROW; they merely had a contractual right to purchase the ROW from Express Pipeline for $5 million. Time has shown that Defendants are unwilling to make any financial or other commitments to maintaining the integrity of the ROW. In their hands, the ROW will be subjected to potential adverse possession claims and Wright's continued efforts to make the ROW viable will be jeopardized. In sum, Wright bears all the risk for his now $10 million investment in the ROW and, as a matter of basic fairness, he should continue to be in control of that risk. Defendants have admitted their 40% profits were designed to prevent the ROW from being sold. Giving Defendants additional control over Wright's financial livelihood would be truly inequitable.

### D. Attorney's Fees

14. Defendants also seek attorney's fees in connection with Moore's claim for breach of contract against Wright in light of Wright's breaches of the Email Agreement. However, the Court denied all relief relating to this claim and its judgment was upheld on appeal. As recognized by Defendants, the District Court remanded only to consider damages and equitable remedies "with respect to DMA's and Moore's claims for breach of fiduciary duty (against Wright) and knowing participation (against Wright's Entities)." DMA and Longbranch's Briefing on Remedies [#321] at 10. As a result, this issue is not before the Court on remand.

### E. Moore's Standing

15. Further, Moore has no standing to assert claims in this case. His interest in Black Duck was held by and through DMA. Pl. Ex. 58. He surrendered this interest in return for a 20% net profits interest that was given to SCMED. Pl. Ex. 57. SCMED then failed to comply with the tax laws of the State of Texas and lost its right to assert a legal claim. Pl. Ex. 102. Because Moore is a successor-in-interest to such claims, he too is barred from asserting SCMED's claims.

WHEREFORE, PREMISES CONSIDERED, Debtors and Wright request that this Court find Defendants are not entitled to damages or equitable relief and for all other relief, in law or equity, to which Debtors and Wright may be justly entitled.

Dated: February 9, 2024

Respectfully submitted,

CJ MULLER & ASSOCIATES, PLLC

By: /s/ *John Muller*
   C. John Muller IV
   State Bar No. 24070306
   john.muller@cjma.law
   Jason H. Casell
   State Bar No. 24063869
   jason.casell@cjma.law
   111 W. Sunset Rd.
   San Antonio, TX 78209
   Telephone: 210-664-5000
   Facsimile: 210-899-1933

ATTORNEYS FOR DEBTORS

BAYNE, SNELL & KRAUSE

By: /s/ *William P. Germany*
   William P. Germany
   State Bar No. 24069777
   wgermany@bsklaw.com
   1250 N.E. Loop 410, Suite 725
   San Antonio, TX 78209
   Telephone: 210-824-3278
   Facsimile: 210-824-3937

  ATTORNEY FOR THIRD-PARTY
  DEFENDANT LARRY WRIGHT

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 9th day of February 2024:

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com
Attorneys for Longbranch Energy, LP
and DMA Properties, Inc.

Christopher S. Johns
Christen Mason Hebert
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

Timothy Cleveland
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
Attorneys for DMA Properties, Inc.

Natalie Wilson
LANGLEY & BANACK, INC.
745 East Mulberry Avenue | Suite 700
San Antonio, TX 78212
210-736-6600
lwilson@langleybanack.com
Attorneys for DMA Properties, Inc.

Jeffery Duke
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, Texas 77494
jduke@dbmmlaw.com
Counsel for Longbranch Energy, LP

William Germany
BAYNE, SNELL, & KRAUSE
1250 NE Loop 410, Ste. 725
San Antonio, Texas 78209
T- (210) 824-3278
F- (210) 824-3937
wgermany@bskaw.net
Attorney for Larry Wright

OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, Texas 78701
james.rose@usdoj.gov
United States Trustee

        /s/ *John Muller*_____
        C. John Muller IV