**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **KRISJENN RANCH, LLC** | § | |
| *Debtor* | § | **Case No. 20-50805** |
| | § | |

---

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC and** | § | |
| **KRISJENN RANCH, LLC-SERIES** | § | |
| **UVALDE RANCH, and KRISJENN** | § | |
| **RANCH, LLC-SERIES PIPELINE** | § | |
| **ROW as successors in interest to** | § | |
| **BLACKDUCK PROPERTIES, LLC,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DMA PROPERTIES, INC., and** | § | |
| **LONGBRANCH ENERGY, LP,** | § | **Adversary No. 20-05027** |
| *Defendants* | § | |

---

| | | |
|---|---|---|
| **DMA PROPERTIES, INC** | § | |
| *Cross-Plaintiff/Third Party Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KRISJENN RANCH, LLC,** | § | |
| **KRISJENN RANCH, LLC-SERIES** | § | |
| **UVALDE RANCH, and KRISJENN** | § | |
| **RANCH, LLC-SERIES PIPELINE ROW,** | § | **Adversary No. 20-05027** |
| **BLACK DUCK PROPERTIES, LLC,** | § | |
| **LARRY WRIGHT, and JOHN TERRILL** | § | |
| *Cross-Defendants/Third-Party* | § | |
| *Defendants* | § | |

**KRISJENN RANCH, LLC, KRISJENN RANCH, LLC-SERIES UVALDE RANCH, AND
KRISJENN RANCH, LLC-SERIES PIPELINE ROW, AS SUCCESSORS IN INTEREST
TO BLACK DUCK PROPERTIES, LLC, RESPONSE AND OBJECTIONS
TO DMA AND LONGBRANCH'S MOTION FOR ATTORNEYS FEES**

1

TO THE HONORABLE BANKRUPTCY JUDGE RONALD B. KING:

COMES NOW Debtors KrisJenn Ranch, LLC, KrisJenn Ranch, LLC- Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row, as successors-in-interest to Black Duck Properties, LLC (collectively the "Debtor"), and file this Response to DMA and Longbranch's (collectively "Defendants") Motion for Attorney's Fees (the "Motion"), objecting to the Motion and the evidence supporting same upon the following grounds, and would respectfully show the Court as follows:

**A.     Defendants cannot recover fees and costs for Breach of Contract:**

1.     Defendants' Motion and supporting Declaration primarily seek recovery of attorney's fees costs on a reasonable and necessary standard based on their claims for Breach of Contract.   Defendants, however, did not prevail on their Breach of Contract claim at trial. Defendants appealed this decision but the District Court ruled: "As to Appellate Issue 3, the Court finds no error."  The only remanded issues were as to Appellate Issue 2—regarding Breach of Fiduciary Duty—and Appellate Issue 1—regarding the UDJA claims.   *See* Memorandum Opinion and Order, Judge Pulliam, Doc. 40, p.14. (Appellate Issues); p.37 (ruling on Appellate Issues). As such, Defendants have no right to recover attorney's fees for breach of contract because they did not prevail on this claim.

**B.     Defendants cannot recover fees and costs for Breach of Fiduciary Duty:**

2.     Defendants' Motion and Declaration also seek recovery of attorney's fees based on their claims for Breach of Fiduciary Duty.  However, a party is not entitled to recover attorney's fees and costs for Breach of Fiduciary Duty in Texas.  *Holland v. Wal-Mart Stores*, 1 S.W.3d 91, 95 (Tex. 1999); *see also Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 909 (Tex. App.—San Antonio 2019, opinion withdrawn) (quoting *Chapman Custom Homes, Inc.*

2

*v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)) (precluding an award of fees and cost for breach of fiduciary when contract exists); *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 526, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (same). As such, the District Court did not remand this case for consideration of an award of attorney's fees and costs relating to Defendants' fiduciary claims and this Court is without jurisdiction to consider such arguments.

**C.      Defendants cannot recover fees and costs under the UDJA:**

3.      This Court initially ruled in Debtor's favor with regard to the UDJA covenant issues; however, it did not award attorney's fees to either party. The UDJA does not require an award of attorney's fees to a prevailing party and may be awarded to a defending party. *Devon Energy Prod., v KCS Res.*, 450 S.W.3d 203, 220 (Tex. App.—Houston [14th Dist.] 2014, pet denied.) Defendants therefore waived all arguments in support of their claims for recovery of attorney's fees because they did not appeal or brief the issue. *See* Doc. 40 (Preservation of Issues, Waiver, and Abandonment). This Court lacks jurisdiction to award fees and costs under the UDJA because the issue was not remanded for its consideration. *Id.* All such relief was denied by the District Court.

4.      Moreover, Defendants request for nearly $1 million in fees and costs is unreasonable, unnecessary, inequitable, and unjust. Defendants have already received all fees relating to their claims based on the Big Foot Note. Debtor stipulated and admitted that Defendants would receive their relative net profits interests from the sale of the ROW to TCRG. As such, the parties only had a good faith dispute regarding whether the claimed net profits interests could be enforced against subsequent purchasers under UDJA[1]. Debtor initially filed

---

[1] Debtor later added a claim for tortious interference.

this matter as a single count UDJA claim and was met with 33 counterclaims.  Defendants did not prevail on any of their counterclaims, and these unnecessary pleadings were the primary cause of the parties efforts and legal expenses in this case.

5.      With regard to the parties' UDJA dispute, the shoe is now on the other foot. It is clear, however, that Debtor's UDJA arguments were well- founded.  Debtor presented Mr. Craig Crocket (who was counsel to TCRG and adverse to Debtor) who testified that he had extensive experience with the contested matters and believed Defendants' net profits interest could not run with the land.  This Court agreed and entered a well-reasoned judgment and opinion in favor of Debtor.  To award fees to Defendants under these circumstances, when Debtor was not awarded fees under the UDJA after prevailing at trial, would be inequitable and unjust.

**D.      Defendants' fee bills have not been authenticated.**

6.      Counsel's Declaration  in support of attorney's fees does not provide a business records affidavit or any other testimony attempting to show that the fee bills proffered are, in fact, true and accurate records of contemporaneous time recorded during the pendency of this case. There is certainly no indication that the fee bills were ever tendered to the client, or that the client ever made a payment on the bills.  As such, the fee bills are not admissible as evidence pursuant to Rules 901 and 902 of the Federal Rules of Evidence.

7.      Further, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  FED. R. EVID. 602. While Mr. Cleveland may have personal knowledge necessary to authenticate his own firm's fee bills, he would not be in a position to do the same with respect to Mr. Johns' and Mr. Seger's bills.  Mr. Cleveland's Declaration  presents no evidence showing he has personal knowledge of Mr. Johns or Mr. Seger's billing practices.  Mr. Cleveland does not claim to be the custodian of such records, nor does he claim any familiarity with how the records were recorded, created,

stored, transmitted, and/or segregated. Mr. Johns' and Mr. Seger's failure to tender an affidavit in support of their own fees bills is fatal and dispositive. Mr. Seger didn't even appear in the case.

**E.     Defendants' billing rates are unreasonable.**

8.      In 2019, the Texas Bar last published the median attorney fee rates in Texas. Exhibit 1. Their report indicates that the median attorney billing rate in Texas was $291/hour, and that such rates had increased at an average annual rate of 2.3% from 2007 to 2019. Projecting rates using the same trends, average billing rates in Texas are as follows:

| Actual | 20% Reduction | 20% Increase |
|--------|---------------|--------------|
| 2020: $298 | $238 | $358 |
| 2021: $305 | $366 | $366 |
| 2022: $312 | $250 | $374 |
| 2023: $319 | $255 | $383 |
| 2024: $326 | $260 | $391 |

9.      Defendants fee bills show that Mr. Cleveland charged 155% of the median rate in 2019 but increased his rates dramatically in 2023 to be 240% of the median rate by 2024. Mr. Johns charged 155% of the median rate in 2019 and increased his rate by 3-5% each year until 2024, when his rate was 184% the median rate. Ms. Christi Hebert charged 125% of the median rate in 2019 but increased her rates to 132% of the median rate by 2021.

10.      Further, Mr. Johns' firm's billing totaled $789,560.44—almost twice the $459,325.35 charged by lead counsel. The parties were the only witnesses deposed in this case. Ms. Hebert attended these depositions but asked no questions. There was very little written discovery and document production. Except for the Appellant's brief, all legal pleadings and motions were drafted and prepared by Mr. Cleveland's offices. It is hard to understand how Mr.

Johns' firm's fee bills could be so high.

11.     Given their relative levels of experience, and the facts and circumstances of this particular case, the premium rates described in paragraph 8, *supra*, would be reasonable and necessary for adjudicating the discrete UDJA covenant claim that is the subject of Defendants' request for attorney's fees.  Exhibit 2.

## F.     Defendants' time entries do not justify an award of attorney's fees.

12.     A claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence of the "particular services performed." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019).  However, most of Defendants' time records are so nebulous and vague that it is impossible to even generally determine what work was being done.  These time entries provide no evidence showing the particular services performed, or that such work was performed in support of Defendants UDJA covenant claims.  Claims based on such time entries must therefore be excluded from the Court's consideration.

## G.     Defendants did not properly segregate its fee bills:

13.     Defendants' counsel did not segregate time that clearly did not relate to its UDJA claim.  Instead, he segregated $116,984 in fees sought and partially awarded for claims relating to the Big Foot Note.  Next, Defendants' counsel deducts 15% of the remainder for "time incurred by DMA and Longbranch's counsel [that] was incurred in connection with prosecution and defense of claims with respect to which DMA and Longbranch either did not prevail or with respect to which DMA and Longbranch are not entitled to recover fees." Counsel provides no explanation for how he arrives at this rate.  "[C]onclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019).

14.     Further, Defendants did not account for any of their work on 31 of their 33 counterclaim that do not allow for recovery of attorney's fees.  Without explanation, they claim those discrete causes of action were "inextricably intertwined."  However, "a claimant must segregate recoverable from unrecoverable fees."  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*  The facts and evidence relating to Defendant's numerous tort claims were irrelevant to the UDJA covenant claims.  Such arguments focused on the specific text of the net profits agreements and the legal descriptions that should have been attached to those documents.

15.     Moreover, segregation of 20% of Defendants' generously claimed time is clearly unjustified and inappropriate.  Adjudication of the UDJA covenant issue was a discrete issue that had nothing to do with the numerous counterclaims asserted against Debtor. For instance, the fraud and fiduciary issues related to whether Mr. Wright was allowed to take a private loan to fund the acquisition of the ROW.   These facts and evidence consumed the case, and they had nothing to do with the UDJA covenant dispute.  As such, Defendants had an obligation to segregate time relating to the defense of counterclaims and the prosecution of numerous unsuccessful, contract, tort, and vicarious liability counterclaims.  At least 60% of the time, effort, and evidence provided in this case related to these factually and legally distinct issues.

16.     Further, Defendants make no effort to segregate claims based on participatory and vicarious liability.  Such claims included pleadings for alter ego, sham to perpetrate a fraud, aiding and abetting, conspiracy and knowing participation.  Defendants continued to pursue their fraud and knowing participation claims even on remand.  A such, considerable amount of time

was spent attempting to pierce the corporate veil and attach liability to Mr. Wright, individually. Defendants did not prevail on these claims and must allocate and segregate its time relating to this work. At least 20% of the evidence presented and time incurred in this case was spent prosecuting these claims.

17. Assuming Defendants could recover fees under the UDJA, which they cannot, the remaining 20%, billing judgment should still be exercised at the stipulated 5%, but the aforementioned reasonable rates should be applied only to time entries that reference or clearly relate to counsel's UDJA claims. All of Mr. Seger's time must be struck because he did not appear in this case nor did he prepare an affidavit in support of his fee bills. Mr. Johns' firm's time must be struck because he did not prepare an affidavit in support of his fee bills, because his time entries are vague, and because his rates were modified post-trial. *Infra.*

**H.    Defendants' Declaration  is conclusory and inaccurate.**

18. There are material discrepancies in the fee bills presented to the Court post-trial versus the fee bills presented to the Court on remand. First, the format of the bills has changed. Doc. 240-2 and Doc. 348-2. Whereas actual fees bills were submitted post-trial, they have now been replaced by spreadsheets. Doc. 240-2 pp. 9-12, 22-37 and Doc. 348-2 pp. 112-144. In some circumstances, it is the opposite. Further, the rates charged by all attorneys who worked at Mr. Johns' office changed from the time of post-trial briefing to the present. Doc. 240-2 pp. 3-7, 14-21 and Doc. 348-2 pp. 12-32. Mr. Johns' rates changed from $450 to $465; Ms. Hebert's time increased from $375 to $390; David Johns' time changed from $100 to $110. These fee bills are clearly not authentic and have been modified post-trial to increase the amounts charged.

19. In addition, the aggregate amount of the fee bills has more than tripled. In Defendants' post-trial briefing, submitted in April of 2021, Defendants sought recovery of

$116,984 claiming that "because substantial portions of the testimony at trial did not relate to the Harris SWD claims, DMA has reduced its fee request with respect to trial and related preparation by 2/3." Doc. 240 pp. 9-10.  By multiplication, the total amount of fees charged to Defendants would have been $350,952. After remand, the total amount of claimed attorney's fees has almost tripled to $989,728.38.  There can be no innocuous explanation for this.

WHEREFORE, PREMISES CONSIDERED, Debtor prays this Court find and hold that Defendants are not entitled to attorney's fees and for all other relief, in law or equity, to which Debtor may be justly entitled.

Dated: May 7, 2024

Respectfully submitted,

CJ MULLER & ASSOCIATES, PLLC

By: /s/ *John Muller*
    C. John Muller IV
    State Bar No. 24070306
    john.muller@cjma.law
    111 W. Sunset Rd.
    San Antonio, TX 78209
    Telephone: 210-664-5000
    Facsimile: 210-899-1933

ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by way of e-service through the CM/ECF system by notice of electronic filing or via email on the 7th day of May 2024:

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, Texas 78209
210-829-2022
210-829-2021 fax
mblack@burnsandblack.com
Attorneys for Longbranch Energy, LP

Christopher S. Johns
COBB & JOHNS PLLC
2028 East Ben White Boulevard
Suite 240-1000
Austin, TX 78741
512-399-3150
cjohns@cobbjohns.com

Timothy Cleveland
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
Attorneys for Longbranch Energy, LP,
DMA Properties, Inc. and Frank Moore

Natalie Wilson
LANGLEY & BANACK, INC.
745 East Mulberry Avenue | Suite 700
San Antonio, TX 78212
210-736-6600
lwilson@langleybanack.com
Attorneys for DMA Properties, Inc. and
Frank Daniel Moore

Jeffery Duke
JF DUKE AND ASSOCIATES
11819 Great Oaks Drive
College Station, TX 77494
jeff@jfduke.com
Counsel for Longbranch Energy, LP

William Germany
william@germanylaw.com
GERMANY LAW, PLLC
1250 NE Loop 410, Ste. 725
San Antonio, Texas 78209
Telephone:  (210) 824-3278

Attorneys for Larry Wright

James Rose
OFFICE OF THE UNITED STATES TRUSTEE
903 San Jacinto Blvd, Room 230
Austin, TX 78701
james.rose@usdoj.gov
United States Trustee

Laura L. Worsham
JONES, ALLEN & FUQUAY, L.L.P.
8828 Greenville Avenue
Dallas, TX 75243
lworsham@jonesallen.com
*Counsel for McLeod Oil, LLC*

Ronald J. Smeberg
THE SMEBERG LAW FIRM, PLLC
2010 W Kings Hwy
San Antonio, TX 78201-4926
ron@smeberg.com
Counsel for Black Duck Properties, LLC

 /s/ John Muller_____ _____
C. John Muller IV

EXHIBIT 1

# 2019 INCOME AND HOURLY RATES

The following report is published periodically to provide insight on the economics of the practice of law in Texas. The information for this report was collected in the 2019 Texas Attorney Survey.

*Please note that the income and hourly rate information is not intended to set appropriate attorney fees or incomes.*



# INTRODUCTION

The income and hourly rate report is published periodically to provide insight on the economics of law practice in Texas.

The State Bar's Department of Research and Analysis conducted the Texas Attorney Survey – Status 2019 on October 13, 2020, and completed data collection on November 3, 2020.

This report presents data collected on licensed and practicing full-time attorneys who provided information for the calendar year 2019.

The report provides detailed breakdowns of incomes by sex, race, ethnicity, age, law firm size, years of experience, area of practice, and region of the state. A comparison to historical data is also provided for select demographics.

The questionnaire was emailed on October 13, 2020, to all active State Bar of Texas attorneys who have not opted out of taking surveys. A total of 83,140 received the survey. A total of 6,990 attorneys responded to the survey.  This response gave the survey a margin of error of ±1.1%.

A more detailed description of the methodology and a copy of the questionnaire are included at the end of this report (see appendix).

## Responses by Metropolitan Statistical Area (MSA)

| Metropolitan Statistical Area | Texas Attorney Population | Percent of Attorney Population | Respondents | Percent of Respondents |
|---|---|---|---|---|
| Houston-The Woodlands-Sugar Land MSA | 29,193 | 32.0% | 1,630 | 27.5% |
| Dallas-Fort Worth-Arlington MSA | 28,034 | 30.7% | 1,738 | 29.3% |
| Austin-Round Rock MSA | 12,486 | 13.7% | 889 | 15.0% |
| San Antonio-New Braunfels MSA | 7,077 | 7.8% | 524 | 8.8% |
| El Paso MSA | 1,292 | 1.4% | 93 | 1.6% |
| Corpus Christi MSA | 1,056 | 1.2% | 93 | 1.6% |
| Beaumont-Port Arthur MSA | 757 | 0.8% | 44 | 0.7% |
| Central Texas MSAs | 1,101 | 1.2% | 101 | 1.7% |
| East & NE Texas MSAs | 2,227 | 2.4% | 173 | 2.9% |
| South Texas MSAs | 1,997 | 2.2% | 149 | 2.5% |
| West Texas MSAs | 2,581 | 2.8% | 222 | 3.7% |
| Non-Metro | 3,443 | 3.8% | 269 | 4.5% |

# SUMMARY FINDINGS

## 2019 Income and Hourly Rate Summary



**$122,666**

Median Income

**$291**

Median Hourly Rate

## INCOME

The median income for respondent full-time Texas attorneys was $122,666.

In 2019, 41% of respondent full-time Texas attorneys saw an increase in their annual income.

Texas attorney income has increased steadily since 2011, but has not reached a pre-2008 recession high of $129,322 yet.

Men and white attorneys reported higher incomes than their counterparts. Men reported a median of $146,328 and white attorneys reported a median of $132,919.

Median income increases with more experience. Attorneys licensed 2 or fewer years reported a median income of $72,982 compared to a median of $163,481 for those licensed over 25 years.

The highest incomes were reported in the largest metro areas. In Dallas-Fort Worth-Arlington MSA, the median income was $129,623, and in Houston-The Woodlands-Sugar Land MSA, the median was $129,526.

## HOURLY RATES

Hourly rates are the most common method for private practitioners to charge for their services. 90% reported hourly rates as a method for charging.

The median hourly rate for respondent full-time private practitioners in 2019 was $291.

Like income, the highest hourly rates were reported in the largest metro areas. In Dallas-Fort Worth-Arlington MSA, the median income was $308, in the Austin-Round Rock MSA, the median was $299, and in Houston-The Woodlands-Sugar Land MSA, the median was $297.

# SUMMARY FINDINGS CONTINUED

## Jobs, Satisfaction, and Law School Debt Summary



**87%** Found first full-time job within 6 months



**85%**

Career Satisfaction



**86%**

Law School Satisfaction



# $91,766

Median Law School Debt for all Full-Time Attorneys

# $105,889

Median Law School Debt for Attorneys Licensed 2 or fewer Years

Attorneys were asked how long, since they were first admitted to practice law, did it take them to obtain their first full-time job providing legal services.

The level of career and law school satisfaction was measured on a 5-point scale, from extremely dissatisfied to extremely satisfied.

Additionally, attorneys were asked how much law school debt they carried at this point in their career as of 2019. The median reported was $91,766.

## Career Satisfaction by Years of Experience



| Years | Satisfaction |
|---|---|
| 2 or Fewer | 78% |
| 3 to 6 | 80% |
| 7 to 10 | 80% |
| 11 to 15 | 83% |
| 16 to 20 | 86% |
| 21 to 25 | 86% |
| Over 25 | 92% |

Satisfaction percents are for those who reported they are moderatley or extremely satisfied.

# INCOME

## Income Change

Attorneys were asked how their income changed over the past year (2018 to 2019).

41% reported seeing an increase in their annual income in 2019 compared with 23% who reported a decrease.



## Median Income by Year



The median income for respondent full-time Texas attorneys has increased steadily since 2011 but has not reached a pre-2008 recession high of $129,322.

In addition to income, some attorneys received a bonus in 2019. The median reported was $16,945.

# $16,945

Median Bonus

# INCOME CONTINUED

## Median Income by Sex and Race/Ethnicity

The median income for respondent full-time Texas attorneys was $122,666 in 2019.

Men and white attorneys reported higher incomes than their counterparts. Men reported a median income of $146,328 and white attorneys reported a median of $132,919.

The median for women was $106,491, and non-white attorneys reported a median of $102,895.



# INCOME CONTINUED

## Median Income by Sex and Race/Ethnicity and Years of Experience

Men and white attorneys report a higher income over the course of their careers in comparison to their counterparts.

Income reported by men licensed 2 or fewer years is 10% greater than that reported by women. For those licensed over 25 years, the difference is 22%.

White attorneys licensed 2 or fewer years reported an income 10% greater than that reported by non-white attorneys. For those licensed over 25 years, the difference is 35%.



# INCOME CONTINUED

## Income by Metropolitan Statistical Area (MSA)

| Metropolitan Statistical Area (MSA) | Median Income |
|---|---|
| Houston-The Woodlands-Sugar Land MSA | $129,526 |
| Dallas-Fort Worth-Arlington MSA | $129,623 |
| Austin-Round Rock MSA | $119,207 |
| San Antonio-New Braunfels MSA | $118,965 |
| El Paso MSA | $121,428 |
| Corpus Christi MSA | $105,682 |
| Beaumont-Port Arthur MSA | $114,062 |
| Central Texas MSAs | $105,882 |
| East & NE Texas MSAs | $115,908 |
| South Texas MSAs | $115,384 |
| West Texas MSAs | $119,642 |
| Non-Metropolitan Counties | $97,999 |

In general, the larger the MSA the larger the median income reported.

For example, the Dallas-Fort Worth-Arlington MSA had a median income of $129,623. This compares to the lowest median income of $97,999 in non-metropolitan areas.

# HOURLY RATES

## Hourly Rate Trends

Hourly rates charged by respondent full-time private practitioners in 2019 were 29% higher than they were in 2007. During the same period, the median income reported declined by 5%.

With respect to fees, 90% of private practitioners reported they charge an hourly rate. Attorneys also reported collecting flat fee and contingency fees. 25% and 26% of respondents reported collecting fees with these methods, respectively.

### Median Hourly Rate by Year





Percents will not add up to 100%. Respondents could select multiple fees.

# HOURLY RATES CONTINUED

## Hourly Rates by Metropolitan Statistical Area (MSA)

| Metropolitan Statistical Area (MSA) | Median Hourly Rate |
|---|---|
| Houston-The Woodlands-Sugar Land MSA | $297 |
| Dallas-Fort Worth-Arlington MSA | $308 |
| Austin-Round Rock MSA | $299 |
| San Antonio-New Braunfels MSA | $285 |
| El Paso MSA | $228 |
| Corpus Christi MSA | $238 |
| Beaumont-Port Arthur MSA | $250 |
| Central Texas MSAs | $247 |
| East & NE Texas MSAs | $268 |
| South Texas MSAs | $232 |
| West Texas MSAs | $279 |
| Non-Metropolitan Counties | $239 |

Hourly rate trends closely mirror that of incomes. The larger the MSA, the larger the median hourly rate reported.

For example, the Dallas-Fort Worth-Arlington MSA had a median hourly rate of $308. This compares to the lowest median hourly rate reported of $228 in El Paso.

# APPENDIX

## Methodology



**Method**

**Data Collection**

Attorney economic information was collected in the Texas Attorney Survey – Status 2019. The questionnaire was emailed on October 13, 2020, to 83,140 active attorneys licensed by the State Bar of Texas, maintaining active membership in the State Bar of Texas, and who did not opt out of receiving survey mailings.

The survey's results are presented in part by geographic region, which is broken down into 13 economic areas. The metropolitan areas (Metropolitan Statistical Areas or MSAs) were defined by the Federal Office of Management and Budget. There were 1,630 responding attorneys from the Houston-The Woodlands-Sugar Land and 1,738 from the Dallas-Fort Worth-Arlington MSAs, 889 attorneys from the Austin-Round Rock MSA, 524 attorneys from the San Antonio-New Braunfels MSA, and 1,144 attorneys from the remaining regions.

**Response Rate**

The survey ended November 3, 2020.  As of the deadline there were 6,690 completed responses. This response gave the survey a margin of error of ±1.1%.

This means that if 40% of the respondents answered "yes" to a question, we can be 95% confident that the actual proportion of the population who would answer "yes" to the same question is 2 percentage points lower or higher than 40% (39 to 41%).

# APPENDIX CONTINUED

## Metropolitan Statistical Area

**Houston-The Woodlands-Sugar Land MSA**
Austin
Brazoria
Chambers
Fort Bend
Galveston
Harris
Liberty
Montgomery
Waller

**Dallas-Fort Worth-Arlington MSA**
Collin
Dallas
Denton
Ellis
Hood
Hunt
Johnson
Kaufman
Parker
Rockwall
Somervell
Tarrant
Wise

**Austin-Round Rock MSA**
Bastrop
Caldwell
Hays
Travis
Williamson

**San Antonio-New Braunfels MSA**
Atascosa
Bandera
Bexar
Comal
Guadalupe
Kendall
Medina
Wilson

**El Paso MSA**
El Paso
Hudspeth

**Corpus Christi MSA**
Aransas
Nueces
San Patricio

**Beaumont-Port Arthur MSA**
Hardin
Jefferson
Newton
Orange

**Central Texas MSAs**
**Waco MSA**
McLennan
Falls
**Killeen-Temple MSA**
Bell
Coryell
Lampasas

**East & NE Texas MSAs**
**College Station-Bryan MSA**
Brazos
Burleson
Robertson
**Longview MSA**
Gregg
Rusk
Upshur
**Sherman-Denison MSA**
Grayson
**Texarkana MSA**
Bowie
**Tyler MSA**
Smith
**Victoria MSA**
Goliad
Victoria
**Wichita Falls MSA**
Archer
Clay
Wichita

**South Texas MSAs**
**Brownsville-Harlingen MSA**
Cameron
**Laredo MSA**
Webb
**McAllen-Edinburg-Mission MSA**
Hidalgo

**West Texas MSAs**
**Abilene MSA**
Callahan
Jones
Taylor
**Amarillo MSA**
Armstrong
Carson
Oldham
Potter
Randall
**Lubbock MSA**
Crosby
Lubbock
Lynn
**Midland MSA**
Martin
Midland
**Odessa MSA**
Ector
**San Angelo MSA**
Irion
Tom Green

# APPENDIX CONTINUED

**Non-Metropolitan Counties**

Anderson
Andrews
Angelina
Bailey
Baylor
Bee
Blanco
Borden
Bosque
Brewster
Briscoe
Brooks
Brown
Burnet
Calhoun
Camp
Cass
Castro
Cherokee
Childress
Cochran
Coke
Coleman
Collingsworth
Colorado
Comanche
Concho
Cooke
Cottle
Crane
Crockett
Culberson
Dallam
Dawson
Deaf Smith
Delta
De Witt
Dickens
Dimmit
Donley
Duval
Eastland
Edwards
Erath
Fannin
Fayette
Fisher
Floyd

Foard
Franklin
Freestone
Frio
Gaines
Garza
Gillespie
Glasscock
Gonzales
Gray
Grimes
Hale
Hall
Hamilton
Hansford
Hardeman
Harrison
Hartley
Haskell
Hemphill
Henderson
Hill
Hockley
Hopkins
Houston
Howard
Hutchinson
Jack
Jackson
Jasper
Jeff Davis
Jim Hogg
Jim Wells
Karnes
Kenedy
Kent
Kerr
Kimble
King
Kinney
Kleberg
Knox
Lamar
Lamb
La Salle
Lavaca
Lee
Leon
Limestone

Lipscomb
Live Oak
Llano
Loving
Madison
Marion
Mason
Matagorda
Maverick
McCulloch
McMullen
Menard
Milam
Mills
Mitchell
Montague
Moore
Morris
Motley
Nacogdoches
Navarro
Nolan
Ochiltree
Palo Pinto
Panola
Parmer
Pecos
Polk
Presidio
Rains
Reagan
Real
Red River
Reeves
Refugio
Roberts
Runnels
Sabine
San Augustine
San Jacinto
San Saba
Schleicher
Scurry
Shackelford
Shelby
Sherman
Starr
Stephens
Sterling

# APPENDIX CONTINUED
# Questionnaire

**INSTRUCTIONS**

Each question can be answered by simply selecting a response or filling in a blank. These questions are for information related to calendar year 2019.

Completion of the survey should take, on average, eight minutes.

**Please complete this questionnaire by 5 p.m. CDT Tuesday, November 3, 2020.**

Thank you for your participation.

---

\*

Please provide your bar card number below. This information will only be used to validate each response and to enter you in a chance to win one of thirty $100 Amazon gift cards. Your bar card number will not be associated with your responses.

_____

14

**PRIMARY OCCUPATION**

---

Q For 2019, what was your primary occupation?

○ Private law practice  (1)

○ For-profit corporate/in-house counsel  (2)

○ Nonprofit corporate/in-house counsel  (3)

○ Full-time judge  (4)

○ Other judicial branch  (5)

○ Government attorney  (6)

○ Law faculty  (7)

○ Public interest lawyer  (8)

○ Other law related  (9)

○ Non-law related  (10)

○ Unemployed/looking for work  (11)

○ Unemployed/not looking for work  (12)

○ Retired/not working  (13)

○ Was not licensed to practice in 2019  (14)

○ Other  (15) _____

---

Q If applicable, what was your job title in 2019?

_____

Q   In calendar year 2019, did you work:

▼ Full time (1) ... Other (4)

Q   Please provide the following financial information for calendar year 2019:
_____ Gross personal income (including any bonus) (1)
_____ If applicable, bonus received (2)

Q   How has your income changed in the past year?

▼ Increased significantly (1) ... Decreased significantly (5)

Q Did you provide professional services other than legal services in 2019?

▼ Yes (1) ... No (2)

Q   If yes, what other types of professional services did you provide?

☐   Real Estate Sales/Development Management  (1)

☐   Insurance Sales  (2)

☐   Accounting  (3)

☐   Financial Planning  (4)

☐   Investment Adviser  (5)

☐   Registered Securities Representative  (6)

☐   Other  (7) _____

---

Q Do you carry any of the following types of insurance?

☐   Professional Liability ("Legal Malpractice") Insurance  (1)

☐   Other Non-Legal Professional Liability ("E&O") Insurance  (2)

☐   Cyber Breach Liability Insurance  (3)

☐   Business Owners Insurance  (4)

☐   Employment Practices Liability Insurance  (5)

☐   Other  (6) _____

---

Q   What professional licenses or certificates, if any, do you have other than your law license?

_____

Q **PRIVATE PRACTITIONER - PRACTICE AREA INFORMATION**

Q  For 2019, how many attorneys, including yourself, worked in your firm?

_____

Q For 2019, if you worked as a private law practitioner, please provide the typical rate or fee you charged for all applicable billing methods.

| | Hourly Rate (1) | Flat Fee (2) | Contingency Fee (3) | Other (4) |
|---|---|---|---|---|
| Typical Rate or Fee (1) | | | | |

Q Please provide the following information on the average number of actual and billable hours worked per week, as an attorney, in 2019:

○ Average hours worked per week  (1)
_____

○ Average billable hours worked per week  (2)
_____

Q Please specify your position in calendar year 2019 as a private practitioner:

▼ Sole Practitioner (1) ... Other (14)

---

Q **PRO BONO**

The State Bar of Texas defines legal services to the poor as the provision of the following without an expectation of payment or at a substantially reduced fee:

- legal services to the poor or to a charitable organization that addresses the needs of the poor,
- services that improve the legal process or availability of legal services to the poor,
- legislative, administrative or advocacy for the poor,
- unsolicited, involuntary court appointments.

The State Bar's pro bono policy does not define "poor"; however, it encourages attorneys to serve clients that would qualify for legal aid who live at or below 125% of the federal poverty guidelines ($15,175 for single person, $31,375 for a family of four).

Did you provide any of the above pro bono services in calendar year 2019?

▼ Yes (1) ... No (2)

---

Q **PRO BONO**

Please take a moment to answer a few questions on the pro bono services you performed in 2019. This data will be used to highlight how Texas attorneys are doing their part to help low-income people in our state. Historically, Texas attorneys perform about 2.4 million hours of pro bono services each year.

---

Q Did you provide any free legal services to the poor in 2019?

▼ Yes (1) ... No (2)

---

19

\*

Q Please indicate approximately how many total hours of free legal services you provided?

_____

Q Please indicate approximately how many hours were for:

*(Note that these categories do not need to sum to the total hours provided.)*

|  | Hours (1) |
|---|---|
| Civil Matters (1) |  |
| Criminal Matters (2) |  |
| Legal services to a charitable organization for the poor (4) |  |
| Legal services to simplify or improve quality of legal services to the poor (5) |  |
| Legislative, administrative or advocacy for the poor (6) |  |
| Unsolicited Court Appointments (3) |  |

Q Did you provide any legal services at a substantially reduced fee that benefited the poor in 2019?

▼ Yes (1) ... No (2)

Q Approximately how many total reduced fee hours were for:

*(Note that these categories do not need to sum to the total hours provided.)*

|  | Hours (1) |
|---|---|
| Civil Matters (1) | |
| Criminal Matters (2) | |
| Legal services to a charitable organization for the poor (4) | |
| Legal services to simplify or improve quality of legal services to the poor (5) | |
| Legislative, administrative, or advocacy for the poor (6) | |
| Unsolicited Court Appointments (3) | |

Q What is your hourly rate for reduced fee legal services to the poor?

▼ Less than $50.00 (1) ... More than $150.00 (5)

---

Q Did you make any direct financial contribution related to legal services to the poor in 2019?

▼ Yes (1) ... No (2)

---

Q What was the approximate total amount of the financial contribution you paid in 2019?

_____ Approximate total amount of financial contribution (1)

---

Q Did you pay actual out-of-pocket expenses related to pro bono or legal services to the poor in 2019?

▼ Yes (1) ... No (2)

---

Q What was the approximate total amount of out-of-pocket expenses you paid on pro bono or reduced fee legal services in 2019?

_____ Approximate total amount of out-of-pocket expenses paid (1)

---

Q If you have any comments or suggestions about pro bono services please provide them below:

_____

_____

_____

_____

_____

Q **LAW SCHOOL/CAREER SATISFACTION**  The following questions are designed to study the economic and non-economic value of a law degree and the associated attorney satisfaction with their careers and decisions to attend law school. Your answers will help provide prospective law students and members of the bar with important information about legal careers in Texas.

Q Which of the following best describes your class rank upon graduation from law school?

▼ Top 10th percentile (1) ... Don't know (5)

Q At this point in your career, how much remaining law school debt do you have?

▼ None (1) ... $100,000 or more (6)

Q Please provide your level of satisfaction on the following:

|  | Extremely satisfied (1) | Somewhat satisfied (2) | Neither satisfied nor dissatisfied (3) | Somewhat dissatisfied (4) | Extremely dissatisfied (5) |
|---|---|---|---|---|---|
| How satisfied are you with your decision to have attended law school? (1) | ○ | ○ | ○ | ○ | ○ |
| How satisfied are you with your career? (2) | ○ | ○ | ○ | ○ | ○ |

Q After being admitted to practice law, how long did it take you to obtain your first full-time job providing legal services?

▼ 0 to 6 months (4) ... 15 (15)

\*

Q Including your current employer, how many employers have you had since you graduated from law school?

_____

Q **VOLUNTARY DEMOGRAPHICS**
The following voluntary demographic information is used to provide detailed economic trends and measure diversity in the practice of law in Texas. The State Bar of Texas follows the U.S. Census Bureau and U.S. Equal Employment Opportunity Commission guidelines for collecting information on sex and race/ethnicity.

Q Please provide the following geographic information on where a majority of your work was performed in 2019:

| | Texas County | Out-of-State/Country | | Other |
|---|---|---|---|---|
| | | Yes (1) | No (2) | Please specify (1) |
| Geography (1) | ▼ Anderson County (1 ... Zavala County (254) | ◯ | ◯ | |

Q Years of experience and age (up to and including calendar year 2019):

| | Years of Experience and Age (1) |
|---|---|
| Years of Experience (as an attorney) (1) | |
| Age (2) | |

Q Ethnicity:

▼ Hispanic or Latino (1) ... Not Hispanic or Latino (2)

Q Race:

▼ White (1) ... Other (7)

Q Sex:

▼ Male (1) ... Female (2)

Q If you have any additional comments regarding the information collected with this survey, please provide them below:

_____

_____

_____

_____

_____

EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **KRISJENN RANCH, LLC,** | § | |
| *Debtor.* | § | **Case No. 20-50805** |
| | § | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC,** *ET AL.,* | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DMA PROPERTIES, INC.,** *ET AL.,* | § | **Adversary No. 20-05027** |
| *Defendants.* | § | |

| | | |
|---|---|---|
| **DMA PROPERTIES, INC** | § | |
| *Cross-Plaintiff/Third Party Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **KRISJENN RANCH, LLC,** *ET AL.,* | § | **Adversary No. 20-05027** |
| *Cross-Defendants/Third-Party* | § | |
| *Defendants.* | § | |

## DECLARATION OF C. JOHN MULLER IV

1.      My name is C. John. Muller IV. I am over eighteen years of age and competent to make this Declaration. I have personal knowledge of the facts stated herein and they are true and correct.

2.      I am the Managing Member of CJ Muller & Associates, PLLC ("CJMA"), which is a law firm that offers services exclusively in the area of business law and litigation. I have been licensed to practice law in Bexar County and the State of Texas since 2009. I practice exclusively in the area of commercial litigation and have represented both plaintiffs and defendants in lawsuits for fifteen years. I am familiar with the standards for practicing law and the usual and customary

1

fees and expenses charged for commercial litigation at the trial and appellate court levels in Bexar County, Texas. In particular, I am familiar with the rates charged by attorneys, experts, paralegals, and administrative assistants who provide legal services in Bexar County.

3. I was retained by Debtors KrisJenn Ranch, LLC, KrisJenn Ranch, LLC- Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row, as successors-in-interest to Black Duck Properties, LLC (collectively the "Debtors"), to defend claims in the aforementioned cause.

4. I have read the declaration filed in this case by Timothy Cleveland including the itemized statements for service and expenses ("Fee Bills").

5. In my opinion, the fees and expenses indicated in the Fee Bills are not reasonable and necessary. Based on my knowledge of current market rates, the rates charged by Defendants' timekeepers are beyond the average and median charged by attorneys and paralegals in Bexar County, Texas, as published and currently indicated by the State Bar of Texas.

6. Additionally, many time entries are insufficient to evaluate the work for which compensation has been requested. Most of Defendants' time records are so nebulous and vague that it is impossible to determine what work was being done.

7. Further, based on my review of Defendants Fee Bills from Cleveland Krist, PLLC, Cobb & Johns, and Key & Seger, LLP the work and rates charged were not reasonable and necessary based on the following factors:

a) the customary fees charged for work of a similar nature. Defendants rates are excessive and unreasonable in Bexar County for commercial and real estate litigation.

b) the amount involved and results obtained. Defendants have received all fees awarded relating to their claims based on the Big Foot Note. Debtors initially filed this matter as a single count UDJA and was met with 33 counterclaims. Defendants did not prevail on any of their counterclaims and these unnecessary pleadings were the primary cause of legal expenses in this cause.

2

c) the experience, reputation, and ability of the attorneys performing the services.

Mr. Johns charged 155% of the median rate in 2019 and increased his rate by 3-5% each year until 2024, when his rate was 184% the median rate.

Mr. Cleveland charged 155% of the median rate in 2019 but increased his rates dramatically in 2023 to be 240% of the median rate by 2024.

Ms. Christi Hebert, License date 05/02/2016, charged 125% of the median rate in 2019 but increased her rates to 132% of the median rate by 2021. At the time of trial, Ms. Hebert had very little litigation experience and she subsequently left Mr. John's firm to practice in other areas.

At the same time, Mr. Barry Snell, License date 04/07/1971, one of the most experienced and accomplished attorneys in Bexar County was charging only $400/hour for commercial litigation. In fact, this is the maximum rate most attorneys can charge in Bexar County for commercial litigation.

Reasonable rates during the pertinent period of time would be $225/hour for a first-year attorney and $425/hour for a twenty-year attorney, with an approximate $10/year increase for the intervening period of time.

7.    In my opinion, the number of hours billed by Defendants are extraordinarily high and inconsistent. The aggregate amount of the fee bills has more than tripled. In Defendants' post-trial briefing, in April of 2021, Defendants sought recovery of $116,984 claiming that "because substantial portions of the testimony at trial did not relate to the Harris SWD claims, DMA has reduced its fee request with respect to trial and related preparation by 2/3." By multiplication, the total amount of fees charged to Defendants would have been $350,952.   In their current filing, the number has inflated over $1 million.

8.    It is my opinion that DMA and Longbranch are not entitled to the attorney's fees they have requested. Moreover, the Fee Bills filed with the Court are not truthful or accurate, and should be struck in their entirety.

3

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed in Bexar County, Texas on May 7, 2024.

C. John Muller, IV

# C. John Muller IV

111 W. Sunset Rd. San Antonio, Texas 78209·(210) 664-5000 john.muller@cjma.law

## PROFESSIONAL SUMMARY

   John works closely with businesses and business owners in both the prosecution and defense of civil litigation matters. His trial experience is extensive and he has a proven track record of delivering exemplary results both at trial and on appeal.  John focuses his litigation practice on commercial, fiduciary, and tax litigation with an emphasis on business torts. He has tried and won numerous cases in both federal and state courts and has resolved numerous cases involving fraud, fraudulent transfers, theft, embezzlement, misappropriation, and fiduciary matters involving partnerships, corporate officers, receiverships, probate estates, ERISA, and tax controversies. His commercial litigation experience includes successfully resolving disputes involving commercial loans, security agreements, landlord-tenant claims, partnership agreements, and non-competition agreements. His tax litigation experience include providing audit assistance to taxpayers, trying cases before the State Office of Administrative Hearings, and regularly practicing before the IRS in federal tax controversy matters.  He has successfully handled controversies involving Department of Labor Audits, Civil Investigative Demands, Sales and Use Tax Audits, and Property Tax protests.

## EXPERIENCE

**May 2019 – Present Day**
Member, CJ MULLER & ASSOCIATES, PLLC
San Antonio, Texas

**2017 – May 2019**
Senior Counsel, CHAMBERLAIN HRDLICKA WHITE WILLIAMS & AUGHTRY, PC
San Antonio, Texas

**2009 – 2017**
Attorney, STRASBURGER & PRICE, LLP
San Antonio, Texas

**2008 – 2008**
Intern, HON. CHIEF JUDGE FRED BIERY – WESTERN DISTRICT OF TEXAS
San Antonio, Texas

**2008 – 2008**
Intern, JUSTICE PHYLIS SPEEDLIN – FOURTH COURT OF APPEALS
San Antonio, Texas

## EDUCATION

JURISDOCTORATE, ST. MARY'S UNIVERSITY SCHOOL OF LAW 2009
- Salutatorian
- Articles Editor, St. Mary's Law Journal
- Martin D. Bearn Editor's Excellence Award recipient

B.A. ECONOMICS, THE UNIVERSITY OF TEXAS 2005

## PUBLICATIONS

- *"Assault Upon the Citadel of Privity": the Coexistence of Strict Privity and Belt v. Oppenheimer, Blend, Harrison, & Tate, Inc.*, 39 St. Mary's L.J. 911

## ADMISSIONS AND ACCOLADES

- State Courts– State of Texas
- Federal Courts– Western District of Texas, Southern District of Texas, Fifth Circuit Court of Appeals
- Vice Chairman – Litigation Section of the San Antonio Bar Association
- *Super Lawyers* - Rising Star