# Exhibit A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


KRISJENN RANCH, LLC, ET AL,   )   CASE NO:  20-05027-rbk
                        )   ADVERSARY
          Plaintiffs,  )
                        )   San Antonio, Texas
    vs.                 )
                        )   Wednesday, February 5, 2025
DMA PROPERTIES, INC, ET AL,    )
                        )   9:59 a.m. to 10:53 a.m.
             Defendants.   )
LEAD CASE: 20-50805-rbk
KrisJenn Ranch, LLC


HEARING RE:
MOTION TO ENFORCE CONSTRUCTIVE TRUST [DKT.NO.368]


BEFORE THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE



<u>APPEARANCES</u>:           SEE PAGE 2


Court Reporter:        Recorded

Transcribed by:        Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES**</u>:


For Plaintiffs:              CHARLES JOHN MULLER, IV, ESQ.
                             C.J. Muller & Associates
                             111 W. Sunset Rd.
                             San Antonio, TX 78209

For Defendants:              WILLIAM P. GERMANY, ESQ.
                             Germany Law
                             1250 N.E. Loop 410
                             Suite 725
                             San Antonio, TX 78209

                             AUSTIN H. KRIST, ESQ.
                             LOURDES ORTIZ, ESQ.
                             Cleveland Krist
                             303 Camp Craft Road
                             Suite 325
                             Austin, TX 78746
                             737-900-7107


                             CHRISTOPHER S. JOHNS, ESQ.
                             Johns & Counsel, PLLC
                             14101 Hwy. 290 West
                             Suite 400A
                             Austin, TX 78737

3

1       **San Antonio, Texas; Wednesday, February 5, 2025; 9:59 a.m.**

2                      **(Call to order)**

3          **THE COURT:**  Good morning.  This is Judge King in San

4   Antonio.  Our 10:00 o'clock case is *Krisjenn Ranch, LLC versus*

5   *DMA Properties*.

6          Could I get announcements from those of you who

7   intend to speak this morning?

8          **MR. GERMANY:**  Yes, Your Honor.  Good --

9          **MR. SPEAKER:**  Your Honor, --

10         **MR. GERMANY:**  -- morning.  This is William Germany

11  for Larry Wright.

12         **THE COURT:**  All right.

13         **MR. MULLER:**  Your Honor, --

14         **MR. KRIST:**  And, Your Honor, Austin --

15         **MR. SPEAKER:**  Try again.

16         **MR. MULLER:**  Apologies, Your Honor.  John Muller.

17  I'm here for the Krisjenn entities.  I don't intend to make

18  argument today.

19         **THE COURT:**  Okay.

20         **MR. KRIST:**  And, Your Honor, Austin Krist on behalf

21  of DMA Properties, Frank Daniel Moore, and Longbranch Energy.

22  I'll be making argument for our side today.

23         We also have several other attorneys on our side

24  here, including Chris Johns, (Inaudible) Ortiz, and

25  (inaudible).

4

1          **THE COURT:**  Okay.  Anyone else?

2      (No audible response.)

3          Okay.  Go ahead, Mr. Krist.

4          **MR. KRIST:**  So, Your Honor, if I may, I -- we have a

5  short handout that we prepared in the vane of a PowerPoint,

6  except for it's in a Word document that I'll share if the Court

7  will allow me to.

8          **THE COURT:**  Okay.

9          **MR. GERMANY:**  And, Your Honor, this is William

10  Germany.  I apologize but Mr. Muller and I are actually here at

11  the courthouse and so we cannot see that.  But I'm sure it

12  won't -- we're not going to object to it.

13          **THE COURT:**  Okay.  We'll describe it if you want us

14  to as it goes.

15          **MR. GERMANY:**  I'll just listen to Mr. Krist's

16  argument.  Thank you, Your Honor.

17          **THE COURT:**  Okay.

18          **MR. GERMANY:**  And we are way overdressed for this

19  phone conference.

20          **THE COURT:**  Okay.

21          **MR. KRIST:**  And, Mr. Germany, I can assure you the

22  things that are in the handout are really just a summary of

23  what I'll be presenting here today, so there shouldn't be

24  anything that you're not already hearing.

25          So, Your Honor, to start, in the final judgment in

1  this case, the Court awarded the following relief to my

2  clients, DMA Properties, Frank Daniel Moore, and Longbranch

3  Energy.

4          First, the Court entered a declaratory judgment that

5  DMA and Longbranch have 20 percent net profits interest that

6  are valid covenants running with the right-of-way.  That's not

7  in dispute.  It's not really an issue that we're here to raise

8  today.

9          Second, the Court found that Larry Wright breached

10  fiduciary duties owed to Mr. Moore in connection with

11  Mr. Wright's schemes to gain control of the right-of-way in the

12  first place.

13          On that basis the Court awarded DMA and Moore a

14  constructive trust over the right-of-way as an equitable remedy

15  for breach of fiduciary duty.  That's relevant here -- well,

16  actually let me back up.

17          So, Your Honor, that's relevant for multiple reasons,

18  including that Mr. Wright previously transferred the right-of-

19  way to another entity that he controlled, Express H2O, while

20  this proceeding was pending.

21          And as you might recall, in its final judgment the

22  Court ordered that it was imposing a constructive trust on the

23  right-of-way in the hands of Express H2O if Mr. Wright did not

24  transfer the right-of-way back to Krisjenn.

25          And then, third, Your Honor, the Court awarded DMA,

1   Moore, and Longbranch their attorneys' fees.  I understand that

2   Mr. Germany had an objection to us raising that issue today

3   because we added it in an amended motion.

4           And so we're not going to be pressing that here today

5   if Mr. Germany is continuing to object.

6           But the motion for constructive trust is fully

7   briefed, and that's the primary issue that we have here.  And

8   so, Your Honor, --

9           **MR. GERMANY:**  Sorry.  I am continuing with my

10  objection.  They filed an amended motion on Monday evening,

11  Your Honor.

12          **MR. KRIST:**  And so, --

13          **THE COURT:**  Okay.

14          **MR. KRIST:**  -- Your Honor, because Mr. Germany's

15  objecting to the request for substitute service and I guess is

16  not prepared to address it, we've agreed that we won't proceed

17  on that issue and we'll just be moving forward on the

18  constructive trust issues that are fully briefed in the

19  response.

20          **THE COURT:**  The substituted service, was that the

21  only thing you added to the amended motion?

22          **MR. KRIST:**  That's correct, Your Honor.

23          **THE COURT:**  Okay.  Go ahead.

24          **MR. KRIST:**  And so, Your Honor, we're centered on the

25  constructive trust here today.

1          And at bottom, the basic reason that we are here

2    before the Court is because Mr. Wright has made no attempt to

3    comply with this Court's final judgment in any way, including

4    with respect to the constructive trust.

5          So moving on to the meat of our argument here, under

6    the final judgment, as I mentioned, the Court ordered that DMA

7    and Moore shall recover a constructive trust on the right-of-

8    way as a remedy for Wright's breaches of fiduciary duty.

9    That's on page two of the judgment, Your Honor.

10         And the Court then further explained in its opinion

11   accompanying the final judgment that unless Mr. Wright

12   transferred the right-of-way back from Express H2O to Krisjenn,

13   the Court would impose a constructive trust on the right-of-way

14   which would allow Larry Wright to recover his investment for

15   the $4.7 million purchase price prior to the breaches of

16   fiduciary duty.

17         And the Court didn't award anything else to

18   Mr. Wright.

19         Now, Your Honor might remember that at the last

20   hearing before entry of the final judgment Defendants' counsel

21   Mr. Muller represented to this Court that Defendants would in

22   fact transfer the right-of-way back to Krisjenn.

23         Well, that never happened, and we know that for two

24   reasons.  First, Defendants served post-judgment discovery

25   requests which revealed that the right-of-way was not

1   transferred back to any of the Krisjenn entities.

2            Second, we learned a couple weeks ago that not only

3   did Mr. Wright refuse to transfer the right-of-way back to

4   Krisjenn, in violation of this Court's order and in violation

5   of the Chapter 11 plan, but on top of that Express H2O, which

6   continues to hold the right-of-way, is now out there filing

7   lawsuits against third parties and claiming that Express H2O is

8   the rightful owner of the right-of-way.

9            And that's problematic for a whole host of reasons.

10  Number one, because Express H2O is not the lawful owner of the

11  right-of-way in light of this Court's order imposing a

12  constructive trust.

13           And, number two, because Express H2O is not -- excuse

14  me.  Number two, because Express H2O is out there engaging in

15  litigation and taking positions as to the scope and rights

16  under the right-of-way, that could seriously prejudice my

17  clients.

18           I'm going to scroll ahead in our handout here, Your

19  Honor, because I realize I skipped a page.

20           Now, Your Honor, with that context in mind, the

21  reason we are here before the Court today is because we are

22  asking this Court to enforce the constructive trust that it

23  imposed under the final judgment for Mr. Wright's fiduciary

24  breaches by ordering Mr. Wright to transfer the right-of-way to

25  DMA and Mr. Moore.

1          Now, in his response, Mr. Wright argues that this

2     Court can't require him to transfer title to DMA and Mr. Moore

3     because, according to Mr. Wright, we weren't granted that

4     relief in the final judgment.

5          And to be blunt, Your Honor, that's wrong.  And it

6     misunderstands what a constructive trust is under Texas law.

7          Under Texas law, a constructive trust is an equitable

8     remedy that subjects the person holding title to property to an

9     equitable duty to convey it to another.

10         That language is from In Re Gouge (phonetic), which

11    is a Southern District of Texas bankruptcy case from 2008 that

12    we cited in our briefing.

13         And the Texas Supreme Court has likewise reiterated

14    the same principle and affirmed that when a court imposes a

15    constructive trust on real property, the effect of the

16    constructive trust is to create an equitable duty on the party

17    holding the property to convey it.

18         That's from *Tally v. Howsley*, which is another Texas

19    Supreme Court case that we've cited in our briefing.

20         And, Your Honor, the reason that a constructive trust

21    requires transfer of title is because under Texas law,

22    fiduciaries who have breached their duties, like Mr. Wright,

23    are not allowed to keep the fruits of their malfeasance.

24         That's from *ERI Consulting*, a Texas Supreme Court

25    case from 2010 which again we've cited in our briefing.

1          And concomitantly, when a fiduciary acquires legal

2   title to property in violation of a fiduciary relationship, the

3   imposition of a constructive trust subjects the breaching

4   fiduciary to an equitable duty to convey the property.

5          And that's exactly the situation that we are in here.

6   In this case, the Court expressly found that Mr. Wright

7   obtained control of the right-of-way through breaches of

8   fiduciary duties that he owed to Mr. Moore.

9          And in its final judgment, the Court explicitly

10  imposed a constructive trust on the right-of-way as a remedy

11  for those breaches of fiduciary duty.

12         Under that constructive trust, Mr. Wright gets to

13  recover a first monies obligation of 4.7 million from any sale

14  or monetization of the right-of-way.  And we're not disputing

15  that.

16         But what he can't recover are profits or amounts in

17  excess of that contribution because, as I mentioned, Texas law

18  does not allow fiduciaries to profit from breaches of their

19  fiduciary duties.

20         And here, Mr. Wright obtained control of the right-

21  of-way in the first place by breaching fiduciary duties that he

22  owed to Mr. Moore.

23         And, Your Honor, that's what this Court's final

24  judgment ordered.  It ordered that it was imposing a

25  constructive trust that would allow Larry Wright to recover his

1    investment for the $4.7 million purchase price and nothing

2    more.

3            And, finally, Your Honor --

4        **THE COURT:**  Doesn't he get 60 percent after the 40

5    percent held by Moore and Borders?

6        **MR. KRIST:**  Well, Your Honor, I believe that the

7    answer to that question is no because under Texas law,

8    Mr. Wright cannot profit from his breaches of fiduciary duty.

9            And we don't dispute that Mr. Wright would get back

10   the money that he paid in, the 4.9 million or, excuse me, 4.7

11   million.  And so he would be made whole under the constructive

12   trust.  And it was within Your Honor's discretion to craft

13   equitable relief in that way.

14           But under Texas law and under the Texas Supreme

15   Court's case *ERI Consulting*, what Mr. Wright cannot do is he

16   cannot then recover additional 60 percent profits on top of

17   getting paid back because he only obtained that interest in the

18   right-of-way through his breaches of fiduciary duty in the

19   first place.

20           **THE COURT:**  What does the judgment provide?

21       **MR. KRIST:**  Your Honor, the judgment provides -- it

22   says:  as to DMA and Moore's claim for breach of fiduciary duty

23   against Wright regarding the unauthorized Black Duck loan, the

24   Court renders judgment that DMA and Moore recover a

25   constructive trust on the right-of-way in the hands of Express

1    H2O.

2           And, Your Honor, we believe that that constructive

3    trust was the correct remedy here because Mr. Wright obtained

4    the right-of-way through his breaches of fiduciary duty.  And

5    it is the remedy that this Court ordered for breach of

6    fiduciary duty.

7           And under Texas law, the effect of that constructive

8    trust, which has already been awarded in the Court's final

9    judgment, is to subject Mr. Wright to an equitable duty to

10   convey the property to DMA and Mr. Moore, subject to the first

11   monies obligation that Your Honor ordered, because that's what

12   a constructive trust is under Texas law.

13          And we think that issue is clear, Your Honor.  The

14   reason that we're here today is because Mr. Wright has made no

15   effort to comply with the Court's judgment.  He has not

16   effectuated a transfer pursuant to the constructive trust.

17          And he didn't even transfer the right-of-way back to

18   Krisjenn as this Court originally requested in light of his

19   breaches of the Chapter 11 plan.

20          And, Your Honor, finally just to wrap up, in terms of

21   equities here, fundamentally Mr. Wright has not been -- excuse

22   me, has not proven that he can be trusted with the right-of-way

23   or that he is the appropriate steward to monetize that.

24          As I mentioned, he originally got control through his

25   breaches of fiduciary duty.  And he subsequently attempted to

13

1    transfer the right-of-way to this other entity, Express H2O, in

2    violation of the Chapter 11 plan in an attempt to evade this

3    Court's judgment.

4          He didn't honor his lawyer's representations that it

5    would be transferred back to Krisjenn.  And now he's litigating

6    with third parties claiming that Express H2O is the owner of

7    the right-of-way, in spite of the constructive trust, which

8    risks seriously prejudicing my clients' rights.

9          And, in sum, we're respectfully asking the Court to

10   enforce the constructive trust it awarded by ordering

11   Mr. Wright to transfer the right-of-way to DMA and Mr. Moore,

12   subject to that $4.7 million first monies obligation because

13   that is what Texas law requires under the judgment entered by

14   this Court.

15         Your Honor, at this point, if you have further

16   questions I'm happy to answer them.  Otherwise I'm happy to

17   cede the --

18         **THE COURT:**  Yeah.

19         **MR. KRIST:**  -- floor to Mr. Germany.

20         **THE COURT:**  I have three questions.  What's the

21   status of the appeal?  I saw that an appeal was filed and some

22   appeals were consolidated by Judge Xavier Rodriguez.

23         **MR. KRIST:**  Yes, Your Honor.  So the appeal is still

24   pending.  We have filed our affirmative briefing.  The

25   Defendants have filed their responsive briefing.  They, to the

14

1    best of my knowledge, have not filed any affirmative brief

2    laying out their own arguments (inaudible) --

3            **THE COURT:**  Well, is the appeal filed by your side,

4    by DMA and Moore and so forth?

5            **MR. KRIST:**  Your Honor, both sides filed a notice of

6    appeal but only my side filed a substantive brief urging

7    arguments for reversal --

8            **THE COURT:**  Okay.

9            **MR. KRIST:**  -- or action by the appellate court.

10           **THE COURT:**  Okay.  And you don't know anything about

11   when that might come out, the -- Judge Rodriguez hasn't

12   scheduled an oral argument or anything like that.

13           **MR. KRIST:**  I don't believe so, Your Honor.  I

14   believe that the reply brief is due in the next week or two

15   here.

16           **THE COURT:**  Okay.  And they --

17           **MR. KRIST:**  Although --

18           **THE COURT:**  -- he may just do it on the papers

19   obviously.  He may not schedule argument.

20           **MR. KRIST:**  That's correct, Your Honor.

21           And one other issue I'll note in connection with the

22   appeal is that the fact that the appeal's pending does not

23   affect this Court's ancillary and continuing jurisdiction to

24   enforce its judgment.

25           There's plenty of Fifth Circuit law that says that

15

1    the district court retains jurisdiction to enforce its

2    judgment.

3           And what we're asking for here is for the Court to

4    enforce the constructive trust that it has already awarded.

5    And that should not interfere with the appellate court's

6    jurisdiction or this Court's jurisdiction in any way.

7           **THE COURT:**  Okay.  This is kind of outside the record

8    and so I'm not going to base any decision on this.  But does

9    the right-of-way still have value?

10          **MR. KRIST:**  Your Honor, absolutely we believe that

11   the right-of-way has value.

12          And in the Express H2O Pipeline petition that I

13   mentioned we recently became aware of where Mr. Wright is

14   filing lawsuits claiming to own the right-of-way through

15   Express H2O, he even mentions that in 2023 he was engaged in

16   discussions attempting to sell it with John Terrill, who you

17   might remember from the trial.

18          So, yes, within the last two years Mr. Wright has

19   been out there trying to monetize the right-of-way.

20          And on top of that he's filing lawsuits claiming to

21   own the right-of-way, seeking money from third parties for

22   allegedly violating Express H2O's rights with respect to the

23   right-of-way which, as I mentioned, is problematic and we

24   believe improper.

25          **THE COURT:**  Do you know if in -- as a part of those

1    negotiations he's disclosing the interest of DMA, Borders, and

2    Moore?

3              **MR. KRIST:**  Your Honor, my impression is that he is

4    not.  It is not mentioned in the petition.

5              The Defendants in that case learned of this case

6    filing I believe through the public record and reached out to

7    us about it.  And the best of my knowledge, at that point they

8    were not aware of any interest.

9              I'm not -- candidly, I'm not sure that that would be

10   an issue affecting them because in that litigation that the net

11   profits interest wouldn't strictly speaking be germane to the

12   claims that were brought.

13             So I have no reason to believe that Mr. Wright is

14   disclosing my clients' net profits interests in any of his

15   conversations with third parties about this right-of-way.

16             **THE COURT:**  So you're concerned that it's a repeat of

17   what happened in the prior sale that was rescinded, that he's

18   not disclosing the 20 and 20 percent net profits interests?

19             **MR. KRIST:**  Well, Your Honor, I'd say that we have

20   really three concerns.

21             Number one, yes, we're concerned that Mr. Wright is

22   not disclosing my clients' net profits interests.

23             Number two, we believe that Mr. Wright shouldn't be

24   in a position to go out there and use Express H2O to try and

25   monetize this right-of-way and then get amounts over the first

1   monies obligation imposed by this Court because of the

2   constructive trust.

3           And we believe that the constructive trust requires

4   transfer of title to our clients under Texas law because,

5   again, that's what a constructive trust is.

6           The third issue that I would say that we have is that

7   because my clients have these net profits interests and because

8   of Mr. Wright's continued and documented malfeasance and in my

9   view wrongful actions, he's just not an appropriate steward for

10  this right-of-way.

11          He's not going to be able to monetize it.  He

12  shouldn't be allowed to monetize it for his own profit in light

13  of his fiduciary breaches.

14          And we believe that the judgment imposed by this

15  Court requires transfer of title to the right-of-way to our

16  clients, subject to that first monies obligation.

17          **THE COURT:**  And who's your client?  Is it DMA and

18  Mr. Borders individually or Mr. Moore or who is it?

19          **MR. KRIST:**  Your Honor, I represent Frank Daniel

20  Moore individually, DMA Properties, and then Longbranch Energy.

21  I don't represent Mr. Borders in his individual capacity.

22          But the request for the constructive trust

23  specifically concerns really Mr. Moore and DMA Properties, to

24  the extent that he's the full owner of that entity, because the

25  breaches of fiduciary duty were breaches of fiduciary duty that

18

1    Mr. Wright owed to Mr. Moore, not to Mr. Borders.

2         **THE COURT:**  Well, which person or entity owns the 20

3    percent; either Mr. Moore or DMA?

4         **MR. KRIST:**  Your Honor, my understanding, and

5    Mr. Johns can correct me if I'm wrong because I'm a little

6    rusty on this issue, but my understanding is that the net

7    profits interest was transferred and owned by DMA Properties.

8         It originally belonged to Mr. Moore but was

9    subsequently transferred.

10        **THE COURT:**  And then Borders is not represented

11   today, but his 20 percent was owned by Longbranch.

12        **MR. KRIST:**  That's correct, Your Honor.

13        **THE COURT:**  Is he active in the appeal or is he just

14   sort of in the background?

15        **MR. KRIST:**  He is active in the appeal to the extent

16   that Longbranch Energy is one of the appealing parties and he

17   is represented by our side and by Mr. Johns.

18        **THE COURT:**  Now, does Mr. Johns also represent Moore

19   and DMA or just Longbranch?

20        **MR. KRIST:**  All three, Your Honor.

21        **THE COURT:**  All three.  And you represent all three,

22   Mr. Krist?

23        **MR. KRIST:**  That's correct, Your Honor.

24        **THE COURT:**  Oh, okay.  And then the Express lawsuits,

25   I mean, you're saying that Mr. Wright is negotiating with

1   people and that is about a purchase of the right-of-way.  And

2   you're saying that that's resulted in some lawsuits; what, for

3   specific performance or damages or what?

4           **MR. KRIST:**  My understanding, Your Honor, is that

5   Mr. Wright's filed a petition against somebody else claiming

6   that their actions or asserted property interest infringe on

7   the right-of-way.  And so he's now engaged in litigation as to

8   the scope and validity of the right-of-way.

9           And obviously, to the extent that those issues are

10  determined adverse to Mr. Wright with respect to the right-of-

11  way, that would prejudice my clients.

12          **THE COURT:**  Is it one --

13          **MR. KRIST:**  The --

14          **THE COURT:**  -- lawsuit or more than one lawsuit?

15          **MR. KRIST:**  I am only aware of one lawsuit at --

16          **THE COURT:**  Okay.

17          **MR. KRIST:**  -- this time.

18          **THE COURT:**  Where is that pending, what county?

19          **MR. KRIST:**  Your Honor, --

20          **THE COURT:**  Do you know?

21          **MR. KRIST:**  -- Mr. Germany or Mr. Muller might be

22  able to better speak to that.  I believe it's pending in the

23  eastern -- excuse me, it's pending in eastern Texas where the

24  right-of-way is located.

25          **THE COURT:**  Okay.

20

1      **MR. KRIST:** Off the top of my head I don't remember

2 the specific county. But I'm sure that I could pull up the

3 petition (inaudible) --

4      **THE COURT:** Like Nacogdoches or Angelina or something

5 like that?

6      **MR. KRIST:** Yes, that's correct, Your Honor.

7      **THE COURT:** Okay. So what you're asking for today is

8 to compel Krisjenn and/or Mr. Wright to transfer the right-of-

9 way from Express H2O to DMA and Longbranch; is that right?

10      **MR. KRIST:** Really it would be DMA and Mr. Moore,

11 Your Honor. They're -- Mr. Moore is a hundred percent owner of

12 DMA.

13      We would be seeking to have this Court order

14 Mr. Wright to transfer title pursuant to the constructive trust

15 because this Court's final judgment imposed a constructive

16 trust on the right-of-way as a remedy for breach of fiduciary

17 duty in the hands of Express H2O.

18      **THE COURT:** Okay. And wasn't it DMA and Longbranch?

19      **MR. KRIST:** Your Honor, the breaches of fiduciary

20 duty were specifically respect to -- Longbranch has a 20

21 percent interest pursuant to --

22      **THE COURT:** Right.

23      **MR. KRIST:** -- a different contract that it entered.

24 But that does not implicate the constructive trust or breaches

25 of fiduciary duty.

21

1          Your Honor, at this point, unless Your Honor has

2  further questions, I'm happy to cede the floor to Mr. Germany

3  and respond to the -- whatever arguments he has.

4          **THE COURT:**  Okay.  Mr. Germany.

5          **MR. GERMANY:**  Yes, Your Honor.  Actually Mr. Muller

6  is well-versed on some of these issues that need to be

7  addressed and he will address the Court on some of the factual

8  background and the pending lawsuit.

9          **THE COURT:**  Okay.

10         **MR. MULLER:**  Yes, Your Honor.  Yes, I don't want to

11  interfere with Mr. Germany's argument which he's well-prepared

12  for.

13         I just would like to correct the record on four

14  discreet issues which came up during the trial and I think the

15  Court is well aware of.

16         But a representation made was made that there was no

17  evidence that Mr. Wright has attempted to comply with the

18  Court's constructive trust issue.  And I don't believe that to

19  be true.

20         If you will recall, there is -- there's a bankruptcy

21  plan in place which is, you know, a contract between the

22  parties allowing the row to be sold free and clear.

23         One of the issues there was, of course, that the

24  Krisjenn name had been shown in a poor light during the trial,

25  and there were very few prospective buyers.

22

1          So Mr. Wright had transferred the row into a new

2     entity in the hopes of cleaning up and marketing the property,

3     which is exactly he was supposed to do.

4          When it was reported to the Court in the sanctions

5     motion that that was inappropriate, I told the Court that we

6     would be glad to move it back.

7          I don't -- I didn't handle those transfers and I'm

8     not handling those transfers.  But we did tell the attorneys

9     who had made that transfer, just put it right back in Krisjenn.

10         Too much time had passed and the Krisjenn name was no

11     longer available.  And so pretrial we once again reported that

12     we could not put it into the Krisjenn name.

13         However, H2O stood ready to stand in the shoes of

14     Krisjenn and would comply with not only the Court's orders but

15     the bankruptcy plan to its full extent.

16         And that issue was heard and litigated at trial on

17     remand; keeping in mind that that's not a proper remand issue.

18     Those were not facts and issues that happened at trial.  They

19     were not part of the record and they were not remanded.

20         It was almost like a sanctions motion that was a kind

21     of an issue addressed on the side.

22         I think the Court appropriate and wisely ruled that

23     the -- although we could not return the title to Krisjenn, that

24     an -- the constructive trust would be imposed on H2O in the

25     hands of Larry Wright as manager to make sure that when the row

1    was sold and monetized, that the proceeds of sale would be

2    distributed as the Court ordered in its constructive trust, the

3    first I believe 4.7 to Mr. Wright, the remaining at a 60, 20,

4    20 rate.

5         Mr. Wright is aware of that order; again, by and

6    through me confirms his intent to comply with that order.

7    There has been no sale.  And if there is a sale, I can assure

8    the Court that that will be exactly how we proceed.

9         I will say that to the extent we've now come back on

10   an order to readdress that issue, I would say that we are *res*

11   *judicata* in trying the case.

12        I also want to address the issue of fruits of his

13   malfeasance and that the Court had somehow ruled that Larry's

14   breach of fiduciary duty was in -- accomplished by wrongfully

15   transferring the row.

16        And that's not true.  And I think everyone knows that

17   that's not true.  And that is not in the record.

18        Privity was a very expensive issue argued in this

19   case.  It is undeniably true and, in fact, part of closing

20   argument that privity of the row went from (inaudible)

21   originally named Express into Krisjenn, and then to TCRG, which

22   was an entity owned by Bobby Wright, and then into Krisjenn.

23        There was no proof and no allegation that Krisjenn

24   had wrongfully foreclosed upon the row and taken it by that

25   way, the fruits of their malfeasance as it were said.

24

1          That issue had to do with the Bigfoot note.  It was

2    addressed on summary judgment.  That was what was foreclosed

3    upon.  It was the note and the note only.

4          And the Court ordered that, you know, that those

5    funds be released from I believe the Shelby County court, and

6    attorneys' fees be paid.  And all of that happened.

7          But as to the breach of fiduciary duty, the only

8    findings and holding there was that Mr. Wright had breached his

9    fiduciary duty in not properly presenting in a proposing alone

10   agreement, which was collateralized by the row.

11         But that collateral was never foreclosed, there was

12   no transfer.  And so to be clear, not only did Mr. Moore and

13   Mr. Wright never own -- I'm sorry, Mr. Moore and Mr. Borders

14   never own the row, but their deals insisted that they not.

15   They wanted only silent net profits interest.

16         They wanted only upside.  They did not want the

17   expense and trouble of holding and owning these rows.  And so,

18   again, there was no -- absolutely no finding that the row was

19   transferred wrongfully as a breach of fiduciary duty.

20         My third point I would like to make is there's

21   this -- you know, in prior proceedings it has been alleged that

22   Mr. Wright is a bad owner of the row.  He is the owner of the

23   row.

24         There was no claim -- there was 33 counterclaims;

25   none for trespass to try title, none for quiet title.  They --

25

1   these gentlemen never wanted to own the row.  They wanted --

2   they want the fruits of owning it but they don't want the

3   expense and trouble of it.

4           And so the -- I'm sorry, can I look at my notes here?

5           I'm -- the issue about -- that came up previously was

6   that Mr. Wright was a poor owner of the row because he didn't

7   do things to take care of it, to be a good steward.  Like, for

8   instance, filing lawsuits for infringement and encroachment up

9   on the row and trying to recover for damage to the row.

10          Now Mr. Wright has gone out and done that.  Again,

11  I'm not -- that's being handled by Houston lawyers.  There's a

12  bunch of them, there's like 30 of them.  It's pending in

13  Atascosa.  It's a big lawsuit.

14          **THE COURT:**  A bunch of --

15          **MR. MULLER:**  It's not (inaudible) --

16          **THE COURT:**  -- lawyers or a bunch of parties?

17          **MR. MULLER:**  I'm sorry, there's two, three parties.

18  I believe it is -- again, I'm not on pleadings there, Your

19  Honor, but I have spoken to these lawyers.  There's many of

20  them.  It is Express H2O as a party plaintiff against an entity

21  named Westlake.

22          Westlake is a pipeline company that moves Olefins

23  through east Texas.  Their pipeline crosses over the row,

24  encroaches up on the row, and it is damaging to the row.

25          And so as a good owner and steward of the property,

26

1   when Mr. Wright figured that out, he filed this lawsuit.  And,

2   you know, it's very expensive and very time consuming.

3          In the past, we have been accused of being poor

4   stewards of the row for not filing these lawsuits.  Now we --

5   the lawsuit's been filed and we're a poor steward of the row

6   for filing these lawsuits.

7          And I want to say -- point something out.  And this

8   is really important and dangerous.  You saw this in the TCRG

9   case where Larry did go out and he made a productive deal that

10  would have made everyone a lot of money.  I think $10,000 a day

11  would have gone to Borders and Moore.

12         And they came in and said, no, he's a fraudster, he's

13  a bad guy, coming back with this fraud thing.  And the deal's

14  unwound and it's lost.

15         Contemporaneously with the filing of this very motion

16  before this Court, magically and miraculously the attorneys for

17  Westlake have filed a similar motion on their side.

18         Their motion says that the case must be dismissed for

19  want of jurisdiction because H2O doesn't really own the low --

20  row; because the row was transferred with this constructive

21  trust imposed upon its proceeds, that therefore means that

22  there is no title and standing for the plaintiff to assert the

23  claim.

24         That would result not only in the lawsuit being

25  dismissed but forever lost because limitations would have

27

1   already passed.

2          So if -- what the movants are trying to prove today

3   would once again cost millions of dollars of damages to the row

4   and, therefore, and they're shooting themselves in the foot on

5   their own interest to collect on the row.

6          But in closing -- and, again, I don't want to get

7   into argument, but those are the factual statements I know for

8   the Court.  I don't believe the constructive trust has --

9   implicates title.

10         I think when Mr. Wright says to the court in Atascosa

11  I, H2O, owns the row, he's telling the truth.  And I think he

12  would be sanctioned and troubled if he said otherwise.

13         I don't know if they have disclosed the constructive

14  trust or not.  It's not a secret.  I mean, I think if they were

15  required to, they absolutely would.  But I don't know if they

16  have.  I don't know if anyone's asked.

17         And factually that's all I have.  I'm sorry if I went

18  too long.  I'll pass to Germany.

19         **MR. GERMANY:**  Your Honor, --

20         **THE COURT:**  Go ahead.

21         **MR. GERMANY:**  Sorry.  Yeah, he covered a lot of my

22  points, Your Honor.  I was just going to get to the meat of the

23  issue here on the constructive trust.

24         Legally the constructive trust is just a creature of

25  this judgment, and that is all it is, as I briefed the Court

1    on, Your Honor.

2              They are trying to alter the final judgment.  As

3    Mr. Muller mentioned, this is *res judicata* at this point.

4    They're trying to alter and have terms put into the trust that

5    just do not exist.

6              And the factual basis and background that Mr. Muller

7    refreshed the Court's memory of go to exactly what we are

8    trying to prevent from happening, and Mr. Wright is trying to

9    prevent from happening, and that is hurting the row and its

10   future value.

11             And at this point, even that aside, Your Honor, the

12   issues -- they've not done anything, and that is DMA has not

13   shown anything to this Court to show that he has violated any

14   of the terms of the constructive trust and paragraphs two and

15   three of the final judgment.

16             It simply says he has to hold it in trust, which he

17   is doing.  He is also pursuing those claims in east Texas to

18   hopefully increase the value of the row and protect it and

19   preserve it.

20             All he has to do at a given point in time is if it is

21   sold or monetized, he gets the first $4.7 million.  It's

22   simple.  That's the first part of the trust.

23             And then after that there's a split of the net

24   profits interest.  It is clearly and explicitly spelled out in

25   the judgment.

1          None of those events have happened.  The post-

2   judgment discovery has not even touched upon that or even asked

3   about that to my knowledge.

4          Maybe they have asked Krisjenn, but Krisjenn is a

5   defunct company.  It is not there.  There is nothing there to

6   receive profits.  That would be through Larry Wright, Your

7   Honor, and Express H2O.

8          He just cannot offload this whole row and then get

9   away with it.  It's sitting there out in east Texas.  And he --

10  all he has to do on that is account for any net profits or any

11  income to it.  And he gets the first 4.7 million, and then

12  after that they split 60, 20, 20.

13          **THE COURT:**  Well, I don't think --

14          **MR. SPEAKER:**  And that --

15          **THE COURT:**  -- the judgment mentions the 60.  I mean,

16  I agree with the 20, 20, but where does it say the 60?

17          **MR. GERMANY:**  It does not, Your Honor.  But it's

18  implied.  And it says, after that, DMA and Longbranch will each

19  receive 20 out of the net profits from the sale of future

20  development of the row.

21          And so there would have to be somebody else there

22  that would receive the 60 percent.  And I would say that would

23  be the then current owner, whether it's H2O or if it's been

24  sold, wherever that 60 percent interest went.

25          **MR. MULLER:**  If I may add, Your Honor, --

30

1          THE COURT:  Why is it --

2          MR. MULLER:  -- just one more --

3          THE COURT:  -- pending in Atascosa County, just out

4   of curiosity, the lawsuit?

5          MR. GERMANY:  I think the encroachment of the row, if

6   you'll remember, Your Honor, crosses four counties.  And I

7   think that Westlake's portion -- Westlake's Pipeline crosses

8   the portion of the row that is in Atascosa.  And so I think

9   that the (inaudible) --

10          THE COURT:  Well, I mean, the row is in east Texas.

11  Atascosa's probably --

12          MR. MULLER:  (Inaudible) --

13          THE COURT:  -- hundred and fifty miles away.

14          MR. GERMANY:  I'm misspeaking then.  I am

15  misspeaking.  It is the southernmost county that begins with an

16  "A."  I cannot remember what it is but --

17          THE COURT:  Oh.

18          MR. GERMANY:  -- they filed it (inaudible) --

19          THE COURT:  Angelina maybe.

20          MR. GERMANY:  Angelina, yeah.  I think it's mandatory

21  jurisdiction in that county because that's where the --

22          THE COURT:  Okay.

23          MR. GERMANY:  -- (inaudible) is.  I would --

24          THE COURT:  Okay.

25          MR. GERMANY:  -- like to add one jurisdictional point

31

1   I think hasn't been brought up yet, is we did not -- yes, we

2   got reversed by the district court.  It was heard on remand and

3   entered.  We didn't -- we filed a notice of appeal.  We did not

4   pursue that appeal.

5          The appeal -- the only appeal that's pending is on

6   breach of fiduciary duty.  And the argument being made there --

7   and correct me if I'm wrong, Mr. Krist -- but is that your

8   constructive trust is inappropriate because you didn't award,

9   among other things, title, that you should have given a more

10  relief, equitable relief than what you did.

11         You should have also given them title, even though it

12  wasn't pled for or any evidence was presented.

13         And now that same issue's being raised at the trial

14  court again.  I would think jurisdictionally that issue is now

15  before the district court or the Fifth Circuit, wherever that's

16  at.  Sam Houston and Greta McFarland are handling that part of

17  the case.

18         But I don't think we can try that issue in two

19  different courts at the same time.

20         **THE COURT:**  Well, the appeal's pending in U.S.

21  District Court in San Antonio.  I don't know of anything in the

22  Fifth Circuit.

23         **MR. GERMANY:**  Well, I think that's right.  It hasn't

24  made its way to the Fifth Circuit yet.  But I think the

25  appellate briefing says the constructive trust is erroneous and

1  that title is not granted.

2          **MR. KRIST:**  Your Honor, if I may.

3          **THE COURT:**  Yeah, go ahead.

4          **MR. KRIST:**  So I'll start with the last point raised

5  by I think that was Mr. Muller.  You know, he just suggested

6  that the appeal concerns this constructive trust issue and

7  that, therefore, this Court doesn't have jurisdiction.  I don't

8  believe that's accurate, Your Honor.

9          The -- number one, this Court has jurisdiction to

10  enforce its final judgment, notwithstanding the appeal.  And

11  we've cited to ample law on that in our brief and previously in

12  our argument.

13          The issue with the appeal is, candidly, we believe

14  that the constructive trust shouldn't have even provided

15  Mr. Wright with an option to transfer the right-of-way back to

16  Krisjenn because we believe the constructive trust should apply

17  regardless of whether he transferred it back to Krisjenn

18  because he cannot profit from his fiduciary breaches.

19          At this point that's really beside the point because

20  there's no dispute that Mr. Wright failed to transfer it back.

21          And on top of that, the Court's final judgment did

22  award the constructive trust on the right-of-way in the hands

23  of Express H2O.

24          There's no dispute that the right-of-way still

25  remains in the hands of Express H2O.  And there's nothing

1    barring this Court from enforcing the constructive trust.

2              Number two, I believe it was suggested that the

3    constructive trust is just for proceeds of any sale to be

4    distributed.  And, Your Honor, the Defendants haven't put

5    forward any law to that effect.

6              The law in Texas is to the contrary very clear that a

7    constructive trust is an equitable device that requires

8    transfer of title.  That's what it is.  And they can't claim

9    it's something else in contravention of this Court's order, and

10   try and insert additional terms that just aren't there.

11             But the Court did order a constructive trust.  And

12   under Texas law, that does require a transfer of title.

13             Number three, Your Honor, I believe Mr. Muller

14   suggested that Mr. Wright has complied with this Court's order.

15   I'm not aware of any way in which Mr. Wright has complied with

16   this Court's order.

17             Defendants have done nothing to satisfy the judgment

18   on attorneys' fees for $750,000.

19             We believe that Mr. Wright is evading service of the

20   writ of execution that we've been attempting to serve on that

21   point.

22             And then on top of that, as Your Honor already knows,

23   he's made no attempt to transfer the right-of-way back to

24   Krisjenn.  He didn't timely do so.  And the right-of-way still

25   remains in the hands of Express H2O.

1          Fourth, Your Honor, it was suggested a minute ago

2   that there's no evidence that Krisjenn wrongfully foreclosed

3   and that the foreclosure related to -- just to the Bigfoot

4   note.  That's simply not true, Your Honor.

5          The way that Mr. Wright got control of the right-of-

6   way in the first place is he entered a conflicted loan

7   transaction with Krisjenn, his own entity, without disclosing

8   it.

9          And this Court found that that unauthorized loan

10  transaction allowed Mr. Wright to obtain control of the right-

11  of-way by foreclosing on it.  And that leads us to where we are

12  today.  There's -- there is simply no basis for saying that

13  there's no evidence of wrongful foreclosure.

14          And I believe that that's a misstatement of the facts

15  of the case and this Court's findings where the Court did

16  explicitly find that there were breaches of fiduciary duty and

17  that Mr. Wright had entered this conflicted loan transaction in

18  breach of those fiduciary duties.

19          Finally, Your Honor, we're not trying to alter the

20  final judgment or add additional terms.

21          We're just asking the Court to enforce the

22  constructive trust that it has already awarded because under

23  Texas law, constructive trust means one thing.  It means an

24  equitable duty to convey title.  And that's what we're asking

25  for here.

1          Mr. Wright could have complied with the Court's order

2   by transferring title, or he could have complied, as the Court

3   allowed, by transferring it to Krisjenn.  He did neither.

4          And as a result, this Court's final judgment requires

5   transfer of the right-of-way pursuant to that equitable duty

6   under the constructive trust.

7          I have one final point to rise, Your Honor.  It was

8   also suggested that my clients don't want to own the right-of-

9   way and that imposition of a constructive trust would cost

10  millions of dollars in damages.  That's -- none of those things

11  are true.

12         My clients are seeking title to the right-of-way

13  pursuant to the constructive trust.  That's why we're here

14  today.  The whole reason for this case is because Mr. Wright

15  engaged in breaches of fiduciary duty to gain sole control of

16  the right-of-way from my clients.

17         And there is no evidence or basis for saying that

18  imposition of a constructive trust would cost millions of

19  dollars in damages.  To the contrary, it would put the right-

20  of-way in the hands of the people to whom it rightfully

21  belongs, in light of Mr. Wright's fiduciary breaches.

22         And it would actually increase the ability of the

23  parties to actually monetize this thing, and for Mr. Wright to

24  get his money back on his first monies obligation.

25         **THE COURT:**  Okay (inaudible) --

36

1          **MR. KRIST:**  And so --

2          **THE COURT:**  I was just looking at the docket sheet

3    for the appeal in U.S. District Court.  And I see that Krisjenn

4    has filed their appellees brief.  So are they still a active --

5    an active corporation or LLC?

6          **MR. GERMANY:**  It's an appellant to the briefing.  I

7    don't know if they're still active or not.  I think that that

8    name has already been lost and has been taken by someone else.

9    That's my understanding.

10         **THE COURT:**  I mean, seriously, somebody else took the

11   name Krisjenn and so you couldn't get it.

12         **MR. GERMANY:**  I don't know, Your Honor.  You know,

13   after I spoke to you, I said, put it back.  He wanted to.  He

14   spoke with the lawyers who transferred it.  And they were

15   unable to accomplish that, and that's why we returned to you.

16              There was a motion for sanctions before trial.  I --

17   you know, I objected to it being tried as -- at the same time

18   as the remand on trial, but nevertheless reported to you and

19   reported to -- or reported to the Court -- because I had

20   previously told you we would transfer it back.

21              And that was absolutely my, you know, legal advice

22   and my intent.  But he was unable to do so.

23              And for whatever reason, the corporate attorneys who

24   handled that could not put the -- reform the Krisjenn entity.

25   And so it stayed in the hands of this new entity.

37

1            But as I stated at trial and will reaffirm now, I

2      have -- my client assures me that it will -- that he will

3      comply with the Court's order and follow the constructive

4      trust.

5            I don't think this idea that Mr. Wright got control

6      of the row by breaching a fiduciary true is not truthful.

7            He got sole control when they said, we don't want

8      control, we want net profits interest only, we want (inaudible)

9      and interest, and we don't want to share in the downside, so if

10     you lose then million, we don't want to pay five.

11           We only want upside on a silent net profits interest.

12     And so by contract they didn't want to have ownership and

13     control.  The fiduciary issues have nothing to do with that.

14           But, yes, Your Honor, I think you make a good point.

15     I think the appellate is in the name of Krisjenn.  My

16     understanding is that he could not reform it to take title and

17     possession to the row.

18           And if you need further evidence and affirmation of

19     that, I will gladly present it and provide it to the Court.

20           **THE COURT:**  Okay.  So, Mr. Krist, what about the

21     argument that the lawsuit, if there's a transfer of the right-

22     of-way back to either Krisjenn or let's say DMA, that the

23     lawsuit would end up being dismissed and limitations would bar

24     relief in that instance; do you know anything about that?

25           **MR. KRIST:**  Your Honor, I would be speaking to some

1   degree out of turn.  But I believe that --

2          **THE COURT:**  Yeah.

3          **MR. KRIST:**  -- to the extent the right-of-way is

4   transferred back pursuant to the constructive trust, my clients

5   would have standing to intervene in that lawsuit and they would

6   be able to steward it on that basis.

7          I don't believe that, and I'm not aware of, a statute

8   of limitations argument that would result in millions of

9   dollars in damages.  And at the end of --

10         **THE COURT:**  So basically try to slip into the shoes

11  of Krisjenn or Express H2O as plaintiff.

12         **MR. KRIST:**  That's correct, Your Honor.  We would

13  seek to substitute as the proper party that actually owns the

14  right-of-way.  And I believe that would be sufficient to get

15  around any statute of limitations arguments, to the extent

16  there are any.  And I don't know that there are.

17         **THE COURT:**  Okay.  So -- and I realize you said

18  you're withdrawing the request to have substituted service.

19  But, I mean, shouldn't that be fairly noncontroversial?

20         I mean, if somebody's evading service, you can tack

21  it onto their front door under State rules.  And, you know, we

22  can sort of adopt State rules.  I mean, does he still live --

23         **MR. KRIST:**  Well, --

24         **THE COURT:**  -- in the same place or do you know, out

25  at McQueeney?

39

1          **MR. KRIST:**  Your Honor, to the best of my knowledge

2     Mr. Wright and/or Krisjenn have two houses around the corner

3     from each other still out there.

4          **THE COURT:**  At Lake McQueeney?

5          **MR. KRIST:**  I believe so, yes, Your Honor.  And one

6     of those addresses is actually -- the 410 Spyglass address is

7     actually registered street address with the Texas Secretary of

8     State for Express H2O.

9          **THE COURT:**  Okay.

10         **MR. KRIST:**  And so -- and as far --

11         **THE COURT:**  Well let me ask --

12         **MR. KRIST:**  -- as we can tell from the --

13         **THE COURT:**  -- Mr. Germany.  Mr. Germany, I mean,

14    isn't substituted service contemplated when you can't find

15    somebody to serve?

16         **MR. GERMANY:**  I'll answer, Your Honor, only because I

17    had this pending -- same issue pending before you in the State

18    (phonetic) versus Amarillo National Corp. case which is -- has

19    -- it's with an action on debt.

20         Yes, there is a Rule 106 under State law.  But he

21    could easily come back and ask for substitute service.  Those

22    rules and proceedings relate to service of process, not service

23    of a writ of execution; a writ of execution of course being an

24    order from the Court to the Marshals service to go seize upon

25    assets.

40

1          The way that is accomplished and served is that the

2    DMA and Longbranch would file an application with your Court.

3    I believe Your Honor's clerk would then send notice to the

4    Marshal's service, and then the Marshal's service would then

5    execute on the writ of execution.

6          In other words, you don't serve a writ of execution

7    on Larry, you serve it on the Marshal.

8          And so I really -- again, this is part of the amended

9    briefing that was filed late last night.  But I don't

10   understand -- first of all, I don't understand there's no --

11   why there's a need for substitute (inaudible).

12         But, also, why are they trying to execute on Larry

13   Wright?  They did not take a monetary judgment against Larry

14   Wright.  The only relief as stated at the beginning of this

15   case against Larry Wright individually was a constructive trust

16   on the row in his hands as by and through H2O.

17         **MR. KRIST:**  Your Honor, just briefly, that's not

18   correct.

19         The Court awarded attorneys' fees to DMA, Mr. Moore,

20   and Longbranch, and then subsequently entered an order

21   determining those attorneys' fees and awarding them

22   specifically against Mr. Wright in connection with his breaches

23   of contract, the declaratory claims, and --

24         **THE COURT:**  Yeah.

25         **MR. KRIST:**  -- the breach of fiduciary duty claims

1  which were premised on the contract.

2          **THE COURT:**  Yeah.

3          **MR. KRIST:**  Number two, Your Honor, the reason that

4  we amended our motion to add these service issues is because we

5  did think that it was fairly uncontroversial.  You're correct

6  that this Court has latitude to authorize --

7          **THE COURT:**  Well, --

8          **MR. KRIST:**  -- substitute service under Texas law.

9          **THE COURT:**  -- yeah.  And so I'm not going to rule on

10  the substituted service today.  But let me just tell a little

11  story.

12          Back when I had the El Paso docket in the late

13  eighties, one of the bankruptcy attorneys had a judgment

14  against a guy that lived in a gated subdivision in El Paso

15  area.

16          And they sent out the Marshals to serve a writ of

17  execution on a judgment.  And the people at the gate would say,

18  oh, no, well he's not there, and so they were basically

19  rebuffed.

20          And so they went back out in response to another

21  order and actually went to the house, and the man's wife

22  answered the door.  And they said, you mind if we search the

23  house.  And she said, no.

24          Well, they found him in a closet and so they arrested

25  him.  And it was late on a Friday so he got to spend the

42

1    weekend in jail until Monday morning when his lawyer could ask

2    for basically a writ of habeas corpus to get him out.

3              So the only reason I'm telling you that is we're not

4    going to tolerate people playing games.  So if the writ of

5    execution needs to be served, it will be served.  And we'll do

6    whatever it takes.

7              And if it takes taking Mr. Wright in by force and in

8    chains, we can do that.  And, you know, we're happy to do that

9    if he needs a ride down to the courthouse.

10             And we'll have a hearing.  We'll give him a hearing

11   on it.  But we're not going to have people playing games with

12   us on serving writs of execution, okay?

13             And I don't know if he has any assets or not.  He may

14   not.  He may be judgment-proof, and if he is, he is.  But we're

15   not going to have people evading service of process when

16   they -- we know where they live and they're just playing games

17   with us.

18             So if he wants to spend a little time in the pokey,

19   you know, so be it.  So that's just --

20             **MR. SPEAKER:**  (Inaudible)

21             **THE COURT:**  -- a warning for the future.

22             **MR. SPEAKER:**  Yes.  And, Your Honor, I will admonish

23   my client on that.  But he is not playing games.  The -- he has

24   moved into a new home.  And, you know, they haven't even

25   reached out to us and asked us for that new --

1          **THE COURT:** On Spyglass?

2          **MR. GERMANY:** -- address. But it's public record.

3          **THE COURT:** On Spyglass or somewhere else?

4          **MR. SPEAKER:** No.

5          **MR. SPEAKER:** To be --

6          **MR. SPEAKER:** It's a different home, Your Honor.

7          **MR. SPEAKER:** To be clear, as a product of this

8 lawsuit, he's lost everything. And so I think the

9 representation that he has two homes on McQueeney is false. He

10 had --

11          **THE COURT:** Well, you know, I don't know.

12          **MR. SPEAKER:** -- to sell his (inaudible) --

13          **THE COURT:** I just remember his address being on --

14          **MR. SPEAKER:** Yeah.

15          **THE COURT:** -- Spyglass, and that's at Lake Queeney.

16          **MR. SPEAKER:** (Inaudible)

17          **THE COURT:** That's all I know.

18          **MR. SPEAKER:** Yeah. He had to sell his home --

19          **THE COURT:** That's all I know.

20          **MR. SPEAKER:** -- and he had to sell his ranch. He

21 sold everything and now he lives in a smaller house in the same

22 neighborhood.

23          **THE COURT:** Okay.

24          **MR. SPEAKER:** And, Your Honor, --

25          **THE COURT:** (Inaudible) is a homestead and it's

44

1  exempt, etcetera.  I understand.

2          **MR. GERMANY:**  And, Your Honor, one other aspect about

3  the final judgment I think that's being misrepresented to the

4  Court, the final judgment in paragraph four is the only one

5  that awards attorneys' fees, other than the ones that were in

6  correspondence with the note for (inaudible) --

7          **THE COURT:**  Well there's a supplemental order on

8  attorneys' fees.

9          **MR. KRIST:**  That's correct, Your Honor.

10         **MR. GERMANY:**  (Inaudible) supplemental order, Your

11 Honor, under 7054, which is, you know, a non-jurisdictional

12 aspect of it.  And they raised that issue for the first time on

13 the Monday briefing or amended motion.

14         And, Your Honor, in that one they don't conform with

15 what the final judgment says and just the order on attorneys'

16 fees because the order is quite clear, Your Honor.

17         And we're going to file a motion with the Court to

18 correct this, but it's under -- paragraph four is the only new

19 attorneys' fees awarded, and that's for Krisjenn on the dec.

20 action.  That's it.

21         So it's the declaratory judgment action.  And they

22 are -- the Court awards attorneys' fees to DMA against

23 Krisjenn.

24         **MR. KRIST:**  Your Honor, --

25         **MR. SPEAKER:**  (Inaudible)

45

1          **THE COURT:**  (Inaudible) it says against Wright.  On

2     the third paragraph on page two of that order, that order is

3     document number 353 in this adversary proceeding.

4          And if you look at the second full paragraph, it says

5     $750,000 against Wright, Krisjenn Ranch, LLC, and the other two

6     Krisjenn entities.

7          **MR. KRIST:**  That's correct, Your Honor.

8          **THE COURT:**  So take a look at that after we get off.

9     You know, take a look at that.  The -- so we're not going to

10    decide that today because it hasn't been raised enough in

11    advance.

12         But, okay, so what else?  Anything else, Mr. Krist?

13         **MR. KRIST:**  Your Honor, you have further questions

14    about the constructive trust arguments, I don't believe so.

15         **THE COURT:**  Okay.  Mr. Germany or Mr. Muller.

16         **MR. GERMANY:**  Nothing further, Your Honor.

17         **THE COURT:**  Okay.

18         **MR. MULLER:**  Not from me, Your Honor.

19         **THE COURT:**  All right.  I think we need the property

20    transferred to DMA.  So there is a constructive trust on it.

21         I'm not sure that Mr. Wright is doing everything

22    that's in the best interests of DMA, Moore, Longbranch, and

23    Borders because DMA owns a 20 percent profits interest that the

24    district court has told us runs with the land.

25         I'm not sure that Mr. Wright is protecting that.  He

1    might be.  But he's been ordered to transfer the property back

2    to Krisjenn.

3            And we've heard this morning from the attorneys that

4    they were unable to do that for whatever reason.  I find it a

5    little hard to believe that somebody else came in and grabbed

6    the Krisjenn Ranch, LLC name and that it's not available.  But,

7    I mean, that could be true.

8            But in any event, it needs to come to DMA.  So I'm

9    going to direct Mr. Wright, Express H2O, Krisjenn Ranch, LLC,

10   all the entities to take steps to transfer the right-of-way to

11   DMA.

12           And then DMA takes it subject to the obligation to

13   pay Mr. Wright the first $4.7 million in the event of sale or

14   other monetization.

15           And after that obviously the 20 percent of DMA and

16   Longbranch or Mr. Borders, whichever is appropriate, will

17   continue as a charge against the land, a covenant running with

18   the land.

19           So, Mr. Krist, will you prepare an order to that

20   effect?

21           **MR. KRIST:**  Yes, we will, Your Honor.

22           **THE COURT:**  Okay.  And let Mr. Germany and Mr. Muller

23   see it before you submit it.  And if there's any disagreement

24   about the form of the order, they can email Deanna Castleberry.

25           And, you know, if you want to prepare your own form,

1    you can send it to Ms. Castleberry and I'll look at all of

2    them.  But I hope that it won't be controversial, the form of

3    the order.  Okay.  So --

4            **MR. KRIST:**  Understood, Your Honor.

5            **THE COURT:**  -- order to come from Mr. Krist.  The

6    motion's granted.

7            **MR. SPEAKER:**  Thank you, Your Honor.

8            **MR. KRIST:**  Thank you, Your Honor.

9            **MR. GERMANY:**  Thank you, Your Honor.

10           **THE COURT:**  All right, gentlemen, --

11           **MR. GERMANY:**  Are we excused?

12           **THE COURT:**  Yes, sir.  Feel free to drop off.  We'll

13   be in recess.

14       **(This proceeding was adjourned at 10:53 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

48

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **February 7, 2025**

Signed                                                        Dated


*TONI HUDSON, TRANSCRIBER*