UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


| | | |
|---|---|---|
| KRISJENN RANCH, LLC, ET AL, | ) | CASE NO:  20-05027-rbk |
| | ) | ADVERSARY |
| Plaintiffs, | ) | |
| | ) | San Antonio, Texas |
| vs. | ) | |
| | ) | Thursday, November 2, 2023 |
| DMA PROPERTIES, INC, ET AL, | ) | |
| | ) | 10:00 a.m. to 10:31 a.m. |
| Defendants. | ) | |

LEAD CASE: 20-50805-rbk
KrisJenn Ranch, LLC


STATUS HEARING


BEFORE THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE



<u>APPEARANCES</u>:              SEE PAGE 2


Courtroom Deputy:       Deanna Castleberry

Court Recorder [ECRO]:   Maxine McGee

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**<u>APPEARANCES</u>:**


For Plaintiffs:                 **CHARLES JOHN MULLER, IV, ESQ.**
                                **C.J. Muller & Associates**
                                **111 W. Sunset Rd.**
                                **San Antonio, TX 78209**
                                **210-664-5000**

For Defendants:                 **AUSTIN H. KRIST, ESQ.**
                                **Cleveland Krist**
                                **303 Camp Craft Road**
                                **Suite 325**
                                **Austin, TX 78746**
                                **737-900-7107**

3

1      **San Antonio, Texas; Thursday, November 2, 2023; 10:00 a.m.**

2                                 --oOo--

3               **THE COURT:**  You there, Mr. Krist?

4               **MR. KRIST:**  Yes, Your Honor.

5               **THE COURT:**  Okay.  Good morning.

6               **MR. KRIST:**  Good morning.

7               **THE COURT:**  Mr. Muller, you on?

8               **MR. MULLER:**  (No audible response.)

9               **THE COURT:**  Maybe you're muted, Mr. Muller.

10     Mr. Muller, you there?

11              **MR. MULLER:**  Judge, are you there?  I'm sorry, Your

12     Honor.

13              **THE COURT:**  Yeah.  I can --

14              **MR. MULLER:**  (Inaudible)

15              **THE COURT:**  -- hear you now.

16              **MR. MULLER:**  (Inaudible) --

17              **THE COURT:**  Okay.  So I realize that we have a

18     briefing deadline next week, and that's fine.  We've already

19     taken care of that.

20              But we need to get this thing moving.  This is a

21     adversary from about three and a half years ago.  And I know it

22     took two years on appeal to get that decided, so I'm aware of

23     that.

24              So what do you gentlemen think we need to do at this

25     point to get this thing wrapped up?

4

1          **MR. KRIST:**  Your Honor, we've done the best we can to

2     try and mediate a resolution of this, as you know from our

3     request for an extension.  At this --

4          **THE COURT:**  Right.

5          **MR. KRIST:**  -- point, I don't think we want to drag

6     it out any longer because I know that Your Honor would like to

7     try and get this resolved.

8          And so our proposal would be that we continue with

9     the briefing schedule that's currently set, and then we set a

10    hearing in order to present oral argument to the Court, as

11    necessary, in connection with that briefing schedule.

12         **THE COURT:**  Okay.  You don't need any further

13    evidence.

14         **MR. KRIST:**  I don't believe so, Your Honor.  I think

15    that we've already done a bench trial in this case, and

16    whatever evidence the parties would be able to rely on is

17    already in the record.

18         There is -- well, I should qualify that.  There are

19    one or two pieces of evidence relating to actions by Mr. Wright

20    subsequent to the bench trial, including attempts from him to

21    transfer the right-of-way to another entity in what we believe

22    was a violation of the Court's order.

23         That's the only additional evidence that we would be

24    presenting.

25         **THE COURT:**  Okay.  And, Mr. Krist, you also have a

5

1   motion for preliminary injunction which has been more or less

2   abated I guess or left undecided.  Did we ever do an order on

3   the preliminary injunction request?

4           **MR. KRIST:**  You did not, Your Honor.  And based on my

5   discussions with co-counsel, I'm not aware of any intention by

6   us to press that motion for preliminary injunction at this

7   time.  I can --

8           **THE COURT:**  Okay.

9           **MR. KRIST:**  -- circle up with my co-counsel to

10  confirm whether or not that's true.

11          **THE COURT:**  Okay.  Mr. Muller, how's it look from

12  your viewpoint?

13          **MR. MULLER:**  Your Honor, I agree, we worked hard to

14  try to settle this case.  We had full day of mediation with a

15  very competent gentleman.  We followed up for several weeks.

16  We've all worked very hard.

17          It's -- it just didn't happen, so (inaudible) --

18          **THE COURT:**  Who was the mediator?

19          **MR. MULLER:**  Mr. Norsett out of (inaudible).

20          **THE COURT:**  Okay.  Not familiar with him.  Okay.

21          So we just need to let the briefing get done and then

22  set a hearing.  And are you going to require any additional

23  evidence, Mr. Muller?

24          **MR. MULLER:**  Well, I -- procedurally it seems like we

25  have three things going right now.  This is the first time I've

6

1    heard that the Texas Railroad Commission issue is moot.  We've

2    addressed that issue with the opposing side and told them if

3    they want to register, we will not interfere.  And but it

4    appears that we're not going down that road anymore.

5         We have another -- and so if that's abated, the

6    briefing deadlines for next week are really just relating to

7    this -- Mr. Wright, when he wound up Krisjenn, has moved the

8    property, the title into a new company, the H2O Express

9    company.

10        He intends in every way still to return to the Court

11   and disclose any potential sale and allow Mr. Moore and

12   Mr. Borders to share in the 40 percent proceeds that they're

13   entitled to receive under the bankruptcy plan.

14        And so if the issue is just that the title, that the

15   moving of the title is, you know, improper, I think we can nip

16   that in the bud because my client will gladly just move it

17   straight back.

18        I don't think that's in anybody's financial best

19   interest because there's a small group of people in Texas who

20   would be potential buyers for this property.

21        And the Krisjenn name has been fairly tainted at this

22   point which (inaudible) idea of getting it out into a new,

23   clean entity.

24        But if opposing believes that that was improper in

25   any way, our clients are willing to cure and fix it

7

1   immediately.

2          If they're fine with title staying where it is, we

3   (inaudible) promise (inaudible) and honor the spirit of the

4   plan.  So hopefully that could resolve that issue right here

5   and now.  I hear --

6          **THE COURT:**  Couldn't you keep it in the original

7   entity and just change the name of the entity also?

8          **MR. MULLER:**  He could.  He could keep -- he could --

9   he actually did that initially.  He had a DBA.  The original

10  name was like Express, so he wanted to keep the H2O Express

11  Pipeline, and he did that.  But he's had trouble selling it and

12  so he put it into a new entity per se.

13         There's a little more backdrop to this but long story

14  short is if counsel would prefer the title be returned to

15  Krisjenn and use a DBA, we're happy to do that.

16         **MR. KRIST:**  Your Honor, in terms of evidence, you

17  know, there's just the evidence that I mentioned a moment ago.

18         I'm happy to talk with Mr. Muller after this hearing

19  to figure out if there's some way to resolve this issue of

20  title being transferred between the two entities.

21         If we can resolve it, then we won't need to argue it.

22  If we can't resolve it, then that's the evidence that we would

23  be presenting.

24         **THE COURT:**  Okay.  So --

25         **MR. MULLER:**  Your Honor, I --

8

1          **THE COURT:** Go ahead.

2          **MR. MULLER:** We've already discussed this. I -- my

3    negotiations have been primarily with Mr. Johns and Tim, so I

4    don't think Mr. Krist has been there. But to be clear, we've

5    made this offer on many occasions, and we're happy to do it.

6          I will say if we want to proceed to litigate it, I

7    think the position of Mr. Moore and Mr. Borders is that the

8    transfer of title is a violation of the Court's orders I think

9    is what was said.

10          And, again, I'm not a bankruptcy attorney. I rely on

11    Ron to be my seeing eye dog here. But it's my understanding

12    it's really the bankruptcy plan is a contract and that we would

13    have to have an adversary on breach of contract for which there

14    would be no damages because we're agreeable to honoring the

15    plan.

16          And it seems like an awful lot of work for a problem

17    that can be resolved very quickly and easily.

18          The other issue we have, Your Honor, is that the

19    bankruptcy plan says that that my client, Mr. Wright, has the

20    ability to sell the property in this interim period free and

21    clear while the appeal is pending.

22          The problem is, is that after Judge Pulliam ruled,

23    Mr. Moore has picked up the phone and called every prospective

24    purchaser that we know of and told them that the nature of

25    Mr. Pulliam's ruling is that Mr. Wright has lost the ownership

9

1  of the property, that he's lying and he's not really owner, and

2  that Mr. Moore is in fact the owner, and that he wants their

3  help selling the property.

4  And so we can't get anyone to help us; kind of

5  blocked our ability to sell the property because there's this

6  purported dispute in the community about who the true owner is.

7  So we don't want to have an injunction over this.

8  We're done fighting.  We're done with lawyers and legal

9  expenses.

10  But if in fact we've got to have an adversary over

11  this title change or any kind of dispute, we're going to raise

12  our own issues as well.  And so I'm really hoping we can work

13  this out one way or another.

14  **MR. KRIST:**  Your Honor, may I respond?

15  **THE COURT:**  Sure.

16  **MR. KRIST:**  Our position would be that with respect

17  to this adversary proceeding, there is really one issue

18  outstanding on remand from the district court, which is what

19  other remedies our clients are entitled to.

20  I don't think that it would be proper for Mr. Wright

21  or Mr. Muller on behalf of the other Krisjenn entities to start

22  trying to assert other claims related to things that my client

23  allegedly did or did not say to prospective purchasers.

24  That is a totally separate can of worms.  It's not

25  contained within the remand from the district court, and I

10

1   don't think it should be picked up.  But Your Honor can address

2   that when you see the briefing.

3          **THE COURT:**  Okay.  So the original deadline was

4   October 25th and December the 11th, and then it was extended

5   two weeks to November 8th, and then I guess Christmas for

6   Wright and Krisjenn.  So you can file it on Christmas,

7   Mr. Muller.  You're not going to be doing anything, right?

8          **MR. MULLER:**  Yeah.  I'm looking forward to that.

9          Well, Your Honor, as you said in the last status

10  conference, I think you had brought this up, this issue of

11  Mr. Wright has -- you know, I think they've couched this -- I

12  don't know how they're presenting this, as a motion for

13  sanctions I believe.

14         But I think your Court had pointed out that if their

15  issue is (inaudible) violation of the plan, that it needs to be

16  brought up as a new adversary, and it needs to have, you know,

17  its own new discovery.

18         And obviously nobody wants that.  I know Your Honor

19  doesn't.  I know you're trying to get this case closed.

20         But we told you at that time we were going to try to

21  work it out and avoid this, but that if we had to litigate this

22  issue, we do not want to do it in this hybrid, you know,

23  sanctions-type order, that we really wanted it to be filed as a

24  new adversary.

25         And that would be (inaudible) compelled to reply to

1   this briefing, that will remain our position, that procedurally

2   that these gentlemen need to file their own new adversary,

3   asserting a violation of the bankruptcy plan.

4           And as Mr. Krist point out, that this is not about

5   the appeal.  He's right, we're not adding new issues on appeal.

6   This will be a new adversary and new issues relating to

7   violations of the bankruptcy plan.

8           **THE COURT:**  Well, correct me if I'm wrong but this

9   adversary proceeding was to determine the nature of the

10  ownership and then also perhaps whether there was a breach of

11  fiduciary duty and damages for that.  Wasn't that the main

12  thrust of this adversary originally?

13          **MR. MULLER:**  No, Your Honor.  There was no question

14  of ownership.  The question of ownership's always been

15  stipulated.

16          The issue was whether the -- Mr. Moore --

17          **THE COURT:**  The nature of it, whether it's a personal

18  covenant or one running with the land.

19          **MR. MULLER:**  Right.  It's a net profits interest so

20  it's a not silent, non-ownership interest that entitles

21  Mr. Border and Mr. Moore to share in profits, if there are any.

22          But the question was whether that could run with the

23  land like an oil and gas royalty (inaudible) --

24          **THE COURT:**  And so Judge Pulliam decided that it did

25  run with the land.  And so what's left to decide?  He remanded

12

1    it for consideration of the breach of fiduciary duty claims,

2    correct?

3         **MR. KRIST:**  Your Honor, that's correct.  And I'll

4    speak up briefly on this issue.

5         In Your Honor's prior ruling, you determined that we

6    couldn't recover damages or relief on our other claims because

7    the interest were personal covenants.

8         **THE COURT:**  Right.

9         **MR. KRIST:**  And after Judge Pulliam determined that

10   they did run with the land, he remanded for consideration of

11   damages on the other claims, including breach of fiduciary duty

12   because, as Your Honor noted in the underlying opinion, there

13   had been at least an informal fiduciary duty between Mr. Moore

14   and Mr. Wright.

15        And you just didn't reach damages because

16   (inaudible) --

17        **THE COURT:**  Right.

18        **MR. KRIST:**  -- fallen apart.  So we're addressing

19   that issue on remand.

20        **THE COURT:**  So basically that's what we're doing

21   is -- it's already been established by Judge Pulliam, and that

22   was not appealed to the Fifth Circuit, that it's a covenant

23   running with the land.

24        And so we just need to determine breach of the

25   informal fiduciary duty and if there's damages for that.

13

1          **MR. MULLER:**  I --

2          **THE COURT:**  Mr. Muller?

3          **MR. MULLER:**  -- disagree, Your Honor.  I think the --

4    so we did appeal to the Fifth Circuit on Judge Pulliam's

5    ruling.  That appeal was dismissed for want of jurisdiction

6    because the trial court's opinion is not final and complete at

7    this point in time.  There still remains this one issue.

8          So once we go back to remand and litigate the

9    remaining issues, we will be appealing to the Fifth Circuit on

10   Judge Pulliam's ruling.  What's been (inaudible) --

11         **THE COURT:**  So the issue on covenant running with the

12   land could still be determined by the Fifth Circuit?

13         **MR. MULLER:**  We -- it could still be determined.  It

14   still -- the appellate period will not begin to run until you

15   rule (inaudible).

16         **THE COURT:**  Okay.

17         **MR. MULLER:**  The only issue on remand, and I believe

18   Mr. Krist is incorrect about what he said, this was absolutely

19   not a return to you on the issue of damages.

20         That factual issue was determined by the Court.  And

21   the Court found that there were no damages that could have been

22   incurred by Mr. Moore or Mr. Border.

23         As a reminder, Mr. Wright invested over $7 million in

24   this property.  But Mr. Moore and Mr. Borders never really put

25   a penny in, and so it was hard to find damages.

14

1        However, Judge Pulliam in his wisdom has said, well,

2   in addition to damages, the Court can also consider equitable

3   remedies, in particular the equitable remedy of disgorgement,

4   and that that remedy can be issued by the Court notwithstanding

5   damages.  You don't have to have damages to have disgorgement.

6        And so the issue that's before you on remand is

7   whether Mr. Wright -- some interest of Mr. Wright or Krisjenn

8   Ranch would be disgorged as a result of a breach of an informal

9   fiduciary duty.

10        I do not believe we're returning to you on damages.

11   And I do believe that that issue is very well-briefed in the

12   law, and so I think it will -- I think it'll be a little bit

13   like an extended motion for summary judgment (inaudible).

14        **THE COURT:**  Well, if you look at Judge Pulliam's

15   opinion on page 37, it says as to appellate issue two, this

16   court reverses and remands for further consideration because

17   this court's role is not to determine the proper measure of

18   damages.

19        Because the court has found a valid covenant running

20   with the land, the Bankruptcy Court should consider the damage

21   model presented to it in the first instance.  Such further

22   consideration shall also include the other gains-based remedies

23   pursued at trial, etc.

24        So, I mean, it sounds like it was remanded to

25   determine the proper measure of damages.

1     **MR. KRIST:**  That's correct, Your Honor.

2     **MR. MULLER:**  (Inaudible) yeah, if it is remanded to

3   you on damages, I think we'll have to look in the record.  But,

4   again, I don't think there was any evidence of damages.  And I

5   don't think there can be.

6     **THE COURT:**  Well, I've got to go back and re-read the

7   record obviously, which was transcribed for the appeal, but --

8   because I held that the damages weren't proven because there

9   wasn't a covenant running with the land.  And so --

10     **MR. MULLER:**  (Inaudible)

11     **THE COURT:**  -- he found the other way on that issue.

12     **MR. MULLER:**  I believe when you read the record

13   you'll see that you ruled that way because there was this claim

14   about this proper loan.

15     But the reality was Mr. Moore paid -- or Mr. Wright

16   paid off principal.  He didn't charge any interest to Mr. Moore

17   or Mr. Borders.  There was just no -- that issue was because

18   there just -- literally they never paid anything.  Those

19   gentlemen, all they --

20     **THE COURT:**  We'll argue all that -- yeah, we'll argue

21   all that at the appropriate time.  I'm not trying to stir it up

22   for today's purposes.  I'm just trying to sort of get what the

23   issues are.

24     So Mr. Muller's brief is due on Christmas Day, which

25   I assume he might file it before that.

16

1      **MR. KRIST:**  Your Honor, I was going to ask a point of

2  clarification --

3      **THE COURT:**  Sure.

4      **MR. KRIST:**  -- there.  In our briefing we asked for a

5  two-week extension --

6      **THE COURT:**  Right.

7      **MR. KRIST:**  -- just for our own deadline because

8  Mr. Muller would have still had an additional month after we

9  file.

10      I'm fine with either deadline for Mr. Muller, whether

11  it be December 11th or December 25th, but if we could clarify

12  that, I think it'd probably be helpful for all involved.

13      **THE COURT:**  Well, it said -- let me look at the

14  order.  Oh, it just says that Moore and Longbranch's motion for

15  two-week extension is granted.  It doesn't say anything about

16  Mr. Muller.

17      Mr. Muller, do you want an extra two weeks, too?

18      **MR. MULLER:**  Yeah, I would prefer to not to be

19  briefing during the Christmas holiday, Your Honor.

20      **THE COURT:**  Yeah, that's a dumb question.  Well, you

21  can do it before Christmas.

22      **MR. MULLER:**  I could.  They -- all these extensions

23  that have been requested were not requested by me.  I've always

24  (inaudible) --

25      **THE COURT:**  Okay.  It technically didn't apply to you

1   by the terms of the order but, yeah, we'll give you the two

2   weeks.  But, I mean, don't file it on Christmas Day.  I'm

3   joking about that of course.  So just file it sometime in

4   December; how about that?

5          **MR. MULLER:**  That's fine, Your Honor, yes

6   (inaudible) --

7          **THE COURT:**  This is November the 2nd.  It's not like

8   we're sneaking up on you or anything.  This thing has been --

9          **MR. MULLER:**  I believe the briefing's -- the work's

10  been done so we're happy to do it whenever the Court

11  (inaudible) --

12         **THE COURT:**  Okay.  I mean, that's over --

13         **MR. MULLER:**  (Inaudible)

14         **THE COURT:**  -- (inaudible) away.  And I realize you

15  need to read Mr. Krist's brief on or after November the 8th in

16  order to determine what your response would be.  Okay.

17         **MR. MULLER:**  (Inaudible)

18         **THE COURT:**  So let's talk about a hearing date.  So

19  January, February, what are you looking at for that, after the

20  briefing's done?

21         **MR. KRIST:**  Your Honor, I will look at my calendar

22  here.  It would also be great to -- for me to confer with our

23  other counsel in this case.  But I'm going to try and --

24         **THE COURT:**  Your clients (inaudible) need to testify?

25         **MR. KRIST:**  I don't believe so at this time, --

18

1          **THE COURT:**  Okay.

2          **MR. KRIST:**  -- Your Honor.  I believe --

3          **THE COURT:**  That's good.

4          **MR. KRIST:**  -- that the only evidence we'd be

5     presenting would be related to that (inaudible) the right-of-

6     way, and I think that'd be documentary in nature.

7          **THE COURT:**  Okay.  Here's another question.  Do you

8     want to do it Webex, the way we're doing it today, or do you

9     want to do it live in the courtroom?

10         **MR. KRIST:**  Your Honor, because I believe that this

11    is mostly going to be on the briefing, and because we won't

12    have -- I don't expect there to be live witnesses, I think that

13    Webex would be fine from our perspective.

14         **THE COURT:**  Mr. Muller.

15         **MR. MULLER:**  I -- well, I'm confused at this point.

16    I'm confused.

17         So we -- the original motion that's now been extended

18    twice had to do with our failure to register the pipeline with

19    the Texas Railroad Commission.  I think (inaudible) --

20         **THE COURT:**  Well, that's not our issue on remand, is

21    it?

22         **MR. MULLER:**  No.

23         **THE COURT:**  Okay.

24         **MR. MULLER:**  (Inaudible)

25         **MR. KRIST:**  Your Honor, we're talking about the

1   briefing schedule for the remedies on remand.

2        **THE COURT:**  Right.  We're just talking about the

3   remand, the adversary that's -- that was filed in '20.

4        I mean, if there's disputes relating to the plan and

5   so forth, maybe those things should be filed in the bankruptcy

6   case.  I mean, talk to Mr. Smeberg about it, see what he

7   thinks.

8        But, I mean, there's motions to enforce plan

9   provisions, motion to convert to Chapter 7, motions to dismiss.

10  There's all kinds of things that can happen in the case that

11  don't require a new adversary proceeding.

12       Now, I'm not expressing an opinion that you don't

13  need an adversary proceeding, so don't get me wrong.  I'm just

14  saying that it's not a hundred percent sure that it does

15  require an adversary proceeding.  Everybody can kind of figure

16  it out for themselves.

17       **MR. MULLER:**  Yes, Your Honor.  But to be clear, I

18  thought I heard Mr. Krist just say the briefing he's preparing

19  for two weeks from now relates to Mr. Wright wrongfully

20  transferring title to the property and has nothing to do with

21  what's on remand.

22       **THE COURT:**  I don't think that's in the remand, is

23  it, Mr. Krist?

24       **MR. KRIST:**  No, Your Honor.  I -- we are going to be

25  briefing up the remedies on remand.

20

1          **THE COURT:**  Right.

2          **MR. KRIST:**  (Inaudible) just trying to indicate that

3      the only additional evidence that we might submit to the Court

4      would be evidence that the right-of-way has been transferred

5      from Krisjenn to another entity because (inaudible) --

6          **THE COURT:**  (Inaudible) how does that affect the

7      issues on remand?

8          **MR. KRIST:**  Your Honor, I -- we would contend that

9      transferring the right-of-way, the one main asset here, out of

10     the entity that the judgment was entered against to some other

11     entity, in violation of this Court's order, is something that

12     was done to evade the judgment, and that your Court has

13     equitable discretion to order Mr. Wright to transfer it back or

14     to impose a constructive trust upon any proceeds or whatever

15     that Krisjenn might receive in connection with that transfer.

16          It might ultimately be a moot point, as Mr. Muller

17     indicated, if they voluntarily transfer the right-of-way back

18     to Krisjenn.

19          **THE COURT:**  Okay.  And what order are they violating;

20     if they did that by transferring it, what -- which order is

21     violated?  Can you tell me?

22          **MR. KRIST:**  Yes, Your Honor.  I believe the

23     bankruptcy plan included provisions that required that we be

24     provided with 30 days' notice in advance of any attempt to

25     transfer the right-of-way.  We didn't --

1          **THE COURT:**  Okay.

2          **MR. KRIST:**  -- receive that notice.  And on top of

3    that, if I can briefly finish, we would continue that it would

4    be improper and that Your Honor would have equitable discretion

5    to impose a constructive trust on Krisjenn and Mr. Wright for

6    this transfer, even independent of the bankruptcy plan.

7          **THE COURT:**  Okay.  So what you're saying is they

8    violated the terms of the plan which was confirmed, and so the

9    confirmation order is a final judgment in effect.

10          And the plan is more or less a contract between the

11    parties, and so they violated that contract and that judgment

12    confirming the plan.  I mean, is that kind of the idea?

13          **MR. KRIST:**  That is one idea.

14          And then the second idea would be that, Your Honor,

15    we're asking for equitable remedies here and that this would be

16    relevant (inaudible) --

17          **THE COURT:**  (Inaudible) set aside the transfer.

18          **MR. KRIST:**  Whether you set aside the transfer or

19    impose a instructive trust on any proceeds that Mr. Wright may

20    personally receive because he's still in this case and we're

21    still seeking remedies against him.

22          **THE COURT:**  Yeah.  Once again, I'm not trying to stir

23    up any litigation or disagreements.  But, I mean, I'll listen

24    to what you have to say, and if you have evidence, I'll listen

25    to it.

1          But it sounds kind of like that's a separate matter

2   from the issues on remand.  The issues on remand are

3   establishing a measure of damages and perhaps granting damages,

4   according to Judge Pulliam's order.

5          And of course I have to follow his judgment, his

6   order reversing and remanding.  Ultimately the Fifth Circuit

7   may affirm that and they may not agree with it, if it goes that

8   far.

9          But the issue on the transfer of the entity is

10  important, I realize.  But to me that's a separate issue than

11  the issues on remand.

12         So if they violated the terms of the plan which was

13  confirmed by final order, and I don't think anybody appealed

14  the confirmation order, that's a separate matter.

15         And that might be something you can take care of by a

16  motion, by a contested matter, rather than a new adversary

17  proceeding.

18         New adversary proceedings can be expedited but they

19  generally drag a lot longer than a contested matter, as

20  evidenced by this one which was filed over three years ago.

21         You know, contested matters we usually get out of the

22  way in 30 days, 60 days, 90 days, something like that.

23  Adversaries can drag on and on like a trial in U.S. District

24  Court.

25         **MR. KRIST:**  Your Honor, we'll address those issues in

23

1 the briefing. And --

2       **THE COURT:** Okay.

3       **MR. KRIST:** -- hopefully that'll shed some --

4       **THE COURT:** Yeah. I mean, I'll --

5       **MR. KRIST:** --- additional light on that.

6       **THE COURT:** -- listen, I'll keep an open mind. I'm

7 not predetermining anything today. I'm just saying I'm not

8 sure that that's going to be an issue that we need to decide on

9 the remand.

10       Mr. Muller, you want to say something?

11       **MR. MULLER:** Yeah. And I'm just trying to -- my

12 client's really out of money and I'm really just trying to keep

13 his legal spend down (inaudible) --

14       **THE COURT:** I'm in favor of that. I'm in favor of

15 keeping the legal costs down.

16       **MR. MULLER:** And we're prepared to respond to the

17 issues on remand.

18       As to this issue about him transferring the title, he

19 -- you know, right, wrong, or indifferent, the cost of him just

20 moving the title back into Krisjenn is far less expensive that

21 the cost of arguing about this. And I don't want to add a new

22 issue (inaudible) briefing, so we're just (inaudible) --

23       **THE COURT:** That's fine.

24       **MR. MULLER:** -- and we're going to moot that issue.

25       **THE COURT:** Okay.

24

1          **MR. MULLER:**  And --

2          **THE COURT:**  That's fine.

3          **MR. MULLER:**  -- hopefully (inaudible) briefing on it.

4          **THE COURT:**  Yeah.  I want to do this as inexpensively

5    and painlessly as possible.  I don't want to drag this out.

6    It's already dragged out way too long, and so we need to get to

7    a point where it's finished.

8          And that's always my objective because, you know,

9    work expands to fill the available time, and you all's work is

10   expensive to your clients.  I'm not saying you're overcharging.

11   I'm just saying it's very expensive to your clients.

12         **MR. KRIST:**  Your Honor, I could not agree more.

13         **MR. MULLER:**  Yeah.  We've told opposing counsel, and

14   they've been easy to work with.  But if we have to litigate

15   that issue, we'd rather just move it back.  I mean, that's the

16   easy solution here.  So (inaudible) --

17         **THE COURT:**  Okay.  All right.  Well, you all can talk

18   about that after we get off this hearing.

19         So should we set a hearing date for this after the

20   briefs are done, maybe in January, mid-January to late January?

21         **MR. MULLER:**  Your Honor, --

22         **MR. KRIST:**  Your Honor, --

23         **MR. MULLER:**  -- if I can --

24         **MR. KRIST:**  Go ahead, John.

25         **THE COURT:**  Go ahead.

25

1          **MR. MULLER:**  I was just going to go over my schedule.

2     I've got a one-day trial, one or two-day trial on January the

3     16th.  But I have a very complex trial on -- in -- on February

4     the 20th.  And then I have a -- my next is (inaudible) the

5     10th.  Anyway, that's my current trial schedule.

6          **THE COURT:**  So 16th, so obviously anything before

7     that you don't want a hearing.  Maybe late January, like 23rd,

8     30th, something like that.

9          **MR. MULLER:**  Yes.

10         **THE COURT:**  You said February 20th was your next big

11    trial.

12         **MR. MULLER:**  Yes.  I'd like to be -- you know, yeah,

13    the last week of January perhaps, Your Honor.

14         **THE COURT:**  That's fine.  Mr. Krist?

15         **MR. KRIST:**  Your Honor, I believe that that should

16    work for us.  I am out of town that Thursday, Friday.  I

17    believe I am available the 29th, 30th, and 31st.

18         I would also --

19         **THE COURT:**  Okay.

20         **MR. KRIST:**  I'm going to confer with Mr. Chris Johns

21    who's been the lead counsel on the appellate briefing --

22         **THE COURT:**  Right.

23         **MR. KRIST:**  -- to make sure that he's --

24         **THE COURT:**  Right.

25         **MR. KRIST:**  -- available as well.  But my schedule is

26

1    clear on all three of those days.

2           **THE COURT:**  So -- and check with your clients, too.

3    I mean, if they want to tune in so to speak, they can do that.

4    Or if they don't want to, they don't have to.  They're not

5    required to be there of course.

6           Let's look at January 30th, which is a Tuesday, at

7    10:00 o'clock tentatively.  So why don't you all check on that

8    and let Ms. Castleberry know.  And we will probably do it that

9    day unless there's some good reason not to.

10          **MR. KRIST:**  Yes, Your Honor.  Can I also ask one

11   quick logistical question related to the briefing?

12          **THE COURT:**  Sure.

13          **MR. KRIST:**  When we cite to the record, would you

14   prefer that we cite to the appellate pagination from that

15   record or would you prefer that we cite it based on the day the

16   testimony occurred and what volume it is in the underlying

17   record?

18          **THE COURT:**  Just the date that it occurred and the

19   ECF number like -- I assume you did a transcript of all the

20   evidence, right?

21          **MR. KRIST:**  Yes, Your Honor, that's correct.

22          **THE COURT:**  That was in the spring of '21.  Let me

23   look at that.  Okay.  ECF 258 is a transcript of a hearing on

24   February the 11th.  Was that the trial, February of '21?

25          **MR. KRIST:**  I --

27

1          **MR. MULLER:**  (Inaudible) was bifurcated when we

2    (inaudible) --

3          **THE COURT:**  Okay.  Let me look at the transcript.

4    It's 113 pages.  Didn't we do several days of trial?

5          **MR. KRIST:**  Yes, we did, Your Honor.

6          **THE COURT:**  Okay.

7          **MR. MULLER:**  It was two weeks, over two weeks.  We

8    went for about a week and then we had a big COVID break, and

9    then we came back (inaudible) --

10         **THE COURT:**  Oh, yeah, we had a break for COVID,

11   that's right.  Started in January, didn't it?

12         **MR. KRIST:**  Yes, it did, Your Honor.

13         **THE COURT:**  And then --

14         **MR. MULLER:**  Yes, Your Honor.

15         **THE COURT:**  And then everybody on Mr. Muller's side

16   got COVID.

17         **MR. MULLER:**  Yes, Your Honor.

18         **THE COURT:**  Okay.  Yeah, January 21 it looks like.

19   Okay.  And so then it got reset to maybe March or something

20   like that.  February 11th, sorry, February 11th.

21         So just use the Bankruptcy Court ECF numbers that --

22   you know, if you're using the district court numbers, we're

23   going to have to be cross-referencing things and it's going to

24   be confusing.  So the ECF numbers in the bankruptcy.

25         And then, you know, like ECF number -- what is this?

28

1 Can't see it now.  Well, anyway, for example, page four of the

2 transcript of the February 11th, 2021 trial.

3     **MR. KRIST:**  Understood, Your Honor.

4     **THE COURT:**  Yeah.  Okay.

5     **MR. KRIST:**  I think that should work.

6     **THE COURT:**  Yeah.  I'm looking for the actual

7 transcript.  But it's at -- okay, there it is, 258.  So ECF

8 Number 258, page 21 or whatever.  Yeah, I think that would be

9 the simplest.  And then everybody can find it that way.

10     **MR. KRIST:**  (Inaudible)

11     **THE COURT:**  (Inaudible) this stuff, it's all on ECF

12 so -- okay.  So look at January 30th and let Ms. Castleberry

13 know if there's any problem with it.

14     **MR. KRIST:**  Yes, Your Honor.  Thank you.

15     **THE COURT:**  We're probably going to go ahead and send

16 notice of it.  I'll get her to go ahead and send notice of it

17 on January 30th.  And if you have a problem, let us know.

18     **MR. KRIST:**  That works great.

19     **THE COURT:**  All right.  Let's do it efficiently,

20 gentlemen.  Try to save your clients some money.

21     **MR. KRIST:**  Yes, sir.

22     **MR. MULLER:**  Yes, Your Honor.

23     **THE COURT:**  Okay.  Thanks for appearing today.  We'll

24 be in recess.

25    **(This proceeding was adjourned at 10:31 a.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **February 26, 2025**

           **Signed**                                                    **Dated**


                              *TONI HUDSON, TRANSCRIBER*