PLAINTIFF'S EXHIBIT 88



# KEY TERRELL & SEGER LLP
## ○1941○
### ATTORNEYS AT LAW

**ROGER A. KEY**
E-Mail: rkey@keyandterrell.com

**GARY R. TERRELL,**<sup>*</sup>
*Of Counsel*

**ANDREW R. SEGER**<sup>†</sup>
E-Mail: aseger@thesegerfirm.com

4825-A 50TH ST., LUBBOCK TEXAS 79414
P.O. BOX 64968, LUBBOCK, TEXAS 79464
TELEPHONE: (806) 792-1944 / (806) 793-1906
FACSIMILE: (806) 792-2135

**MARION T. KEY**
(1917-2004)

* Gary R. Terrell, P.C.
† The Seger Firm P.C.

March 5, 2019

*VIA E-MAIL craig@tcrg.com*
Mr. Craig Crockett
*General Counsel*
TCRG East Texas
Pipeline 1, LLC
5201 Camp Bowie Bvld, #200
Fort Worth, Texas 76107

Re: The Twenty Percent Net Profits Overriding Royalty of DMA Properties, Inc, In And To The P-21 Express Pipeline (the "**Pipeline**") Under Agreement Dated February 7, 2018 And Filed As Instrument Number 2018-9233 In The Official Public Records Of Rusk County, Texas On Or About December 4, 2018 (the "**NPORI**").

Dear Mr. Crockett,

The undersigned, together with my co-counsel, Mr. Chris Johns represent DMA Properties, Inc. with regard to the above referenced matter. Mr. Johns has previously contacted you in order to obtain certain documents from you and as it may pertain to the above referenced Net Profits Overriding Royalty. To date, you have furnished ONLY the purported Assignment and Bill of Sale which was filed in the records of various counties and at varying times. Nevertheless, there are additional documents which you have yet to furnish and which are necessary for my Client to evaluate its entitlement to the proceeds of the sale, together with the continuing obligations of TCRG under the NPORI.

Unless you failed to undertake any diligence in conjunction with your purchase of the Pipeline, you will note that the same remains subject to an outstanding Deed of Trust given in favor of KrisJenn Ranch, LLC and Larry M. Wright, but only insofar as the same was filed in Nacogdoches and Rusk Counties. *See Instrument Filed at Vol 3550, P. 534 in The Official Public Records of Rusk County and Instrument Filed at Vo. 4696, P. 171 In the Official Public Records of Nacogdoches County* (the "**KrisJenn Deed of Trust**")[1]. It is my client's contention that these Deeds of Trust are, in fact, fraudulent, and were filed without authority. Moreover, neither the KrisJenn Deed of Trust nor the existence of loans purportedly secured by the KrisJenn Deed of Trust were *ever* disclosed to my client, whose affiliate, SCMED, LLC was then an owner of 50%

---

[1] It does not appear that either Mr. Wright nor his attorney David Strolle (who was simultaneously serving in the role of Trustee under the KrisJenn Deed of Trust and attorney of record for Black Duck) ever bothered to file the Deed of Trust in either Angelina or Shelby counties, which the Pipeline also passes through.

Mr. Craig Crockett
March 5, 2019
Page 2

of the outstanding membership interests in and to Black Duck Properties, LLC, and per the requirements of the applicable Company Agreement. Certainly my client's principal would never have agreed to the transaction ultimately resulting in alienation of 50% of Black Duck Properties, LLC had these facts been disclosed by Mr. Wright, as was his duty as a Manager of Black Duck Properties, LLC.

We would similarly call your attention to a certain Deed of Trust dated August 14, 2017 and filed at Volume 4288, Page 578 in the Official Public Records of Uvalde County and given by Larry M. Wright and KrisJenn Ranch, Ltd. and in favor of a company called Aliso Investments, Ltd. (the "**Aliso Deed of Trust**"). It is our understanding that the Note supporting the Aliso Deed of Trust carries interest at some 18% per annum. The Aliso Deed of Trust is secured by KrisJenn's ranch property as well as various minerals owned by Mr. Wright in Webb County, Texas. It bares all the hallmarks of a loan transaction financed by a hard money lender, and certainly was transaction that was entirely unknown to my client during the relevant time frame.

You will note that the stated terms of the Promissory Note supporting the Alsio Deed of Trust are essentially identical to that contained in the KrisJenn Deed of Trust, including the date of the Note itself. Notwithstanding the fact that the KrisJenn Deed of Trust purports to reflect a Promissory Note by and between Black Duck and dated August 14 2017, the KrisJenn Deed of Trust was not actually signed and notarized by Mr. Wright until January 18, 2018. I would ask you that if such transaction was undertaken at arms-length with Black Duck Properties, LLC, then why would a reasonably prudent secured lender wait until some six months after the date of advancing funds to take a Deed of Trust Lien? This is particularly convenient in that the timeframe happens to coincide with the period in which Wright was on the verge of consummating his acquisition of SCMED's 50% membership interest in Black Duck. Given that your primary business line is Commercial Real Estate and that you presumably deal with prudent commercial lenders on a regular basis, I think you know the answer.

I would also inquire why, if TCRG having completed its purchase of the Pipeline in June 2018, have KrisJenn and Wright failed to release their Deed of Trust Liens against the same? Either TCRG has not completed diligence in conjunction with a multi-million dollar purchase OR you intend on using the KrisJenn Deed of Trust to attempt to wipe out my clients interest or that of Mr. Borders. As previously stated, we believe that the KrisJenn Deed of Trust is fraudulent, and that my clients Net Profits Overriding Royalty is superior in title to that lien. We note also that in at least one of the counties, Rusk County, that my clients Net Profits Overriding Royalty is first in time as to filing. It is, of course, our contention that TCRG took its interest in the Pipeline with notice of my client's interest, and therefore is NOT a *bona fide* purchaser for value. Therefore, it remains our contention that that you took your interest in the Pipeline subject to and encumbered by my clients NPORI, and are therefore obliged to account to my client.

**Document Request**: We also note that on or about March 23, 2018, Mr. Wright signed a Purchase and Sale Agreement with respect to the Pipeline and on behalf of Black Duck Properties. We request that you furnish us a copy of this instrument at your earliest opportunity.

Finally, if you follow the Texas Legislature, you will there are changes coming to the law of eminent domain which will make obtaining rights of way such as the Pipeline substantially less burdensome on the midstream sector. We believe that these laws will have the effect of diminishing

Mr. Craig Crockett
March 5, 2019
Page 3

the value of the Pipeline over the long term. While we insist on enforcing and vindicating my clients rights under the NPORI, we do believe that all parties would be best served by endeavoring to resolve our disputes and differences regarding the Pipeline sooner, rather than later.

Thank you for your time and attention to this matter. And I will look forward to receiving the Purchase and Sale Agreement executed by Mr. Wright on March 23, 2018 at your earliest convenience. With best wishes and regards, I am

                Very Truly Yours,

                KEY TERRELL & SEGER LLP

                By: _____
                     Andrew R. Seger

CC: Co-counsel; Client.
ARS/slr

with this project because of all the threats and claims made by your client there will not be anything for any of these folks. As far as your opinion concerning what TCRG should or should not do, I am confident that TCRG will make those decisions without the benefit of your expertise and advice.

At this point in time, solely in an effort to avoid litigation and move this project forward without any further interference from your client I have advised our client to consider resolving any and all claims arising by, through or under Mr. Moore. If your client is interested in doing this please let me know what Mr. Moore would be willing to accept in return for a full and final release. If Mr. Moore is not interested in resolving his claims, I believe that our client will have no alternative but to initiate litigation against SCMED and Mr. Moore to resolve these issues so that TCRG will be willing to move forward with this project. If on the other hand your client continues down the road that he has travelled to date and continues making threats and claims against TCRG I am confident that TCRG will simply move on to other projects and there will be no benefit to either of our clients or Mr. Borders.

I look forward to hearing from you in the event that your client is interested in amicably resolving these matters.

David P. Strolle, Jr.

Granstaff, Gaedke & Edgmon, P.C.
5535 Fredericksburg Road, Suite 110
San Antonio, Texas 78229
T- (210) 348-6600 ext. 203
F- (210) 366-0892
dstrolle@caglaw.net

From: Andrew Seger [mailto:aseger@thesegerfirm.com]
Sent: Tuesday, April 23, 2019 9:21 AM
To: Daniel Moore; Chris Johns; Christie Hebert; dmapropertiesinc@outlook.com
Cc: David Strolle; larrymwright54@yahoo.com; darinborders@gmail.com
Subject: RE: False allegations and claims answered with facts

Dear Mr. Strolle,

      I am going to make this short and sweet. Your client appears to be long on unsubstantiated threats and bluff, and short on actual facts. For example, no explanation has ever been forthcoming from him regarding his misappropriation of 50% of the outstanding payments due and owing under

the Harris SWD Note, nor has there been any explanation from you regarding the "fake foreclosure" referenced in a document you prepared and dispatched to the maker of that note. Nor has any explanation been forthcoming regarding your clients undisclosed use of hard money lenders, at near usurious rates of interest. Alsio has now been replaced by McCleod, but nevertheless, either your client is effectively unbankable or is borrowing money from sub-prime lenders to juice things up. From what we know, Adam McLeod is not in the business of making loans to people such as your client, so we are very curious to see what the actual terms of the deal he has cut with your client beyond the purported loan. In a nutshell, the email below is just more hot smoke and sassafras to add to a growing pile.

I will tell you something else. You client has NO RIGHT to convey away my clients interest. The agreement he signed was prepared by George Pigg, and is substantially identical to a form he prepared for Darin Borders. It is also a form that YOU APPROVED. I have attached a copy of that agreement to this email. I believe that Mr. Pigg will agree with my analysis below.

The Net Profits ORRI is NOT a Personal Agreement between DMA and Black Duck, rather it touches and concerns the land, and therefore constitutes a covenant running with the land, and as to ALL LINES, not merely the water line. It binds successors and assigns and runs with the land. If you will kindly review the attached 5th Circuit Case in relation to the language of the Net Profits ORRI, I believe you will come to the same conclusion. Thus and as you can see what was conveyed to DMA is not dependent on your clients generosity or actions. Moreover, to the extent he continues to endeavor to interfere with my clients interests, he is only diminishing the marketability of the line itself.

I note further that DMA's agreement was filed before the conveyancing documents to TCRG in many of the counties. Additionally, it is and remains our contention that TCRG- a company owned by a BILLIONAIRE – took its interest with actual notice of the NPORRI. Thus and assuming Mr. Borders hasn't already bargained away his own interest, the entirety of the line and ALL LINES, remain subject to a 40% outstanding NPORRI. And TCRG is not merely your "buyer" but rather is bound by the terms and conditions of the NPORRI, which incidentally also survives a BK filing.

ALL LINES is an important distinction, as the highest and best use for the property is carrying Nat Gas from the Delaware Basin (there are already nearby projects running gas from the Delaware to the conclusion of the line in Angelina County). From the other side of the Sabine River, at the terminus of the line, the P-21 could interchange with the north-south lines running from the Haynesville to the LNG Plants in South Louisiana. We believe that this is what TCRG intends to do, and that alone is worth way more money than any water line could ever be. And my client claims

the entirety of this 20% NPORRI interest.

Finally, consider the optics of the course you are embarking upon. A Billionaire and a Professional Gambler collude to try and put the screws to the little guy. Not a good look, Im afraid. And again, something I think George Pigg would agree with me on.

<u>Can TCRG operate a pipeline that is burdened by a 40% NPORRI (including Border's interest)? I don't know the answer to that question, but I do know that even a billionaire will want to finance the construction of such a line, and certainly TCRG's lenders will raise similar questions.</u>
Does your client and TCRG want to endeavor to work this out, our does he want to continue to pound the table and hurl baseless threats? Please let me know. We know the score, and the value of what it is that DMA has. Does your client and TCRG want to make a business decision, or would you rather duke it out? In the meanwhile, other pipelines will be built, which will in turn, diminish the value of the P-21 Express.

We would also respectfully request that in the future, that any communications be directed to my client through my offices, or Mr. Johns office.

Andrew R. Seger
**Key Terrell & Seger, LLP**
P.O. Box 98433 (Mail)
Lubbock, Texas 79499
4825 50th St., Ste A
Lubbock, Texas 79408
Telephone: (806) 793-1906
Facsimile: (806) 792-2135
E-mail: aseger@thesegerfirm.com

<image001.png>

***

**CONFIDENTIALITY NOTICE:** This email and any files transmitted herewith are confidential and are intended solely for the use of the individual or entity to which they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, be advised that you have received this email in error and that any use, dissemination, forwarding, printing or copying of this email is strictly prohibited. If you have received this email in error, please immediately delete the transmission and notify the office of Key Terrell & Seger, LLP, at (806) 793-1906

**TREASURY CIRCULAR 230 DISCLOSURE**: This written advice was not intended or written to be used,



→ Asilo loan Payoff
New Loan
2019 Feb
— Kris Jenn —
Ranch

WRIGHT-001593