# Exhibit 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § | |
| | § | Chapter 11 |
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Debtor.* | § | Case No. 20-50805 |

| | | |
|---|---|---|
| DMA Properties, Inc.; Frank Daniel Moore; Longbranch Energy, LP; and Darin Borders, | § § § § | |
| *Plaintiffs,* | § § | Adversary No. _____ |
| v. | § § | |
| Larry Wright; Gwynne Wright; KrisJenn Ranch, L.L.C.; KrisJenn Ranch; LLC-Series Pipeline ROW; and Express H2O Pipelines & ROW L.L.C. | § § § § § | |
| *Defendants.* | § § | |

**ORIGINAL ADVERSARY COMPLAINT
FOR PROSPECTIVE AND RETROSPECTIVE RELIEF**

Plaintiffs DMA Properties, Inc., Frank Daniel Moore, Longbranch Energy, LP, and Darin Borders hereby sue Larry Wright, Gwynne Wright, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Pipeline ROW, and Express H2O Pipeline & ROW LLC for fraudulently transferring assets subject to these bankruptcy proceedings in violation of this Court's order and Texas law.

1

## INTRODUCTION

1.      Larry Wright tried to con his business associates out of their interest in a 65-mile pipeline right-of-way ("ROW") worth millions of dollars. For the past six years, those business associates have pursued court orders and a final judgment against Mr. Wright for his extensive misconduct. Indeed, this Court has ruled that Mr. Wright breached his fiduciary duty to his business partner (Daniel Moore) through lies, back-door deals, and a surreptitious wrap-around loan. Yet when the original trial and the original judgment were on appeal, Mr. Wright—in violation of this Court's orders—transferred the ROW to a new entity in an attempt to shield it from judgment. But rather than shielding himself and the ROW from that judgment, Mr. Wright has proven his fraud and shown why this Court must rule that he has lost the game.

2.      Mr. Wright's brazen defiance of this Court's orders was a clear attempt to defraud his creditors in direct violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The law guarantees relief.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1334 because this proceeding is a "core proceeding" concerning the determination, avoidance, or recovery of a fraudulent conveyance and because these proceedings are related to an underlying Chapter 11 bankruptcy case and concerns the property of the Debtor in that case. *See* 28 U.S.C. §§ 157(b)(2)(H), 157(c).

2.      Venue is proper under 28 U.S.C. § 1409 as the underlying Chapter 11 bankruptcy case is pending in this District and pursuant to the United States Bankruptcy Court for the Western District of Texas' Standing Order dated July 8, 2025.

## PARTIES

3.      Plaintiff DMA Properties, Inc. ("DMA") is a South Carolina corporation with its principal place of business at 896 Walnut Street at US 123 BYP, Seneca, South Carolina 29678.

4.      Plaintiff Frank Daniel Moore ("Mr. Moore") is an individual and managing member of DMA.

5.      Plaintiff Longbranch Energy, L.P. ("Longbranch") is a Texas limited partnership with its principal place of business at 706 Southview Circle, Center, Texas 75935.

6.      Plaintiff Darin Borders ("Mr. Borders") is an individual and managing principal of Longbranch.

7.      Defendant Larry Wright ("Mr. Wright") is an individual, the managing member of KrisJenn, and the president and/or managing member of Express H2O. Mr. Wright can be served with process at 733 Admiral Benbow Lane, McQueeney, Texas 78213.

8.      Defendant Gwynne Wright ("Mrs. Wright") is an individual who, on information and belief, received a fraudulent transfer of membership interest in Express H2O. Mrs. Wright can be served with process at 733 Admiral Benbow Lane, McQueeney, Texas 78213.

9.      Defendants KrisJenn Ranch, LLC and KrisJenn Ranch, LLC-Series Pipeline ROW (collectively, "KrisJenn"[1]) are Texas limited liability companies. On information and belief, their principal place of business is located at 433 Admiral Benbow Lane, McQueeney, Texas 78123.

10.     Defendant Express H2O Pipeline & ROW, LLC ("Express H2O") is a Texas limited liability company. On information and belief, its principal place of business is located at 433 Admiral Benbow Lane, McQueeney, Texas 78123.

## FACTUAL BACKGROUND

**Mr. Borders and Mr. Moore expend significant effort to secure the ROW.**

11.     In 2015, Darin Borders learned of a potentially lucrative pipeline easement running through four counties in East Texas.

12.     Mr. Borders told Daniel Moore about the ROW, and the pair spent hours negotiating with the ROW's owner, Express Pipeline Connection, LLC, over the right to purchase the ROW.

13.     Their extensive efforts paid off, and in February 2016, Mr. Borders' entity, Longbranch, executed an agreement to purchase the ROW for $5,000,000. Longbranch paid $25,000 in earnest money.

---

[1] Plaintiffs collectively refer to the KrisJenn entities throughout this Complaint as "KrisJenn." Mr. Wright has referred to the two entities interchangeably before state courts, this Court, and the Federal District Court. Mr. Wright is the sole owner and manager of both entities, both entities are subject to the bankruptcy proceedings discussed herein, and, on information and belief, both entities are now defunct.

**Mr. Wright bluffs his way into the deal.**

14.     At the time Longbranch secured the right to purchase the ROW, Mr. Moore was working with Larry Wright in their jointly owned entity, Black Duck Properties, LLC ("Black Duck").

15.     When Mr. Wright learned about the ROW and Longbranch's right to purchase it, he asked to join the deal as the "money guy."

16.     Specifically, Mr. Wright proposed that he would fund the initial purchase of the ROW through his own capital, and then invest the capital to maintain the ROW while the group attempted to develop it.

17.     Mr. Moore pressed Mr. Wright on whether he actually had the capital to purchase and maintain the ROW, to which Mr. Wright responded that "he had all the cash to be king" and that the $5,000,000 needed to close on the ROW was "chump change."

18.     Mr. Wright further claimed to have "a bunch of trusts" that gave him the "cash on hand to fully fund the first line of the right-of-way," which would cost between $50,000,000 and $75,000,000 to develop.

19.     Relying on Mr. Wright's repeated representations that he had the capital needed to fund the project, the Plaintiffs cut Mr. Wright into the deal.

20.     Mr. Wright reimbursed Longbranch for the $25,000 it paid in earnest money. Mr. Borders, on behalf of Longbranch, then assigned the Purchase Agreement to

Black Duck (Mr. Moore's and Mr. Wright's jointly owned entity).[2] In exchange, Mr. Moore and Mr. Wright agreed that Longbranch would possess a 20% net-profits interest in the ROW that would attach to and run with the ROW.

21.     This deal seemed like a good partnership—too good to be true, as it turned out. Plaintiffs eventually learned that Mr. Wright's representations of wealth were nothing but lies.

**Mr. Wright surreptitiously creates a wrap-around loan to purchase the ROW.**

22.     Without the capital to purchase the ROW, Mr. Wright developed a scheme to secure the needed funds and protect himself from all liability.

23.     First, Mr. Wright used his entity, KrisJenn, to take out a $4.1 million hard-money loan, carrying 17% interest.

24.     Then, without Plaintiffs' knowledge, KrisJenn "loaned" the $4.1 million (at 17% interest) to Black Duck, which Mr. Wright wrongfully caused Black Duck to secure using the ROW as collateral for the loan. In other words, if Black Duck defaulted on the loan, KrisJenn (meaning Mr. Wright) would take the ROW by foreclosure.

25.     Black Duck purchased the ROW in August 2017.

26.     Although Mr. Moore was a manager of Black Duck, and his authorization was required for all loan transactions, Mr. Moore did not authorize the loan from KrisJenn to Black Duck—indeed, Mr. Moore had *absolutely no knowledge* of the loan.

---

[2] Mr. Moore owned 50% of Black Duck through SCMED Oilfield Consulting, LLC, and Mr. Wright owned 50% through KrisJenn.

27.     Compounding Mr. Wright's duplicity, the "loan documents"—which established that the ROW was Black Duck's collateral for the $4.1 million loan—were not executed until five months *after* Black Duck closed on the ROW, at the same time Mr. Wright was pushing Mr. Moore out of Black Duck (as described more fully below).

28.     As this Court ultimately held, Mr. Wright's duplicitous wrap-around loan—surreptitiously executed in breach of Black Duck's company agreement— breached Mr. Wright's fiduciary duty to Mr. Moore and was *ultra vires. See In re KrisJenn Ranch, LLC,* 629 B.R. 589, 607 (Bankr. W.D. Tex. 2021), *aff'd in part, rev'd in part, and remanded*, 661 F. Supp. 3d 654 (W.D. Tex. 2023) ("*In re KrisJenn (Bankruptcy)*").

**Mr. Wright doubles down on his greed.**

29.     Shortly after Black Duck closed on the ROW, Mr. Wright began expressing hostility towards Mr. Moore and pressuring him to resign from Black Duck.

30.     Mr. Moore was confused about Mr. Wright's hostility and tired of the conflict, so he eventually relented. Mr. Moore resigned and gave up his 50% interest in Black Duck (and his interest in Black Duck's assets, including the ROW) in exchange for the same deal as Mr. Borders's entity, Longbranch: a 20% net-profits interest that attached to and ran with the ROW.

31.     Mr. Moore's new 20% interest in the ROW was assigned to his entity, DMA.

32.     Of course, Mr. Moore knew nothing of the sham loan that Mr. Wright had established, nor did he know of the power Mr. Wright had secretly and wrongfully secured by becoming the sole owner of Black Duck while also sitting as Black Duck's creditor

through Wright's entity, KrisJenn, putting Mr. Wright in a situation to foreclose on the ROW.

33.     Believing he had successfully conned Plaintiffs out of their interests in the ROW, Mr. Wright then tried to consummate a deal—one he had been secretly negotiating for months—to sell the ROW to landman John Terrill and TCRG, a company owned by a Dallas–based billionaire.

34.     Indeed, just two days after Mr. Moore resigned from Back Duck, Mr. Wright agreed to sell the ROW to TCRG for $2.5 million, with Black Duck retaining a 16% carried interest in a future waterline.

35.     Plaintiffs learned about the deal with TCRG and approached Mr. Wright for more information. Lying yet again, Mr. Wright assured Plaintiffs that Terrill and TCRG knew about Plaintiffs' interests in the ROW and even had copies of their agreements.

36.     Calling his bluff, Plaintiffs went to the source and notified Terrill and TCRG that, together, Plaintiffs hold a 40% carried interest in the ROW. As suspected, Mr. Wright had concealed this from the buyers.

37.     TCRG forced Mr. Wright to rescind the sale.

**Mr. Wright's misdeeds are revealed, a state court rejects Mr. Wright's theory, so Mr. Wright declares bankruptcy.**

38.     To repay TCRG for the rescinded sale, Mr. Wright borrowed $5.9 million from the Dallas-based McLeod family, pledging the ROW, his ranch, and some mineral interests as collateral and conveying an option for the McLeods to purchase the ROW for $6,000,000 (again, concealing the Plaintiffs' interest in the ROW).

39.     With Black Duck (now owned entirely by Mr. Wright) unable to pay its debt on the undisclosed loan, KrisJenn (also owned entirely by Mr. Wright) claimed to foreclose on the loan and claimed to be the successor-in-interest to Black Duck's assets, including the ROW. Mr. Wright then dissolved Black Duck.

40.     Multiple state-court lawsuits ensued. Mr. Wright sued in Guadalupe County, where he lived but where none of the ROW is located. Plaintiffs sued in Shelby County, which is one of the four counties that the ROW crosses. The Guadalupe County Court—recognizing Shelby County as one of the four venues where jurisdiction was exclusive and mandatory—transferred the case there.

41.     To evade liability, Mr. Wright asked the Shelby County Court for summary judgment, arguing that Plaintiffs' interests in the ROW were merely personal covenants from the now-dissolved Black Duck that did not attach and run with the ROW.

42.     The state court disagreed with Mr. Wright's strained position and ruled in favor of Plaintiffs.

43.     In the wake of the court's ruling, but before the lawsuit was resolved, KrisJenn filed for Chapter 11 bankruptcy and initiated a bankruptcy adversary proceeding.

44.     Some of the Defendants filed counterclaims and cross actions, culminating in a six-day trial before this Court. On March 24, 2021, this Court issued its opinion, concluding that Mr. Wright breached his fiduciary duty through the unauthorized loan to Black Duck. But this Court also concluded that Plaintiffs' interests in the ROW were personal covenants that did not run with the land, such that there were no damages. *In re KrisJenn (Bankruptcy)*, 629 B.R. at 608.

45.     DMA, Mr. Moore, and Longbranch appealed.

46.     While that appeal was pending, this Court entered a Chapter 11 Reorganization Plan related to Mr. Wright's entities and assets, including KrisJenn and the ROW. Recognizing Plaintiffs' claims and interests related to the ROW, this Court expressly ordered that KrisJenn could not "transfer or dispose of any interest in the Express Pipeline" without first providing DMA and Longbranch with a written copy of the offer for transfer and providing DMA and Longbranch with an opportunity to raise any concerns regarding the transfer with the Court. As this Court expressly acknowledged, this procedure ensured that if DMA or Longbranch had concerns about the transfer, they seek judicial review and Mr. Wright would be required to postpone the transfer until the Court heard the matter and ruled on the issue. *See* Fourth Am. Ch. 11 Plan at 7, *In re KrisJenn (Bankruptcy)*, No. 20-50805-RBK (Bankr. W.D. Tex. Feb. 3, 2022) (ECF No. 211).

**To avoid a potential judgment against him, Mr. Wright fraudulently transfers the ROW.**

47.     On February 23, 2023, Mr. Wright transferred the ROW from KrisJenn to his new entity, Express H2O Pipeline & ROW, LLC, in express violation of this Court's order. *In re KrisJenn (Bankruptcy)*, 2024 WL 1297828, at *2 (Bankr. W.D. Tex. Mar. 26, 2024) (confirming that the transfer of the ROW was "in violation of the terms of the confirmed chapter 11 plan of reorganization").

48.     The only consideration provided for this transfer was that KrisJenn (meaning Mr. Wright) would receive a membership interest in Express H2O. In other words, there was no consideration—Mr. Wright was directly or indirectly the sole owner

of the ROW through KrisJenn, and he would remain the sole owner of the ROW through Express H2O. The ROW would simply no longer be held by an entity before the Bankruptcy Court.

49.     Indeed, Mr. Wright's counsel admitted to this Court that Mr. Wright formed Express H2O for the sole purpose of holding the ROW and, specifically, for holding the ROW in an entity that he was not subject to the bankruptcy proceedings (for, his counsel claimed, marketability reasons).  On information and belief, Express H20 held no other material or valuable assets at the time of the transfer, and correspondingly, the membership interests in Express H20 held no material value prior to Express H20's receipt of the ROW as part of the transaction.

50.     Certainly, Mr. Wright believed he transferred the ROW in the nick of time. Just three weeks later, the District Court issued its opinion on Plaintiffs' appeal, finding that the cumulative 40% net-profit interests were valid real-property covenants that attach and run with the land. *In re KrisJenn, Ranch, LLC*, 661 F. Supp. 3d 654, 665 (W.D. Tex. 2023), *appeal dismissed sub nom. Matter of Krisjenn Ranch, L.L.C.*, No. 23-50227, 2023 WL 6393903 (5th Cir. May 25, 2023) ("*In re KrisJenn (District Court)*").

51.     As the District Court affirmed, Plaintiffs are creditors of Mr. Wright and his entities, including KrisJenn, and it remanded with instructions for the Court to determine damages and/or disgorgement of profits for Mr. Wright's breach of fiduciary duty. *Id.*

52.     On remand, Plaintiffs and this Court learned of Mr. Wright's violative transfer.

53.     When this improper transfer was brought to the Court's attention, Mr. Wright, through counsel, informed the Court that he would cause Express H2O to transfer the ROW back to KrisJenn.

54.     Mr. Wright did not keep that promise.

55.     So, on March 26, 2024, this Court ordered that "a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn." *In re KrisJenn (Bankruptcy)*, 2024 WL 1297828, at *2 (Bankr. W.D. Tex. Mar. 26, 2024).

56.     Mr. Wright, through counsel, again represented that he would cause Express H2O to transfer the ROW back to KrisJenn to remedy the improper transfer.

57.     Nine months later, Plaintiffs received post-judgment discovery, revealing that no entity before this Court held the ROW—in other words, Mr. Wright still had not transferred the ROW back to KrisJenn.

58.     To the contrary, despite this Court's ruling, Plaintiffs have learned that Express H2O has filed a lawsuit in a separate matter, claiming to be the rightful owner of the ROW.

59.     When Plaintiffs brought Mr. Wright's failure to transfer the ROW to the Court's attention, Mr. Wright did not deny his failure to return the ROW to KrisJenn. He instead claimed the power to rewrite this Court's order and insisted that he may hold the ROW in any company he pleases.

60.     This Court ordered that "Defendant Larry Wright shall transfer and convey—or cause to be transferred and conveyed—all rights, title and interest in the

ROW to DMA Properties, Inc. within twenty-one (21) days." *In re KrisJenn (Bankruptcy)*, No. 20-50805-RBK (Bankr. W.D. Tex. Feb. 20, 2025) (ECF No. 387).

61.     KrisJenn moved to vacate this order, arguing that the Court did not have jurisdiction to order this transfer, in part, because "Express [H2O] is a wholly separate legal entity and not a party to this lawsuit." *Id.* at ECF No. 382. It also argued that, because a notice of appeal had been filed, this Court no longer had jurisdiction to enforce a "give-it-up" order. *Id.* Confoundingly, during the hearing on this motion, KrisJenn's attorney also asserted that Mr. Wright—at least originally the sole owner of Express H2O—does not have an interest in Express H2O and that the company is held by third-party investors.

62.     Based on Mr. Wright's and KrisJenn's representations regarding Express H2O's third-party status, the Court vacated the portion of its order that required Express H2O to transfer the ROW back to DMA. *Id* at ECF No. 403.

63.     Today, the ROW remains in the hands of Express H2O, which, as Mr. Wright vociferously argued to evade a judgment requiring the ROW's transfer, was (until this filing) not an entity before this Court.

64.     Unsurprisingly, Mr. Wright's representations regarding the ownership of Express H2O have proven false. Further evidencing Mr. Wright's fraud and bad faith, his counsel admitted to this Court to (on August 6, 2025) that, at some undisclosed point in time, Mr. Wright caused family members—and specifically, his wife—to receive membership interests in the company.

65.     To date, Mr. Wright has refused to engage in post-judgment discovery regarding Express H2O's ownership. Express H2O's public filings with the State of Texas reflect, however, that Mr. Wright is the sole Manager of the company. Despite his representations to this Court regarding his involvement and interest in Express H2O, Mr. Wright has executed pubic filings, under penalty of perjury, as Express H2O's Manager as recently as December 9, 2024.

66.     There is no arguable basis for Mr. Wright's initial transfer of the ROW to Express H2O (against court orders) and continued refusal to transfer the ROW out of Express H2O (despite his in-court representations) other than to evade judgment.

67.     For the past six years, Mr. Wright has pulled one card out of his sleeve after another to defraud those around him. And his transfer of the ROW is no exception.

68.     In just this deal alone, Mr. Wright:

    a.  gained access to the ROW by lying about his wealth;

    b.  paid for his interest by taking out an undisclosed wrap-around loan;

    c.  hedged the wrap-around loan with an unauthorized, backdated transaction, using the ROW as collateral and positioning himself as both creditor and debtor behind the back of his business partner (Mr. Moore);

    d.  allegedly "foreclosed" on the loan and transferred the ROW to KrisJenn;

    e.  threw KrisJenn into bankruptcy after an unfavorable ruling in state court;

    f.  defied this Court and transferred the ROW to Express H2O to defraud his creditors;

    g.  continued to defy this Court by failing to transfer the ROW back to an entity before the Court;

h.   evaded service by the U.S. Marshal Service to prevent Plaintiffs from collecting on a $750,000 judgment for attorneys' fees;

i.   is presently misrepresenting himself as the owner of the ROW (through Express H2O) in a separate court proceeding, without disclosing this Court's orders; and

j.   has now admitted that he transferred membership interests in Express H2O to his wife in an attempt to evade judgment.

69.   Through these fraudulent transfers, Mr. Wright defrauded his creditors—Plaintiffs—and hindered and delayed their ability to recover their respective 20% interests in the ROW, as well as monetary amounts awarded to Plaintiffs by this Court.

70.   Express H2O and Mrs. Wright received these fraudulent transfers without paying reasonably equivalent value and with full knowledge that receiving the transfer violated this Court's orders and deprived Plaintiffs of their rights.

71.   Mr. Wright's, Mrs. Wright's, KrisJenn's, and Express H2O's actions also threaten—as this Court acknowledged—immeasurable monetary damage to Plaintiffs by preventing the development of the ROW.

72.   It is time for the Court to order that Defendants' shell game is over.

### CAUSES OF ACTION

### Count I
### TEX. BUS. & COM. CODE § 24.005(a)(1)
### (Actual Fraud by All Defendants)

73.   Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

74.   Plaintiffs are Mr. Wright's (and his entities') creditors, and they hold interests in the ROW—an asset originally held by debtor KrisJenn.

75.     As the manager of KrisJenn and Express H2O and on behalf of these entities, Mr. Wright fraudulently transferred the ROW from KrisJenn to Express H2O, and indirectly to his wife, in defiance of this Court.

76.     Mr. Wright caused KrisJenn to transfer the ROW to Express H2O, and for Express H2O and Mrs. Wright to receive the transfers, with actual intent to hinder, delay, or defraud his creditors, Plaintiffs.

77.     Mr. Wright's and KrisJenn's transfers of the ROW to Express H2O and, indirectly, to Mrs. Wright bear the "badges of fraud." Specifically:

- The ROW was originally held by KrisJenn and represented all or substantially all of the entity's assets.

- Mr. Wright transferred the ROW from KrisJenn to an "insider" (Express H2O), and then caused Express H2O to transfer membership interests to his wife, Mrs. Wright, another "insider."

- The ROW represents all or substantially all of Express H2O's assets.

- Mr. Wright, debtor KrisJenn's only beneficiary, maintained control of the ROW after transfer.

- Mr. Wright, Mrs. Wright, KrisJenn, and Express H2O concealed the transfer.

- Mr. Wright and KrisJenn were sued by Plaintiffs before the transfer of the ROW, and it is unknown when Mrs. Wright received ownership interests in Express H2O, but it must have been simultaneously with or after KrisJenn's initial fraudulent transfer of ROW ownership to Express H2O.

- Mr. Wright caused KrisJenn to transfer the ROW while an appeal was pending related to the ownership interest in the ROW—just three weeks before the District Court ruled in Plaintiffs' favor.

- Mr. Wright caused KrisJenn to transfer the ROW against this Court's order.

- By transferring the ROW to a new entity, Mr. Wright and KrisJenn removed the ROW's ownership from the Court's jurisdiction.

- Mr. Wright and KrisJenn did not receive reasonably equivalent value from Express H2O in exchange for the ROW.

- In turn, Express H2O did not receive reasonably equivalent value from Mrs. Wright in exchange for her membership interests in Express H2O.

- KrisJenn, the original owner of the ROW, was insolvent at the time of transfer or became insolvent shortly after.

- And Mr. Wright (on behalf of himself and KrisJenn) has evaded service in matters related to this Court.

78.    Through these actions, Mr. Wright, Mrs. Wright, KrisJenn, and Express H2O have hindered and delayed the Plaintiffs' ability to recover their lawful interests in the ROW.

### Count II
### TEX. BUS. & COM. CODE §§ 24.005(a)(2), 24.006(a)
### (Constructive Fraudulent Transfer by All Defendants)

79.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

80.    Mr. Wright, on behalf of his entities, transferred the ROW after Plaintiffs were creditors of KrisJenn, KrisJenn did not receive reasonably equivalent value for the transfer from Express H2O, and KrisJenn was insolvent at the time of the transfer.

81.    In its Fourth Amended Chapter 11 plan, issued an entire year before Mr. Wright transferred the ROW from KrisJenn to Express H2O, this Court unequivocally affirmed that Plaintiffs were KrisJenn's creditors and had interests in the ROW. Indeed, that is why the Court prohibited Mr. Wright from transferring the ROW without first giving Plaintiffs notice and an opportunity to object—an order that Mr. Wright flatly violated.

82.     The only consideration given for the transfer of the ROW from KrisJenn to Express H2O was that Mr. Wright (or, seemingly, Mrs. Wright) would have a membership interest in Express H2O. In other words, there was no consideration—Mr. Wright was the sole owner of the ROW through KrisJenn, and he would directly or indirectly (through Mrs. Wright) remain the sole owner through Express H2O, a new entity that was not before this Court.

83.     In short, KrisJenn did not receive, and Express H2O did not pay, reasonably equivalent value of the ROW in exchange for the transfer. Nor did Mrs. Wright pay reasonably equivalent value for her membership interests in Express H2O in exchange for the transfer.

84.     Finally, if KrisJenn was not insolvent prior to the transfer, it certainly was after. The ROW was KrisJenn's only asset, leaving the entity with debts greater than its fair-market value after the transfer.

85.     Through this transaction, Mr. Wright left KrisJenn with remaining assets (nothing) that were disproportionately small compared to the value of what it gave up to Express H2O—a ROW worth millions of dollars.

86.     At the time of this transaction, Mr. Wright, Mrs. Wright, KrisJenn, and Express H2O intended—or knew or reasonably should have known—that KrisJenn would incur debts beyond its ability to pay.

87.     Through these actions, Mr. Wright, Mrs. Wright, KrisJenn, and Express H2O have hindered and delayed Plaintiffs' ability to recover their lawful interests in the ROW.

**Count III**
**TEX. BUS. & COM. CODE § 24.006(b)**
**(Insider Transfer by All Defendants)**

88.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

89.     Mr. Wright transferred the ROW after Plaintiffs were creditors of KrisJenn, Mr. Wright transferred the ROW to an insider (Express H2O), Mr. Wright caused membership interests in Express H2O to be transferred to Mrs. Wright, KrisJenn was insolvent at the time of the transfer of the ROW to Express H2O, and Express H2O knew (through its principal, Mr. Wright) of KrisJenn's insolvency and knew the transfer violated this Court's order.

90.     Plaintiffs were creditors of Mr. Wright and KrisJenn before the transfer of the ROW and the transfer of Express H2O membership interests to Mrs. Wright, and Plaintiffs' claims arose before Mr. Wright, on behalf of KrisJenn, transferred the ROW to Express H2O and before Mr. Wright caused membership interests in Express H2O to be transferred to Mrs. Wright.

91.     As the managing member of KrisJenn and Express H2O, Mr. Wright fraudulently transferred the ROW from KrisJenn to an insider—another Wright-controlled entity—in defiance of this Court.

92.     KrisJenn was insolvent at the time the ROW was transferred, and Mr. Wright and Express H2O knew that KrisJenn was insolvent at the time of the transfer.

93.     When Plaintiffs brought the transfer to the Court's attention, this Court ordered Mr. Wright to transfer the ROW back to KrisJenn, giving Plaintiffs every reason

to believe this insider trade would be resolved without the need for further court intervention.

94.     Mr. Wright's, Mrs. Wright's, KrisJenn's, and Express H2O's failure to transfer the ROW back to KrisJenn, in violation of the Court's order, was confirmed on February 20, 2025.

95.     Through these actions, Mr. Wright, Mrs. Wright, KrisJenn, and Express H2O have hindered and delayed Plaintiffs' ability to recover their lawful interests in the ROW.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs ask the Court for the following equitable and legal relief against all Defendants:

(a)     a declaration that the transfer of the ROW from KrisJenn to Express H2O was a fraudulent transfer under TUFTA;

(b)     avoidance of the transfer of the ROW from KrisJenn to Express H2O;

(c)     avoidance of the transfer of membership interests in Express H2O to Mrs. Wright;

(d)     attachment against the ROW;

(e)     attachment against Mrs. Wright's interests in Express H2O;

(f)     injunction against further disposition of the ROW by Mr. Wright, Mrs. Wright, KrisJenn, or Express H2O;

(g)     appointment of a receiver to take charge of the ROW;

(h)     appointment of a receiver to take charge of Express H2O, which is the fraudulent instrumentality that the Defendants have used to commit the wrongs outlined above;

(i)     an award of costs and reasonable attorneys' fees under § 24.013 of the Texas Business and Commerce Code, and/or any other statute or written agreement that allows for the award of such fees, expenses, and costs;

(j)     prejudgment and post-judgment interest as allowed by law; and/or

(k)     an award of any other legal or equitable relief to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

_/s/ Christopher S. Johns_
Christopher S. Johns
Texas Bar No. 24044849
Bill Cobb
Texas Bar No. 00796372
Alexa L. Gervasi
Texas Bar No. 00796372
COBB & JOHNS PLLC
13341 West US-290, Building. 2
Austin, Texas 78737
512-399-3150
512-572-8005 fax
chris@cobbjohns.com
bill@cobbjohns.com
alexa@cobbjohns.com

*Counsel for the Plaintiffs*