Exhibit

P-7

exhibitsticker.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| KRISJENN RANCH, LLC | § | |
| | § | Bankruptcy Case No. 5:20-50805-RBK |
| *Debtor* | § | |
| | § | |

| | | |
|---|---|---|
| KRISJENN RANCH, LLC, and | § | |
| KRISJENN RANCH, LLC-SERIES | § | |
| UVALDE RANCH and KRISJENN | § | Case No. SA-24-CV-365-XR |
| RANCH, LLC-SERIES PIPELINE ROW | § | |
| as Successors in Interest to BLACKDUCK | § | *Consolidated* |
| PROPERTIES, LLC | § | |
| *Appellants/Cross-appellees*,[1] | § | Case No. SA-24-CV-367-XR |
| | § | |
| -vs- | § | |
| | § | (Consolidated Appeal from the United |
| DMA PROPERTIES, INC., | § | States Bankruptcy Court for the Western |
| LONGBRANCH ENERGY, LP, | § | District of Texas Adversary Proc. No. 20- |
| and FRANK DANIEL MOORE, | § | 05027-RBK) |
| *Appellees/Cross-appellants*. | § | |

## ORDER ON BANKRUPTCY APPEAL

This civil action is before the Court on appeal from the United States Bankruptcy Court for

the Western District of Texas. The Court has considered the record, applicable law, and the parties'

briefs. Having considered the issues raised in this consolidated appeal, the arguments of the parties,

the relevant portions of the record, and the applicable principles of law, the Court finds no need

for oral argument and issues the following Order.

## I. BACKGROUND

---

[1] After the Court's Order consolidation of 5:24-cv-365-XR with 5:24-cv-367-XR, the parties' pleadings began to be filed using different party identifiers. KrisJenn Ranch started filing its pleadings as appellee while DMA, Longbranch, and Moore started filing as Appellant. The Court refers to the parties by name throughout the order to eliminate possible confusion. DMA, Longbranch, and Moore are also identified as Cross-appellants.

**P7-0001**

The procedural history and factual background culminating in the filing of this second bankruptcy appeal is lengthy and complex. While a complete recitation of that history and background is not necessary for present purposes, an overview of relevant facts and events is in order. The following factual background is compiled from the order of the District Court in the first appeal, the Bankruptcy Court's opinions and the filings of the parties.

**A. Factual Background**[2]

In 2015, Larry Wright, the owner of KrisJenn Ranch, LLC ("KrisJenn"), entered into a business relationship with Daniel Moore. 1.ROA.3720. Wright and Moore, along with a third individual (Darin Borders) were "flipping" saltwater disposal wells. After a couple of successful ventures and a third under contract, Wright and Moore subsequently formed Black Duck Properties, LLC, ("Black Duck"). *See* Black Duck Company Agreement ("Company Agreement") 1.R.526–66. According to the agreement, Wright owned half of Black Duck through KrisJenn Ranch, LLC, and Moore owned half through his entity, SCMED Oilfield Consulting, LLC ("SCMED"). *See*. 1.R.567. Wright and Moore also served as managers of Black Duck. 1.ROA.3720.

The following year, Moore and Borders discovered an opportunity to purchase the relevant Right of Way ("ROW") from its then-owner Express Pipeline Connection, LLC ("Express"), and entered into a purchase agreement with Express Pipeline through Border's company ("Longbranch"). *See* 1.R.591–634. The resulting "Longbranch Purchase Agreement" gave Longbranch a contractual right to purchase the ROW for $5 million. 1.R.593. Moore and Borders

---

[2] The record on appeal filed under 5:24-cv-367 appears to contain documents that are not included in the record on appeal filed in 5:24-cv-365. The Court will reference the record on appeal filed in 5:24-cv-367. The consolidated record on appeal (ECF No. 5) contains seven attachments: (1) Appellants' Designation of Record; (2–6) Designated Documents; and (7) Docket Sheet of the Bankruptcy Court. This Court will cite to the Designated Documents, which comprise the 8,326-page record on appeal, as "R". It will also cite to other documents filed in this appeal by the ECF docket number. The Court may also include the document number for filings in the United States Bankruptcy Court for the Western District of Texas.

P7-0002

paid $25,000 in earnest money to secure the purchasing right. 1.R.592–93. The Longbranch Purchase Agreement did not initially involve Black Duck.

Upon securing the Purchase Agreement, Moore and Borders, looking for a capital investor, brought Wright in on the deal leading to Wright's reimbursement of Moore and Borders for the $25,000 earnest money deposit and an agreement to participate in the ROW purchase through Black Duck. 1.R.3601. Longbranch assigned its rights to purchase the ROW to Black Duck through a two-page contract (the "Longbranch Assignment"). *See* 1.R.636–37. As consideration, Black Duck agreed to pay Longbranch 20% of the net profits share of the "gross revenues actually received . . . from the operation, use, maintenance or sale of the pipe and related facilities known as the . . . pipeline." 1.ROA.3722

After Wright funded additional nonrefundable earnest money payments to extend the closing date, Black Duck closed on the ROW (1.ROA.3723) resulting in the transfer of ROW to Black Duck in August 2017. *See* 1.R.662–67 (Deed, Conveyance and Assignment ("Deed")), 705 (Deed of Trust Security Agreement); *Id*. at 2627. To fund the purchase price, Wright made a personal loan of $1.25 million to Black Duck (*see* 1.R.2627) and also took a loan from Asilo investments ("Asilo") to KrisJenn for $4.1 million. *See* R. 696–702. Wright's family ranch was collateral for this hard money loan. *See* 1.R. 698. Wright then lent the $4.1 million to Black Duck from KrisJenn to complete the ROW purchase (the "Black Duck Loan"). 1.ROA.3723.

As a loan between two of his entities, Wright sat on both sides of the loan. According to a security agreement for the ROW deed of trust, the ROW secured the Black Duck Loan. *See* 1.R.705. Structuring the loan in this manner enabled Wright to secure repayment on the hard money loan and protect his family ranch by foreclosing on the ROW. At the time the loan was completed, Moore was manager of Black Duck. Although the Company Agreement required loan

3

**P7-0003**

transactions to be authorized by the managers, no one informed Moore of this "secret loan," and he did not authorize it. 1.R.3724. Moore became aware of the loan at a later date. *Id.*

After Black Duck closed the ROW purchase, Moore alleges Wright pressured him to relinquish his 50% interest in Black Duck through SCMED and resign from his position as manager. 1.R.3517–18. In an email exchange on February 3 and 4, 2018, the two business partners agreed on the terms of Moore's resignation (the "Email Agreement"). *See* 1.R.767–71. Moore (through DMA) would receive "[n]o less than 20% Carried Interest in the P-21 Express Pipeline . . . . [u]nder the exact terms and conditions as the [Longbranch Assignment]." 1.R.770.

On February 7, 2018, Black Duck and DMA executed a formal agreement incorporating the terms of the Email Agreement (the "DMA Agreement"). *See* 1.R. 776–80. The DMA Agreement contains essentially the same terms previously set out when Longbranch assigned the ROW purchase agreement to Black Duck. *Compare* 1.R.779 with 1.R.636–37.

After executing the DMA Agreement, Wright made an agreement with John Terrill and others to sell the ROW. *See* 1.R.782 (letter memorializing agreement). On February 9, 2018, a couple of days after Moore left the company, Wright caused Black Duck to execute a letter of intent regarding that agreement with Terrill. *See* 1.R.782–83 (letter of intent). On March 22, 2018, Terrill's entity, TCRG East Texas Pipeline 1, LLC ("TCRG"), and Black Duck executed a purchase agreement (the "TCRG Purchase Agreement"). *See* 1.R.852–924. According to the terms of the agreement, Black Duck would receive a cash purchase price of $2.5 million and retain a 16% carried interest in the gross profit of the ROW. 1.R.855, 891–93. TCRG made a $500,000 down payment on the purchase price (1.R.855), and the deed transferring the ROW to TCRG was executed on April 3, 2018, *see* 1.R.927–33.

P7-0004

In April 2018, after learning of the TCRG sale, Borders informed TCRG of the respective net-profits interest. 1.ROA.3725–26. Upon notification of the net-profits interest, Terrill informed Borders that he would not honor the interests. 1.ROA.3028. Wright later testified that he did not disclose the net-profits interests to TCRG because, as he understood it, DMA and Longbranch were only entitled to 20% of the net-profits received by Black Duck through its 16% carried interest in the ROW. 1.ROA.3726. In turn, Wright was entitled to the remaining 60% of Black Duck's 16% carried interest in the ROW. *Id.* DMA and Longbranch disagreed, arguing that the Longbranch Assignment and DMA Agreement entitled each to a 20% net-profits interest in the entire ROW because the net-profits interest run with the land and are binding on the successors and assigns to the ROW, including TCRG. *Id.* Borders and Moore both testified at the bankruptcy trial that although the 20% net-profits interest that each reserved would probably diminish the chances of obtaining a sale, they had reserved it to give themselves negotiating leverage. *Id.*

On April 16, 2018, Wright emailed Moore and Borders threatening to "kill the 20% each of you own" if they continued to communicate with Terrill about their net-profits interests. 1.ROA.295. Ultimately, TCRG funded the final $2 million of the purchase price. After the TCRG sale closed in April 2018, Black Duck was owned 100% by KrisJenn and TCRG owned the ROW. 1.ROA.3726.

Because of uncertainty regarding Moore and Borders net-profit interests, the entire sale later fell apart. 1.R.3410 With threats of litigation, TCRG forced Wright to rescind the TCRG Purchase Agreement and purchase the ROW back from TCRG. 1.ROA.3417. In December 2019, KrisJenn purchased the ROW back from TCRG. 1.ROA.3726. To pay the $2.5 million repurchase price, KrisJenn obtained additional financing from an existing lender, the McLeod family ("the

"McLeod Option Agreement"). *See* 1.R.3392. The agreement, effective December 19, 2019, pledged Wright's family ranch, mineral interests, and the ROW as collateral. 1.ROA 3727.

### B. Procedural Background

In 2019, litigation began in Texas state court to interpret the terms of the Longbranch Assignment and DMA Agreement ("Assignment Agreements"). Prior to the resolution of the lawsuit, KrisJenn filed for bankruptcy under chapter 11 and initiated the bankruptcy adversary proceeding seeking a declaration that the promises to pay a net-profits interest to DMA and Longbranch are personal covenants that do not attach and run with the ROW. 1.ROA.19–40.

DMA, Longbranch, and Moore answered and filed their own counterclaims and cross actions which, amongst other claims, sought a declaration that the net-profits interests in the Assignment Agreements attach and run with the ROW and are enforceable against the subsequent owners, TCRG and KrisJenn. 1.ROA.55–355, 336–349, 350–385.

In early 2021, the Bankruptcy Court conducted a six-day bench trial on all issues with the consent of all parties for entry of a final order or judgment. *See* 1.ROA.2483–3699, 4156–4269. The Bankruptcy Court issued a detailed opinion concluding that "[t]he net-profits interests in the Assignment Agreements are personal covenants that fail to meet the requirements of a covenant running with the land under Texas law." 1.ROA.3746. The Bankruptcy Court also found that "Wright breached his fiduciary duty related to the unauthorized Black Duck Loan," but determined that "no actual damages were proven." *Id*. The Bankruptcy Court then entered a Final Judgment memorializing its conclusions. More particularly, it rendered a declaratory judgment in favor of KrisJenn that the net-profits interests in the Assignment Agreements owned by Longbranch and DMA are personal covenants. 1.ROA.3749. And "[a]s to Moore's claim for breach of fiduciary duty against Wright regarding the unauthorized Black Duck Loan, the Court render[ed] judgment that Moore take nothing because no actual damages were proven." *Id*.

6

**P7-0006**

DMA, Longbranch, and KrisJenn all filed separate bankruptcy appeals that were consolidated under Case No. 5:21-CV-358-JKP and considered by Western District of Texas District Judge Jason K. Pulliam. In March of 2023, a memorandum opinion and order was issued that addressed three issues on appeal. *See* 5.ROA.11–48. Two of those issues are relevant here: (1) whether DMA and Longbranch's interests are personal covenants rather than real property interests that attach and run with the ROW; and (2) whether the Bankruptcy Court erred in rejecting (a) DMA's claims for breach of fiduciary duty against Larry Wright—specifically whether there was error in denying the breach of fiduciary claim for lack of proof of damages and (b) DMA's claims for knowing participation in breach of fiduciary duty against KrisJenn and Black Duck.

As to issue one, the District Court held that DMA and Longbranch's interests in the ROW attached and ran with the land, reversing and remanding the issue for entry of judgment in favor of DMA and Longbranch. *Id*. at 28–43.

Considering issue two, the District Court noted that the Bankruptcy Court had found that "Wright breached his informal fiduciary duty owed to Moore" (*id*. at 43) but had ultimately denied the breach of fiduciary claim because Moore's submitted damage model assumed that the assignments "contain covenants running with the land" and the Bankruptcy Court had found no such valid covenant. *Id*. at 44. The District Court also noted that the Bankruptcy Court denied all claims of knowing participation in the breach of fiduciary duty because it found "insufficient evidence in the record to prove" any such claim. *Id*.

Ultimately, the District Court reversed and remanded issue two for further consideration. *Id*. at 47. Stating that it was not the Court's role on appellate review to determine the proper measure of damages, the District Court instructed the Bankruptcy Court to consider the damage model that was presented to it in the first instance—in light of the District Court's ruling that the

7

**P7-0007**

interest agreements run with the land. *Id*. at 47–48. The District Court also instructed the Bankruptcy Court to further consider the gains-based remedies pursued at trial and the knowing participation claims against Wright's various entities. *Id*.

KrisJenn's subsequent appeal of the District Court's decision to the Fifth Circuit was dismissed for lack of jurisdiction. *Id*. at 80–81.

On remand, the Bankruptcy Court held a hearing, ordered the parties to file a briefing on remedies (*See* DMA and Longbranch Brief on Remedies, Bankr. Case No. 20-05027-rbk Doc. No. 321 and KrisJenn Response, Doc. No. 322) then issued its opinion after remand wherein it: (1) rendered judgment that appellants net-profit interests are covenants running with the ROW; and (2) found that it was "unable to find any evidence of quantification of damages suffered by DMA and Moore" and therefore ordered an equitable remedy—imposition of a constructive trust on the ROW. *See* 5.ROA.215–19.

Both parties have filed appeals under cause numbers 5:24-cv-365-XR and 5:24-cv-367 which have been consolidated under 5:24-cv-365-XR. The Court received statements of issues from DMA, Longbranch, Moore, and KrisJenn. *See* 5:24-cv-367 ECF Nos. 2, 4. With the filing of DMA, Longbranch, and Moore's Brief (ECF No. 6), KrisJenn's Brief (ECF No. 10), DMA, Longbranch, and Moore's Reply Brief (ECF No. 12) and KrisJenn's Sur-reply (ECF No. 14), this consolidated bankruptcy appeal is ready for ruling.

## II. JURISDICTION AND STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court. *See* 28 U.S.C. § 158(a)(1); *In re Berman-Smith*, 737 F.3d 997, 1000 (5th Cir. 2013). "When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand*

**P7-0008**

*Prairie Inc.)*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Reserve Life Co. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The same is true when the district court sits as an appellate court to review adversary proceedings completed to finality by consent of the parties. *See Monge v. Rojas (In re Monge)*, 826 F.3d 250, 254 (5th Cir. 2016) (recognizing the difference in the appeal then before the circuit as proceeding to the district court on proposed findings of fact and conclusions of law). At issue in this consolidated bankruptcy appeal are challenged matters within the Bankruptcy Court's final judgment after remand.

On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless they are found to be clearly erroneous. *In re National Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id*. A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)).

### III. ISSUES RAISED ON APPEAL

In their Statement of Issues, DMA, Longbranch, and Moore appeal the Bankruptcy Court's denial of relief and remedies sought for Wright's breach of fiduciary duties and for the Wright entities' knowing participation in the breaches of those fiduciary duties, with such denied relief and remedies including but not limited to:

1. disgorgement of, and imposition of a constructive trust on, Wright's direct and (through his entities) indirect interests in the pipeline right-of-way and any proceeds from the same and,
2. in the alternative to those gain-based remedies, damages resulting from Wright's and his entities' actions concerning DMA's and Longbranch's interests in the right-of-way.

*See* Case No. 5:24-CV-367-XR ECF No. 2.

9

**P7-0009**

While originally listing those issues in their statement of issues, Cross-appellants identify the following issues within their brief:

1. Whether, applying *de novo* review, the Bankruptcy Court committed reversible error in leaving the property in question (a pipeline easement or right of way) in the hands of the wrongdoer who acquired his interests in the easement by breaching his fiduciary duty.
2. Whether, applying *de novo* review, the Bankruptcy Court erred in refusing to grant final judgment that Wright's entities knowingly participated in Wright's breaches of fiduciary duty, when Wright directly controlled those entities and used them to effectuate his breaches of fiduciary duty.
3. Whether, applying *de novo* review, the Bankruptcy Court erred in concluding that Moore and DMA are not entitled to actual damages.

Case No. 5:24-CV-365-XR ECF No. 6 at 9.

KrisJenn identified seven issues encompassing one-hundred and seven sub-issues for appeal in its statement of issues (*see* Case No. 5:24-cv-367-XR ECF No. 4), but makes no arguments regarding those issues in its brief. Instead, KrisJenn responds to the specific appellate issues raised by DMA, Longbranch and Moore by arguing that the Bankruptcy Court's Final Judgment on Remand should be affirmed because:

1. The Bankruptcy Court did not abuse its discretion in imposing a constructive trust on the ROW in favor of DMA and Moore as requested by [Cross-]appellants.
2. [Cross-]appellants failed to present undisputed evidence that KrisJenn Ranch knowingly participated in Wright's breach of informal fiduciary duty.
3. The Bankruptcy Court did not err in concluding that Moore and DMA are not entitled to actual damages because the record contains no evidence that they suffered an affirmative loss and the market value of the ROW cannot be established with a reasonable degree of certainty.

Case No. 5:24-CV-365-XR ECF No. 10 at 7.

### IV. PRESERVATION OF ISSUES AND WAIVER

Issues included in an appellant's original statement of issues properly preserve the issues for appeal. *See Highland Cap. Mgmt. Fund Advisors, LP v. Highland Cap. Mgmt., LP (In re Highland Cap. Mgmt., LP)*, 57 F.4th 494, 499–500 (5th Cir. 2023).

10

**P7-0010**

> Bankruptcy Rule 8009—previously Rule 8006—requires that, in an appeal to a district court or bankruptcy appellate panel, "[t]he appellant must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented."

*Id*. at 499 (quoting Fed. R. Bankr. P. 8009(a)(1)(A)). An issue is not preserved for appeal, "even if [it] is argued in the bankruptcy court and ruled on by that court . . . unless the appellant includes the issue in its statement of issues on appeal." *Id*. (quoting *Smith ex rel. McCombs v. H.D. Smith Wholesale Drug Co. (In re McCombs)*, 659 F. 3d 503, 510 (5th Cir. 2011)). Furthermore, even if an unpreserved issue is "argued before the district court," it "is waived on subsequent appeal to the Fifth Circuit." *Id*. at 500 (same). As the Fifth Circuit has previously held:

> "[t]he rules regarding preservation of issues on appeal in bankruptcy cases apply with equal force regardless of whether the appeal is from the bankruptcy court to the district court . . . from the district court to the court of appeals . . . or from the bankruptcy court to the court of appeals"—in other words, Appellants' "statement of issues must be considered to determine whether [they] properly preserved for appeal the issues and arguments contained in [their] brief."

*Id*. (quoting *In re McCombs*, 659 F.3d at 511).

Additionally, a party may abandon an issue preserved for appeal by failing to brief it adequately in the appellate brief. *See Assadi v. Osherow (In re Assadi)*, No. 22-50452, 2022 WL 17819599, at *2 (5th Cir. Dec. 20, 2022) (per curiam) ("Assadi abandoned this issue by inadequately briefing it before the district court.); *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019) (recognizing that parties abandon issues "[b]y presenting but failing to brief" the issues) *United States v. Arizpe*, 371 F. App'x 521, 522 (5th Cir. 2010 (per curiam) ("We will not raise and discuss legal issues that Arizpe has failed to assert; those issues are deemed abandoned."). "An original brief abandons all points not mentioned therein, and also those points assigned as error but not argued in the brief." *MortgageAmerica Corp. v. Bache Halsey Stuart Shields Inc.*, 789 F.2d 1146, 1150 (5th Cir. 1986) (citation and internal quotation marks omitted).

**P7-0011**

## V. APPLICABLE LAW

"Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In the context of a bankruptcy appeal, reviewing courts likewise apply state substantive law. *See Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 221 (5th Cir. 2013) (applying Texas law). "When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014). Absent a final decision by the Texas Supreme Court that "'precisely' resolves the legal issue," federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an Erie guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted). The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

## VI. ANALYSIS

Cross-appellants, seeking to have the Court order Wright to transfer title to the ROW to them, argue that the Bankruptcy Court erred in three aspects: (A) leaving the ROW under control of Wright; (B) failing to consider the knowing participation claims against Wright's entities; and (C) rejecting claims of actual damages. *See* ECF No. 6 at 9–10. The Court addresses each issue in turn.

**P7-0012**

### A. Control of the ROW

The first issue requires this Court to determine whether the Bankruptcy Court erred by leaving the property under the control of Wright when it imposed the constructive trust on the ROW.

As an initial matter, the parties disagree about the appropriate standard of review the Court should employ in reviewing the first issue. Under Texas law, a constructive trust is an equitable remedy. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). Because a constructive trust is an equitable remedy, the decision whether to impose it is entrusted to the discretion of the trial court, and the trial court's decision is reviewed for an abuse of discretion. *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 284 (5th Cir.1999); *Marine Indem. Ins. Co. of America v. Kraft Gen. Foods, Inc.,* 115 F.3d 282, 287 (5th Cir.1997).

In its Final Judgment, the Bankruptcy Court ordered, adjudged, and decreed that:

> As to DMA's and Moore's claim for breach of fiduciary duty against Wright regarding the unauthorized Black Duck Loan, the Court renders judgment that DMA and Moore recover a constructive trust on the ROW in the hands of H2O Express, LLC, because of the unauthorized transfer by KrisJenn of the ROW to Express H2O, LLC.

5.ROA.306. Underscoring the issue at hand, while the Bankruptcy Court imposed a constructive trust on the ROW, it left the ROW in the hands of H2O, an entity of Larry Wright. DMA and Moore advance two reasons as to why the Bankruptcy Court erred: (1) the Bankruptcy Court's decision to leave the ROW in the hand of Wright is error because under Texas law Wright cannot lawfully retain the property and (2) the Bankruptcy Court confused Wright's breach of fiduciary duty with his violation of the chapter 11 bankruptcy plan.

First, DMA and Moore contend that the refusal of the Bankruptcy Court to remove the ROW from Wright's control is error under Texas law because a fiduciary cannot be permitted to

P7-0013

keep what he has acquired through his breaches of fiduciary duty. ECF No. 6 at 30 (citing *Omuhundro v. Matthews*, 341 S.W.2d 401, 409 (Tex. 1960); *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942)). Although their cited authorities discuss with approval the remedy of removing property from a party that has breached his fiduciary duty, the cited cases do not require that removal. Indeed, Texas Courts have consistently held that equitable remedies "must fit the circumstances presented." *ERI Consulting*, 318 S.W.3d at 874; *see also Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999) (noting automatic forfeiture is not necessary for a constructive trust to serve its purpose "since the equity of the transaction will shape the measure of relief granted.") (citation omitted); *In re Estate of Preston*, 346 S.W.3d 137, 165 (Tex. App.—Fort Worth 2011, no pet.) ("A constructive trust *may be* imposed when one acquires legal title to property in violation of a fiduciary relationship. While the form of a constructive trust is practically without limit, its existence depends on the circumstances.") (emphasis added) (citations omitted). Despite DMA and Moore's assertions to the contrary, under Texas law, the Bankruptcy Court has broad latitude to shape the form of equitable relief. *Wheeler v. Blacklands Production Credit Ass'n.*, 627 S.W.2d 846, 850 (Tex. App.—Fort Worth 1982, no writ) (citing *Magee v. Young*, 198 S.W.2d 883 (Tex. 1946)) ("[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted.").

A review of the record demonstrates that on remand the Bankruptcy Court carefully considered the issue remanded to it—the proper measure of damages for breach of fiduciary duty by Larry Wright, the principal of KrisJenn. In its opinion after remand, the Bankruptcy Court notes that it reviewed the transcripts of the six-day trial to determine the evidence of quantification of damages. 5.ROA.310. The court then discusses and considers the circumstances presented to it

before determining that the imposition of a constructive trust *in the hands of Express H2O, Wright's entity,* was an appropriate remedy.[3] *See* 5.ROA.306, 311.

Second, citing statements within the Bankruptcy Court's opinion after remand, DMA and Moore argue that Bankruptcy Court erred by leaving the ROW in Wright's possession because it confused Wright's violation of the chapter 11 bankruptcy plan with his breach of fiduciary duty. *See* ECF No. 6 at 36–37 (citing 5.ROA.306 (rendering judgment that "DMA and Moore recover a constructive trust on the ROW in the hands of Express H2O, LLC, because of the unauthorized transfer by KrisJenn of the ROW to Express H2O, LLC"); 5.ROA.311 (explaining that the ROW was transferred to another Wright entity "in violation of the terms of the confirmed chapter 11 plan" and that "[t]he Court will impose a constructive trust on the ROW in the event that Larry Wright and Express H2O fail to transfer the ROW back to KrisJenn, the reorganized debtor"); *Id*. ("The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larrry Wright and H2O transfer ownership of the ROW back to KrisJenn.").

DMA and Moore are not incorrect in their contentions that the Bankruptcy Court appears to provide multiple reasons for the imposition of the constructive trust in the opinion after remand. But, even if the Bankruptcy Court made its decision solely on a violation of the bankruptcy plan, that would likely not be an abuse of discretion. *See Bickford v. International Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. 1981) ("[R]eversal is inappropriate if the ruling of the [] court can be

---

[3] In its opinion after remand, the Bankruptcy Court considered the following circumstances (among others): (1) the parties to the ROW transaction were aware that the venture was speculative that could make a profit or result in economic loss, (2) Wright, Moore, and Borders all attempted to sell or develop the ROW, without success (3) in the beginning of the venture, the parties encountered difficulty in selling the ROW because they did not own it—merely had a contract to acquire it, (4) after acquiring the ROW, there was disagreement whether to sell the ROW or develop it on a long-term basis, (5) due to the dispute over the 20% net profits interest, the parties could not agree on the proper split of proceeds or future income which likely prevented the sale of the ROW, (6) none of the parties have made money on the purchase of the ROW, (7) Wright has paid millions of dollars in the venture while DMA, Moore, and Borders have paid little to no money but have spent many hours working on the deal. 5.ROA.310–11.

P7-0015

affirmed on any grounds, regardless of whether those grounds were used by the district court.").
Here, the Bankruptcy Court's opinion ultimately states: "Nonetheless, the Court will impose this
equitable remedy against Larry Wright for breach of fiduciary duty." 5.ROA.312. And, as
discussed above, the Bankruptcy Court reviewed the transcripts of the six-day trial and considered
the evidence and circumstances presented to it prior to imposing the constructive trust that leaves
the ROW in the hands of Wright (*id*. at 310) which clearly indicates that the Bankruptcy Court
considered grounds other than a violation of the bankruptcy plan when it made its decision.

Because the Bankruptcy Court reviewed the evidence in the record, carefully considered
the circumstances presented and because "the scope and application of a constructive trust is
generally left to the discretion of the court imposing it" this Court finds no reason to disturb the
Bankruptcy Court's judgment as to appellate issue one. (*Baker Botts, L.L.P. v. Cailloux*, 224
S.W.3d 723, 737 (Tex. App—San Antonio 2007, pet. denied) (citing *Wheeler* 627 S.W.2d at 849).

## B. Knowing Participation

Through issue two, DMA, Longbranch and Moore argue that the Bankruptcy Court failed
to address the knowing participation claims against Wright's entities on remand. ECF No. 6 at 38–
40. Cross-appellants request this Court render judgment on or remand for further consideration of
the claims that Wright's entities knowingly participated in breach of fiduciary duty. *Id*. at 39.

Issues included in an appellants' original statement of issues properly preserve the issues
for appeal. *See Highland Cap. Mgmt. Fund Advisors, LP v. Highland Cap. Mgmt., LP (In re
Highland Cap. Mgmt., LP)*, 57 F.4th 494, 499–500 (5th Cir. 2023). An issue is not preserved for
appeal, "even if [it] is argued in the bankruptcy court and ruled on by that court . . . unless the
appellant includes the issue in its statement of issues on appeal." *Id*. (quoting *Smith ex rel.*

**P7-0016**

*McCombs v. H.D. Smith Wholesale Drug Co. (In re McCombs)*, 659 F. 3d 503, 510 (5th Cir. 2011)).

Cross-appellants filed a statement of the issues on appeal which the Court must consider to determine whether they properly preserved for appeal the issues and arguments contained in their briefs. Cross-appellants' statement of the issues on appeal presents the following issues:

> The Bankruptcy Court's denial [] of relief and remedies sought [] for Larry Wright's breach of fiduciary duties, and for the Wright entities' knowing participation in the breaches of those fiduciary duties, with such denied relief and remedies including but not limited to:
>
> (1) disgorgement of, and imposition of a constructive trust on, Wright's direct and (through his entities) indirect interests in the pipeline right-of-way and any proceeds from the same and,
>
> (2) in the alternative to those gain-based remedies, damages resulting from Wright's and his entities' actions concerning DMA's and Longbranch's interests in the right-of-way.

*See* Case No. 5:24-CV-367-XR ECF No. 2.

By contrast, in their appellate brief Cross-appellants state and argue, as relevant here, the following issue:

> "Whether, applying de novo review, the Bankruptcy Court erred in refusing to grant final judgment that Wright's entities knowingly participated in Wright's breaches of fiduciary duty, when Wright directly controlled those entities and used them to effectuate his breaches of fiduciary duty."

Case No. 5:24-CV-365-XR ECF No. 6 at 9. These are separate issues—Cross-appellants' statement of the issues on appeal concerns only whether the Bankruptcy Court denied relief and remedies sought. Their statement of the issues does not fairly encompass the argument found in their brief that the Bankruptcy Court should have granted final judgment that Wright's entities *participated in* Wright's breaches of fiduciary duty. *See Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 324–25 (5th Cir. 2016) (rejecting the notion that a statement of issues on appeal should be construed broadly). Therefore, Cross-appellants did not preserve for appeal a challenge to the

17

**P7-0017**

Bankruptcy Court's refusal to grant final judgment on whether Wright's entities knowingly participated in Wright's breaches of fiduciary duty.

### C. Actual Damages

The third issue concerns whether the Bankruptcy Court erred in concluding Cross-appellants were not entitled to actual damages. Cross-appellants argue that actual damages should be awarded to them if the Court does not transfer the ROW to Cross-appellants.

In its Memorandum Opinion and Order addressing the first appeal, the District Court remanded with instruction for the Bankruptcy Court to consider the damage model presented to it in the first instance. As discussed above, the record demonstrates that the Bankruptcy Court did consider the proper measure of damages for breach of fiduciary duty by Larry Wright, the principal of KrisJenn. Upon review of the transcripts of the six-day trial, the Bankruptcy Court was unable to find any evidence of quantification of damages suffered by DMA and Moore, noting that the amount of damages are "uncertain" and "impossible to quantify." *See* 5.ROA.217–18. The Bankruptcy Court then determined that an equitable remedy in the form of a constructive trust to be an appropriate remedy. *Id*. at 218–19. Neither party appeals the imposition of the constructive trust.

While courts have held that actual damages are a permissible remedy for breach of fiduciary duty, *Preston Carter Co. v. Tatum*, 708 S.W.2d 23 (Tex.App.—Dallas 1986, writ ref'd, n.r.e.), they must be proven; they cannot be merely speculative or conjectural. *A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc.*, 798 S.W.2d 606, 615 (Tex.App.—Dallas 1990, writ denied). As the Bankruptcy Court explained in its opinion, it was unable to find any evidence of quantification of damages suffered by DMA and Moore, finding instead that the amount of damages was "uncertain" and "impossible to quantify".

P7-0018

Cross-appellants argue that competent trial testimony establishing the value of the ROW (and thus the value of DMA and Moore's damages) was presented to the Bankruptcy Court. KrisJenn argues that no evidence of quantifiable damages with any reasonable certainty was established.

Cross-appellants' brief cites testimony valuing the ROW at $10,400,000, $9,500,000, $7,200,000 and $6,500,000. ECF No. 6 at 41–42. Based on those wide-ranging valuations, Cross-appellants argue that DMA and Moore's interests would have been worth $720,000 or $1,000,000 or $1,900,000 or $2,280,000. *Id*. The Court's review of the record reveals another valuation of the ROW at $6,000,000 (1.ROA.3667), not to mention the actual sale of the ROW for $2,500,000 (with a 16% carried interest) (1.ROA.157) that later folded. During the trial, testimony was provided by Moore acknowledging that DMA and Longbranch's reserved interests in the ROW would make it difficult to sell. 1.ROA.3726. Moore's admission adds to the uncertainty of the value of the ROW thereby making an award of actual damages also uncertain.

Upon careful consideration of the parties' arguments and the evidence in the record, the Court concludes that the Bankruptcy Court's findings that DMA and Moore failed to prove any actual damages with the required specificity is not clearly erroneous.

As to appellate issue three, the Court finds no error.

**D. Summation**

After reviewing the bankruptcy record, the orders of the Bankruptcy Court, the parties' briefs, and the applicable law, the Court finds that the Bankruptcy Court did not abuse its discretion in leaving the ROW in the hands of Wright.

As to appellate issue two, the Cross-appellants' statement of issues on appeal failed to include a challenge as to whether the Bankruptcy Court erred in refusing to grant final judgment

19

P7-0019

that Wright's entities knowingly participated in Wright's breach of fiduciary duty. Therefore, they did not preserve the issue for appeal.

As to appellate issue three, the Court finds no error.

### VII. CONCLUSION

Based on the foregoing, the Bankruptcy Court's Final Judgment After Remand is

**AFFIRMED**.

Appellate issue two was not preserved for appeal.

The Court will issue a Final Judgment consistent with this Order.

It is so **ORDERED**.

**SIGNED** this 11th day of August, 2025.


_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

P7-0020