

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: § § § § § | | Case No. 20-50805-rbk |
| KRISJENN RANCH, LLC, | | |
| | | Chapter 11 (Jointly Administered) |
| Debtor. | | |

| | | |
|---|---|---|
| KRISJENN RANCH, LLC, et al., § § § § § § § § § | | |
| Plaintiffs, | | |
| v. | | Adversary No. 20-05027-rbk |
| DMA PROPERTIES, INC., et al., | | |
| Defendants. | | |

**OBJECTION TO DMA'S MOTION TO ENFORCE JUDGMENT AND FOR
SANCTIONS AND SEEKING LEAVE TO FILE FRAUDULENT TRANSFER CLAIMS**
**(relates to Docket No. 498)**

COMES NOW Larry Wright ("Wright"), by and through the undersigned counsel, and hereby files this *Objection* (the "Objection") *to DMA's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims* (the "Motion"). On October 2, 2025, DMA Properties, Inc.; Frank Daniel Moore; and Longbranch Energy, LP (collectively, the "Defendants") filed their Motion seeking to alter the remedies they obtained in the Final Judgment, seeking sanctions for feeling frustrated, and seeking leave to file unidentified fraudulent transfer claims. As discussed in more detail herein, the Motion should be denied in its entirety because (*inter alia*): a) Express H2O Pipeline & ROW, LLC ("Express") is not a named party to the proceeding, yet the Motion improperly seeks to strip it of property rights; b) the Motion actually seeks modification of the Final Judgment, after appeal, rather than enforcement; c) the District

Court already affirmed on appeal that leaving the ROW in Express's hands was appropriate; and d) the requested relief would be inequitable and would violate Express's due process rights; and e) there is no legal or factual basis to permit the Defendants to file a TUFTA action generally or in this Court specifically. The importance of the fact that the District Court has already ruled on the Motion's request to have the ROW assigned to DMA can neither be gainsaid nor overstated. The Defendants, during their appeal, asked the District Court for the exact same relief they are now seeking from this Court; relief the District Court denied. On top of their faulty and legally baseless request to have the ROW and essentially all of its benefits simply given to DMA, the Defendants ask this Court, without any context and with no legal basis, to allow yet another lawsuit to be filed in this Court… another lawsuit presumably related to a bankruptcy case that has been closed for three years. As discussed in more detail herein, all relief requested in the Motion should be denied. In support thereof, Wright[1] would respectfully show as follows:

I. **RELEVANT BACKGROUND**

A. **The Final Judgment Left the ROW "In the Hands" of Express, Which Defendants Admit On Appeal**

1. On March 26, 2024, this Court entered its Final Judgment, which: 1) found that the net-profits interest in the right of way (the "ROW") were valid and subsisting covenants running with the land; 2) imposed a constructive trust on the ROW "in the hands of Express H2O, LLC" (if the ROW was not transferred to KrisJenn); 3) ordered that Wright could recover the $4,700,000 purchase price "out of income from the ROW or the sales proceeds" and DMA and Longbranch could receive their 20% net profits from "a sale or future development income of the ROW"; 4) awarded the Defendants reasonable and necessary attorney's fees; 5) rendered judgment in favor

---

[1] Wright notes that the Motion only seeks relief against him. The Motion and proposed order do not seek relief against Krisjenn Ranch, LLC; Krisjenn Ranch, LLC-Series Uvalde Ranch; Krisjenn Ranch, LLC-Series Pipeline Row; or Express H2O Pipeline & ROW, LLC.

of DMA that DMA had an ownership interest in 50% of the Bigfoot Note payments and awarded DMA $175,143.60 from funds in the Panola County court registry plus $100,000 in attorney's fees; 6) taxed court costs to KrisJenn Ranch, LLC; and 7) denied "[a]ll relief not specifically granted herein.

2. The Final Judgment is unambiguous, and it must be enforced as written, regardless of any party's subjective belief about its meaning. *Highland Hills Ltd. v. United States Dep't of Hous. and Urban Dev.*, 232 B.R. 868, 870 (N.D. Tex. 1999); *In re Munn*, 643 B.R. 141, 149 (N.D. Tex. 2022).

3. The Court's Opinion After Remand echoed the Final Judgment ruling that the ROW stays with Express:

> The better remedy for DMA and Moore, and the one they have elected in their proposed judgment, would be an equitable remedy: Larry Wright would restore ownership of the ROW to KrisJenn, or this Court would impose a constructive trust on the ROW in the hands of Express H2O, and allow Larry Wright to recover his investment for the $4,700,000 purchase price, prior to the breaches of fiduciary duty, from a sale or development of the ROW. After Wright is able to recover $4,700,000, the two 20% net profits interests would begin receiving income from a sale or development of the ROW.

Docket No. 330 at 4.

4. The Court concluded:

> The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn. Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW.

Docket No. 330 at 5.

5. There is no language in either the Final Judgment or Opinion After Remand that requires disgorgement or forfeiture of title or net profits interest from Express to Defendants. Instead, both recognize that Defendants' net profit interests would be paid while the ROW is in the hands of Express, if not transferred back to KrisJenn.

6. Notably, Defendants asked for two remedies prior to the entry of the Final Judgment: (1) disgorgement of Wright's interest—whether held directly or indirectly by one of his entities—in the ROW; and (2) a constructive trust over proceeds equal to Defendants' net profits interests. Docket No. 321 at 12, 18. The Court ultimately rejected Defendants' first request and awarded the second. Docket No. 329.

7. On April 9, 2024, Defendants filed their Notice of Appeal of the Final Judgment and the Opinion after Remand. Docket No. 344.

8. The Defendants' appeal challenged, in part, this Court leaving the property in Express H2O's hands. Appellants' Br., p. 4–13, Case No. 5:24-cv-00365 [ECF No. 6].

9. Ultimately, the District Court held that this Court's remedy was appropriate and, in doing so, explicitly and unequivocally stated that it was considering, per the Defendants' request, the remedy of a constructive trust. For example, in the District Court's Order on Bankruptcy Appeal (Case No. 5:24-cv-00365 [ECF No. 20]), the District Court stated:

> In their Statement of Issues, DMA, Longbranch, and Moore appeal the Bankruptcy Court's denial of relief and remedies sought for Wright's breach of fiduciary duties and for the Wright entities' knowing participation in the breaches of those fiduciary duties, with such denied relief and remedies including but not limited to:
>
> 1. disgorgement of, and imposition of a constructive trust on, Wright's direct and (through his entities) indirect interests in the pipeline right-of-way and any proceeds from the same . . . .

*Id.* at page 9.

10. Further, "[t]he first issue requires this Court to determine whether the Bankruptcy Court erred by leaving the property under the control of Wright when it imposed the constructive trust on the ROW. *Id.* at page 13.

11. Further still, "[u]nderscoring the issue at hand, while the Bankruptcy Court imposed a constructive trust on the ROW, it left the ROW in the hands of H2O, an entity of Larry Wright." *Id.*

12. After disabusing the Defendants of the erroneous belief that a constructive trust requires turnover of the asset against which a constructive trust is placed, the District Court stated:

> Because the Bankruptcy Court reviewed the evidence in the record, carefully considered the circumstances presented and because "the scope and application of a constructive trust is generally left to the discretion of the court imposing it" this Court finds no reason to disturb the Bankruptcy Court's judgment as to appellate issue one.

*Id.* at 16.

13. Ultimately, the District Court affirmed this Court's Final Judgment After Remand. Final Judgment, Case No. 5:24-cv-00365 [ECF No. 21].

## II. OBJECTIONS

### A. Procedural Objections

#### a. Multifarious Pleading

14. The pleading is multifarious in that it seeks multiple types of relief, which are generally impermissible. *See* LR 9013-1.

#### b. Express H2O Is Not a Named Party to This Proceeding and a Motion is Improper for Turnover

15. The Defendants' Motion seeks to compel Wright to transfer to DMA property owned by Express, an entity that is not a party to this adversary proceeding.

16. The Motion seeks to strip Express of its property interest in the ROW even though Express has not been named a party to the underlying suit and is not even named in the Motion as a service party or a party against whom relief is sought (though, Wright notes that he does not believe Express's rights in the ROW can be stripped via a Motion regardless).

17. It is procedurally improper to attempt to adjudicate the property rights of a non-party through a motion practice. Even assuming *arguendo* such attempt can be appropriately presented to this Court in light of the District Court's ruling, it is likely that the proper mechanism to obtain such relief would be through an adversary proceeding that names Express H2O as a defendant. FED. R. BANKR. P. 7001. Wright notes here that the lead bankruptcy case is closed and this Court may lack subject matter jurisdiction to even entertain such an adversary proceeding. It is neither this Court's nor Wright's responsibility to tell the Defendants the appropriate procedure for what they are seeking. That procedure is not, however, through motion practice that does not even serve or target the party whose real property rights are to be removed.

18. Wright further notes that Express is likely a necessary party that must be joined in any action seeking to affect its property interests. FED. R. CIV. P. 19.

**B.  Objection to Requested Enforcement of Constructive Trust**

    **a.  The Motion Seeks an Improper Modification of the Final Judgment, Rather Than Enforcement**

19. The Court's March 26, 2024 Final Judgment, which was affirmed on appeal, imposed a constructive trust on the ROW "in the hands of Express" with two-20% net profits interests from the sale or development of the ROW to Defendants, subject to Wrights' $4.7 million first monies obligation. As discussed above and in detail in the District Court's opinion, the issue of the ROW remaining in Express's hands was the first issue on appeal. The Final Judgment did not order transfer of title from Express to Defendant and did not disgorge or forfeit Wright's

interest in the ROW, even though Defendants requested it.

20. The creatively titled "Motion to Enforce Judgment . . ." is not seeking enforcement of the Final Judgment at all because enforcement would mean leaving the ROW in the hands of Express. Instead, Defendants argue again that the Final Judgment *required* the transfer of title from Express to DMA, ask the Court to force Wright to take property from Express and give it to them, and award ownership—*not just net profits interests*—of the ROW to DMA.

21. The assertion in the Motion that the constructive trust "requires that Wright transfer the property in trust (the ROW) to Moore/DMA . . . ." is inaccurate, not supported by the Final Judgment, and completely addressed by the District Court's decision. Again, prior to entry of the Final Judgment, the Defendants asked that the Court enter the same relief sought in the Motion to Enforce--disgorgement or forfeiture of Wright's interest in the ROW—in addition to imposition of a constructive trust on proceeds (Docket No. 321); the Court awarded the second and not the first. Defendants appealed that decision and the District Court affirmed this Court's denial of that relief.

22. Further still, the Defendants' repeated requests to the District Court that it change the remedy this Court granted (to leave the ROW in the hands of Express) is at irreconcilable odds with their assertion now that the Final Judgment always required the transfer. The Defendants brought the issue to the District Court and lost and now they are effectively asking this Court to undermine the finality of the judgment and to sit as an appellate Court to itself and the District Court.

23. Further, the Defendants' legal position that a constructive trust creates a duty to convey property is simply incorrect. As explained by the District Court *in this case*:

> Although [the Defendants'] cited authorities discuss with approval the remedy of removing property from a party that has breached his fiduciary duty, the cited cases do not require that removal. Indeed, Texas Courts have consistently held that equitable remedies "must

>fit the circumstances presented." *ERI Consulting*, 318 S.W.3d at 874; *see also Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999) (noting automatic forfeiture is not necessary for a constructive trust to serve its purpose "since the equity of the transaction will shape the measure of relief granted.") (citation omitted); *In re Estate of Preston*, 346 S.W.3d 137, 165 (Tex. App.—Fort Worth 2011, no pet.) ("A constructive trust may be imposed when one acquires legal title to property in violation of a fiduciary relationship. While the form of a constructive trust is practically without limit, its existence depends on the circumstances.") (emphasis added) (citations omitted). Despite DMA and Moore's assertions to the contrary, under Texas law, the Bankruptcy Court has broad latitude to shape the form of equitable relief. *Wheeler v. Blacklands Production Credit Ass'n.*, 627 S.W.2d 846, 850 (Tex. App.—Fort Worth 1982, no writ) (citing *Magee v. Young*, 198 S.W.2d 883 (Tex. 1946)) ("[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted.").

Case No. 5:24-cv-00365 [ECF No. 20].

24. Moreover, it cannot be disputed that *rights of property ownership* are entirely different from *rights to receive profits* from a sale or lease of property held by others. *See* Docket No. 205 at 4, 7 (defining "net profits" from the relevant agreements as "gross revenues actually received by [Black Duck], or its successors or assigns directly from the operation, use, maintenance, or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same").

### b. It Would Be Inequitable to Enforce the Constructive Trust in the Manner Requested

25. The Defendants' request to enforce the constructive trust by ordering Wright to transfer title to the ROW directly to DMA would be inequitable for several reasons.

26. First, the Court's judgment imposed a constructive trust on the ROW "in the hands of Express H2O" but did not order a direct transfer of the property to DMA.

27. Second, the judgment recognized Wright's right to recover the $4.7 million he invested as a "first-monies" obligation, but the Defendants' proposed enforcement mechanism fails to adequately protect this right.

28. Third, awarding DMA the ROW for development and sale allows it to profit far beyond any damages the Court found in the trial record. *There is no basis or findings of fact in the Final Judgment that Defendants should recover **100% of net profits and the value of the ROW.*** Defendants have claimed that their interest is worth between $2 and $4 million in damages, "calculated as the value" of the two parties' "20% net-profits interest in the right-of-way, which is worth $10.4 million." Docket No. 205, at 13; Docket No. 321 at 22-23. The proposed order would lead to a windfall to DMA.

    c.    **Any order disgorging ownership of the ROW from Express H2O would violate due process**

29. Wright notes at the outset that it appears that Express was not served with the Motion, which could lead to it being denied outright.

30. Second, the proposed ruling would divest Express's property rights and ownership interest in the ROW without due process, which requires notice and an opportunity to be heard before an individual or entity suffers permanent legal detriment of a property interest. *U.S. Const. Amend. V*; *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484 (1988); *In re Argonaut Financial Services, Inc.,* 164 B.R. 107, 111 (N.D. Cal.1994) (affirming rule that due process clause applies to Bankruptcy Code). As a general rule, "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party…." *Tulsa Professional,* 485 U.S. at 485. Express is not a party to this lawsuit, is a wholly separate legal entity, and has not been given notice that its property rights will be divested. Thus, the requested ruling would be unconstitutional in at least the following ways:

a) The requested relief would apply against a non-party and legal titleholder and would order that non-party to transfer its property to DMA for apparently no compensation;

b) There has been no finding or evidence of wrongdoing by Express H2O that would support penalizing it. Despite the lack of a Court finding, the proposed ruling would divest Express of its property interests and rights without a trial or record supporting this action.

c) The Final Judgment secured Express's ownership of the ROW with an obligation to pay certain profits to Defendants. Defendants have claimed the ROW is worth $10.4 million." Docket No. 205, at 13; Docket No. 321, at 22-23. The proposed order would take 60% of this value away from Express in favor of DMA, leading to a windfall.

d) Express has expended considerable time and money attempting to sell the ROW and working to clear title. This includes the lawsuit against the trespasser who claims title of the same easement and removed part of the Express Pipeline. Express has the right to be compensated for the costs of the lawsuit, the value of the lawsuit, and the cost of its work to develop or sell the ROW.

e) Wright has certain obligations to Express as its Manager. The proposed order directing Wright to transfer property belonging to Express will cause Wright to violate those obligations and duties.

f) The proposed order would void the Fourth Amended Reorganization Plan, with which Express agreed to comply (Docket No. 322 at 5) and supports the Final Judgment. The Plan secured the ROW buyer's property interest and protected Defendants' interest as follows: the value of Defendants' interests as determined on appeal or by this Court "attach solely to the proceeds or interest obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline." Docket No. 211 at 6-7 (Cause No. 20-50805).

Federal bankruptcy law is clear that the provisions of the Plan bind the creditor. 11 U.S.C. § 1327(a). Confirmation of the Plan is generally treated as res judicata as to any issues resolved or subject to resolution at the confirmation hearing.

    **d.    The requested relief with respect to the constructive trust would violate the Plan**

31.    Under 11 U.S.C. § 1141(b), "the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141. Further, 11 U.S.C. § 1141(c) provides that "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." *Id*. In the instant case, the Plan and Confirmation Order also revested property in the Debtor. 234-1, page 26, Article X, 10.02.

32.    Requiring the transfer of the ROW to DMA would override the Plan's vesting of property in the reorganized debtor and the specific treatment of claims and property interests.

33.    Further, requiring the transfer of the ROW would exceed scope of allowed creditor remedies under plan. The Plan provides (docket No. 211):

> DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns.

Docket No. 211.

34.    In other words, the Defendants' treatment is to be bound by the Final Judgment, not to be enriched.

    **C.    Objections to TUFTA**

        **a.    The Proposed TUFTA Action Is Not Attached to the Motion**

35. DMA alternatively seeks leave to file claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), but has failed to attach the proposed TUFTA action to its Motion.

36. Without the proposed TUFTA complaint, neither Wright nor this Court can properly analyze the claims DMA seeks to bring, the parties it seeks to name, or the relief it seeks to obtain.

37. This failure to provide the proposed pleading deprives Wright of a meaningful opportunity to respond to The Defendants' alternative request for relief.

  **b. The Motion Lacks Authority**

38. The Motion cites, at best, only tangentially relevant authority that would give this Court the authority to provide the Defendants leave to file an as-yet-undisclosed TUFTA action. The only authority cited are 28 U.S.C. §§ 1334, 157(b)(2)(H), and 157(c). Wright will refrain from engaging in a lengthy discussion of those US Code sections but, suffice it to say the only real connection is 28 U.S.C. § 157(b)(2)(H), which indicates that efforts to recover fraudulent conveyances are core jurisdiction. However, none of those citations are applicable for at least the following reasons.

39. First, the proposed action, a TUFTA action, does not arise under or title 11, so it could only be related to a case under 11. However, the bankruptcy case is closed and there is no bankruptcy estate because everything revested in the Debtor. Even assuming the Defendants assert the difficult to articulate argument that somehow because the transfer to Express was made after confirmation, the alleged fraudulent transfer was property of the bankruptcy estate, such argument would need to be rejected because: 1) the Plan was confirmed prior to that date and all property revested in the Debtor and no party has identified any mechanism by which post-confirmation and post-revestment property becomes property of the estate (*see, e.g,.* 11 U.S.C. § 541(a)(7) (only property acquired by the estate (as opposed to the Debtor generally) after commencement becomes

estate property)); and 2) the bankruptcy case was closed at the time of the alleged fraudulent transfer.

40. Second, section 157(b)(2)(H) is only relevant if this Court would be the forum for resolving such dispute. The Defendants have not pointed to a single case that would give this Court the authority or jurisdiction to open a new adversary proceeding against third parties to prosecute solely state law claims. Bankruptcy courts are courts of limited jurisdiction and that jurisdiction must have some relationship, ultimately, to a bankruptcy estate. Not everything can be crammed under some argument of "enforcing a judgement". The Plaintiffs and Defendants have a judgment that delineates their rights. The Defendants can attempt to collect on their judgment. Nothing in the judgment indicated that the Defendants could sue alleged fraudulent transferees (of which they knew during the pendency of the case).

41. Finally, the Defendants have not pointed to any authority that says TUFTA actions can be assigned directly to creditors in the manner they may be proposing (again, no copy of the proposed action is attached to the Motion).

### c. The Defendants' Interest is Already Protected

42. Finally, Wright notes that any fraudulent transfer action is moot or pointless because the Defendants' interest in the ROW, as determined by the Final Judgment, runs with the land. Accordingly, their interest is protected regardless of who the owner of the ROW is. Accordingly, they cannot have suffered any harm from the transfer to Express. Wright has continuously stated that he will pay the monetary judgment out of the monetization of Express's interest in the ROW and he stands by that position.

### D. Objection to Request for Sanctions

43. The request for sanctions is fundamentally flawed on numerous grounds. First, to the extent the request for sanctions pertains to pleadings or representations to this Court, Rule 9011 is quite clear that requests for sanctions ". . . *must* be made separately from any other motion or request, describe the specific conduct alleged to violate (b), and be served under Rule 7004." FRBP 9011(c)(2)(A). Second, such a request would also be tardy (FRBP 9011(c)(2)(B)).

44. Third, despite the lengthy paragraphs, the only specifically complained of conduct appears to be: a) that in February 2023, Wright transferred the ROW from KrisJenn to Express; b) Wright never transferred the property back to KrisJenn; and c) Wright allegedly evaded the U.S. Marshal's Service.

45. So, in short, the Defendants are asking this Court to sanction a party without filing a proper motion for conduct that is years old for no apparent reason other than that the Defendants are frustrated or angry. The Defendants then plainly suggest this Court has been unwilling to protect itself by saying "it is time for this Court to 'vindicate itself' by requiring Wright to pay for 'all attorneys' fees.'" *Motion*, at page 9.

46. Wright finds the suggestion that this Court needs to vindicate itself bizarre, especially considering that this Court has never provided any indication that it is unwilling to do so if it deems fit. Beyond that: a) no prior sanctions ruling has issued from this Court; b) the Defendants cannot point to a court order that was violated; and c) none of the cited cases support sanctions in a situation similar to the one at bar.

### III. ON SANCTIONS

47. Wright responded *supra* to the Defendants' requests for sanctions against Wright. Wright respectfully asserts that the Court may consider sanctions against the Defendants for various wasteful misconduct, including filing the Motion at bar in the first instance. Wright

acknowledges at the outset that this Objection is not a request under FRBP 9011. However, two facts may weigh in this Court's decision on the topic. First, the fact that the District Court has already ruled regarding the remedy the Defendants now seek from this Court may render the Defendants' Motion frivolous. Second, as will be discussed in more detail at the hearing, the Defendants have gone to great lengths to undermine Express's ability to monetize the ROW including, but not limited to supporting Westlake Chemical OPCO, L.P.s (the opposing party to Express in the Angelina County suit) positions in the state court case and supporting their efforts to condemn Express's interest.

48. The Defendants have spent a lot of time and effort "playing offense" and lobbing attacks, but their actions demonstrate that their only real desire is to wreak havoc and undermine Express's and the Plaintiffs' success even if it undermines their own interests.

49. With that, Wright will leave the issue of sanctions to this Court's good judgment.

### IV. CONCLUSION

For the foregoing reasons, Larry Wright requests this Court enter an order: 1) denying the Motion in its entirety; and 2) granting such other relief as the Court deems just and proper.

Dated: October 23, 2025

Respectfully Submitted,

**HAYWARD PLLC**

/s/ Charlie Shelton
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically via the court's CM/ECF system on October 23, 2025 thus effecting service on any parties requesting service thereby. The foregoing was also served via United States First Class Mail on October 23, 2025 on all persons listed below.

| | |
|---|---|
| Cobb & Johns PLLC<br>Attn: Christopher S. Johns, Michael C. Cotton<br>13341 West U.S. Highway 290, Building 2<br>Austin, TX 78737<br>Telephone: (512) 399-3150<br>Facsimile: (512 572-8005<br>chris@cobbjohns.com<br>michael@cobbjohns.com | Cleveland Krist PLLC<br>Attn: Timothy Cleveland & Austin H. Krist<br>303 Camp Croft Road, Suite 325<br>Austin, Texas 78746<br>Telephone: (512) 689-8698<br>tcleveland@clevelandkrist.com<br>akrist@clevelandkrist.com |
| Akerman LLP<br>Attn: Randall Adam Swick<br>500 W. 5th Street, Suite 1210<br>Austin TX 78701<br>Adam.swick@akerman.com | Langley & Banack<br>Attn: Natalie Wilson<br>745 East Mulberry Avenue, Suite 700<br>San Antonio, TX 78212<br>nwilson@langleybanack.com |
| JF DUKE AND ASSOCIATES<br>Attn: Jeffery Duke<br>11819 Great Oaks Drive<br>College Station, Texas 77494<br>jeff@jfduke.com<br><br>***Attorneys for Longbranch Energy, LP*** | BURNS & BLACK PLLC<br>Attn: Michael Black<br>750 Rittiman Road<br>San Antonio, Texas 78209<br>mblack@burnsandblack.com<br><br>***Attorneys for Longbranch Energy, LP*** |
| THE SMEBERG LAW FIRM, PLLC<br>Attn: Ronald J. Smeberg<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>***Counsel for Black Duck Properties, LLC*** | KrisJenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row<br>410 Spyglass Road<br>McQueeney, TX 78123 |
| Larry Wright<br>410 Spyglass Road<br>McQueeney, TX 78123 | United States Trustee's Office<br>P.O. Box 1539<br>San Antonio, TX 78295-1539 |

/s/ *Charlie Shelton*
Charlie Shelton