IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| KrisJenn Ranch, LLC, | § § | |
| *Debtor* | § § | Case No. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, et al., | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Adversary No. 20-05027 |
| DMA Properties, Inc.; and Longbranch Energy, LP, et al., | § § § § | |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| DMA Properties, Inc. and Longbranch Energy, LP, et al. | § § § | |
| *Counterplaintiffs,* | § § | |
| v. | § § | Adversary No. 20-05027 |
| KrisJenn Ranch, LLC; Larry Wright, et al., | § § § § | |
| *Counterdefendants.* | § § | |

**DMA'S MOTION TO STRIKE
WRIGHT'S MOTION TO DISMISS
OR, ALTERNATIVELY, DMA'S RESPONSE IN OPPOSITION**

1

On November 4, 2025, Wright filed a Motion to Dismiss DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy's (together, "DMA") Motion to Enforce Judgment, arguing that this Court lacks jurisdiction to enforce its own judgment. In the alternative, Wright asks the Court to stay consideration of DMA's motion for an indefinite amount of time until Express H2O's ongoing litigation with Westlake Chemical proceeds to final judgment and until any appeal in that case is completed. That could take years, and this Court has already rejected Wright's prior efforts to stay this litigation on that same basis.

What's more, the arguments that Wright has raised in his new motion are substantively identical to the arguments that he already raised in his response and "objection" to DMA's motion, which has already been fully briefed and argued to the Court. And Wright's new motion is just an attempt to re-argue those issues and submit further unauthorized briefing without leave of Court *after* the Court has already heard arguments on that motion. To the extent any new arguments are raised in Wright's new motion, Wright has waived them by failing to raise them in his original briefing submitted before the hearing. This Court should ignore Wright's attempt to recast his untimely arguments through a restyled motion. DMA therefore respectfully requests the Court strike Wright's duplicative, improper motion, deny his request to stay consideration of DMA's motion, and proceed to enforce its judgment.[1]

**BACKGROUND**

This motion is Larry Wright's latest attempt to avoid responsibility for his wrongdoing. After Wright sought to steal DMA's net-profits interests in a "right of way" ("ROW") in East Texas, DMA fought through four-and-a-half years of litigation to protect its interests in the ROW. Along the way, Wright has used every tool at his disposal

---

[1] DMA also incorporates by reference its Reply in Support of its Renewed Motion to Enforce Judgment [#521].

2

to avoid honoring the parties' agreements, and he continues to use every tool available—and reaches for tools that are not available—to avoid the bankruptcy court's judgment and orders.

For instance, in March 2023, Wright transferred the ROW out of KrisJenn—an entity before this tribunal—to Express H2O Pipeline and ROW, LLC ("Express H2O")—a new entity not included in the underlying bankruptcy proceedings before this Court—in direct violation of this Court's orders. After his fraudulent transfer was revealed, Wright (through counsel) originally promised to transfer the ROW back to KrisJenn. That promise remains unfulfilled.

In spring 2024, this Court entered judgment in favor of DMA on several claims, including finding that Wright had breached his fiduciary duty to DMA. This Court entered an order that gave Wright a choice: Wright could transfer the ROW back to KrisJenn, or DMA would receive a constructive trust on the ROW. Judgment After Remand [#329] at 2.

In January 2025, after Wright had refused to transfer the ROW back to KrisJenn or to any other party before the Court, DMA moved to enforce the constructive trust. DMA's Motion to Enforce Constructive Trust [#368]. This Court initially granted that motion, [#387], but later vacated its order, stating that it "does not wish to interfere with the appeal or the Judgment After Remand currently pending in the United States District Court." Order on Wright Mot. Vacate [#403] at 2.

On August 11, 2025, the District Court issued a final judgment on the appeal, affirming this Court's discretion to fashion the constructive trust awarded in the final judgment and fully resolving all appellate issues. The deadline to appeal the District Court's judgment has now passed. Thus, there is no longer any jurisdictional barrier to this Court enforcing its judgment, including ordering Wright to transfer the ROW to DMA pursuant to the constructive trust already in place and affirmed on appeal.

3

On October 2, 2025, DMA filed its Motion to Enforce Judgment, asking the Court to once again enforce the constructive trust. DMA's Motion to Enforce Judgment [#498]. On October 23, Wright filed a response and "objection" to DMA's motion. Wright Obj. [#513], to which DMA replied on October 29. DMA Reply Mot. Enforce Judgment [#521].

On October 29, 2025, this Court held a hearing on DMA's motion, as well as on Wright's numerous motions to quash (all of which were denied). After hearing arguments on DMA's motion from both DMA and Wright, this Court scheduled a second hearing for November 19, 2025, noting that the Court wanted additional time to review the voluminous record, including significant briefing, in this case.

The following week, Wright filed the instant motion to "dismiss" DMA's motion, doing no more than simply re-urging the same arguments it has already presented to the Court.

This Court should strike Wright's motion as an improper attempt to circumvent briefing limitations without leave of Court after DMA's motion has already been fully briefed and heard.

## ARGUMENT

DMA respectfully requests that the Court strike Wright's motion to dismiss and deny his request for a stay. First, the Court should strike Wright's Motion because it is duplicative of his Objection and is an improper vehicle to respond to DMA's Motion to Enforce Judgment. The Court should also strike or dismiss as waived any new arguments Wright failed to raise in his original Objection. In the alternative, if the Court declines to strike Wright's motion, the Court should deny it as unmeritorious for the same reasons raised in DMA's Motion to Enforce Judgment and Reply in Support [#498 and #521]. Finally, the Court should exercise its discretion and deny Wright's request for a stay of

DMA's motion because Wright has not demonstrated any hardship or inequity that would warrant a stay.

I. **The Court should strike Wright's new motion because it is a duplicative, improper response to DMA's motion to enforce judgment.**

DMA respectfully moves to strike Wright's motion as duplicative and improper. Wright's motion rehashes the same arguments Wright offered in his opposition to DMA's Renewed Motion to Enforce Judgment. *Cf.* FED. R. CIV. P. 12(g)(2) (prohibiting successive filings where the subsequent filing "rais[es] a defense or objection that was available to the party but omitted from its earlier motion"). Tellingly, Wright's successive motion fails to cite any authority under which the motion is brought—because there is none. Wright cannot abuse motions practice to relitigate issues already placed before this Court.

To the extent Wright's motion raises new arguments, those arguments are forfeited because Wright failed to assert them in his original Objection. *Cf. id.* This Court should not entertain Wright's attempt to recast these arguments through a separate motion. Allowing the motion to stand will provide Wright with a second bite at the apple for a motion that has already been fully briefed and argued to this Court.

II. **The Court should deny Wright's motion because the Court has jurisdiction over DMA's motion to enforce judgment.**

If the Court considers Wright's motion, it should deny the motion for the same reasons it should grant DMA's motion: (1) the Court has jurisdiction to enforce the constructive trust; (2) enforcing the constructive trust would effectuate, not modify, the final judgment; and (3) Wright's objections to the proposed TUFTA complaint (offered to this Court in the alternative) are baseless. *See* DMA Mot. Enforce Judgment [#498]; DMA Reply Mot. Enforce Judgment [#521]. Since Wright's own motion is duplicative of its arguments in response to DMA's pending Motion to Enforce Judgment, DMA incorporates by reference its Motion [#498] and its Reply in Support [#521].

5

### A. Wright, his entities, and the ROW remain subject to this Court's jurisdiction.

First, Wright argues that this Court lacks jurisdiction to enforce its Final Judgment. *See* Mot. Dismiss [#542] at 5–11. But "[i]t is axiomatic that federal courts possess inherent power to enforce [their] judgments." *Thomas v. Hughes*, 27 F.4th 363, 368 (5th Cir. 2022) (citation omitted). This Court has jurisdiction to enforce its orders, including those that Wright knowingly violated. Wright's flawed arguments do nothing to strip this Court of that inherent authority.

DMA's motion asks this Court to enforce its judgment—not modify it or relitigate it. This Court imposed a constructive trust "on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn." Opinion After Remand [#330] at 5; *see* Judgment After Remand [#329] at 2. Moreover, according to Wright's own testimony before this Court, his transfer of the ROW from KrisJenn to Express H2O was a fraudulent one. KrisJenn received no consideration for conveying the ROW to Express H2O (an entity that has the same ownership as KrisJenn), the ROW was KrisJenn's only asset and is now Express H2O's only asset, and the owners of Express H2O are Wright's immediate family members (after Wright transferred his own interest into a trust for his wife). Wright, by his own choice, refused to transfer ownership of the ROW back to KrisJenn, meaning DMA has a constructive trust over the ROW. Under Texas law, the remedy of a constructive trust necessarily requires that the ROW be transferred to the beneficiary of the constructive trust—here, DMA. The Court should enforce the constructive trust it ordered by transferring title of the ROW to DMA. *See* DMA Reply [#521] at 3–6 (discussing nature of constructive trust remedy and related cases).

In short, this Court ordered a constructive trust, which places an "obligation" on the constructive trustee "to turn the property over to the constructive beneficiary." BLACK'S LAW DICTIONARY (10th ed. 2014). Ordering the "constructive trustee" to turn

6

over the ROW to its beneficiaries (DMA) is simply enforcement, not modification, of the Court's final judgment. *See id.*

### B. Enforcing the constructive trust aligns with the Chapter 11 Plan.

Enforcement of this Court's judgment is entirely consistent with the Chapter 11 Plan. In opposition, Wright argues (without support) that enforcing the constructive trust would violate the Chapter 11 Plan, as the Plan "revested property in the reorganized debtor." Wright Mot. [#542] at 10; Wright Obj. [#513] at 11. This argument ignores the District Court's judgment on appeal, which the Plan was always subject to. *See* Plan [#211] at 7 (Cause No. 20-50805) (binding the parties to the appeal and final judgment). The District Court held that DMA and Longbranch collectively hold 40% of the net-profit interests in the ROW, and it held that these interests run with the land. Once the District Court made that determination and instructed this Court to consider a disgorgement remedy for Wright's breaches of fiduciary duty, this Court did not violate the Plan by ordering a constructive trust "in the event that Larry Wright and Express H2O fail to transfer the ROW back to KrisJenn, the reorganized debtor." Opinion After Remand [#330] at 4. Enforcing that order now will honor the Plan, not violate it.

### III. Wright's objections to the TUFTA complaint are baseless.

If the Court declines to enforce the constructive trust contained in its final judgment, it has jurisdiction to hear DMA's TUFTA complaint. Wright argues that this Court has no authority under 28 U.S.C. § 157(b)(2)(h) because the bankruptcy case is closed. *See* Motion [#542] at 11–13; Wright Obj. [#513] at 12–13. Indeed, Wright regularly repeats this refrain to avoid this Court's authority. But, as this Court knows, 11 U.S.C. § 350(b) provides that "[a] case may be reopened in the court in which such a case was closed to administer assets, to accord relief to the debtor, or for other cause." And the phrase "other cause" as used in § 350(b) "is a broad term which gives the bankruptcy

7

court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown." *In re Case*, 937 F.2d 1014 (5th Cir. 1991).

This Court has jurisdiction to hear DMA's TUFTA Complaint under 28 U.S.C. § 157 because the TUFTA action is inherently "related to" the bankruptcy proceeding. *See In re Drs. Hosp. 1997, L.P.*, 351 B.R. 813, 836 (Bankr. S.D. Tex. 2006).[2] In his motion, Wright, for the first time, cites two cases—*In re Heritage Org.* and *In re Craig's Stores*—in support of his argument that this Court lacks post-confirmation jurisdiction.[3] *Compare* Motion [#542] at 11–13, *with* Wright's Objection to DMA's Motion [#513] at 12–13.

Even if these new citations were timely provided, they are inapposite. In both cases, the court held it lacked jurisdiction over appellant's TUFTA claims because "no facts or law deriving from the reorganization [would] determine the dispute." *In re The Heritage Org.*, 454 B.R. 353, 366 (Bankr. N.D. Tex. 2011); *In re Craig's Stores*, 266 F.3d 391 (same). And in *Heritage*, the trustee had asserted rights of entities that were not part of the bankruptcy case at all. 454 B.R. at 366. Here, in contrast, DMA was part of the bankruptcy proceedings, the Chapter 11 Plan was subject to its claims, and the proposed TUFTA action involves facts and law arising from the Chapter 11 Plan, as the transfer was unlawful in part because it violated the Plan. *See In re Case*, 937 F.2d at 1017 (explaining that jurisdiction existed because the disputed note was part of the reorganization plan).

DMA's proposed TUFTA petition stems directly from the bankruptcy proceedings before this Court. The only way to describe Wright's fraudulent transfer—done in violation of this Court's order—is inherently "related to" these proceedings. This Court has jurisdiction.

---

[2] *See also* DMA Reply Mot. Enforce Judgment [#521] at 6–7 (describing test to evaluate "related to" post-confirmation jurisdiction). As further explained in DMA's Reply, under the applicable standard, DMA's proposed TUFTA action is "related to" the bankruptcy proceedings.

[3] *In re The Heritage Org.*, 454 B.R. 353, 366 (Bankr. N.D. Tex. 2011); *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001).

### IV. The Court should deny Wright's request to stay consideration of DMA's motion.

In the alternative, Wright asks the Court to exercise its discretion to stay consideration of DMA's motion pending resolution of a different proceeding involving Express H2O—the entity that, because of Wright's fraudulent transfer, currently has legal ownership of the ROW. The Court should decline to issue a discretionary stay both because Wright comes to the Court with unclean hands and because he has not shown that he will suffer hardship or inequity if the Court moves forward with its ruling on DMA's motion. Indeed, it is DMA who will be unduly harmed by a stay.

Although courts have discretion to stay proceedings "in the interest of justice and in control of their dockets . . . such control is not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). As "the party seeking a stay[, Wright] bears the burden of justifying a delay tagged to another proceeding" and to "make out a clear case of hardship or inequity in being required to go forward." *Id.* (quoting Landis v. North American Co., 299 U.S. 248, 254–55 (1936)). Here, Wright has not argued, let alone shown, that he is likely to suffer any hardship or inequity if these proceedings move forward.

Wright briefly argues that a stay is necessary to protect *Express H2O's* property interests and determine if it can be joined, since the company is not a party to this case and has not received notice of these proceedings. But Wright's due-process argument betrays Wright's position and only further demonstrates the duplicity of Wright's attempts to hide the ROW behind Express H2O.

First, the irony of *Wright* raising an argument on behalf of *Express H2O*, arguing that *Express H2O* has not received notice of these proceedings, cannot be lost on this Court. Wright simultaneously reveals that there is no daylight between him and the façade that is Express H2O, while also raising a due-process argument. Wright has no standing to make this argument in his personal capacity. *See also* DMA Reply Mot. Enforce

9

Judgment [#521] at 4–6 (addressing Wright's objection regarding due process). And even if he did, Wright would need to show that *he*—Wright, the person who moved for relief—would personally experience a hardship or inequity if this case were not stayed. Wright has offered no law or facts to support any such conclusion.

Second, if it was not already clear, Express H2O *has* received proper notice of these proceedings. As DMA explained in its reply, Wright is the founder and manager of Express H2O. Under Texas law, an entity "can act and acquire knowledge only through its agents." *Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex. App.—Austin 1998, pet. denied). And the "only way to communicate actual notice to a corporation is through its agents." *Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 270 (5th Cir. 1981) (internal quotation omitted). Since its inception, Express H2O, through Wright (who is represented by the same counsel as Express H2O), has had actual notice of these proceedings and has had the opportunity to intervene and present its arguments. But it has chosen not to do so. Wright and Express H2O cannot have it both ways—claiming that Express H2O is not before this Court, yet using Wright to assert Express H2O's interest and halt these proceedings.

Finally, it is DMA, not Wright or Express H2O, that is likely to be prejudiced if a stay is issued. DMA has consistently tried to enforce this Court's judgment since 2024, only for Wright to use deception, delay tactics, and diversions to evade accountability. For example, Wright has (1) refused to transfer the ROW back to KrisJenn despite assuring the Court that he would do so; (2) filed numerous motions to undermine and undo the Court's judgment; (2) refused to respond to discovery requests; and, most recently, (3) sought a writ of mandamus against this Court's discovery rulings to avoid disclosing information regarding his relationship to Express H2O, the entity to which Wright transferred the ROW in violation of the Confirmation Plan. Given this context, DMA will be harmed if a stay is issued because a stay would further delay DMA's ability to protect the property interests the Court awarded it in its final judgment.

Moreover, further delay risks jeopardizing DMA's ability to eventually enforce the judgment against Wright and KrisJenn. KrisJenn is a supposedly defunct entity (according to Wright) that improperly and fraudulently transferred its only asset (the ROW) to a Express H2O, yet Wright is currently engaged in an ongoing litigation that poses a substantial risk to DMA's net-profits interest in the ROW. Indeed, at his deposition, and before Wright's counsel instructed him not to answer further, Wright revealed that he has created a plan for the future of the ROW, related to the ongoing state-court litigation. To date, and due to Wright's express evasion, DMA does not know the details of this plan, but it has every reason to believe it is designed to wipe out DMA's and Longbranch's collective 40% interests in the ROW. In short, DMA would be substantially harmed by a stay, and because Wright has not shown otherwise, the Court should deny Wright's motion to stay.

## CONCLUSION

DMA respectfully requests that the Court strike Wright's Motion to Dismiss DMA's Motion to Enforce Judgment and Motion to Stay Consideration of DMA's Motion. In the alternative, DMA respectfully requests that the Court deny Wright's Motion for the reasons stated here and in DMA's Motion to Enforce Judgment and Reply in Support [#498, #521].

Respectfully submitted,

*/s/ Christopher Johns*
Christopher S. Johns
State Bar No. 24044849
COBB & JOHNS PLLC
13341 West U.S. Highway 290
Building 2
Austin, TX 78737
512-399-3150
chris@cobbjohns.com

*/s/ Timothy Cleveland*
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
Lourdes Ortiz
State Bar. No 24134904
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

*Attorneys for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2025, a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Charlie Shelton<br>Hayward PLLC<br>7600 Burnet Road, Suite 530<br>Austin, TX 78757<br>(737) 881-7100<br>cshelton@haywardfirm.com<br><br>*Counsel for Larry Wright, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC—Series Uvalde Ranch, KrisJenn Ranch, LLC—Series Pipeline Row* | James Rose<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, TX 78701<br>james.rose@usdoj.gov<br><br>*United States Trustee* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>JF DUKE AND ASSOCIATES<br>11819 Great Oaks Drive<br>College Station, TX 77494<br>jeff@jfduke.com<br><br>*Counsel for Longbranch Energy, LP* |

                                          */s/ Lourdes Ortiz*
                                          Lourdes Ortiz