**Exhibit**

**P-10**

exhibitsticker.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND
KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S FOURTH AMENDED
SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

**ARTICLE I
SUMMARY AND SUBSTANTIVE CONSOLIDATION**

1.01 Summary

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline right**s.**

This Plan generally differs from the Third Amended Plan in that it further clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement.  See the redlined plan attached to the Fourth Amended Disclosure Statement for additional Changes.

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date.  The Debtors may prepay these

**P10-0001**

claims in full in the Debtors' business judgment.  Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid in full on the effective date.

Debtors shall pay allowed general unsecured claims in full on the effective date.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all generally disallowed pursuant to the adversary case order in 20-05027 subject to the pending appeal as provided for below.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation

The Plan substantially consolidates the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC.  The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC.  As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect.  Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

2

**P10-0002**

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC.   KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02. Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03. Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## AND PRIORITY TAX CLAIMS

3.01.    Professional Fees and U.S. Trustee Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment.  These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may

3

**P10-0003**

not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

3.02.    Government Claims.

3.02.1.    Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims.   If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2.    Secured Taxing Authority Claims

a.  Uvalde County Tax Office.  The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805.  However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim was previously paid in conjunction with sale of the Ranch.  To the extent any amount remains, it will be paid on the Effective Date.  Uvalde County Tax Office shall retain all its liens until paid.

c.  Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation.  Nacogdoches County shall

4

P10-0004

retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d.   Angelina County filed a claim for $2536.82  in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid.   This claim shall be paid in full on the Effective Date.

e.   Shelby County filed a claim for $357.88 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row.   The claim shall be paid in full on the Effective Date.  Shelby County shall retain all its liens until paid.

f.  Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date.  Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full.   Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors.  Each separate payment which will be applied pro rata to the various tax accounts indicated above.   In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time.  The Debtors shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan.  The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full.   Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors with a period of fifteen (15) days to cure the default.  In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  Additionally, the failure to timely pay

5

P10-0005

post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default.  A Debtors shall be entitled to no more than three (3) Notices of Default.  In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

### Class 1 Claims:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103.  The majority of this claim was satisfied upon sale of the Ranch.  Debtor has agreed to settle this claim for $385,000[1].   The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.

Mcleod will vote on the plans as an impaired creditor.

### Class 2 Claims:

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA").  Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85.  The DMA claim in class 2 shall be paid on the Effective Date.  DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

### Class 3 Claims:

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch").  Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal.  As a result, these

---

[1] Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

6

P10-0006

claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding.  Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan.  DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order.  The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns.  For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline.  The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to  reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court.  Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 3 is unimpaired and does not vote on the plans.

**P10-0007**

**Class 4 Claims:**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch").  Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal.  As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding.  This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order.  The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns.  For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline.  The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to  reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court.  Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

P10-0008

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 4 is unimpaired and does not vote on the plans.

### Class 5 Claims:

Class 5 is the impaired general unsecured creditor claims.  This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945.  The Class 5 claims shall be paid their allowed claim within 120 days of the effective date without interest.  Cedillo shall vote on the plan.

### Class 6 Claims:

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less.  These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases.  The claimants are as follows:

1. C & W Fuels  -  $1.00

2. Granstaff Gaedke & Edgmon PC   -  $1.00

3. Hopper's Soft Water Service  -  $100.00

4. Medina Electric  -  $1.00

5. Texas Farm Store  -  $1.00

6. Uvalco Supply  -  $1.00

The Class 6 claims shall be paid in full on the Effective Date.  They are unimpaired and shall not vote on the plan.

### Class 7 Claims:

Class 7 claim is the general unsecured claim of insider Larry Wright.  This claim was scheduled in Case 20-50805 in the amount of $648,209.  Additionally, Larry Wright loaned $129,446 to the Company.  Finally, Larry Wright contributed 165 acres of mineral rights valued at $1000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod.  The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class

P10-0009

5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the Disclosure Statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

10

**P10-0010**

(a) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date

(b) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(c) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(d) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim

(f) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(g) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(h) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(i) enforce all orders, judgments, injunctions, releases, exculpations, and rulings entered in connection with the Chapter 11 Cases;

(j) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (k) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

P10-0011

(k) enter a final decree closing the Chapter 11 Case.

<u>Interests Retained by the Debtors</u>

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors.  Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below.  Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    <u>Continued Corporate Existence.</u>  The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02    <u>Advance Payment of Claims.</u>  Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

P10-0012

7.03    Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, and then sale of the Thunder Rock Holdings.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1    Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2    Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4    Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date

13

**P10-0013**

8.01.5    Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6    Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7    Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8    Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9    Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10    Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11    Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12    Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13    Creditor shall mean any entity holding a Claim.

8.01.14    Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15    Disbursing Agent shall mean KrisJenn Ranch, LLC.

8.01.16    Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

14

**P10-0014**

8.01.17 Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18 Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19 Effective Date shall mean fifteen (15) days after entry of a Final Order confirming Debtors' plan of reorganization.

8.01.20 Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21 Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22 Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23 Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24 General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25 Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26 Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27 Insider has the definition ascribed to it under the Bankruptcy Code.

15

**P10-0015**

8.01.28  Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29  Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit.  The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit.  Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30  Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31  Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32  Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33  Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34  Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35  Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37  Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38  Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39  Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

P10-0016

8.01.40 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A.** **No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B.** **Affiliate Injunction. A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have

17

**P10-0017**

held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest.  Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code.  A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant

18

P10-0018

against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

**ARTICLE X**
**OTHER PROVISIONS**

**DEFAULT**

10.01. Default.  Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year.  On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

10.02. Vesting of Estate Property and Effect of Default.  On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan.  If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

19

**P10-0019**

Respectfully submitted,

BY: /s/ Larry Wright
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

THE SMEBERG LAW FIRM, PLLC

BY:/s/ Ronald J. Smeberg
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

20