**Exhibit**

**P-5**

exhibitsticker.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re*: | § | |
| | § | CHAPTER 11 |
| KrisJenn Ranch, LLC, | § | |
| | § | |
| *Debtor* | § | CASE NO. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | ADVERSARY NO. 20-05027 |
| DMA Properties, Inc.; and Longbranch Energy, LP, et al., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

| | | |
|---|---|---|
| DMA Properties, Inc. and Longbranch Energy, LP, et al. | § | |
| | § | |
| *Counterplaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | ADVERSARY NO. 20-05027 |
| KrisJenn Ranch, LLC; Larry Wright, et al., | § | |
| | § | |
| *Counterdefendants.* | § | |

## DMA AND LONGBRANCH'S BRIEFING ON REMEDIES

1

**P5-0001**

This case concerns the parties' respective interests in a pipeline right-of-way located in East Texas. In 2016, Daniel Moore and Darin Borders acquired the rights to purchase the right-of-way. When Defendant Larry Wright learned about the opportunity, he told Moore and Borders—who had spent countless hours developing the ROW opportunity and securing the right to purchase it—that he was rich and that he would fund the purchase of the right-of-way until a prospective buyer or developer could be located. Based on those representations, Moore and Borders let Wright participate in the deal. After Wright got a foothold in the deal, he engaged in a years-long campaign to steal Moore and Borders's interests in the right-of-way, ultimately leading to this lawsuit.

Following a bench trial, this Court concluded that the interests of Moore's entity (DMA Properties) and Borders's entity (Longbranch Energy) in the pipeline right-of-way were personal covenants that were wiped out when Wright transferred the right-of-way to KrisJenn. While the Court concluded that Wright breached fiduciary duties owed to Moore in connection with the transfer, the Court denied Moore and DMA's claims for breach of fiduciary duty (against Wright) and knowing participation in breach of fiduciary duty (against Wright's entities), reasoning that Moore and DMA could not prove any damages if their interests in the right-of-way were personal covenants wiped out when the right-of-way was transferred. Finally, the Court denied DMA, Moore, and Longbranch's claims for breach of contract on the grounds that Wright could not have breached the agreements (by failing to recognize Moore's and Border's interests) if those interests were personal covenants wiped out by the transfer of the right-of-way. DMA and Longbranch appealed.

P5-0002

On March 14, 2023, the district court reversed, concluding that DMA's and Longbranch's net-profits interests are real covenants that attach and run with the land. District Ct. Op. [#40] at 31. The district court remanded for entry of judgment in favor of DMA and Longbranch with respect to their net-profits interests. The district court also remanded for further proceedings regarding damages and equitable remedies (including disgorgement) available on their other claims. *Id.* at 37.

DMA and Longbranch now file the following briefing on remedies in the wake of the district court's ruling upholding the net-profits interests in the right-of-way. As explained below, DMA and Longbranch seek (1) disgorgement and imposition of a constructive trust with respect to Wright's direct and indirect interests in the right-of-way and any proceeds received by Wright from the same; (2) in the alternative to those remedies, damages resulting from Wright and KrisJenn's actions with respect to DMA's and Longbranch's interests in the right-of-way; and (3) attorneys' fees in connection with Moore's claim for breach of contract against Wright in light of Wright's breaches of his Email Agreement with Moore.

## BACKGROUND

**A.    Moore and Borders secure the option to purchase the right-of-way.**

In 2015, Darin Borders told Daniel Moore about a potentially lucrative right-of-way in East Texas. Borders's entity (Longbranch) secured the right to purchase the right-of-way (hereinafter, the "ROW"), and Moore and Borders paid $25,000 in earnest money to the pipeline's owner, Express Pipeline Connection. Transcript [#226] at 260; Transcript [#229] at 175; Transcript [#226] at 260. On February 19, 2016, Longbranch

**P5-0003**

and Express memorialized Longbranch's right to purchase the right-of-way in writing. Transcript [#226] at 260, Transcript [#229] at 29-30; *see also* DX6.

**B.      Wright offers to fund the purchase of the right-of-way.**

When Larry Wright learned about the opportunity, he told Moore and Borders—who had spent countless hours developing the ROW opportunity and securing the right to purchase it—that he was rich and that he would fund the purchase of the right-of-way, for years if necessary, until a prospective buyer or developer could be located. *See, e.g.*, Transcript [#228] at 94. Borders and Moore agreed to include Wright on the deal, and Borders agreed to assign the Purchase Agreement from Longbranch to Moore and Wright's jointly owned entity, Black Duck Properties, LLC.[1] Transcript [#227] at 119, Transcript [#229] at 31, 175. In exchange, Wright and Moore agreed on behalf of Black Duck that Longbranch thereby received a 20% net-profits share that attached and ran with the ROW. Transcript [#226] at 225-256, Transcript [#229] at 34-35. Longbranch and Black Duck confirmed their agreement in writing through the Longbranch Assignment. DX1.

**C.      Breaching fiduciary duties, Wright gets the money to buy the ROW by breaching his fiduciary duties, encumbering the ROW with an unauthorized loan from one of his entities.**

Black Duck closed on the ROW on August 14, 2017. DX11; Transcript [#225] at 145. At all times before closing, Wright represented to Moore and Borders that he was a wealthy man and could easily fund the purchase of the ROW using his own funds. *See,*

---

[1] Moore owned 50% of Black Duck through SCMED Oilfield Consulting, LLC, and Wright owned 50% through KrisJenn Ranch, LLC. DX5; DX28.

P5-0004

*e.g.*, Transcript [#228] at 94. This was not true. Wright did not have the wealth that he claimed or that was needed to hold the ROW while it was being developed. Transcript [#228] at 103. To the contrary, Wright borrowed $4.1 million through his own entity (KrisJenn) to close the purchase of the ROW with a loan secured by a first lien deed of trust on his ranch and certain minerals in Webb County, Texas. DX11; DX26; DX27.

Wright also represented that his capital contribution was to be his consideration for his interest in the ROW. Transcript [#227] at 39; Transcript [#229] at 114. But attempting to wash himself free of Longbranch's and DMA's interest agreements, Wright later claimed that the capital contribution was a loan from KrisJenn to Black Duck. Transcript [#226] at 190. The "loan documents" purport to evidence a promissory note and deed of trust reflecting a loan transaction that was consummated August 14, 2017. DX11; DX10; DX26; DX27; DX37. Yet those loan documents—involving an undisclosed wrap-around deed of trust using the ROW as collateral—were not executed or notarized until January 18, 2018, around when Wright began insisting that Moore resign from Black Duck. PX46; DX36; PX45; PX48; PX44.

During the bench trial, this Court found that Wright's alleged loan was neither disclosed to nor authorized by Moore, who was a manager of Black and whose entity owned 50% of Black Duck. Transcript [#229] at 60. Black Duck's company agreement required the agreement of all managers to encumber Black Duck's assets without a special resolution and required transactions to be approved by disinterested management. *See* DX5 at 10, 19-20, 23.

P5-0005

If Moore had known that Wright was setting himself up to be a creditor that could foreclose on the ROW, Moore would not have approved the transaction for Black Duck to buy the ROW, nor would he have later withdrawn as a manager and 50% owner of Black Duck. Transcript [#229] at 57. And as this Court found after the bench trial, it was through Wright's breach of fiduciary duty that Wright and his jointly owned entity Black Duck obtained the money to close on the ROW, with Wright's entity KrisJenn Ranch holding a secret wrap-around deed of trust on it as a creditor. DX11.

**D.      Unaware of Wright's breaches of fiduciary duties, Moore agrees to withdraw from Black Duck in exchange for a 20% net-profits interest in the right-of-way and other consideration.**

Not long after Black Duck closed on the ROW, Wright grew inexplicably hostile towards Moore and began to pressure Moore to give up his 50% interest in Black Duck. Transcript [#229] at 91.

We now know why Wright wanted Moore to give up his interest: Wright had secretly found a buyer to develop the ROW, and he had wrongfully set up the wrap-around deed of trust so that he could attempt to take the ROW for himself if Borders and Moore refused to reduce their interests for the secret deal that Wright was working on. PX46; DX36; PX45; PX48; PX44; Transcript [#228] at 85-86, Opinion [#236] at 6-7.

After several phone conversations, Moore relented to Wright's demands that he resign. On February 3, 2018, Moore drafted an email with the terms of his resignation from Black Duck that he and Wright had orally agreed to. DX3. In exchange for relinquishing his 50% interest in Black Duck—which included 50% interest in all of Black Duck's assets such as the ROW—Moore would receive, among other things, "[n]o less

P5-0006

than 20% Carried Interest in the P-21 Express Pipeline . . . under the same terms and conditions as the [Longbranch Assignment]" through his entity DMA Properties. DX3; *see also* DX2. On February 4, 2018, Wright agreed to Moore's terms via email. DX2 ("Email Agreement"). Moore and Wright subsequently executed the DMA Agreement, which memorialized the terms of Moore's withdrawal from Black Duck and provided that Moore's entity (DMA) would receive a 20% net profits interest in the ROW. DX2.

Also part of Moore's resignation deal, Wright executed the Harris SWD Agreement, which entitled DMA to receive 50% of the Bigfoot Note payments on a saltwater disposal well. *Id.* Wright failed to give DMA its share of the payments and instead assigned the Bigfoot Note to KrisJenn in an attempt to keep all of the note payments for himself. DX8 at 1; Opinion [#236] at 10.

### E.    Wright immediately sells the right-of-way.

Two days after the documents memorializing Moore's resignation were drawn up, Wright executed plans to sell the ROW to John Terrill through an entity that Terrill planned to form together with a high-net-worth individual from North Texas (TCRG). Terrill's commitment to buy "the East Texas ROW (also known as the Express Gas Pipeline)" is dated February 9, 2018. DX22 (Letter of Intent). According to the letter of intent, Terrill agreed to purchase Black Duck's ROW for $2.5 million, with Black Duck retaining a 16% carried interest in a future waterline. *Id.* As Terrill later declared under oath, he and Wright had been working on this deal since December 2017—well before Wright pushed Moore out of Black Duck. Transcript [#226] at 210.

**P5-0007**

**F.      Moore and Borders begin to uncover Wright's schemes.**

When Moore and Borders learned about the deal with TCRG and asked Wright what was going on, Wright said that Terrill knew all about Longbranch's and DMA's interests and even had copies of their agreements. Transcript [#229] at 126–27. But when Moore and Borders reached out to Terrill, Terrill told a different story: Wright had not disclosed the previously assigned interests, and Terrill and TCRD did not intend to honor them. Transcript [#227] at 22, Transcript [#229] at 129-130. If Moore had known or suspected that Wright had crafted a scheme to sell the ROW and claim that Moore only had an interest in Black Duck's profits, Moore would not have agreed to resign from Black Duck and worsen his position by giving up his right to 50% of Black Duck's assets merely for 20% of Black Duck's profits from the sale of the ROW. Transcript [#228] at 63.

**G.      Wright threatens to "kill the 20% each of you own."**

Despite realizing that Wright had wrongfully set them up, Moore and Borders continued to seek an amicable solution with TCRG, Wright, and Wright's entities. Transcript [#228] at 79-80; Transcript [#227] at 222. Wright was not so inclined. In the spring of 2019, Wright emailed Moore and Borders that if Moore did not stop his conversations with TCRG, then Wright would "end the 20%" and "kill the 20% each of you own." DX45.

**H.      After TCRG forces Wright to rescind the sale, Wright arranges a new deal with an unsuspecting buyer.**

TCRG forced Wright to rescind the sale of the ROW because of Wright's misrepresentations. Transcript [#226] at 36. Wright responded by borrowing $5.9 million

**P5-0008**

from the Dallas-based McLeod family to pay back the $2.5 million he owed TCRG. *See* Transcript [#28-33] at 2-14. As collateral for the loan, Wright pledged his ranch, some mineral interests, and all interests in the pipeline ROW, while also conveying an option for the McLeods to step in as owner of the ROW.

**I.  After a bench trial, this Court held that Wright owed and breached fiduciary duties to Moore and his entity—but that DMA and Longbranch's interests in the ROW were personal covenants extinguished by transfer and bankruptcy and that their other claims failed as a result.**

In March 2021, this Court entered an opinion concluding that DMA's and Longbranch's net-profits interests were personal covenants that were wiped out when Wright transferred the right-of-way to KrisJenn. Opinion [#236] at 28.

With respect to Moore and DMA's claims for breach of fiduciary duty, the Court concluded that Wright "does not dispute that he owed fiduciary duties" to Moore and SCMED (one of Moore's entities)[2] in connection with Black Duck. Opinion [#236] at 24. The Court also found that Wright owed "at least" informal fiduciary duties to Moore. *Id.* And the Court found that Wright breached those fiduciary duties by "enter[ing] into an ultra vires and conflicted loan transaction without Moore's required consent." *Id.* at 27. But the Court ultimately denied Moore's claim for breach of fiduciary duty claim on the grounds that Moore could not prove he was entitled to damages unless his net-profits interests survived the transfer of the right-of-way to KrisJenn and KrisJenn's bankruptcy. *Id.*

---

[2] SCMED assigned all claims related to the transaction to Moore. DX13.

**P5-0009**

Finally, the Court denied Longbranch's claim for breach of contract (based on the Longbranch Assignment) as well as DMA's and Moore's claims for breach of contract (based on the Email Agreement and DMA Agreement). Those claims asserted that Wright breached those agreements by denying and refusing to recognize the validity of DMA and Longbranch's net-profits interests in the right-of-way. The Court held those claims failed because the net-profits interests "are personal covenants" that were extinguished by the transfer of the right-of-way to KrisJenn.

**J.     The district court reversed, holding that the net-profits interests are real covenants, and then remanded for further consideration of remedies.**

On March 14, 2023, the district court reversed and concluded that DMA's and Longbranch's net-profits interests are real covenants that attach and run with the land. District Ct. Op. [#40] at 31. With respect to that issue, the district court remanded "for entry of judgment" in favor of DMA and Longbranch. *Id.* at 31.

The district court also remanded for consideration of remedies on DMA's, Moore's, and Longbranch's other claims. *Id.* at 33–35. Previously, this Court had concluded that no remedies were available on those claims if the net-profits interests were personal covenants that were extinguished by the transfer of the right-of-way to KrisJenn. But the district court concluded the net-profits interests were *not* extinguished and instructed the Bankruptcy Court to "consider the damages model presented to it" with respect to DMA's and Moore's claims for breach of fiduciary duty (against Wright) and knowing participation (against Wright's entities). *Id.* Also important, the district court recognized that DMA and Moore did not need to prove damages to recover on those claims, because Texas law allows plaintiffs to seek disgorgement, fee forfeiture, and other

P5-0010

gain-based and equitable remedies (in place of or in addition to damages) with respect to claims involving fiduciaries. *Id.* at 34.

**K.** **Wright violates this Court's order and abruptly transfers the right-of-way from KrisJenn to another entity that he controls.**

One other issue bears mentioning. When this Court confirmed KrisJenn's reorganization plan, it ordered KrisJenn to provide DMA and Longbranch with notice of any contemplated transactions with respect to the right-of-way at least 30 days before closing on any transaction. *See* Plan [#211] at 7. The Court mandated that KrisJenn provide such notice so that DMA and Longbranch would have an opportunity to "timely file any concerns they have regarding the transfer . . . and request expedited consideration prior to closing." *Id.* The Court further instructed that KrisJenn "postpone" any closing until any objections by DMA and Longbranch could by heard by the Court. *Id.*

On February 23, KrisJenn violated the Court's order by transferring the entire right-of-way to Express H2O Pipeline & ROW, LLC ("Express H2O") without providing any prior notice or warning to DMA, Longbranch, or this Court. Ex. A (Deed to Express H2O). Like KrisJenn, Express H2O is owned and controlled by Wright. *Id.* at 1. The apparent purpose of the transfer was to frustrate any potential judgment against KrisJenn entered by the district court or this Court—just as Wright previously attempted to transfer the ROW from Black Duck to KrisJenn in an attempt to wipe out DMA's and Longbranch's interests in the ROW.

P5-0011

## ARGUMENT

**I.** **Moore and DMA are entitled to disgorgement and imposition of a constructive trust on Wright's interests in the right-of-way.**

**A.** **Moore and DMA have established that Wright and his entities obtained control of the ROW through breaches of fiduciary duties.**

To prevail on a breach-of-fiduciary-duty claim, a plaintiff must establish (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached the fiduciary duty; and (3) the breach resulted in jury to the plaintiff or benefit to the defendant. *D'Onofrio v. Vacations Publ'ns, Inc.*, 888 F.3d 197, 215–16 (5th Cir. 2018). If a fiduciary relationship exists and the defendant has benefited from self-dealing, the defendant bears the burden to show that all material facts were disclosed to plaintiff and to establish the transaction was fair. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000).

When a defendant has received wrongful gains in connection with a fiduciary breach, Texas courts award equitable remedies, including disgorgement and imposition of a constructive trust, in addition to or in lieu of damages. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). Here, DMA and Moore seek disgorgement and imposition of a constructive trust with respect to Wright's interests in the right-of-way—whether held directly or indirectly through one of his entities—as well as a constructive trust with respect to any proceeds generated by any sale or transaction involving the right-of-way.

The Court has already recognized that "at least" an informal fiduciary relationship existed between Wright and Moore. Opinion [#236] at 25. Wright also owed fiduciary duties to Moore in connection with Black Duck—and, as the Court has

P5-0012

recognized, Wright did not dispute owing such fiduciary duties during the bench trial. *Id.* at 25. The fiduciary duties owed by Wright included duties of loyalty, duties of disclosure, and duties to refrain from self-dealing with connection with Moore and Wright's interests in the right-of-way and in Black Duck. *See, e.g.*, *Wolf v. Ramirez*, 622 S.W.3d 126, 142 (Tex. App.—El Paso 2020, no pet.) ("Generally, fiduciaries owe the following duties to their principals: the duty of loyalty and utmost good faith; duty of candor; duty to refrain from self-dealing; duty to act with integrity; duty of fair, honest dealing; and the duty of full disclosure." (citations omitted)).

The Court has also already recognized that Wright breached the fiduciary duties he owed to Moore. Opinion [#236] at 25–26. Specifically, the Court found that Wright breached those duties by "enter[ing] into an ultra vires and conflicted loan transaction without Moore's required consent." *Id.* at 27. Wright subsequently used that loan transaction to "foreclose" on the unapproved loan and transfer the right-of-way to KrisJenn in an attempt to wipe out DMA and Longbranch's net-profits interests in the right-of-way.

Wright also breached his fiduciary duties in myriad other ways detailed during the bench trial, including by (a) failing to disclose the loan and wrap-around deed of trust to Moore in the first place; (b) failing to disclose the sale discussions with TCRG that were ongoing at the same time that Wright was pressuring Moore to resign from Black Duck; and (c) "foreclosing" on the fraudulent loan and transferring the right-of-way to KrisJenn in an attempt to disregard Moore and Border's interests in the ROW. *See infra* Section I.C. DMA and Moore also ask that the Court conclude that KrisJenn is liable for knowing

P5-0013

participation in Wright's breaches of fiduciary duty because there is no dispute that Wright controlled KrisJenn and used KrisJenn to carry out his breaches of fiduciary duty. *See* District Ct. Op. [#236] at 40 (remanding for consideration of knowing participation claims against Wright's entities).

### B. Moore and DMA are entitled to imposition of a constructive trust upon the ROW and/or to disgorgement and forfeiture of Wright and his entities' interest in the ROW.

Imposition of a constructive trust, disgorgement, and forfeiture are gain-based remedies available under Texas law when a defendant has breached fiduciary duties through self-dealing for his own benefit. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 872–74 (Tex. 2010) ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty.").

Courts applying Texas law possess equitable jurisdiction "to reach the property in the hands of a wrongdoer whenever legal title to property has been obtained through fraud, misrepresentations, concealments, or under similar circumstances that render it unconscionable for the holder of legal title to retain the interest." *In re Estate of Wallis*, No. 12-07-00022-CV, 2010 WL 1987514, at *3 (Tex. App.—Tyler May 19, 2010, no pet.); *Pope v. Garrett*, 211 S.W.2d 559, 561 (Tex. 1948) ("[E]quity deals with the holder of the legal title for the wrong done . . . and impresses a trust on the property in favor of the one who is in good conscience entitled to it."); *Eglin v. Schober*, 759 S.W.2d 950, 958 (Tex. App.—Beaumont 1988, writ denied) ("[T]he really important circumstance from which

14

P5-0014

the law will raise a constructive trust is the breach of a confidential relationship and . . . a partnership or joint venture is such a confidential relationship.").

The purpose of such remedies is not to compensate the injured party, but rather to safeguard fiduciary relationships by discouraging disloyalty and self-dealing in fiduciary relationships. *See ERI*, 318 S.W.3d at 872–74 ("[A] fiduciary may be punished for breaching his duty. . . . The main purpose of forfeiture is not to compensate an injured principal . . . [but] to protect the relationship of trust . . . ." (citation omitted)).

As the Texas Supreme Court explained in *Swinnea*, these "principles apply to circumstances where a fiduciary takes advantage of his position of trust to induce a principal to enter a contract," because such remedies are "necessary to prevent such abuses of trust, regardless of proof of actual damages." *Id.*; *see also Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201, 1213 (10th Cir. 2007) (applying Texas law and concluding that the adequacy of other remedies "does not preclude forfeiture" when a client can otherwise be compensated through damages (citation omitted)); *Slay v. Burnett Tr.*, 187 S.W.2d 377, 388 (Tex. 1945) ("By this rule trustees may be liable to great losses while they can receive no profit; and the rule is made thus stringent, that trustees may not be tempted from selfish motives to embark the trust fund upon the chances of trade and speculation." (citation omitted)); *Schiller v. Elick*, 240 S.W.2d 997, 999 (Tex. 1951) (emphasizing that a fiduciary may not "profit by concealment at the expense of his principal"). Thus, when a fiduciary obtains consideration under a contract through willful actions and concealment constituting a breach of fiduciary duty, "the contractual

P5-0015

consideration received by the fiduciary is recoverable in equity regardless of whether actual damages are proven . . . ." *Swinnea*, 318 S.W.3d at 873.

In particular, Texas courts have repeatedly recognized and upheld equitable remedies—including but not limited to imposition of a constructive trust, disgorgement, and forfeiture—when "an abuse of confidence render[s] the acquisition or retention of property by one person unconscionable against another." *Smith v. Bolin*, 271 S.W.2d 93, 97 (Tex. 1954); *see also Schiller*, 240 S.W.2d at 999 (upholding imposition of constructive trust on mineral interest where defendant procured mineral interest through breaches of fiduciary duty); *Omohundro v. Matthews*, 341 S.W.2d 401, 408–09 (Tex. 1960) (upholding imposition of constructive trust "to protect the rights of the respondents, and to prevent the unjust enrichment of petitioner by his violation of his promise and duty to the respondents to take title in the name of all three of them" (citation omitted)); *Geo-Goldenrod #2, #3, #4 Joint Venture v. Rose*, No. ADV 09-3222, 2010 WL 3342110, at *2 (Bankr. N.D. Tex. Aug. 25, 2010) (imposing constructive trust on mineral interest and lease where defendants obtained assets through breaches of fiduciary duty owed to joint venture); *Robertson v. ADJ P'ship, Ltd.*, 204 S.W.3d 484, 494 (Tex. App.—Beaumont 2006, pet. denied) (upholding judgment ordering fiduciary to convey overriding royalty interest to plaintiff on the grounds that disgorgement "has long been recognized as an appropriate remedy . . . for breach of fiduciary duty"); *Bright v. Addison*, 171 S.W.3d 588, 600 (Tex. App.—Dallas 2005, pet. denied) (upholding imposition of a constructive trust

P5-0016

where casino opportunity belonged to fiduciaries and the defendant obtained opportunity through breaches of fiduciary duties).[3]

In such circumstances, a breach of a fiduciary relationship "suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it." *Bolin*, 271 S.W.2d at 97; *see also Flores v. Flores*, No. 04-10-00118-CV, 2011 WL 3610428, at *6 (Tex. App.—San Antonio Aug. 17, 2011, pet. denied) ("The equitable remedy of constructive trust is broad and flexible." (citation omitted)).

When considering whether to impose a constructive trust or otherwise require forfeiture of property received by a fiduciary through fiduciary breaches, courts generally consider factors such as: (1) the gravity and timing of the breach of duty; (2) the level of intent or fault; (3) whether the principal received any benefit from the fiduciary despite the breach; (4) the centrality of the breach to the fiduciary relationship; and (5) actual harm to the principal. *See Swinnea*, 318 S.W.3d at 874–75. "Above all, the remedy must fit the circumstances and work to serve the ultimate goal of protecting relationships of trust." *Id.*

---

[3] *See generally id.* ("Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another. Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of the relief granted." (citation omitted).

P5-0017

### C.    Wright's misconduct requires imposition of a constructive trust upon the ROW and disgorgement of any interest in the ROW held by Wright or his entities.

DMA and Moore seek disgorgement and imposition of a constructive trust with respect to Wright's interests in the right-of-way—whether held directly or indirectly through one of his entities—as well as a constructive trust with respect to any proceeds generated by any sale or transaction involving the right-of-way. Disgorgement and imposition of a constructive trust are gain-based remedies available under Texas law where, as here, a defendant has breached fiduciary duties through self-dealing. *Kinzbach*, 160 S.W.2d at 514.

Here, all of Wright's actions with respect to the right-of-way—concealing an unauthorized loan from KrisJenn to Black Duck, fraudulently transferring the ROW by "foreclosing" on the unauthorized loan, and forcing Moore out of Black Duck while concealing an impending deal with TRCG—were taken with the sole aim of taking the ROW for himself at the expense of Moore, DMA, and Longbranch and were all done in breach of his fiduciary duties:

- Wright was included in the opportunity in the first place because he falsely represented that he was rich and could easily fund the purchase of the right of way. Transcript [#228] at 94.

- Wright told Moore the funding he provided would be consideration for his interest in the right-of-way—then subsequently claimed his capital contribution was an undisclosed "loan" from KrisJenn to Black Duck. Transcript [#227] at 39, Transcript [#229] at 114.

- Wright did not obtain authorization or consent from Moore with respect to the loan or the deed of trust, which Wright subsequently used to "foreclose" and transfer the ROW from Black Duck to KrisJenn. *See* Opinion [#236] at 24–27.

- Wright fabricated the undisclosed loan documents after the fact: Although the documents claim the loan was consummated in August 2017, those documents were

18

P5-0018

not executed or notarized until January 2018—over a year later—when Wright was pressuring Moore to resign from Black Duck. DX11; DX10; DX26; DX27; DX37; PX46; DX36; PX45; PX48; PX44.

▪ While Wright was pressuring Moore to withdraw and give up his interest in Black Duck, Wright concealed and failed to disclose the loan documents *and* a contemplated sale of the ROW to Black Duck—which Wright had arranged without Moore's knowledge starting in December 2017, months before Moore withdrew. *See* Opinion [#236] at 24–27; PX46; DX36; PX45; PX48; PX44; Transcript [#228] at 85-86, Opinion [#236] at 6-7.

▪ After Moore withdrew, Wright used the undisclosed loan documents to "foreclose" on the ROW. *See* DX11.

▪ Two days after the documents memorializing Moore's resignation were drawn up, Wright moved forward with plans to sell the ROW to TCRG. DX22 (Letter of Intent).

▪ Wright then claimed that he had extinguished Moore and Borders's interests in the ROW through his fraudulent foreclosure. DX45.

During the bench trial, this Court found that Wright's alleged loan was neither disclosed to nor authorized by Moore, who was Wright's partner in and a manager of Black Duck and whose entity owned 50% of Black Duck. Transcript [#229] at 60. And as this Court found after the bench trial, it was through Wright's breach of fiduciary duty with respect to the loan documents that Wright obtained control of the ROW in the first place. DX11.

If Wright had disclosed the unauthorized loan documents to Moore—or the contemplated sale to TCRG—Moore would not have agreed to resign from Black Duck and worsen his position by giving up his right to 50% of Black Duck's assets merely for 20% of Black Duck's profits from the sale of the ROW. Transcript [#228] at 63.

Thus, there is a direct causal link between Wright's breaches of fiduciary duty and his resulting ownership and control of the ROW.

P5-0019

In this context, Moore and DMA are entitled to disgorgement and forfeiture of Wright's and his entities' interest in the ROW, because those interests were directly obtained through Wright's breaches of fiduciary duty. What's more, all of the factors generally considered by courts weigh in favor of such relief: (1) the gravity of Wright's breach was severe and directly enabled his wrongful seizure of the ROW; (2) Wright's conduct was intentional and willful, and Wright subsequently claimed that he had "kill[ed]" Moore and DMA's interests through his actions; (3) Moore relinquished his 50% ownership of the ROW as a direct result of Wright's fiduciary breaches; (4) the parties' respective interests in the ROW were central to the fiduciary relationship; and (5) Moore was severely impacted by Wright's fiduciary breaches because they led Moore to relinquish his 50% ownership of the ROW. *See Swinnea*, 318 S.W.3d at 874–75.

Given these circumstances, Texas law requires that the Court impose a constructive trust on Wright and his entities' interest in the ROW and find that Wright forfeited his interest in the ROW because he gained control of the ROW through his fiduciary breaches. As the Texas Supreme Court explained in *Swinnea*, such equitable relief is appropriate "where a fiduciary takes advantage of his position of trust to induce a principal to enter a contract." *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 872–74 (Tex. 2010); *Schiller v. Elick*, 240 S.W.2d 997, 999 (Tex. 1951) (emphasizing that a fiduciary may not "profit by concealment at the expense of his principal").

Here, because Wright obtained control and ownership of the ROW through willful concealment of the true circumstances from Moore, "the contractual consideration received by [Wright] is recoverable in equity." *Swinnea*, 318 S.W.3d at 873. And Texas

20

P5-0020

courts have repeatedly recognized and upheld equitable remedies—including imposition of a constructive trust, disgorgement, and forfeiture—when "an abuse of confidence render[s] the acquisition or retention of property by one person unconscionable against another." *Smith v. Bolin*, 271 S.W.2d 93, 97 (Tex. 1954); *see also Schiller*, 240 S.W.2d at 999 (upholding imposition of constructive trust on mineral interest where defendant procured mineral interest through breaches of fiduciary duty); *Omohundro v. Matthews*, 341 S.W.2d 401, 408–09 (Tex. 1960) (upholding imposition of constructive trust "to protect the rights of the respondents, and to prevent the unjust enrichment of petitioner by his violation of his promise and duty to the respondents to take title in the name of all three of them" (citation omitted)); *Geo-Goldenrod #2, #3, #4 Joint Venture v. Rose*, No. ADV 09-3222, 2010 WL 3342110, at *2 (Bankr. N.D. Tex. Aug. 25, 2010) (imposing constructive trust on mineral interest and lease where defendants obtained assets through breaches of fiduciary duty owed to joint venture).

Moore believes that this equitable relief should be structured as follows. First, the Court should impose a constructive trust upon the ROW (and any proceeds or venues generated by the same) for the benefit of Moore and DMA. Moore and DMA will receive control over the ROW and work to monetize it. Wright will be entitled to the first $4.7 million in proceeds—representing the amounts contributed by Wright towards the purchase of the ROW prior to his fiduciary breaches—and all subsequent gains, revenues, and proceeds will be distributed to Moore, subject to Longbranch's net profits interest.

The Court has equitable jurisdiction to implement a constructive trust in this manner. *See In re Estate of Wallis*, No. 12-07-00022-CV, 2010 WL 1987514, at *3 (Tex.

P5-0021

App.—Tyler May 19, 2010, no pet.) (recognizing that courts have equitable authority "to reach the property in the hands of a wrongdoer whenever legal title to property has been obtained through fraud, misrepresentations, concealments, or under similar circumstances that render it unconscionable for the holder of legal title to retain the interest."); *Pope v. Garrett*, 211 S.W.2d 559, 561 (Tex. 1948) ("[E]quity deals with the holder of the legal title for the wrong done . . . and impresses a trust on the property in favor of the one who is in good conscience entitled to it."); *see also Flores v. Flores*, No. 04-10-00118-CV, 2011 WL 3610428, at *6 (Tex. App.—San Antonio Aug. 17, 2011, pet. denied) ("The equitable remedy of constructive trust is broad and flexible." (citation omitted)). This relief also accords with the repeated admonition by Texas courts that a fiduciary may not "profit by concealment at the expense of his principal." *Schiller v. Elick*, 240 S.W.2d 997, 999 (Tex. 1951).

In the alternative (and potentially subject to a partial or full election of remedies in the final judgment), DMA and Moore seek damages on their claims for breach of fiduciary duty.[4] Previously, the Court determined that Moore could not establish he was entitled to damages on his fiduciary claims unless his net-profits interest qualified as a real covenant that survived the transfer of the right-of-way to KrisJenn. Opinion [#236] at 27. But the district court has now held that Moore's net-profits interest *was* a real covenant— which means that Moore has a viable claim to damages based on Wright's breaches of fiduciary duty, including but not limited to his failures to disclose the unauthorized loan

---

[4] To the extent Moore and/or DMA are required to elect between remedies, they will do so after entry of an order from this Court determining what those remedies are.

22

**P5-0022**

and impending TCRG transaction to Moore while Wright was pressuring Moore to resign from and relinquish his interest in Black Duck.

In KrisJenn's original bankruptcy schedules, Wright swore under oath that the right-of-way was worth $9.5 million. Petition [#1] at 16. And even in his amended schedule, Wright admitted that the right-of-way was worth at least $6.5 million. *See* Am. Schedules [#23] at 12. As the Court previously noted, Moore's damages consist of the lost value of his 50% interest in the ROW when held by Black Duck at the time of Wright's fiduciary breaches. Opinion [#236] at 27 n.7. Since Black Duck only held an 80% interest in the right-of-way (after accounting for Longbranch's 20% net-profits interest), and the value of that interest is equal to the market value of the right-of-way at the time of the breach (between $6.5 million and $9.5 million) less the value of the capital contributions ($4.7 million) used to acquire the right-of-way, Moore's 50% interest was worth between $720,000 and $1,920,000. At trial, Moore presented evidence that a third party (Solaris) offered $7.2 million plus royalties for the right-of-way in October 2016, which would put the value of Moore's interest at $1,000,000, exclusive of royalties that themselves would have been worth millions. DX12; Transcript [#226] at 63–64.

## II.    DMA, Moore, and Longbranch are entitled to recover attorneys' fees on their declaratory claims.

On appeal, the district court entered judgment in favor of DMA and Longbranch on their declaratory claims and concluded that the net profits interests at issue are real covenants that attach and run with the land. DMA, Moore, and Longbranch now seek attorneys' fees in connection with those declaratory claims.

P5-0023

The Texas Declaratory Judgment Act provides that prevailing parties may recover reasonable and necessary attorneys' fees on declaratory claims if such fees are equitable and just. TEX. CIV. PRAC. & REM. CODE § 37.009.

Here, the award of fees is equitable and just for multiple reasons. First, Longbranch and DMA prevailed on their declaratory claims, and the district court has affirmed their respective net-profits interests in the ROW. Longbranch and DMA were forced to bring those declaratory claims because Wright denied Longbranch and DMA and claimed he had extinguished their interests by foreclosing on the ROW through an undisclosed loan and deed of trust. Second, an award of fees is equitable and just because—as this Court has already recognized—Wright obtained control of the ROW by breaching fiduciary duties owed to Moore and failing to disclose an unauthorized loan and deed of trust which he subsequently used to "foreclose" on the right-of-way. The district court likewise recognized that Moore and DMA were entitled to equitable remedies and remanded for consideration of the same.

For the same reasons that Moore and DMA are entitled to other equitable remedies as described above, equity further favors an award of attorneys' fees and costs to Moore, DMA, and Longbranch on their declaratory claims. If the Court determines to award such fees, Moore, DMA, and Longbranch will separately submit briefing and fee evidence.

III.   **Moore is entitled to recover attorneys' fees on his claim for breach of the Email Agreement and his fiduciary claims.**

Moore is also entitled to recover attorneys' fees in connection with his claim that Wright breached the Email Agreement. Texas Civil Practice & Remedies Code § 38.001

P5-0024

mandates that litigants shall recover reasonable attorneys' fees in connection with breach-of-contract claims. TEX. CIV. PRAC. & REM. CODE § 38.001.

During the bench trial, this Court recognized that Moore and Wright entered an Email Agreement that Moore (through DMA) would receive a 20% net profits interest in the ROW, and that Wright "agreed to Moore's terms via email on February 4, 2018." Subsequently, Moore and DMA presented their claim to Wright and asserted ownership of a 20% net profits interest in the ROW. *See* Ex. B (Letter Dated December 13, 2018). Wright denied and refused to acknowledge DMA's interest, necessitating this lawsuit, and the district court has subsequently affirmed DMA's net profits interest. In light of that ruling by the district court, DMA and Moore have prevailed on their claims against Wright for breach of the net profits agreement and are entitled to recover reasonable attorneys' fees under § 38.001. Upon order from the Court determining that DMA and Moore are entitled to recover such fees, DMA and Moore will separately submit briefing and fee evidence.

Finally, Moore is also entitled to recover fees in connection with his claim for breach of fiduciary duty, because that claim arises from Wright's breaches of his fiduciary obligations under the Black Duck Company Agreement. *See* Opinion [#236] at 27 (concluding Wright breached fiduciary duties owed to Moore because "the Black Duck Loan was not authorized under the terms of the Company Agreement"); *Citizens Bank & Tr. Co. of Baytown v. Ertel*, No. 01-98-00548-CV, 2001 WL 26141, at *12 n.14 (Tex. App.—Houston [1st Dist.] Jan. 11, 2001, pet. denied) ("[W]hen a party recovers damages for a tort arising from a breach of contract, the court may award attorney's fees."); *High*

P5-0025

*Plains Wire Line Servs. v. Hysell Wire Line Serv.*, 802 S.W.2d 406, 408 (Tex. App.—Amarillo 1991, no writ) (recognizing that fees are recoverable on tort claims under § 38.001 when such claims are "intrinsically founded in the interpretation of a contract"). As with the other fee claims, upon order from the Court determining that DMA and Moore are entitled to recover such fees, DMA and Moore will separately submit briefing and fee evidence.

## CONCLUSION

Moore and DMA respectfully request that the Court impose a constructive trust upon Wright's and his entities' interest in the ROW and disgorge Wright and his entities' interest in the same. In the alternative, Moore and DMA request damages for Wright's breaches of fiduciary duty as described above. Moore, DMA, and Longbranch also request the Court award them reasonable and necessary attorneys' fees as well as any other relief available at law or in equity to which Moore, DMA, and Longbranch may be justly entitled.

P5-0026

Respectfully submitted,

/s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
JOHNS & COUNSEL PLLC
2028 East Ben White Boulevard
Suite 240-1000
Austin, TX 78741
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
Austin Krist
State Bar No. 24106170
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
(512) 689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com

*Attorneys for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER
4825 50th Street, Suite A
Lubbock, Texas 79414
806-793-1906
806-792-2135 fax
aseger@thesegerfirm.com

Natalie F. Wilson
State Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

*Attorneys for DMA Properties and Frank Daniel Moore*

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, TX 78209
mblack@burnsandblack.com

Jeffery Duke
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive, Suite 110
Katy, TX 77494
jduke@dbmmlaw.com

*Attorneys for Longbranch Energy*

P5-0027

CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Charles John Muller, IV<br>CJ MULLER & ASSOCIATES, PLLC<br>111 W. Sunset<br>San Antonio, TX 78209<br>ron@smeberg.com<br>john.muller@cjma.law<br><br>*Counsel for KrisJenn Ranch, LLC,*<br>*Krisjenn Ranch, LLC—Series Uvalde*<br>*Ranch, KrisJenn Ranch, LLC—Series*<br>*Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>DUKE BANISTER MILLER & MILLER<br>22310 Grand Corner Drive, Suite 110<br>Katy, TX 77494<br>jduke@dbmmlaw.com<br><br>*Counsel for Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | James Rose<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, TX 78701<br>james.rose@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* |

 */s/ Christopher S. Johns*
Christopher S. Johns

28

P5-0028

## Nacogdoches County
## Sandra "Sandy" Yates
**Nacogdoches County Clerk**

---

**Instrument Number:** 2023 - 1331

eRecording – Real Property

Parties:                                                    Parties:

Recorded On: February 23, 2023 02:26 PM          Number of Pages: 32

---

**" Examined and Charged as Follows: "**

Total Recording: $146.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                             **Record and Return To:**

Document Number:     2023-1331                    CSC GLOBAL

Receipt Number:      20230223000038

Recorded Date/Time:  February 23, 2023 02:26 PM

User:                Jennifer A

Station:             CLERK02

---



**STATE OF TEXAS**
**COUNTY OF NACOGDOCHES**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time printed hereon, and was duly RECORDED in the Official Records of County, Texas.

Sandra "Sandy" Yates
Nacogdoches County Clerk
Nacogdoches County, TX

P5-0029

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### SPECIAL WARRANTY DEED

**Date:** February 22, 2023

**Grantor:** KRISJENN RANCH, L.L.C. – Series Pipeline ROW, a Texas series limited liability company

**Grantor's Mailing Address:**

Krisjenn Ranch, L.L.C. – Series Pipeline ROW
c/o Larry Wright, Manager
410 Spyglass
McQueeney, TX 78123
Guadalupe County

**Grantee:** EXPRESS H2O PIPELINE & ROW, L.L.C., a Texas limited liability company

**Grantee's Mailing Address:**

Express H2O Pipeline & ROW, L.L.C.
c/o Larry Wright, Manager
410 Spyglass
McQueeney, TX 78123
Guadalupe County

**Consideration:**

Membership interests in Grantee.

**Property (including any improvements):**

All of Grantor's right, title, and interest in and to the pipeline system and related facilities ("P-21 Pipeline"), rights-of-way, easements, permits, leases and other rights and properties situated in the State of Texas (the "ROW") that Grantor acquired by that certain Deed, Conveyance, Assignment, and Bill of Sale dated December 20, 2019 by and between TCRG East Texas Pipeline 1, LLC a Texas limited liability company, and Grantor attached

SWD (Express H2O Pipeline & ROW, LLC)                                           Page 1

**P5-0030**

hereto as Exhibit A and incorporated herein by reference, and recorded under: (a) Instrument 2023-883, Official Public Records of Nacogdoches County, Texas; (b) Instrument No. 2020-00390181, Real Property Records of Angelina County, Texas; (c) Instrument No. 2020000150, Real Property Records of Shelby County, Texas; and (d) Instrument No. 0019469, Real Property Records of Rusk, County, Texas.

**Reservations from Conveyance:** None.

**Exceptions to Conveyance and Warranty:**

This conveyance is expressly made and accepted subject to all matters on the ground that a true and correct survey would reveal; all validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments; and all zoning laws, regulations and ordinances of municipal and/or other governmental authorities relating to the above described property; and taxes for "the present year", which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

**Grant, Habendum, and Warranty:**

Grantor for the Consideration and subject to the Reservations from Conveyance and Exceptions to Conveyance and Warranty, grants, sells and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging (including, without limitation, all permits, vested rights and related privileges with respect thereto, if any) to have and hold it to Grantee and Grantee's heirs, executors, administrators, successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof when the claim is by, through, or under Grantor but not otherwise, and except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

*This instrument was administratively prepared by Granstaff, Gaedke & Edgmon, P.C. from information provided by the Grantor. No opinion as to title is made or should be construed from this instrument. Granstaff, Gaedke & Edgmon, P.C. has not examined the title to the subject property or otherwise investigated the accuracy of the information provided.*

{Signature Page Follows}

SWD (Express H2O Pipeline & ROW, LLC)                                                    Page 2

**P5-0031**

GRANTOR:

*Larry M. Wright*

KrisJenn Ranch, LLC, - Series Pipeline ROW
A Texas Limited Liability Company
Larry Wright, Manager

THE STATE OF TEXAS §
§
COUNTY OF Bexar §

This instrument was acknowledged before me on February 22, 2023, by LARRY MICHAEL WRIGHT in the capacity stated.

*Blu li*

Notary Public for the State of Texas



BLANCA A LIMON
Notary Public, State of Texas
My Comm. Exp. 06-01-2026
Notary ID 13378979-2

AFTER RECORDING RETURN TO:

**GRANSTAFF, GAEDKE & EDGMON, P.C.**
c/o Michael H. Rodgers
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Tel: (210) 348-6600
Fax: (210) 366-0892

P:\WP2\Clients T-Z\Wright, Larry & Gwynne\Express H2O Pipeline & ROW, L.L.C\Deed - Special Warranty.docx

SWD (Express H2O Pipeline & ROW, LLC)                                                                 Page 3

**P5-0032**

# EXHIBIT "A"

**All the described pipelines taps, and other facilities owned by KrisJenn Ranch, LLC in the State of Texas as set forth on "Exhibit A" attached hereto and by this reference**
**(1 page: map)**

**EXHIBIT "B-1"**
**Shelby County, Texas**
**(10 pages)**

**EXHIBIT "B-2"**
**Rusk County, Texas**
**(1 page)**

**EXHIBIT "B-3"**
**Nacogdoches County, Texas**
**(9 pages)**

**EXHIBIT "B-4"**
**Angelina County, Texas**
**(1 page)**

**EXHIBIT "B-5"**
**Nacogdoches County, Texas**
**Exceptions as Noted in 1992 Tepco to Lancer Purchase Agreement**
**(2 pages)**

**EXHIBIT "B-6"**
**Nacogdoches, Rusk and Shelby County**
**Amendments, Release and New Rights of Ways and Easements Since Tepco to Lancer Sale**
**(3 pages)**

SWD (Express H2O Pipeline & ROW, LLC)

P5-0033

**EXHIBIT "A"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this ___ day of February, 2016, between The Express Gas
Pipeline, LP and Longbranch Energy, LP



P5-0034

20-05027-rbk Doc#321-1 Filed 11/08/23 Entered 11/08/23 19:07:00 Exhibit Deed to Express H2O Pg 7 of 32

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| Date | Grantor | Grantee | Book | Page |
|---|---|---|---|---|
| 02/03/13 | Van J. Smith | Gulf Pipe Line Co. | 81 | 7 |
| 01/27/14 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 79 | 582 |
| 01/28/14 | D.D. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 609 |
| 01/28/14 | I.E. Bazer, et ux. | Gulf Pipe Line Co. | 79 | 597 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | W.H. Cammack | Gulf Pipe Line Co. | 79 | 594 |
| 01/28/14 | Bridie Carter, et vir. | Gulf Pipe Line Co. | 79 | 592 |
| 01/28/14 | Mrs. W.J. Cockrell | Gulf Pipe Line Co. | 79 | 593 |
| 01/28/14 | J.R. Joplin, et ux. | Gulf Pipe Line Co. | 79 | 574 |
| 01/28/14 | Ralph Jopling, et ux. | Gulf Pipe Line Co. | 81 | 19 |
| 01/28/14 | J.D. Majors, et ux. | Gulf Pipe Line Co. | 81 | 27 |
| 01/28/14 | J.W. Majors | Gulf Pipe Line Co. | 81 | 14 |
| 01/28/14 | A.W. Mathews, et ux. | Gulf Pipe Line Co. | 81 | 24 |
| 01/18/14 | W.R. Rains | Gulf Pipe Line Co. | 79 | 595 |
| 01/29/14 | Luke Motley | Gulf Pipe Line Co. | 81 | 8 |
| 01/29/14 | J.L. Norman | Gulf Pipe Line Co. | 81 | 18 |
| 01/29/14 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. | 79 | 596 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25 |
| 01/29/14 | John Turner, et ux. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/29/14 | John Turner, et us. | Gulf Pipe Line Co. | 81 | 25-26 |
| 01/31/14 | J.H. Hughes | Gulf Pipe Line Co. | 79 | 562 |
| 01/31/14 | J.R. Lewis | Gulf Pipe Line Co. | 79 | 576 |
| 02/02/14 | Charles F. Flakes | Gulf Pipe Line Co. | 79 | 607 |
| 02/02/14 | W.E. Parker | Gulf Pipe Line Co. | 81 | 16 |
| 02/02/14 | W.W. Rider, et ux. | Gulf Pipe Line Co. | 81 | 21 |
| 02/02/14 | J.H. Wall | Gulf Pipe Line Co. | 79 | 605 |
| 02/02/14 | Ben B. White, et ux. | Gulf Pipe Line Co. | 79 | 573 |
| 02/02/14 | W.D. White, et ux. | Gulf Pipe Line Co. | 79 | 598 |
| 02/03/14 | Luis Hooper, et al. | Gulf Pipe Line Co. | 79 | 579 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | J. Nathan King | Gulf Pipe Line Co. | 79 | 564 |
| 02/03/14 | C. Riley, et ux. | Gulf Pipe Line Co. | 79 | 611 |
| 02/03/14 | Jno. A. White, et ux. | Gulf Pipe Line Co. | 79 | 571 |
| 02/04/14 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. | 79 | 578 |
| 02/04/14 | John Kyle, et ux. | Gulf Pipe Line Co. | 79 | 563 |
| 02/04/14 | J.R. Weir | Gulf Pipe Line Co. | 79 | 568 |
| 02/05/14 | C.C. Hayden | Gulf Pipe Line Co. | 79 | 576 |
| 02/06/14 | W.L. Foster, et ux. | Gulf Pipe Line Co. | 79 | 572 |
| 02/06/14 | C.M. Horton, et ux. | Gulf Pipe Line Co. | 79 | 565 |
| 02/06/14 | O.M. Ramsey, et al. | Gulf Pipe Line Co. | 79 | 599 |

1

P5-0035

**EXHIBIT "B-1"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| 02/06/14 | B.A. Roper | Gulf Pipe Line Co. | 79 | 561 |
| 02/07/14 | F.M. Bridwell, et al. | Gulf Pipe Line Co. | 79 | 550 |
| 02/09/14 | Rev. Mack Jones, et al. | Gulf Pipe Line Co. | 79 | 603 |
| 02/10/14 | G.W. Crenshaw, et ux. | Gulf Pipe Line Co. | 79 | 567 |
| 02/10/07 | J.H. Cruger, et ux. | Gulf Pipe Line Co. | 79 | 600 |
| 02/10/14 | F.D. Haden, et ux. | Gulf Pipe Line Co. | 81 | 6 |
| 02/10/14 | Henry Sears, et ux. | Gulf Pipe Line Co. | 79 | 569 |
| 02/11/14 | W.A. Cooper, et ux. | Gulf Pipe Line Co. | 79 | 557 |
| 02/11/14 | W.R. Harris, et ux. | Gulf Pipe Line Co. | 79 | 553 |
| 02/11/14 | J.M. Whiteside | Gulf Pipe Line Co. | 79 | 543 |
| 02/11/14 | C.O. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 554 |
| 02/11/14 | W.T. Worsham, et ux. | Gulf Pipe Line Co. | 79 | 556 |
| 02/12/14 | W.F. Andrews | Gulf Pipe Line Co. | 79 | 562 |
| 02/12/14 | S.W. Wallace | Gulf Pipe Line Co. | 81 | 5 |
| 02/13/14 | E.H. Andrews, et ux. | Gulf Pipe Line Co. | 79 | 560 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr. et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | Phil Bussy, Jr., et al. | Gulf Pipe Line Co. | 79 | 610 |
| 02/13/14 | W.M. Byrn | Gulf Pipe Line Co. | 79 | 602 |
| 02/14/14 | F.O. Johnson | Gulf Pipe Line Co. | 79 | 580 |
| 02/14/14 | Allen Porter, Agent for Robert Porter | Gulf Pipe Line Co. | 79 | 604 |
| 02/16/14 | J.F. Beasley, et ux. | Gulf Pipe Line Co. | 81 | 11 |
| 02/16/14 | M.M. Carroll, Jr. | Gulf Pipe Line Co. | 79 | 581 |
| 02/16/14 | W.I. Deffenbaugh | Gulf Pipe Line Co. | 79 | 606 |
| 02/16/14 | G.W. Hanson, et ux. | Gulf Pipe Line Co. | 79 | 583 |
| 02/17/14 | E.A. Booth | Gulf Pipe Line Co. | 79 | 603 |
| 02/17/14 | Zach Brinson | Gulf Pipe Line Co. | 79 | 558 |
| 02/17/14 | J.B. Broadus, et ux. | Gulf Pipe Line Co. | 79 | 547 |
| 02/17/14 | J.R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J. R. Foster, et ux. | Gulf Pipe Line Co. | 79 | 612 |
| 02/17/14 | J.L. Gilbert, et ux. | Gulf Pipe Line Co. | 81 | 23 |
| 02/18/14 | W.L. Barron, et ux. | Gulf Pipe Line Co. | 81 | 547 |
| 02/18/14 | J.T. Caldwell, et ux. | Gulf Pipe Line Co. | 79 | 546 |
| 02/18/14 | C.H. Freeman, et ux. | Gulf Pipe Line Co. | 79 | 545 |
| 02/18/07 | J.L. Hart | Gulf Pipe Line Co. | 79 | 570 |
| 02/18/14 | H.J. Hennigan, et ux. | Gulf Pipe Line Co. | 79 | 544 |
| 02/18/14 | R.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 585 |
| 02/18/14 | W.A. Whiddon, et ux. | Gulf Pipe Line Co. | 79 | 584 |

2

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| Date | Grantor | Grantee | | |
|---|---|---|---|---|
| 02/18/14 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. | 79 | 551 |
| 02/19/14 | J.D. Sholer | Gulf Pipe Line Co. | 79 | 613 |
| 02/19/14 | Whiddon, J.E., Gdn. for his two minor children Mary Etta Whiddon & James Floid Whiddon | Gulf Pipe Line Co. | 79 | 549 |
| 02/20/14 | R.A. Rushing, by W.A. Whiddon, Agt. | Gulf Pipe Line Co. | 81 | 478 |
| 02/23/14 | Cohron Davis, et ux. | Gulf Pipe Line Co. | 79 | 591 |
| 02/23/14 | Ima Odom, et al. | Gulf Pipe Line Co. | 81 | 9 |
| 02/23/14 | J.B. Paramore, et ux. | Gulf Pipe Line Co. | 81 | 15 |
| 02/23/14 | J.W. Sholar | Gulf Pipe Line Co. | 81 | 20 |
| 02/23/14 | R. Sholar | Gulf Pipe Line Co. | 81 | 17 |
| 02/23/14 | W.F. Taley, et ux. | Gulf Pipe Line Co. | 79 | 589 |
| 02/24/14 | W.R. Crawford, et ux. | Gulf Pipe Line Co. | 79 | 588 |
| 02/24/14 | C.P. Hooper, et ux. | Gulf Pipe Line Co. | 79 | 587 |
| 03/07/14 | L.N. Muren | Gulf Pipe Line Co. | 81 | 13 |
| 03/28/14 | H. Bryant, et al. | Gulf Pipe Line Co. | 81 | 10 |
| 05/26/14 | F.J. Hobbs | Gulf Pipe Line Co. | 81 | 548 |
| 12/16/14 | I.W. Willimas | Gulf Pipe Line Co. | 79 | 559 |
| 02/18/24 | W.F. Hollister, et ux. | Gulf Pipe Line Co. | 79 | 552 |
| 07/09/24 | F.M. Bridwell | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 440 |
| 07/09/24 | Mrs. W.H. Harris | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 441 |
| 07/09/24 | F.M. Whiteside, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 464 |
| 07/09/24 | Mrs. J.M. Whiteside | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 438 |
| 07/09/24 | W.T. Worsham | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 443 |
| 07/10/24 | E.H. Andrews, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 446 |
| 07/10/24 | E.A. Booth | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 463 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | F.L. Brinson, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 458 |
| 07/10/24 | Zach Brinson | Gulf Pipe Line Co. | 127 | 456 |

3

P5-0037

**EXHIBIT "B-1"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/10/24 | W.M. Byrn | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 459 |
| 07/10/24 | G.W Crenshaw, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 448 |
| 07/10/24 | J.H. Cruger, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 445 |
| 07/10/24 | Mrs. F.D. Haden | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 462 |
| 07/10/24 | C.O. Worsham, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 442 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F. H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | F.H. Bailey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 453 |
| 07/11/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 452 |
| 07/11/24 | John Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 450 |
| 07/11/24 | Phil Bussy Jr., et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 455 |
| 07/11/24 | J.G. Ellington | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 437 |
| 07/11/24 | F.O. Johnson | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 460 |
| 07/11/24 | I.N. Williams | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 449 |
| 07/14/24 | E.W. Cockrell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 479 |
| 07/14/24 | Mrs. G.W. Hanson Adm. of G.W. Hanson Est. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 481 |
| 07/14/24 | T.A. King | Gulf Pipe Line Co. | 124 | 478 |

4

P5-0038

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 07/14/24 | Ima Odom Nutt, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 485 |
| 07/14/24 | Mrs. W.F. Talley | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 476 |
| 07/14/24 | A.O. Whiddon | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 480 |
| 07/15/24 | Paul Barron, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 471 |
| 07/15/24 | J.T. Carroll | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 470 |
| 07/15/24 | C.H. Freeman, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 469 |
| 07/15/24 | Mrs. B.J. Hennigan | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 484 |
| 07/15/24 | C.P. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 473 |
| 07/15/24 | J.D Sholar | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 483 |
| 07/16/24 | W.R. Crawford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 467 |
| 07/17/24 | J.T. Caldwell, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 497 |
| 07/21/24 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 496 |
| 07/21/24 | Mack Jones, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 493 |
| 07/21/24 | C.D. Scogin | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 491 |
| 07/21/24 | H.S. Varnell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 495 |
| 07/22/24 | Cleveland Bussey | Gulf Pipe Line Co. and Gulf Production Co. | 124 | 492 |
| 08/01/24 | W.A Cooper | Gulf Pipe Line Co. | 124 | 520 |

5

P5-0039

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Shelby County, Texas

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 10/14/24 | Pierce Whiteside, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 123 | 632 |
| 04/30/26 | J.A. Deaton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 506 |
| 04/30/25 | Claude E. Fallin | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 52 |
| 04/30/25 | Alvin Gunter | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 503 |
| 04/30/25 | J.R. Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 55 |
| 04/30/25 | J.N. Majors | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 54 |
| 04/30/25 | C.C. McDonald | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 56 |
| 04/30/25 | Grover C. Peddy | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 500 |
| 04/30/25 | C. Riley, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 502 |
| 04/30/25 | F.B Taylor | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 504 |
| 04/30/25 | J.R. Weir, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 141 |
| 05/01/25 | Mrs. W. A. Bouland by J.L. Davis, Attorney-in-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 568 |
| 05/01/25 | Cicero Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 552 |
| 05/01/25 | J. N. King | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 62 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 187 |
| 05/01/25 | J.O. McCarver | Gulf Pipe Line Co. | 127 | 187 |

6

**P5-0040**

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 569 |
| 05/01/25 | Robert Porter | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 61 |
| 05/01/25 | Walter Scates, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 63 |
| 05/01/25 | A.H. Womack, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 566 |
| 05/02/25 | M.M. Bowlin, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 556 |
| 05/02/25 | H. Bryant, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 562 |
| 05/02/25 | Harvey Crawford | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 364 |
| 05/02/25 | John Davis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 551 |
| 05/02/25 | J.B. Foster by J.R. Foster, Gdn. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 60 |
| 05/02/25 | J.R. Foster, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 559 |
| 05/02/25 | Mrs. W.L. Foster | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 560 |
| 05/02/25 | P.L. Hooper, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 600 |
| 05/02/25 | J.R. Lewis | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 555 |
| 05/02/25 | Luke Motley | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 554 |
| 05/02/25 | A.N. Neal, et ux. | Gulf Pipe Line Co. | 126 | 559 |

7

P5-0041

**EXHIBIT "B-1"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Production Co. | | |
| 05/02/25 | Mrs. O.M. Ramsey | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 563 |
| 05/04/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 532 |
| 05/04/25 | J.D. Majors, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 550 |
| 05/04/25 | H.M. Mitchell, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/04/25 | Dewey Parrish, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 537 |
| 05/04/25 | Allen Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 539 |
| 05/04/25 | Elbert B. Samford by E.B Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 536 |
| 05/04/25 | J. B. Samford by E.B. Samford, Agent and Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 535 |
| 05/04/25 | W.A. Samford, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 541 |
| 05/04/25 | W.J. Shadowens, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 547 |
| 05/04/25 | R. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 542 |
| 05/05/25 | Annie Broadus | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 138 |
| 05/05/25 | E.W. Cockrell | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 142 |
| 05/05/25 | J.W. Sholar, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 548 |
| 05/05/25 | Mrs. Bloom Wagstaff, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 529 |
| 05/05/25 | W.J. Walker, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 533 |

8

P5-0042

**EXHIBIT "B-1"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/05/25 | B.C. Wheat, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 530 |
| 05/07/25 | D.D. Bazer, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 58 |
| 05/16/25 | Ralph Jopling, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 126 | 602 |
| 05/26/25 | Alma Davis, et vir. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 139 |
| 05/26/25 | George B. Goff, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 189 |
| 05/27/25 | Mary White, et al. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 216 |
| 07/31/25 | Robert Spivey | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 347 |
| 08/05/25 | Mrs. Viola Rushing by A.O. Whiddon, Agent & Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/25/25 | W.F. Hollister, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 172 |
| 08/27/25 | Mrs. Viola Rushing A.O. Whiddon, Agent & Attorney-In-Fact | Gulf Pipe Line Co. and Gulf Production Co. | | |
| 08/31/25 | C.H. Horton, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 190 |
| 09/08/25 | Arthur Bussey, et ux. | Gulf Pipe Line Co. and Gulf Production Co. | 127 | 503 |
| 09/23/25 | Mrs. M. Lochabay | Gulf Pipe Line Co. and Gulf Production Co. | 128 | 254 |
| 06/12/26 | C.C. Hayden | Gulf Pipe Line Co. and Gulf Production Co. | 131 | 137 |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 07/17/42 | Texas Highway Dept. | Texas Eastern Transmission Corp. | | |
| 05/04/48 | L.B. Dean | Gulf Refining Co. | 276 | 615 |

9

**P5-0043**

**EXHIBIT "B-1"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Shelby County, Texas</u>

| | | | | |
|---|---|---|---|---|
| | | and Gulf Oil Corp. | | |
| 05/04/48 | C.H. Horton, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 276 | 616 |
| 05/04/48 | R.W. Todd | Gulf Refining Co. and Gulf Oil Corp. | 276 | 617 |
| 05/06/48 | J.R. Anderson | Gulf Refining Co. and Gulf Oil Corp. | 277 | 329 |
| 11/09/51 | Earl Hanson, et al. | Gulf Refining Co | 306 | 192 |
| 06/10/52 | M.E. Bowlin, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 258 |
| 06/10/52 | H.Q. Hoard, et ux. | Gulf Refining Co. and Gulf Oil Corp. | 311 | 256 |
| 03/23/54 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 04/20/55 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 11/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 381 | 347 |
| 12/18/59 | Gulf, Colorado& Sante Fe R.R. Co. and Gulf Refining Co. | Texas Eastern Transmission Corp. | | |
| 09/29/71 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |

10

**P5-0044**

**EXHIBIT "B-2"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Rusk County, Texas</u>

| Date | Grantor | Grantee | Book | Page |
|---|---|---|---|---|
| 07/08/54 | Ruby L. Dumas, et vir. | Texas Eastern Transmission Corp. | 530 | 153 |
| 08/23/54 | Commissioners Court, Panola Co. Texas | Texas Eastern Transmission Corp. | | |
| 06/27/10 | J.A. Anderson, et ux. | Gulf Pipe Line Co. | 67 | 150 |
| 06/27/10 | M.J. Barton, et ux. | Gulf Pipe Line Co. | 67 | 138 |
| 06/27/10 | T.S. Barton, et ux. | Gulf Pipe Line Co. | 67 | 1400 |
| 06/27/10 | R.F. Garrison, et ux. | Gulf Pipe Line Co. | 67 | 144 |
| 06/27/10 | F.L. Hudgins, et ux. | Gulf Pipe Line Co. | 67 | 136 |
| 06/27/10 | J.R. Latimer, et ux. | Gulf Pipe Line Co. | 67 | 142 |
| 06/27/10 | S.M. Moore, et ux. | Gulf Pipe Line Co. | 67 | 134 |
| 07/06/10 | M.L. Moore, et al. | Gulf Pipe Line Co. | 67 | 130 |
| 07/21/10 | W.Y. Garrison | Gulf Pipe Line Co. | 67 | 146 |
| 07/29/10 | S.M. Moore, Agent for Nannie Fountain, et al. | Gulf Pipe Line Co. | 67 | 132 |
| 07/29/10 | The Brown Brick & Tile Co. | Gulf Pipe Line Co. | 67 | 183 |
| 08/02/10 | J.R. Latimer | Gulf Pipe Line Co. | 67 | 152 |
| 08/20/10 | R.F. Garrison | Gulf Pipe Line Co. | 67 | 182 |
| 11/16/10 | E.A. Blount | Gulf Pipe Line Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipe Line Co. | 1677 | 111 |
| 05/01/14 | Mrs. M.L. Moore | Gulf Pipe Line Co. | 83 | 193 |
| 07/03/23 | Marion C. Skelton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 612 |
| 07/03/24 | Nora Anderson | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 627 |
| 07/03/24 | M.J. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 629 |
| 07/03/24 | T.S. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 614 |
| 07/03/24 | R.F. Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 618 |
| 07/03/24 | J.R. Latimer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 617 |
| 07/03/24 | G.W. Young | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 611 |
| 07/05/24 | George Harris, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 609 |
| 07/08/24 | Earnest Weaver, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 615 |
| 07/09/24 | Jack Garrison, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 123 | 634 |
| 10/28/42 | S.M. Adams | Gulf Refining Co. & Gulf Oil Co. | 360 | 190 |

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

<u>Nacogdoches County, Texas</u>

| Date | Grantor | Grantee | Book | Page |
|---|---|---|---|---|
| 06/27/10 | Tom Crawford, et al. | Gulf Pipeline Co. | 72 | 647 |
| 06/27/10 | J.W. Hartt, et al. | Gulf Pipeline Co. | 74 | 16 |
| 06/27/10 | T.J. Melton, et al. | Gulf Pipeline Co. | 75 | 77 |
| 06/27/10 | J.A. Slay | Gulf Pipeline Co. | 72 | 644 |
| 06/28/10 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 74 | 21 |
| 06/28/10 | A.J. Fears, et ux. | Gulf Pipeline Co. | 72 | 642 |
| 06/28/10 | Mrs. M.I. Strode | Gulf Pipeline Co. | 74 | 189 |
| 06/28/10 | Dora Tims, et al. | Gulf Pipeline Co. | 74 | 192 |
| 06/29/10 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 75 | 75 |
| 06/29/10 | F.W. Parrott | Gulf Pipeline Co. | 72 | 631 |
| 06/29/10 | Arthur Peterson, et al. | Gulf Pipeline Co. | 75 | 73 |
| 06/29/10 | J.L. William, et ux. | Gulf Pipeline Co. | 75 | 68 |
| 06/30/10 | J.W. Boyd, et ux. | Gulf Pipeline Co. | 74 | 22 |
| 06/30/10 | R.H. Bums, et ux. | Gulf Pipeline Co. | 74 | 63 |
| 06/30/10 | T.J. Peterson | Gulf Pipeline Co. | 75 | 66 |
| 06/30/10 | John M. Richards, et ux. | Gulf Pipeline Co. | 74 | 39 |
| 07/01/10 | W.G. Hartt, et ux. | Gulf Pipeline Co. | 74 | 8 |
| 07/04/10 | Angelina County Lumber Co. | Gulf Pipeline Co. | 72 | 634 |
| 07/04/19 | S.C. Parrott, et al. | Gulf Pipeline Co. | 74 | 107 |
| 07/05/10 | Joe Manchaca, et ux. | Gulf Pipeline Co. | 74 | 24 |
| 07/05/10 | S. Michelli | Gulf Pipeline Co. | 74 | 31 |
| 07/05/10 | T. Supulvado, et ux. | Gulf Pipeline Co. | 74 | 31 |
| 07/06/10 | M. Peterson, et ux. | Gulf Pipeline Co. | 74 | 17 |
| 07/08/10 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 74 | 4 |
| 07/08/10 | F.M. Richards, et ux. | Gulf Pipeline Co. | 74 | 23 |
| 07/09/10 | Chas Hoya, et al. | Gulf Pipeline Co. | 72 | 637 |
| 07/14/10 | Alice Fears | Gulf Pipeline Co. | 72 | 633 |
| 07/18/10 | Elareo Cordova, et ux. | Gulf Pipeline Co. | 74 | 29 |
| 07/18/10 | J.H. Summers | Gulf Pipeline Co. | 74 | 2 |
| 07/19/10 | Josh Henson | Gulf Pipeline Co. | 74 | 10 |
| 07/19/10 | V.E. Rathbone | Gulf Pipeline Co. | 74 | 38 |
| 07/20/10 | A.M. Evans, et ux. | Gulf Pipeline Co. | 74 | 13 |
| | | | | |
| 07/20/10 | Dixon Greer | Gulf Pipeline Co. | 72 | 630 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Elma Greer | Gulf Pipeline Co. | 72 | 629 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/20/10 | Chas Hoya | Gulf Pipeline Co. | 74 | 6 |

1

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/20/10 | Mrs. Antonia Manchaca, et al. | Gulf Pipeline Co. | 74 | 33 |
| 07/20/10 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 90 | 429 |
| 07/20/10 | Moses Tims, et ux. | Gulf Pipeline Co. | 74 | 27 |
| 07/20/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 74 | 101 |
| 07/21/10 | Jessie Greer | Gulf Pipeline Co. | 74 | 131 |
| 07/29/10 | C.S. Means, et ux. | Gulf Pipeline Co. | 74 | 58 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/30/10 | Gladys Simpson, et al. | Gulf Pipeline Co. | 74 | 190 |
| 08/03/10 | Ida Barton, et vir. | Gulf Pipeline Co. | 75 | 68 |
| 08/08/10 | J.L. Williams | Gulf Pipeline Co. | 74 | 110 |
| 08/22/10 | Louis J. Wortham | Gulf Pipeline Co. | 74 | 62 |
| 08/23/10 | Eli Westfall, et al. | Gulf Pipeline Co. | 75 | 65 |
| 08/25/10 | Fred W. Halacher, et ux. | Gulf Pipeline Co. | 74 | 123 |
| 08/27/10 | Geo. S. McCarty, Ind. And as Gdn. | Gulf Pipeline Co. | 749 | 238 |
| 08/27/10 | Mrs. M. I. Strode, Ind. Et al. | Gulf Pipeline Co. | 74 | 102 |
| 09/01/10 | W.B. Melton, et ux. | Gulf Pipeline Co. | 74 | 507 |
| 09/01/10 | S.A. Smith, et ux. | Gulf Pipeline Co. | 75 | 30 |
| 09/30/10 | W.L. Moody | Gulf Pipeline Co. | 74 | 143 |
| 11/10/10 | Thos. E. Baker, et al. | Gulf Pipeline Co. | 74 | 188 |
| 11/12/10 | W.H. Davidson | Gulf Pipeline Co. | 75 | 77 |
| 11/16/10 | E.A. Blount | Gulf Pipeline Co. | 1676 | 741 |
| 12/07/10 | E.A. Blount | Gulf Pipeline Co. | 75 | 447 |
| 02/27/14 | S.C. Parrott, et al. | Gulf Pipeline Co. | 82 | 422 |
| 02/28/14 | Mrs. Antonia Manchaca | Gulf Pipeline Co. | 85 | 55 |
| 03/02/14 | T.L. Blackshear | Gulf Pipeline Co. | 82 | 382 |
| 03/02/14 | Mrs. F.W. Harlacher | Gulf Pipeline Co. | 85 | 53 |
| 03/02/14 | Josh Henson | Gulf Pipeline Co. | 82 | 407 |
| 03/02/14 | S.W. Hunt, et ux. | Gulf Pipeline Co. | 82 | 406 |
| 03/02/14 | Mrs. J.W. Strode | Gulf Pipeline Co. | 82 | 429 |
| 03/02/14 | R.C. White | Gulf Pipeline Co. | 82 | 435 |
| 03/03/14 | Angelina County Lumber Co. | Gulf Pipeline Co. | 82 | 376 |
| 03/03/14 | E.A. Blount | Gulf Pipeline Co. | 82 | 383 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | G.A. Blount | Gulf Pipeline Co. | 82 | 379 |
| 03/03/14 | Mrs. J.E. Patterson, et al. | Gulf Pipeline Co. | 82 | 424 |
| 03/03/14 | T. Supulvado, et ux. | Gulf Pipeline Co. | 82 | 426 |
| 03/04/14 | W. G. Aartt | Gulf Pipeline Co. | 82 | 410 |
| 03/05/14 | G.W. Faulkner, et ux. | Gulf Pipeline Co. | 85 | 52 |
| 03/05/14 | Alex Fears, et ux. | Gulf Pipeline Co. | 85 | 62 |

2

P5-0047

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 03/05/14 | W.H. Hollis, et ux. | Gulf Pipeline Co. | 82 | 405 |
| 03/05/14 | Moses Tims, et ux. | Gulf Pipeline Co. | 85 | 59 |
| 03/06/14 | R.L. Collins, et ux. | Gulf Pipeline Co. | 82 | 385 |
| 03/06/14 | Ed Tims, et ux. | Gulf Pipeline Co. | 82 | 433 |
| 03/25/14 | Alice Fears | Gulf Pipeline Co. | 82 | 391 |
| 03/26/14 | Bunyan Greer | Gulf Pipeline Co. | 82 | 392 |
| 03/26/14 | Dixon Greer | Gulf Pipeline Co. | 82 | 395 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 03/26/14 | Miss Elma Greer | Gulf Pipeline Co. | 82 | 394 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 04/08/14 | Mrs. Jessie Greer | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | Mrs. S.C. Parrott | Gulf Pipeline Co. | 85 | 58 |
| 04/08/14 | G.W. Tillery, Jr. | Gulf Pipeline Co. | 85 | 58 |
| 04/09/14 | Don Ceasar BeBlazzeon | Gulf Pipeline Co. | 85 | 51 |
| 04/10/14 | J.W. Christian | Gulf Pipeline Co. | 82 | 386 |
| 05/09/14 | Tom Hinjosa, et ux. | Gulf Pipeline Co. | 82 | 404 |
| 06/23/24 | C.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 601 |
| 06/23/24 | Mrs. M.I. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 600 |
| 06/30/24 | A.B. Crawford | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 626 |
| 06/30/24 | Tom Crawford, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 621 |
| 06/30/24 | Mart Melton | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 629 |
| 06/30/24 | Mrs. J.A. Slay | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 628 |
| 06/30/24 | Selener Smith, et vir. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 623 |
| 06/30/24 | E.D. Stubblefield, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 625 |
| 07/01/24 | D.F. Barton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 14 |
| 07/01/24 | J.W. Boyd, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 17 |
| 07/01/24 | G.F. Garrison | Gulf Pipe Line Co. & Gulf Production Co. | 124 | 14 |
| 07/01/24 | J.W. Hartt, Ind. and as Attorney in fact | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 619 |

3

P5-0048

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 07/01/24 | J.M. McMillan | Gulf Pipe Line Co. & Gulf Production Co. | 110 | 620 |
| 07/01/24 | T.J. Peterson | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 13 |
| 07/24/24 | W.O. Richards, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 15 |
| 07/01/24 | Wm. B. Worthham | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 10 |
| 07/02/24 | D.M. McDuffie | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 25 |
| 07/02/24 | W.B. Melton, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 8 |
| 07/03/24 | Max W. Hart | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 11 |
| 07/14/24 | Mrs. Annie Mullins, Ind. et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 37 |
| Replaced by: | | | | |
| 01/19/01 | Acme Brick Company | Lancer Resources Company | 1575 | 80 |
| 07/16/24 | R.H. Burns, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 112 | 81 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.A. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 134 |
| 04/28/25 | G.E. Stripling | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 130 |

4

P5-0049

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 04/28/25 | G.W. Tillery, Jr., | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 131 |
| 04/29/25 | Mrs. F.W. Halacher | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 135 |
| 04/30/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 132 |
| 05/05/25 | J. Thos. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 168 |
| 05/07/25 | L.L. Martin , et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 182 |
| 05/08/25 | R.A. Hall | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 191 |
| 05/08/25 | Mrs. A.L. Ramsey, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 219 |
| 05/09/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 229 |
| 05/09/25 | G.L. Olds, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 206 |
| 05/11/25 | Robert Berger | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 177 |
| 05/11/25 | Anna Brewer, Ind. and as Gdn. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 179 |
| 05/11/25 | R.J. Christian, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 172 |
| 05/11/25 | Rho Cox | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 178 |
| 05/11/25 | Josh Henson | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 165 |
| 05/11/25 | J.M. Miller, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 175 |
| 05/11/25 | Nacogdoches Ice Cream Co. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 171 |
| 05/11/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 184 |
| 05/11/25 | Marion Earl Reid, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 166 |
| 05/11/25 | Edwin Tillery | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 169 |
| 05/12/25 | A. Bockman, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 181 |
| 05/12/25 | A.T. Garrard et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 193 |

5

P5-0050

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/12/25 | Mrs. W.V Loveless | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 195 |
| 05/12/25 | L.B. Mast, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 237 |
| As Amended by | | | | |
| 05/29/2002 | AT Mast III, John C Mast, Patricia Mast George, & HGT Group, LP | Lancer Resources Company | 1747 | 97 |
| 05/12/25 | J.T. Smith, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 221 |
| 05/12/25 | I.L. Sturdevant | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 174 |
| 05/13/25 | Mrs. Julia Curl | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 218 |
| 05/13/25 | Geo. T. McNess | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 192 |
| 05/13/25 | J.W. Millard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 215 |
| 05/14/25 | R. Partin, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 209 |
| 05/14/25 | Bill Thorn, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 232 |
| 05/14/25 | Jim W. Weatherly, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 227 |
| 05/15/25 | Itasca P. Blount | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 216 |
| 05/15/25 | G. W Falkner, | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 231 |
| 05/15/25 | Bob T. Millard, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 149 |
| 05/15/25 | Bob T. Millard, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 225 |
| 05/15/25 | L.S. Taylor, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 474 |
| As Amended By: | | | | |
| 07/01/99 | Nacogdoches Trade Days, L.C. | Lancer Resources Company | 1371 | 169 |
| 05/19/25 | Mrs. Jessie Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 235 |
| 05/21/25 | J.R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 234 |

6

P5-0051

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/25 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 259 |
| 05/29/25 | Alex Fears, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 261 |
| 07/31/25 | Mrs. Elma Armfield | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 326 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/31/25 | T.L. Blackshear | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 335 |
| 07/31/25 | Dixon Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 328 |
| As Amended By: | | | | |
| 04/23/99 | Cendant Mobility Services Corp. | Lancer Resources Company | 1331 | 24 |
| 07/01/25 | E. S. Greer, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 329 |
| 07/31/25 | R.C. White | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 333 |
| 08/01/25 | W.C. Howard | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 330 |
| 08/01/25 | C.H. Muckelroy, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 336 |
| 08/01/25 | Mrs. J.W. Strode | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 339 |
| 08/01/25 | J.F. Wagner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 332 |
| 08/06/25 | C.H. Loeckle | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 341 |
| 08/21/25 | James D. Greer | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 371 |
| 08/21/25 | J.D. Skeeters | Gulf Pipe Line Co. & Gulf Production Co. | 114 | 369 |
| 02/23/26 | George W. Tillery, Jr., Gdn., et al. | Gulf Pipe Line Co. & Gulf Production Co. | | |
| 11/22/26 | J.E. Garrett | Gulf Pipe Line Co. & Gulf Production Co. | 117 | 241 |
| 05/09/28 | Mrs. A. L. Ramsey, Gdn., et al. | Gulf Pipe Line Co. | 122 | 213 |
| 07/02/28 | J.H. Summers, Jr. | Gulf Pipe Line Co. & Gulf Production Co. | 122 | 234 |
| 09/10/29 | J.H. Franklin, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 126 | 52 |

7

P5-0052

**EXHIBIT "B-3"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

## Nacogdoches County, Texas

| Date | Grantor | Grantee | Vol | Page |
|---|---|---|---|---|
| 11/27/34 | Rosa Prince, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 138 | 306 |
| 06/03/42 | Ollie Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 527 |
| 06/03/42 | Dock Sexton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 529 |
| 06/04/42 | Thos.E. Baker | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 530 |
| 06/04/42 | W. W Falkner, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 520 |
| 06/04/42 | W.F. Greer, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 517 |
| 06/04/42 | L. B. Mast  et al. | Gulf Pipe Line Co. & Gulf Production Co. | 157 | 519 |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 07/18/42 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/28/42 | J. R. Gray, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 160 | 323 |
| 05/24/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 10/08/49 | State Hwy. Dept. | Gulf Refining Co. | | |
| 12/04/51 | Thomas E. Laird, et ux. | Gulf Refining Co. | 223 | 369 |
| 10/19/54 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 09/03/59 | J.W. Sutton, et al. | Texas Eastern Transmission Corp. | 285 | 32 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 11/02/59 | Gulf Refining Company | Texas Eastern Transmission Corp. | 285 | 581 |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 03/02/60 | Gulf Refining Co. and Texas & New Orleans RR Co. | Texas Eastern Transmission Corp. | | N/R |
| 12/18/64 | Texas Hwy. Dept. | Texas Eastern Transmission Corp. | | |
| 01/17/69 | Texas Eastern Transmission | E.W. Roark | 353 | 741 |
| 12/12/73 | Moore Business Forms, Inc. | Texas Eastern Transmission Corp. | 387 | 349 |
| 01/13/76 | Bethel Baptist Church | Texas Eastern Transmission Corp. | 404 | 254 |

8

P5-0053

20-05027-rbk  Doc#321-1  Filed 11/08/23  Entered 11/08/23 19:07:00  Exhibit Deed to Express H2O Pg 26 of 32

**EXHIBIT "B-3"**

Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

### Nacogdoches County, Texas

| | | | | |
|---|---|---|---|---|
| 05/29/81 | Lenvel Standland, et al. | Texas Eastern Transmission Corp. | 465 | 124 |
| 02/16/83 | Big Red Enterprises, Inc. | Texas Eastern Transmission Corp. | 485 | 211 |
| 02/21/83 | Glenn Layton | Texas Eastern Transmission Corp. | 485 | 205 |
| 03/03/83 | East Texas Portable Building Co. | Texas Eastern Transmission Corp. | 485 | 200 |

9

P5-0054

**EXHIBIT "B-4"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

Angelina County, Texas

| Date | Grantor | Grantee | Book | Page |
|------|---------|---------|------|------|
| 07/02/10 | W.H. Bonner | Gulf Pipe Line Co. | 40 | 543 |
| 07/02/10 | W.F. Heaton | Gulf Pipe Line Co. | 30 | 421 |
| 07/02/10 | M.A. Modissett, et. al. | Gulf Pipe Line Co. | 30 | 100 |
| 07/04/10 | Andy Modissett | Gulf Pipe Line Co. | 30 | 43 |
| 07/06/10 | J.L. Calvert | Gulf Pipe Line Co. | 30 | 44 |
| 02/27/14 | W.E. Massingill | Gulf Pipe Line Co. | 35 | 677 |
| 02/27/14 | J.C. Modissett, et ux. | Gulf Pipe Line Co. | 35 | 678 |
| 02/27/14 | M.A. Modissett, et. al. | Gulf Pipe Line Co. | 35 | 679 |
| 03/04/14 | J.W. Spears | Gulf Pipe Line Co. | 35 | 680 |
| 03/27/14 | W.F. Heaton, et ux. | Gulf Pipe Line Co. | 35 | 681 |
| 04/25/25 | E.C. Heaton, et al. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 157 |
| 04/25/25 | Mrs. W.E. Massingill | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 160 |
| 04/25/25 | Mrs. Martha A Modisett | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 159 |
| 04/25/25 | J.W Spears | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 158 |
| 04/29/25 | J.C. Modisett, et ux. | Gulf Pipe Line Co. & Gulf Production Co. | 63 | 175 |
| 06/02/42 | J.C. Modisett, et ux. | Gulf Refining Co. & Gulf Oil Corp. | 101 | 204 |
| 08/29/50 | Texas Hwy. Dept. | Gulf Refining Co. | | |
| 12/02/59 | Gulf Refining Co. | Texas Eastern Transmission Corp. | 236 | 584 |

**EXHIBIT "B-5"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

**EXCEPTIONS AS NOTED
IN 1992 TEPCO TO LANCER PURCHASE AGREEMENT
Nacogdoches County, Texas**

1. Tracts 20, 21, 26, 46 and 67 in Nacogdoches County, Texas involve easements that have been released prior to the date of the Purchase and Sale Agreement or from which the pipe has been removed prior to the date of this Agreement.

2. (A) Amendatory Agreement ("Agreement"), dated 1/13/76, between Bethel Baptist Church, by Trustees ("Bethel"), and Texas Eastern Transmission Corporation ("Corporation"), recorded in Volume 404, Page 254, Deed Records, Nacogdoches County, Texas. Said Agreement amends three easements recorded in Volume 74, Page 8, Volume 82, Page 410 and Volume 114, Page 369, whereby Corporation agrees to remove its existing pipeline from that portion of the property owned by Bethel and Bethel grants to Corporation an alternate right of way within a portion of land for future pipeline construction, subject to stated conditions.

   (B) Amendatory Agreement ("Agreement"), dated 03/03/83, between East Texas Portable Building Co., Inc. ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"), recorded in Volume 485, Page 200, Deed Records, Nacogdoches County, Texas. Said Agreement amends easement recorded in Volume 114, Page 117, whereby Corporation agrees to re-route the pipeline and restrict easement to centerline as described therein, subject to certain rights reserved by Owner, as related to potential development of lands by Owner.

   (C) Amendatory Agreement ("Agreement"), dated 02/21/83, between Glenn Layton ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"), recorded in Volume 485, Page 205, Deed Records, Nacogdoches County, Texas. Said Agreement amends easement recorded in Volume 114, Page 117, whereby Corporation agrees to re-route the pipeline and restrict easement to centerline as described therein, subject to certain rights reserved by Owner, as related to potential development of lands by Owner.

   (D) Amendatory Agreement ("Agreement"), dated 02/16/83, between Big Red Enterprises, Inc. ("Owner"), and Texas Eastern Transmission Corporation ("Corporation"), recorded in Volume 485, Page 211, Deed Records, Nacogdoches County, Texas. Said Agreement amends easement recorded in Volume 114, Page 177, whereby Corporation agrees to re-route the pipeline and restrict easement to centerline as described therein, subject to certain rights reserved by Owner, as related to potential development of lands by Owner.

   (E) Amendatory Agreement ("Agreement"), dated 05/29/81, between Lenvel Stanaland, et al. ("Owners"), and Texas Eastern Transmission Corporation

1

**P5-0056**

**EXHIBIT "B-5"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express Gas Pipeline, LP and Black Duck Properties, LLC

("Corporation"), recorded in Volume 465, Page 124, Deed Records, Nacogdoches County, Texas.  Said Agreement amends easement recorded in Volume 114, Page 174, whereby Corporation agrees to (i) cut and seal pipeline, (ii) Owners may then remove pipe and will own pipe, (iii) after removal of pipe Owners will be free to mine the sand and (iv) the easement of Corporation is restricted to centerline as described therein.

(F)  Amendatory Agreement ("Agreement"), dated 12/12/73, between Moore Business Forms, Inc. ("Moore"), and Texas Eastern Transmission Corporation ("Corporation"), recorded in Volume 387, Page 349, Deed Records, Nacogdoches County, Texas.  Said Agreement amends easement recorded in Volume 114, Page 149 and Volume 114, Page 239, whereby Corporation agrees to confine the right of way to centerline described therein and to abandon its existing 8" pipeline as it lies on the property owned by Moore.

(G) Partial Release, dated 1/17/69, from Texas Eastern Transmission Corporation ("Corporation") to E.W. Roark ("Owner"), recorded in Volume 353, Page 741, Deed Records, Nacogdoches County, Texas.  Said Partial Release releases that portion of lands covered by Easements recorded in Volume 114 , Page 166 and Volume 114, Page 168 which lies south of Texas State Highway 7 and describes the centerline of new right of way,

2

P5-0057

**EXHIBIT "B-6"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

**AMENDMENTS, RELEASES AND NEW RIGHTS OF WAYS AND
EASEMENTS SINCE TEPCO TO LANCER SALE**
Nacogdoches, Rusk and Shelby Counties

(1) Amended and Restated Release, Abandonment and Relocation of Easement, dated 04/23/99, between Cendant Mobility Services Corporation, ("Cendant"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1331, Page 24, Deed Records, Nacogdoches County, Texas. Said Agreement amends easements recorded in Volume 72, Pages 629-630, Volume 82, Page 394-395, Volume 114, Page 328, Volume 74, Page 58, Volume 72, Page 630, Volume 82, Page 395, and Volume 114, Pages 326-327, whereby Lancer agrees to release a portion of the easements and relocate the existing easement around the perimeter boundary of the 5.65 acre tract.

(2) Amendment to Right of Way Agreement, effective July 1, 1999 by and between Lancer Resources Company and Nacogdoches Trade Days, LLC, recorded in Volume 1371, Page 169, whereby Lancer agrees to limit the right of way to a 20' permanent right of way and Lancer retained the right to utilize reasonable work space for the installation of a new pipeline or the replacement of the existing pipeline.

(3) Release of Easement, dated 01/19/2001, between Acme Brick Company, ("Acme"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1560, Page 315, Deed Records, Nacogdoches County, Texas and Volume 2245, Page 656, Official Public Records, Rusk County, Texas. Said Agreement amends easement recorded in Volume 112, Page 37, whereby Lancer agrees to release easement in exchange for new Pipeline Right of Way Easement described below.

(4) Pipeline Right of Way Easement, dated 01/19/2001, between Lancer Resources Company, ("Lancer"), and Acme Brick Company, ("Acme"), recorded in Volume 1575, Page 80, Deed Records, Nacogdoches County, Texas and at Volume 2252, Page 355, Deed Records, Rusk County, Texas. Said agreement grants easement to Lancer as described in Agreement.

(5) Release, Abandonment and Relocation of Easement, effective 05/01/2002, between A.T. Mast III, John C. Mast, Patricia Mast George, ("Mast"), and Lancer Resources Company, ("Lancer"), recorded in Volume 1747, Page 97, Deed Records, Nacogdoches County, Texas. Said agreement amends easements recorded in Volume 114, Pages 237-238 of the Deed Records of Nacogdoches County, Texas and relocated easement as described in Agreement.

1

P5-0058

**EXHIBIT "B-6"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(6) Ratification of Right of Way Agreement by and between Florence J. Bowlin, Linda K. Knight and Robert D. Templin and The Express Gas Pipeline, L.P. dated May 11, 2011 and filed of record at Document Number 2011003582 of the Shelby County Deed Records ("SCDR") and the Letter Agreement referenced therein. Said agreement amends an easement recorded in Volume 126, Page 539, et seq., of the SCDR as described in said Letter Agreement.

(7) Agreed Judgment in Cause No. 09CV30,712 styled *Donald Lewis Scrimsher and Chhavy Khorn v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 2011003023 of the SCDR and the Ratification of Right of Way Agreement by and between Donald Lewis Scrimsher and Chhavy Khourn and The Express Gas Pipeline, L.P. dated March 8, 2011 and filed of record at Document Number 2011003024 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto, amends easements recorded in Volume 131, Page 137, et seq., and Volume 126, Page 503, et seq., of the SCDR as described in said Agreement.

(8) Agreed Judgment in Cause No. 09CV30,448 styled *Steve Biel and wife Regina Biel v. The Express Gas Pipeline, L.P.* in the District Court of Shelby County Texas and filed at Document Number 20100013501 of the SCDR and the Ratification of Right of Way Agreement by and between Steve Biel and Regina Biel and The Express Gas Pipeline, L.P. dated October 30, 2010 and filed of record at Document Number 20100013500 of the SCDR and the Agreement referenced in said Ratification. Said Agreement, and the subsequent Addendum thereto dated November 15, 2013, amends an easement recorded in Volume 127, Page 54, et seq., of the SCDR as described in said Agreement.

(9) Ratification of Right of Way Agreement by and between Steve Cockrell, Truitt Cockrell and Carolyn Cockrell Daw and The Express Gas Pipeline, L.P. dated May 27, 2015 and filed of record at Document Number 2015002621 of the SCDR and the Agreement referenced in said Ratification dated June 26, 2015. Said Agreement amends easements recorded in Volume 127, Page 142, et seq., and Volume 124, Page 479, et seq., of the SCDR as described in said Agreement.

(10) Ratification of Right of Way Agreement by and between Cecil McCune and Deborah J. McCune and The Express Gas Pipeline, L.P. dated May 27, 2015 and filed of record at Document Number 2015002620 of the SCDR and the Agreement referenced in said Ratification dated May 25, 2015. Said Agreement amends easements recorded in Volume 126, Page 528, et seq., and Volume 127, Page 138, et seq., of the SCDR as described in said Agreement.

2

**P5-0059**

**EXHIBIT "B-6"**
Attached hereto and made a part of that certain
Purchase & Sale Agreement dated this 14th day of August, 2017, between The Express
Gas Pipeline, LP and Black Duck Properties, LLC

(11)Letter Agreement by and between Classic Hydrocarbons Operating, Inc. and
The Express Gas Pipeline, L.P. dated April 18, 2012 regarding the re-routing
of the 8" pipeline around the Widdon Gas Unit #2 pad site location and the
R&M Farms Unit #3 pad site location in Shelby County, Texas.

3

P5-0060

# johns&counsel pllc

14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
cjohns@johnsandcounsel.com

December 13, 2018

Larry Wright
410 Spyglass Road
McQueeney, Texas 78123
larrymwright54@yahoo.com

*Via email and certified mail, return receipt requested*

Dear Mr. Wright,

My firm represents Daniel Moore, DMA Properties, Inc., SCMED Oilfield Consulting, LLC, and Darin Borders.

By this letter, we are giving you notice, in addition to any and all other forms of notice you have received or are deemed to have received, of a potentially adverse claim to your interests. Attached are documents filed of record that confirm my clients' claim for a net-profit interest (running with the land) in the P-21 Express Pipeline right-of-way.

We also advise you to preserve all communications, documents, and other records having anything to do with any of my clients or the P-21 Express Pipeline right-of-way.

Cordially,

Christopher S. Johns

**P5-0061**

00193765  VOL: 3610  PG:  413

## AGREEMENT AFFIDAVIT

I, Frank Daniel Moore, acting on behalf of DMA Properties, Inc. as its sole member and President did in February 2018 resign from Black Duck Properties, LLC in exchange for transferring interest in several business deals and such certain interest being assigned, transferred or created to and for DMA Properties, Inc. from Black Duck Properties, LLC in exchange for my resignation in Black Duck Properties, LLC being agreed to. DMA Properties, Inc. and Black Duck Properties, LLC fully executed an agreement regarding the "P-21 Express Pipeline" Right-of-Way that runs through Angelina, Nacogdoches, Shelby, and Rush counties in the state of Texas. The "AGREEMENT" was executed on February 7, 2018, a copy of which is attached as Exhibit "A" hereto.

_____
Frank Daniel Moore

Before me, the undersigned authority, on this day personally appeared Frank Daniel Moore, known to me to be the person whose name is subscribed to the foregoing instruments and acknowledged to me that Frank Daniel Moore executed the same as the act of DMA Properties, Inc. as its President and as signed in Exhibit "A" hereto and for the consideration therein expressed.

Given under my hand and seal of office this 27th day of November 2018.

_____
Notary Public, State of North Carolina

My commission expires: June 27, 2023

| Francine K. Elliott |
| NOTARY PUBLIC |
| Jones County, NC |
| My Commission Expires June 27, 2023 |

FILED AS
PRESENTED

Rusk County



TRUE AND CORRECT COPY OF ORIGINAL FILED IN RUSK COUNTY CLERK'S OFFICE.

3610  PG:  414

Exhibit A

## AGREEMENT

THIS AGREEMENT is made and entered into this 7th day of February 2018 by and between DMA PROPERTIES, INC., a South Carolina corporation and BLACK DUCK PROPERTIES, LLC, a Texas limited liability company.

### Witnesseth:

NOW THEREFORE, in consideration of the mutual promises of the parties; in reliance on the representations, warranties, covenants, and conditions contained in this Agreement; and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties agree as follows:

1.  Consideration: DMA Properties, Inc. shall be paid twenty percent (20%) ("Net Profits Share") of the Net Profits from Black Duck Properties, LLC or its successors or assigns during the period of time beginning on the date of first written above (the "Period").
    a.  Net Profits shall mean gross revenues actually received by Black Duck Properties, LLC., or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.
    b.  Black Duck Properties, LLC.'s obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and Black Duck Properties, LLC. binds its successors and assigns to the payment of the Net Profits Share.

The parties agree to execute such other and additional legal instruments, consents, ratifications and other matters as may be reasonably required in order to effectuate the intent of this Agreement. The terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns.

Each party hereby warrants:

a.) That it has full power and authority to enter into this Agreement.
b.) That such entry and the performance of its obligations under these terms and conditions will not breach any other agreement to which it is a party or by which it is bound.

PAGE: 1 of 2                    INITIAL: L.M.W. _____    INITIAL: F.D.M _____

TRUE AND CORRECT COPY OF ORIGINAL FILED IN RUSK COUNTY CLERK'S OFFICE.

P5-0063

00193785 VOL: 3610  PG:  415

c.) That it has taken all necessary actions and obtained all relevant consents approvals and/or authorizations to enable it to lawfully and effectively enter into and perform its obligations under this agreement.

d.) Each party agrees that upon this agreement being fully executed that this will become the ONLY valid agreement between the parties AND this agreement as mentioned in the binding "EMAIL AGREEMENT" ONLY IN REGARDS to the P-21 Express Pipeline that, both parties agree that this agreement satisfies the duties ( in the Email Agreement ) regarding ONLY the P-21 Express Pipeline and that all other prior agreements or duties of any kind that relate to the P-21 Express Pipeline are NULL AND VOID.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their authorized officers as of the close of business on the date first above written.


DMA PROPERTIES, INC.

By: _____

Frank Daniel Moore, Principal




BLACK DUCK PROPERTIES, LLC

By: _____

Larry M. Wright, Manager

PAGE: 2 of 2

STATE OF TEXAS                    COUNTY OF RUSK     FILED FOR RECORD
I hereby certify that this instrument was filed on
the date and time stamped hereon   by me and     Dec 04,2018 11:19A
was duly recorded  in the volume  and page of the
named records  of Rusk County, Texas  as stamped   TRUDY MCGILL,
hereon by me.        OFFICIAL PUBLIC RECORDS        COUNTY CLERK
                                                    RUSK COUNTY, TEXAS

Dec 04,2018 11:19A


TRUE AND CORRECT COPY   TRUDY MCGILL, COUNTY CLERK
OF ORIGINAL
FILED IN RUSK           RUSK COUNTY, TEXAS                By:Alesha Richmond, DEPUTY
COUNTY CLERK'S OFFICE.

THE STATE OF TEXAS:
COUNTY OF RUSK: I, TRUDY McGILL, County Clerk of Rusk County, Texas, do hereby certify that the above and foregoing instrument is a true and correct copy of the original instrument filed in this office on the 4 day of December, A.D. 2018, at 11:19 o'clock A M, as the same appears of record in Vol. 3610, Page 412 thru Page 415 of the Official Public Records of Rusk County, Texas. Given Under My Hand and Seal of Office this 4 day of December A.D. 2019.
TRUDY McGILL, County Clerk of the County Court of Rusk County, Texas
By: _____ Deputy

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

Jennifer L. Fountain, County Clerk
Shelby County, Texas
December 04, 2018  12:44:02 PM
    FEE: $42.00 EPARKER      2018003892
    AFF

**P5-0065**

*Agreement for Assignment and Assumption of Specific Contract Affiant*

*I, Darin Borders acting as president for Darin Borders, Inc being the general partner for Longbranch Energy, LP did in June 2016 assign the purchase sale agreement between Express Pipeline Connection, LLC, and Longbranch Energy, LP dated February 19, 2016 to Black Duck Properties, LLC a copy which is attached Exhibit "A" hereto.*

*State of Texas County of Shelby*

*Darin Borders*

This instrument was acknowledged before me on Oct. 2, 2017 by Darin Borders. ˡ

*Given under my hand and seal of office this 2 day of October 2017.*

ASHLEY CHANDLER
MY COMMISSION EXPIRES
March 27, 2019

Notary Public's Signature

3

## AGREEMENT FOR ASSIGNMENT AND ASSUMPTION OF SPECIFIC CONTRACT

THIS ASSIGNMENT AND ASSUMPTION OF SPECIFIC CONTRACT ("*Assignment and Assumption Agreement*") is made and entered into this ____ day of June, 2016, by and between LONGBRANCH ENERGY, L.P., a Texas limited partnership ("*ASSIGNOR*") and BLACK DUCK PROPERTIES, LLC, a Texas limited liability company ("*ASSIGNEE*").

### Witnesseth:

WHEREAS, ASSIGNOR has agreed to assign to ASSIGNEE and ASSIGNEE has agreed to assume that certain Purchase & Sale Agreement dated February 19, 2016, by and between The Express Pipeline Connection, LLC, as Seller, and Longbranch Energy, L.P., as Buyer, and attached hereto as Exhibit "A" (the "Contract"); and

WHEREAS, ASSIGNOR is executing and delivering this Assignment and Assumption Agreement for the purpose of assigning and transferring to ASSIGNEE all rights, titles and interest in and obligations under and to the Contract; and

WHEREAS, ASSIGNEE is executing and delivering this Assignment and Assumption Agreement for the purpose of assuming all obligations of ASSIGNOR under the Contract.

NOW THEREFORE, in consideration of the mutual promises of the parties; in reliance on the representations, warranties, covenants, and conditions contained in this this Assignment and Assumption Agreement; and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties agree as follows:

1. Consideration: ASSIGNOR shall be paid twenty percent (20%) ("Net Profits Share") of the Net Profits from ASSIGNEE or its successors or assigns during the period of time beginning on the date of first written above (the "Period").

    a. Net Profits shall mean gross revenues actually received by ASSIGNEE, or its successors or assigns directly from the operation, use, maintenance or sale (including partial sales or conveyances) of the pipe and related facilities commonly known as the P-21 or Express pipeline less actual cost of goods and costs and expenses associated with the operation or sale of the same.

    b. ASSIGNEE'S obligation to pay the Net Profits Share shall attach and run with the P-21 or Express pipeline and ASSIGNEE binds its successors and assigns to the payment of the Net Profits Share.

For the consideration, covenants and warranties listed herein, ASSIGNOR has ASSIGNED, TRANSFERRED, CONVEYED, DELIVERED and SET OVER unto ASSIGNEE, and, by these presents, ASSIGNOR hereby ASSIGNS, TRANSFERS, CONVEYS, DELIVERS and SETS OVER unto ASSIGNEE all its right, title and interest in and obligations under and to the Contract, and ASSIGNEE hereby assumes the obligations of ASSIGNOR under the Contract.

The parties agree to execute such other and additional legal instruments, consents,

Page 1 of 3

**P5-0067**

ratifications and other matters as may be reasonably required in order to effectuate the intent of this Assignment and Assumption Agreement. The terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their duly authorized officers as of the close of business on the date first above written.

**ASSIGNOR:**

LONGBRANCH ENERGY, L.P.

By: _____
Darin Borders, President of   Darin
Borders, Inc., its General Partner

**ASSIGNEE:**

BLACK DUCK PROPERTIES, LLC

By: _____
Larry M. Wright, Manager

By: _____
Hagan Cole, Manager

By: _____
Frank D. Moore

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

Jennifer L. Fountain, County Clerk
Shelby County, Texas
October 02, 2017  12:43:00 PM
  FEE: $34.00 BADKISON    2017003322
  AGR

**P5-0068**