IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LARRY WRIGHT, *Petitioner* | § § § § | |
| -vs- | § § | Case No. SA-25-CV-01452-XR |
| RONALD B. KING, U.S. BANKRUPTCY JUDGE FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION, *Respondent* | § § § § § § | |

## ORDER DENYING PETITION FOR WRIT OF MANDAMUS

On this date, the Court considered Petitioner Larry Wright's Petition for Writ of Mandamus (ECF No. 1), Real Parties in Interest's Response (ECF No. 7), and Petitioner's Reply (ECF No. 10). After careful consideration, the Petition is **DENIED**.

## BACKGROUND

Petitioner Larry Wright seeks mandamus relief from an oral discovery order issued by Bankruptcy Judge Ronald B. King. ECF No. 1. The relevant facts are as follows.

The underlying adversary proceeding involves a multi-million-dollar pipeline right-of-way ("ROW"). Upon confirmation of the chapter 11 plan, KrisJenn Ranch LLC, which Wright owns, possessed the ROW. ECF No. 3 at 98. KrisJenn then transferred the ROW to Express H2O Pipeline & ROW, LLC—another entity associated with Wright. *In re KrisJenn Ranch, LLC*, No. 20-50805-RBK, 2024 WL 1297828, at *2 (Bankr. W.D. Tex. Mar. 26, 2024). This transfer violated the chapter 11 plan, but Express H2O indicated that it "intend[ed] to comply with all obligations" of the plan. *Id.* at *2 & n.2. Wright has allegedly testified that the ROW was KrisJenn's only asset and is now Express H2O's only asset. ECF No. 7 at 23.

After a bench trial and an appeal,[1] the bankruptcy court (1) held that Wright breached a fiduciary duty; (2) granted declaratory judgment that Real Parties in Interest ("RPIs") DMA Properties, Inc. and Longbranch Energy, LP each have a valid 20% net-profits interest in the ROW, which interest runs with the land;[2] (3) imposed a constructive trust "on the ROW in the hands of Express H2O, unless . . . Wright and Express H2O transfer ownership of the ROW back to KrisJenn"; and (4) allowed RPIs to recover attorneys' fees. ECF No. 3 at 92–103. The bankruptcy court clarified that

> Wright [could] recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW.

*KrisJenn Ranch*, 2024 WL 1297828, at *2. The bankruptcy court issued a final judgment, and this Court later affirmed. *KrisJenn Ranch LLC v. DMA Properties, Inc.*, 24-cv-365-XR, ECF Nos. 20–21 (W.D. Tex. Aug. 11, 2025).

In January 2025, DMA moved to enforce the constructive trust, asking the bankruptcy court to order Wright to transfer the ROW to DMA. *KrisJenn Ranch, LLC v. DMA Properties, Inc.*, Case No. 20-05027-rbk (Bankr. W.D. Tex.), ECF No. 368. In February 2025, after a hearing, Judge King granted DMA's motion and ordered Wright to "transfer and convey—or cause to be transferred and conveyed—all rights, title, and interest in the ROW to DMA" by March 13, 2025. *See id.* ECF Nos. 387 (Order), 380 (Hearing Transcript). This conveyance would be "subject to the first-monies obligation of $4,700,000 imposed in Wright's favor under the Final Judgment

---

[1] *In re KrisJenn Ranch, LLC*, 661 F. Supp. 3d 654, 673 (W.D. Tex. 2023) (Pulliam, J.), *appeal dismissed sub nom. Matter of KrisJenn Ranch, L.L.C.*, No. 23-50227, 2023 WL 6393903 (5th Cir. May 25, 2023).

[2] Frank Daniel Moore, who owns DMA, is also an RPI here. ECF No. 7 at 3.

[#329], pursuant to which Wright shall be entitled to receive the first $4,700,000 in rents, royalties, other income, or sale proceeds generated by the ROW." *Id.* ECF No. 387.

Judge King subsequently withdrew the order without prejudice. *Id.*, ECF No. 403. In doing so, he made clear that he did "not wish to interfere with the appeal" that was pending before this Court at the time. *Id.*

After this Court affirmed, RPIs again moved for Judge King to order Wright to transfer the ROW to DMA. *Id.* ECF No. 498. In the alternative, they requested leave to file state-law claims for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *Id.*

On November 7, 2025, the bankruptcy court conducted a hearing on a motion to compel Wright to attend an in-person deposition. *Id.*, ECF No. 559. At the hearing, RPIs explained that Wright had failed to appear for an in-person deposition and had insisted on conducting the deposition remotely. *Id.* at 4–5. Further, during the remote deposition, Wright's counsel allegedly refused to allow Wright to answer numerous questions, including questions about Express H2O. *Id.* at 5–6. RPIs' counsel argued at the hearing that they were "entitled to have these relevant questions answered." *Id.* at 13. Wright's counsel objected that the motion before the court was to compel attendance at a deposition, not to compel answers. *Id.* at 6, 14. They also argued that Wright was not required to sit for an in-person deposition. *Id.* at 14–22.

From the bench, Judge King ordered Wright to appear for an in-person deposition. *Id.* at 24. Wright's counsel asked Judge King to clarify the scope of the deposition, stating that RPIs' counsel had "already asked all her asset questions." *Id.* at 26. Judge King responded that Wright "didn't answer anything about H2O Pipeline." *Id.* Wright's counsel argued that Wright had answered some questions about the pipeline (presumably meaning the ROW) and that he was not required to answer questions about Express H2O. *Id.* at 26–27. Judge King dismissed that

argument, *id.* at 26, 28–29, and said that Wright has "got to testify about" Express H2O and about his management of Express H2O and the ROW. *Id.* at 33–34. Wright's counsel again expressed concern, saying that Wright's "manager job on Express [H2O] doesn't relate to enforcement of the attorney's fee as judgment." *Id.* at 43. They stated their understanding that Judge King was "allowing discovery on [RPIs'] TUFTA claim" and motion to enforce. *Id.* Judge King confirmed that was correct. *Id.* He noted that Express H2O was "the recipient of a transfer that could be a fraudulent transfer" and that "we have to find out what's going on, who owns [the ROW], what [Wright] knows." *Id.* at 44. As such, Judge King said that Wright "needs to testify to what he knows about this and what he's done and what he plans to do." *Id.* Judge King made clear that confidentiality protections would be available to the extent necessary. *Id.*

RPIs' counsel also asked "whether or not [they] need[ed] to file a motion to compel" production of documents about Express H2O, including "all documents related to its assets" and "contracts that Mr. Wright personally signed on behalf of Express H2O as its manager." *Id.* at 51. Judge King responded, "We need all that subject to confidentiality . . . protection. . . . [A]nything that's not privileged, you'll need to produce." *Id.* at 51–52.

Wright then filed this Petition for a Writ of Mandamus, asking this Court to "direct[] the Bankruptcy Court to vacate its order compelling testimony and production." ECF No. 1 at 41. Wright argues that the bankruptcy court lacks jurisdiction and authority (i) to modify the Final Judgment by directing Express H2O to transfer the ROW, and (ii) over the Judgment Creditor's proposed state-law TUFTA claims. *See* ECF Nos. 1, 2. According to Wright, the bankruptcy court "lacks subject matter jurisdiction to reopen or expand proceedings beyond enforcement of the" attorneys' fee award. ECF No. 1 at 11.

**DISCUSSION**

## I.     Legal Standard

Mandamus is a "drastic" remedy that should "be invoked only in extraordinary situations." *In re LeBlanc*, 559 F. App'x 389, 391 (5th Cir. 2014) (quoting *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976)). "[T]hree conditions must be satisfied before [a writ of mandamus] may issue." *Id.* (quoting *Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 380 (2004)). First, the petitioner must show a "clear and indisputable right to the writ." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). Second, the petitioner must have "no other adequate means to attain the relief he desires." *Id.* And third, the court must be "satisfied that the writ is appropriate under the circumstances." *Id.*

To demonstrate a "clear and indisputable right to the writ" "require[s] more than showing that the [lower] court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Id.* (first alteration in original) (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)). Rather, a petitioner must show either (1) the lower court clearly abused its discretion, producing "patently erroneous results" or (2) "exceptional circumstances amounting to a judicial usurpation of power." *Id.* (quoting *Lloyd's Reg. N. Am.*, 780 F.3d at 290 & *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017)). That is, the lower court must have "*clearly and indisputably erred.*" *Id.* (emphasis in original) (quoting *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000)).

A writ of mandamus directing a lower court to vacate or withdraw a discovery order can be proper in some circumstances. *See In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987). But "interlocutory review of 'ordinary discovery orders' is generally 'unavailable, through mandamus or otherwise.'" *LeBlanc*, 559 F. App'x at 392 (quoting *Cheney*, 542 U.S. at 381).

## II. Analysis

Wright has not shown a clear and indisputable right to mandamus relief.

### a. The Bankruptcy Court has Jurisdiction to Enter the Discovery Order

Wright primarily argues that the bankruptcy court lacks jurisdiction (1) to order Wright and Express H2O to transfer title of the ROW to DMA and (2) over RPIs' proposed TUFTA claims. As a result, Wright argues, Judge King lacked authority to order discovery on those issues, rendering the November 7 order improper.

Bankruptcy courts retain jurisdiction to enforce their own orders, including their final judgments. *In re Offshore Fin. Corp.*, 319 B.R. 845, 847 (Bankr. N.D. Tex. 2005) (citing *Celotex Corp. v. Edwards,* 514 U.S. 300 (1995)); *cf. M. D. by next friend Stukenberg v. Abbott*, 929 F.3d 272, 278 (5th Cir. 2019) ("The district court undoubtedly has the equitable power to oversee compliance with its own injunction."). And they can order post-judgment discovery to that end.[3] After all, "[e]quity would not be achieved if a court decided simply to rubber-stamp [a] . . . party's unsupported self-assessment of its compliance with a court order." *Nat'l L. Ctr. on Homelessness & Poverty*, 842 F. Supp. 2d at 131.

The November 7 discovery order was properly aimed at enforcing the Final Judgment. The Final Judgment imposed a constructive trust "on the ROW in the hands of Express H2O, unless . . . Wright and Express H2O transfer ownership of the ROW back to KrisJenn." ECF No. 3 at 92–99.

---

[3] *See, e.g.*, *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (allowing post-judgment discovery on a motion to vacate a prior order, based on federal courts' "broad discretion in using [their] inherent equitable powers to ensure compliance with [their] orders"); *cf. Abdi v. McAleenan*, No. 1:17-CV-00721 EAW, 2019 WL 1915306, at *2 (W.D.N.Y. Apr. 30, 2019) (collecting cases for the proposition that "'appropriate discovery should be granted' where 'significant questions regarding noncompliance [with a court order] have been raised'" (alteration in original)).

6

Constructive trusts are "remedial in character" and "have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice." *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974).

> A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

*Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied). "[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust," *id.*; indeed, a constructive trust's "form is practically without limit," *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). "Under the usual version of the constructive trust doctrine, one who has been unjustly enriched at another's expense is treated under state law much like a trustee, holding legal title for the injured party's benefit." *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 435 (5th Cir. 1994); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 883 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Wright and Express H2O thus hold the ROW for RPIs' benefit. Indeed, unless they transfer it back to KrisJenn, they have "an equitable duty to convey" it to RPIs, subject to Wright's interest. *See Baker Botts*, 224 S.W.3d at 736.[4]

Judge King expressed concern that the transfer of the ROW from KrisJenn to Express H2O might have been fraudulent. *KrisJenn Ranch*, Case No. 20-05027-rbk, ECF No. 559 at 44. Wright does not dispute that the transfer was in violation of the chapter 11 plan. Wright has seemingly

---

[4] Wright claims that RPIs seek to modify the Final Judgment by adding a "disgorgement" remedy. But RPIs request no such thing. *See KrisJenn Ranch*, Case No. 20-05027-rbk, ECF No. 498. Rather, they have asked the bankruptcy court to enforce the existing final judgment. *See id.* Again, the constructive trust already imposes a duty to, at some point, convey the ROW to RPIs. *See Baker Botts*, 224 S.W.3d at 736. Especially given the "practically [unlimited]" forms a constructive trust can take, *Bocanegra*, 605 S.W.2d at 851, the Court highly doubts that ordering such a conveyance is beyond the bankruptcy court's "broad discretion to fashion remedies as equity requires, to ensure compliance with" the existing Final Judgment. *Abdi*, 2019 WL 1915306, at *2. And Wright has provided no authority to assuage that doubt.

conveyed his interest in Express H2O to family members and a trust in his wife's name, without receiving anything in return. ECF No. 8 at 6. He has testified that he is likely to receive a salary as Express H2O's manager, ECF No. 8 at 934, and RPIs argued to Judge King that "[i]t's starting to look like Mr. Wright is developing a plan to pull down the profits of [the ROW] so that [RPIs'] 40 percent interest in the net profits . . . [is] diminished." *KrisJenn Ranch*, Case No. 20-05027-rbk, ECF No. 559 at 10; *see also id.* ECF No. 380 at 45–46 (Judge King stating, "I'm not sure that Mr. Wright is doing everything that's in the best interests of [RPIs,] because DMA owns a 20 percent profits interest . . . . I'm not sure that Mr. Wright is protecting that. He might be.").

These considerations raise doubt about whether Wright has complied with the constructive trust. To ensure that he has, Judge King had the authority to order discovery into Wright's management of Express H2O and the ROW, and into Express H2O. Because the November 7 discovery order was proper on this basis, the Court need not address whether it would have been proper had it relied solely on RPIs' request to bring TUFTA claims.[5]

b. <u>Wright Has Not Shown a Due Process or Rule 9014 Violation</u>

Wright also argues that Judge King's discovery order violates the due process clause and Federal Rule of Bankruptcy Procedure 9014. Rule 9014(a) provides: "In a contested matter not

---

[5] Wright also raises concerns about having to provide confidential information about Express H2O. But those concerns are adequately addressed by the two-tiered confidentiality and protective order that is already on the bankruptcy court's docket. *See KrisJenn Ranch*, Case No. 20-05027-rbk, ECF No. 483. Further, Judge King made clear that confidentiality protections would be available to the extent necessary. *Id.* ECF No. 559 at 44. And if Wright wanted to avoid post-judgment discovery into Express H2O's business records, he could have transferred the ROW back to KrisJenn, as Judge King ordered. *Cf. id.,* ECF No. 380 at 46 ("[Wright]'s been ordered to transfer the property back to Krisjenn. And we've heard this morning from the attorneys that they were unable to do that for whatever reason. I find it a little hard to believe that somebody else came in and grabbed the Krisjenn Ranch, LLC name and that it's not available. But, I mean, that could be true.").

otherwise governed by these rules, relief must be requested by motion.  Reasonable notice and an opportunity to be heard must be given to the party against whom relief is sought."

But under Federal Rule of Bankruptcy Procedure 9013, a party can verbally request an order during a hearing.  FED. R. BANKR. P. 9013(a)(2).  At the November 7 hearing, RPIs' counsel complained that they "did not get to take [Wright's] deposition" because of how many questions he refused to answer.  *KrisJenn Ranch*, Case No. 20-05027-rbk, ECF No. 559 at 5.  They then described Wright's failure to answer said questions, *id.* at 5–13, and asserted that they were "entitled to have these relevant questions answered," *id.* at 13.  After Judge King ordered Wright to appear for an in-person deposition, Wright's own counsel asked "for clarification of the scope of that deposition."  *Id.* at 25–26.  So at least one side of this dispute, if not both, requested an order regarding what Wright had to testify about at the deposition.  Similarly, RPIs' counsel asked "whether or not [they] need[ed] to file a motion to compel" production of documents about Express H2O.  *Id.* at 51.  That was seemingly a request for an order on the issue.  Judge King's order was thus authorized by Rule 9013(a).

Wright briefly argues that the Discovery Order violated the due process clause by depriving him of notice and a meaningful opportunity to be heard.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  But Judge King issued the order at issue here from the bench, so Wright received notice and an opportunity to respond *at the hearing*.  Indeed, Wright's counsel did respond.  *See id.* at 26–27, 34, 43–44.  Wright has not shown a clear and indisputable right to a writ of mandamus.

## CONCLUSION

For the foregoing reasons, Wright's petition for writ of mandamus (ECF No. 1) is **DENIED**. A final judgment will follow.

The stay this Court issued on November 12, 2025, is **LIFTED.**

The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 16th day of June, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE