UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS (SAN ANTONIO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 20-50805-rbk |
|  | . | Chapter 11 |
| KRISJENN RANCH, LLC, | . |  |
|  | . |  |
|  | . |  |
| Debtor. | . |  |
|  | . |  |
| . . . . . . . . . . . . . . . . | . |  |
|  | . | Adv. No. 20-05027-rbk |
| KRISJENN RANCH, LLC, | . |  |
|  | . |  |
| Plaintiff, | . |  |
|  | . |  |
| v. | . | 615 East Houston Street |
|  | . | San Antonio, TX 78205 |
| DMA PROPERTIES, INC., et al., | . |  |
|  | . | Friday, November 7, 2025 |
| Defendants. | . | 10:01 a.m. |
| . . . . . . . . . . . . . . . . | . |  |

TRANSCRIPT OF DOC# 498 MOTION TO ENFORCE JUDGMENT AND FOR
SANCTIONS AND SEEKING LEAVE TO FILE FRAUDULENT CLAIMS;
#542 MOTION TO DISMISS FOR LACK OF JURISDICTION AND
AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY FILED BY
HERBERT C. SHELTON II FOR DEFENDANT LARRY WRIGHT
BEFORE THE HONORABLE RONALD B. KING
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator:          Courtroom ECRO Personnel

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)

ZOOM APPEARANCES:

| | |
|---|---|
| For Express H2O Pipeline & Row, LLC and Larry Wright: | Hayward PLLC<br>By:  HERBERT C. SHELTON II, ESQ.<br>    TODD HEADDEN, ESQ.<br>7600 Burnet Road, Suite 530<br>Austin, TX 78757<br>(737) 881-7100 |
| | Skelton Slusher Barnhill Watkins Wells PLLC<br>By:  HOLLI PRYOR-BAZE, ESQ.<br>1616 S. Chestnut St.<br>Lufkin, TX 75901<br>(936) 632-2300 |
| For Express H2O Pipeline & Row, LLC: | CHRISTOPHER JULIAN SACHITANO, ESQ.<br>P.O. Box 105<br>Beaumont, TX 77704-0105<br>(409) 838-9999 |
| For DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore: | Cobb & Johns PLLC<br>By:  ALEXA L. GERVASI, ESQ.<br>13341 W. U.S. Hwy 290<br>Building 2<br>Austin, TX 78737<br>(512) 399-3150 |

(Proceedings commence at 10:00 a.m.)

THE CLERK:  This is the United States Bankruptcy Court of the Western District of Texas.  Today is the 21st of January 2026, where the Honorable Ronald B.  King will be presiding in San Antonio, Texas to hear a San Antonio matter 20-5027.

THE COURT:  -- Antonio.  Our ten o'clock case is Krisjenn Ranch LLC v. DMA Properties Inc.  Let's get announcements from those of you that want to speak this morning.

MR. HEADDEN:  Well, good morning, Your Honor.  Todd Headden from Hayward PLLC.  I'm appearing on behalf of my colleague, Mr. Charlie Shelton, who is tied up with Judge Parker right now.  And I will be essentially introducing and turning over the mic to Ms. Holli Baze.

THE COURT:  Is it a Zoom hearing or live that Mr. Shelton's in?  We got an email from him about that, that it might be a few minutes.

MR. HEADDEN:  Yes, I believe that he was in a Zoom hearing.  I don't recall him driving to San Antonio this morning.  Okay.

MS. PRYOR-BAZE:  Good morning, Judge King.  Holli Pryor-Baze of Skelton Slusher and Watkins appearing for Mr. Wright and (indiscernible) Krisjenn.

THE COURT:  Okay.  Anyone there for DMA or the two

individuals?

Mr. Sachitano, who do you represent?

MR. SACHITANO: Judge, I represent Express H2O and also have been recently appointed the manager of Express H2O as of the end of last year.

THE COURT: Okay. I guess let's wait a few minutes for Mr. Shelton. That's what you want to do, right, Mr. Headden? You're not familiar with this case, right?

MR. HEADDEN: I'm not familiar with the case, but I understand that as a status conference that Ms. Pryor-Baze is going to be prepared to give the Court an update as to the state court proceeding. So out of respect for the Court's time, I honestly don't know that we need to wait for Mr. Shelton based upon my conversation with him this morning.

THE COURT: He might like to hear what she says.

MS. PRYOR-BAZE: Well, he knows.

THE COURT: Okay.

MS. PRYOR-BAZE: (Indiscernible) he knows what I'm going to say. He understands the status.

THE COURT: All right. Do you --

MS. PRYOR-BAZE: So we can get started if you'd like, Your Honor.

THE COURT: I'm wondering why we don't have Mr. Krist or somebody on the DMA side. Do you know Ms. Pryor-Baze?

MS. PRYOR-BAZE: I do not know. We have not been in

contact with them.

THE COURT: Okay. Well, go ahead.

MS. PRYOR-BAZE: Yes, Your Honor. Thank you. You set today's hearing in order to -- for us to let you know what's on in Angelina County State Court. As we had told the Court previously, the matter of our permanent injunction was set with a trial setting in early December. We appeared for pretrial, and the court, as well as all the parties, agreed we didn't need a trial. We only needed a hearing for the permanent injunction. There was a pressing criminal matter that needed to be tried, so Judge Kassaw took us off the trial docket, and he tried a criminal matter at our trial time, and he set us for January 23rd, which is this Friday, for our permanent injunction hearing.

And so there has been some delay from what we told the Court last time, but we're really pleased that our motion and our application for permanent injunction will be considered by Judge Kassaw at 10:30 on Friday.

THE COURT: Okay.

MS. PRYOR-BAZE: So if we can -- I would --

THE COURT: Are all the other issues resolved by the judge?

MS. PRYOR-BAZE: All the issues are resolved except for a couple. There are some -- there are three landowner intervenors that are attempting to intervene. It's way past

the time to do that, and we believe that those -- that those interventions will be struck on Friday. And otherwise, all issues are resolved, and the judge entered -- which we discussed before, Judge Kassaw entered summary judgment orders, quieting title for Express and enjoining Westlake from taking any contrary positions, as well as declaring that Express had superior and valid title, and Westlake, who's the trespasser, did not have valid title to those easements. So that has all been decided as a matter of law by the Court, and we believe and it's our position that the injunction is just the next step in closing out the state court matter.

THE COURT: And what is Westlake's position?

MS. PRYOR-BAZE: Westlake's position is the injunction should be denied, and if the injunction is granted, that the pipe should not be taken out of the ground. That's basically their position.

THE COURT: Is Westlake contesting the rest of the relief granted by summary judgment?

MS. PRYOR-BAZE: They opposed every summary judgment motion that we filed, and the Court granted each of our motions.

THE COURT: Have they informed you that they plan to appeal?

MS. PRYOR-BAZE: We have not had those discussions with them. They did file a writ of mandamus against Judge

Kassaw, and that went up to our Tyler Court of Appeals, and that was denied.

THE COURT:  Okay.  What's the status of the mandamus filed in U.S. District Court with this -- these parties?

MS. PRYOR-BAZE:  We -- yes, Your Honor, it's been fully briefed by both parties, and we're just waiting an opinion from Judge Rodriguez.  The stay is still in place on discovery as to those issues we identified in the mandamus.

THE COURT:  Okay.  But not on execution on the judgment?

MS. PRYOR-BAZE:  That's correct, Your Honor.  That's correct.

THE COURT:  Okay.

MS. PRYOR-BAZE:  The second update we had for the court was, as Mr. Sachitano mentioned, Mr. Wright, well, Express H2O and LLC has removed Mr. Wright as manager and appointed Mr. Sachitano to be manager of Express.  We wanted to make sure the Court was aware of that.  Mr. Sachitano is an attorney licensed in Texas and has been the attorney for Express for a few years, and we wanted to call that to your attention, one, so no one can accuse us of hiding it later, but also it should provide some comfort to the Court that an attorney now is manager of Express, certainly understands the Court's order, is involved in these proceedings.  We believe that should provide some comfort.

THE COURT: Okay. So Mr. Sachitano, would you be the one to decide after the judgment becomes final whether or not to sell the right-of-way?

MR. SACHITANO: Yes, Judge, and we're -- we will be working on -- working to mark the right-of-way. That was the purpose of the actual litigation was to clear the title so we could mark the right-of-way. So absolutely, (audio interference) as soon as we can get clarity and get resolution.

THE COURT: Do you have people that you think are interested in purchasing it?

MR. SACHITANO: Yes, Judge.

THE COURT: Okay. Let's hypothetically say that you are able to enter a contract and it closes for some amount of money. Where does the money go, in your opinion?

MR. SACHITANO: Well, it goes to -- it splits up according to the Court's order. We are fully aware of the Court's order.

THE COURT: Which court?

MR. SACHITANO: This -- the --

THE COURT: The bankruptcy court or the state court?

MR. SACHITANO: The bankruptcy court, yes.

THE COURT: Okay. So there's no effort to sell it and sort of keep it out of the Krisjenn, DMA, Moore group of parties?

MR. SACHITANO: There is no effort to do an end run

around the court -- the bankruptcy court.

THE COURT: That's -- right, that's my question. And I've been told all along by the attorneys that the state court is aware of the bankruptcy and is just going forward to clear the title to, I guess, Express H2O, is that the name of it?

MR. SACHITANO: Yes, Judge, that's correct.

THE COURT: So Express H2O isn't going to run off with the money in the middle of the night?

MR. SACHITANO: Judge, that's -- I'm an officer of the court. I would not cross the -- that's not what I'm here to do.

THE COURT: I understand, I understand, and I'm not questioning your integrity.

MR. SACHITANO: (Audio interference).

THE COURT: I'm not questioning your integrity, Mr. Sanchitano. I apologize if you think that I'm doing that, but this case has gone on for a long time, and we have to make sure that the creditors and the interest holders in the right-of-way are protected. That's all I'm trying to do. I'm not trying to question you or Ms. Pryor-Baze or anyone else that's involved in the case. I just want to make sure that DMA, Moore, and Borders are protected even though they're not on this hearing right now. I know that they have a very keen interest in all of this and they're trying to protect their ownership interests, so I have to do the same thing. I have to

try to protect everyone's interests, whether it's Krisjenn, Mr. Wright, or Mr. Moore, or Mr. Borders, or DMA.  I have to protect everyone's rights, so I hope you understand that.

So January 23rd is the injunction hearing now, as far as you know, that will go forward this Friday?

MS. PRYOR-BAZE:  Yes, Your Honor.

THE COURT:  Okay.  And is that a contested hearing, like, hour, half a day, full day, week?

MS. PRYOR-BAZE:  It's an hour and a half.  That's what it's set for right now.  And it is -- it's not an evidentiary hearing.  It's just argument of the parties' positions.  Evidence has already been submitted to the Court for the injunction.  It typically takes Judge Kassaw -- he's not really a rule-from-the-bench judge.  It takes him usually a week or two to enter his order.  So we anticipate having resolution within the first week of February.

THE COURT:  If you're the prevailing party, do you intend to ask for findings of fact and conclusions of law from the judge?

MS. PRYOR-BAZE:  I believe that all of the matters have been on the injunction because the judge has found the summary -- has entered those summary judgment orders.  I don't believe that findings of fact and conclusions of law are proper.  That's already all been decided.  Eminent harm and irreparable injury are at issue -- the only real items at issue

for the hearing.

THE COURT:  So there's no fact findings because it's summary judgment, and the summary judgment already covers the conclusions of law, is what you're saying.

MS. PRYOR-BAZE:  Yes, Your Honor.

THE COURT:  Okay.  So then the question is, should an injunction be granted?

MS. PRYOR-BAZE:  Yes.

THE COURT:  Okay.

MS. PRYOR-BAZE:  There might be another proceeding to fight over a bond, but right now I don't know what -- a supersedeas bond if they choose to appeal.  But, right now, I can't predict exactly what Judge Kassaw is going to do there. We plan to address all issues on Friday.

THE COURT:  Okay.  So if he doesn't grant the injunction, where do you go from there?  Now, I'll ask it both ways, whether he grants it or whether he denies it.  If he denies it, what do you do?

MS. PRYOR-BAZE:  We would appeal.

THE COURT:  Okay.  And if he grants it, presumably the other side may appeal?

MS. PRYOR-BAZE:  Potentially.

THE COURT:  Okay.  And the Tyler Court of Appeals is the one that this would go to?

MS. PRYOR-BAZE:  Yes, Your Honor.

THE COURT: Okay.

MS. PRYOR-BAZE: And they previously considered the mandamus on the summary judgment orders, and they had denied that mandamus.

THE COURT: Okay. So they're fairly timely in getting cases out?

MS. PRYOR-BAZE: They actually are very quick. Yes, Your Honor. We have a new justice that was just appointed from Cherokee-Anderson County, and they have -- they run on about a three- to six-month time period for almost all appeals.

THE COURT: Right. How many judges do they have on that court? Three or more?

MS. PRYOR-BAZE: There are three. There are three.

THE COURT: Okay. Back in the old days, I clerked for the Texas Supreme Court, and so every court of appeals, court of civil appeals back then, had three judges. But now, of course, a lot of them have been expanded, so that's the reason I asked how many judges they have.

MS. PRYOR-BAZE: Yes.

THE COURT: Okay. Nothing new on payment of the judgment by Mr. Wright?

MS. PRYOR-BAZE: No, Your Honor. There's nothing new there.

THE COURT: They're not taking additional collection or enforcement actions?

MS. PRYOR-BAZE:  No, Your Honor.  There have been no additional enforcement actions or inquiries from DMA.

THE COURT:  Okay.  Well, my inclination is to reset this for sometime in February, since you said that it's going to be on Friday, and it probably won't get a ruling on Friday.  So let's look at that.

MS. GERVASI:  I apologize.  Oh, I had an error in my calendar that had it at 10:30 instead of 10.  I hope you'll forgive me for tardiness.

THE COURT:  That's fine.  We've been talking about it.  I kind of wondered why nobody was on.

MS. GERVASI:  No, that's entirely my fault, my calendars.

THE COURT:  Okay.  What's the -- it's just a status hearing today.  What's the status from your perspective, Ms. Gervasi?

MS. GERVASI:  Yes, Your Honor.  From our perspective, the time for decision on the motion to enforce the judgment is here.  That decision was delayed based on the lawsuit in Westlake that was supposed to go to trial on December 1st, and on December 19th is when this Court issued that order.  And out of respect for that upcoming trial that was -- actually on December 18th, the motion to continue that trial had been filed, but that hadn't been shared with this Court.  It was stayed.  And the reason why this Court delayed issuing a

decision on that motion to enforce judgment was because, understandably, you did not want to disrupt the proceedings. You wanted there to be resolution instead of doing something that would set things back to ground zero, is my memory of this Court's reasoning.  But, Your Honor, I'm not sure, again, entirely my fault what all was shared about the status of what's happened since, but there's since been a new eminent domain proceeding that have been filed in Nacogdoches County that I'm not sure if this Court is aware of --

THE COURT:  Well, I --

MS. GERVASI:  -- by a third party, Westlake, which is the party to that trial that was supposed to happen on December 1st.  They've been filed against Mr. Wright, against my clients, and some others.  And, in fact, others who are alleging that they have an interest in the pipeline that we have never been made aware of, having an interest in the pipeline, who have been named as parties to these eminent domain proceedings.  And as this Court knows, those eminent domain proceedings are going to take priority over everything else that's happening because that's the way it works in Texas.

And so any disruption that might have occurred from the motion to enforce judgment interrupting that trial, it's already happened.  It's happened with these eminent domain proceedings.  And it's unfortunate that Your Honor wasn't made aware of that prior to me telling you about that right now,

because it's really important. And it's also important that we have an answer on this motion to enforce judgment, because my clients cannot assert their full rights in those eminent domain proceedings until we know what their rights are and who has those rights.

This Court issued a constructive trust. It said, Mr. Wright -- you gave Mr. Wright chance after chance to make things right, to follow your orders. It said either transfer the right-of-way back or there's going to be a constructive trust, and Mr. Wright chose not to transfer it back to Krisjenn after violating your orders. So for us to be able to -- for my clients to be able to participate fully and fairly in those eminent domain proceedings, we have to know what is the status here, who owns what. And so from my perspective, Your Honor, I don't see a reason to further delay a ruling on the motion to enforce judgment.

THE COURT: Okay. Does Westlake have the power of eminent domain?

MS. GERVASI: We believe that --

MS. PRYOR-BAZE: They do not. They claim they do.

MS. GERVASI: It's a low bar in Texas to assert that right to take. There's -- there is a -- it is not frivolous. Let me -- we'll just say that. It is not a frivolous claim.

MS. PRYOR-BAZE: Your Honor, I can address that if you'd like me to.

THE COURT: But it's disputed. Go ahead.

MS. PRYOR-BAZE: It is heavily, it is heavily disputed. It is solely designed to be a collateral attack on the Angelina County orders that Judge Kassaw has worked for 17 months on. There are -- we believe that those eminent domain cases won't go anywhere and that that will actually -- we've asked for an anti-suit injunction against them because they're attempting to take jurisdiction away from the Angelina County Court. And we believe they'll be dismissed for lots of reasons, including res judicata and collateral estoppel. All of these issues, title were decided by the Angelina County Court by Judge Kassaw. So the --

THE COURT: Where's the eminent domain proceeding filed?

MS. PRYOR-BAZE: In County Court at Law in Nacogdoches and County Court at law in Angelina County.

THE COURT: So there's two separate proceedings?

MS. PRYOR-BAZE: There's -- so our case in Angelina County concerns three tracts of lands with three landowners. And they -- Westlake filed an eminent domain for the Henson tract, which is in Angelina County, and for the Winston tract, which is in Nacogdoches County. This is the same -- exact same right that Judge Kassaw has said they do not have, that Westlake does not have a right to title and that Express has superior rights of title.

And eminent domain, while Ms. Gervasi says that eminent domain proceedings take precedence, they don't take precedence if their entire purpose is gamesmanship and to rob a state court of jurisdiction, which is what these are designed to do.  They've lost on every summary judgment motion.  They have no rights.  And so now on the eve of our permanent injunction hearing, they filed these condemnation cases.

THE COURT:  Don't you have to be a governmental entity in order to have the power of eminent domain?

MS. PRYOR-BAZE:  We have argued, Your Honor -- they attempted this in Judge Kassaw's court, and Judge Kassaw dismissed the claim.  We argued there, and we will argue again, that they -- that their -- that pipeline companies can have the power of eminent domain in Texas, but it has to be for a public purpose and public use.  We don't believe that they meet that criteria.  They have one carrier on their line, and that's themselves.  And so it is a self-serving process for eminent domain.

They did not file eminent domain for the State of Texas property, which is the largest parcel out of these three parcels, where they have -- because you can't eminent domain against the state.  And so there are numerous reasons why those eminent domain cases will not go anywhere.  If, for some reason, they do in the eminent domain administrative hearing, we will go back to the court, and Judge Kassaw will deal with

the eminent domain claims.  Right now, the value that they're seeking for their small easement out of the entire tracts is not the value of the easements at all.  It's the value of the landowner's right to have an easement, not to extinguish an addition -- an other easement.

THE COURT:  How does Judge Kassaw get the proceeding that's filed in Nacogdoches County?  How does he get control of that?

MS. PRYOR-BAZE:  Well, one would be through the -- it would be dismissed for all -- improper collateral attack, which we have a motions on file for that, but also the anti-suit injunction, which we believe should be granted.  And -- but otherwise, that Nacogdoches case -- in Texas -- and I'm sorry if I'm saying something that the court's aware of -- in Texas title decisions cannot be made by county courts at law.  Title decisions can only be made by district courts.  So if we were to go through the eminent domain proceeding, which we don't believe we will, the administrative phase, we would go back to the county court at law.  We would have a counterclaim for adjudication of title, and that would then go to the district court, which would then be combined with the Angelina County Court as the first-filed document jurisdiction.

THE COURT:  Would there be a transfer of the case?  The case in Nacogdoches would go to state district court, and then it would be consolidated with the one in Angelina County?

MS. PRYOR-BAZE: Yes, Your Honor. Under the first-filed dominant jurisdiction rule, as well as a number of other rules, the Angelina County Court with Judge Kassaw is the proper place to hear any dispute as to title between these parties.

MS. GERVASI: Your Honor, I think that this proves the point we're trying to make, that whatever complications this Court wanted to help avoid so that the Westlake trial that was set to go -- originally set to go December 1, could be resolved and then we could pick things back up, that's out the window. Things that are much more complicated now, my clients have been sued in this eminent domain proceeding, and I -- with respect to Ms. Pryor-Baze's belief about how things should turn out, I don't think that there's ever an attorney who doesn't think they should win their case and the court should rule with them. Of course, that's always what we think and believe, how things should turn out, but there is absolutely, you know, no reason to believe that that is what is going to happen. What we know is there are eminent domain proceedings. There are right-to-take issues. There is compensation questions that have to be answered in those proceedings unless and until they are dismissed, and as of right now, we don't see that happening, and my clients are entitled to assert their full rights and to be compensated as this Court has ordered. I understand Counsel's frustration with feeling like this --

these eminent domain proceedings are an attempt to get around other proceedings. Respectfully, Your Honor, we feel similarly, that we -- this Court ruled in my client's favor, and then this -- the right-of-way was transferred to another entity, and that other entity involved itself in a separate lawsuit that excluded my clients to find the rightful ownership. That -- you know, so it all comes back to -- sorry, Your Honor.

THE COURT: As to eminent domain, you're aligned with Express H2O, aren't you? I mean, you're opposing it, so you're on the same side with them, at least just in that one dispute.

MS. GERVASI: It depends, Your Honor. That's not necessarily true because the way these eminent domain proceedings go, and there's often -- eminent domain proceedings very rarely go to trial, right? They come down to negotiations over the value of the property that's being taken, and my clients have the right to engage in those conversations for what is their value, what are they entitled to. So there's actually not necessarily alignment. The point is we can't even understand what our position is or find our position until we have clarity on whether or not there is a constructive trust or need it after the enforcement.

THE COURT: Well, there is one out of the judgment. There is a constructive trust.

MS. GERVASI: Yes. Your Honor --

THE COURT:  That's stated in black and white.

MS. GERVASI:  Which needs, but has not yet been enforced, and that's what we've come to this Court, that's what we asked for, was that this Court enforce its constructive trust, and enforcement of the constructive trust means that that -- that the right-of-way is transferred to DMA with first monies to Mr. Wright to compensate him for the actual money he put into the right-of-way.  That is what a constructive trust is, and that is the relief we have sought through our motion to enforce judgment, but as we sit in this gray area, my clients are unable to fully exercise their rights and determine what the next steps are in these eminent domain proceedings.

THE COURT:  Yeah.

MS. PRYOR-BAZE:  Your Honor, if I can respond --

THE COURT:  Well, I wish that I could clarify it and get rid of all the people that are trying to slow this process down, either by eminent domain or other lawsuits where they're contesting relief.  I mean, we just need to get the property -- the clear title, and Ms. Pryor-Baze has said that the judge has granted summary judgment on title.  The only thing remaining is the injunction, and the injunction hearing was supposed to go in December, and then it got reset to this Friday.  Had you heard that?  January 23rd?

MS. GERVASI:  Well -- and, Your Honor, I believe there's another motion to continue that hearing, which I'm not

sure if that was brought to your attention.

THE COURT:  I'm sure there's always a motion to continue.

MS. PRYOR-BAZE:  It was not filed by Westlake, Your Honor.  It was filed by those intervenors who are -- that I mentioned earlier.  It will be denied.

THE COURT:  She's disputing the intervenors.  She's saying that it's not timely, and she believes that the interventions will be denied, but, of course, that's up to the judge.  We don't know.

MS. GERVASI:  That -- and I respect that, Your Honor.

MS. PRYOR-BAZE:  Your Honor, if I can respond to an argument earlier just to make sure the record is very clear. We believe that the final judgment is -- states the rights of the parties, and that final judgment in your constructive trust, leaving the row in the hands of Express H2O, was affirmed by the district court.  There is no need for further adjudication of anyone's rights because those rights are in the final judgment.  And --

THE COURT:  Well, there's no final judgment if you don't have the injunction, do you?

MS. PRYOR-BAZE:  No, in your case, Your Honor, and I'm talking about with the bankruptcy court.  That final judgment says what the rights of the parties are.  DMA and Longbranch will get 20 percent with a net profits interest of

whatever income comes from the marketing or sale of the row. That, we know.  And that does not -- is not so --

THE COURT:  They think DMA gets everything after the payment of -- to Mr. Wright of the 475 -- or 4.7 million, whatever it is.

MS. PRYOR-BAZE:  Right.  And that -- yes, Your Honor.

THE COURT:  And so that's a dispute we're going to have to defer.  We're not going to decide that today.  But they think they get the whole thing.

MS. GERVASI:  Yes, Your Honor.  And --

MS. PRYOR-BAZE:  Your Honor, because they believe the constructive trust means something other than what Your Honor says it meant in the final judgment and the district court affirmed.  But, yes, that is for another day.

THE COURT:  We'll interpret it at the appropriate time.

So, Ms. Gervasi, is that a fair summary of your position, that you think you get everything, right?

MS. GERVASI:  Subject to the first money's payment as was --

THE COURT:  After the first money is repaid.

MS. GERVASI:  Correct.  As was written in the order.

THE COURT:  And the judgment against Mr. Wright.

MS. GERVASI:  Yes, Your Honor, that's correct.  And so in the request here, our ask here is just that this delay

not be allowed to continue and to continue and to continue. What we've seen -- Your Honor, I can tell you, that if we had -- if judgment had been delayed -- or if the order had been delayed pending a trial and that trial didn't go, we would have updated this Court to that.  So with respect, I mean, what my concern here, Your Honor, is that this hearing is not going to happen on Friday.  It's going to be continued again.  This Court's not going to get an update until you set a status conference, and so another six weeks is delayed and we are here doing the same thing again and again and again.  Meanwhile, these eminent domain proceedings are ongoing, and my clients can't fully participate, can't fully protect their rights because we don't have clarity on the constructive trust.  That constructive trust isn't being enforced.  And so the request is just that does not be allowed to continue to drag out.  These proceedings to take priority.

THE COURT:  If I do what you're saying and say transfer it back, there's still going to be a fight in the state district court and the eminent domain.  I mean, it's still out there.

MS. GERVASI:  Absolutely.  Yes, Your Honor.  I'm not suggesting that there's not still a fight.  There's just clarity about whose rights -- what rights are being protected, who owns the right-of-way.

THE COURT:  If I were to order a transfer of it, it

would go to Krisjenn, not to DMA.

MS. GERVASI: Well, Your Honor, not under the construct -- well, so if you were to enforce the constructive trust as requested, a constructive trust means one thing, and it means that it goes to DMA. That is what -- the definition of a constructive trust. I'm not here -- I know we're not litigating that right now. You'll hear that another time. But that's, of course, the position.

THE COURT: Okay.

MS. GERVASI: And so --

THE COURT: I don't know if you -- have you heard that Mr. Sachitano is now the manager of the LLC? Have you heard that?

MS. GERVASI: No, sir, I have not heard that.

THE COURT: Okay. Well, they, before you got on this morning -- I just asked Mr. Sachitano, what is your interest in all this? Or maybe they offered it before I asked the question. But they said that he has now been == he's now replaced Larry Wright as the manager of the LLC, Express H2O. And I said, well, so do y'all plan to, once you get the title resolved, sort of make off into the night with all the cash proceeds? And I think he was a little bit offended by that question. But, of course, that's my fear in this case, is that somehow we're going to lose control of either the pipeline itself or the proceeds upon sale of the pipeline. And so, you

know, I don't question his ethics or honesty or anything, but just trying to protect everyone in this case, all parties on both sides. And so he assured me, he's an attorney at law, he's bound by all the canons of ethics, and he's not going to do anything that violates the bankruptcy court's orders. So I think we're protected.

I'm not saying that this is an ideal solution. I'm probably just as frustrated as all the parties are, that people keep throwing new things against the wall, and they keep sticking and just delaying the process. I mean, I'm well aware this is a 10-year-old dispute. It's ridiculous. But I can't wave a magic wand and get everybody to stop litigating. Every time we get -- it's like whack-a-mole. Every time we get close to getting some kind of finality, something else comes up to prevent it.

MS. PRYOR-BAZE: Your Honor, if I can make a suggestion. Mr. Gervasi complained that we didn't give a written update to the Court when the trial was not needed and Judge Kassaw reset us for a hearing. I had asked at the last hearing that we had if the Court wanted me to provide a written report in the interim, and you had said, no, we'll appear, and we'll have a conversation as a status update. I am happy to provide the Court with a written status report after the hearing on Friday or in two weeks or once we get a ruling from Judge Kassaw.

My request would be that we would reset to the end of February.  That would give Judge Kassaw time to issue a ruling. And to be clear, Judge Kassaw's partial summary judgment rulings on title and validity of the Gulf easements in Express's name, those are treated as final judgment for the purposes as a partial summary judgment.  The law treats partial summary judgment orders as effective and valid until that judge overturns them, reconsiders them.  And this judge has been asked to reconsider numerous times, and Judge Kassaw has said, no, I'm not reconsidering, those are my orders.  And so title has been decided in Express's favor.  That will not change.

THE COURT:  Well, yeah, but --

MS. PRYOR-BAZE:  Only the injunction of that.

THE COURT:  -- if you get an injunction, then you can have a final judgment.

MS. PRYOR-BAZE:  Correct.

THE COURT:  Or if it's denied, you can have a final judgment and then you'll appeal it.

MS. PRYOR-BAZE:  Yes, Your Honor.

THE COURT:  But, right now, there's no final judgment.  It's partial summary judgment.

MS. PRYOR-BAZE:  That's -- that it -- that's completely true.  But all we're waiting on is that final judgment with the decision on the injunction.

And -- but what I was trying to say is that he's --

the Court's already made all the legal determinations as to validity of title, superiority of title. Those will not change.

THE COURT: You hope.

MS. GERVASI: And in that case, Your Honor, the I see no need for further delay. The -- what you were asked not to interrupt during the November 19th hearing was exactly that. It was a request. You know, we need to be able to go to this trial so that we can get an answer about title. We've put all of this work into determining who was -- who has title, and please don't interrupt that. And that is why this Court said, okay, well, we'll let that go forward, I don't want to interrupt that. So what Ms. Pryor-Baze is telling me is there's an answer to that, that she doesn't believe will change. She doesn't see any risk to it. So with respect, we would just ask that instead of there being another status conference, you know, where we have this same conversation and do the same thing for another six weeks and another six weeks until whenever, if people keep filing things, that we just be allowed to have a final decision on our motion to enforce the judgment.

THE COURT: Okay. Well, we're not going to do that today. And I wish we could. I want to get this thing wrapped up. This dispute may outlast me, I hate to say it, no matter what I do today or any other day. Let's take a look at it on

February 19th, which is a Thursday at 10 a.m.  Anybody have a conflict with that date?

MS. PRYOR-BAZE:  No, Your Honor.

MS. GERVASI:  No, Your Honor.

THE COURT:  Okay.

MS. GERVASI:  And I -- Your Honor, I apologize.  One more question.  So --

THE COURT:  Sure.

MS. GERVASI:  -- it is, I hope you understand, disconcerting that the manager of Express H2O, a company that wrongfully received the pipeline, has been replaced and we were not alerted to that.  As you know, our questions about who has an interest in Express H2O, who is managing it, which directly impacts my client's rights, even if we take Mr. Wright's view of what my client's rights are, they have been directly implicated by the exchange of a manager.  And the fact that we're not getting updates on that is disconcerting to me.  And we've asked -- you know, we still have our, there's been no movement on the attorney fees or the $750,000 that we are owed. We asked for an updated list of assets, which we were never provided.

THE COURT:  Well, there's no stay on enforcement. There's no stay on enforcement of the judgment.  It's just on the discovery.

MS. GERVASI:  Yes, Your Honor.  Yes, Your Honor, I

understand.

THE COURT: I mean, I've read all the documents on the mandamus. And in regard to timing --

MS. GERVASI: And we are not sure why there hasn't been a ruling on the mandamus.

THE COURT: I didn't hire an attorney to represent me.

MS. PRYOR-BAZE: Your Honor, if I can respond to that, the membership has not changed to Express, and the manager did change. And we presented that to the Court right when we got on this hearing. DMA and Longbranch don't have a right --

THE COURT: So what's the membership? What's the membership? I don't think Mr. Wright ever gave us a straight answer on what's the membership.

MS. PRYOR-BAZE: He did, Your Honor. We produced those documents, and in his deposition, he testified about it. The family trust and Mrs. Wright own -- Chris, you're going to have to give me the percentages -- as well as his two daughters. So there's a family trust, and Mrs. Wright and then the Wrights' two daughters are the members in almost equal percentages.

THE COURT: So what if they decide to transfer? What if they decide to transfer that? We keep having transfers. What if they decide to transfer their ownership?

MS. PRYOR-BAZE:  Your Honor, there are no -- well, as of right -- and Chris, Mr. Sachitano, can speak to this.  Right now, there are no -- as far as I understand, there will not be further transfers of membership.  The -- it was what Mr. Wright testified to in his deposition, and here --

THE COURT:  We've heard that before.

MS. PRYOR-BAZE:  Well, Your Honor, that was before I was involved.  It was before Mr. Shelton was involved and Mr. Sachitano were involved.  What -- the reason. and Mr. Wright testified to this in his deposition and before this Court, that his membership interest was transferred because of health reasons.  And he is not -- he is not generally a healthy person, and his health has gotten much worse in the last six months.  But we provided those documents as to membership. Only manager has changed.  And we actually believed that the Court would be pleased because it would give comfort that now an attorney is manager and not Mr. Wright.  But that also was done for health reasons.

THE COURT:  But who is the manager taking direction from as far as the equity holders?

MS. PRYOR-BAZE:  Well, the membership.  The membership is Mrs. Wright and the two daughters and the trustee of the family trust, who is, I believe, Mrs. Wright, but I have to look back to see.

THE COURT:  Okay.  So, Mr. Sachitano, who do you take

direction from as far as being the manager of the LLC?

MR. SACHITANO:  It'll be the members, Judge, but members (indiscernible).  I don't (indiscernible).

THE COURT:  And that's Mrs. Wright, Larry Wright's spouse, and his two daughters, and the trust that apparently now owns the membership interests?

MR. SACHITANO:  The membership interest that was originally Mr. Wright's, but with the understanding that we're fully aware of the Court's order.

THE COURT:  Okay.

MR. SACHITANO:  So, I mean, if a membership interest -- excuse me, Judge.

THE COURT:  Go ahead.

MR. SACHITANO:  When a membership interest does make a change, it's -- the order is still out there.  But we understand that, fully aware of it.

THE COURT:  Okay.

MS. PRYOR-BAZE:  And, Your Honor, if I can say that the constructive trust doesn't give DMA and Longbranch a right to run Express H2O.  We understand that there's been not -- possibly, there's an argument that there wasn't full disclosure years ago.  Well, now we are giving full disclosure of everything, which is why Mr. Sachitano is here, which is why we started the conference this way.

MS. GERVASI:  With respect, I don't know there's full

disclosure of everything since there was a mandamus petition filed to avoid having to disclose everything, but --

THE COURT:  That was on the discovery dispute.  I mean, I'm not --

MS. GERVASI:  Right, right, for disclosure.

THE COURT:  I'm not taking a position on that.  But yeah, that was on the discovery, not on collection of the judgment or on the order.  We can still do what we need to do on the judgment that was granted in this adversary.

This is not an easy situation to navigate for me because I want to get it wrapped up, but I don't want to poison the well, so to speak.  So we'll reset it to February 19th at 10 a.m.  And everybody's still got their arguments and their rights.  Nobody's been affected today adversely other than by delay.  And this case is a prime example of litigation delay, but it's not something that I can prevent because of all the complications.

MS. PRYOR-BAZE:  Okay.  Thank you, Your Honor.

THE COURT:  So I hope you're able to get the eminent domain proceedings taken care of.  I mean, I don't take a position one side or the other, but I just want this thing to get cleaned up where we can sell the property and get money to the people that deserve the money from the sale of the property without determining today who that is.

MS. GERVASI:  Understood.

MR. SHELTON:  Your Honor --

THE COURT:  All right.  February 19th at 10 a.m. by Zoom.

Mr. Shelton, this is one of your better days, I'd say.

MR. SHELTON:  I apologize to everybody for --

THE COURT:  No, I know.  You were in front of Judge Parker, I understand.

MR. SHELTON:  Yeah, and I appreciate Mr. Headden and Ms. Pryor-Baze taking over.

THE COURT:  Mr. Headden did a heck of a job.  He salvaged your position.  So he gets all the credit today.

MR. SHELTON:  I will take him out for lunch.  On the 19th, just confirming since I came in later, is this a continuation of the status conference?

THE COURT:  Ten o'clock, just a continuation of the status today.

MR. SHELTON:  Okay.  I -- just so everybody's aware, I likely won't be for that -- be at that either, but Mr. Headden or Ms. Pryor-Baze can handle it.  I will be anesthetized that morning.  So...

THE COURT:  Really?

MR. SHELTON:  Yeah, but it doesn't need to be reset. Everything's fine.

THE COURT:  Okay.  Well, good luck with it.  I get to

be anesthetized on February the 4th also. So I tried to put this at a couple of weeks after that.

MR. SHELTON: I was going to get a bunch of motions in front of you for February the 4th, so -- instead of the afternoon.

THE COURT: Well, go ahead and give it a try if you want. See how that goes. Maybe you can file a mandamus.

MR. SHELTON: Well, no, I don't think so on that one. I appreciate it, Your Honor.

THE COURT: All right. February 19th at 10 a.m. We'll be in recess.

(Proceedings concluded at 10:44 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

ALICIA JARRETT, AAERT NO. 428    DATE: January 29, 2026

ACCESS TRANSCRIPTS, LLC

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas
### San Antonio Division

|  |  |
|---|---|
| Bankruptcy Case No.: | 20–50805–rbk |
| Chapter No.: | 11 |

IN RE: **KrisJenn Ranch, LLC** , Debtor(s)

|  |  |
|---|---|
| Adversary Proceeding No.: | 20–05027–rbk |
| Judge: | Ronald B King |

**Krisjenn Ranch, LLC,
Krisjenn Ranch, LLC,
Series Uvalde Ranch,
Krisjenn Ranch, LLC,
Series Pipeline Row et
al.**

Plaintiff

v.

**DMA Properties, Inc. et
al.**

Defendant

## NOTICE OF FILING OF TRANSCRIPT
## AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

A transcript of the proceeding held on **01/21/2026** was filed on **01/29/2026**. The following deadlines apply:

The parties have until **February 5, 2026** to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is **February 19, 2026**.

If a request for redaction is filed, the redacted transcript is due **March 2, 2026**.

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is **April 29, 2026** unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber **Access Transcripts, LLC (855) 873–2223**, or you may view the document at the clerk's office public terminal.

Dated:  1/30/26

Robert J. Lawson
Clerk, U. S. Bankruptcy Court
BY: Bridget Hardage

**[Notice of Filing of Transcript (AP)]** [NtcftddlrrAPap]