IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re:<br><br>KrisJenn Ranch, LLC,<br><br>*Debtor.* | §<br>§<br>§<br>§<br>§ | Bankruptcy Case No. 20-50805-RBK (Chapter 11) |
| KrisJenn Ranch, LLC, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>DMA Properties, Inc. and Longbranch Energy, LP, et al.,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary No. 20-05027 |
| DMA Properties, Inc. and Longbranch Energy, LP, et al.,<br><br>*Counterplaintiffs,*<br><br>v.<br><br>KrisJenn Ranch, LLC; Larry Wright, et al.,<br><br>*Counterdefendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DMA AND LONGBRANCH'S RESPONSE IN OPPOSITION TO WRIGHT'S MOTION FOR CLARIFICATION**

Larry Wright has filed a motion to clarify concerning the Judgment and Opinion this Court entered more than two years ago. ECF No. 329 (Final Judgment on Remand); ECF No. 330 (Opinion on Remand). On March 14, 2023, the Honorable U.S. District Judge Jason Pulliam entered an Opinion and Order in favor of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"), holding that DMA and Longbranch's net profits interests in the right-of-way ("ROW") known as the "Express Pipeline" are real covenants that run with the land and bind future owners of the ROW. *In re KrisJenn, Ranch*, *LLC*, 661 F. Supp. 3d 654, 679 (W.D. Tex. 2023). The District Court then remanded the case to this Court for further proceedings, and the Court entered a final judgment holding that DMA and Longbranch's net profits interests are real covenants that attach and run with the land. ECF No. 329 (Final Judgment on Remand); ECF No. 330 (Opinion on Remand).

Since then, Wright has wholly failed to comply with the judgment. Now, Wright has moved for "clarification," asking this Court to clarify that the real covenants actually do not attach and run with the land and do not bind future owners of the ROW. In other words, Wright asks this Court to undo and reverse its judgment more than two years after this Court entered its final judgment on remand and after Wright ceased to have any vested interest or ownership right in the ROW or in any entity currently owning the ROW. More fundamentally, the "clarification" Wright seeks would squarely contradict the Court's actual ruling and would create chaos with uncertain ramifications for the Court's final (and, at this point, non-appealable) judgment, which recognized that the net profits interests are covenants that attach and run with the land. The Court should deny Wright's motion for two reasons.

First, Wright's motion is untimely. Though Wright claims to seek "clarification," what Wright actually seeks is to alter this Court's prior holdings and re-litigate the merits of the prior appeal and the Court's subsequent Final Judgment. But motions to alter or amend a judgment "must be filed no later than 28 days after entry of judgment," and

here, Wright waited more than two years to bring his motion. FED. R. CIV. P. 59(e). Wright's motion is thus time-barred. Alternatively, if the Court construes Wright's motion as a Rule 60(b) motion for relief from final judgment, Wright's motion is still untimely because it was not filed within a "reasonable time." FED. R. CIV. P. 60(b). Wright's motion also does not qualify as a motion under Rule 60(b) because Wright has not argued that there was any "error" in the judgment; he only argues that DMA and Longbranch are "misinterpreting" the Court's order. And while Wright claims that DMA and Longbranch's characterization of this Court's ruling is a new development, it is not: DMA and Longbranch have been (correctly) observing in their filings for over two years that the District Court held the net profits interests are real covenants that attach and run with the land, which means they bind future owners of the ROW. *See, e.g.*, ECF No. 321 (DMA and Longbranch's Briefing on Remedies) at 10.

Second, Wright's motion is wrong on the merits. The Court clearly and unambiguously held that the net profits interests are real covenants that attach and run with the land and bind future successors—in accordance with the District Court's mandate. Under the law of the case doctrine and the mandate rule, Wright is precluded from re-litigating the District Court's explicit holdings and this Court's implementation of them on remand. And in any case, Wright's new attempt to twist and misconstrue the Court's judgment does not render it ambiguous or in need of clarification. For these reasons, and as explained further below, the Court should deny Wright's motion.

## BACKGROUND

This motion is Movant Larry Wright's latest attempt to avoid responsibility for his wrongdoing and avoid the final judgment entered against him by this Court. After Wright sought to steal DMA's net profits interests in a "right-of-way" ("ROW") in East Texas, DMA and Longbranch fought through almost six years of litigation to protect their interests in the ROW. Along the way, Wright has used every tool at his disposal to avoid

honoring the parties' agreements and dodge complying with this Court's judgment and orders.

A professional poker player, Wright convinced Daniel Moore and Darin Borders—the two men who had found and spent countless hours developing the ROW opportunity and securing the right to purchase it—to let Wright join the deal if he put up the money to buy the ROW. As part of that deal, Borders (through his entity Longbranch) assigned the right to purchase the ROW to Black Duck, the company that Moore and Wright owned 50/50. In exchange, Borders received a written assignment of 20% of the ROW's net profits. That written assignment makes clear that Longbranch's interest "shall attach and run" with the ROW and binds all successors and assigns—and independently obligates Black Duck to bind its successors or assigns to pay Longbranch's net profits interest.

Later, Wright grew hostile towards Moore and pushed for his resignation from Black Duck. Eventually, Moore agreed to give up his 50% interest in Black Duck in exchange for the same deal Borders had received—a 20% net profits interest that "shall attach and run" with the ROW. Since then, Wright has repeatedly tried to dispose of the ROW while disregarding DMA and Longbranch's net profits interests.

After years of litigation to enforce these net profits interests, the District Court held on appeal that DMA and Longbranch's net profits interests are real covenants that attach and run with the land. *In re KrisJenn, Ranch*, *LLC*, 661 F. Supp. 3d 654, 679 (W.D. Tex. 2023). Subsequently, and consistent with the District Court's findings, the Court entered an opinion and final judgment in favor of DMA and Longbranch, upholding their interests in the ROW (including the fact that the interests run with the land and bind successors and assigns), finding Wright and his entities liable for breach of fiduciary duties and breach of contract, imposing a constructive trust on the ROW for the benefit of DMA, and finding that DMA, Moore, and Longbranch were entitled to recover attorneys' fees—which Wright and his entities still haven't paid. ECF No. 329 (Final Judgment on

Remand); ECF No. 330 (Opinion on Remand). The Court entered this final judgment in March 2024, over two years ago. There is no pending appeal of the final judgment.

In the two years since the Court entered its final judgment, Wright has filed a spate of baseless and unsuccessful motions in this Court and in District Court seeking to avoid the final judgment. For example, Wright has filed a motion to set aside ruling on constructive trust, ECF No. 382; a motion for relief from final judgment, ECF No. 418; a motion for stay, ECF No. 436; a motion to abate, ECF No. 456; a motion to dismiss for lack of subject matter jurisdiction and alternatively to stay, ECF No. 542; a motion for reconsideration and/or clarification of an order entered by Judge Rodriguez regarding the constructive trust entered in favor of DMA, *Wright v. King*, ECF No. 14, No. 5:52-CV-01452-XR (W.D. Tex. June 30, 2026); and a motion for "clarification" of the opinion and final judgment entered by Judge Pulliam in the appeal to the District Court—a motion substantively identical to the motion before this Court. Those motions uniformly lacked merit and have all been denied. And in light of Wright and his entities' evasion of the judgment and misconduct, the Court has also entered an order to show cause why the bankruptcy case should not be converted to Chapter 7 in light of "substantial questions" regarding the debtor's non-compliance with the plan of reorganization. *In re KrisJenn Ranch, LLC*, ECF No. 257, 5:20-bk-50805 (W.D. Bankr. May 22, 2026).

Because Wright has had little success fighting this Court's orders and final judgment, Wright now seeks to have this Court effectively undo its final judgment and opinion—which were entered over two years ago, *prior* to extensive proceedings on remand—by "clarifying" that this Court's opinion did not mean what it said. As explained below, Wright cannot ask this Court to rewrite its opinion and orders by "clarifying" them two years after the fact, long after the Court entered a final (and, at this point, non-appealable) judgment based on the District Court's appellate rulings. Because Wright's motion is untimely and because his arguments are meritless, the Court should deny Wright's motion.

## LEGAL STANDARD

Post-judgment motions that seek to "affect[] substantial rights of the parties" fall within the ambit of Rule 59(e). *Britt v. Whitmire*, 956 F.2d 509, 515 (5th Cir. 1992). Correspondingly, if it is "impossible for the District Court" to grant a motion to clarify "without altering or amending the language of the judgment," the motion "falls under the umbrella of Rule 59(e)." *Birdsong v. Wrotenbery*, 901 F.2d 1270, 1272 (5th Cir. 1990).

A motion under Rule 59(e) "must be filed *no later than 28 days after the entry of the judgment*." FED. R. CIV. P. 59(e) (emphasis added). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A meritorious motion "must clearly establish either a manifest error of law or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *L.F. v. Houston Indep. Sch. Dist.*, No. H-08-2415, 2010 WL 3069681 at *2 (S.D. Tex. Aug. 4, 2010).

The Court "may treat an untimely 59(e) motion to alter or amend the judgment as if it were a Rule 60(b) motion if the grounds asserted in support of the Rule 59(e) motion would also support Rule 60(b) relief." *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998). A Rule 60(b) motion is not a substitute for an appeal. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993). To prevail, "the movant must show the initial judgment to have been manifestly unjust." *Pipkins v. State Farm Lloyds*, 729 Fed. App'x 338, 338 (5th Cir. 2018). Moreover, a motion under Rule 60(b) must be made within a "reasonable time." FED. R. CIV. P. 60(c)(1).

## ARGUMENT

The Court should deny Wright's Motion for Clarification, as this Court's March 2024 Opinion is not ambiguous. As the District Court found, the contracts giving rise to the net profits interests demonstrate an intent that the obligation run with the land

because they "unambiguously bind Black Duck and any successor and assignee that owns the ROW's real property interests," including "future owners of the ROW" in perpetuity. *KrisJenn Ranch*, 661 F. Supp. 3d at 676. Consistent with the District Court's findings, the Court held that DMA and Longbranch's net profits interests are real covenants that run with the land.

In his motion, Wright asks the Court to instead adopt the opposite interpretation and conclude that the net profits interests are not real covenants because, according to Wright, the term "successors and assigns" does not refer to future owners of the ROW. ECF No. 616 (Mot. Clarification) at 9. But the District Court and this Court's post-remand final judgment already rejected that exact interpretation in 2023 and 2024. Wright's desire to re-litigate his incorrect interpretation does not render the Court's prior holdings ambiguous or in need of clarification.

The Court should deny Wright's motion for multiple reasons. First, the Court should deny Wright's motion because it seeks to alter the judgment two years after the fact, and it is therefore untimely under Rule 59(e). Second, if Wright's motion is construed as falling under Rule 60(b), the Court should deny it because Wright did not bring his motion "within a reasonable time" as required by Rule 60(b), and Wright has failed to show any compelling reason for his delay. Third, Wright's motion lacks merit. If the Court considers Wright's motion under Rule 59(e) or 60(b), it should be denied because Wright has not shown this Court's holdings were erroneous or unjust. The motion should also be denied because the District Court has already held that the net profits interests are real covenants that bind future owners of the ROW, and the law of the case doctrine and the mandate rule preclude Wright from relitigating these issues. And even if the Court considers Wright's motion as a motion for "clarification," the Court should deny it because the Court's Opinion and Final Judgment are not in need of clarification.

## I. The Court should deny Wright's motion because it is an untimely and unmeritorious motion under Rule 59(e).

Wright's motion, labeled a "Motion to Clarify," asks the Court to adopt an interpretation of DMA and Longbranch's net profits interests that is contrary to the Court's Opinion. Because Wright's motion seeks to "affect[] substantial rights of the parties" and because it would be "impossible" for the Court to grant it "without altering or amending the language of the judgment," Wright's motion "falls under the umbrella of Rule 59(e)." *Britt*, 956 F.2d at 515; *Birdsong*, 901 F.2d at 1272.

Wright's motion is exceedingly untimely. Under Rule 59(e), "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Here, Wright waited more than two years to bring his motion. The motion is therefore untimely, and the Court must deny it. *See Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, No. 3:14CV853-DPJ-FKB, 2016 WL 6916791, at *1 (S.D. Miss. Nov. 22, 2016) (deeming Rule 59(e) motion filed 29 days after entry of judgment untimely).

Even if the motion had been timely, Wright failed to present newly discovered evidence or establish that the Court committed a "manifest error of law." *L.F.*, 2010 WL 3069681, at *2. Indeed, Wright does not argue that the Court erred at all; he only argues that DMA and Longbranch have misinterpreted the opinion. ECF No. 616 (Mot. Clarification) at 1–2. Because Wright asks the Court to alter or amend its judgment without arguing any manifest error or presenting newly discovered evidence, the Court should deny his motion.

## II. The Court should deny Wright's motion because it is an untimely and unmeritorious motion under Rule 60(b).

The Court "may treat [Wright's] untimely 59(e) motion to alter or amend the judgment as if it were a Rule 60(b) motion if the grounds asserted in support of the Rule 59(e) motion would also support Rule 60(b) relief." *Halicki*, 151 F.3d at 470. But Wright's

motion is untimely and unmeritorious even under the Rule 60(b) standard. First, a Rule 60(b) motion must still be made within a "reasonable time," and courts have denied motions filed three or four months after the challenged order was entered. FED. R. CIV. P. 60(c)(1); *see McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991) ("We have held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay."). Wright brought his motion more than two years after the Court rendered its Opinion and Final Judgment, and Wright has not provided any explanation for his delay. Therefore, the motion is untimely, and the Court should deny it.

Even if Wright's motion had been timely, Wright has also failed to "show the initial judgment to have been manifestly unjust." *Pipkins*, 729 Fed. App'x at 338. As noted above, Wright does not argue that the Court's Opinion and Final Judgment were erroneous at all, but only that DMA and Longbranch have overstated the ruling. ECF No. 616 (Mot. Clarification) at 1–2. As explained further below, DMA and Longbranch have accurately grasped the Court's ruling: When a real covenant attaches and runs with a ROW, it binds all future owners of the ROW. But the Court need not reach that issue, because Wright has offered no justification for his untimely motion and no grounds to grant it. Accordingly, the Court should deny the motion.

## III. Under the mandate rule, the Court should deny Wright's motion because it seeks to re-litigate the District Court's prior mandate and this Court's prior rulings.

If the Court considers Wright's motion to alter the judgment to be timely, it should nonetheless deny it because it runs afoul of the law of the case doctrine and the mandate rule. "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002). Similarly, the mandate rule—a corollary to the law of the case doctrine—"requires a

district court on remand to effect [the appellate court's] mandate," "implement both the letter and the spirit of the appellate court's mandate," and "not disregard the explicit directives of that court." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007). The mandate rule thus "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.*

Here, the Court should apply the law of the case doctrine and the mandate rule and deny Wright's motion because it seeks to re-litigate issues the District Court has expressly decided: issues concerning the nature of DMA and Longbranch's net profits interest. The District Court expressly held that DMA and Longbranch's interests are real covenants, meaning that the interests run with the land and bind future successors. *KrisJenn Ranch*, 661 F. Supp. 3d at 676. In fact, the District Court held that the interests were real covenants *because*, among other things, the contracts giving rise to these interests demonstrate an intent to bind future successors. *KrisJenn Ranch*, 661 F. Supp. 3d at 676; *Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018) (explaining that courts evaluate the contract "to determine if there is language expressly stating that the covenant binds successors"). Specifically, the contracts "unambiguously bind Black Duck and any successor and assignee that owns the ROW's real property interests," including "future owners of the ROW" in perpetuity. *KrisJenn Ranch*, 661 F. Supp. 3d at 676. On remand, this Court properly implemented the District Court's mandate and concluded that the interests were real covenants that ran with the land.

Under the mandate rule, the Court should deny Wright's motion because it merely rehashes the same merits arguments the District Court rejected on appeal in 2023. For example, Wright points to several clauses in the agreements that gave rise to the covenant to claim that the covenant binds only Black Duck and its direct successors and assigns, rather than the future owners of the ROW. ECF No. 616 (Mot. Clarification) at 9–11. As an initial matter, Wright arguments are untimely arguments that go to the merits

of the District Court's decision: whether the net profits interests are covenants that run with the ROW. These untimely arguments "could, and should, have been made before the judgment issued" in 2023. *L.F.*, 2010 WL 3069681 at *2. Or they could have been made in an appeal from the District Court's or this Court's rulings. But Wright did not pursue such an appeal, and, pursuant to the mandate rule and the law of the case doctrine, the Court should not allow him to undermine these rulings years later.

In any case, the District Court and this Court have already considered these identical and similar arguments, because Wright's interpretation is precisely the interpretation the District Court rejected on appeal in 2023 after carefully parsing through the entirety of the contracts. As explained above, the District Court held that the agreements as a whole supported "interpreting the term 'assigns' to include future owners of the ROW." *KrisJenn*, 661 F. Supp. 3d at 676. Indeed, the net profits interests bind Black Duck's successors and assigns, and a future owner of the ROW who acquired the ROW would constitute a "successor" to Black Duck's ownership of the ROW. The contracts also included provisions stating that the interest "shall attach and run" with the ROW, which demonstrated that the parties intended for the interest to attach and run with the ROW. [1] *Id.* More fundamentally, when a covenant attaches and runs with the land, it binds future owners of that land. *See In re El Paso Refinery, LP*, 302 F.3d 343, 355 (5th Cir. 2002) (listing requirements for covenants that run with the land); *Covenants Running with the Land*, 48 ST. MARY'S L.J. 727, 733–34 (2017) (explaining the historical origin of covenants that "bind[] remote successors and, therefore, run[] with the land"). In making its determination, the District Court expressly rejected the very arguments Wright makes now.

[1] The phrases "attach and run" and "binding upon . . . successors and assigns" are the paradigmatic way to create a covenant that runs with the land. *See MPH Prod. Co., Inc. v. Smith, 06-11-00085-CV, 2012 WL 1813467, at *5* (Tex. App.—Texarkana May 18, 2012, no pet.) ( collecting cases and examining first whether a contract used terminology such as "run with the land" or bound "successors and assigns").

Similarly, Wright argues that a "perpetual" covenant would make the ROW inalienable and would violate Texas law. ECF No. 616 (Mot. Clarification) at 9, 11–12, 15. The District Court considered these arguments already and rejected them because, on appeal, Wright and his entities "provide[d] precedent to support the legal principles they espouse, [but] they ma[de] no effort to tie such precedent to the facts and circumstances relevant to their dispute." *KrisJenn*, 661 F. Supp. 3d at 675. Tbe Court rendered a Final Judgment consistent with these holdings, and Wright's unmeritorious and untimely arguments are not enough to overcome the mandate rule and prompt the Court to reject the District Court's holdings.

Wright also argues that nets profits interests cannot bind future owners of the ROW if not recorded. ECF No. 616 (Mot. Clarification) at 10. Wright and any future owners have, and will have, constructive notice of the burden because DMA and Longbranch recorded their interests. *KrisJenn*, 661 F. Supp. 3d at 675. ("Subsequent purchasers have notice of the burden when they have 'actual or constructive notice'"). And as the District Court correctly noted, there is no dispute that Wright and his entities had knowledge of the net profits interest when Wright transferred the ROW from Black Duck to his other entities. *Id.* at 677 (stating the notice-to-successor requirement was met because "the current owner of the ROW had notice of the Appellants' twenty percent interests" and the contracts sufficiently identified the property at issue). To the extent Wright argues that future purchasers should not be bound without notice, that is an issue for a future purchaser to raise. It is also inapposite: future purchasers will have constructive notice because DMA and Longbranch have recorded both their net profits interests and the Court's judgment in their favor.

The District Court rejected Wright's arguments three years ago. He now asks the Court to disregard the District Court's mandate and conclude that the net profits interests are not real covenants at all. But the Court may not disregard the explicit directives of the District Court. *Gen. Universal Sys., Inc.*, 500 F.3d at 453. Under the

mandate rule and the rule of the case doctrine, the Court must deny Wright's attempt at re-litigating the District Court's mandate and this Court's implementation of it.

**IV. The Court should deny Wright's motion because the Court's order is clear and unambiguous.**

Alternatively, if the Court considers Wright's motion as a motion for clarification, it should deny the motion because Wright's own arguments demonstrate the Court's order is not in need of clarification. Wright argues that the construction of the Court's Opinion is "unresolved" because the parties have advanced "competing" interpretations as to the "scope and duration" of the net profits covenant. ECF No. 616 (Mot. Clarification) at 11. But as noted above, Wright's motion merely advances the erroneous interpretation the District Court rejected in 2023. Wright's dissatisfaction with the District Court's decision or this Court's final judgment is not enough to render those orders ambiguous or in need of clarification.

Instead, Wright's motion is a belated attempt at a second bite at the apple. Three years ago, the District Court determined that the net profits interest covenants ran with the land because, among other things, the agreements bound not only Black Duck but also future owners of the ROW. This Court then rendered an Opinion and Judgment that, consistent with the District Court's holdings, unambiguously held that DMA and Longbranch's interests are real covenants that run with the land. The Court's Opinion and Final Judgment is clear. The Court should reject Wright's attempt at "clarifying" it.

**V. The Court's prior holdings are consistent with the Plan.**

Finally, the Court should also deny Wright's motion because DMA and Longbranch's interests are consistent with the Reorganized Debtor's Plan ("the Plan"). *In re KrisJenn*, ECF No. 211 (Plan), 5:20-bk-50805-RBK (Feb. 3, 2022). Wright argues that the Plan limits DMA's interest and prevents it from binding future owners. ECF No. 616 (Mot. Clarification) at 9–10. But DMA and Longbranch's interests are real-estate

interests that run with the ROW and arose from a contract, and the Plan neither diminishes nor enlarges these rights.

Wright incorrectly argues that the Plan limits DMA and Longbranch's rights by allowing third-party transferees to take the right-of-way free of claims by DMA or Longbranch. ECF No. 616 (Mot. Clarification) at 10. But the provision Wright cites only protects third parties against tort claims by DMA and Longbranch. *In re KrisJenn*, ECF No. 211 (Plan) at 2, 7, 5:20-bk-50805-RBK (Feb. 3, 2022). More important, the Bankruptcy Plan was always subject to this Court's decision on appeal. *See, e.g.*, *id.* (noting that DMA and Longbranch's claims were disallowed but were subject to the then-pending appeal and would not "be rendered moot by confirmation or substantial consummation of the plan").

As this Court held, DMA and Longbranch own real property interests in the ROW that arise from DMA and Longbranch's agreements with Black Duck and which run with the ROW. *In re KrisJenn*, 661 F. Supp. 3d at 679. These interests did not come from their tort claims against KrisJenn Ranch, LLC and Wright, but exist independently and cannot be extinguished by the underlying bankruptcy proceedings. The Court should reject Wright's attempts to extinguish DMA and Longbranch's rights and deny Wright's motion.

## CONCLUSION

DMA and Longbranch respectfully request that the Court deny Wright's motion for clarification because (1) the motion is untimely; and (2) the motion lacks merit, does not satisfy the standards of either Rule 59(e) or Rule 60(b), runs afoul of the law of the case doctrine and the mandate rule, and is attempting to rewrite the Court's opinion after a remand and final judgment have already been entered based on that opinion. DMA and Longbranch also request that the Court award DMA and Longbranch their reasonable attorneys' fees expended in responding to Wright's vexatious filings.

Respectfully submitted,

*/s/ Christopher Johns*
Christopher S. Johns
State Bar No. 24044849
JOHNS & COUNSEL PLLC
13341 West U.S. Highway 290
Building 2
Austin, TX 78737
512-399-3150
chris@johnsandcounsel.com

*/s/ Timothy Cleveland*
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
Lourdes Ortiz
State Bar. No 24134904
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

*Attorneys for Longbranch Energy and DMA Properties*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Charlie Shelton<br>Hayward PLLC<br>7600 Burnet Road, Suite 530<br>Austin, TX 78757<br>(737) 881-7100<br>cshelton@haywardfirm.com<br><br>*Counsel for Larry Wright, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC—Series Uvalde Ranch, KrisJenn Ranch, LLC—Series Pipeline Row* | James Rose<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, TX 78701<br>james.rose@usdoj.gov<br><br>*United States Trustee* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>JF DUKE AND ASSOCIATES<br>11819 Great Oaks Drive<br>College Station, TX 77494<br>jeff@jfduke.com<br><br>*Counsel for Longbranch Energy, LP* |

*<u>/s/ Lourdes Ortiz</u>*
Lourdes Ortiz